NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-4098, 04-4099

_____

ROBERT G. WYCKOFF,

Appellant at No. 04-4098

v.

METROPOLITAN LIFE INSURANCE COMPANY;
KENNETH F. KACZMAREK

_____

MAHENDRA M. GAJARAWALA

v.

USHA M. GAJARAWALA, husband and wife;
METROPOLITAN LIFE INSURANCE COMPANY;
DAVID ELMER

Mahendra Gajarawala,
Appellant at No. 04-4099

_____

On Appeal from the United States District Court
for the Western  District of Pennsylvania
(D.C. Civil No. 00-cv-2248, and 00-cv-02522)
District Judge:  The Honorable Donnetta W. Ambrose

_____

Submitted Under Third Circuit LAR 34.1(a)
October 18, 2005


Before: SMITH, STAPLETON, and NYGAARD, <u>Circuit</u> <u>Judges</u>.

(Filed November 17, 2005)

_____

OPINION OF THE COURT
_____


NYGAARD, <u>Circuit</u> <u>Judge</u>.

Appellants Robert G. Wyckoff and Mahendra Gajarawala appeal the
District Court's grant of Appellee Metropolitan Life Insurance's ("Met Life") motions for
summary judgment on claims arising from the purchase of life insurance policies.  We
have jurisdiction pursuant to 28 U.S.C. § 1291 and, guided by our opinions in *Dilworth v.
Metropolitan Life Insurance Co.*, 418 F.3d 345 (3d Cir. 2005) and *Tran v. Metropolitan
Life Insurance Co.,* 408 F.3d 130 (3d Cir. 2005), we will reverse.

I.

Since we write only for the parties, we sketch just the factual core.  In both cases, Met Life sold "Accelerated Payment Plan" life insurance policies to appellants.[1] Colloquially known as "vanishing premium" insurance policies, Met Life represented that these policies could be purchased by making out-of-pocket premium payments for a fixed number of years.[2]  Reinforcing this representation, Met Life utilized illustrations that appeared to indicate that the policy only required a specific and fixed period of premium payments.  Upon these representations, both appellants understood their payments to be fixed at a definite number of years, after which point they would not be required to continue paying their premiums.

However, although appellants were under the impression that their premium payments would end after a certain time,  no such guarantee was ever made.  The illustrations used by Met Life contained a clause which disclosed that the results

1.     Each appellant purchased two policies and in all material respects the policies were identical.

2.     These policies were set up as follows: Met Life would invest the annual premium payments and, assuming those investments did well, the dividend/interest made on the premium investments (the principal) would essentially "pay" the premium payments due after some specified number of years.  Thus, Met Life would tell its potential customers that out-of-pocket payments would stop after a certain number of years.  Of course, the entire operation required that investment rates and returns stay at or improve from the current rate.  Any drop and the specific year cut-off would no longer suffice. The fixed number of years varied depending on the rate of return on the premium investment.

3

projected in the illustration were not guaranteed and were merely "illustrative."[3]

Moreover, the policies themselves stated on the cover page "Premiums payable for a

stated period." Then, on page two, the policies contained clauses which indicated:

"YEARS PAYABLE" followed by a number of years ranging from 32 to 72, depending

on the individual policy. After receiving their policies, appellants neither read nor

reviewed them.

II.

Both appellants filed a complaint against Met Life alleging claims of, inter

alia, Negligence, Common Law Fraud and Deceit, and Violations of the Unfair Trade

Practices and Consumer Protection Law ("UTPCPL").

After completion of discovery, Met Life filed Motions for Summary

Judgment on the basis that appellants' claims were time-barred by the statute of

limitations. The District Court agreed and, in two separate opinions, dismissed

appellants' claims. In so doing, it based its conclusion on the fact that appellants failed to

undertake even a cursory review of their policies, thereby preventing them from taking

---

3.     The clause contained in the illustration states:
        The Cash outlay illustrated shows the results if the current dividend scale
        continues without change, Dividends are not guaranteed and may increase or
        decrease in the future. If the future dividends decrease it is possible that the cash
        value of additional insurance may not be sufficient in some future years to pay
        the full current premium and some cash outlay may be required ...Illustrative
        figures are not guarantees or estimates for the future.

advantage of Pennsylvania's discovery rule.  Appellants have timely appealed this decision.

III.

A. Negligence and Common Law Fraud Claims

At the outset, appellants concede that if the Pennsylvania discovery rule is inapplicable, the statute of limitations will act to bar their claims.[4]  They claim, however, that nothing in the insurance policies or the illustrations, as a matter of law, unambiguously contradicts the representations made by Met Life about the nature of the policy and that, as a consequence, the discovery rule should apply to toll the statute of limitations.

In *Dilworth* we recognized that under certain circumstances, Pennsylvania's discovery rule will toll the statute of limitations for the period of time a policyholder is reasonably unaware that an injury has been sustained.  *Dilworth*, 418 F.3d at 351.  In order to benefit from the discovery rule, a policyholder must show that despite exercising reasonable diligence he could not have known a cause of action had accrued.  *See id*.  In certain circumstances, the exercise of reasonable diligence may, as a matter of law, require a cursory review of an insurance policy and/or of illustrations about the policy.  *See id*.  This review would be required, for instance, if it would reveal

---

4.	The Pennsylvania statute of limitations for negligence and common law fraud claims is two years.

5

unambiguously that the policyholder had been misled or injured by earlier representations made by an insurer's agent.  However, if a cursory review would not absolutely controvert the representations made by an agent or the reasonable impressions of the policyholder, it cannot be said, as a matter of law, that the policyholder would have discovered the underlying injuries.

We held in *Dilworth* that if a policyholder believes, based on representations made by an insurer's agent, that he owns a "vanishing premium" life insurance policy, the actual provisions of the policy do not unambiguously contradict that belief by stating a different length of premium payment.  *Id*. at 351-52.  The crux of the issue "is not whether the premiums are payable...but from what source the premiums should be derived." *Id*. at 352 (quoting *Asad v. Hartford Life Ins. Co.*, 116 F.Supp.2d 960, 965 (N.D.Ill.2000)).  Thus while the actual policy in *Dilworth* indicated that 86 years of payments would be required, even had Dilworth been aware of this provision, it would not have been inconsistent with the agent's representation that after ten years of payments the remaining payments would come from accrued dividends and interest payments.  *Id*. at 351.   In addition, we have held that the statement "the results are not guaranteed," contained either within the policy or in illustrations, is not directly inconsistent with or contradictory to a policyholder's belief in the vanishing premium nature of the policy. *See Tran*, 408 F.3d at 138.

Here, the policyholders' contentions and experiences are almost identical to those of the policyholders in *Dilworth*. Moreover, the District Court here found that the cause of action accrued when the policyholders received their life insurance policies because they each failed to undertake a cursory examination of the actual policies. The District Court bases this conclusion on the assumption that the actual policy clearly contradicts the representations of the agents ("th[e] policy did not conform to the promises allegedly made by the sales agent concerning premiums being payable for a limited time."). Like the policy in *Dilworth*, however, a cursory examination would have revealed nothing inconsistent with, or contrary to, the "vanishing premium" scheme set out by the Met Life agent. Simply because the policy indicates a longer time-period for premium payments, or that the claimed time-periods are not guarantees, it does not render it inconsistent with the policyholders' beliefs that they would not have to pay premiums after a certain time period. Furthermore, the policy's illustration containing similar language concerning the lack of guarantees is insufficient as a matter of law to create an unambiguous or ineluctable contradictory conclusion had the policyholders read the policy.

The District Court, therefore, erred by holding that the language of the actual policy deprives, as a matter of law, the policyholders from the benefit of the

discovery rule.[5]  Since a cursory review would not absolutely controvert the

representations made by an agent or the impressions of the policyholder, it therefore

cannot be said that as a matter of law plaintiffs would have discovered their underlying

injuries at the time they received their policies.

### B. UTPCPL Claims

The District Court and Met Life also contend that appellants' UTPCPL

claims are barred by the statute of limitations, for much the same reason.  The District

Court reasoned that the appellants failed to exercise reasonable diligence in reviewing

their policies and therefore could not be considered to have reasonably relied on Met

Life's representations about the nature of the policy.

In *Tran* we dealt with similar UTPCPL claims to those in the instant cases

and we find its reasoning controlling.  There, we held that a  policyholder's reliance on

agent representations about the nature of the policy, even where the plain language of the

policy is contradictory, creates a genuine issue of fact as to whether the reliance was

justified.  *Tran*, 408 F.3d at 130.  Moreover, in *Tran* we concluded that an insured's

failure to read the policy does not, as a matter of law, preclude a fraud claim because

---

5.      We note that at the time of the District Court's opinion, we had not decided either
*Tran* or *Dilworth*.

Pennsylvania does not impose a duty to read insurance policies where fraud is alleged. *Id*. at 139 n.11.[6]

Acting without the benefit of our decision in *Tran*, the District Court here held that the policyholders' failure to read the policy constituted, as a matter of law, grounds for dismissal of the UTPCPL fraud claim because the plain language contradicted the alleged misrepresentations and the appellants failed to read their policies.[7]  In *Tran*, we recognized that this presumption would allow insurers to defeat the reasonable expectations of policyholders by representing one thing and then doing another.  We therefore held that it is not, as a matter of law, unreasonable for policyholders to rely on representations made by insurance agents rather than on the actual provisions of the policy.

In the instant cases, the policyholders all relied on alleged misrepresentations made by a Met Life agent concerning a vanishing premium life insurance policy.  The District Court's grant of summary judgment in favor of Met Life is premised on the appellants' failure to read the actual policy.  It therefore failed to consider that the alleged misrepresentations by a Met Life agent about the nature of the

---

6.      It is important to note that even if Pennsylvania were to impose such a duty, the language contained in this type of vanishing premium policy would not suffice, as a matter of law, to defeat appellants' claims that they reasonably relied on the alleged misrepresentations.

7.      As we have indicated above, the District Court's conclusion that the plain language of these policies contradicts the alleged representations, in light of *Dilworth*, is erroneous.

insurance policy creates a genuine issue of fact concerning the reasonableness of the plaintiff's expectations of the nature of the policy.  Thus, at least with respect to vanishing premium policies, where a policyholder alleges reliance on representations made by an insurer or insurer's agent, summary judgment is an inappropriate mechanism if it is based on the policyholder's failure to read the actual policy.  As we stated in *Dilworth*, we recognize that at trial a policyholder may be unable to prove that his reasonable expectations differed from the provisions of the policy, but, at minimum, that policyholder is entitled to try.

Accordingly, we will reverse and remand to the District Court for further proceedings consistent with this opinion.