# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT G. WYCKOFF,

                Plaintiff,

                v.

METROPOLITAN LIFE INSURANCE
COMPANY AND KENNETH F.
KACZMAREK,

                Defendants.

CIVIL ACTION NO. 00-2248

CHIEF JUDGE DONETTA W. AMBROSE

Counsel of Record:
B. John Pendleton, Jr., Esq.
PA I.D. No. 41162

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
(973) 622-4444

*Attorneys for Defendants*
*Metropolitan Life Insurance Company*
*and Kenneth F. Kaczmarek*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT G. WYCKOFF, | : CIVIL ACTION NO. 00-2248 |
| Plaintiff, | : |
| | : |
| | : |
| v. | : CHIEF JUDGE DONETTA W. AMBROSE |
| | : |
| METROPOLITAN LIFE INSURANCE | : |
| COMPANY AND KENNETH F. | : |
| KACZMAREK, | : |
| Defendants | : |

**METROPOLITAN LIFE INSURANCE COMPANY'S**
**AND KENNETH F. KACZMAREK'S PRETRIAL STATEMENT**

Metropolitan Life Insurance Company ("MetLife") and Kenneth F. Kaczmarek

(collectively, "Defendants") hereby respectfully submit the following Pretrial Statement in

accordance with Local Rule of Court 16.1.4:

**STATEMENT OF FACTS TO BE OFFERED AT TRIAL**

**The Sale of the 1991 Policy**

In 1991, Plaintiff met with Mr. Molchan (deceased), a former MetLife sales

representative, to discuss the purchase of life insurance.  On June 24, 1991, Plaintiff signed an

"Application for Life Insurance."  MetLife issued $10,000 Whole Life Policy No. 915 409 338

M ("1991 Policy") to Plaintiff as owner and insured on June 27, 1991.  The 1991 Policy

originally was sold with a $59.40 monthly premium, based on Plaintiff's classification as a non-

smoker.  Plaintiff indicated on the Application that he had never smoked cigars, pipes, or used

smokeless tobacco.  He also stated that he had last smoked a cigarette in 1960.  However, a

paramedical examination revealed nicotine in Plaintiff's urine.  Thus, Plaintiff was reclassified as

a smoker, resulting in a higher monthly premium of $73.20.  In the Complaint, Plaintiff admitted that he did not contest the premium increase.

### The Clear and Unambiguous Terms of the 1991 Policy

Plaintiff admittedly received the 1991 Policy, which contains all of the information necessary to determine that Plaintiff's premium payments were not guaranteed to end after fourteen years, as he alleges.  In fact, the Policy plainly provides that monthly premiums of $73.20 were payable for *thirty-six* years.  The Policy also provides that the policyholder can use the policy's dividends, which are *not* guaranteed, in four different ways, including applying them toward the payment of premiums.  Additionally, the illustration allegedly shown to Plaintiff indicated clearly that, in twenty years (at Plaintiff's age 84), his Policy will have accumulated $5,950 in cash value, according to the *Guaranteed* Cash Value column.

Plaintiff signed the Application for Life Insurance and agreed to the following:

> I have read this application and agree that all statements are true and complete to the best of my knowledge and belief.  It is also agreed that:  . . . 2.  No sales representative or other person except the President, Secretary or a Vice-President of Metropolitan may (a) make or change any contract of  insurance;  or (b) make any binding promises about insurance benefits;  or (c) change or waive any of the terms of an application, receipt or policy.

The cover page of the 1991 Policy provides that premiums are payable for a stated period.  On the third page of the Policy, the Premium Schedule provides:

**PREMIUMS ARE DUE ON DATE OF POLICY AND EVERY 1 MONTH(S) AFTER THAT DATE (CHECK-O-MATIC)**

|  | PREMIUM AMOUNT | YEARS PAYABE | CLASSI-FICATION |
|---|---|---|---|
| LIFE INSURANCE | $73.20 | 36 | STD |
| TOTAL PREMIUM OF | $73.20 | | |

3

The 1991 Policy does not indicate *anywhere* that premiums are payable for only fourteen years. Instead, it unambiguously states that premiums are payable for *thirty six* years.

## The Sale of the 1994 Policy

In 1994, upon Plaintiff's retirement from his then-employer, United States Steel, he received a Notice of Reduction in Life Insurance from MetLife:

> Your Group Life Insurance is reduced from $33,000 to $28,500 effective July 1, 994. You may apply for an individual policy not to exceed $4,500 within 31 days of reduction. For further information, contact any office of the Metropolitan Life Insurance Company.

In June 1994, upon receipt of the Notice advising Plaintiff of his reduction in insurance coverage, he admittedly contacted MetLife to discuss exercising his right to convert his existing group policy to an individual policy.

On June 20, 1994, Plaintiff submitted an Application for Conversion of Group Insurance. The Conversion Application indicated that Plaintiff desired to convert a portion of his group insurance policy (No. G16200-G) to a $4,500 whole life policy. On the same day, Plaintiff signed a State of Pennsylvania Disclosure Statement indicating that he *understood* he had purchased a $4,500 whole life policy with annual premiums of $410.76 payable for *thirty* years. Further, he signed a Receipt acknowledging that he had received a "Life Insurance Buyer's Guide" from MetLife, which informed him about the product he had purchased.

Additionally, the Accelerated Payment Plan Illustration allegedly used by Mr. Kaczmarek, prepared on or about June 21, 1994, clearly indicates that annual premiums are payable for the "LIFETIME" of the insured. Moreover, the first paragraph of the Illustration states:

> THIS ILLUSTRATION ASSUMES THAT PREMIUMS FOR THE FIRST 23 YEARS WILL BE PAID IN CASH. THEREAFTER, PREMIUMS MAY BE PAID EACH YEAR

> THROUGH THE USE OF DIVIDENDS BY CANCELING A
> PORTION OF THE ADDITIONAL INSURANCE AND USING
> ITS CASH VALUE TOGETHER WITH THE CURRENT
> DIVIDENT, TO PAY THE PREMIUM.  TO PUT THIS
> PAYMENT PLAN INTO EFFECT CONTACT YOUR SALES
> REPRSENTATIVE AT THAT TIME.

On August 2, 1994, MetLife issued $4,500 Whole Life Policy No. 945 600 948 M ("1994 Policy") to Plaintiff as owner and insured.  The 1994 Policy was converted partially from Plaintiff's group term policy after he retired from United States Steel.  The monthly premium on the 1994 Policy was $34.23 payable for *thirty-two* years.

### The Clear and Unambiguous Terms of the 1994 Policy

The 1994 Policy was delivered to Plaintiff on or about August 11, 1994.  The cover page of the 1994 Policy unambiguously states *twice* that it is a "**Whole Life**" policy.  The cover page also provides:

> **10-Day Right to Examine Policy** – Please read this policy.  You
> may return the policy to Metropolitan . . . within 10 days from the
> date you receive it.  If you return it within the 10-day period . . .
> [w]e will refund any premium paid.

Further, the cover page of the Policy states that premiums are payable for a stated period, *not* for ten years as Plaintiff alleges.

On the third page of the Policy, the Premium Schedule provides:

### PREMIUMS ARE DUE ON DATE OF POLICY AND EVERY 1 MONTH(S) AFTER THAT DATE (CHECK-O-MATIC)

|  | PREMIUM AMOUNT | YEARS PAYABE | CLASSI-FICATION |
|---|---|---|---|
| LIFE INSURANCE | $34.23 | 32 | STD |
| TOTAL PREMIUM OF | $34.23 | | |

Additionally, at or near the time Plaintiff received the Policy from Mr. Kaczmarek, Plaintiff received an illustration that clearly stated that the Policy was payable for the "LIFETIME" of the insured.  The illustration also disclosed that rates were "BASED ON CURRENT DIVIDEND SCALE – NOT A GUARANTEE OR ESTIMATE FOR THE FUTURE."

Like the Application, the Policy also clearly states that sales representatives do not have the authority to change or waive any terms of the policy or to make binding promises about the policy.

## Plaintiff's Unsupportable Allegations in the Complaint

In February 2000, Plaintiff filed a Praecipe Writ of Summons in the Court of Common Pleas of Westmoreland County, Pennsylvania.  On October 13, 2000, he filed a Complaint alleging eight causes of action:  Common Law Fraud and Deceit (Count I);  Negligence (Count II);  Violations of the Unfair Trade and Practices and Consumer Protection Law ("UTPCPL") (Counts III and IV);  Breach of Implied Covenant of Good Faith and Fair Dealing (Count V);  Bad Faith (Count VI);  Breach of Fiduciary Duty (Count VII);  and Negligent Supervision (Count VIII).  Defendants removed the action to this Court on November 13, 2000.[1]

In the Complaint, Plaintiff alleges that Mr. Molchan showed him a computer illustration in 1991 and misrepresented that Plaintiff could purchase a $10,000 Whole Life policy by paying

---

[1] Defendants removed this case on the basis that Plaintiff's claims relating to the 1994 Policy were preempted by the Employment Retirement Security Income Act ("ERISA").  29 U.S.C. §1001, *et seq*.

out-of-pocket premiums for only fourteen years.[2]  However, the illustration allegedly used contain clear disclosures that illustrative figures are not guaranteed.[3]

     With respect to the 1994 Policy, Plaintiff alleges that Mr. Kaczmarek misrepresented that Plaintiff would have to pay monthly premiums for only ten years, with no subsequent payments thereafter.  Plaintiff further alleges that Mr. Kaczmarek did not disclose that the 1994 Policy was, in fact, a whole life policy with payments payable for thirty-two years (or until Plaintiff's death).  However, Plaintiff also concedes in the Complaint that the group term policy "could only be converted to a whole life policy."

     On November 20, 2000, Defendants moved to dismiss certain claims and to strike certain allegations.  This Court concluded that Plaintiff's claims with respect to the 1994 Policy (which encompassed Counts I, II, III, IV and VII) were preempted by ERISA.  Accordingly, Plaintiff's ERISA claim is not triable by a jury.  The Court stated in its March 18, 2003, Order:  "Hence, the complaint is being interpreted as raising only one claim concerning the 1994 policy, that being a claim under Section 502(a)(3) of ERISA which offers equitable relief for plan participants whose benefits are affected by misrepresentations."  See Order dated March 18, 2003.[4]  Pursuant to the same motion, this Court also dismissed Plaintiff's causes of action for Breach of Implied

---

[2] Additionally, Plaintiff asserts that the illustration indicated that, in year 2011 (twenty years from date of issue), the 1991 Policy would have a cash value of $7,746.00 and a death benefit of $12,112.00.

[3] The illustration stated in all capital letters:

       THE CASH OUTLAY ILLUSTRATED SHOWS THE RESULTS IF THE
       CURRENT DIVIDEND SCALE CONTINUES WITHOUT CHANGE.
       DIVIDENDS ARE NOT GUARANTEED AND MAY INCREASE OR
       DECREASE IN THE FUTURE. … ILLUSTRATIVE FIGURES ARE NOT
       GUARANTEES OR ESTIMATES FOR THE FUTURE.

[4] Plaintiff's state law claims relating to the 1994 Policy are preempted by ERISA.  Accordingly, plaintiff is *not* entitled to trial by jury with respect to his claims regarding the 1994 Policy.

Covenant of Good Faith and Fair Dealing (Count V), Bad Faith (Count VI), and Breach of

Fiduciary Duty (Count VII) with respect to the 1991 Policy.

### DEFENSES TO PLAINTIFF'S DAMAGES CLAIMS

### The 1991 Policy

A.    **Plaintiff's Fraud and Negligence Claims are Time-Barred.**

  Plaintiff initiated this action by filing a Praecipe for a Writ of Summons on or about

February 23, 2000.  Here, the undisputed facts compel the conclusion that Plaintiff's claims

arose in 1991 when he received his policy.  Pennsylvania applies a two-year statute of limitations

for claims relating to common law fraud and deceit (Count I) and negligence (Count II).  As

such, Plaintiff's claims are time-barred.[5]

  With respect to the 1991 Policy, Plaintiff's claims accrued when he received his policy

on or around August 2, 1991 -- more than *nine* years before he filed this action -- long after the

statute of limitations in Pennsylvania had expired.  Plaintiff's claims rest on the assertion that the

true cost and features of the 1991 Policy were not disclosed to him.  However, Plaintiff knew or

should have known that the alleged representations were inaccurate as they were *directly*

contradicted by the terms of the written insurance contract when he received the policy in 1991.

The 1991 Policy specifically advised the insured to read the policy and granted a 10-day "free

look" period whereby the insured could return the policy for a full refund for any reason at all.

The 1991 Policy also clearly disclosed its terms, including monthly premiums of $73.20 payable

for *thirty-six* years.  Plaintiff did not return the policy within the "free look" period.

---

[5] Pennsylvania courts differ as to whether a two or six year statute of limitations applies to claims arising under the UTPCPL (Counts III and IV).  Regardless of whether a two or six year statute of limitations applies, Plaintiff's UTPCPL claims also are time-barred.

Plaintiff cannot rely on the discovery rule to toll the statute of limitations. As in <u>Toy v. Metropolitan Life Ins. Co.</u>, 863 A.2d 1 (Pa. Super. 2004) (holding that the plaintiff failed to exercise due diligence by neglecting to take any action or make any inquiries regarding the insurance policy at issue for twenty months), Plaintiff here had more than sufficient time -- over *nine* years -- in which to exercise due diligence to discover the existence of his alleged injuries. After the policy was issued, it was unreasonable for Plaintiff to continue to believe that he would be required to pay $73.20 per month in premiums for *only* fourteen years -- despite the reclassification and additional premium for his smoker rating after nicotine was found in his urine. The 1991 Policy unambiguously stated its features, which Plaintiff now claims were not disclosed to him. By simply glancing at his policy, Plaintiff would have been on notice of his purported claims. Plaintiff simply did not employ "those qualities of attention, knowledge, intelligence, and judgment which society requires of its members for the protection of their own interests…" <u>See</u> <u>id.</u> at 7 (citations omitted).

Additionally, to the extent that Plaintiff asserts that he is entitled to the benefit of class action tolling based on the class actions filed in federal court, more than four years elapsed between Plaintiff's notice of his alleged claims and the period of tolling (from 1995-1999). Therefore, Plaintiff's fraud and negligence are still time-barred.

**B.    <u>Plaintiff Cannot Recover "Expectation" Or "Benefit of the Bargain" Damages.</u>**

Plaintiff is not entitled to "benefit of the bargain" or "expectation" damages in this matter. Pennsylvania law is clear that expectation damages are not available in actions grounded in fraud. The expert report of Robert B. Carter, which purports to assess Plaintiff's alleged damages, contemplates expectation damages. Plaintiff should be precluded from introducing any evidence of expectation damages and from recovering expectation damages.

C.    **Plaintiff is Not Entitled to Attorneys' Fees Under the UTPCPL.**

Under Pennsylvania law, attorneys' fees may be awarded for a statutory claim only where the statute explicitly provides for attorneys' fees. The UTPCPL that was in effect during the sale of Plaintiff's policies did not provide litigants with the right to attorneys' fees. It was amended in 1996 to allow a court to award attorneys' fees at its discretion. Because the last transaction at issue occurred in 1994, Pennsylvania law mandates that Plaintiff's request for attorneys' fees be stricken.

D.    **Plaintiff's Claim for Treble and Punitive Damages should be Limited and Bifurcated.**

Plaintiff seeks punitive damages, in part, on the basis of MetLife's allegedly "widespread" conduct, including, but not limited to, "vanishing premium" claims. However, the evidence should be limited, at most, to the transactions at issue based on the pleadings, the previous Orders in this case, and the Due Process Clause. MetLife already has paid damages and fines punitive in nature for the same alleged "widespread" conduct that Plaintiff seeks to introduce in support of his punitive damages claim. Penalizing MetLife multiple times for the same course of conduct violates the Due Process Clause. Moreover, as the United States Supreme Court reiterated in State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003), a fact finder may not use evidence of out-of-state conduct to award punitive damages. In addition, a fact finder is not permitted to use evidence of conduct that does not have a "nexus" to the specific, purported harm to the Plaintiff.

Moreover, this Court should bifurcate the liability and compensatory damage portion of the trial from any claim for punitive damages, and exclude evidence outside the scope of Plaintiff's transactions from the first phase of the trial. Bifurcation would permit any evidence relating to any alleged "widespread" activity of MetLife, and not specifically related to the

Plaintiff, to be reserved for the punitive damages portion of trial. Such a division promotes judicial economy and protects MetLife from undue prejudice.

## The 1994 Policy

### A.    Plaintiff's Claims are Time-Barred.

Plaintiff's breach of fiduciary duty claim under ERISA was filed too late. The statute of limitations applicable provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of:
>
> (1)    six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach of violation, or
>
> (2)    three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Plaintiff's ERISA claim accrued when he received his policy on or around August 11, 1994 -- more than *five* years before he filed this action. Plaintiff admittedly received a copy of his 1994 Policy in 1994. A cursory review of his policy would have alerted him to any alleged misrepresentations. The fraud or concealment exception does not apply here because Defendants did not take affirmative steps to hide its alleged breach of fiduciary duty. See Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, cert denied 118 S.Ct. 297, 522 U.S. 91 (1996). Here, it was "patently obvious" that the alleged misrepresentations were contradicted by the written terms of the 1994 Policy on the day Plaintiff received his policy. See id. at 1552. Accordingly, Plaintiff's claim relating to the 1994 Policy is time-barred.

**B.**    **Plaintiff Cannot Recover Compensatory Damages under ERISA.**

Plaintiff specifically makes a claim against MetLife for breach of fiduciary duty, a claim squarely encompassed by Section 502(a)(3). Additionally, he seeks money damages for, among other things, the additional premiums caused by alleged misrepresentations in connection with the conversion and sale of the 1994 Policy.

Under ERISA, a civil action may be brought by a participant, such as Plaintiff, for the following relief: (1) requests for information; (2) to recover benefits due to him under the terms of the plan; (3) to enforce his rights under the terms of the plan; or (4) to clarify the right to future benefits under the terms of the plan. See 29 U.S.C. § 1132(a). Because claims arising under ERISA are entitled only to the equitable relief set forth above, ERISA claims are *not* subject to a trial by jury. See, e.g., Turner v. CF&I Steel Corp., 770 F.2d 43 (3d Cir. 1985), cert. denied, 474 U.S. 1058 (1986).

In Mertens v. Hewitt Associates, the Supreme Court made clear that claims for money damages are *not* permissible under Section 502(a)(3)(B) because they are "the classic form of legal relief" and are therefore not within the scope of "appropriate equitable relief" allowed under that section. See Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 204 (3d Cir. 2004) (citing Mertens, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)); see also DiFelice v. Aetna U.S. Healthcare, 346 F.3d 442, 458 (3d Cir. 2003).

The Supreme Court in Great-West Life & Annuity Ins. Co. v. Knudson reaffirmed Mertens and stated:

> As we explained in Mertens, [e]quitable relief must mean something less than all relief. 508 U.S., at 258, n. 8, 113 S.Ct. 2063. Thus, in Mertens we rejected a reading of the statute that would extend the relief obtainable under § 502(a)(3) to whatever relief a court of equity is empowered to provide in the particular case at issue (which could include legal remedies that would

12

> otherwise be beyond the scope of the equity court's authority).
> Such a reading, we said, would limit the relief not at all and render
> the modifier [equitable] superfluous. Id., at 257-258, 113 S.Ct.
> 2063.  Instead, we held that the term equitable relief in §
> 502(a)(3) must refer to those categories of relief that were typically
> available in equity . . . . Id., at 256, 113 S.Ct. 2063.

534 U.S. 204, 209-210, 122 S.Ct. 708 (2002) (internal quotations omitted).  Plaintiff expressly

seeks money damages.  See Michaels v. Breedlove, 2004 WL 2809996, *1 (3d Cir. 2004)

(citation omitted) ("Almost invariably . . . suits seeking (whether by judgment, injunction, or

declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money

damages,' as that phrase has traditionally been applied, since they seek no more than

compensation for loss resulting from the defendant's breach of legal duty.").  Under the Supreme

Court's holdings in Mertens and Great West, Plaintiff cannot recover compensatory damages for

his claim relating to the 1994 Policy.

**C.     Plaintiff Cannot Recover Punitive Damages under ERISA.**

It is well-established that Section 502(a) of ERISA does not authorize punitive damages.

See Pane v. RCA Corp., 868 F.2d 631, 635 (3d Cir. 1989) (citing Kleinhans v. Lisle Savings

Profit Sharing Trust, 810 F.2d 618, 621 (7th Cir. 1987);  Sokol v. Bernstein, 803 F.2d 532, 538

(9th Cir.1986);  Dedeaux v. Pilot Life Ins. Co., 770 F.2d 1311, 1313 n. 3 (5th Cir.1985), rev'd on

other grounds, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987);  Dependahl v. Falstaff

Brewing Corp., 653 F.2d 1208, 1216 (8th Cir.), cert. denied, 454 U.S. 968, 102 S.Ct. 512, 70

L.Ed.2d 384 (1981)).  Accordingly, Plaintiff cannot recover punitive damages for his claim

relating to the 1994 Policy.

## DEFENSE WITNESSES

**Liability Witnesses**

Robert G. Wyckoff
c/o Kenneth R. Behrend
Behrend and Ernsberger, P.C.
Union National Bank Building
306 Fourth Avenue, Suite 300
Pittsburgh, Pennsylvania 15222

Kenneth F. Kaczmarek
c/o B. John Pendleton, Jr.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

Vernell Beauford
c/o B. John Pendleton, Jr.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

Greg Snider
c/o B. John Pendleton, Jr.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

**Damages Witnesses**

Vernell Beauford
c/o B. John Pendleton, Jr.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

Greg Snider
c/o B. John Pendleton, Jr.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

**Expert Witnesses**

Kenneth Daniels
c/o B. John Pendleton, Jr.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

*(Defendants' expert report is attached as Exhibit 1)*

In addition to the witnesses listed above, MetLife may call any of Plaintiff's witnesses.

## DEFENDANTS' EXHIBITS

A list of Defendants' proposed exhibits is attached as Exhibit 2. In addition to the listed exhibits, Defendants may introduce at trial exhibits identified by Plaintiff. Defendants also may use demonstrative evidence at trial. The demonstrative evidence may include, but is not limited to, summaries of the policy transactions at issue.

## LEGAL ISSUES TO BE ADDRESSED AT THE FINAL PRETRIAL CONFERENCE

Defendants intend to file the following motions in limine, which should be considered at the Final Pretrial Conference or prior to the commencement of trial:

1. Motion in Limine To Exclude Evidence Regarding The Pennsylvania, Florida, and Connecticut Market Conduct Examinations of Metropolitan Life Insurance Company;

2. Motion in Limine to Exclude the Report and Testimony of Plaintiff's Proposed Expert Witness;

3. Motion in Limine to Bifurcate and Exclude Plaintiff's Claim for Punitive Damages;

4. Motions in Limine to Exclude Evidence Unrelated to the Transaction at Issue and Testimony of Proposed Witnesses Who Lack Knowledge of the Transaction at Issue;

5. Motion in Limine To Exclude Evidence of MetLife's Financial Condition, Net Worth, and Wealth;

6. Motion in Limine to Strike Demand for Attorneys' Fees under Plaintiff's Unfair Trade Practices and Consumer Protection Law Claim;

7. Motion in Limine to Preclude Evidence Regarding the Recovery of Purported Expectation Damages; and

8. Motion in Limine to Bifurcate and Exclude Plaintiff's ERISA Claim.

Defendants reserve the right to supplement their Pre-Trial Statement up until the time of trial.

Respectfully Submitted,

By:     /s/  B. John Pendleton, Jr.

B. John Pendleton, Jr.
PA I.D. No. 41162

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

*Attorneys for Defendants*
*Metropolitan Life Insurance Company and*
*Kenneth F. Kaczmarek*

Dated:  September 27, 2006

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via electronic filing service on September 27, 2006, on the following counsel of record:

Kenneth R. Behrend, Esq.
Behrend and Ernsberger, P.C.
Union National Bank Building
306 Fourth Avenue, Suite 300
Pittsburgh, PA  15222
*Attorney for the Plaintiff*

Dated:  September 27, 2006                    s/  B. John Pendleton, Jr._____