# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT G. WYCKOFF, | : CIVIL ACTION NO. 00-2248 |
|     Plaintiff, | : |
| v. | : CHIEF JUDGE AMBROSE |
| METROPOLITAN LIFE INSURANCE COMPANY AND KENNETH F. KACZMAREK, | : |
|     Defendants. | : |

**DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY'S AND KENNETH KACZMAREK'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE PLAINTIFF'S EXHIBIT NOS. 110 AND 111, BEVERLY LOY TAYLOR'S TESTIMONY AND RELATED EVIDENCE**

## PRELIMINARY STATEMENT

Defendants Metropolitan Life Insurance Company ("MetLife") and Kenneth Kaczmarek (collectively, "defendants") bring this Motion in Limine to Exclude from Evidence Plaintiff's Exhibit Nos. 110 and 111, Beverly Loy Taylor's Testimony and Related Evidence. Plaintiff has identified two reports authored by Ms. Taylor ("the Reports") on Plaintiff's Exhibit List as exhibits 110 and 111, portions of which are attached as exhibits.

Neither Ms. Taylor's testimony nor the Reports relate to the Plaintiff, the sales at issue, the sales representative, Kenneth Kaczmarek, the branch office from which he worked, or even the claims made by Plaintiff in this case. Further, the testimony is in the nature of opinion testimony that should be barred as Ms. Taylor is not an expert and Plaintiff has not denominated her as such. Her reports are admittedly not scientific and represent a very preliminary step in a project that she never completed. As none of her evidence mentions or even tangentially relates to the allegations regarding the transactions at issue, the evidence is irrelevant under Federal

Rule of Evidence 401[1] and therefore inadmissible at trial under Rule 402.[2] Because Ms. Taylor lacks first-hand, or any, knowledge of the sale of the policies at issue or whole life insurance policies in general, her testimony should not be admitted.

## BACKGROUND

### I.     THE POLICIES AT ISSUE

Plaintiff makes "vanishing premium" claims with respect to two whole life policies purchased in 1991 and 1994. Specifically, Plaintiff claims that, in 1991, former MetLife sales representative Norman Molchan (deceased) misrepresented that Plaintiff could purchase a $10,000 Whole Life policy by paying out-of-pocket premiums for only fourteen years. Additionally, Plaintiff asserts that an illustration was used indicating that, in year 2011, the 1991 Policy would have a cash value of $7,746.00 and a death benefit of $12,112.00. On June 27, 1991, MetLife issued Policy No. 915 409 338 M ("1991 Policy") to Plaintiff as owner and insured. Initially, the 1991 Policy was sold with a monthly premium of $59.40 based on Plaintiff's classification as a non-smoker. However, a medical exam revealed nicotine in Plaintiff's urine and he was reclassified as a smoker. Thus, the 1991 Policy was issued with a higher monthly premium of $73.20. Plaintiff avers that he did not contest the higher premium. Nevertheless, he contends that, "by paying the additional amount of premium," he still would only have to pay out-of-pocket premiums for fourteen years.

---

[1] Federal Rule of Evidence 401 defines "relevant evidence" as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2] Rule 402 provides that relevant evidence is generally admissible, and irrelevant evidence is inadmissible.

Plaintiff admits that he contacted MetLife in 1994 because he was interested in exercising his conversion rights under an employer-provided group life insurance plan. On August 2, 1994, MetLife issued $4,500 Whole Life Policy No. 945 600 948 M ("1994 Policy") to Plaintiff as owner and insured. The 1994 Policy was converted partially from Plaintiff's group term Policy No. G-16200G after he retired from U.S. Steel. The monthly premium for the 1994 Policy was $34.23 payable for thirty-two years. In the Complaint, Plaintiff alleges that former MetLife sales representative Kenneth Kaczmarek misrepresented that Plaintiff would have to pay monthly premiums on the 1994 Policy for only ten years, with no subsequent payments thereafter. Plaintiff further alleges that Mr. Kaczmarek did not did not disclose that the 1994 Policy was, in fact, a whole life policy with payments payable for Plaintiff's death. However, Plaintiff also concedes in the Complaint that the group term policy "could only be converted to a whole life policy." Furthermore, Plaintiff signed a Receipt stating that he had received a "Life Insurance Buyer's Guide" from MetLife and a State of Pennsylvania Disclosure Statement indicating that he understood he had purchased a $4,500 whole life policy with annual premiums of $410.76 payable for thirty years.

## II. BEVERLY LOY TAYLOR

Ms. Taylor was a consultant who was retained by MetLife on various discrete projects. See Kintner v. MetLife, C.A. No. 01-1725. She has a Ph.D in curriculum development from the University of Pittsburgh. Id. Ms. Taylor is not a statistician. She is not an expert and Plaintiff has not denominated him as such. Her reports are admittedly not scientific and represent a very preliminary step in a project that she never completed.

Ms. Taylor interviewed only forty MetLife employees about their perceptions of "ethics" in MetLife's corporate culture and suggested ways to improve the perceived issues in the

Reports.[3]  Ms. Taylor admitted during the Kintner trial that when she conducts interviews, the questions that she asks can suggest answers.  Additionally, while Ms. Taylor only interviewed forty employees at the time the interview was conducted, MetLife employed approximately 40,000 employees.  Therefore, Ms. Taylor only interviewed approximately 0.1% of MetLife employees.  Ms. Taylor herself admits that this is not a statistically significant sample. Id.  None of the interviewees were sales representatives.  Ms. Taylor interviewed managers from California, Rhode Island, Texas, Oklahoma and Florida.  None of the managers she interviewed had any connection to Pennsylvania.  The Reports do not address any issues that are presented in this matter.

## ARGUMENT

### I. EVIDENCE UNRELATED TO THE 1991 AND 1994 SALES IS IRRELEVANT TO THE LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSIBLE.

Neither Ms. Taylor's testimony nor the Reports relate to Plaintiff, the sale of the 1991 and 1994 policies at issue, Kenneth Kaczmarek, the branch office out of which he worked, or the claims that Plaintiff alleges.  The introduction of this evidence unrelated to the transactions at issue goes well beyond the scope of the sale here.  Rather than focus on the facts relating to the particular sales at issue, Plaintiff seeks to engage in a smear campaign against MetLife.  Beverly Loy Taylor's testimony has no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," and thus, is inadmissible.  See Fed. R. Evid. 401.

---

[3] Ms. Taylor herself admits that she does not believe that MetLife is an unethical company.  See Kintner v. MetLife, C.A. No. 01-1725.

4

Ms. Taylor does not have first-hand, or any, knowledge of the transactions at issue in this case. She is a former MetLife consultant who merely spoke to forty employees in 1990 about their perceptions of ethics in MetLife's corporate culture and suggested ways to improve the perceived issues. Ms. Taylor identifies "open-ended" questions which she presented to the forty interviewees, and none of them were directed toward sales practices.[4] None of the interviewees were sales representatives. Ms. Taylor interviewed managers from California, Rhode Island, Texas, Oklahoma, and Florida. None of the managers she interviewed had any connection to Pennsylvania. Further, Ms. Taylor did not even identify Pennsylvania as a state in which she conducted interviews. Additionally, the opinions that she solicited and the conclusions she drew do not relate to a specific time period, however, as both Reports are dated 1990, it is clear they have no bearing on the 1991 and 1994 sales at issue. In fact, in the Kintner trial, Ms. Taylor testified that she could not recall what ethics problems were discussed regarding any specific years. See Kintner v. MetLife, C.A. No. 01-1725. Moreover, the Reports do not mention or relate in any way to Plaintiff, Kenneth Kaczmarek, or the policies at issue.

---

[4] Taylor identified the questions that she presented to the interviewees as:
1. Within the context of PI [(personal insurance)], what does business ethics mean to you?
2. To your knowledge, is there a company code of ethics? How is it communicated to managers and employees?
3. Where do you think PI is ethically vulnerable?
4. What "rules" govern the way business is done in PI?
5. What are the ethical issues faced by: Reps? Branch managers? Regional executives? Head office people? OICs? Home office people?
6. What are some examples of: Clearly unethical practices? "Gray area" ethical dilemmas?
7. What is the manager's role vis-à-vis ethical practices?
8. In your opinion, does PI have an ethics problem?
9. Does PI need to address ethics in some kind of programmatic way? At what level(s)?
10. What are the obstacles to ethical practices in PI?

Ex. B at 2.

### III. ANY PROBATIVE VALUE THAT THE UNRELATED EVIDENCE HAS IS OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUES, OR MISLEADING THE JURY.

Pursuant to Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Any probative value that the testimony and evidence could possibly possess is negligible when compared to the unduly prejudicial impact it would have upon the jury. See Taylor v. Monette, 564 F.Supp. 1, 2 (E.D. Pa.1982) (excluding from trial evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm.")

Here, Plaintiff's purpose in using evidence outside of the transactions at issue, such as the evidence referenced above regarding MetLife's ethics, will be to inflame the jurors and prejudice them against MetLife. No specific time frame or geographic location is identified in the reports. No specific examples are given as to what life insurance transactions formed the basis for the conclusions. The evidence will inappropriately invite the jurors to disregard their duty to decide this case on its facts. See Coursen v. A.H. Robins Co., 764 F.2d 1329, 1335 (9th Cir. 1985) (court should exclude evidence that is offered only to show defendant in a bad light); Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 188 (3d Cir. 1990) ("Evidence that a party committed wrongs other than those at issue in a case often creates a danger of 'unfair prejudice' because such evidence may influence a jury to return a verdict based on a desire to punish for the other wrongs."), cert. denied, 501 U.S. 1217 (1991) (emphasis added).

The broad generalizations and conclusions in the reports will likely confuse jurors. Indeed, the Reports may suggest that because there have been ethics problems at an unspecified

time regarding various unspecified issues, whether intentional or not, there may have been ethical issues in this case. This evidence would be inadmissible under Federal Rule of Evidence 404(b). Under that Rule "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," except under limited circumstances not applicable here. See Fed. R. Evid. 404(b) (evidence of other wrongs may be admissible to show existence of a "plan"). In order for "bad acts" evidence to be admissible to establish a common plan, plaintiffs must show that the acts "are part of a single series of events.'" J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994) (quoting Gov't of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992). Evidence concerning other bad acts that are not connected to the transaction at issue is inadmissible. See id.

In J & R Ice Cream, the plaintiff claimed that a franchisor had made misrepresentations concerning its expertise in site selection and the amount of maintenance charges applicable to the site selected for the plaintiff's franchise. The plaintiff introduced evidence that the franchisor made misrepresentations to other prospective franchisees concerning the amount of revenue a typical franchise could produce. The Third Circuit held that the introduction of that evidence was improper under Federal Rule of Evidence 404(b) because "the jury could have used the highly prejudicial, indeed almost inflammatory evidence to conclude that [the defendant] used misrepresentations in multiple aspects of its sales efforts." Id. at 1269.

Similarly, to show that improper bad acts evidence is admissible to show intent, the Third Circuit has held that "'the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.'" Becker, 207 F.3d at 191 (3d Cir. 2000) (quoting United States v.

7

Morley, 199 F.3d 129, 133 (3d Cir. 1999))(emphasis added).  In Becker, the plaintiff initiated an action against his former employer under the Age Discrimination in Employment Act and the Pennsylvania Human Relations Act, contending that his former employer discriminated against him on the basis of his age by terminating his employment.  Id. at 179.  The plaintiff sought to introduce evidence of his former employer's "manner" in which it had terminated another employee.  Id.  Applying this test, the Court held that the evidence in question failed the test because the evidence of the employer's manner of terminating another of its employees was not relevant on the issue of whether it discriminated against the plaintiff absent the inference that the employer had a propensity to act in a certain way, and that it acted in conformity with this prior conduct when it terminated the plaintiff.

Likewise, evidence of ethical issues, having nothing to do with the type of policy sold to an individual plaintiff in a given case, would be impermissible character evidence under Federal Rule of Evidence 404(b) and is therefore inadmissible at trial.  The Rule states that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).

**IV.    THE TESTIMONY AND REPORTS ARE INADMISSIBLE EVIDENCE OF A SUBSEQUENT REMEDIAL MEASURE.**

Pursuant to Federal Rule of Evidence 407, "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, . . . [o]r culpable conduct."  The policy behind Rules 407 is "to encourage remedial measures."  Patrick v. South Central Bell Tel. Co., 641 F.2d 1192, 1196 (6th Cir. 1980).  The Reports are examples of subsequent remedial measures taken to attempt to address possible ethical issues.  The Reports relate the perceptions of forty MetLife employees' views on ethics in

8

MetLife's corporate culture and corresponding suggestions ways to improve the perceived issues. The Reports, as well as testimony regarding the Reports, are exactly the kind of measures that Rules 407 attempts to protect, and consequently, should be excluded on this ground.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Honorable Court enter an Order barring Beverly Loy Taylor from testifying at trial and barring the introduction of the reports identified as exhibits 110 and 111 on Plaintiff's Exhibit List.

Respectfully Submitted,

s/ B. John Pendleton, Jr._____
B. John Pendleton, Jr.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Attorneys for Defendants
Metropolitan Life Insurance Company
and Kenneth Kaczmarek

Dated: October 3, 2006

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via electronic filing on this 3rd day of October 2006 on the following counsel of record:

>Kenneth R. Behrend, Esq.
>Behrend and Ernsberger, P.C.
>Union National Bank Building
>306 Fourth Avenue, Suite 300
>Pittsburgh, PA  15222

                                                                                              __s/ B. John Pendleton, Jr. _____