misrepresentation issues requiring correction, within
Pennsylvania.

- A December 16, 1992 letter by Richard N. Maurer,
  Senior Vice President, Career Agency Operations of
  MetLife, directed to the MetLife field force, entitled
  "Honesty and Integrity: Our Basis For Doing Business",
  reiterated MetLife's position requiring honest and
  ethical business conduct, indicating an awareness and
  concern of corporate MetLife as to practices of the
  field force.



- 39 -

M9371

M129779220049

Notice: Production and Use Subject to Case Management and Protective
Orders in MDL No. 1091, United States Dist. Ct.

Market Conduct Examination — 93—M02—008 — MetLife

Review of by office FIP Reports for 1991 — Examiner Ralph W. Burnham, 12/06/93

| Ofc. | Office | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Yr. |
|------|--------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| Nr. | Name | 90 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | Avg. |
| A15 | Greensburg Br. | 24.4 | 28.0 | 25.0 | 27.5 | 30.6 | 27.1 | 25.6 | 24.2 | 24.1 | 21.3 | 21.7 | 21.0 | 20.6 | 24.7 |
| A45 | Erie E. Br. | 15.6 | 11.7 | 16.9 | 16.6 | 16.1 | 15.2 | 14.0 | 15.7 | 17.1 | 17.6 | 17.1 | 17.6 | 17.4 | 16.3 |
| A55 | Erie W. Br. | 31.0 | 61.5 | 31.1 | 24.6 | 25.4 | 27.2 | 25.1 | 22.4 | 23.6 | 21.3 | 20.9 | 23.7 | 25.2 | 27.7 |
| A65 | Pleasant Hills Br. | 44.5 | 16.1 | 32.2 | 27.9 | 27.9 | 30.2 | 29.0 | 26.6 | 25.6 | | 23.4 | 25.7 | 26.2 | 26.6 |
| A75 | McKeesport Br. | 26.0 | 26.5 | 20.6 | 21.7 | 24.2 | 23.9 | 23.9 | 25.3 | 25.3 | 25.3 | 24.3 | 25.3 | 25.3 | 24.6 |
| B45 | Mon Valley Br. | 21.1 | 11.1 | 17.9 | 12.1 | 13.2 | 11.6 | 11.4 | 10.3 | 10.2 | 9.6 | 9.8 | 10.4 | 10.5 | 11.5 |
| B55 | Washington Br. | 21.0 | 16.6 | 26.1 | 27.0 | 25.0 | 25.0 | 20.7 | 22.6 | 19.6 | 14.0 | 14.9 | 14.1 | 12.2 | 20.2 |
| J15 | Monroeville Br. | 26.5 | 27.7 | 17.0 | 17.0 | 17.6 | 18.5 | 16.4 | 17.1 | 16.1 | 16.2 | 16.0 | 17.2 | 15.9 | 18.7 |
| J25 | Squirrel Hill Br. | 32.3 | 27.2 | 36.0 | 28.6 | 27.9 | 26.5 | 26.4 | 26.0 | 26.3 | 27.2 | 26.0 | 26.5 | 28.9 | 28.6 |
| J35 | Uniontown | 66.4 | 63.1 | 41.4 | 36.6 | 37.5 | 36.3 | 38.4 | 40.7 | 38.6 | 36.5 | 38.6 | 40.6 | 43.1 | 40.5 |
| J55 | Laurel Br. | 32.6 | 30.5 | 26.3 | 22.6 | 23.1 | 24.3 | 21.3 | 21.3 | 22.4 | 25.2 | 26.7 | 27.5 | 26.6 | 25.0 |
| L05 | New Kensington | 30.2 | 19.4 | 18.1 | 17.6 | 16.5 | 20.6 | 20.9 | 30.2 | 30.2 | 18.3 | 19.6 | 18.7 | 16.0 | 19.4 |
| L15 | Penn Hills Br. | 14.9 | 11.7 | 9.0 | 9.6 | 6.7 | 10.6 | 11.9 | 11.2 | 12.3 | 11.7 | 11.4 | 11.2 | 10.4 | 10.5 |
| L75 | Beaver Valley Br. | 13.6 | 13.3 | 10.3 | 16.4 | 13.6 | 14.7 | 15.4 | 18.3 | 15.2 | 13.6 | 14.6 | 14.7 | 14.6 | 15.6 |
| L85 | Center Br. | 27.3 | 6.3 | 11.0 | 10.3 | 11.0 | 12.5 | 12.9 | 13.1 | 13.0 | 14.4 | 15.6 | 16.1 | 16.5 | 13.3 |
| 003 | North Hills | 21.6 | 13.6 | 10.6 | 11.7 | 16.0 | 17.9 | 18.5 | 19.6 | 20.4 | 21.6 | 21.6 | 21.8 | 21.8 | 17.9 |
| 032 | Pittsburgh Bc. | 26.6 | 17.7 | 17.6 | 14.0 | 14.5 | | 18.2 | 18.6 | 16.7 | 16.4 | 16.6 | 16.5 | 16.6 | 16.4 |
| 055 | McKeesport | | | | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| 149 | N. Allegheny Br. | 27.7 | 30.7 | 25.0 | 22.6 | | 32.5 | 30.4 | 29.0 | 29.5 | 26.6 | 26.1 | 26.1 | 25.7 | 29.3 |
| 154 | West Hills Br. | 15.2 | 30.0 | 22.6 | | 22.3 | 20.9 | 22.6 | 24.6 | 24.3 | 25.0 | 24.5 | 24.4 | 25.0 | 25.0 |
| 15A | Cranberry Br. | | | | | 0.0 | 14.2 | 13.3 | 11.7 | 10.6 | 14.2 | 13.7 | 15.2 | 15.3 | 12.0 |
| 25A | Charters Br. | 27.2 | 12.5 | | 19.6 | 20.6 | 18.4 | 18.4 | 18.9 | 18.4 | 17.1 | 17.3 | 18.2 | 19.0 | 18.3 |
| 3?? | New Kensington | | | | | | | | | | | | | | |
| 34B | North Hills Br. | | | | | 11.5 | 10.4 | 9.5 | 9.8 | 10.6 | 12.6 | 12.6 | 12.3 | 11.2 | 11.2 |
| 4?B | Enterprise Br. | | | | 0.0 | 40.6 | 14.7 | 17.2 | 14.9 | 14.1 | 11.2 | 11.2 | 10.2 | 8.0 | 14.2 |
| 483 | East Hills Br. | 43.0 | 35.3 | 26.3 | 24.6 | 24.7 | 24.7 | 25.3 | 26.5 | 25.1 | 26.6 | 24.7 | 25.0 | 25.2 | 25.2 |
| 54B | Butler Br. | | | | | 0.0 | 1.9 | 3.6 | 5.1 | 4.6 | 5.2 | 4.5 | 5.5 | 5.5 | 4.0 |
| 544 | Sharon Br. | 22.6 | 21.6 | 17.5 | 24.4 | 24.2 | 25.1 | 21.9 | 19.6 | 16.5 | 16.4 | 16.2 | 19.6 | 20.7 | 21.2 |
| 73D | Armstrong Br. | | | | | | | | | | | | | | |
| 85B | Uniontown Br. | | | | | | | | | | | 0.0 | 7.6 | 11.4 | 6.3 |
| 94C | Mt. Lebanon Br. | | | | | | | | | | | | | | |
| 945 | Butler | 22.0 | 15.0 | 13.0 | 8.7 | 10.2 | 13.1 | 14.5 | 15.6 | 15.7 | 15.7 | 15.9 | 16.0 | 16.0 | 14.2 |
| 96C | Enterprise SPBO | 60.0 | 55.5 | 50.0 | 42.6 | 55.3 | 61.7 | 66.6 | 72.7 | 72.7 | 72.7 | 72.7 | 76.0 | 78.0 | 64.9 |
| | Region FIP Goal | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 |
| | Region Average | 27.6 | 26.6 | 22.6 | 20.4 | 20.4 | 20.6 | 20.5 | 21.7 | 20.7 | 20.3 | 19.7 | 20.6 | 20.6 | 20.1 |

M9371

M129779220050

Notice: "Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct."

| Ofc. Nr. | Office Name | Jan 92 | Feb 92 | Mar 92 | Apr 92 | May 92 | Jun 92 | Jul 92 | Aug 92 | Sep 92 | Oct 92 | Nov 92 | Dec 92 | Yr. Avg. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A15 | Greensburg Br. | 35.7 | 27.5 | 17.4 | 19.2 | 20.5 | 16.6 | 16.5 | 16.2 | 15.5 | 15.5 | 16.1 | 15.8 | 19.4 |
| A45 | Erie E. Br. | 11.7 | 9.1 | 9.1 | 10.1 | 10.2 | 14.8 | 15.6 | 16.4 | 16.6 | 16.4 | 16.6 | 16.4 | 14.6 |
| A55 | Erie W. Br. | 50.0 | 66.6 | 40.0 | 33.3 | 33.3 | 33.3 | 33.3 | 28.5 | 25.5 | 25.0 | 20.0 | 20.0 | 34.3 |
| A65 | Pleasant Hills Br. | | | | | | | | | | | | | |
| A75 | McKeesport Br. | | | | | | | | | | | | | |
| B45 | Mon Valley Br. | 10.7 | 11.7 | 11.0 | 11.9 | 9.6 | 11.4 | 11.6 | 11.7 | 12.1 | 12.1 | 12.1 | 12.5 | 11.6 |
| B55 | Washington Br. | 3.9 | 3.4 | 2.7 | 2.7 | 2.9 | 2.4 | 2.4 | 2.4 | 2.2 | 2.9 | 3.1 | 3.8 | 2.9 |
| J15 | Monroeville Br. | 27.2 | 9.2 | 9.5 | 11.9 | 12.3 | 10.9 | 12.2 | 14.4 | 14.3 | 13.9 | 13.5 | 13.5 | 13.6 |
| J25 | Squirrel Hill Br. | 72.0 | 90.0 | 49.5 | 46.4 | 45.5 | 44.0 | 39.3 | 41.7 | 39.4 | 36.7 | 35.5 | 34.2 | 45.1 |
| J35 | Uniontown | | 75.0 | 55.3 | 45.4 | 50.0 | 50.0 | 56.5 | 50.0 | 62.6 | 42.6 | 55.2 | 55.2 | 55.4 |
| J55 | Laurel Br. | 25.5 | 24.5 | 29.4 | 34.2 | 31.7 | 34.5 | 39.5 | 29.4 | 29.4 | 33.1 | 34.9 | 36.4 | 30.9 |
| L05 | New Kensington | 4.3 | 11.4 | 14.5 | 17.5 | 18.5 | 16.5 | 16.2 | 14.7 | 14.7 | 16.2 | 15.6 | 14.5 | 14.8 |
| L15 | Penn Hills Br. | 18.7 | 11.4 | 7.6 | 9.5 | 6.6 | 8.1 | 7.6 | 8.6 | 10.4 | 10.7 | 9.6 | 9.6 | 10.1 |
| L75 | Beaver Valley Br. | 18.3 | 23.3 | 16.1 | 11.5 | 14.9 | 14.1 | 14.9 | 14.6 | 14.8 | 14.4 | 14.4 | 14.4 | 15.9 |
| L85 | Center Br. | 50.0 | 13.0 | 21.5 | 23.5 | 23.5 | 21.2 | 19.5 | 19.5 | 17.7 | 18.5 | 18.0 | 17.9 | 21.9 |
| 903 | North Hills | | | | | | | | | | | | | |
| 032 | Pittsburgh So. | 21.2 | 30.1 | 21.6 | 29.0 | 22.4 | 21.0 | 30.7 | 21.5 | 21.0 | 20.5 | 20.4 | 20.4 | 22.6 |
| 035 | McKeesport | | | | | | | | | | | | | |
| 145 | N. Allegheny Br. | 17.5 | 7.2 | 17.5 | | | 21.5 | 21.7 | 21.5 | 22.0 | 21.5 | 20.7 | 20.3 | 20.0 |
| 15A | West Hills Br. | 16.5 | 5.0 | 6.7 | | 10.1 | 10.2 | 10.7 | 11.5 | 11.2 | 10.3 | 10.7 | 10.4 | 10.5 |
| 16A | Cranberry Br. | 0.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 53.3 | 33.3 | 50.0 | 50.0 | 72.2 |
| 25A | Cherbera Br. | 25.4 | | | 20.9 | 17.5 | 15.0 | 15.0 | 14.5 | 14.7 | 14.7 | 15.0 | 15.4 | 17.5 |
| 3.5 | New Kensington | | | | | | | | | | | | | |
| 34B | Nor Hills Br. | 10.5 | 11.2 | 12.5 | 13.3 | 14.0 | 12.9 | 12.5 | 13.6 | 13.1 | 14.0 | 13.6 | 12.6 | 13.3 |
| 44B | Enterprise Br. | | 3.1 | 10.6 | 11.9 | 12.7 | 11.6 | 12.9 | 14.2 | 15.0 | 15.4 | 15.5 | 14.1 | 12.4 |
| 483 | East Hills Br. | 25.0 | 18.8 | 17.5 | 20.5 | 20.7 | 22.9 | 22.1 | 24.4 | 24.3 | 25.2 | 25.0 | 25.4 | 22.4 |
| 54B | Butler Br. | 6.7 | 6.3 | 6.6 | 4.6 | 4.2 | 4.6 | 4.3 | 3.9 | 4.1 | 3.8 | 3.6 | 3.8 | 4.9 |
| 544 | Sharon Br. | 51.5 | 10.3 | 16.5 | 14.0 | 13.7 | 14.1 | 13.5 | 13.7 | 13.0 | 12.0 | 10.7 | 9.6 | 15.1 |
| 73D | Armstrong Br. | | | | | | | | | | | | | |
| 858 | Uniontown Br. | 8.5 | 15.4 | 11.2 | 12.7 | 11.9 | 13.5 | 14.1 | 14.6 | 14.4 | 14.3 | 14.7 | 15.7 | 13.5 |
| 94C | Mt. Lebanon Br. | | | | | | | 4.1 | 14.6 | 13.1 | 16.6 | 16.0 | 10.2 | 14.5 |
| 945 | Butler | | | | | | | | | | | | | |
| 96C | Enterprise SPSO | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | Region FIP Goal | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 |
| | Region Average | 23.0 | 24.2 | 23.1 | 22.0 | 22.5 | 22.2 | 21.3 | 21.5 | 18.6 | 18.5 | 18.0 | 18.7 | 21.2 |

- 41 -

M9371

M129779220051

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct.

**Market Conduct Examination — 93-M02-008 — MetLife**

Review of by office FIP Reports for 1993 — Examiner Ralph W. Burnham, 12/06/93

| Ofc. Nr. | Office Name | Jan 93 | Feb 93 | Mar 93 | Apr 93 | May 93 | Jun 93 | Jul 93 | Aug 93 | Sep 93 | Yr. Avg. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| A15 | Greensburg Br. | 45.4 | 20.6 | 11.2 | 20.6 | 16.5 | 16.4 | 16.3 | 14.6 | 11.9 | 19.3 |
| A45 | Erie E. Br. | 20.9 | 19.5 | 15.2 | 11.7 | 10.6 | 8.2 | 9.0 | 6.1 | 8.0 | 12.3 |
| A55 | Erie W. Br. | | | | | | | | | | |
| A65 | Pleasant Hills Br. | | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0. | 0.0 | 0.0 |
| A75 | McKeesport Br. | | | | | | | | | | |
| 645 | Mon Valley Br. | | | | | | | | | | |
| B55 | Washington Br. | 20.0 | 9.2 | -8.2 | 7.1 | 7.6 | 9.9 | 9.0 | 10.4 | 10.9 | 10.0 |
| J15 | Monroeville Br. | 21.0 | 12.6 | 6.5 | 7.6 | 6.0 | 7.0 | 8.3 | 7.9 | 7.6 | 9.5 |
| J25 | Squirrel Hill Br. | 18.1 | 19.2 | 20.6 | 23.3 | 21.7 | 21.7 | 21.5 | 22.6 | 23.1 | 21.0 |
| J35 | Uniontown | | | | | | | | | | |
| J55 | Laurel Br. | 100.0 | 33.3 | 25.0 | 14.2 | 5.8 | 5.8 | 5.5 | 5.5 | 4.7 | 22.2 |
| L05 | New Kensington | 3.3 | 9.0 | 7.9 | 5.1 | 5.0 | 5.4 | 5.2 | 5.1 | 5.2 | 5.8 |
| L15 | Penn Hills Br. | 6.2 | | .2 | 6.2 | 8.1 | 10.5 | 9.4 | 6.6 | 6.4 | 6.3 |
| L75 | Beaver Valley Br. | 33.3 | 21.6 | 19.4 | 19.3 | 18.2 | 17.0 | 16.9 | 14.1 | 14.3 | 19.3 |
| L85 | Center Br. | 21.7 | 27.6 | 19.4 | 21.3 | 18.3 | 16.6 | 17.9 | 16.9 | 17.0 | 19.7 |
| 003 | North Hills | | | | | | | | | | |
| 032 | Pittsburgh Br. | 25.6 | 16.1 | 14.2 | 13.4 | 11.9 | 11.2 | 11.7 | 13.2 | 15.1 | 14.8 |
| 055 | McKeesport | | | | | | | | | | |
| | Allegheny Br. | | 13.6 | 10.2 | | 10.8 | 10.4 | 11.1 | 11.6 | 12.2 | 12.6 |
| 13. | West Hills Br. | 18.7 | 6.0 | | 5.8 | 6.0 | 6.0 | 6.3 | 7.0 | 5.7 | 7.5 |
| 19A | Cranberry Br. | | | | | | | | | | |
| 25A | Chartiers Br. | 9.3 | | 6.2 | 6.2 | 10.1 | 9.1 | 9.3 | 6.6 | 8.6 | 9.1 |
| 516 | New Kensington | | | | | | | | 0.0 | 0.0 | 0.0 |
| 34B | No. Hills Br. | 8.6 | 10.6 | 9.0 | 11.0 | 10.1 | 9.1 | 8.3 | 8.2 | 7.6 | 9.3 |
| 44B | Enterprise Br. | 10.5 | 7.6 | 12.6 | 12.0 | 13.6 | 12.1 | 11.2 | 10.4 | 10.5 | 11.2 |
| 48J | East Hills Br. | 26.0 | 23.6 | 20.6 | 20.4 | 23.3 | 24.0 | 24.5 | 36.2 | 28.3 | 23.6 |
| 54B | Butler Br. | 10.0 | 6.0 | 7.1 | 6.4 | 5.9 | 6.1 | 5.7 | 4.8 | 5.3 | 6.4 |
| 544 | Sharon Br. | 40.9 | 20.3 | 11.0 | 10.1 | 9.3 | 7.6 | 7.9 | 7.7 | 6.1 | 13.7 |
| 73D | Armstrong Br. | | | | | | | | | 0.0 | 0.0 |
| 65B | Uniontown Br. | 26.9 | 19.6 | 22.2 | 23.0 | 22.4 | 22.5 | 29.4 | 23.5 | 22.6 | 23.0 |
| 94C | Mt. Lebanon Br. | 34.4 | 27.9 | 26.0 | 23.0 | 21.1 | 21.0 | 22.0 | 20.5 | 16.8 | 23.6 |
| 945 | Butler | | | | | | | | | | |
| 96C | Enterprise SPSO | | | | | | | | | | |
| | | | | | | | | | | | |
| | Region FIP Goal | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 | 15.0 |
| | Region Average | 24.7 | 16.1 | 13.0 | 12.9 | 12.1 | 11.7 | 11.6 | 11.1 | 10.5 | 12.6 |

— 42 —

M9371

M129779220052

## - AGENT ACTIVITIES -

Based upon the apparent marketing problems involving replacement issues, it was determined a sampling of consumers in the Western Pennsylvania Region would be interviewed in order to obtain a consumer perspective of MetLife marketing activity.

Interviews with MetLife policyholders showed deceptive solicitations being utilized by MetLife sales representatives to induce the replacement of existing insurance or annuities with new policies of insurance.

Consumer perception of solicitations involving the use of existing policy values as a source of funding for new policies resulted in consumers believing they would receive paid-up policies of insurance, or policies which had free or reduced premium benefit aspects. Results of contact with sixty-eight (68) consumers produced the following results:

- The perception of MetLife providing free insurance or special offers was noted on seven (7) occasions.
- The perception of MetLife providing a paid-up policy was noted on eighteen (18) occasions.
- The perception of MetLife offering a higher death benefit policy for little or no additional money was noted on thirty-six (36) occasions.

- 43 -

M9371

M129779220053

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct.

Sales representatives utilized illustrations to show policyholders how, by transfer of their existing policy cash values, new policies of insurance would be, or would become, "paid-up." Results of interviews conducted with consumers selected for interview are reflected on the chart contained on the next page.

- 44 -

M9371

M129779220054

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091. United States Dist. Ct."

Consumer Interview
93-M02-005

Subject: Solicitations and representations impacting on lapse, surrender or forfeiture of existing policies of insurance and annuities.

Page 1

| Consumer Ref | Policy Number | Lapse Date | Repl PH Red? | Issue Date | Del Date | App'd Form | Replacement Issue | Solicitation Method | Funds From |
|---|---|---|---|---|---|---|---|---|---|
| FL.1 | | 3/15/92 | N | 4/1/92 | 7/22/92 | N | N | 4,5 | Matured annuity of Met |
| FL.2/6,12 | | JL 1/2/92 | N | 3/6/92 | Unk | N | Y | 2,3c | Lapse or Surrender |
| FL.3 | | JL 2/2/92 | N | 3/15/92 | 8/25/92 | N | Y | 2,3b&c | Lapse or Surrender |
| FL.4 | | JL 3/25/92 | N | 5/28/92 | 8/25/92 | N | Y | 6 (?) | Met Annuity interest |
| FL.5 | | JL 3/3/92 | N | | Unk | N | Y | 2,3a&c | Lapse or Surrender |
| FL.6 | | A 2/5/92 | N | 3/6/92 | Unk | N | Y | 4 | Met annuity interest |
| FL.7 | | PR 2/3/92 | N | 3/23/92 | Unk | N | Y | 2 | Lapse or Surrender |
| FL.8 | | PR 3/3/92 | N | 3/27/92 | Unk | N | Y | 2 | Lapse or Surrender |
| FL.9 | | PR 2/27/92 | N | 3/8/92 | Unk | N | N | 5 | Matured annuity of Met |
| FL.10 | | JL 1/30/92 | N | 3/15/92 | Unk | N | Y | 3c,5 | Met annuity interest |
| FL.11 | | M 1/21/92 | N | 2/24/92 | 3/17/92 | N | Y | 0 | Met annuity interest |
| FL.12 | | 2/13/92 | N | 3/23/92 | Unk | N | N | 4 | Inheritance |
| FL.13 | | 11/3/90 | N | 12/3/90 | 3/21/90 | Y | N | 5 | Lapse or Surrender |
| FL.14 | | E3 Unk | Unk | Unk | Unk | Unk | Unk | ? | From the annuities. |
| FL.14 | | E3 5/28/92 | N | 4/29/92 | None | N | N | 4 | of insurance of brother |
| FL.14 | | E3 5/28/92 | N | 4/6/92 | None | N | N | 4 | Frank J. Slipper |
| FL.15 | | A 8/4/92 | N | 6/21/92 | 12/31/92 | N | N | 5 | Lapse or Surrender |
| FL.15 | | M 8/4/92 | N | 6/14/92 | 12/31/92 | N | Questionable | 0 | Surrender to Met M Funds |
| FL.16 | | JL Unk | Unk | 1/18/92 | Unk | N | Unk | 4 | $250K rolls to $1M |
| FL.17 | | JL 4/20/92 | N | 5/28/92 | Unk | N | Unk | Unk | Unk |
| FL.17 | | JL Unk | Unk | 4/28/92 | Unk | N | Unk | Unk | Unk |
| FL.18 | | JL 2/20/92 | Y | 3/2/92 | Unk | N | Unk | Unk | Unk |

Solicitation: 1) To purchase additional rider or add-on to existing policy.
2) To obtain a new policy with greater death benefit, at a cost the same or slightly greater than the cost of the insurance being replaced.
3) Special offer – a) Excess Profits   b) Savings by Company due to reduced administrative costs   c) Free Insurance.
4) Offset or reduce tax effects.
5) Promise of a paid-up policy with no additional out-of-pocket expense.
6) Promise of a paid-up policy at some future time, with no out-of-pocket expense.

REDACTED
CONFIDENTIAL
POLICYHOLDER
INFORMATION

- 45 -

M9371

M129779220055

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct.

The following case histories, based upon actual consumer interviews, are illustrative of how MetLife's marketing approach was handled, and perceived by consumers.

Case Number 1:  Retired male and working wife, ages 61 and 60, purchased a $500,000.00 Survivorship Whole Life Policy, in reliance upon sales representative's, J. Joel Sherman and Joseph Phillips, statements that two (2) separate payments of about $37,000.00 would be sufficient to create a policy having a cash value of about $500,000.00 in ten (10) years.  The purchased policy was to be assigned to the couple's children and be a method of estate protection.  The couple agreed to make the first $37,000.00 payment from their non-insurance assets and make the second and final payment upon maturity of an existing MetLife annuity.

Sales illustrations left in the consumer home, combined with policy documents and MetLife notices, offered a bewildering array of information to the couple:

A Summary illustration showed a total annual payment of $37,669.13, comprised of $10,345.00 premium on the basic plan and payment of $27,324.13 to a Paid Up Additions Rider (PUAR) to purchase $117,346.00 in paid-up additional insurance.

- A Simplified APP Ledger illustration showed two (2)

- 46 -

M9371

M129779220056

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct.

annual payments of $37,670.00 providing an illustrative cash value at policy year ten (10) of $125,791.00 and an illustrative death benefit at policy year ten (10) of $567,932.00.

- An Accelerated Payment Plan illustration showed two (2) annual payments of $37,670.00, with dividends applied to purchase additional insurance, providing a guaranteed cash value at policy year ten (10) of $99,000.

- A PUAR illustration showed two (2) annual payments of $27,324.00 providing no guaranteed cash value at policy year nine (9).

- A Summary illustration showed, for policy year ten (10), a total of $75,339.00 annual premium paid into the policy, $25,015.00 in earned annual dividends, and the purchase of $67,930 in additional insurance, yielding a guaranteed cash value of $99,000.00 and cash value of additional insurance of $26,971.00 for a total illustrative cash value of $125,791.00.

- Illustrations noted that dividends were based on the September 1990 scale, which used current interest, mortality and expense rates, and that illustrative figures were not guarantees or estimates for the future.

The couple accepted delivery of the new policy, which showed an annual life insurance premium of $11,685.00 and

- 47 -

M9371

M129779220057

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091. United States Dist. Ct.

initial payment of $39,000.00 into the PUAR.
Illustrations attached to the delivered policy showed a
guaranteed cash value at year ten (10) of $108,000.00 for
the basic policy, and guaranteed additional insurance of
$894,044.00 with a cash value of $382,516.00 through the
PUAR.  A non-guaranteed PUAR illustration showed a cash
value of $459,359.00 at policy year ten (10), confirming
the consumer's understanding of the MetLife sales
solicitation.

The couple made actual payments of $39,774.13 from
their non-insurance assets and $41,964.05 from their
MetLife annuity, with the understanding from Joseph
Phillips, that they could withdraw the excess paid in at
any time without any penalty.

When interviewed, the couple was found to be
attempting, with no success, to learn from their MetLife
sales representatives the whereabouts of the $81,738.18
paid into the policy.  A MetLife letter had informed them
of a payment of $30,279.05 to a PUAR, and a subsequent
PUAR annual statement reflected total payments of
$27,144.13.  The total did not equal their payments.  They
had also received notice of a $2,105.00 withdrawal from
their annuity.

- 48 -

M9371

M129779220058

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct.

MetLife subsequently informed the Insurance Department that $2,105.00 was taken from the couple's annuity and applied to the new contract as two (2) month's premium. From the $39,774.13 payment, a policy fee was paid, $10,525.00 was applied to the new contract as premium, and $27,144.13 was paid to the PUAR. From the $41,964.05 annuity surrender, $11,685.00 was paid to the second year premium and $30,279.05 was paid to the PUAR.

The couple's confusion was caused by their thinking in terms of two (2) "payments" while the contract required both premium payment and deposits to the PUAR.

The contract provided for payment of dividends as a non-guaranteed benefit, and a payment of a guaranteed six and one-half percent (6-1/2%) interest on the PUAR. The contract also provided for an expense charge of five percent (5%) on payments to the PUAR.

Given the couple's understanding that they would only be required to make two (2) payments, future annual premium payments for the contract would be taken by MetLife from the cash value of the contract's PUAR and upon exhaustion of the PUAR, would then be taken from the cash value of the contract developed through purchase of additional insurance by dividend earnings.

- 49 -

M9371

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct.

M129779220059

Since dividends are not guaranteed by MetLife, any solicitation involving a representation of definite future contract performance is misleading. At issue is whether the contract, as solicited or delivered, would allow the contract to function to maturity.

MetLife subsequently informed the Insurance Department that the Survivorship Whole Life policy is a level premium participating (dividend paying) policy providing coverage for two (2) insureds. The death benefit of $500,000.00 would only be payable upon the death of the second insured. Premiums would be payable to the policy anniversary on which the younger insured attained age 100. The policy, as solicited and sold, would not perform as represented.

Confused by the illustrations, the couple had been reduced to reliance upon the sales representative's statements that the new policy, costing approximately $74,000.00, would be in place for their lifetimes and would protect and convey their estate to their children.

Case Number 2: A widowed female, age 66, purchased a $500,000.00 Flexible Premium Life Policy in order to protect her assets and provide for her daughter, agreeing to pay $50,000.00 from surrender of her MetLife annuity, relying upon sales representatives J. Joel Sherman and

- 50 -

M9371

M129779220060

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091. United States Dist. Ct.

Mary DeCaria's statements that the policy would not
require further payment.  The application did not reflect
a replacement situation.

The woman accepted delivery of the new policy, which
reflected an annual premium payment of $17,730.00.  The
illustration included with the policy, reflected a
guaranteed cash value of $1,820.01 in year ten (10) and an
illustrative cash value of $105,089.5% based on an
illustrative rate of 7.45%.  The woman then paid the
proceeds of her entire MetLife annuity totaling
$61,253.56, into the new contract since she was given the
understanding by MetLife sales representatives she could
withdraw the $11,253.56 excess at any time.

The delivered contract showed that withdrawal charges
ranged from $11,000.00 in policy year one (1) to $1,000.00
at policy year fifteen (15).  Withdrawal of the "excess"
paid into the contract could not have been accomplished
without cost until policy year sixteen (16).

MetLife informed the Insurance Department that the
annuity was surrendered and, after a three percent (3%)
surrender charge, paid $61,253.56 by check to MetLife.
Payment of $61,253.56 was made to the new contract, with
an expense charge of 4% taken by MetLife, and net deposit
of $58,803.42 made to the policy accumulation fund.

- 51 -

M9371

M129779220061

Notice: Production and Use Subject to Case Management and Protective
Orders in MDL No. 1091, United States Dist. Ct.

MetLife's procedures are such that expense charges on replacement business are waived if a loan or surrender is taken of an existing policy at the time of issue or within six (6) months of issue of the new policy. The woman's application, as completed by MetLife sales representatives, did not indicate replacement of an annuity was intended in conjunction with the sale of the new policy.

At issue is whether the policy, given only a single payment of $50,000.00, would perform as represented. MetLife subsequently informed the Insurance Department that the policy, with a single payment of $61,253.56, would not remain in force as intended by the insured.

Case Number 3: A married male, age 61, planning for his retirement, agreed to purchase a $25,000.00 Life to 95 Policy, with a $45,000.00 "rider," relying upon the statements of MetLife sales representatives James Crooks and Alan Corn, that surrender of five (5) existing MetLife insurance policies would be sufficient to obtain the new policy without further cost.

Replacement was not indicated on the application by MetLife sales representative James Crooks, who took three (3) existing policies for surrender. The MetLife sales representatives left two (2) policies in the applicant's

- 52 -

M9371

Notice: "Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct."

home, to remain in force until annual dividends were paid
by MetLife.  Upon MetLife's payment of dividends by check
to the insured, the sales representatives collected the
dividends for payment on the new policy.

The insured accepted delivery of the new policy in
reliance upon sales solicitation assurances that the new
policy would provide a $25,000.00 face benefit and an
additional $45,000.00 benefit through a rider, completely
funded by cash values of the five (5) previous policies,
without any further payment.  The insured's belief that
there was no further cost was confirmed, when his $118.00
paid with the application for the new policy was
"refunded" to him by the MetLife agent.

MetLife subsequently informed the Insurance Department
that while the new policy was issued in August 1992,
surrender of the three (3) policies occurred in March and
May 1993.  Of the two (2) remaining policies, one (1) was
surrendered in October 1993 and the other remains in force
with a cash value of $2,697.78.  The issued contract was
amended to require annual premium payments of $1,814.75.
The total amount paid into the PUAR of the contract was
$7,414.64.

The conduct of MetLife sales representatives was such
as to allow a conclusion that replacement activity was

- 53 -

M9371

M129779220063

Notice: Production and Use Subject to Case Management and Protective
Orders in MDL No. 1091. United States Dist. Ct.

concealed through falsification of application and delay
of policy surrenders.  Given the annual premium cost of
the Life to 95 policy of $1,814.75, and surrender of the
remaining policy for payment toward the new policy, the
concern was whether the new contract would perform as
represented.  MetLife subsequently informed the Insurance
Department that the contract would not have sufficient
value to remain in force as intended by the insured,
without any further payments.

Case Number 4:  A married male, age 52, planning for
his retirement, discussed the purchase of a $100,000.00
Flexible Premium Life Policy with MetLife sales
representatives J. Joel Sherman and Theodore Stavrakis who
proposed using the cash values from an existing $25,000
policy to fund the new policy.

The insured, was currently paying $65.25 per month for
a $25,000.00 policy and understood from the MetLife sales
representatives that by applying the existing policy's
cash value toward the new policy, the new required premium
payment would be $65.25 per month, the same as he was
currently paying.  Being reluctant to commit to the
purchase, the insured was asked, and agreed, to undergo a
medical examination to determine if he would be eligible
for the higher benefit policy.

- 54 -

M9371

M1-29779220064

Notice: Production and Use Subject to Case Management and Protective
Orders in MDL No. 1091, United States Dist. Ct.

A new $200,000.00 Flexible Premium Life Policy was delivered instead of the $100,000 policy originally discussed. The insured was told the $200,000.00 benefit had been offered by MetLife as a result of the insured's excellent examination results. Acceptance of the new policy was agreed to in reliance upon the MetLife sales representative's statements that the $175,000.00 in increased benefit, over and above the original $25,000, would be without any increase in premium cost.

The proposed replacement of the existing policy was not disclosed on the application for the new policy. The new policy was issued in March 1992, with dividends being taken from the older policy in March 1992 and full surrender delayed until August 1993.

MetLife subsequently informed the Insurance Department that the cash values transferred from the existing policy, plus premium payments equal to $65.25 per month, would not be sufficient to allow the new policy to remain in force as intended by the insured.

Case Number 5: A Married couple, agreed to purchase a $175,000.00 Flexible Premium Life Policy insuring the husband, age 49. The couple agreed to surrender two (2) existing policies of insurance and apply the surrender values to the new policy, in reliance upon MetLife sales

- 55 -

M9371

M129779220065

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091. United States Dist. Ct.

representatives J. Joel Sherman and Theodore Stavrakis'
statements that MetLife had excess profits which it wished
to return to its customers in the form of free insurance.
The couple understood the new policy, upon surrender of
the existing policies, would require a quarterly payment
of $579.50.

The couple accepted delivery of a $250,000.00 Flexible
Premium Life Policy. The explanation provided by the
MetLife sales representative was that the $250,000.00
benefit would reduce to $175,000.00 in one (1) or two (2)
years, ending their free benefit. The couple also
understood the $175,000.00 benefit would be paid-up after
a certain period of time, through their quarterly payment
of $579.50.

MetLife subsequently informed the Insurance Department
that the cash value of the existing policy, plus quarterly
payments of $579.50, would not be sufficient to allow the
new policy to remain in force as intended by the insured,
nor would it allow the policy to become paid-up at any
point in time.

Case Number 6: A married male, age 46, planning for
retirement, agreed to purchase a $200,000.00 Flexible
Premium Life Policy which was to be paid through surrender
of two (2) existing policies plus a premium payment

- 56 -

M9371

M129779220066

Notice: "Production and Use Subject to Case Management and Protective
Orders in MDL No. 1091. United States Dist. Ct."

slightly more than the $60.00 monthly which was currently being paid on existing policies.

It was the insured's understanding that the increased death benefit would be with little or no additional premium cost due to an offer being made to long time MetLife customers and was possible through savings realized by MetLife due to reduced administrative costs. In reliance upon the statements of MetLife sales representative Joseph Phillips, the insured accepted delivery of the new policy, believing the policy required payment of only $60.00 per month to policy anniversary at age 95.

MetLife subsequently informed the Insurance Department that the cash value of existing policies, plus monthly payments of $60.00, would not be sufficient to allow the new policy to remain in force as intended by the insured.

In the preceding case histories, soliciting MetLife sales representatives had denied replacement on the applications, and did not disclose the proposed surrender or use of existing insurance or annuities. Other noted irregularities were:

- Policies were either removed from customer homes or were left with insureds, with instructions to discard the policies.

- 57 -

M9371

M129779220067

Notice: "Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct."

- Sales representatives informed customers that existing
  policies were to be left in place until policy
  anniversary, and not immediately surrendered, in order
  to earn dividends.
- Insureds were instructed to disregard MetLife
  annual premium or lapse notices, which were explained
  by MetLife sales representatives as computer errors.
- MetLife checks for values taken from existing policies
  were routed through consumer homes in attempts to
  conceal replacement activity in conjunction with the
  sale of a new policy.
- Policies were not countersigned or dated at delivery
  in three (3) of the six (6) cited cases.  Where
  delivered policies had been countersigned and dated at
  delivery, two (2) of the three (3) cases showed
  untimely delivery.

- FINDINGS AND CONCLUSIONS -

The observed pattern of deceptive solicitations and
concealed replacements by MetLife sales representatives
appears to have been for the purpose of increasing their
commissions.  Replacement solicitations were such as to
cause policyholders, directly or indirectly, to believe
that by using their existing policy values to purchase new
insurance they were to receive paid-up policies, free
coverage, or increased coverage at little or no additional
cost.

- 58 -

M9371

M129779220068

Notice: Production and Use Subject to Case Management and Protective
Orders in MDL No. 1091, United States Dist. Ct.

## VIII.  SALES AND ADVERTISING

### - AGENT SALES PRACTICES -

In order to assess the marketing practices utilized by MetLife sales representatives during the experience period, review was made of their sales methods and advertising materials.  The following marketing practices and procedures were utilized by MetLife sales representatives.

Point of Sale Illustrations:  (see pages 63 - 68)

Example:  A proposed policy illustration (see page 63) dated 2/25/9?, for a $50,000.00 Flexible Premium Life policy, showing a single payment of $2,260.00 was used during a MetLife sales solicitation.

The illustration was used to support a sales solicitation for a paid-up policy, and clearly depicted a proposed single payment of $2,260.00 and the face amount benefit of the policy.  The illustration also identified both the MetLife sales representative William R. Sabo, and MetLife.

The illustration depicted an illustrative rate of 7.45% and a guaranteed rate of 4.0%, without further disclosures.  While the illustrative rate column steadily

- 59 -

M9371

M129779220069

Notice: Production and Use Subject to Case Management and Protective
Orders in MDL No. 1091. United States Dist. Ct.

gained in surrender value, the guaranteed rate column ceased to have a surrender value at policy year twenty-three (23).  Disclosures were lacking as to withdrawal charges, performance at illustrative rates between 4.0% and 7.45%, and expense charges.

Consumer concerns over the performance of the promised paid-up policy were answered, and the sales solicitation reinforced, with a written assurance from MetLife sales manager John P. Lewis (see page 55).  MetLife subsequently advised the consumer the policy would not become paid-up and refused to honor the oral and written assurances and representations provided by the MetLife agent.

Use of this type of illustration, depicting future performance based only upon "current interest" rates, by MetLife sales representatives has the effect of misleading consumers.  Stating future performance, based upon anything other than guaranteed rates, has the effect of implying a guarantee.

While MetLife may have expected their sales representatives to explain guaranteed rates, as compared to current or projected rates, it is not inconceivable that MetLife representatives would dwell on, or the consumer would focus upon, the illustrative rates.  In this particular case, the illustrated rate of 7.45% in

- 60 -

M9371

M129779220070

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct.

February 1992 was held at issue of the policy in March 1992, but then declined to 7.2% in April 1992. The rate then fell to 6.25% as of policy anniversary in March 1993.

Example: An insurance proposal (see page 66), in the form of a typed comparison of existing and proposed insurance, was used during a sales solicitation which promised a higher death benefit policy through the use of existing policy values and continued premium payment at a rate of $65.25 per month. The MetLife sales representative J. Joel Sherman and MetLife were both identified on the sales proposal.

The proposal identified only the existing policy's face amount and monthly premium while failing to disclose the cash value of the policy, the policy's benefits as to satisfaction of contestability and suicide clause, or the manner in which the values of the policy were to be taken and any charges or tax consequences involved in such transaction. The proposed policy was identified only as "Insurance Protection", without identification as to policy type or form number, or statement of premium cost. The proposal also contained an assumption that a disability waiver rider would be taken and did not disclose, or identify the feature as being optional, or the cost associated with the rider.

- 61 -

M9371

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct.

The proposal depicted the "Current Interest" as 7.50% without any further disclosures. Tax implications of the proposed transaction were limited solely to the statement that "Interest Earned is: Tax Deferred".

The consumer's later request for a policy illustration, after being unable to locate any illustration after departure of the MetLife sales representative, was responded to with a policy illustration for a $200,000.00 Flexible Premium Life policy which reflected a 7.45% illustrative rate. Annotations contained on the illustration indicate the discussion focused only on the illustrative rates (see page 67).

Example: An insurance proposal (see page 68), was used during the solicitation of a higher death benefit policy having a "free" insurance benefit.

The typed proposal, while identifying both MetLife sales representative J. Joel Sherman and MetLife, failed to fully explain the benefits of the existing insurance. The proposal also failed to fully identify and make proper disclosures concerning the proposed insurance.

- 62 -

M9371

M129779220072

Notice: "Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct."

PENNSYLVANIA     MTFQ000000479765

PREPARED FOR [redacted] BY RANDY SABO
PLAN: FLEXIBLE-PREMIUM LIFE
INSURED: CLASSIFICATION STANDARD NONSMOKER   AGE 25   SEX FEMALE

SPECIFIED FACE AMOUNT: $50,000

DEATH BENEFIT OPTION A

MODE OF PREMIUMS: ANNUAL

METROPOLITAN TRANSFER AMT: 785

| END OF POLICY YEAR | PLANNED PREM PAYABLE/ WITHDRAWAL(-) DURING YEAR | SPECIFIED FACE AMOUNT | ILLUSTRATIVE@ 7.45% | | GUARANTEED 4.00% | |
|---|---|---|---|---|---|---|
| | | | SURRENDER VALUE | DEATH BENEFIT | SURRENDER VALUE | DEATH BENEFIT |
| | 2,260 | 50,000 | 1,883 | 50,000 | 1,846 | 50,000 |
| | 0 | 50,000 | 1,932 | 50,000 | 1,818 | 50,000 |
| | 0 | 50,000 | 1,983 | 50,000 | 1,788 | 50,000 |
| | 0 | 50,000 | 2,037 | 50,000 | 1,753 | 50,000 |
| | 0 | 50,000 | 2,091 | 50,000 | 1,716 | 50,000 |
| TOTAL | 2,260 | | | | | |
| | 0 | 50,000 | 2,206 | 50,000 | 1,724 | 50,000 |
| | 0 | 50,000 | 2,267 | 50,000 | 1,679 | 50,000 |
| | 0 | 50,000 | 2,334 | 50,000 | 1,628 | 50,000 |
| | 0 | 50,000 | 2,405 | 50,000 | 1,573 | 50,000 |
| | 0 | 50,000 | 2,478 | 50,000 | 1,512 | 50,000 |
| TOTAL | 2,260 | | | | | |
| | 0 | 50,000 | 2,605 | 50,000 | 1,493 | 50,000 |
| | 0 | 50,000 | 2,687 | 50,000 | 1,416 | 50,000 |
| | 0 | 50,000 | 2,769 | 50,000 | 1,329 | 50,000 |
| | 0 | 50,000 | 2,858 | 50,000 | 1,229 | 50,000 |
| | 0 | 50,000 | 2,951 | 50,000 | 1,116 | 50,000 |
| TOTAL | 2,260 | | | | | |
| | 0 | 50,000 | 3,0?? | 50,000 | 1,037 | 50,000 |
| | 0 | 50,000 | 3,1?? | 50,000 | 893 | 50,000 |
| | 0 | 50,000 | 3,256 | 50,000 | 730 | 50,000 |
| | 0 | 50,000 | 3,399 | 50,000 | 549 | 50,000 |
| | 0 | 50,000 | 3,505 | 50,000 | 348 | 50,000 |
| TOTAL | 2,260 | | | | | |
| | 0 | 25,000 | 3,651 | 25,000 | 220 | 25,000 |
| | 0 | 25,000 | 3,805 | 25,000 | 81 | 25,000 |
| | 0 | 25,000 | 3,969 | 25,000 | 0 | 0 |
| | 0 | 25,000 | 4,144 | 25,000 | 0 | 0 |
| | 0 | 25,000 | 4,329 | 25,000 | 0 | 0 |
| TOTAL | 2,260 | | | | | |
| | 0 | 25,000 | 4,527 | 25,000 | 0 | 0 |
| | 0 | 25,000 | 4,736 | 25,000 | 0 | 0 |
| | 0 | 25,000 | 4,958 | 25,000 | 0 | 0 |
| | 0 | 25,000 | 5,192 | 25,000 | 0 | 0 |
| | 0 | 25,000 | 5,441 | 25,000 | 0 | 0 |
| TOTAL | 2,260 | | | | | |
| | 0 | 25,000 | 5,703 | 25,000 | 0 | 0 |
| | 0 | 25,000 | 5,981 | 25,000 | 0 | 0 |
| | 0 | 25,000 | 6,275 | 25,000 | 0 | 0 |
| | 0 | 25,000 | 6,584 | 25,000 | 0 | 0 |
| | 0 | 25,000 | 6,911 | 25,000 | 0 | 0 |
| TOTAL | 2,260 | | | | | |

METROPOLITAN LIFE INSURANCE COMPANY    2/25/92

M9371

M129779220073

MET LIFE CONFIDENTIAL

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct.

PENNSYLVANIA

PREPARED FOR ██████████ BY RANDY SABO

| END OF POLICY YEAR | PLANNED PREM PAYABLE/ WITHDRAWAL(−) DURING YEAR | SPECIFIED FACE AMOUNT | ILLUSTRATIVE 7.45% SURRENDER VALUE | DEATH BENEFIT | GUARANTEED 4.00% SURRENDER VALUE | DEATH BENEFIT |
|---|---|---|---|---|---|---|
| 36 | 0 | 25,000 | 7,254 | 25,000 | 0 | 0 |
| 37 | 0 | 25,000 | 7,613 | 25,000 | 0 | 0 |
| 38 | 0 | 25,000 | 7,988 | 25,000 | 0 | 0 |
| 39 | 0 | 25,000 | 8,380 | 25,000 | 0 | 0 |
| AGE 65 | 0 | 25,000 | 8,790 | 25,000 | 0 | 0 |
| TOTAL | 2,260 | | | | | |
| 41 | 0 | 25,000 | 9,212 | 25,000 | 0 | 0 |
| 42 | 0 | 25,000 | 9,652 | 25,000 | 0 | 0 |
| 43 | 0 | 25,000 | 10,113 | 25,000 | 0 | 0 |
| 44 | 0 | 25,000 | 10,596 | 25,000 | 0 | 0 |
| 45 | 0 | 25,000 | 11,103 | 25,000 | 0 | 0 |
| TOTAL | 2,260 | | | | | |
| 46 | 0 | 25,000 | 11,628 | 25,000 | 0 | 0 |
| 47 | 0 | 25,000 | 12,177 | 25,000 | 0 | 0 |
| 48 | 0 | 25,000 | 12,747 | 25,000 | 0 | 0 |
| 49 | 0 | 25,000 | 13,339 | 25,000 | 0 | 0 |
| 50 | 0 | 25,000 | 13,956 | 25,000 | 0 | 0 |
| TOTAL | 2,260 | | | | | |
| 51 | 0 | 25,000 | 14,583 | 25,000 | 0 | 0 |
| 52 | 0 | 25,000 | 15,238 | 25,000 | 0 | 0 |
| AGE 78 | 0 | 25,000 | 15,919 | 25,000 | 0 | 0 |
| 54 | 0 | 25,000 | 16,630 | 25,000 | 0 | 0 |
| 55 | 0 | 25,000 | 17,373 | 25,000 | 0 | 0 |
| TOTAL | 2,260 | | | | | |
| 56 | 0 | 25,000 | 18,148 | 25,000 | 0 | 0 |
| 57 | 0 | 25,000 | 20,042 | 25,000 | 0 | 0 |
| 58 | 0 | 25,000 | 20,944 | 25,000 | 0 | 0 |
| 59 | 0 | 25,000 | 20,965 | 25,000 | 0 | 0 |
| 60 | 0 | 25,000 | 22,116 | 25,000 | 0 | 0 |
| TOTAL | 2,260 | | | | | |
| 61 | 0 | 25,000 | 23,444 | 25,000 | 0 | 0 |
| 62 | 0 | 25,000 | 24,966 | 26,214 | 0 | 0 |
| 63 | 0 | 25,000 | 26,585 | 27,914 | 0 | 0 |
| 64 | 0 | 25,000 | 28,296 | 29,711 | 0 | 0 |
| 65 | 0 | 25,000 | 30,101 | 31,606 | 0 | 0 |
| TOTAL | 2,260 | | | | | |
| 66 | 0 | 25,000 | 32,001 | 33,601 | 0 | 0 |
| 67 | 0 | 25,000 | 34,065 | 35,428 | 0 | 0 |
| 68 | 0 | 25,000 | 36,315 | 37,404 | 0 | 0 |
| 69 | 0 | 25,000 | 38,776 | 39,551 | 0 | 0 |
| AGE 95 | 0 | 25,000 | 41,510 | 41,510 | 0 | 0 |
| TOTAL | 2,260 | | | | | |

M9371

M129779220074

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct.

REDACTED
CONFIDENTIAL
POLICYHOLDER
INFORMATION

Metropolitan Life Insurance Company
6150 Perry Highway, Suite 101, Pittsburgh PA 15237
(412) 367-5900

**John C. Lewis**
Branch Manager

Registered Representative
Leaders Conference
Management Leaders Conference

Re:  Notice of Paid-Up Policy #92 BL

Dear Ms.

As required by your policy illustration, there must be a total of $2260.00
deposited into your policy to be paid-up. As shown in the breakdown below,
you have met these requirements as of March 20, 1992 and now have a paid-up
policy with no other premiums to be paid. Also please disregard the planned
premium amount on page three of the policy as this is no longer valid because
of the deposits you have made.

Policy #925 101 636 BL        Payment        Date

                $50.00        2/25/92    check #5091
              $1855.48        3/5/92     transfer amount
              $1355.00        3/20/92    check #160

              $2260.48

Please keep this notice with your policy. If you have any questions or
concerns, please feel free to call.

Sincerely,

John C. Lewis
Branch Manager

April 29, 1992

JCLdp



- 65 -

Life/Health/Annuities

M9371

Notice: "Production and Use Subject to Case Management and Protective
Orders in MDL No. 1091. United States Dist. Ct."

M129779220075

REDACTED
CONFIDENTIAL
POLICYHOLDER
INFORMATION




**Metropolitan Life Insurance Company**

2551 Washington Road, Suite #620 Upper St Clair PA 15241
(412) 831-0268

**Metropolitan Life**
AND AFFILIATED COMPANIES

**J. Joel Sherman**
Senior Sales Representative

Member Ball of Fame
President's Council
Life Member
7 Times Qualified
Million Dollar Round Table
Life Member
National Quality Award
5 Times Qualified



## PRESENT PROGRAM

Policy Number:                     78          A1
Plan:                              WL
Amount:                            5,000.00
Total Premium:                     65.25/Month

7/7/76

## PROPOSAL

Insurance Protection:              $100,000.00
Withdrawal Provision:              Included
Collateral Assignment Provision:   Included
Current Interest:                  7.50%
Interest Earned Is:                Tax Deferred

M129779220076

Notice: Production and Use Subject to Case MDL
Orders in MDL No. 1091 United States Dist Ct

PENNSYLVANIA      000000            MTFQ00000156100F

PREPARED FOR MR ▓▓▓▓▓ BY
PLAN: FLEXIBLE-PREMIUM LIFE
              CLASSIFICATION        AGE    SEX        SPECIFIED FACE
INSURED:      STANDARD NONSMOKER    52   , MALE       AMOUNT:    $200,000

DEATH BENEFIT OPTION A

MODE OF PREMIUMS:
ANNUAL

| END OF POLICY YEAR | PLANNED PREM PAYABLE/ WITHDRAWAL(-) DURING YEAR | SPECIFIED FACE AMOUNT | ILLUSTRATIVE@ 7.45% | | GUARANTEED 4.00% | |
|---|---|---|---|---|---|---|
| | | | SURRENDER VALUE& | DEATH BENEFIT | SURRENDER VALUE& | DEATH BENEFIT |
| 1 | 10,000 | 200,000 | 5,800 | 200,000 | 4,529 | 200,000 |
| 2 | -780 | 200,000 | 6,451 | 200,000 | 4,838 | 200,000 |
| 3 | 780 | 100,000 | 7,704 | 100,000 | 5,167 | 100,000 |
| 4 | 780 | 100,000 | 8,995 | 100,000 | 5,413 | 100,000 |
| 5 | 780 | 100,000 | 10,326 | 100,000 | 5,566 | 100,000 |
| TOTAL | 13,120 | | | | | |
| 6 | 780 | 100,000 | 11,703 | 100,000 | 5,614 | 100,000 |
| 7 | 780 | 100,000 | 13,132 | 100,000 | 5,546 | 100,000 |
| 8 | 780 | 100,000 | 14,615 | 100,000 | 5,345 | 100,000 |
| 9 | 780 | 100,000 | 16,156 | 100,000 | 4,987 | 100,000 |
| 10 | 780 | 100,000 | 17,749 | 100,000 | 4,446 | 100,000 |
| TOTAL | 17,020 | | | | | |
| 11 | 780 | 100,000 | 19,376 | 100,000 | 3,687 | 100,000 |
| 12 | 780 | 100,000 | 21,037 | 100,000 | 2,673 | 100,000 |
| AGE 65 13 | 780 | 100,000 | 22,720 | 100,000 | 1,360 | 100,000 |
| 14 | 780 | 100,000 | 24,379 | 100,000 | 0 | 0 |
| 15 | 780 | 100,000 | 26,235 | 100,000 | 0 | 0 |
| TOTAL | 20,920 | | | | | |
| 16 | 780 | 100,000 | 27,821 | 100,000 | 0 | 0 |
| 17 | 780 | 100,000 | 29,413 | 100,000 | 0 | 0 |
| 18 | 780 | 100,000 | 30,640 | 100,000 | 0 | 0 |
| 19 | 780 | 100,000 | 31,992 | 100,000 | 0 | 0 |
| 20 | 780 | 100,000 | 33,046 | 100,000 | 0 | 0 |
| TOTAL | 24,820 | | | | | |
| 21 | 780 | 100,000 | 34,062 | 100,000 | 0 | 0 |
| AGE 74 22 | 780 | 100,000 | 34,913 | 100,000 | 0 | 0 |
| 23 | 780 | 100,000 | 35,545 | 100,000 | 0 | 0 |
| 24 | 780 | 70,000 | 37,260 | 70,000 | 0 | 0 |
| 25 | 780 | 70,000 | 39,001 | 70,000 | 0 | 0 |
| TOTAL | 28,720 | | | | | |
| 26 | 780 | 70,000 | 40,772 | 70,000 | 0 | 0 |
| 27 | 780 | 70,000 | 42,590 | 70,000 | 0 | 0 |
| 28 | 780 | 70,000 | 44,469 | 70,000 | 0 | 0 |
| 29 | 780 | 70,000 | 46,428 | 70,000 | 0 | 0 |
| 30 | 780 | 70,000 | 48,494 | 70,000 | 0 | 0 |
| TOTAL | 32,620 | | | | | |
| 31 | 780 | 70,000 | 50,713 | 70,000 | 0 | 0 |
| 32 | 780 | 70,000 | 53,153 | 70,000 | 0 | 0 |
| 33 | 780 | 70,000 | 55,902 | 70,000 | 0 | 0 |
| 34 | 780 | 70,000 | 59,089 | 70,000 | 0 | 0 |
| 35 | 780 | 70,000 | 62,891 | 70,000 | 0 | 0 |
| TOTAL | 36,520 | | | | | |

PAGE  2

METROPOLITAN LIFE INSURANCE COMPANY      2/03/92      M129779220077

- 67 -

M937

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091, United States Dist. Ct.

REDACTED
CONFIDENTIAL
POLICYHOLDER
INFORMATION



**Metropolitan Life**
AND AFFILIATED COMPANIES

**Metropolitan Life Insurance Company**
2551 Washington Road Suite #820 Upper St. Clair, PA 15241
(412) 831-0268




**J. Joel Sherman**
Senior Sales Representative

Member Hall of Fame
President's Council
Life Member
3 Times Qualifier
Million Dollar Round Table
Life Member
National Quality Award
3 Times Qualifier

Registered Representative
President's Conference
Leaders Conference
Million Dollar Round Table
National Quality Award
Management Leaders Conference

**Theodore N. Stavrakis**
Branch Manager

2551 Washington Road, Suite 820
Upper St. Clair, PA 15241
(412) 831-0257

## PRESENT PROGRAM

| | |
|---|---|
| Policy Number: | 74_____ A |
| Plan: | Whole Life |
| Amount: | $ 20,000.00 |
| Total Premium: | $ 420.00/Year |
| | |
| Policy Number: | 84_____ PR |
| Plan: | Life 95 |
| Amount: | $ 25,000.00 |
| Total Premium: | $ 579.50/Year |

## PROPOSED

| | |
|---|---|
| Insurance Protection: | $125,000.00 |
| Withdrawal Provision: | Included |
| Collateral Assignment Provision: | Included |
| Current Interest: | 7.45% |
| Interest Earned Is: | Tax Deferred |

## SUMMARY

| | |
|---|---|
| Total Insurance Protection: | $175,000.00 |
| Survivor Income: | $ 1,500.00/Month |

Life/Health/Annuities

- 68 -

M93??

M129779220078

Notice: Production and Use Subject to Case Management and Protective
Orders in MDL No. 1091 United States Dist. Ct.




Delivered Policy Illustrations:  (see pages 73 - 84)

Example:  Flexible Premium Life policies (7UL-96) were
delivered bound into a protective cover.  Included in each
bound document was a cash value illustration page (see
page 73).  The illustration clearly showed yearly premium
payments, which gave no true reflection of the premium
payment, cash values, or policy performance as proposed by
MetLife sales representatives and agreed to by the
policyholder.

It was noted the illustration reflected a yearly
premium payment, however, the policyholder had been
solicited, and agreed to make a single deposit, for a
paid-up policy.  In this case, the amount actually
contributed by the policyholder, from surrender of a
MetLife annuity, was in excess of $61,000.00, although the
initial sales solicitation had been based upon $50,000.00
premium payment.  The illustration, while noting that
projected results of the insurance program would vary,
offered only the admonition "Read your policy and this
statement very carefully" as a disclosure.

Example:  A cover letter by MetLife Financial Planner,
Richard Antonino, with numerous illustrations (see pages
74 - 84) was provided with delivery of a Life to 95
policy, insuring the life of a policyowner's daughter

- 69 -

M129779220079

M9371

Notice: Production and Use Subject to Case Management and Protective
Orders in MDL No. 1091  United States Dist. Ct.

(insured) which was solicited through the promise of a paid-up policy after payment of $14,000.00 ($2,000 per year for a period of seven (7) years).

The cover letter contained a stated assumption of payment for the Life to 95 policy which would utilize proceeds from the policyowner's own policy, upon death of the policyowner, should such occur prior to completing payments for the seven (7) years required for the daughter's retirement plan. The contractual basis for such transaction was not evident.

Also contained in the cover letter was what appeared to be an implicit statement of retirement benefit and lifetime income to the insured at age 65, without disclosing that such values were based on non-guaranteed assumptions. The payments totaling $14,000.00 in premium, were referred to as an "investment." The insurance policy was described as a "base retirement plan" and an "Executive Retirement Plan." It was clearly implied that payment of $14,000.00 over the "next seven years" would be sufficient to complete the "plan." The Life to 95 policy proposal also relied upon projected future performance and payment of dividends by MetLife. MetLife does not guarantee the payment of dividends.

- 70 -

M129779220080

M9371

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091 United States Dist. Ct.

Supporting the cover letter which accompanied the delivered policy were two (2) pages, one captioned "Individual Retirement Benefit (I.R.B.) v.s. Individual Retirement Account (I.R.A.) - Certificate of Deposit (C.D.)" and the other captioned "Metropolitan Investment Program". The captioned pages represented the Life to 95 policy as an "investment" and a "savings" program. It was falsely stated there was no "penalty for early withdrawal" and that the I.R.B. provided a "9 to 12% Long Term Rate of Return". MetLife subsequently informed the Insurance Department that based upon the current values, as of December 1992, the policy would require additional premium payments for eight (8) years in order to reach a point where it would become self-supporting.

- **FINDINGS AND CONCLUSIONS** -

The Unfair Insurance Practices Act, No. 205, Section 5(a)(1)(vi) defines "Unfair Methods of Competition" and "Unfair or Deceptive Acts or Practices" as "... Making, publishing, issuing or circulating any estimate, illustration, circular, statement, sales presentation, omission comparison which:" "... Is a misrepresentation for the purpose of inducing or tending to induce the lapse, forfeiture, exchange, conversion or surrender of any insurance policy".

- 71 -

M129779220081

M9371

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091 United States Dist. Ct."

Section 637 of The Insurance Department Act prohibits misrepresentation of terms of policy and future dividends by agents, brokers, or solicitors. "No agent or solicitor of any insurance company, association, or exchange, and no insurance broker, shall issue, circulate, or use, or cause or permit to be issued, circulated or used, any written or oral statement or circular misrepresenting the terms of any policy issued or to be issued by such company association, or exchange, or make an estimate, with intent to deceive, of the future dividends payable under such policy."

The referenced examples clearly demonstrate the noted pattern of sales practices and procedures used by MetLife sales representatives in utilizing sales illustrations based upon non-guaranteed projected values, and in many cases reinforcing the sales illustration values with cover letters containing misleading statements concerning the insurance policy being sold.

- 72 -

M129779220082

M937

Notice: Production and Use Subject to Case Management and Protective Orders in MDL No. 1091 United States Dist. CL"

REDACTED
CONFIDENTIAL
POLICYHOLDER
INFORMATION

```
000UL000      570
                                              TO DIST: 44B      838
              METROPOLITAN LIFE INSURANCE COMPANY
                    SOUTHEASTERN HEAD OFFICE
                       METROPOLITAN PLAZA
                      TAMPA, FL  33607
```

INSURED          ████████                POLICY NUMBER    92████UL
AGE AND SEX 66-FEMALE   NONSMOKER        SPECIFIED FACE AMOUNT      $500,000
CLASSIFICATION PREFERRED                 OF INSURANCE
                                         PREMIUM MODE:  ANNUAL

BASIC POLICY   FLEXIBLE-PREMIUM LIFE - DEATH BENEFIT OPTION A

THE PROJECTED RESULTS OF YOUR INSURANCE PROGRAM WILL CHANGE WITH VARIATIONS
IN THE INTEREST RATES, COST OF INSURANCE(RISK CHARGES), EXPENSE FACTORS, AND
THE FREQUENCY, TIMING, AND AMOUNT OF YOUR PREMIUM PAYMENTS. READ YOUR POLICY
AND THIS STATEMENT VERY CAREFULLY.

PROJECTED POLICY VALUES - ASSUMING NO LOANS AND NO PARTIAL CASH
WITHDRAWALS, BUT TAKING ACCOUNT OF ANY OPTIONAL RIDERS LISTED ABOVE

| END OF POLICY YEAR | PLANNED ANNUAL PREMIUM | GUARANTEED BASIS CASH VALUE* | GUARANTEED BASIS DEATH BENEFIT | CURRENT BASIS CASH VALUE* | CURRENT BASIS DEATH BENEFIT |
|---|---|---|---|---|---|
| 1 | $12,730 | $.00 | $500,000.00 | $.00 | $500,000.00 |
| 2 | $12,730 | $988.73 | $500,000.00 | $7,098.22 | $500,000.00 |
| 3 | $12,730 | $4,995.50 | $500,000.00 | $17,823.92 | $500,000.00 |
| 4 | $12,730 | $8,892.02 | $500,000.00 | $29,583.92 | $500,000.00 |
| 5 | $12,730 | $11,509.00 | $500,000.00 | $41,292.42 | $500,000.00 |
| 10 | $12,730 | $1,820.01 | $500,000.00 | $105,082.54 | $500,000.00 |
| 20 | $12,730 | $.00 | $500,000.00 | $222,396.63 | $500,000.00 |

| INTEREST-ADJUSTED (5%) INDEXES PER $1000 | GUARANTEED BASIS 10 YEARS | GUARANTEED BASIS 20 YEARS | CURRENT BASIS 10 YEARS | CURRENT BASIS 20 YEARS |
|---|---|---|---|---|
| SURRENDER COST | 25.18 | N/A | 9.55 | 12.65 |
| NET PAYMENT COST | 25.46 | N/A | 25.46 | 25.46 |

VALUES ON A CURRENT BASIS ARE CALCULATED USING MAY 1990 TERM INSURANCE RATES,
THE PREMIUM MODE SHOWN AND THE CURRENTLY-DECLARED INTEREST RATE OF   7.45%,
CREDITED TO AMOUNTS OVER $1000 (THE GUARANTEED INTEREST OF 4% IS CREDITED TO
THE FIRST $1000 IN THE ACCUMULATION FUND.)

FOR POLICY LOANS THE EFFECTIVE ANNUAL INTEREST RATE IS 8% PAYABLE AT THE END OF
THE POLICY YEAR.
INTENDED USE OF THE COST INDEXES IS EXPLAINED IN THE LIFE INSURANCE BUYER'S GUIDE.

*ANY APPLICABLE WITHDRAWAL CHARGES AS SHOWN ON POLICY PAGE 4A HAVE BEEN DEDUCTED
FROM THESE AMOUNTS.

PREPARED 07/16/92

M129779220083

- 73 -

M9371



2020 Ardmore Boulevard, Suite 140, Pittsburgh, PA 15221
Tel 412-351-3958

**Richard Antonino**
Certified Financial Planner

Registered Representative
President's Council
Member, Hall of Fame
Million Dollar Round Table
Member

**MetLife**

June 24, 1992

Dear Mr. ▓▓▓▓▓

Enclosed please find a summary of the non-qualified **Executive Retirement Plan** you have established for your daughter ▓▓▓▓ with MetLife Insurance Company. In the event of your premature death, a portion of the proceeds from contract no. 872 246 232 UL will be used to pay-up ▓▓▓▓▓ retirement program and the balance will be paid as previously designated by you.

Your minimum deposit into the base retirement plan for the next seven years is $2,000 annually. Assuming you meet the scheduled deposits of $2,000 annually into the base retirement plan for the next seven years, the contract will increase to a retirement benefit of $151,908 at age 65 and will provide an annual tax-free income of approximately $6,295 for her entire lifetime. Your total investment is $14,000 and ▓▓▓▓ has the possibility to receive $220,326 tax-free. In addition to these benefits, the plan provides a tax-free death benefit of $375,991 at ▓▓▓▓▓ age 65 to her beneficiary. This death benefit continues to increase after her age 65.

In the event of a disability, the **Executive Retirement Plan** is self-completing with no additional deposits necessary providing you remain disabled.

If you have any questions, please do not hesitate to call me at (412) 351-3958.

Sincerely,

*Richard Antonino*

Richard Antonino
Financial Planner

RA:bp
Enclosure

 **Richard Antonino**
Financial Planner

**MetLife**

President's Council
Member, Hall of Fame
Million Dollar Round Table
Member

Registered Representative

2020 Ardmore Boulevard, Suite 140
Pittsburgh, PA 15221
Tel 412-351-3958

Variable life insurance and variable annuities offered
through Metropolitan Life Insurance Company
Financial planning and mutual funds offered
through MetLife Securities, Inc.

Life, health, annuities, variable life insurance and variable annuities offered through Metropolitan Life Insurance Company
Auto, homeowner and other property and casualty products offered through Metropolitan Property and Casualty Insurance Company
Financial Planning and Mutual Funds offered through MetLife Securities, Inc.

- 74 -

M9371

M12977920084

Notice: Production and Use Subject to Case Management and Protective
in M... 1991 United States Dist. Ct.

REDACTED
CONFIDENTIAL
POLICYHOLDER
INFORMATION

**MetLife**

METROPOLITAN LIFE INSURANCE COMPANY

INSURED:                    /Owner

FACE AMOUNT
OF INSURANCE:     $230,317

POLICY NUMBER:   92          PR

ISSUE DATE:      June 22, 1992

PLAN:            Life 95/Executive Retirement Plan

PREMIUM:         $2000 Annually. This contract only has to be
                 paid for 7 years and it will be eligible for
                 the Accelerated Payment Plan with no future
                 payments required by you. Your total investment
                 of $14,000 will increase to a retirement benefit
                 of $151,908 at          age 65 and will provide
                 her a tax-free income of $6,295 annually for
                 her entire lifetime. In addition, the plan
                 provides a tax-free death benefit of $373,991
                 at          age 65 to her beneficiary.

M129977220085

Metropolitan Life Insurance Company   Metropolitan Tower Life Insurance Company
Metropolitan Insurance and Annuity Company   MetLife Securities, Inc.
Home Office: New York, NY
Metropolitan Property and Casualty Insurance Company
Home Office: Warwick, RI

M9371

- 75 -

Notice: Production and Use Subject to Case Management and Protective
Orders in MDL No. 1091 United States Dist. Ct.

PENNSYLVANIA

PREPARED FOR ████████                    BY RICHARD ANTONINO
PLAN:  LIFE PAID UP AT 95

CLASSIFICATION                    AGE    SEX        AMOUNT OF INSURANCE
INSURED:  PREFERRED  NONSMOKER     24  ,  FEMALE             $230,317

BASIC POLICY                              ANNUAL PREMIUM   YRS PAYABLE
DISABILITY WAIVER                              $1,951.63      71
TOTAL ANNUAL PREMIUM                             $49.17      41
                                              $2,000.00

ACCELERATED PAYMENT PLAN ILLUSTRATION
ANNUAL DIVIDENDS USED TO BUY PAID UP ADDITIONAL INSURANCE

THIS ILLUSTRATION ASSUMES THAT PREMIUMS FOR THE FIRST 07 YEARS WILL BE PAID IN
CASH.  THEREAFTER, PREMIUMS MAY BE PAID EACH YEAR THROUGH THE USE OF DIVIDENDS
BY CANCELING A PORTION OF THE ADDITIONAL INSURANCE AND USING ITS CASH VALUE
TOGETHER WITH THE CURRENT DIVIDEND, TO PAY THE PREMIUM.  TO PUT THIS PAYMENT
PLAN INTO EFFECT CONTACT YOUR SALES REPRESENTATIVE AT THAT TIME.

SUMMARY FOR PERIOD SHOWN                          END OF 20 YEARS

TOTAL CASH OUTLAY **                                                AT AGE 65
                                                    $14,000
                                                                    $14,000
GUARANTEED DEATH BENEFIT
ADDITIONAL INSURANCE PURCHASED BY DIVIDENDS        230,317          230,317
ILLUSTRATIVE DEATH BENEFIT                          30,854          145,674
                                                   261,171          375,991
GUARANTEED CASH VALUE
CASH VALUE OF ADDITIONAL INSURANCE                  25,565           87,520
ILLUSTRATIVE CASH VALUE                              6,154           64,388
                                                    31,719          151,908
GUARANTEED MONTHLY LIFE INCOME  - (10 YEARS CERTAIN)
ILLUSTRATIVE MONTHLY LIFE INCOME - (10 YEARS CERTAIN)                462.98
                                                                  1,110.45

INTEREST-ADJUSTED 5% INDEXES (BASIC POLICY)         10 YRS          20 YRS
LIFE INSURANCE SURRENDER COMPARISON INDEX            $1.86           $.33
EQUIVALENT LEVEL ANNUAL DIVIDEND - ANY TERM DIV      $3.96           $4.94

** THE CASH OUTLAY ILLUSTRATED SHOWS THE RESULTS IF THE CURRENT DIVIDEND SCALE
CONTINUES WITHOUT CHANGE.  DIVIDENDS ARE NOT GUARANTEED AND MAY INCREASE OR
DECREASE IN THE FUTURE.  IF FUTURE DIVIDENDS DECREASE, IT IS POSSIBLE THAT
THE CASH VALUE OF ADDITIONAL INSURANCE MAY NOT BE SUFFICIENT IN SOME
FUTURE YEARS TO PAY THE FULL CURRENT PREMIUM AND SOME CASH OUTLAY MAY BE
REQUIRED.  IF PREMIUMS ARE MODAL, ANNUALIZED PREMIUM EQUALS THE MODAL
PREMIUM TIMES NUMBER OF PAY PERIODS FOR YEAR.
DIVIDENDS BASED ON JAN. 1992 SCALE THAT USES CURRENT INTEREST, MORTALITY AND
EXPENSE RATES.  ILLUSTRATIVE MONTHLY INCOME BASED ON DECEMBER 1991 SETTLEMENT
OPTION RATES.  ILLUSTRATIVE FIGURES ARE NOT GUARANTEES OR ESTIMATES FOR THE
FUTURE.

INITIAL PREM:  ANNUAL     $2,000.00; SEMIANN.    $1,079.15;  COM     $181.35

                                                                    PAGE  2
                        METROPOLITAN LIFE INSURANCE COMPANY
                                                                    6/02/92

 MetLife                          - 76 -                    M933?

M12977922Z0086

Notice: Production and Use Subject to Case Management and Protective
Orders in MDL No. 1091 United States Dist. Ct.