# FEDERAL
# RULES OF EVIDENCE
# SERVICE

*Edited by:* PIKE AND FISCHER, INC.
*Managing Editor:* JOHN W. WILLIS
*Editors:* ROBERT E. EMERITZ
BETTY M. HUNTER
*Associate Editor:* U. JOSEPH HECKER III

## CASE REPORTER

### VOLUME 11

Cite as: 11 Fed Rules Evid Serv —


Callaghan

CALLAGHAN & COMPANY/3201 Old Glenview Road/Wilmette, Illinois 60091

## DRUMMOND v. ALIA—THE ROYAL JORDANIAN AIRLINE CORP.

United States District Court, WD Pa, December 17, 1982
11 Fed Rules Evid Serv 1904

803(8).2, 803(8).10, 803(8).25  Accident report prepared at the direction of government of Qatar.

In a wrongful death action arising when plaintiff's decedent was killed in a commercial airline crash in Qatar, the district court would not admit under Rule 803(8)(C) an accident report concerning the crash prepared at the direction of the government of Qatar and submitted to the International Civil Aviation Organization. Although it appeared that the report was prepared according to authority granted by law, the report was not trustworthy. There was no information regarding the special skill or expertise of the officials conducting the investigation; there was no hearing conducted for purposes of preparing the report and, as a result, there were very few procedural safeguards to protect against the inclusion of hearsay and irrelevant evidence; there was the possibility that the government of Qatar may have required that the report be prepared in such a way as to protect itself from any liability; and there was no way of knowing whether the expert opinions contained in the report were based upon data and facts reasonably relied upon by experts in the field. Finally, because the report contained conclusions as to the cause of the accident which created the potential for the jury to be unduly prejudiced by the report and to adopt the conclusion of another tribunal as its own rather than making an independent determination based on the facts as presented, the report was excludable under Rule 403.

Raymond G. Hasley, Pamela Roberts, Pittsburgh, Pennsylvania, for plaintiff.

William A. Pietragallo, Jane A. Thompson, Pittsburgh, Pennsylvania, for defendant.

BLOCH, District Judge. Plaintiff, Bernard G. Drummond, an individual resident of North Carolina, is the Administrator of the Estate of Andrew B. Drummond, having been appointed to that position by the Register of Wills of Allegheny County, Pennsylvania, in 1979. Prior to his death, the decedent, Andrew B. Drummond, resided in Allegheny County, Pennsylvania. The defendant, Alia—The Royal Jordanian Airline Corporation, is incorporated in, and the national airline of, the Hashimite Kingdom of Jordan (hereinafter referred to as "Jordan") and does business in the United States. This court has jurisdiction pursuant to 28 USC § 1332. In March of 1979, the

1904

## 11 FEDERAL RULES OF EVIDENCE SERVICE
Cite as 11 Fed Rules Evid Serv

decedent was on a sales trip throughout the Middle East and South Africa on behalf of his employer, the Joy Manufacturing Company of Pittsburgh, and was killed when one of defendant's planes, on which he was a passenger, crashed during a landing at Doha International Airport in Doha, Qatar. Plaintiff subsequently filed this action in March of 1980, to recover damages as a result of the death of the decedent. The case is scheduled for jury trial on January 4, 1983.

In January of 1981, plaintiff filed a motion in limine, requesting that the court rule that an accident report[4] prepared at the direction of the government of Qatar and submitted to the International Civil Aviation Organization (hereinafter referred to as "ICAO") is admissible at the trial of this case. The court held an in chambers hearing on this motion on March 13, 1981, and, at that hearing, denied plaintiff's motion. Plaintiff renewed his motion in May of 1982, and the court hereby again denies plaintiff's motion.

The parties were previously given an opportunity to brief this issue, and, as stated, a hearing was held after plaintiff's first motion in limine was filed. The parties agree that Fed R of Evid 803(8) controls the admissibility of the accident report. Rule 803(8), a hearsay exception, provides as follows:

> "(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

At the hearing held on plaintiff's first motion on March 13, 1981, the court stated that its major concern was the trustworthiness of the investigators and of the report itself. Transcript of proceedings on motion in limine, p 4. Specifically, the court stated:

> "[I]t would seem from the report that there were certain consultants who took part in this. There were certain other committees or other people who took part in the investigation. We don't know anything about them. We don't know anything about the Accident Investigator.

[4] The accident report in question is a 32-page aircraft accident report prepared by the Qatar Civil Aviation Department.

1905

## 11 FEDERAL RULES OF EVIDENCE SERVICE
### Cite as 11 Fed Rules Evid Serv

In-Charge who signed this letter. We don't know whether he's ever investigated an airplane accident before, in his life. You know, in the State of Qatar they might not have very many airplane accidents. Maybe he's been investigating bus accidents all his life and he doesn't know anything about airplane accidents. We have no knowledge of his trustworthiness. We have no knowledge of his abilities and experience in making this kind of report. We don't have any knowledge what part other people played in it and what their experience and knowledge is.

"The cases seem to also say that in looking at trustworthiness you may look at the connections that the investigator has to any reasons he might have to be bias in one direction or the other. It would appear to me that the Government of Qatar could very well be liable in this situation if their air controllers or their ground personnel or their fire personnel—as is alleged that it took an exceedingly long period of time for the fire people to get to the scene. There might be some liability on their part. And so in this investigation, a representative of the Government of Qatar might not be an impartial investigative body. They might tend to favor a version of the accident which would exclude the liability of the State of Qatar."

Transcript of proceedings on motion in limine, pp 5–6. The court ruled that the report was not admissible based on the record that was present at that time; however, the court left the door open for plaintiff to again raise the issue "if at some later time after the development of . . . discovery over there [(meaning Qatar)] . . . [plaintiff] is able to show . . . [the court] the necessary factors." Transcript of proceedings on motion in limine, pp 15–16.

In May of 1982, plaintiff renewed his motion in limine. Plaintiff's motion asserts that his discovery has answered the doubts posed by the court at the hearing. Initially, plaintiff asserts that the accident report prepared by the State of Qatar in this case was undertaken under the directives issued by the ICAO and was submitted to the ICAO on February 7, 1980. The plaintiff claims that the investigation was in accordance with International Standards and Recommended Practices; Aircraft Accident Investigation Annex 13 to the Convention of International Civil Aviation, published by the ICAO. According to the plaintiff, the United States has agreed to this procedure through 49 USC § 1502.

Moreover, in response to the court's doubts as to the competency of the investigator or investigators, plaintiff took the deposition of Rudolf Kapustin (hereinafter referred to as "Kapustin"), Senior Air Safety Investigation with the National Transportation Safety Board, Washington, D.C. Kapustin was consulted by Qatar for his experience, and was in Qatar for a "week or more" during the investiga-

1 FEDERAL RULES OF EVIDENCE SERVICE**
Cite as 11 Fed Rules Evid Serv

tion. Kapustin deposition, p 34. Kapustin was present during the entire field phase of the investigation. Kapustin deposition; p 57. Kapustin testified, at the deposition, that the investigation was conducted, and the report written, in accordance with the directives of the ICAO's Annex 13 noted above. Kapustin deposition, pp 22–24. Further, Kapustin later returned to Qatar, read the report, and agrees that "it fairly recites the facts of the investigation." Kapustin deposition, p 66.

Plaintiff finally asserts that he took the deposition of Thermon Jones (hereinafter referred to as "Jones"), Air Safety Investigation Coordinate for the Boeing Company. Plaintiff claims that Jones' deposition reveals that he took part in the investigation as a member of the Air Worthiness Investigation Group. Jones' deposition reveals that he attended daily meetings of his group (Jones deposition, p 57), collected documents produced by members of the investigation team, and had occasion to observe the work leading to the preparation of the report. Jones deposition, p 98. The plaintiff has submitted copies of all documents collected by Jones during the investigation.

After setting forth this information, plaintiff asserts that these revelations should dispell any doubt that the court has as to the trustworthiness of the documents and as to the competency of the investigators. The court does not agree that the plaintiff's assertions and depositions make the report admissible. The court's research findings, as set forth below, indicate that there are still trustworthiness problems with the report which require its exclusion.

As stated, the admissibility of the report is governed by Rule 803(8). Specifically, Rule 803(8)(C) controls here. Subsection (C) provides for a hearsay exception for "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." These public records are commonly called "evaluative reports," and there is often disagreement on the admissibility of such reports due to the variety of situations encountered. Notes of Advisory Committee on Proposed Rule 803. Plaintiff's renewed motion appears to answer one question posed by the court, that being whether the report was prepared according to authority granted by law. The plaintiff asserts that the report was prepared at the direction of the ICAO and in accordance with the International Standards of Recommended Practices adopted by the United States. This satisfies the requirement that the report be prepared according to

1907

## 11 FEDERAL RULES OF EVIDENCE SERVICE
Cite as 11 Fed Rules Evid Serv

law. However, trustworthiness problems still remain, and those trustworthiness problems require that this court exclude the report from evidence.

It is important to note that Rule 803(8)(C) assumes admissibility, but with ample provision for escape if sufficient negative factors are present. Notes of Advisory Committee on Proposed Rule 803. These negative factors usually arise in the guise of trustworthiness arguments. Two tests have been developed to assist the courts in ruling on the trustworthiness question, and it is necessary to review the accident report in this case in light of those tests.

The first test is set forth by the Advisory Committee in their Notes on Rule 803. The factors which the court should consider under this test include: "(1) the timeliness of the investigation; (2) the special skill or expertise of the official; (3) whether a hearing was held and the level at which conducted; and (4) possible motivation problems." The Advisory Committee acknowledges that it is impossible to consider all possible factors. These four appear to be the most prominent, and the test is one of weighing or balancing these considerations.

There appears to be no problem with the first consideration in this case because the crash occurred on March 13, 1979, and the investigation began immediately thereafter. The investigation was completed, and a final report was prepared and submitted to the ICAO by February 7, 1980, less than 11 months after the crash.

Plaintiff asserts that the second consideration is satisfied by the Kapustin deposition. Apparently, plaintiff believes that by establishing that Kapustin is a qualified investigator and that he took part in the investigation as a consultant, he has satisfied the court's doubts as to the expertise behind the preparation of the report. However, there are many unanswered questions in connection with this consideration. The Kapustin deposition reveals that the Investigator-In-Charge was Mr. Al-Malki, who appears to be a native of Qatar. Kapustin deposition, p. 84. Kapustin does not say much about Al-Malki's qualifications; the only statement is on page 85 of the deposition. At that page, Kapustin states: "[h]e was obviously aviation-oriented. I found out later he was a graduate of the University of Michigan and I think also Embry-Riddle in Florida. I don't know whether he is a pilot or not, but I think he is." Moreover, the deposition reveals that certain investigators were retained from England, whom Kapustin did not know much about. Kapustin deposition, p 85. Further, the record reveals that there were other people involved in the investigative committee, whom this court knows absolutely

1908

## 11 FEDERAL RULES OF EVIDENCE SERVICE
### Cite as 11 Fed Rules Evid Serv

nothing about. The implication is clear that there were qualified
people involved in this investigation, but we do not know how many
and how much input those qualified individuals had. It is also im-
portant to note that Kapustin was only involved for approximately
one week of the 11-month investigation and preparation period, and
this serves to lessen the importance of any input that he had.

At first glance, the third consideration—whether a hearing was
held and the level at which conducted—appears to be inapplicable be-
cause there was no hearing, per se, conducted for purposes of pre-
paring the report. This court's understanding of the investigation is
that committees were formed to gather information. The commit-
tees then held meetings to exchange and accumulate the information.
From these committee reports and meetings, the report was pre-
pared.[2] Thus, as stated above, the third consideration would appear
inapplicable. However, the court believes that this consideration is
critical and makes a difference as to admissibility. Viewing this con-
sideration in a different light, one can conclude that since there was
no hearing conducted, there were very few procedural safeguards to
protect against the inclusion of hearsay and irrelevant evidence. It
is very possible that a large amount of hearsay and irrelevant evi-
dence was included in the report. This results in hearsay within
hearsay and the admission of other inadmissible evidence, which
serve to undercut the trustworthiness of the report.

The final consideration under this first test is the possible motiva-
tion problem. Plaintiff's motion fails to address and dispell the mo-
tivation problem which the court raised at the hearing on March 13,
1981—that the government of Qatar may have required that the re-
port be prepared in such a way as to protect itself from any liability.
Transcript of proceedings on motion in limine, pp 5–6. Plaintiff's
motion does establish that Kapustin, as an independent consultant,
did read and approve the report; however, this, in itself, does not
mean that the report did not contain certain slanted views intended
to protect Qatar.[3]

___

[2] The court understands that this is a somewhat simplified and cursory descrip-
tion of the committees and the preparation of the report; however, the court
believes that it captures the essence of the procedure used.

[3] The court is not saying that the report was slanted or that any of
the other problems above actually existed. It must be remembered that evi-
dentiary exclusionary rules, such as the hearsay rule, are intended to prevent
potential, as well as actual problems. Thus, the court feels obligated to raise any
potential problems and to use those potential problems as a basis for excluding
evidence if appropriate.

Weighing the outcome of the considerations of this first test established by the Advisory Committee to the Federal Rules of Evidence, the report is inadmissible. Further, as will be shown below, a weighing of the considerations under the second test also precludes admissibility.

The second test was developed by the District Court for the Eastern District of Pennsylvania in Zenith Radio Corp. v. Matsushita Electric Industrial Co., 505 F Supp 1126 [6 Fed Rules Evid Serv 801] (ED Pa 1980). This test includes seven considerations, which have "emerged from the crucible of . . . hearings, and is responsive to . . . legitimate concern[s] about the trustworthiness of the reports and findings proffered by plaintiffs." Id. at 1147. The seven considerations are as follows:

"1. The finality of the agency findings, i.e., the state of the proceedings at which the findings were made, and the likelihood of modification or reversal of the findings.

"2. The extent to which the agency findings are based upon or are the product of proceedings prevailed by receipt of substantial amounts of material which would not be admissible in evidence (e.g. hearsay, ex parte evidence).

"3. If the findings are products of hearings, the extent to which appropriate safeguards were used, and the extent to which the investigation complied with all applicable agency regulations and procedures.

"4. The extent to which there is an ascertainable record on which findings are based.

"5. The extent to which the findings are a function of executive, administrative, or legislative policy judgment.

"6. The extent to which the findings are based upon findings of another investigative tribunal which is itself vulnerable as the result of trustworthiness evaluation.

"7. Where the public report purports to offer expert, opinion, the extent to which the facts or data upon which the opinion is based are of a type reasonably relied upon by experts in the particular field." Id.

Like the Advisory Committee test, this test is a weighing and balancing test. The test is intended to compliment the foregoing Advisory Committee test. See id. It is again appropriate to apply the considerations of this test to the report in this case.

There is no problem with the first consideration because the report is final. There is no chance for reversal or modification of the report.

The Zenith Court deems it appropriate to consider points 2 through 4 simultaneously because they all deal with the type of hearing held, if any, and the procedural safeguards used. Id. at 1148. In Zenith,

**11 FEDERAL RULES OF EVIDENCE SERVICE**
Cite as 11 Fed Rules Evid Serv

the court emphasized that even if the report findings are based in part on hearsay, this "does not ipso facto render the findings so untrustworthy as to be inadmissible." Id. Such an interpretation would be at odds with the failure of the drafters of Rule 803(8)(C) to require first-hand knowledge by the investigator or a duty to report by those contributing information. Id. However, findings cannot be deemed trustworthy where they emerge from proceedings that are pervaded by the receipt of ordinarily inadmissible material or that are notably lacking in procedural safeguards. Id. See also John McShain, Inc. v. Cessna Aircraft Co., 563 F2d 632 [2 Fed Rules Evid Serv 479] (3d Cir 1977). As stated under point 3 of the court's discussion of the Advisory Committee test, the investigating committees' meetings were lacking in procedural safeguards. Moreover, the minutes of the committee meetings, which defendant has attached to his response to plaintiff's renewed motion, reveal a great deal of hearsay. For example, page 13 of the minutes of the committee meeting of March 13, 1979, indicate that the witness group committee revealed to the committee as a whole that it had obtained subjective opinions from the aircraft crew. Further, page 14 of the minutes of the meeting of March 17, 1979, indicate that a committee member reported that he had obtained the impression of the first officer, of the flight that crashed, that "he was very conscious of the weather, and tail wind landing components." These are but a few examples of the many hearsay statements contained in the minutes. More importantly, the report is one step removed from these statements; that is, the committee was relying upon, and reporting, hearsay in the report. This results in the report constituting "double hearsay."[4] The court believes that it is safe to conclude that hearsay permeated the meetings and report, thereby causing the report to fail on criteria 2 through 4 of the Zenith test.

The fifth consideration—the extent to which the findings are a function of a policy judgment or represent an implementation of policy—is essentially a variation of the motivational problem consideration discussed in the Advisory Committee test. Id. The court has already discussed the motivational problem posed by the Qatar government's preparation of the report. Thus, the report fails on this consideration as well.

The report also fails under the sixth consideration—the extent to which the findings are based upon findings of another investigative

---

[4] For a discussion of "double hearsay," see McCormick, Law of Evidence 2d Ed, p 731.

body or tribunal which is itself vulnerable as the result of a trust-worthiness evaluation. It is apparent that the final report was based on the findings and reports of sub-committees, which this court knows nothing about. As stated, Kapustin was involved in the investigation, but this court knows nothing about the other individuals who comprised the committee. The court knows nothing about the sub-committees' expertise (or lack of expertise), the committees' possible biases, etc. Further, the court knows nothing about the individuals who comprised the committees or the individuals from whom the committees gathered their information. More importantly, it appears that the committees did not use procedural safeguards in gathering the information; rather, the committees apparently gathered as much information as possible, from whatever source was available. It is likely that much hearsay and irrelevant evidence was considered.

The final consideration is the reliability of the expert opinions contained in the report. Page 29 of the report does contain an opinion on whether the plane willfully entered into an area of severe weather conditions. Several of the conclusions contained on pages 31 and 32 of the report also constitute opinions. The court has no way of knowing, at this point, whether the opinions were based upon data and facts reasonably relied upon by experts in the field. However, the court does know that there is a likelihood that the opinions were based on otherwise inadmissible evidence.

As with the first test, the considerations of the second test weigh heavily against admissibility. The court emphasizes that the problems raised are only potential, rather than actual problems. This does not mean that all of the information contained in the report is unworthy of reliance in a court of law. However, the type of evidence contained in the report may range from mere third-hand rumors to sworn affidavits of credible observers. Such reports often have a wide scale of reliability, ranging from the highest to the lowest. Thus, potential problems must control in admissibility situations such as this, and based upon the results of the two tests utilized above, the accident report must be excluded from evidence.

In concluding, the court raises one final problem posed by the report. Fed R of Evid 403 vests the court with discretion to exclude relevant evidence if its probative value is outweighed by the danger of unfair prejudice. See Carter v. Hewitt, 617 F2d 961, 972 [5 Fed Rules Evid Serv 1184] (3d Cir 1980). The report in question in this case contains conclusions as to the cause of the accident. This cre-

ates the potential for the jury to be unduly prejudiced by the report and to adopt the conclusion of another tribunal as its own rather than making an independent determination based on the facts as presented. Accordingly, the report must be excluded on this ground as well.

## UNITED STATES v. RICHARDSON

United States Court of Appeals, Eleventh Circuit, December 20, 1982
11 Fed Rules Evid Serv 1912; 694 F2d 251

801d.60 Admissibility of coconspirator's statements; necessity of hearing.
While it would have been preferable for the district court in a prosecution for knowingly possessing goods stolen from interstate commerce to have held a hearing out of the presence of the jury, prior to admitting coconspirator statements, to determine whether there was independent evidence of the coconspirator's and defendant's involvement in the conspiracy within the meaning of Rule 801 (d) (2) (E), especially since the district court did not make a determination that a hearing would have been impractical, the district court did not abuse its discretion in denying the hearing and admitting the evidence subject to being connected up. The district court determined (and the record showed) that the evidence was connected up and defendant failed to make a showing of prejudice.

Appeal from the Northern District of Alabama. Before GODBOLD, Chief Judge, FAY, Circuit Judge, and SMITH, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

SMITH, Circuit Judge. Defendant Richardson was convicted by a jury sitting in the Northern District of Alabama of knowingly possessing goods stolen from interstate commerce, in violation of 18 USC § 659 (1976). On appeal defendant raises numerous objections to the conduct of and evidence produced at the trial. We discuss three of those objections in this opinion and affirm; the others we consider meritless and as to them the judgment of the district court is affirmed without opinion.

Briefly stated, the evidence showed that, in connection with a government "sting" operation for stolen goods, undercover FBI Agent Albert Baker was approached by Charles Hayden about the purchase of a tractor-trailer load of carpet. The agent agreed to the purchase and made arrangements with Hayden for the transfer of the truck