METLIFE CORPORATE INTERNAL AUDITING

REPORT 96-55007
JULY 19, 1996

**AUDIT OF:**

**INDIVIDUAL BUSINESS - ETHICS AND COMPLIANCE**

**CONFIDENTIAL**

METLIFE CONFIDENTIAL

HAZEN V. METLIFE   MP925000017436

## ENVIRONMENT

In February 1994, the Individual Business Ethics and Compliance (IB E&C) Department was established to develop, document and communicate IB's Enhanced Compliance Program (ECP) in concert with Corporate Ethics and Compliance (CEC). The ECP identified priority compliance issues; inventoried laws/regulations and existing policies/procedures; analyzed the effectiveness of existing policies/procedures; and, outlined methodologies to communicate the documented ECP to affected employees. As of November, 1995, CEC and IB E&C have identified 19 compliance issues focussing on Career Agency administrative policies and training. IB E&C is also responsible for assuring that significant new issues are incorporated in the ECP.

The organization includes a Home Office staff organized along functional lines as well as IB E&C personnel in the IB marketing territories, customer service centers and computer centers. The Customer Service Center in Johnstown, PA is responsible for conducting Additional Transaction Reviews (ATRs) requested by CEC and the Internal Auditing Department. These ATRs involve contacting the client to obtain the policy owner's understanding of transactions surrounding the sale. The information obtained is documented and evaluated by management personnel. If necessary, management will make recommendations regarding corrective actions.

## SCOPE

The audit was conducted to evaluate the adequacy and effectiveness of the activities conducted by IB E&C to assure compliance with Company policies, laws and regulations. This would include: a) the process used to identify relevant compliance issues and develop corrective action plans; b) the adequacy, effectiveness and timeliness of corrective actions plans developed to achieve compliance in high risk areas; and, c) monitoring, follow-up and reporting procedures.

## CONCLUSION

Serious concerns were raised with regard to the fulfillment of IB E&C's mission to ensure that business practices employed by the Career Agency sales force are ethical, fair, and in full compliance with all applicable laws and regulations. With specific regard to new business policy transactions, actions taken by IB E&C do not adequately safeguard the financial welfare of policy owners. For example, recommended corrective action plans are not always adhered to when an ATR raises questions regarding the original policy transaction. IB E&C does not ensure compliance with all regulatory disclosure laws or evaluate the potential repercussions of unapproved sales materials.

Concerns were also noted in several other areas: commissions for rewritten business not being restricted, non-compliance with Company employment requirements for sales representatives hired after January 1, 1995, all Personal Insurance business units not being included in the Personal Insurance ECP, and investigations being performed by sales management rather than by the IB E&C Investigation Unit.

**CONFIDENTIAL**

F. V. METLIFE MP9250000017437

METLIFE CONFIDENTIAL

## BUSINESS ISSUES AND MANAGEMENT ACTION PLANS

### I. Follow-up Procedures For Additional Transaction Reviews (ATRS):

The corrective action plans documented in the ATR do not appear to be adequately addressed, based on the following observations:

1) Follow-up letters sent to policy owners during ATRs do not clearly refer to the issues noted during the phone conversation with the policy owner nor do they always offer appropriate remedies. The letters contain detailed and (to those not trained in insurance terminology) potentially confusing information as to the nature of the sales transaction and its effect on any old policies from which funds may have been borrowed/withdrawn. In addition, they do not offer remedies to the policy owner (e.g., policy rescission), even though the facts of the case may indicate remedies are in order. Failure to convey the circumstances surrounding the sale in a manner that the policy owner can fully understand exposes the Company to regulatory fines and penalties.

   **Management Action Plan 1):**

   TARGET DATE:
   ACCOUNTABILITY:

2) If a policy owner fails to respond to an ATR follow-up letter, no attempt is made to re-contact the policy owner. Johnstown will not attempt to re-contact the policy owner either by phone or by mail even though information received during the telephone contact may indicate potential improper sales practices (e.g., churning of policy funds, misrepresentation). There is no assurance that the policy owner received the letter. Also, Johnstown will take no further action to correct the results of any potential improper sales practices (i.e., make the policy owner whole, complete required replacement forms for unreported replacements).

   **Management Action Plan 2):**

   TARGET DATE:
   ACCOUNTABILITY:

3) When an ATR reveals an unreported replacement, there is no process to assure that the required forms necessary to comply with disclosure regulations are subsequently filed. ATRs may include comments pertaining to such forms not being on file; however, no procedures exist in Johnstown or in the Territories which assure that the application file is reviewed and any missing forms (e.g. Replacement Forms, Forms 1035, etc.) are processed.

   **Management Action Plan 3):**

   TARGET DATE:
   ACCOUNTABILITY:

**CONFIDENTIAL**

METLIFE CONFIDENTIAL

HAZEN V. METLIFE      MP9250000017438

4) It does not appear that recommended commission restrictions resulting from ATRs have been processed by IB. In November, 1995 senior management decided to suspend commission restrictions on incidents of replacement occurring prior to 1/1/95 and discovered by a subsequent review of MSAMS reports. However, IB E&C management has not processed commission restrictions on restrictable events occurring after 1/1/95.

Management Action Plan 4):

TARGET DATE:
ACCOUNTABILITY:

5) As of mid-April, 1996, 15 (11%) of the approximately 140 Book of Business reviews requested have been completed. Book of Business reviews, which require testing of policies from a wider time period than a standard ATR, are requested when initial testing discloses a pattern of potential improper sales activity exists and the Company has determined that further investigation is in order.

Management Action Plan 5):

TARGET DATE:
ACCOUNTABILITY:

II. IB E&C Complaint Files:

6) The Investigation Unit of IB E&C, established as a resource to fully investigate problematic situations, is not actually performing investigations. The Unit's current activities include monitoring complaints and tracking investigations performed by other entities. The majority of the investigations are conducted by Regional and Agency Management; occasionally by the person against whom the allegation was made. There is no evidence that IB E&C has consistently evaluated the adequacy of Sales Management's investigations nor the appropriateness of their action plans.

Cases of concern to Auditing (e.g., forgery, money laundering) were not always referred to the Auditing Department for information or action.

Management Action Plan 6):

TARGET DATE:
ACCOUNTABILITY:

**CONFIDENTIAL**

H. / V. METLIFE MP9250000017439

This audit was performed by Thomas Luckey, John Leonardi, William Johnson, William Turcik and Joan DeGenova.

Joan DeGenova
Individual Business Auditing

July 19, 1996

**CONFIDENTIAL**

METLIFE CONFIDENTIAL

HAZEN V. METLIFE   MP9250000017440