IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT G. WYCKOFF,<br><br>    Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY AND KENNETH F. KACZMAREK,<br><br>    Defendants | CIVIL ACTION NO. 00-2248<br><br><br><br>CHIEF JUDGE AMBROSE |

**METROPOLITAN LIFE INSURANCE COMPANY'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EXHIBITS 107 AND 108**

**PRELIMINARY STATEMENT**

Defendant Metropolitan Life Insurance Company ("MetLife") and Kenneth F. Kaczmarek hereby submit this Brief in Support of Motion in Limine to Exclude Exhibits 107 and 108.

Plaintiff has listed on his exhibit list as Exhibit 107 a July 19, 1996 MetLife Corporate Internal Audit regarding Ethics and Compliance (the "1996 Audit Report") and as Exhibit 108 a December 4, 1998 MetLife Corporate Internal Audit regarding policy illustrations (the "1998 Audit Report"). Copies of each are attached as Exhibits A and B to the accompanying motion, respectively. The audits are wholly irrelevant to this case, as they neither mention nor relate to plaintiff's allegations regarding the sale at issue. The 1996 Audit focuses on issues unrelated to plaintiff's allegations, such as IB E&C's control of internal replacement and compliance with employment requirements for representatives hired after January 1, 1995. The 1998 Audit focuses on compliance with an NAIC Regulation that was not enacted until 1997, more than five years after the purchase of the 1991 policy, and three years after the purchase of the 1994 policy.

1

Evidence of these unrelated and temporally distant acts is wholly irrelevant under Federal Rule 401 and therefore inadmissible at trial under Federal Rule 402.  Further, to the degree these audits refer to any alleged "bad acts" by MetLife, the Court should not allow the introduction of evidence regarding these alleged "bad acts" because they are (i) irrelevant, (ii) prejudicial, and (iii) otherwise inadmissible.  The 1996 and 1998 Audit Reports are hearsay and cannot amount to a "finding" of any sort sufficient to establish any "subsequent act" of a similar nature.

Plaintiff undoubtedly will attempt to introduce the 1996 and 1998 Audit Reports in order to raise the inference that MetLife's Enhanced Compliance Program ("Compliance Program"), established in 1994, was somehow deficient or ineffective.  In fact, these audits prove that the Compliance Program was working and that MetLife was taking efforts to remedy any past lapses in compliance.  As such, these Audit Reports constitute subsequent remedial measures and should be excluded pursuant to Federal Rule of Evidence 407.

Accordingly, the 1996 and 1998 Audit Reports, and any testimony relating thereto, should be excluded from evidence at trial.

## BACKGROUND

Plaintiff makes "vanishing premium" claims with respect to two whole life policies purchased in 1991 and 1994.  Specifically, plaintiff claims that, in 1991, former MetLife sales representative Norman Molchan (deceased) misrepresented that plaintiff could purchase a $10,000 Whole Life policy by paying out-of-pocket premiums for only fourteen years.  Additionally, plaintiff asserts that an illustration was used indicating that, in year 2011, the 1991 Policy would have a cash value of $7,746.00 and a death benefit of $12,112.00.  On June 27, 1991, MetLife issued Policy No. 915 409 338 M ("1991 Policy") to plaintiff as owner and insured.  Initially, the 1991 Policy was sold with a monthly premium of $59.40 based on plaintiff's classification as a non-smoker.  However, a medical exam revealed nicotine in

plaintiff's urine and he was reclassified as a smoker. Thus, the 1991 Policy was issued with a higher monthly premium of $73.20.

Plaintiff admits that he contacted MetLife in 1994 because he was interested in exercising his conversion rights under an employer-provided group life insurance plan. On August 2, 1994, MetLife issued $4,500 Whole Life Policy No. 945 600 948 M ("1994 Policy") to plaintiff as owner and insured. The 1994 Policy was converted partially from plaintiff's group term Policy No. G-16200G after he retired from U.S. Steel. The monthly premium for the 1994 Policy of $34.23 was payable for thirty-two years. In the Complaint, plaintiff alleges that former MetLife sales representative Kenneth Kaczmarek misrepresented that plaintiff would have to pay monthly premiums on the 1994 Policy for only ten years, with no subsequent payments thereafter. However, plaintiff signed a Receipt stating that he had received a "Life Insurance Buyer's Guide" from MetLife and a State of Pennsylvania Disclosure Statement indicating that he understood he had purchased a $4,500 whole life policy with annual premiums of $410.76 payable for thirty years.

Plaintiff's Proposed Exhibit 107, the 1996 Audit Report, focused on the activities of MetLife's Individual Business and Ethics Compliance (IB E&C) Department, rather than the activities of any branch office or representative. Moreover, the findings of the 1996 Audit Report cover issues completely unrelated to plaintiff's allegations, such as IB E&C's control of internal replacement and compliance with employment requirements for representatives hired after January 1, 1995. See Ex. A at 2.

Plaintiff's Proposed Exhibit 108, the 1998 Audit Report, was completed on December 4, 1998 and covered activities at the branch ranging from approximately January 1997 through October 1998 – three years after the purchase of the 1994 policy. See Ex. B. The 1998 Audit

Report exclusively covers MetLife's compliance with an NAIC Model Regulation involving the production and content of Policy Illustrations. See Ex. B at 2. This Model Regulation was enacted in January 1997, three years after the sale of the policies at issue, and thus, the Model Regulation and the Audit regarding it are wholly irrelevant to plaintiff's allegations.

**ARGUMENT**

I. **THE CONTENT OF THE 1996 AND 1998 AUDIT REPORTS IS BEYOND THE SCOPE OF THE TRANSACTION AT ISSUE, IRRELEVANT TO THE LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSIBLE.**

   A. **The 1996 and the 1998 Audit Reports Are Irrelevant to Plaintiff's Claims.**

The content of the 1996 and 1998 Audit Reports is well beyond the scope of the transaction at issue and the pleadings in this case. Plaintiff should not be given the opportunity to introduce irrelevant information beyond the scope of the transactions, including, but not limited to, information regarding findings of noncompliance with issues, such as internal replacement, that are unrelated to plaintiff's claims and information beyond the temporal scope of the transactions at issue in this case. Neither Audit Report has any bearing on the sole issue in this case: what occurred during the sale of the life insurance policy at issue.

Rather, the 1996 Audit Report focused on the operations of the IB E&C Department, and made conclusions regarding issues such as the control of internal replacement and compliance with employment requirements for representatives hired after January 1, 1995. See Ex. A at 2. Plaintiff does not make any allegations regarding internal replacement in this matter.

Similarly, insofar as the 1998 Audit Report is limited in temporal scope to the period between January 1997 and October 1998, and the last transaction at issue occurred in 1994, it is completely irrelevant to what may or may not have occurred at the time of plaintiff's

4

transactions. Indeed, the 1998 Audit monitors Company compliance with an NAIC Model Regulation that was not even in effect at the time of the transactions at issue.

In short, the findings and conclusions contained within the Audit Reports have absolutely nothing to do with the transaction at issue or any of plaintiff's allegations. They possess no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" and, thus, are inadmissible. See Fed. R. Evid. 401; see, e.g., Michetti v. Linde Baker Material Handling Corp., 969 F.Supp. 286, 287-88 (E.D.Pa. 1997). Accordingly, plaintiff should be precluded from introducing such evidence.

### B. The Probative Value of the 1996 and the 1998 Audit Reports Is Outweighed By the Danger of Unfair Prejudice.

Even if this Court were to determine that the 1996 and 1998 Audit Reports are somehow relevant -- which they are not -- pursuant to Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Any probative value that the testimony and evidence could possibly possess is negligible when compared to the unduly prejudicial impact it would have upon the jury. See Taylor v. Monette, et al., 564 F.Supp. 1, 2 (E.D.Pa.1982) (excluding from trial evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm."). The 1996 and 1998 Audit Reports do not reference plaintiff, her policy, Haisela Dorsey, or have any relation to the transactions at issue. Here, plaintiff's purpose in referring to the 1996 and 1998 Audit Reports will be to inflame the jurors and prejudice them against MetLife. The evidence will invite the

5

jurors to disregard their duty to decide this case on its facts, rather than on their emotional reaction to the other alleged occurrences.  See Coursen v. A.H. Robins Co., 764 F.2d 1329, 1335 (9th Cir. 1985) (court should exclude evidence which is offered only to show defendant in a bad light); Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 188 (3d Cir. 1990) ("Evidence that a party committed wrongs other than those at issue in a case often creates a danger of 'unfair prejudice' because such evidence may influence a jury to return a verdict based on a desire to punish for the other wrongs."), cert. denied, 501 U.S. 1217 (1991) (emphasis added).

Any probative value the 1996 and 1998 Audit Reports could possibly possess is negligible when compared to the unduly prejudicial impact it would have upon the jury.  See Sprague v. Walter, 656 A.2d 890, 918 (Pa. Super. 1995) ("the trial court may properly exclude any evidence whenever its probative value is substantially outweighed by the danger of unfair prejudice, or the trial judge determines that the evidence may confuse the issues or mislead the jury") (citations omitted).

### C. The 1996 and the 1998 Audit Reports Are Inadmissible Character Evidence.

The 1996 and 1998 Audit Reports also are inadmissible under Federal Rule of Evidence 404(b).  Under that Rule, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," except under limited circumstances not applicable here.  See Pa. R. Evid. 404(b).  See also LaTaille v. Ponte, 754 F.2d 33, 35 (1st Cir. 1985) (prior bad acts not admissible to prove that defendant acted in similar fashion in the case at hand); Coursen v. A.H. Robins Co., 764 F.2d 1329, 1334-35 (9th Cir. 1985) (trial court properly excluded alleged prior misconduct which plaintiffs sought to introduce to establish evidence of a "pattern of neglect" or fraud because "[t]he overwhelming thrust of this evidence was to have the jury believe that because defendant lied [before]...it lied

6

[with respect to plaintiffs] as well").

In order for "bad acts" evidence to be admissible to establish a common plan, plaintiff must show that the acts "are part of a single series of events.'" J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994) (quoting Government of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992)).  When a proponent of evidence of other crimes, wrongs, or acts contends that it is both relevant and admissible for a proper purpose, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.  Becker v. ARCO Chemical Co., 207 F.3d 176, 191 (3d Cir. 2000). Evidence concerning other bad acts that are not connected to the transaction at issue is inadmissible.  See id.

In this case plaintiff does not -- and cannot -- articulate how the "bad acts" evidence contained in the Audit Reports is logically connected to her specific claims.  Indeed, the findings of the 1996 and 1998 Audit Reports do not even comport with the "bad acts" alleged by plaintiff. Rather, plaintiff clearly is attempting to introduce these Audits in an effort to raise the inference that MetLife has some propensity to commit bad acts.  Accordingly, plaintiff cannot establish that the Audit Reports are in any way sufficiently similar to the allegations in this case to merit their introduction.

## II. THE 1996 AND 1998 AUDIT REPORTS CONSTITUTE INADMISSIBLE HEARSAY.

The Federal Rule of Evidence 801 defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  FRE 801(c).  Because the 1996 and 1998 Audit Reports are indisputably out-of-court statements being offered as proof of the matters asserted therein, they

are classic hearsay.  See id.  As a result, plaintiff must satisfy the burden of showing that the 1996 and 1998 Audit Reports fit within an exception to the hearsay rule in order to be admitted into evidence.  See FRE 803.  Plaintiff simply cannot meet that burden.

Plaintiff may claim that the 1996 and 1998 Audit Reports fall within the "business records" exception to the general hearsay rule pursuant to Federal Rule of Evidence 803(6).  Under this exception, a record that otherwise would constitute hearsay is admissible if "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity" to create the record "all as shown by the testimony of the custodian or other qualified witness . . . unless the sources of information or other circumstances indicate lack of trustworthiness."  FRE 803(6).  However, plaintiff has offered no evidence to meet her burden of proving that the 1996 and 1998 Audit Reports fall within the "business records," or any other exception to the hearsay rule.

**III.    THE 1996 AND 1998 AUDIT REPORTS ARE EVIDENCE OF SUBSEQUENT REMEDIAL MEASURES, AND THUS, SHOULD BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 407.**

The 1996 and 1998 Audit Reports should be excluded because they are evidence of MetLife's subsequent remedial measures.  See Exhibit A.  Rule 407 provides in relevant part that "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, . . .[or] culpable conduct."[1]  The policy behind Rule 407 is "to encourage remedial measures."  Patrick v. South Central Bell Tel. Co., 641 F.2d 1192, 1196 (6th Cir. 1980).

As part of its agreement with the Pennsylvania Department of Insurance, MetLife agreed to conduct regular and thorough audits of its compliance procedures. Here, the 1996 and 1998 Audit reports were prepared at least in part due to MetLife's participation in the Compliance Program. Thus, they are clearly examples of subsequent measures taken by MetLife to remedy its allegedly lax prior auditing procedures. Further, the thorough and candid nature of these Audit Reports indicate the success MetLife was having in complying with the self-evaluation requirements of the Compliance Program. Plaintiff proffers no evidence that MetLife failed to act on the recommendations and findings made by the Audit Reports.

Because the Audit Reports are clearly evidence of subsequent remedial measures taken by MetLife, this Court should exclude them from evidence. The remedial value of the Compliance Program, and the purpose of Rule 407 would be entirely frustrated by using the Company's efforts against it.

## **CONCLUSION**

For the foregoing reasons, MetLife respectfully requests that this Court exclude the 1996 Audit Report and the 1998 Audit Report from use at trial.

---

[1] While Rule 407 permits evidence of subsequent remedial measures when offered for another purpose, "such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment," none of these exceptions apply to the facts presented here.

                                                  Respectfully submitted,

By:    s/ B. John Pendleton, Jr._____
           B. John Pendleton, Jr.
           PA I.D. No. 41162
           McCARTER & ENGLISH, LLP
           Four Gateway Center
           100 Mulberry Street
           Newark, NJ 07102
           (973) 622-4444
           Attorneys for Defendants
Dated: October 3, 2006    Metropolitan Life Insurance Company
           and Kenneth F. Kaczmarek

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of October 2006, a true and correct copy of the forgoing document was served upon the following via the electronic filing system:

Kenneth R. Behrend, Esquire
BEHREND & ERNSBERGER, P.C.
Union National Bank Building, 3rd Floor
306 Fourth Avenue
Pittsburgh, Pennsylvania 15222
Attorneys for Plaintiff

s/ B. John Pendleton, Jr._____

ME1\5879451.1