## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT G. WYCKOFF, | : CIVIL ACTION NO. 00-2248 |
| Plaintiff, | : |
| v. | : CHIEF JUDGE AMBROSE |
| METROPOLITAN LIFE INSURANCE COMPANY AND KENNETH F. KACZMAREK, | : |
| Defendants | : |

**METROPOLITAN LIFE INSURANCE COMPANY'S AND KENNETH KACZMAREK'S BRIEF IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE EXHIBITS 22, 66-77, 79-91, 93**

**PRELIMINARY STATEMENT**

Metropolitan Life Insurance Company ("MetLife") brings this Motion in Limine to Exclude Exhibits 22, 66-77, 79-91, and 93. These documents reflect internal discussions within MetLife regarding its dividend scale -- for years temporally distant from the 1991 and 1994 purchases of plaintiff's policies -- and have absolutely no relevance to the present case. The majority of these documents, all of which are rife with impermissible hearsay, involve MetLife's dividend scale -- and other irrelevant issues -- in the years prior to plaintiff's purchase of his policies in 1991 and 1994 and have absolutely nothing to do with plaintiff's allegations as set forth in his Complaint. See Exs. A-AA, Plaintiff's Proposed Exhibits 22, 66-77, 79-91, and 93 (the "dividend exhibits").

Because these documents do not mention or relate to any allegations regarding the sales at issue, they are irrelevant under Federal Rule of Evidence 401[1] and, therefore, inadmissible at trial under Rule 402.[2]  Additionally, they contain inadmissible hearsay that does not fall within any exception to the general hearsay rule under Federal Rules of Evidence 803 or 804.  The Court should not allow the introduction of evidence regarding other bad acts or wrongs because they are (i) irrelevant, (ii) prejudicial,[3] and (iii) otherwise inadmissible.

## **BACKGROUND**

Plaintiff makes "vanishing premium" claims with respect to two whole life policies purchased in 1991 and 1994.  Specifically, plaintiff claims that, in 1991, former MetLife sales representative Norman Molchan (deceased) misrepresented that plaintiff could purchase a $10,000 Whole Life policy by paying out-of-pocket premiums for only fourteen years.  Additionally, plaintiff asserts that an illustration was used indicating that, in year 2011, the 1991 Policy would have a cash value of $7,746.00 and a death benefit of $12,112.00.  On June 27, 1991, MetLife issued Policy No. 915 409 338 M ("1991 Policy") to plaintiff as owner and insured.  Initially, the 1991 Policy was sold with a monthly premium of $59.40 based on plaintiff's classification as a non-smoker.  However, a medical exam revealed nicotine in plaintiff's urine and he was reclassified as a smoker.  Thus, the 1991 Policy was issued with a higher monthly premium of $73.20.

---

[1] Federal Rule of Evidence 401 defines "relevant evidence" as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2] Rule 402 provides that relevant evidence is generally admissible, and irrelevant evidence is inadmissible.

[3] Rule 403 provides that relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

Plaintiff admits that he contacted MetLife in 1994 because he was interested in exercising his conversion rights under an employer-provided group life insurance plan. On August 2, 1994, MetLife issued $4,500 Whole Life Policy No. 945 600 948 M ("1994 Policy") to plaintiff as owner and insured. The 1994 Policy was converted partially from plaintiff's group term Policy No. G-16200G after he retired from U.S. Steel. The monthly premium for the 1994 Policy of $34.23 was payable for thirty-two years. In the Complaint, plaintiff alleges that former MetLife sales representative Kenneth Kaczmarek misrepresented that plaintiff would have to pay monthly premiums on the 1994 Policy for only ten years, with no subsequent payments thereafter. However, plaintiff signed a Receipt stating that he had received a "Life Insurance Buyer's Guide" from MetLife and a State of Pennsylvania Disclosure Statement indicating that he understood he had purchased a $4,500 whole life policy with annual premiums of $410.76 payable for thirty years.

Exhibits 66-77 and 79-81 concern MetLife's determination of its dividend scales for the years 1987 through 1990, <u>prior</u> to the sale of the 1991 policy at issue.[4] Absolutely <u>none</u> of these documents have any relevance to any of the claims in plaintiff's Complaint –whether MetLife or its representatives made any misrepresentations at the time of the 1991 and 1994 transactions at issue.

**ARGUMENT**

I. **THE DIVIDEND EXHIBITS ARE IRRELEVANT TO THE LITIGATION, UNFAIRLY PREJUDICIAL TO DEFENDANTS, AND INADMISSIBLE.**

The dividend exhibits should be excluded pursuant to Federal Rules of Evidence 401 and 402 because they are completely irrelevant. As stated, plaintiff's allegations are solely confined

to whether MetLife or its representatives made any misrepresentations to him at the sale of the 1991 or 1994 policies. Most of the dividend exhibits discuss MetLife's determination of its dividend scale in the years prior to the 1991 sale of plaintiff's policy. For example, Exhibit 73 concerns policies which were sold between 1984 and 1987. See Ex. I. As stated, the first policy at issue was purchased in 1991, so any discussion regarding the status of policies purchased from 1984 to 1987 is completely irrelevant.

Plaintiff may attempt to use the dividend exhibits to show that MetLife was aware in the 1980s that the dividend scale would need to be lowered. See Ex. B-P. Thus using these exhibits is impermissible because plaintiff does not allege any complaint with respect to MetLife's dividend scale – not at any time and certainly not during the decade preceding her purchase of the 1991 policy. In any event, nowhere do these documents indicate that, prior to 1992, MetLife had any knowledge as to what the dividend scale would be in 1992. Although MetLife determined its dividend scale, that determination was based on a number of factors, including current interest rates and the state of the economy in general. It is fundamental economics that interest rates fluctuate, and MetLife's decisions in the late 1980's regarding its dividend scale simply cannot be read to impute any knowledge on MetLife's behalf as to what the interest rates or state of the economy would be in 1992. Rather, the proposed exhibits only illustrate MetLife's good-faith effort, within its business judgment, to provide the highest possible return to its policyholders.

Importantly, at the time of the 1991 and 1994 sales MetLife was bound by the Pennsylvania Insurance Regulations to illustrate only at its current dividend rate -- not its past or any anticipated dividend rates. See 31 Pa. Code § 87.29. Therefore, not only would the dividend exhibits improperly raise the inference to the jury that MetLife was engaged in some "scheme"

or "bad act" with respect to the dividend scale -- and it was not -- but it will also raise the inference that MetLife should have disclosed on its illustrations past or anticipated dividend rates as a reflection of the internal communications contained in the exhibits.  That inference would be particularly unfair and prejudicial against MetLife because in 1991 and 1994 (as now), MetLife was <u>required</u> by Pennsylvania law to illustrate <u>only</u> its current dividend rate.  Indeed, any illustration of anticipated rates would have been misleading given the inherent unpredictability of interest rates and the dividend scale.

Furthermore, several of the dividend exhibits discuss matters that are blatantly irrelevant to plaintiff's claims.  For example, Exhibit 80 discusses MetLife's attempts to track and control the "financing by inforce" (of "FIP") of new policies.  <u>See</u> Ex. O.  Plaintiff makes no allegations regarding internal replacement, or of MetLife's FIP tracking system, and as such, evidence regarding internal replacement is completely irrelevant.

In sum, the dividend exhibits discuss unrelated matters that are wholly irrelevant to this case and, therefore, inadmissible under Federal Rules of Evidence 401 and 402.  These documents possesses absolutely no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" and, thus, is inadmissible.  <u>See</u> Fed. R. Evid. 401;  <u>see</u>, <u>e.g.</u>, <u>Michetti v. Linde Baker Material Handling Corp.</u>, 969 F.Supp. 286, 287-88 (E.D.Pa. 1997).

**III.   ANY PROBATIVE VALUE THAT THE DIVIDEND EXHIBITS MAY HAVE IS OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUES, OR MISLEADING THE JURY.**

If this Court determines that the dividend exhibits have any relevance -- which it should not -- they should nevertheless be excluded.  Federal Rule of Evidence 403 states that relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury." Any probative value that the dividend exhibits could possibly possess is negligible when compared to the unduly prejudicial impact it would have upon the jury. See Taylor v. Monette, 564 F. Supp. 1, 2 (E.D.Pa.1982) (excluding from trial evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm.")

Here, plaintiff's purpose in using the dividend exhibits would be to inflame the jurors and prejudice them against MetLife. The evidence will inappropriately invite the jurors to disregard their duty to decide this case on its facts. See Coursen v. A.H. Robins Co., 764 F.2d 1329, 1335 (9th Cir. 1985) (court should exclude evidence which is offered only to show defendant in a bad light); Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 188 (3d Cir. 1990) ("Evidence that a party committed wrongs other than those at issue in a case often creates a danger of 'unfair prejudice' because such evidence may influence a jury to return a verdict based on a desire to punish for the other wrongs."), cert. denied, 501 U.S. 1217 (1991) (emphasis added).

Plaintiff will likely attempt to use the dividend exhibits to show unrelated alleged "wrongs" or "bad acts" of MetLife to show that MetLife behaved in a similar manner in this case. This evidence would be inadmissible under Federal Rule of Evidence 404(b). Under that Rule "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," except under limited circumstances not applicable here. See Fed. R. Evid. 404(b) (evidence of other wrongs may be admissible to show existence of a "plan"). In order for "bad acts" evidence to be admissible to establish a common plan, plaintiff must show that the acts "are part of a single series of events.'" J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994) (quoting Government

of the Virgin Is. v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992).  Evidence concerning other bad acts that are not connected to the transaction at issue is inadmissible.  See id.

As stated, any attempt to use these exhibits to raise the inference that MetLife was engaged in a scheme to keep its dividend scale artificially inflated in the late 1980's is improper because even if such a scheme existed -- and it did not -- it has no commonality with any of plaintiff's Complaint allegations.

## IV.   THE DIVIDEND EXHIBITS CONSTITUTE INADMISSABLE HEARSAY.

The dividend exhibits are classic hearsay, in violation of Federal Rule of Evidence 801(c).  In order for the dividend exhibits to be admitted into evidence, the Plaintiff must satisfy their burden of showing that they fit within an exception to the hearsay rule.  See F.R.E. 803.  Plaintiff simply cannot meet that burden here.

## CONCLUSION

For the foregoing reasons, MetLife respectfully requests that this Honorable Court enter an Order barring the introduction or use of Plaintiff's Proposed Exhibits 22, 66-77, 79, 91, and 93.

Respectfully Submitted,

s/ B. John Pendleton, Jr.
B. John Pendleton, Jr.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Attorneys for Defendant
Metropolitan Life Insurance Company
and Kenneth F. Kaczmarek

Dated:  October 3, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via the electronic filing service, on this 3rd day of October, 2006 on the following counsel of record:

>Kenneth R. Behrend, Esq.
>Behrend and Ernsberger, P.C.
>Union National Bank Building
>306 Fourth Avenue, Suite 300
>Pittsburgh, PA  15222

>__s/ B. John Pendleton, Jr. _____