**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT G. WYCKOFF, | : CIVIL ACTION NO. 00-2248 |
| Plaintiff, | : |
| | : |
| | : |
| | : CHIEF JUDGE AMBROSE |
| v. | : |
| | : |
| METROPOLITAN LIFE INSURANCE | : |
| COMPANY AND KENNETH F. | : |
| KACZMAREK, | : |
| | : |
| Defendants. | : |

**DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY'S AND
KENNETH KACZMAREK'S MOTION IN LIMINE TO EXCLUDE EVIDENCE
REGARDING THE CONNECTICUT MARKET CONDUCT EXAMINATIONS OF
METROPOLITAN LIFE INSURANCE COMPANY AND RELATED DOCUMENTS**

**PRELIMINARY STATEMENT**

Defendants Metropolitan Life Insurance Company ("MetLife") and Kenneth Kaczmarek

(collectively, "defendants") bring this Motion in Limine to Exclude Evidence Regarding the

Connecticut Market Conduct Report (the "Connecticut Report") and Related Documents.

1.      Plaintiff has identified the Connecticut Report as Plaintiffs Proposed Exhibit 34.

A copy of the Connecticut Report is attached to the Motion as Exhibit A.

2.      Plaintiff further listed numerous items on his Exhibit List which relate to the

Connecticut Report.  Plaintiff has identified a letter, dated December 19, 1997, from Daniel F.

Harrigan, Program Manager, Market Conduct Division, State of Connecticut, to Harry P. Kamen

as Exhibit 102.  Exhibit No. 102 is attached to the Motion as Exhibit B.  Plaintiff has identified

the State of Connecticut Insurance Department Stipulation and Consent Order as Exhibit 103.

Exhibit No. 103 is attached to the Motion as Exhibit C.

3.      The Connecticut Report should be excluded on three grounds.  First, it is

irrelevant (Rules 401 and 402).  Second, even if relevant -- which it is not -- the Connecticut

Report's probative value is outweighed by the risk of unfair prejudice (Rule 403).  Finally, the Connecticut Report is inadmissible as classic hearsay (Rule 802).

4.      The Connecticut Report is irrelevant.  Kenneth Kaczmarek, the sales representative in this case, is not mentioned in the Connecticut Report and did not participate in the investigations upon which the Connecticut Report is based, and thus had no opportunity to respond.  Similarly, neither the Plaintiff nor the Plaintiff's policies are mentioned in the Connecticut Report or the related documents.

5.      The Connecticut Report is not only irrelevant, but also inadmissible hearsay.  The Connecticut Report is based on "hundreds of pages of testimony" from numerous unnamed policyholders and MetLife employees.  See Ex A at 1.  The Connecticut Report even published lengthy quotes of unnamed policyholders.  See Ex A at 19 – 21.  In order for evidence regarding the Connecticut Report to be admitted into evidence, Plaintiff must satisfy his burden of showing that the Connecticut Report fits within an exception to the hearsay rule.  Plaintiff cannot meet that burden.  The Connecticut Report is a product of one-sided investigations conducted without the safeguards of the adversarial process and thus lack the trustworthiness required to come within the official records exception to the hearsay rule.  Furthermore, any probative value the Connecticut Report could have is outweighed by the overwhelming prejudicial impact on MetLife.

6.      Plaintiff may try improperly to use the Connecticut Report as evidence of a trait or habit, though it is inadmissible for lack of relevance.  The Connecticut Report was explicitly limited to life insurance sales practices in the Commonwealth of Connecticut.  See Ex A at 4.  Mr. Kaczmarek is not mentioned in the Connecticut Report, namely because he has never conducted any business in Connecticut.  The Connecticut Report was issued "as a result of a joint investigation by the Connecticut Attorney General's Office and the Market Conduct

Division of the Connecticut Insurance Department." Id. The Connecticut Report contains

numerous "findings" regarding issues that have nothing to do with the issues presented in this

case. For example, the Connecticut Report addresses whether MetLife violated the 1994

Stipulation and Consent Order entered into by MetLife and the Connecticut Insurance

Department,[1] whether MetLife's current compliance systems are sufficient to prevent churning

and misrepresentation in the sale of life insurance, and MetLife's purported failure to report

regulatory violations by MetLife sales representatives. Id. at 8-9. Plaintiff has not alleged any

claims of churning. The findings on those issues are not relevant to this case.

       7.      Allowing evidence of these entirely irrelevant findings in the Connecticut

Report will serve only to confuse and prejudice the jury. Further, while the Connecticut

Report found that there was sufficient evidence to charge MetLife with violations of

Connecticut statutes regarding its sales of "vanishing premium," Plaintiff here is not

bringing an action involving MetLife's purported violation of Connecticut statutes. Thus,

any findings that MetLife violated such statutes are completely irrelevant.

       8.      Furthermore, the transactions at issue took place in Pennsylvania. The

Connecticut Attorney General's Office and the Market Conduct Division of the Connecticut

Insurance Department have no jurisdiction to "investigate" transactions in Pennsylvania, nor did

they do so. Accordingly, the Connecticut Report is entirely irrelevant to this case. Based on the

information and arguments set forth above, any evidence regarding the Connecticut Report and

the underlying investigations should be excluded.

---

[1] This Consent Order involved only allegations regarding misrepresentations that whole life insurance policies were sold as retirement or savings plans in violation of Conn. Gen. Stat. § 38a-815. See Ex A at 6 and Exhibit A to same.

9.      Furthermore, MetLife was not afforded the due process in the Connecticut Report proceedings to which it is entitled in this Court proceeding.  See 40 Pa. P.S. §323.4 (setting forth the procedures applicable to insurance department examinations).  Specifically, MetLife was denied:  (1) the benefit of a hearing before an impartial trier of fact, (2) the protections of appropriate evidentiary rules, and (3) the opportunity to take sworn testimony subject to cross-examination.  There was no regard for evidentiary rules.

For the foregoing reasons, and those set forth in Defendants' Brief in Support of Motion in Limine to Exclude Evidence Regarding the Connecticut Market Conduct Report (the "Connecticut Report") and Related Documents, Defendants respectfully request that this Court exclude the Connecticut Market Conduct Report and any evidence regarding the Report from use at trial.

Respectfully Submitted,


s/ B. John Pendleton, Jr.
B. John Pendleton, Jr.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Attorneys for Defendants
Metropolitan Life Insurance Company
and Kenneth Kaczmarek

Dated: October 3, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via electronic case filing system, on this 3rd day of October 2006 on the following counsel of record:

> Kenneth R. Behrend, Esq.
> Behrend and Ernsberger, P.C.
> Union National Bank Building
> 306 Fourth Avenue, Suite 300
> Pittsburgh, PA  15222

\_\_s/ B. John Pendleton, Jr. _____