# EXHIBIT C

HAZEN V. METLIFE   MP9250002229200

**STATE OF CONNECTICUT**
**INSURANCE DEPARTMENT**

---------------------------------------------------------- X
In The Matter Of:
   :
METROPOLITAN LIFE INSURANCE COMPANY,   :   Docket No. MC 98-104
   :
Respondent.   :
----------------------------------------------------------X

## STIPULATION AND CONSENT ORDER

WHEREAS, Metropolitan Life Insurance Company, hereinafter referred to as "MetLife," is a mutual life insurance company incorporated under the laws of the State of New York with its principal place of business at One Madison Avenue, New York, New York 10010-3690, which holds a certificate of authority to transact the business of insurance in the State of Connecticut; and,

WHEREAS, pursuant to Conn. Gen. Stat. § 38a-16, the Insurance Commissioner of the State of Connecticut or his authorized representative may, as often as he deems necessary, conduct investigations and hearings in aid of any investigation on any matter under the provisions of Title 38a of the Connecticut General Statutes; and,

WHEREAS, the Insurance Commissioner appointed the Attorney General and the Market Conduct Division of the Insurance Department to conduct a joint investigation of the life insurance sales practices of MetLife; and,

WHEREAS, the investigation authorized by the Insurance Commissioner focused on allegations of churning in the sale of whole life insurance, and misrepresentations of so-called "vanishing premium" policies for the period from 1980-1997, and whether MetLife complied with the 1994 Stipulation and Consent Order entered by the Insurance Department In the Matter of Metropolitan Life Insurance Company, Docket No. LH 94-51; and,

WHEREAS, the Report of Investigation dated October 14, 1998 found, among other things, that

(i) There was sufficient evidence to charge MetLife with violating the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-816(1)(a), (f), and (g) in that MetLife agents engaged in churning in the State of Connecticut prior to 1994 and that MetLife knew or should have known that it was occurring;

(ii) There was sufficient evidence to charge MetLife with violating Conn. Gen. Stat. § 38a-816(1)(a) and (b) regarding misrepresentations in the sale of so-called "vanishing premium" policies in the State of Connecticut by MetLife agents prior to 1994 and that MetLife knew or should have known of such misrepresentations;

(iii) There was insufficient evidence to show that MetLife violated the 1994 Stipulation and Consent Order in Docket No. LH 94-51 entered into between MetLife and the Insurance Department; and

(iv) The Report of Investigation concludes that a proceeding under the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-817 would be in the public interest; and,

WHEREAS, MetLife has fully cooperated with the joint investigation; and,

WHEREAS, in 1994 MetLife adopted and has implemented an enhanced ethics and compliance program; and,

HAZEN V. METLIFE    MP9250002299202

WHEREAS, without admitting that its activities violated the laws of the State of Connecticut, and in the interest of fully and finally resolving all issues considered in the Report of Investigation dated October 14, 1998, MetLife agrees to enter into this Stipulation and Consent Order with the State of Connecticut Insurance Department; and,

WHEREAS, the Respondent being desirous of avoiding formal administrative proceedings or future litigation, voluntarily waives:

1. any right to a hearing;

2. any requirement that the Insurance Commissioner's decision contain a statement of findings of fact and conclusions of law; and

3. any and all rights to object to or challenge before the Insurance Commissioner or in any judicial proceeding any aspect, provision, or requirement of the Stipulation and Consent Order;

NOW, THEREFORE, upon the consent of the parties, it is hereby ordered and adjudged:

1. Remediation -- MetLife will fund and carry out the remediation plan described in Attachment A and incorporated herein.

2. Penalty -- In addition to remediation, MetLife shall pay to the State of Connecticut an administrative penalty in the amount of $800,000.00 within thirty days of the date of this Order.

3. Costs -- MetLife shall reimburse the State of Connecticut the costs of the investigation conducted jointly by the Insurance Department and the Attorney General's Office in the amount of $50,000.00.

3

4. Contributions — MetLife agrees to pay to the State of Connecticut for the use of the Insurance Department and the Attorney General's Office the sum of $150,000 as Connecticut law provides for purposes of consumer education.

5. MetLife agrees that if it enters into a plan of restitution or program of policyholder remediation with any other state, or federal agency or as a result of any court action which provides greater benefits to policyholders than the plan of remediation set out in Attachment A such benefits shall be offered to eligible policyholders in the State of Connecticut.

6. This Stipulation and Consent Order shall have no effect as to the rights or claims of any individuals except the State of Connecticut Insurance Department and MetLife. This Stipulation and Consent Order shall not affect the ability of the State of Connecticut Insurance Department to investigate acts and practices of any licensed agent of MetLife or to take any appropriate enforcement action against such agent warranted by such investigation.

7. This Stipulation and Consent Order shall be binding on MetLife, its successors and assignees.

8. The Insurance Department and MetLife agree that the terms and language of this Stipulation and Consent Order were the result of good faith negotiations between them, and as a result, there shall be no presumption that this Stipulation and Consent Order shall be construed more strictly against any one party.

HAZEN V. IFE    MP9250002229203

HAZEN V. METLIFE   MP925000229204

Consented and agreed to this 26th day of October, 1998.

METROPOLITAN LIFE INSURANCE COMPANY

BY: _____
Lawrence A. Vranka
Vice President


STATE OF CONNECTICUT
INSURANCE DEPARTMENT

Dated at Hartford, Connecticut this 30th day of October, 1998.

_____
George M. Reider, Jr.
Insurance Commissioner

5

HAZEN V. [illegible]

MP9250002229205

October 20, 1998

Attachment A

Metropolitan Life Insurance Company's
Plan for Remediation for the State of Connecticut

Metropolitan Life Insurance Company ("MetLife") agrees to implement the following remediation plan in the State of Connecticut.

Policyholder Surveys

MetLife will mail surveys to defined groups of its policyholders seeking to identify individuals who might have purchased life insurance in a replacement transaction or believing that out-of-pocket premium payments would be required only for a fixed period of time (so-called "accelerated premium payment arrangement" or "AP"). These mailings will be sent to certain policyholders who purchased traditional non-term or non-variable flexible premium life insurance policies (collectively referred to as "life insurance policies") during the period from January 1, 1988 to June 30, 1994. The surveys will ask the policyholders to provide information relating to the circumstances under which they purchased their life insurance policies.

In consultation with the Insurance Department and the Office of the Attorney General, MetLife has developed a methodology for identifying which of its policyholders will be mailed surveys. One group of policyholders will consist of persons who are identified using MetLife's internal computer systems as individuals who may have used values from an existing MetLife life insurance policy to pay all or part of the premiums on a life insurance policy issued to them between January 1, 1988 and June 30, 1994. MetLife will use its computer systems in an effort to identify policyholders who withdrew values from an existing life insurance policy within three months prior to or thirteen months after their purchase of the newly issued life insurance policy. This group will include many policyholders not involved in replacement transactions but should include those policyholders who used values from a MetLife life insurance policy to pay all or part of the premiums on another MetLife life insurance policy, a practice that is lawful and may be appropriate but which the Company has agreed to review on an individualized basis through this survey process.

A second group of policyholders who will receive surveys will consist of individuals who may have purchased their life insurance policies expecting that their policies would be eligible for the AP arrangement within a fixed period of time. Such expectations may be entirely appropriate but the transactions will be reviewed through this

2

survey to confirm policyholder understanding of these transactions. Utilizing criteria that have been accepted by the Insurance Department and the Office of the Attorney General, MetLife will exclude from the group of survey recipients policyholders who took steps to delay or render impossible their policy's eligibility for the AP arrangement, such as by withdrawing dividends or taking loans on their policy.

MetLife does not propose to send a survey to any policyholder who responded to a previous survey from the Company regarding replacement. All materials sent to policyholders are subject to the prior approval of the Commissioner, and shall clearly indicate that they are being sent pursuant to a settlement agreement between MetLife and the Commissioner.

Forms of Remediation

MetLife will review the responses to the surveys and, where it concludes it is appropriate (subject to the third party monitoring described below), offer the following remediation to its policyholders:

1. *Replacement Complaints.* For policyholders expressing substantiated replacement complaints in their survey responses (i.e., a purchase made pursuant to false or misleading sales presentations or with insufficient disclosure as to the nature of the transaction), MetLife will offer to restore the policyholders to their original life insurance policy, as if the replacement transaction had never occurred, and will make appropriate adjustments with respect to interest, dividends and premiums. In determining whether a complaint is substantiated, MetLife will use the replacement standards adopted as part of its enhanced ethics and compliance program.

2. *AP Complaints.* For policyholders who have documentary proof that they would have to pay out-of-pocket premiums only for a fixed period of time, MetLife will offer the benefit of whatever bargain is reflected in the documentary proof. For purposes of this remediation plan, a standard policy illustration will not be considered sufficient documentary proof.

For policyholders who allege in their survey responses that they were told by a MetLife sales representative that they would have to pay out-of-pocket premiums only for a fixed period of time but who lack documentary proof of such a representation and for policyholders whose survey responses consist of a complaint that their life insurance policy is not eligible for the AP arrangement because it has not performed as well as they had expected based on the sales presentation they received from a MetLife sales representative, MetLife will offer a loan to finance any premium payments required during the period from the AP date originally illustrated to the date the policy actually becomes eligible for the AP arrangement. The loan will be made at no net out-of-pocket cost to the policyholder and will not be required to be repaid until the death claim is paid or the policy is surrendered.

HAZEN V. METLIFE    MP9250000229206

3

### Application of Remediation Plan

Policyholder complaints received after the date of this agreement for policies sold between January 1, 1980 and December 31, 1987 or July 1, 1994 and December 31, 1997 that assert substantiated replacement complaints or are AP complaints with documentary proof that the policyholder would have to pay out-of-pocket premiums only for a fixed period of time will be accorded the benefits of the remediation plan. MetLife will not be required to mail surveys to such policyholders.

### No Release or Waiver by Policyholders

MetLife will not ask any policyholder who responds to the survey or who is offered remediation to execute a release or waiver of any legal rights that person might possess as a condition of receiving relief under this program.

### Independent Review of MetLife's Decisions

MetLife agrees to the appointment of a mutually acceptable third party to review MetLife's decisions whether to offer remediation to affected policyholders. The third party will be authorized to report MetLife's remediation decisions to the Insurance Department and to inform it whether the third party concurs or disagrees with each of those decisions and the reasons for any disagreement. MetLife agrees to pay the reasonable costs and expenses of the third party's review. If any cases of disagreement arise between MetLife and the third party, MetLife will be afforded an opportunity to present its findings and conclusions to the Insurance Department.

### No Admissions

Nothing in this remediation plan or in MetLife's implementation of this remediation plan shall be construed as an admission of any kind by MetLife nor shall this remediation plan or MetLife's implementation of this remediation plan be admissible in any legal proceeding, except a legal proceeding by the State of Connecticut to enforce the Stipulation and Consent Order with MetLife.

HAZEN V. LIFE MP92500022920 7