IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT G. WYCKOFF, | : | CIVIL ACTION NO. 00-2248 |
| Plaintiff, | : | |
| v. | : | CHIEF JUDGE AMBROSE |
| METROPOLITAN LIFE INSURANCE COMPANY AND KENNETH F. KACZMAREK, | : | |
| Defendants. | : | |

**DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY'S AND KENNETH KACZMAREK'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING THE FLORIDA MARKET CONDUCT EXAMINATIONS OF METROPOLITAN LIFE INSURANCE COMPANY**

**PRELIMINARY STATEMENT**

Defendants Metropolitan Life Insurance Company ("MetLife") and Kenneth Kaczmarek (collectively, "defendants") bring this Motion in Limine to Exclude Evidence Regarding the Florida Report of Investigation into Sales Practices of Metropolitan Life Insurance Company (the "Florida Report"). Plaintiff has identified the Florida Report as Plaintiff's Exhibit 33.[1]

The Florida Report should be excluded on three grounds. First, it is irrelevant (Rules 401 and 402). The Florida Report concerns the misrepresentation of life insurance policies as "savings and retirement" plans marketed out of MetLife's Tampa office to nurses. Second, even if relevant -- which it is not -- the Florida Report's probative value is outweighed by the risk of unfair prejudice (Rule 403). Finally, the Florida Report is inadmissible as classic hearsay (Rule 802).

---

[1] A copy of the Florida Report is attached to the Motion as Exhibit A.

Defendants were not afforded the due process in the market conduct proceedings to which it is entitled in this Court proceeding.  See 40 Pa. P.S. §323.4 (setting forth the procedures applicable to insurance department examinations).  Specifically, Defendants were denied:  (1) the benefit of a hearing before an impartial trier of fact, (2) the protections of appropriate evidentiary rules, and (3) the opportunity to take sworn testimony subject to cross-examination or to confront any witnesses.  There was no regard for evidentiary rules.

The Florida Report is replete with inadmissible hearsay.  In order for evidence regarding the Florida Report to be admitted into evidence, Plaintiff must satisfy his burden of showing that the Florida Report fits within an exception to the hearsay rule.  Plaintiff cannot meet that burden.  The Florida Report is the product of a one-sided investigation conducted without the safeguards of the adversarial process and thus lack the trustworthiness required to come within the official records exception to the hearsay rule.  Furthermore, any probative value the Florida Report could have is outweighed by the overwhelming prejudicial impact on Defendants.

Plaintiff may try improperly to use the Florida Report as evidence of a trait or habit, though it is inadmissible for lack of relevance.  Kenneth Kaczmarek, the MetLife sales representative in this case, is not mentioned in the Florida Report.  A significant portion of the Florida Report discusses the alleged sale of life insurance policies as retirement plans to nurses and includes numerous examples of sales materials allegedly used in connection with those sales.  Plaintiff makes no allegations savings and retirement plans.

Moreover, Kenneth Kaczmarek, the sales representative in this case, is not mentioned in the Florida Report and did not participate in the investigation upon which the Florida Report was based and had no opportunity to respond.  Similarly, neither the Plaintiff nor the Plaintiff's policies are mentioned in the Florida Report.

Moreover, the Florida Report focused primarily on the activities of Rick Urso ("Urso"), Manager of the District Sales Office for the Southeastern Head Office Branch for MetLife and the sales representatives who worked in that Branch. See Ex. A at 1. These "Urso" sales representatives allegedly sold whole life insurance policies to nurses as "Nurses Retirement Savings Plan[s]." Id. at 1-2. Kenneth Kaczmarek has never worked in the same branch as Urso, nor did he sell the policies at issue as "Nurses Retirement Savings Plan[s]." In addition, the exhibits attached to the Florida Report are not at issue in this case and were not used in these transactions. Id. Most of the exhibits specifically involve the alleged sale of life insurance to nurses as "Nurses Retirement Savings Plan[s]."

Furthermore, the transactions at issue took place in Pennsylvania. The Florida Department of Insurance has no jurisdiction to "investigate" transactions in Pennsylvania, nor did they do so. Accordingly, the Florida Report is entirely irrelevant to this case. Based on the information and arguments set forth above, any evidence regarding the Florida Report and the underlying investigation should be excluded.

## BACKGROUND

I. **THE TRANSACTIONS AT ISSUE**

Plaintiff makes "vanishing premium" claims with respect to two whole life policies purchased in 1991 and 1994. Specifically, Plaintiff claims that, in 1991, former MetLife sales representative Norman Molchan (deceased) misrepresented that Plaintiff could purchase a $10,000 Whole Life policy by paying out-of-pocket premiums for only fourteen years. Additionally, Plaintiff asserts that an illustration was used indicating that, in year 2011, the 1991 Policy would have a cash value of $7,746.00 and a death benefit of $12,112.00. On June 27, 1991, MetLife issued Policy No. 915 409 338 M ("1991 Policy") to Plaintiff as owner and insured. Initially, the 1991 Policy was sold with a monthly premium of $59.40 based on

Plaintiff's classification as a non-smoker. However, a medical exam revealed nicotine in Plaintiff's urine and he was reclassified as a smoker. Thus, the 1991 Policy was issued with a higher monthly premium of $73.20. Plaintiff avers that he did not contest the higher premium. Nevertheless, he contends that, "by paying the additional amount of premium," he still would only have to pay out-of-pocket premiums for fourteen years.

Plaintiff admits that he contacted MetLife in 1994 because he was interested in exercising his conversion rights under an employer-provided group life insurance plan. On August 2, 1994, MetLife issued $4,500 Whole Life Policy No. 945 600 948 M ("1994 Policy") to Plaintiff as owner and insured. The 1994 Policy was converted partially from plaintiff's group term Policy No. G-16200G after he retired from U.S. Steel. The monthly premium for the 1994 Policy was $34.23 payable for thirty-two years. In the Complaint, Plaintiff alleges that former MetLife sales representative Kenneth Kaczmarek misrepresented that Plaintiff would have to pay monthly premiums on the 1994 Policy for only ten years, with no subsequent payments thereafter. Plaintiff further alleges that Mr. Kaczmarek did not did not disclose that the 1994 Policy was, in fact, a whole life policy with payments payable for Plaintiff's death. However, Plaintiff also concedes in the Complaint that the group term policy "could only be converted to a whole life policy." Furthermore, Plaintiff signed a Receipt stating that he had received a "Life Insurance Buyer's Guide" from MetLife and a State of Pennsylvania Disclosure Statement indicating that he understood he had purchased a $4,500 whole life policy with annual premiums of $410.76 payable for thirty years.

## II.     THE FLORIDA REPORT

The Florida Report was prepared by Thomas Tew, a Miami lawyer who was named by the Florida Insurance Commissioner and Treasurer and the Florida Attorney General to head a joint-agency investigation into certain sales practices of MetLife. See Ex. A at 1. The Report

was prepared in response to a Notice and Order to Show Cause filed by the Florida Department of Insurance, relating to allegations that MetLife violated Florida insurance statutes. Id.

A significant portion of the Florida Report discusses the alleged sale of life insurance policies as retirement plans and includes numerous examples of sales materials allegedly used in connection with this sale of life insurance as a retirement plan. The Florida Report focused primarily on the activities of Rick Urso ("Urso"), Manager of the District Sales Office for the Southeastern Head Office Branch for MetLife and the sales representatives who worked in that Branch. Id. These "Urso" sales representatives allegedly sold whole life insurance policies to nurses as "Nurses Retirement Savings Plan[s]." Id. at 1-2. Most of the exhibits to the Florida Report specifically involve the alleged sale of life insurance to nurses as "Nurses Retirement Savings Plan[s]."

## ARGUMENT

### I. THE FLORIDA REPORT CONSTITUTES INADMISSIBLE HEARSAY.

The Florida Report is classic hearsay. In order for evidence regarding the Florida Report to be admitted into evidence, Plaintiff must satisfy the burden of showing that the Florida Report fits within an exception to the hearsay rule. Plaintiff simply cannot meet that burden.

Plaintiff may claim that the Florida Report falls within the "official records" exception to the general hearsay rule. Federal Rule of Evidence 803(8)(c) provides that public records are, under certain circumstances, admissible as an exception to the general hearsay rules "unless [their] sources of information or other circumstances indicate lack of trustworthiness." Fed R. Evid. 803(8)(c) (emphasis added); see also Swietlowich v. Bucks County, 610 F.2d 1157, 1165 (3d Cir. 1979). Because the Florida Report fails to satisfy the requirement of trustworthiness, it constitutes inadmissible hearsay and should be excluded from evidence.

The Advisory Committee Notes to Rule 803(8) set forth four key indicia of trustworthiness: (1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when the reports are prepared with a view to possible litigation. Fed. R. Evid. 803(8), Advisory Committee Notes. The Supreme Court in Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 168 n.11 (1988), noted that "[t]his trustworthiness inquiry . . . was the [Advisory] Committee's primary safeguard against the admission of unreliable evidence, and it is important to note that it applies to all elements in the report. Thus, a trial judge has the discretion, and indeed the obligation, to exclude an entire part or portions thereof . . . that she determines to be untrustworthy. Moreover, safeguards built into other portions of the Federal Rules, such as those dealing with relevance and prejudice, provide the court with additional means of scrutinizing and, where appropriate, excluding evaluative reports or portions of them." Id. at 167-68.

Two of these key indicia -- whether a hearing was held and possible motivational problems such as bias -- are clearly implicated in this case and compel the exclusion of the Florida Report and any other evidence or testimony regarding the Florida Report. First, no hearings were ever held on the purported "findings" in the Florida Report. Thus, the Florida Report's broad "conclusions" are without specific factual support and are based on nothing more than bare allegations and unsworn statements by policyholders reported second-hand by the examiners. Because the actual claims of specific individual policyholders were never subjected to the scrutiny of an adversarial proceeding, the Florida Report lacks the requisite level of trustworthiness needed to be admissible. See Ex. B Drummond v. Alia – The Royal Jordanian Airline Corp., 11 Fed. R. Evid. Serv. 1904, 1908-10 (W.D. Pa. 1982) (finding that an accident report prepared by the government of Qatar concerning an airline crash was untrustworthy because, among other reasons, "one can conclude that since there was no hearing conducted,

6

there were very few procedural safeguards to protect against the inclusion of hearsay and irrelevant evidence.  It is very possible that a large amount of hearsay and irrelevant evidence was included in the report.  This results in hearsay within hearsay and the admission of other inadmissible evidence, which serve to undercut the trustworthiness of the report"); Denny v. Hutchinson Sales Corp., 649 F.2d 816, 822 (10th Cir. 1981) (affirming exclusion of government report based on its "untrustworthiness" where report's findings resulted from ex parte investigation with no formal procedures and no opportunity to cross-examine witnesses); Hines v. Brandon Steel Decks, Inc., 886 F.2d 299, 303 (11th Cir. 1989) (citing cases in support of the "fact that no hearing was held in making [a] report affects its trustworthiness").  The findings in the Florida Report are based almost entirely on the hearsay statements of third parties and on a review of MetLife documents that have nothing to do with Plaintiff.  The Florida Report is not based on any transactions or purported sales practices actually observed by the examiners.

The Florida Report contains numerous opinions expressed by the Florida Insurance Department on various aspects of MetLife's operations.  See Ex. A at 15-29, 32-33, 37-39 (comprising opinions with such inflammatory titles as "Trouble in Paradise," "Metropolitan's Ostrich Approach to the Problem" and "A Failed Compliance Program").  MetLife, however, will have no opportunity to cross-examine the authors of these opinions.  Accordingly, the Florida Report, and evidence regarding the Florida Report, should be excluded from the trial.  See Wilson v. Attaway, 757 F.2d 1227, 1245 (11th Cir.1985) (the Florida Report excluded because, among other reasons, it failed to afford possibility of cross-examination); Hines, 886 F.2d at 303-304 (inability to cross-examine investigator who prepared the report is "a proper factor to take into consideration when deciding trustworthiness" of the report) (citations omitted).

The Florida Report is also rife with hearsay statements regarding interviews with unnamed policyholders. Hearsay statements of third parties do not become admissible simply because they appear in an official record. All such hearsay within hearsay is plainly inadmissible.

Because the Florida Report fails to satisfy the requisite indicia of trustworthiness, contains unauthorized expressions of opinions, and is rife with double hearsay, it fails to meet the hearsay exception for admissibility as a government Florida Report and, therefore, must be excluded from evidence.

Plaintiff may also erroneously contend that the Florida Report is admissible under Federal Rule of Civil Procedure 406 to show MetLife's routine practice. To the contrary, federal courts, including this Court, interpreting Rule 406 consistently hold that for evidence to be admitted as a corporation's routine practice, the conduct in question must be a "regular response to a specific situation."[2]  Becker v. ARCO Chem. Co., 207 F.3d 176, 204 (3d Cir. 2000) (holding that evidence that a business had a tendency to use pretenses when firing employees was not admissible as habit evidence under Rule 406, because it was not the sort of semi-automatic, situation-specific evidence that the rule admits); Mobil Exploration and Producing U.S., Inc. v. Cajun Const. Services, Inc., 45 F.3d 96 (5th Cir. 1995) (To admit evidence as routine practice, there must be a sufficient pattern of conduct so that it is considered a uniform and regular response to a repeated situation); McCarrick v. New York City Off-Track Betting Corp., No. 91 Civ. 5626, 1995 WL 261516, at *5 (S.D.N.Y. May 3, 1995) ("[i]n order to be admissible under

---

[2] Moreover, it cannot be that the Florida Report, concerning an insignificant number of transactions when compared with company wide sales practices, could be used to show routine. The Florida Report focused on the Tampa, Florida office.

[Rule 406] . . . the conduct at issue must constitute a 'regular response to a repeated specific situation.'") (quoting Thompson v. Boggs, 33 F.3d 847, 854 (7th Cir.1994)).

      Moreover, Plaintiff's potential contention that the Federal Rule of Evidence 404(b) permits this type of evidence to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" is likewise without merit.  To show that improper bad acts evidence is admissible to show intent, this Court has held that "'the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.'"  Becker, 207 F.3d at 191 (3d Cir. 2000) (quoting United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)) (emphasis added).  In Becker, the plaintiff initiated an action against his former employer under the Age Discrimination in Employment Act and the Pennsylvania Human Relations Act, contending that his former employer discriminated against him on the basis of his age by terminating his employment.  Id. at 179.  The plaintiff sought to introduce evidence of his former employer's "manner" in which it had terminated another employee.  Id.  This Court ruled that such evidence is only admissible if the proponent can articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.  Applying this test, the Court held that the evidence in question failed the test because the evidence of the employer's manner of terminating another of its employees was not relevant on the issue of whether it discriminated against the plaintiff absent the inference that the employer had a propensity to act in a certain way and that it acted in conformity with this prior conduct when it terminated the plaintiff.

      Similarly, Plaintiff cannot articulate how the Florida Report fits into a chain of logical inferences pointing towards MetLife's purported intent without involving the inference that because MetLife allegedly acted a certain way in the past, it acted that way during sale of

Plaintiffs' policies. Thus, the Florida Report is inadmissible to establish MetLife's alleged intent.

Also at issue in <u>Becker</u> was whether the evidence regarding the employer's manner of terminating another employee was admissible as evidence of a common plan or scheme. This Court stated that in order to admit Rule 404(b) evidence as reflecting a plan or scheme, the crimes must be part of a common or continuing scheme; the plan must encompass or include both crimes; and the crimes must be connected, mutually dependent and interlocking. Moreover, both crimes must be steps toward the accomplishment of the same final goal. Additionally, the Court noted that to be admissible under Rule 404(b), it is insufficient to show that each crime was "planned" in the same way. Instead, there must be an overall scheme of which each of the crimes is but a part. <u>Id.</u> at 197 (citation omitted).

The Court found in <u>Becker</u> that the evidence at issue was not admissible as proof of the defendants' plan based on these principles as there was no evidence presented that the two terminations were connected, mutually dependent or part of any larger goal of the former employer. <u>See</u> also <u>J & R Ice Cream Corp. v. California Smoothie Licensing Corp.</u>, 31 F.3d 1259 (3d Cir. 1994) (In order for prior bad act evidence to be admissible to establish a common plan, plaintiffs must show that the acts "are part of a single series of events'") (quoting <u>Government of the Virgin Islands v. Pinney</u>, 967 F.2d 912, 916 (3d Cir. 1992)).[3] Here, Plaintiff

---

[3] In <u>J & R Ice Cream</u>, the plaintiff claimed that a franchisor had made misrepresentations concerning its expertise in site selection and the amount of maintenance charges applicable to the site selected for the plaintiff's franchise. The plaintiff introduced evidence that the franchisor made misrepresentations to other prospective franchisees concerning the amount of revenue a typical franchise could produce. The Third Circuit held that the introduction of that evidence was improper under Rule 404(b) because "the jury could have used the highly prejudicial, indeed almost inflammatory evidence to conclude that [the defendant] used misrepresentations in multiple aspects of its sales efforts." 31 F.3d at 1269.

has failed to show that the alleged acts of MetLife contained in the Florida Report are part of a single series of events.

## II. THE INTRODUCTION OF THE FLORIDA REPORT IS IRRELEVANT, HIGHLY PREJUDICIAL, AND BEYOND THE SCOPE OF THE TRANSACTIONS AT ISSUE.

### a. The Florida Report Should Be Excluded Because It Is Irrelevant and Has No "Nexus" to Plaintiff's Allegations.

Plaintiff should not be permitted to alter the scope of this case with irrelevant documents and testimony. Federal Rule of Evidence 401 defines "relevant evidence" as evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Nothing in the Florida Report has any bearing on establishing what occurred regarding Plaintiff's purchase of the policies at issue. Neither Plaintiff nor Plaintiff's policies are mentioned in the Florida Report. In addition, the sales representative, Kenneth Kaczmarek, is not mentioned in the Florida Report. In fact, evidence as to the Florida Report was excluded in nearly all of the cases coordinated by Judge Wettick that were part of the September 2005 trial term in the Court of Common Pleas of Allegheny County, Pennsylvania. See, e.g. Adams v. Metropolitan Life Ins. Co., consolidated at G.D. No. 95-9120, (C.C.P. Allegh. Cty.); Adams v. Metropolitan Life Ins. Co., 95-16710; Alston v. Metropolitan Life Ins. Co., G.D. No. 95-17516 (C.C.P. Allegh. Cty.). Thus, it is completely irrelevant to Plaintiff's claims.

Moreover, the Florida Report focused primarily on the activities of Urso sales representatives and their alleged practice of selling whole life insurance policies to nurses as "Nurses Retirement Savings Plan[s]," which clearly is not an issue in this case. See Ex. A at 1-2. Most of the exhibits attached to the Florida Report specifically involve this alleged sale of life insurance as "Nurses Retirement Savings Plan[s]" or involve the Urso sales branch in Tampa,

11

Florida and, thus, are entirely beyond the scope of the transactions in this case. Plaintiff has not made any allegations regarding savings and retirement plans here.

Furthermore, the transactions at issue took place in Pennsylvania. The Florida Department of Insurance has no jurisdiction to "investigate" transactions in Pennsylvania, nor did it actually do so. Accordingly, the Florida Report is entirely irrelevant to this case.

To the extent that Plaintiff asserts that the Florida Report is evidence of a trait or habit, such evidence is inadmissible under Federal Rule of Evidence 406 if that trait or habit is not relevant to the claims or defenses at issue. See Petrokehagias v. Sky Climber, Inc., 2000 WL 1469334 (E.D. Pa. 2000). As previously noted, the purported sales practices at issue in the Florida Report are unrelated to the sales to Plaintiff, and therefore, cannot constitute admissible evidence of a trait or habit.

### b. The Florida Report Should Be Excluded Because It Is Highly Prejudicial to MetLife.

Even if this Court were to determine that the Florida Report has relevant information to offer at trial -- which it does not -- pursuant to Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403; see also Ex. B Drummond, 11 Fed. R. Evid. Serv. at 1912-1913 (noting that Rule 403 "vests the court with discretion to exclude relevant evidence if its probative value is outweighed by the danger of unfair prejudice" and holding that the accident report at issue should be excluded because it "contain[ed] conclusions as to the cause of the accident [and thus] . . . creat[ed] the potential for the jury to be unduly prejudiced by the report and to adopt the conclusion of another tribunal as its own rather than making an independent determination based on the facts as presented").

The Florida Report discusses matters that are of no relevance to Plaintiff's claims and are highly prejudicial to Defendants. In addition, the stamp of governmental authority for the Florida Report, whether appropriate or not, would most likely unfairly sway the jurors, improperly inviting them to determine the facts of this case based on allegations that have never been proved by any sort of hearing. Admission of the Florida Report would serve only to distract the jurors from the task at hand -- deciding whether or not Plaintiff was defrauded and if so, whether the alleged fraud caused Plaintiff any damages. The potential for distraction is particularly significant given that any similarity of the allegations in this case to the allegations addressed in the Florida Report is minimal at best.

Accordingly, based on the foregoing arguments, the Florida Report, and any information regarding the Florida Report, should be excluded.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court exclude the Florida Report and any evidence regarding the Florida Report from use at trial.

    Respectfully Submitted,

    s/ B. John Pendleton, Jr.
    B. John Pendleton, Jr.
    McCARTER & ENGLISH, LLP
    Four Gateway Center
    100 Mulberry Street
    Newark, NJ 07102
    (973) 622-4444

    Attorneys for Defendants
    Metropolitan Life Insurance Company
    And Kenneth Kaczmarek

Dated: October 3, 2006

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via electronic case filing system, postage pre-paid, on this 3rd day of October 2006 on the following counsel of record:

> Kenneth R. Behrend, Esq.
> Behrend and Ernsberger, P.C.
> Union National Bank Building
> 306 Fourth Avenue, Suite 300
> Pittsburgh, PA  15222

\_\_s/ B. John Pendleton, Jr. _____