IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT G. WYCKOFF,<br><br>Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY AND KENNETH F. KACZMAREK,<br><br>Defendants | : CIVIL ACTION NO. 00-2248<br>:<br>:<br>:<br>:<br>: CHIEF JUDGE AMBROSE<br>:<br>:<br>:<br>: |

**METROPOLITAN LIFE INSURANCE COMPANY'S AND KENNETH F. KACZMAREK'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE PLAINTIFF'S EXHIBIT NO. 63 CALL CENTER SURVEYS**

**PRELIMINARY STATEMENT**

Defendants Metropolitan Life Insurance Company ("MetLife") and Kenneth F. Kaczmarek, by and through their attorneys, McCarter & English, LLP, hereby submit the following Brief in Support of Motion in Limine to Exclude from Evidence Plaintiff's Exhibit No. 63 Call Center Surveys.

Plaintiff's Exhibit No. 63 relates to several completed surveys (the "surveys") from customer service representatives in MetLife's Customer Service Call Centers regarding customer feedback on Accelerated Payment information provided to policyholders. The completed surveys are <u>anonymous</u>. Neither Plaintiff's name nor his policy numbers appear in the surveys. There is no indication of whether they came from the call center in Tulsa, Oklahoma or Warwick, Rhode Island. The surveys do not contain any documentation relating to the survey responses and the customer service representatives are not identified. The surveys consist of the customer service representatives' summaries of customer service calls. As the surveys do not apply to the transactions at issue in this matter, they are irrelevant under Federal Rule of

Evidence 401[1] and therefore inadmissible at trial under Federal Rule 402.[2]  Even if admissible, the surveys should be excluded under Federal Rule of Evidence 403 as highly prejudicial and likely to confuse the jury.[3]

The surveys are inadmissible as "bad acts" under Rule 404 (b).  The surveys also contain inadmissible hearsay within hearsay that do not fall within any exception to the general hearsay Rule Federal Rules of Evidence 803 or 804, including Federal Rule of Evidence 803(6) Records of Regularly Conducted Activity.

## BACKGROUND

Plaintiff makes "vanishing premium" claims with respect to two whole life policies purchased in 1991 and 1994.  Specifically, Plaintiff claims that, in 1991, former MetLife sales representative Norman Molchan (deceased) misrepresented that Plaintiff could purchase a $10,000 Whole Life policy by paying out-of-pocket premiums for only fourteen years.  Additionally, Plaintiff asserts that an illustration was used indicating that, in year 2011, the 1991 Policy would have a cash value of $7,746.00 and a death benefit of $12,112.00.  On June 27, 1991, MetLife issued Policy No. 915 409 338 M ("1991 Policy") to Plaintiff as owner and insured.  Initially, the 1991 Policy was sold with a monthly premium of $59.40 based on Plaintiff's classification as a non-smoker.  However, a medical exam revealed nicotine in Plaintiff's urine and he was reclassified as a smoker.  Thus, the 1991 Policy was issued with a

---

[1] Federal Rule of Evidence 401 defines "relevant evidence" as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2] Rule 402 provides that relevant evidence is generally admissible, and irrelevant evidence is inadmissible.

[3] Pursuant to Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Any probative value that the surveys could possibly provide is negligible when compared to the unduly prejudicial impact it would have upon the jury.  See Taylor v. Monette, et al., 564 F.Supp. 1, 2 (E.D.Pa.1982)(excluding from trial evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm.")

higher monthly premium of $73.20.  Plaintiff avers that he did not contest the higher premium.  Nevertheless, he contends that, "by paying the additional amount of premium," he still would only have to pay out-of-pocket premiums for fourteen years.

Plaintiff admits that he contacted MetLife in 1994 because he was interested in exercising his conversion rights under an employer-provided group life insurance plan.  On August 2, 1994, MetLife issued $4,500 Whole Life Policy No. 945 600 948 M ("1994 Policy") to Plaintiff as owner and insured.  The 1994 Policy was converted partially from Plaintiff's group term Policy No. G-16200G after he retired from U.S. Steel.  The monthly premium for the 1994 Policy was $34.23 payable for thirty-two years.  In the Complaint, Plaintiff alleges that former MetLife sales representative Kenneth Kaczmarek misrepresented that Plaintiff would have to pay monthly premiums on the 1994 Policy for only ten years, with no subsequent payments thereafter.  Plaintiff further alleges that Mr. Kaczmarek did not did not disclose that the 1994 Policy was, in fact, a whole life policy with payments payable for Plaintiff's death.  However, Plaintiff also concedes in the Complaint that the group term policy "could only be converted to a whole life policy."  Furthermore, Plaintiff signed a Receipt stating that he had received a "Life Insurance Buyer's Guide" from MetLife and a State of Pennsylvania Disclosure Statement indicating that he understood he had purchased a $4,500 whole life policy with annual premiums of $410.76 payable for thirty years.

## ARGUMENT

I.  **THE SURVEYS REFERENCED IN PLAINTIFF'S EXHIBIT NO. 63 ARE IRRELEVANT TO THE LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSABLE PURSUANT TO FEDERAL RULES 401, 402, AND 403.**

Plaintiff's Exhibit No. 63 is a collection of completed surveys from customer service representatives in either the Tulsa, Oklahoma or Warwick, Rhode Island Call Centers.  See, Ex.

A, surveys at MP4011159913.  The surveys relate to policyholders who received billing notices in 1995 stating that there was insufficient value in their accelerated payment ("AP") arrangement to pay the next premium.  Id.  These customer surveys are specific to customers who were already on the AP plan, and as such, completely irrelevant to the Plaintiff's allegations in this matter, as his policy was not on the AP program.

Additionally, there is no information to identify which call center completed the surveys.  The Tulsa call center did not handle customer service for Pennsylvania.  See, Ex. B, Rayl Transcript at 46:9-47:5.  As such, the surveys from the Tulsa call center would not relate to Pennsylvania.  Since it cannot be determined which surveys come from Tulsa and which surveys came from Warwick, the documents are irrelevant, highly prejudicial, and likely to confuse the jury under Federal Rule of Evidence 401-403.

Furthermore, the completed surveys are anonymous.  The surveys do not contain any documentation relating to the survey responses, and the customer service representatives are not identified.  The surveys consist of the customer service representatives' summaries of customer service calls.  Those factors all contribute to the fact that the surveys are simply unreliable.  For example, in criminal proceedings, when a "tip" is received from an informant that "tip" must meet a certain level of reliability.  Similarly, the surveys at issue should also be required to meet a certain level of reliability.  Clearly, they should not be allowed to be used in this matter in light of the Federal Rules of Evidence.

## II.   THE SURVEYS LISTED IN PLAINTIFF'S EXHIBIT NO 63 ARE INADMISSABLE AS "BAD ACTS" EVIDENCE UNDER FEDERAL RULE 404(b).

Plaintiff will most likely attempt to use the surveys to show unrelated alleged "wrongs" or "bad acts" of MetLife to show that MetLife behaved in the same manner in this case.  This evidence would be inadmissible under Federal Rule of Evidence 404(b).  In order for "bad acts"

evidence to be admissible to establish a common plan exception to the rule, Plaintiff must show that the acts "are part of a single series of events.'" J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994) (quoting Government of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992). Evidence concerning other bad acts that are not connected to the transaction at issue is inadmissible. See id.

If Plaintiff argues that Federal Rule of Evidence 404(b) permits this type of evidence to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," it is without merit. To show that improper bad acts evidence is admissible to show intent, this Court has held that "'the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.'" Becker, 207 F.3d at 191 (3d Cir. 2000) (quoting United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999))(emphasis added). Plaintiff cannot meet this burden.

### III. THE SURVEYS LISTED IN PLAINTIFF'S EXHIBIT NO. 63 CONSTITUTE INADMISSABLE HEARSAY AND HEARSAY WITHIN HEARSAY

The surveys are replete with classic hearsay. In order for these surveys to be admitted into evidence, Plaintiff must satisfy his burden of showing that they fit within an exception to the hearsay rule. Plaintiff fails to meet that burden. The surveys do not fall within the "business records" exception to the general hearsay rule under Federal Rule of Evidence 803(6).

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court enter an Order barring the introduction or use of Plaintiff's exhibit no. 63.

    Respectfully Submitted,
    s/ B. John Pendleton, Jr.

                                                  B. John Pendleton, Jr.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Attorneys for Defendants
Metropolitan Life Insurance Company
and Kenneth Kaczmarek

Dated: October 3, 2006

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 3rd day of October 2006, a true and correct copy of the foregoing METROPOLITAN LIFE INSURANCE COMPANY'S AND KENNETH KACZMAREK'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE PLAINTIFF'S EXHIBIT NO. 63 CALL CENTER SURVEYS was served via the electronic filing system on:

> Kenneth R. Behrend, Esquire
> BEHREND & ERNSBERGER, P.C.
> Union National Bank Building, 3rd Floor
> 306 Fourth Avenue
> Pittsburgh, Pennsylvania  15222

> s/   B. John Pendleton, Jr.