IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT G. WYCKOFF,<br><br>                Plaintiff,<br><br>                v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY AND KENNETH F. KACZMAREK,<br><br>                Defendants | CIVIL ACTION NO. 00-2248<br><br><br><br>CHIEF JUDGE AMBROSE |

**DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY'S AND KENNETH F. KACZMAREK'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFF'S EXHIBITS 99 AND 100**

**PRELIMINARY STATEMENT**

Defendants Metropolitan Life Insurance Company ("MetLife") and Kenneth F. Kaczmarek submit this Brief in Support of Motion to Exclude Plaintiff's Exhibits 99 and 100. Plaintiff offers as Exhibits video tapes produced by MetLife. Copies of the transcripts of the video tapes are attached to the accompanying motion as Exhibits A and B.

This case involves plaintiff's allegations that MetLife sales representatives Norman Molchan and Kenneth Kaczmarek made misrepresentations during the sale of two Whole Life Policy in 1991 and 1994. The video tapes proffered by plaintiff consist solely of MetLife video news magazine segments from 1985 and 1988. The 1985 video focuses on MetLife's financial worth, personal and group insurance in 1985, as well as MetLife Canada and MetLife's real estate portfolio. The video tape has no relation to the 1991 or the 1994 sales that occurred long after its creation. The September 1988 video tape focuses on various MetLife products, MetLife's financial position, as well as tax developments. Similarly, the video tape has no relation to the 1991 or 1994 sales at issue that occurred after the tape's creation.

As the video tapes do not mention or relate to the allegations at issue, they are irrelevant under Federal Rule of Evidence 401 and, therefore, inadmissible under Rule 402. This Court should not allow the introduction of evidence regarding prior, unrelated bad acts or wrongs because they are (i) irrelevant, (ii) prejudicial, and (iii) otherwise inadmissible.

Finally, the video tapes are replete with inadmissible hearsay. As no exception to the hearsay rule is applicable here, the video tapes should be excluded pursuant to Federal Rule of Evidence 803.

## BACKGROUND

Plaintiff makes "vanishing premium" claims with respect to two whole life policies purchased in 1991 and 1994. Specifically, plaintiff claims that, in 1991, former MetLife sales representative Norman Molchan (deceased) misrepresented that plaintiff could purchase a $10,000 Whole Life policy by paying out-of-pocket premiums for only fourteen years. Additionally, plaintiff asserts that an illustration was used indicating that, in year 2011, the 1991 Policy would have a cash value of $7,746.00 and a death benefit of $12,112.00. On June 27, 1991, MetLife issued Policy No. 915 409 338 M ("1991 Policy") to plaintiff as owner and insured. Initially, the 1991 Policy was sold with a monthly premium of $59.40 based on plaintiff's classification as a non-smoker. However, a medical exam revealed nicotine in plaintiff's urine and he was reclassified as a smoker. Thus, the 1991 Policy was issued with a higher monthly premium of $73.20. Plaintiff avers that he did not contest the higher premium. Nevertheless, he contends that, "by paying the additional amount of premium," he still would only have to pay out-of-pocket premiums for fourteen years.

Plaintiff admits that he contacted MetLife in 1994 because he was interested in exercising his conversion rights under an employer-provided group life insurance plan. On August 2, 1994, MetLife issued $4,500 Whole Life Policy No. 945 600 948 M ("1994 Policy") to plaintiff as

2

owner and insured. The 1994 Policy was converted partially from plaintiff's group term Policy No. G-16200G after he retired from U.S. Steel. The monthly premium for the 1994 Policy was $34.23 payable for thirty-two years. In the Complaint, plaintiff alleges that former MetLife sales representative Kenneth Kaczmarek misrepresented that plaintiff would have to pay monthly premiums on the 1994 Policy for only ten years, with no subsequent payments thereafter. Plaintiff further alleges that Mr. Kaczmarek did not did not disclose that the 1994 Policy was, in fact, a whole life policy with payments payable for plaintiff's death. However, Plaintiff also concedes in the Complaint that the group term policy "could only be converted to a whole life policy." Furthermore, plaintiff signed a Receipt stating that he had received a "Life Insurance Buyer's Guide" from MetLife and a State of Pennsylvania Disclosure Statement indicating that he understood he had purchased a $4,500 whole life policy with annual premiums of $410.76 payable for thirty years.

## ARGUMENT

**I.    EXHIBITS 99 AND 100 ARE ENTIRELY IRRELEVANT TO THIS LITIGATION.**

Exhibits 99 and 100 are wholly irrelevant to this case and have no bearing on the sole issue in this case: what Mr. Molchan and Mr. Kaczmarek said – or did not say – to plaintiff at the time of the of the sale of the policies in 1991 and 1994. At no time was plaintiff, Mr. Molchan, Mr. Kaczmarek or the transactions at issue mentioned in the videos. In fact, the videos focused on providing information about MetLife in 1985 and 1988, before the policies at issue in this matter was sold. As such, the videotapes possess no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" and, thus, are inadmissible. See Fed. R.

Evid. 401; see, e.g., Michetti v. Linde Baker Material Handling Corp., 969 F.Supp. 286, 287-88 (E.D.Pa. 1997).

Plaintiff likely will argue that Exhibits 99 and 100 are relevant to show MetLife's worth in 1985 and the focus of the company in 1985 and 1988. See Exs. A and B. However, MetLife's financial worth before the policy at issue was even sold is irrelevant to this matter and highly prejudicial. Plaintiff will likely attempt to use this information in order to establish that MetLife was a large insurance company with significant assets to help support a punitive damages award. This information will only serve to prejudice the jury and does not have any relation to the transaction at issue. In addition, MetLife's asset information, information about MetLife Canada, tax information, and even the discussion of MetLife products not at issue or even owned by plaintiff in this matter are not relevant in determining what occurred during the sale of the policy at issue. Therefore the video tapes should be excluded from use at trial.

**III.   EVEN IF EXHIBITS 99 AND 100 ARE RELEVANT -- AND THEY ARE NOT -- THEY SHOULD STILL BE EXCLUDED BECAUSE OF THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUES, OR MISLEADING THE JURY.**

Pursuant to Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Any probative value that the testimony and evidence could possibly possess is negligible when compared to the unduly prejudicial impact it would have upon the jury. See Taylor v. Monette, et al., 564 F.Supp. 1, 2 (E.D.Pa.1982) (excluding from trial evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm.").

4

Exhibits 99's and 100's potential for prejudice and confusion of the jury far outweigh any possible probative value they may have.  Plaintiff will likely use the tapes to stress MetLife's financial position and worth in order to support a punitive damages award.  However, well-established law clearly dictates that the wealth of a corporate defendant does not support a punitive damages award and should be precluded.  Therefore, allowing the jury to hear the video tapes would not only be contrary to law, but prejudicial and would serve to confuse the jury in light of the Supreme Court's ruling in State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408, 123 S. Ct. 1513,  (2003).

In State Farm, the Supreme Court precluded the introduction of evidence regarding the corporate defendant's net worth as irrelevant and highly prejudicial.  Notably, the Supreme Court never has included the wealth of the corporate defendant as a guidepost for reviewing punitive damage awards.  See BMW of North America, Inc. v. Gore, 517 U.S. 559, 575 (1996) (indicating the three guideposts as: (i) the degree of reprehensibility of defendants' misconduct; (ii) the proportion between the harm suffered and the punitive damage award; and (iii) the comparison between the punitive damages awarded and civil penalties authorized or imposed in comparable cases).  Introduction of evidence of a defendant's net worth is entirely inconsistent with these guideposts, as the defendant's financial condition is irrelevant and "bear[s] no relation to the award's reasonableness or proportionality to the harm."  State Farm, 538 U.S. at 427.  Instead, punitive damage awards "must comport with the principles set forth in Gore," and the "wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award." Id.

"[S]anctions should be based on the wrong done rather than on the status of the defendant; a person is punished for what he does, not for who he is, even he who is a huge

5

corporation." Mathias v. Accor Economy Lodging, Inc., 347 F.3d 672, 676, 677 (7th Cir. 2003) (citing State Farm, 538 U.S. at 427). Punishing a defendant on the basis of its wealth is discriminatory and violates this underlying principle of law. Id.

Additionally, admission of MetLife's net worth would be unduly prejudicial and contrary to the Supreme Court's repeated admonition that "[p]unitive damages pose an acute danger of arbitrary deprivation of property . . . the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences." State Farm, 538 U.S. at 417 (citing Honda Motor Co. v. Oberg, 512 U.S. 415, 432 (1994)).

Moreover, evidence regarding a company's wealth should be excluded under FRE 403 because it is arbitrary and confusing to a jury:

> Corporations . . . are not wealthy in the sense that persons are. Corporations are abstractions; investors own the net worth of the business. These investors pay any punitive awards (the value of their shares decreases), and they may be of average wealth. Pension trusts and mutual funds, aggregating the investments of millions of average persons, own the bulk of many large corporations. <u>Seeing the corporation as wealthy is an illusion, which like other mirages frequently leads people astray.</u>

Zazu Designs v. L'Oreal, S.A., 979 F.2d 499, 508 (7th Cir. 1992) (emphasis added).

Second, the jury may believe that the information contained in the video tapes regarding other MetLife products, tax laws, and even sales representative compensation somehow relate to the transactions at issue. However, what occurred prior to the sales at issue in this matter is not relevant to this case. Evidence reflecting otherwise would be prejudicial and likely to confuse and mislead the jury.

**IV.     EXHIBITS 99 AND 100 ARE REPLETE WITH INADMISSIBLE HEARSAY.**

6

Exhibits 99 and 100, which involve commentators and various other guests discussing developments in MetLife in 1985 and 1988, are hearsay. The video tapes are rife with hearsay in that commentators, as well as various guests, discuss various developments in MetLife in 1985 and 1988, such as MetLife's financial worth, MetLife Canada, MetLife's real estate portfolio, various MetLife products, MetLife's financial position, and tax developments. See Ex. A and Ex. B. In order for this evidence to be admitted plaintiff must satisfy his burden of showing that the videotapes fit within an exception to the hearsay rule. See FRE 803. Plaintiff simply cannot meet that burden.[1]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court enter an Order barring the introduction or use of the Plaintiff's Proposed Exhibits 99 and 100.

Respectfully Submitted,

s/ B. John Pendleton, Jr.
B. John Pendleton, Jr.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Attorneys for Defendant
Metropolitan Life Insurance Company
and Kenneth F. Kaczmarek

Dated:  October 3, 2006

---

[1] Defendants maintain that both videotapes should be excluded in their entirety because they are hearsay. However, if the Court determines that this is not the case and desires specific designations of hearsay statements for the videotapes, Defendants have attached a chart of hearsay designations as Ex. C.

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of October 2006, a true and correct copy of the foregoing **DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY'S AND KENNETH F. KACZMAREK'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFF'S EXHIBITS 99 AND 100** was served upon the following via the electronic filing system:

Kenneth R. Behrend, Esquire
BEHREND & ERNSBERGER, P.C.
Union National Bank Building, 3rd Floor
306 Fourth Avenue
Pittsburgh, Pennsylvania  15222


                                          s/ B. John Pendleton, Jr.