IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT G. WYCKOFF,<br><br>            Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY AND KENNETH F. KACZMAREK,<br><br>            Defendants | : CIVIL ACTION NO. 00-2248<br>:<br>:<br>:<br>:<br>: CHIEF JUDGE AMBROSE<br>:<br>:<br>:<br>:<br>: |

**DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY'S AND KENNETH F. KACZMAREK'S BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE EXHIBIT 101**

**PRELIMINARY STATEMENT**

Defendants Metropolitan Life Insurance Company ("MetLife") and Kenneth F. Kaczmarek submit this Brief in Support of their Motion to Exclude Exhibit 101.  Plaintiff offers as Exhibit 101 a videotape produced by MetLife.  A copy of the transcript of this videotape is attached as Exhibit A.

This case involves plaintiff's allegations that MetLife sales representatives Norman Molchan and Kenneth Kaczmarek made misrepresentations during the sale of two Whole Life insurance policies in 1991 and 1994.  The videotape proffered by plaintiff (the "AP Videotape") consists solely of MetLife sales representatives, none of whom were employed in Pennsylvania, discussing confusion they or their customers have had at some undefined time regarding the accelerated payment ("AP") arrangement.  The video concludes with a discussion by these representatives regarding potential methods of easing this confusion in the future.  Therefore, the AP Videotape is an example of a subsequent remedial measure by MetLife, and as such should

be excluded pursuant to Federal Rule of Evidence 407.  Further, as the AP Videotape does not mention or relate to the allegations at issue, it is irrelevant under Federal Rule of Evidence 401 and therefore inadmissible under Rule 402.  This Court should not allow the introduction of evidence regarding prior, unrelated bad acts or wrongs because they are (i) irrelevant, (ii) prejudicial, and (iii) otherwise inadmissible.

Finally, the AP Videotape is replete with inadmissible hearsay.  As no exception to the hearsay rule is applicable here, the videotape should be excluded pursuant to Federal Rule of Evidence 803.

## BACKGROUND

Plaintiff makes "vanishing premium" claims with respect to two whole life policies purchased in 1991 and 1994.  Specifically, plaintiff claims that, in 1991, former MetLife sales representative Norman Molchan (deceased) misrepresented that plaintiff could purchase a $10,000 Whole Life policy by paying out-of-pocket premiums for only fourteen years.  Additionally, plaintiff asserts that an illustration was used indicating that, in year 2011, the 1991 Policy would have a cash value of $7,746.00 and a death benefit of $12,112.00.  On June 27, 1991, MetLife issued Policy No. 915 409 338 M ("1991 Policy") to plaintiff as owner and insured.  Initially, the 1991 Policy was sold with a monthly premium of $59.40 based on plaintiff's classification as a non-smoker.  However, a medical exam revealed nicotine in plaintiff's urine and he was reclassified as a smoker.  Thus, the 1991 Policy was issued with a higher monthly premium of $73.20.  Plaintiff avers that he did not contest the higher premium.  Nevertheless, he contends that, "by paying the additional amount of premium," he still would only have to pay out-of-pocket premiums for fourteen years.

Plaintiff admits that he contacted MetLife in 1994 because he was interested in exercising his conversion rights under an employer-provided group life insurance plan.  On August 2, 1994,

MetLife issued $4,500 Whole Life Policy No. 945 600 948 M ("1994 Policy") to plaintiff as owner and insured.  The 1994 Policy was converted partially from plaintiff's group term Policy No. G-16200G after he retired from U.S. Steel.  The monthly premium for the 1994 Policy was $34.23 payable for thirty-two years.  In the Complaint, plaintiff alleges that former MetLife sales representative Kenneth Kaczmarek misrepresented that plaintiff would have to pay monthly premiums on the 1994 Policy for only ten years, with no subsequent payments thereafter.  Plaintiff further alleges that Mr. Kaczmarek did not did not disclose that the 1994 Policy was, in fact, a whole life policy with payments payable for plaintiff's death.  However, Plaintiff also concedes in the Complaint that the group term policy "could only be converted to a whole life policy."  Furthermore, plaintiff signed a Receipt stating that he had received a "Life Insurance Buyer's Guide" from MetLife and a State of Pennsylvania Disclosure Statement indicating that he understood he had purchased a $4,500 whole life policy with annual premiums of $410.76 payable for thirty years.

      The AP Videotape, produced by MetLife, begins with a discussion between and among MetLife sales representatives in September 1996 about MetLife's AP plan and ways to address existing customer dissatisfaction with the program.  See Ex. A at 1.  A number of sales representatives relate that some of their clients allegedly misunderstood the AP plan (with other representatives acknowledging that they themselves did not fully understand the program in its years) at some previous undetermined time in the past.  See Ex. A.  No time frame was provided regarding this alleged confusion, although it is clear that most of the policies discussed were sold in the 1980s.  See id.  The sales representatives noted that confusion regarding the AP arrangement was especially prevalent and problematic in the Asian-American community.  See

Ex. A. They also acknowledge that "recent" Company efforts to explain AP had substantially reduced the confusion.

After this discussion, the sales representatives then discuss what they and MetLife can do to ensure that policyholders (and the selling representatives) more fully understand the program. See Ex. A at 5-7. At no time was Mr. Molchan, Mr. Kaczmarek, the office out of which they worked, plaintiff, the 1991 policy, or the 1994 mentioned in the video. More important, the video was made after the only transactions at issue and references confusion in the 1980s.

## ARGUMENT

**I.  THE AP VIDEOTAPE IS EVIDENCE OF A SUBSEQUENT REMEDIAL MEASURE AND THUS, SHOULD BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 407.**

The AP Videotape should be excluded pursuant to Federal Rule of Evidence 407 because they are evidence of MetLife's subsequent remedial measures. See Exhibit A. Rule 407 provides in relevant part that "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, . . .[or] culpable conduct."[1] The policy behind Rule 407 is "to encourage remedial measures." Patrick v. South Central Bell Tel. Co., 641 F.2d 1192, 1196 (6th Cir. 1980).

The AP Videotape is a classic example of a subsequent remedial measure. The videotape begins with a discussion between and among MetLife sales representatives in September 1996 regarding MetLife's AP plan and ways to address existing customer dissatisfaction. See Ex. A at 1. A number of sales representatives explain that some of their clients allegedly misunderstood

---

[1] While Rule 407 permits evidence of subsequent remedial measures when offered for another purpose, "such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment," none of these exceptions apply to the facts presented here.

4

the AP plan (with other representatives acknowledging that they themselves did not fully understand the plan in its early years) at some previous undetermined time in the past.  See Ex. A.  No time frame was provided regarding this alleged confusion, although it is clear that most of the policies discussed were sold in the 1980s.  See id.  After this discussion, the sales representatives move on to discuss what they and MetLife can do to ensure that policyholders (and the selling representatives) more fully understand the program.  See Ex. A at 5-7.  It is clear that MetLife produced the videotape in order to remedy customer dissatisfaction with certain aspects of the AP plan.  Because the videotape undeniably is evidence of a subsequent remedial measure, the Court should exclude Exhibit 101.  The entire purpose of the Rule 407, to encourage such remedial measures, would be frustrated by using the Company's attempts against it.

## II.      THE AP VIDEOTPAE IS ENTIRELY IRRELEVANT TO THIS LITIGATION.

The AP Videotape is wholly irrelevant to this case.  This case involves the sale of two Whole Life insurance policies in 1991 and 1994.  At no time was plaintiff, Mr. Molchan, Mr. Kaczmarek, or the transactions at issue mentioned in the videotape.  None of the representatives in the video possessed any firsthand knowledge of the transactions at issue.  Further, none of the representatives had any knowledge of MetLife practices in general.  Rather, they only spoke of the facts of their employment, and their personal experiences with the AP plan, none of which is relevant here.

The videotape has no bearing on the sole issue in this case:  what Mr. Molchan and Mr. Kaczmarek said – or did not say – to plaintiff at the time of the transactions at issue.  The videotape possesses no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence" and, thus, are inadmissible.  See Fed. R. Evid. 401;  see, e.g., Michetti v. Linde Baker Material Handling Corp., 969 F.Supp. 286, 287-88 (E.D.Pa. 1997).

Plaintiff likely will argue that the videotape is relevant to prove that MetLife had knowledge that certain sales representatives misunderstood the AP plan.  See Ex. A.  However, any such assertion is completely without merit.  As previously noted, the videotape was made in 1996.  Thus, the exhibit simply cannot establish what MetLife knew prior to 1996.  Further, MetLife representatives (none from Pennsylvania where Mr. Molchan and Mr. Kaczmarek were trained and sold policies) discuss their and other representative's customers purported understanding of AP sometime in the past.  See Ex. A at 2.  Those suppositions are simply irrelevant to this misrepresentation case.  What these unidentified customers may have allegedly "understood" or "expected" about the AP plan does not matter.  The only relevant issue is what plaintiff in this case was told about AP in 1991 and 1994.  Further, the focus of the videotape was the "particularly serious" problem the AP plan allegedly presented to the Chinese market specifically, and the Asian-American market in general.  See id.  Therefore, the videotape is wholly irrelevant to this case.

### III. EVEN IF THE AP VIDEOTAPE IS RELEVANT -- AND IT IS NOT -- IT SHOULD STILL BE EXCLUDED BECAUSE OF THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUES, OR MISLEADING THE JURY.

Pursuant to Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Any probative value that the testimony and evidence could possibly possess is negligible when compared to the unduly prejudicial impact it would have upon the jury.  See Taylor v. Monette, et al., 564 F.Supp. 1, 2 (E.D.Pa.1982) (excluding from trial

6

evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm.").

The AP Videotape should be excluded because its potential for prejudice and confusion of the jury far outweighs any possible probative value it may have. First, while it is clear that many of the sales discussed in the AP Videotape occurred in the 1980s, there is never any specific timeframe discussed. See Ex. A. The jurors likely will mistakenly assume that because certain sales involved in this videotape occurred in the 1980s and the videotape was made in 1996, the time frame covers the period from the 1980s through 1996.

Moreover, the AP Videotape suggests that certain sales representatives, all from outside of Pennsylvania, did not understand how the program worked and, thus, gave incorrect or incomplete explanations of the AP plan at unspecified times in the past. See Ex. A at 2, 6. Here, there is no evidence that Ms. Dorsey did not understand AP when she sold the "AP" policy at issue in 1991. Moreover, the fact that certain other sales representatives may not have understood AP will likely confuse the jury and suggest that because there may have been misrepresentations by others, either intentionally or not, there may have been misrepresentations in this case. In sum, because of their potential for prejudice and confusion, Exhibit 101 is inadmissible.

**IV.   THE AP VIDEOTAPE REPLETE WITH INADMISSIBLE HEARSAY.**

The AP Videotape, which involves sales representatives discussing what they have said to a customer, is classic double and even triple hearsay. The videotape is rife with hearsay within hearsay (in that it involves sales representatives discussing what some of their customers have said to them about their alleged understanding of AP) and triple hearsay (in that it involves

7

sales representatives discussing what their customers told them about their discussions with other sales representatives).  See Ex. A;  see also Ex. B, Hearsay Designations in Connection with Plaintiff's Exhibit 101 (Videotape of MetLife APP Research-Four Focus Groups).  In order for this evidence to be admitted, plaintiff must satisfy his burden of showing that the videotape fits within an exception to the hearsay rule.  See FRE 803.  Plaintiff simply cannot meet that burden.

## CONCLUSION

For the foregoing reasons, defendants MetLife and Kenneth F. Kaczmarek respectfully request that this Honorable Court enter an Order barring the introduction or use of the Plaintiff's Proposed Exhibit 101.

Respectfully Submitted,

s/ B. John Pendleton, Jr.
B. John Pendleton, Jr.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Attorneys for Defendants
Metropolitan Life Insurance Company
and Kenneth F. Kaczmarek

Dated:  October 3, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of October, 2006, a true and correct copy of the foregoing **DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY'S AND KENNETH F. KACZMAREK'S BRIEF IN SUPPORT OF THER MOTION TO EXCLUDE EXHIBIT 101** was served upon the following via electronic filing system:

> Kenneth R. Behrend, Esquire
> BEHREND & ERNSBERGER, P.C.
> Union National Bank Building, 3rd Floor
> 306 Fourth Avenue
> Pittsburgh, Pennsylvania  15222

s/ B. John Pendleton, Jr.