EXHIBIT A

HAZEN V. METLIFE    MP92500000042549

*10 copies for BCR + CSR + distribute*

**CONFIDENTIAL**                Metropolitan Life
AND AFFILIATED COMPANIES
Metropolitan Life Insurance Company

Office Memorandum

Becky Greene

Section P & Consulting Services            Section _____            Section _____

Division NYHO / 10-U            Division _____            Division _____
(Fl/Area)                    (Fl/Area)                    (Fl/Area)

Re: One Payment Plan Using Paid-up Additions Rider

Becky — attached is some information which Arlette Mooney
suggested I refer to you. Marketing is illustrating a
one payment plan using the pd-up additions rider and
APP concepts.

I believe that there is the potential for misunderstanding
on this much as there is on APP alone. In this instance it
could surface rather quickly. For example I have heard that
the Field is advertising no further payments and no billing.
It is my understanding that the billing will continue. (Note have
the CR completed the application.)

The pending tax legislation is another possible problem area. We
send out a letter with the policy (copy attached) however it would be much
better if they signed a form when the app is submitted alerting them
to potential tax implications, additional billings, and future prem payments

Date 11/7/88            John Curtin, supvr. Client Services — NCRO/URP
                                Signature                    Division-Section
CC: Arlette Mooney
    John Akers            (Continue on the Reverse Side If Necessary)

3255 (3-85) Printed in U.S.A.                                        160000036516 (03-85)

| | | | | | | |
|---|---|---|---|---|---|---|
| AGE 55 | NONE | 400 | 3,308 | 3,408 | 22 | 24,616 |
| | NONE | 427 | 3,709 | | 22 | 24,652 |
| 19 | NONE | 456 | 3,633 | 4,083 | 22 | 26,795 |
| 20 | NONE | 487 | 3,934 | 4,476 | 22 | 27,047 |
| AGE 60 | NONE | 555 | 4,284 | 4,951 | 22 | 27,411 |
| | NONE | 667 | 5,360 | 5,408 | 22 | 29,015 |
| AGE 79?? | NONE | 1,073 | 14,716 | 32,904 | 22 | 32,921 |
| | | | | | 22 | 33,363 |

** THE CASH OUTLAY ILLUSTRATED SHOWS THE RESULTS IF THE CURRENT DIVIDEND SCALE
CONTINUES WITHOUT CHANGE. DIVIDENDS ARE NOT GUARANTEED AND MAY INCREASE OR
DECREASE IN THE FUTURE. IF THE FUTURE DIVIDENDS DECREASE IT IS POSSIBLE THAT
THE CASH VALUE OF ADDITIONAL INSURANCE MAY NOT BE SUFFICIENT IN SOME FUTURE
YEARS TO PAY THE FULL CURRENT PREMIUM AND SOME CASH OUTLAY BY THE PREMIUM
PAYER MAY BE REQUIRED.
+# GUARANTEED CASH VALUE AND CASH VALUE OF ADDITIONAL INSURANCE.
% INCLUDES BASIC INSURANCE, ADDITIONAL INSURANCE, AND ANY RIDER INSURANCE VALUE
&& AGE AT LIFE EXPECTANCY. U.S. POPULATION LIFE TABLES
VALUES SHOWN APPLY TO THE BASIC POLICY AND PUA RIDER UNLESS OTHERWISE NOTED

HAZEN V. METLIFE    MP92500004255O

METROPOLITAN LIFE INSURANCE COMPANY

DIST 001-D  AGCY 803-1    PENNSYLVANIA    001

PREPARED FOR AK                    BY JC

PLAN:  LIFE PAID UP AT AGE 95

|  | CLASSIFICATION | AGE | SEX | AMOUNT OF INSURANCE |
|---|---|---|---|---|
| INSURED: | STANDARD NONSMOKER | 37 | FEMALE | $25,000 |

|  | ANNUAL PREMIUM | YEARS PAYABLE |
|---|---|---|
| BASIC POLICY | $375.75 | 58 |
| PAID-UP ADDITIONS RIDER | $1,736.00 | 1 |
| TOTAL ANNUAL PREMIUM | $2,111.75 | |

ACCELERATED PAYMENT PLAN ILLUSTRATION
ANNUAL DIVIDENDS USED TO BUY PAID-UP ADDITIONAL INSURANCE

| END OF POLICY YEAR | CASH OUTLAY START OF ANNUAL YEAR** | ANNUAL DIVIDEND | GUARANTEED CASH VALUE | ILLUSTRATIVE CASH VALUE@@ | GUARANTEED RIDER DEATH BENEFIT | ILLUSTRATIVE DEATH BENEFIT& |
|---|---|---|---|---|---|---|
| 1 | 2,112 | NONE | 1,704 | 1,704 | 7,057 | 32,057 |
| 2 | NONE | 183 | 1,373 | 1,556 | 5,502 | 31,962 |
| 3 | NONE | 194 | 1,244 | 1,439 | 4,732 | 31,211 |
| 4 | NONE | 207 | 1,272 | 1,480 | 4,030 | 30,536 |
| 5 | NONE | 222 | 1,334 | 1,556 | 3,399 | 29,940 |
| 6 | NONE | 239 | 1,380 | 1,620 | 2,842 | 29,428 |
| 7 | NONE | 247 | 1,471 | 1,738 | 2,363 | 28,926 |
| 8 | NONE | 255 | 1,581 | 1,836 | 1,925 | 28,466 |
| 9 | NONE | 264 | 1,700 | 1,964 | 1,526 | 28,053 |
| 10 | NONE | 274 | 1,825 | 2,100 | 1,169 | 27,687 |
| 11 | NONE | 287 | 1,957 | 2,245 | 855 | 27,371 |
| 12 | NONE | 300 | 2,125 | 2,426 | 587 | 27,107 |
| 13 | NONE | 316 | 2,304 | 2,620 | 368 | 26,896 |
| 14 | NONE | 333 | 2,522 | 2,835 | 199 | 26,744 |
| 15 | NONE | 353 | 2,755 | 3,108 | 92 | 26,648 |
| 16 | NONE | 375 | 3,033 | 3,408 | 22 | 26,614 |
| 17 | NONE | 400 | 3,308 | 3,709 | 22 | 26,652 |
| AGE 55 | NONE | 427 | 3,633 | 4,088 | 22 | 26,795 |
| 19 | NONE | 456 | 3,934 | 4,476 | 22 | 27,047 |
| 20 | NONE | 487 | 4,284 | 4,951 | 22 | 27,411 |
| AGE 60 | NONE | 555 | 5,360 | 6,626 | 22 | 29,016 |
| AGE 65 | NONE | 667 | 7,461 | 10,542 | 22 | 32,921 |
| AGE 79&& | NONE | 1,073 | 14,716 | 32,904 | 22 | 53,363 |

** THE CASH OUTLAY ILLUSTRATED SHOWS THE RESULTS IF THE CURRENT DIVIDEND SCALE
CONTINUES WITHOUT CHANGE.  DIVIDENDS ARE NOT GUARANTEED AND MAY INCREASE OR
DECREASE IN THE FUTURE.  IF THE FUTURE DIVIDENDS DECREASE IT IS POSSIBLE THAT
THE CASH VALUE OF ADDITIONAL INSURANCE MAY NOT BE SUFFICIENT IN SOME FUTURE
YEARS TO PAY THE FULL CURRENT PREMIUM AND SOME CASH OUTLAY BY THE PREMIUM
PAYER MAY BE REQUIRED.
@@ GUARANTEED CASH VALUE AND CASH VALUE OF ADDITIONAL INSURANCE.
& INCLUDES BASIC INSURANCE, ADDITIONAL INSURANCE, AND ANY RIDER INSURANCE VALUE
&& AGE AT LIFE EXPECTANCY - U.S. POPULATION LIFE TABLES
VALUES SHOWN APPLY TO THE BASIC POLICY AND PUA RIDER UNLESS OTHERWISE NOTED.

DIVIDENDS BASED ON JAN. 1988 SCALE THAT USES CURRENT INTEREST, MORTALITY AND
EXPENSE RATES. ILLUSTRATIVE FIGURES ARE NOT GUARANTEES OR ESTIMATES FOR THE FUTU

CONFIDENTIAL

METROPOLITAN LIFE INSURANCE COMPANY

DIST   001-0   AGCY 803-1              PENNSYLVANIA       001

PLAN:   PAID-UP ADDITIONS RIDER

INSURED:   CLASSIFICATION                AGE      SEX        AMOUNT OF INSURANCE
           STANDARD   NONSMOKER          37       FEMALE                 $25,000

| END OF POLICY YEAR | PAYMENT/ WITHDRAWAL | GUARANTEED CASH VALUE | ANNUAL DIVIDEND | AI FROM DIVIDEND | CUMULATIVE | |
|---|---|---|---|---|---|---|
| | | | | | CASH VALUE+ | DEATH BENEFIT |
| 1 | 1,734 | 1,704 | NONE | NONE | | |
| 2 | -376 | 1,373 | 66 | 528 | 1,704 | 7,0 |
| 3 | -493 | 1,219 | 61 | 470 | 1,439 | 6,0 |
| 4 | -182 | 1,072 | 56 | 411 | 1,281 | 5,2 |
| 5 | -169 | 934 | 50 | 352 | 1,129 | 4,4 |
| 6 | -154 | 805 | 44 | 293 | 984 | 3,7 |
| 7 | -136 | 691 | 38 | 242 | 850 | 3,1 |
| 8 | -129 | 581 | 32 | 196 | 729 | 2,6 |
| 9 | -121 | 475 | 26 | 153 | 610 | 2,1 |
| 10 | -112 | 375 | 21 | 116 | 501 | 1,6 |
| 11 | -101 | 282 | 16 | 85 | 396 | 1,2 |
| 12 | -89 | 200 | 11 | 58 | 299 | 9 |
| 13 | -75 | 129 | 7 | 36 | 211 | 6 |
| 14 | -60 | 72 | 4 | 19 | 136 | 4 |
| 15 | -43 | 30 | 1 | 8 | 76 | 2 |
| 16 | -23 | 8 | NONE | 2 | 32 | |
| 17 | NONE | 8 | NONE | 2 | 8 | |
| 18 | NONE | 8 | NONE | 2 | 9 | |
| 19 | NONE | 9 | NONE | 2 | 9 | |
| 20 | NONE | 9 | NONE | 2 | 9 | |
| AGE 60 | NONE | 10 | NONE | 2 | 10 | |
| AGE 65 | NONE | 11 | NONE | 1 | 10 | |
| | | | | | 12 | |

+   GUARANTEED RIDER CASH VALUE AND CASH VALUE OF ADDITIONAL INSURANCE FROM RIDER DIVIDENDS.
**  INCLUDES RIDER INSURANCE VALUE AND ADDITIONAL INSURANCE FROM RIDER DIVIDENDS.

DIVIDENDS BASED ON JAN. 1988 SCALE THAT USES CURRENT INTEREST, MORTALITY AND EXPENSE RATES.  ILLUSTRATIVE FIGURES ARE NOT GUARANTEES OR ESTIMATES FOR THE FUTURE.

VALUES SHOWN APPLY TO THE PAID-UP ADDITIONS RIDER ONLY.

NOT COMPLETE WITHOUT BASIC POLICY ILLUSTRATION.

**CONFIDENTIAL**

# EXHIBIT B

MCLOUGHLIN/PANZINO/, BARNEWOLD

APR     1994

To:     Frank Lynch
        Senior Vice-President
        PI Customer Services
        NYHO, Area - 5H

From:   Thomas M. La Badia
        Vice-President
        PI Customer Services
        Bridgewater, Area - 2E

Re:     *Request From Mr. Tweedie Concerning UL Customers
        With Target Premium Inadequate To Carry Policies*

As mentioned in my March 30th memorandum, we have assembled Natural Work
Teams to devise a short term strategy on contacting customers whose premium payment
assumptions have been disturbed by inforce pricing activity.   We included
representatives of various Systems, Business and Marketing units on the teams.  Both
Traditional and UL products having similar problems are addressed separately.

Attached for your information are preliminary proposals for both the traditional and UL
problem areas.

Attachment 1   UL Policy Projection Proposal - prepared by Bob Templin, PICS,
               Scranton.

               Summary - Development and Testing of System can be accomplished
               in about 2 months.  Actual processing and completion of notification
               would add on additional several months.

               This would include obtaining all Actuarial, Legal, Communication
               and Corporate approvals. Cost estimates would be provided during
               the development phase and used to determine most effective
               process.

Attachment 2   Accelerated Payment Plan - Options - prepared by Willie Taylor, PI
               Product Planning, Bridgewater.

               Summary - APP proposal targeted to those policyholders whose
               "Vanishing Premium" would actually reappear without warning due

M0S9700620582

Notice, Production and Use Subject to Case Management and Protective
Orders in MDL No. 1091, United States Dist. Ct.

MCLOUGHLIN/PANZINO/ BARNEWOLD

to dividend scale reductions. This is an alternative to the major long term strategy addressing all variations of APP which is presently circulating. This proposal focuses only on those policyholders (approximately 25,000) on which the APP arrangement is no longer supportable under present dividend scales.

A preliminary estimate indicates that this proposal could also be implemented during 1994 assuming all approvals and changes to agendas can be obtained quickly. (These are some of the same units presently working on the legal restitution and restoration efforts.)

Based upon the sensitive nature of these efforts and our desire to fully disclose this information to our policyholders, we will continue our analysis and preparation of detailed specifications until we hear otherwise from you. We would also appreciate your comments and suggestions on either of the two proposals.

*Tom La Badia*
Thomas M. La Badia

April 11, 1994
Attachments

cc Tweedie, Miller, Doby, Kelly, Stadler, Rokavec, Loquasto, Ruggieri, Barnewold

2

Notice "Production and Use Subject to Care Management and Protective Order in MDL No. 1091, United States Dist. Ct.

M059700620583

MF401100310[4]

EXHIBIT C

**CONFIDENTIAL**

Anthony Amodeo
Vice-President & Actuary

Re:    Inforce Universal Life and Single Premium

The attached letter from Dave Martin reinforces some other concerns that have been expressed in these areas. I would like to take this opportunity to set forth some of my own views, and to identify the actions that we ought to be undertaking.

<u>Universal Life</u>. The basic concern is that the combination of COI increases and credited rate reductions have made the UL an "unattractive" product, relative to our other products and products sold by our competitors. It may be that this has not yet produced a noticeable increase in surrender, strip funding and/or internal replacement, but if our OIC's are predicting a problem, we ought to try to get on top of it.

Currently, a producer who feels that an inforce UL is no longer serving his or her clients' interests can suggest a Section 1035 exchange to a Traditional product (Whole Life or Life at 98) with a PUAR. In such cases, we will restrict commissions. There may be increased pressure for us to waive the PUAR load, although probably not the implicit loads in the base Whole Life and Life at 98.

The more subtle concern is that, even if this business remains "stable," the policyholders are still only paying their target premiums as originally illustrated. We ought to recognize that these premiums are now inadequate to fully fund the policies, and we should consider whether we have a more affirmative obligation to notify the policyholders. Mike Peress brought this out at the recent Product Committee meeting.

If the only concern were about the product's relative "unattractiveness," then I could rationalize a "low key" approach. I.e.,

(1)    Recognize that some UL policies will be internally replaced into Traditional products with PUAR's.

(2)    Since this is likely to result in meaningfully lower mortality charges to insureds who are willing to be underwritten, it is consistent with their interests.

REDACTED CONFIDENTIAL
POL INFO

HAZEN V. METLIFE            MP925000075172

**CONFIDENTIAL**

Page 2
Inforce UL and SP

    (3)   Assure that existing commission restriction rules are appropriate, and have been implemented as intended.

    (4)   Do not waive PUAR loads.

However, the second concern -- the possibility that policyholders have been faithfully paying their target premiums and are not fully aware that these premiums are now inadequate -- is much more significant. This demands some immediate concentrated effort in the financial areas, and is likely to warrant some active marketing efforts as well. Specifically,

    (1)   We should review the UL inforce on a policy-by-policy basis to show how much business fits into this category, and how much we would need to increase the premium. (I will be outlining this in greater detail in a subsequent memo.)

    (2)   We may find that many of our UL policies will have to be "resold." In other words, if we notify someone that their premium should increase by 50% to maintain permanent coverage, they might simply surrender.

    (3)   To facilitate such "reselling," transfer programs and reunderwriting programs may be much more justifiable.

I would hope to involve your people (particularly Andy Rallis) as soon as possible to investigate these issues.

<u>Single Premium</u>. The problems/threats in this area have a lot in common with those affecting UL. However, for several reasons, this is an area where there is greater relative exposure to customer dissatisfaction

    (1)   This product has significant "barriers to exit," including a valuable, grandfathered tax status that is not available on new products. These policyholders are less likely to just "walk away."

    (2)   The complaints are as much "non-financial" as they are "financial." I.e., that we failed to adequately disclose the possibility or the significance of the mortality charges.

    (3)   These products were sold to wealthy people, and there was a relatively high level of broker involvement.

REDACTED CONFIDENTIAL
POL INFO

RAZEN V. METLIFE    MP925000075173

CONFIDENTIAL

Page 3
Inforce UL and SP

Also, we ought to really be sure that COI charges, especially on substandards, will not cause the accumulation fund to disappear before the scheduled maturity of the policy.

Again, this is an area where we could use Andy's assistance.

Thanks,

*Mike*

Michael Levine
Actuary

November 29, 1993

cc:     G. Doby
        D. Martin
        R. Maurer
        M. Perees

/afg/rev.12.xxx
Attachment

REDACTED CONFIDENTIAL
POL INFO

HAZEN V. METLIFE     MP025000075174