IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT G. WYCKOFF, | CIVIL ACTION NO. 00-2248 |
| Plaintiff, | |
| v. | CHIEF JUDGE AMBROSE |
| METROPOLITAN LIFE INSURANCE COMPANY AND KENNETH F. KACZMAREK, | |
| Defendants | |

**METROPOLITAN LIFE INSURANCE COMPANY'S AND KENNETH F. KACZMAREK'S BRIEF IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE THE DEPOSITION TESTIMONY OF WILHELMENIA TAYLOR**

**PRELIMINARY STATEMENT**

Metropolitan Life Insurance Company ("MetLife"), brings this Motion to exclude plaintiff's Exhibits 96, 97, and 98, the deposition testimony of Wilhelmenia Taylor in <u>Ihnat v. Pover</u>, dated September 25, 2002, September 26, 2002, and October 1, 2002. Copies are attached to the motion as Exhibits A, B, and C, respectively.[1]

Plaintiff makes "vanishing premium" claims with respect to two whole life policies purchased in 1991 and 1994. Specifically, plaintiff claims that, in 1991, former MetLife sales representative Norman Molchan (deceased) misrepresented that plaintiff could purchase a $10,000 Whole Life policy by paying out-of-pocket premiums for only fourteen years. Additionally, plaintiff asserts that an illustration was used indicating that, in year 2011, the 1991 Policy would have a cash value of $7,746.00 and a death benefit of $12,112.00. On June 27, 1991, MetLife issued Policy No. 915 409 338 M ("1991 Policy") to plaintiff as owner and insured. Initially, the 1991 Policy was sold with a monthly premium of $59.40 based on plaintiff's classification as a non-smoker. However, a medical exam revealed nicotine in plaintiff's urine and he was reclassified as a smoker. Thus, the 1991 Policy was issued with a higher monthly premium of $73.20. Plaintiff avers that he did not contest the higher premium. Nevertheless, he contends that, "by paying the additional amount of premium," he still would only have to pay out-of-pocket premiums for fourteen years.

---

[1] Plaintiff designated specific portions of Ms. Taylor's deposition testimony to be read at trial. Defendants are filing simultaneously with this Brief its line by line objections to plaintiff's designations.

Plaintiff admits that he contacted MetLife in 1994 because he was interested in exercising his conversion rights under an employer-provided group life insurance plan. On August 2, 1994, MetLife issued $4,500 Whole Life Policy No. 945 600 948 M ("1994 Policy") to plaintiff as owner and insured. The 1994 Policy was converted partially from plaintiff's group term Policy No. G-16200G after he retired from U.S. Steel. The monthly premium for the 1994 Policy was $34.23 payable for thirty-two years. In the Complaint, plaintiff alleges that former MetLife sales representative Kenneth Kaczmarek misrepresented that plaintiff would have to pay monthly premiums on the 1994 Policy for only ten years, with no subsequent payments thereafter. Plaintiff further alleges that Mr. Kaczmarek did not did not disclose that the 1994 Policy was, in fact, a whole life policy with payments payable for plaintiff's death. However, Plaintiff also concedes in the Complaint that the group term policy "could only be converted to a whole life policy." Furthermore, plaintiff signed a Receipt stating that he had received a "Life Insurance Buyer's Guide" from MetLife and a State of Pennsylvania Disclosure Statement indicating that he understood he had purchased a $4,500 whole life policy with annual premiums of $410.76 payable for thirty years.

The main issue in this case is whether Mr. Molchan and Mr. Kaczmarek made any misrepresentations with respect to the sale of the 1991 and 1994 policies and whether plaintiff was reasonably justified in relying upon those alleged statements. As such, the proposed testimony of Wilhelmenia Taylor is irrelevant to the specific sales at issue as Ms. Taylor's testimony focuses on extraneous issues, such as the determination of dividend scales on whole life insurance policies from the mid-1980s until 1994 and the effect that the changing dividend scale in the early 1990s had on policies that were eligible for Accelerated Payment ("AP") in the early 1990s. Moreover, Ms. Taylor had <u>no</u> knowledge of the transaction at issue. As Ms.

Taylor's testimony does not mention or relate to plaintiff's allegations, the proposed testimonial evidence is irrelevant under Federal Rule of Evidence 401[2] and is, therefore, inadmissible at trial under Rule 402.[3]

Because Ms. Taylor lacks any first-hand knowledge of the sales of the policies at issue, plaintiff will likely try to use the proposed testimony and attached exhibits to allege bad acts or wrongs allegedly committed by MetLife. This Court should not allow the introduction of evidence regarding other bad acts or wrongs because they are (i) irrelevant, (ii) prejudicial,[4] and (iii) otherwise inadmissible. Equally prejudicial to defendants, plaintiff will likely try to use the proposed testimony to impress upon the jury that any purported inaction on the part of MetLife somehow constitutes blameworthy irresponsibility or negligence. As this case only concerns Mr. Molchan's and Mr. Kaczmarek 's alleged misrepresentations in the sale of the policies at issue, Ms. Taylor's testimony --with respect to certain decisions made by MetLife management -- would only confuse the jury and cloud the essential issues to be tried in this case. For the reasons set forth in this Brief, defendants' Motion to exclude plaintiff's Exhibits 96, 97, and 98, the deposition testimony of Wilhelmenia Taylor in <u>Ihnat v. Metropolitan Life Insurance Company</u>, dated September 25, 2002, September 26, 2002, and October 1, 2002, should be granted.

---

[2] Federal Rule of Evidence 401 defines "relevant evidence" as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[3] Rule 402 provides that relevant evidence is generally admissible, and irrelevant evidence is inadmissible.

[4] Rule 403 states that relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

### **BACKGROUND OF MS. TAYLOR'S DEPOSITION TESTIMONY**

Ms. Taylor's September 25, 2002, September 26, 2002, and October 1, 2002, depositions were taken for the case of Ihnat v. Pover. Ms. Taylor was a MetLife employee who joined the "Natural Work Team" in 1987 to assist in the "mechanization" of the AP process. See Ex. B at 6-7. She worked with the Natural Work Team until, at the latest, October of 1994. See Ex. C at 111.

Ms. Taylor's September 25, 2002 testimony focuses on her involvement with MetLife's Financed by Inforce Policies (FIP) system, a system for tracking internal replacement. See Ex. A. Replacement is not an issue in this case. Other than Ms. Taylor's testimony regarding her educational background and employment history at MetLife, plaintiff did not designate this testimony. Accordingly, MetLife does not address this testimony substantively.

Ms. Taylor's September 26, 2002, and October 1, 2002 testimony focuses wholly on her work with Accelerated Payment ("AP") related issues during her tenure with the Natural Work team. See Ex. B, Ex. C. Specifically, Ms. Taylor testified about the system by which MetLife would determine if policyholders were eligible for the AP arrangement. See Ex. B at 8-18. Ms. Taylor also testified briefly about brochures and sales documents that were presented to prospective policyholders from the 1980s until 1994. See Ex. B at 18-26. She further testified about issues that arose with policyholders who purchased policies in the early to mid 1980s and whose policies were eligible for AP in the early 1990s. See Ex. C at 83-87, 103-110, 112, 118-122, and 130-131.

**ARGUMENT**

**I.    THE TESTIMONY OF MS. TAYLOR IS IRRELEVANT TO THIS LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSIBLE.**

The crux of this case is whether Mr. Molchan and Mr. Kaczmarek made any misrepresentations with respect to the sales of the 1991 and 1994 policies and whether plaintiff was reasonably justified in relying upon their alleged statements. The proposed evidence is irrelevant to the plaintiff in this case, the policies at issue, and what Mr. Molchan and Mr. Kaczmarek allegedly said or did not say to plaintiff. It goes beyond the scope of the transaction at issue and the pleadings in this case against MetLife. In short, the proposed testimony has no appreciable relevance to this litigation and would only serve to antagonize the jurors against MetLife. Accordingly, plaintiff should not be permitted to introduce such evidence at trial.

Ms. Taylor testified generally about the "mechanization" of the AP process, which she described as a way of determining if a policy was eligible to use the AP arrangement. See Ex. B at 7. There is no evidence in the record that plaintiff was induced to purchase his policies as a result of representations involving how MetLife "mechanized" the AP process.

Furthermore, the majority of Ms. Taylor's deposition testimony taken on October 1, 2002, focused on dates, documents, and issues wholly unrelated to the sale at issue. Most of the questions asked by counsel focused on dates and time period years after Mr. Molchan and Mr. Kaczmarek met with and sold plaintiff his policies. See Ex. C at 14, 19, 40, 54. In fact, counsel deposing Ms. Taylor stated at one point during the deposition: "The time period I'm most concerned about, what I want to know about is from late 1992 in through 1993 when these documents were generated." See Ex. C at 40. Thus, plaintiff should not be given the

opportunity to introduce evidence from a <u>different</u> and unrelated time period.  In addition, Ms. Taylor testified in large part about issues that arose with policyholders who purchased policies in the early to mid 1980s and whose policies were initially eligible for AP in the early 1990s.  <u>See</u> Ex. C at 83-87, 103-110, 112, 118-122, and 130-131.  Plaintiff purchased his policies in 1991 and 1994.  The specific issues that faced policyholders who were currently on AP in the early 1990 are irrelevant to any issue on this case.

Additionally, Ms. Taylor was questioned extensively regarding documents produced by and relating to former MetLife employee James Rayl.[5]  <u>See</u> Ex. C.  Many of these documents were entered into her deposition as exhibits.  <u>See id</u>. 35:13-23.[6]  Even though Ms. Taylor testified briefly about brochures and sales documents that were presented to prospective policyholders from the 1980s until 1994, plaintiff does not allege that he was shown <u>any</u> sales brochures.  <u>See</u> Ex. B at 18-26.  Thus, Ms. Taylor's testimony on that subject is irrelevant.  Moreover, it would be speculative, at best, and would inappropriately influence the juror's consideration of sales materials <u>not</u> alleged by plaintiff to have been provided by Mr. Molchan and Mr. Kaczmarek.

Ms. Taylor's testimony regarding matters unrelated to plaintiffs' allegations is irrelevant to this case and, therefore, inadmissible under Federal Rules of Evidence 401 and 402.  She has no firsthand knowledge of the transactions at issue.  Rather, she is an employee of MetLife and

---

[5] James Rayl was a disgruntled MetLife employee who has neither direct nor indirect connections to the issues in this case.

[6] Plaintiff has offered many of these documents independently as Exhibits in this case.  For the reasons set forth more fully in defendants' motion and supporting brief to exclude documents relating to James Rayl, those documents also are irrelevant, prejudicial and otherwise inadmissible.  <u>See</u> Metropolitan Life Insurance Company's and Kenneth F. Kaczmarelk's Brief In Support Of Motion In Limine To Exclude From Evidence Plaintiff's Exhibit Nos. 16, 34, 35, 36, 37, 46, 52, 55, 58, 112 and 113 (Documents Authored By And Relating To James Rayl).

testified only as to the facts of her employment and her knowledge of management in general, none of which is particularly relevant to the claims asserted by plaintiff.

Simply put, none of Ms. Taylor's testimony has any bearing on the issues in this case: what Mr. Molchan and Mr. Kaczmarek said -- or did not say -- to plaintiff at the time of the transactions at issue and whether plaintiff was justified in relying on those purported statements. Indeed, not once in her deposition does Ms. Taylor mention Mr. Molchan, Mr. Kaczmarek, or even the branch office out of which they worked. In fact, Ms. Taylor testified generally throughout the depositions about MetLife customers and/or policyholders, who were undoubtedly a large and faceless group of individuals with a myriad of insurance needs who purchased their policies under numerous circumstances. See Ex. B at 37-38. This case is about plaintiff and the policies he purchased. Ms. Taylor's testimony does not even remotely concern him or the sale that occurred at his home. In other words, his testimony possesses absolutely no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" and, thus, is inadmissible. See Fed. R. Evid. 401; see, e.g., Michetti v. Linde Baker Material Handling Corp., 969 F.Supp. 286, 287-88 (E.D.Pa. 1997).

### III.   ANY PROBATIVE VALUE THAT THE UNRELATED TESTIMONY OF MS. TAYLOR MAY HAVE IS OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUES, OR MISLEADING THE JURY.

If this Court determines that Ms. Taylor's testimony has any relevance -- which it should not -- it should nevertheless be excluded. Federal Rule of Evidence 403 states that relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Any probative value that Ms. Taylor's testimony could possibly possess is negligible when compared to the unduly prejudicial impact it

would have upon the jury.  See Taylor v. Monette, et al., 564 F.Supp. 1, 2 (E.D.Pa.1982) (excluding from trial evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm.")

Here, plaintiff's purpose in using the testimony of Ms. Taylor would be to inflame the jurors and prejudice them against the MetLife.  The evidence will inappropriately invite the jurors to disregard their duty to decide this case on its facts.  See Coursen v. A.H. Robins Co., 764 F.2d 1329, 1335 (9th Cir. 1985) (court should exclude evidence which is offered only to show defendant in a bad light); Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 188 (3d Cir. 1990) ("Evidence that a party committed wrongs other than those at issue in a case often creates a danger of 'unfair prejudice' because such evidence may influence a jury to return a verdict based on a desire to punish for the other wrongs."), cert. denied, 501 U.S. 1217 (1991) (emphasis added).

Plaintiff will likely attempt to use the testimony of Ms. Taylor to show unrelated alleged "wrongs" or "bad acts" of MetLife to show that MetLife behaved in a similar manner in this case.  Such evidence is inadmissible under Federal Rule of Evidence 404(b).  Under that Rule, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," except under limited circumstances not applicable here.  See Fed. R. Evid. 404(b) (evidence of other wrongs may be admissible to show existence of a "plan").  In order for "bad acts" evidence to be admissible to establish a common plan, plaintiff must show that the acts "are part of a single series of events.'"  J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994) (quoting Government

of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992). Evidence concerning other bad acts that are not connected to the transaction at issue is inadmissible. See id.

Ms. Taylor's testimony regarding her role in the "Natural Work Team" and issues with policyholders whose policies were initially AP eligible in the early 1990s have nothing to do with plaintiff's purchase of the policies at issue. Plaintiff likely will use this testimony in an attempt to raise the inference that MetLife was engaged in a scheme to keep its dividend scale artificially inflated. Even if this scheme existed -- which it did not -- it would have had no bearing on the transaction at issue.

Ms. Taylor was also questioned about the absence of a "tracking system" for AP arrangement policies. See Ex. B at 20; see also Ex. C at 27-29. Plaintiff alleges no facts upon which a tracking system, or the absence thereof, would have been pertinent. Furthermore, Ms. Taylor was repeatedly asked to testify as to MetLife's response to policyholders whose policies were AP eligible between 1993 and 1995. See Ex. C at 83-87, 103-110, 112, 118-122, and 130-131. See Ex. C at 26. Again, plaintiff's policies were not AP eligible during that time frame. Here, plaintiff's attempt to introduce irrelevant testimony clearly is not to prove the claims asserted in his complaint but, rather, to obfuscate the issues that the jury should consider. Undoubtedly prejudicial to MetLife, plaintiff will likely try to use the proposed testimony to impress upon the jurors that any purported inaction or decision on the part of MetLife somehow constitutes blameworthy irresponsibility or negligence. As this case only concerns Mr. Molchan and Mr. Kaczmarek's alleged misrepresentations in the sale of the 1991 and 1994 policies, Ms. Taylor's testimony with respect to certain decisions made by MetLife management would only confuse the jury and cloud the essential issues to be tried in this case.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Honorable Court enter an Order barring the introduction or use of plaintiff's Proposed Exhibits 96, 97, and 98.

                        Respectfully Submitted,

                        s/ B. John Pendleton, Jr.
                        B. John Pendleton, Jr.
                        McCARTER & ENGLISH, LLP
                        Four Gateway Center
                        100 Mulberry Street
                        Newark, NJ 07102
                        (973) 622-4444

                        Attorneys for Defendant
                        Metropolitan Life Insurance Company and
                        Kenneth F. Kaczmarek

Dated:  October 3, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via the electronic filing service, on this 3rd day of October, 2006, on the following counsel of record:

>Kenneth R. Behrend, Esq.
>Behrend and Ernsberger, P.C.
>Union National Bank Building
>306 Fourth Avenue, Suite 300
>Pittsburgh, PA  15222

>s/ B. John Pendleton, Jr.

ME1\5878908.1