Ex. C

(3 of 3)

**Metropolitan Life Insurance Company**
12902 EAST 51 ST
PO BOX 500
TULSA OK 74102-0500

**MetLife**

February 9, 1995

MP401107093I

POLLY C HOLDER
1 MAIN STREET
HOMETOWN NY  12345

Re: Policy # 555 555 555 A        Insured: POLLY C HOLDER

Dear Ms. Holder,

Thank you for your inquiry about our Accelerated Payment (AP) arrangement for paying policy premiums. We have determined that your policy will become eligible for this payment arrangement on July 20, 1997. This eligibility assumes that you will not make any withdrawals from the policy and that you will pay all premiums due until the eligibility date.

Once you are eligible, this payment arrangement will allow your annual premium to be paid by withdrawing the premium amount from your policy's dividend and Paid-Up Additions Rider balances. This will eliminate the need for you to pay your premiums by cash, check or money order.

It is important for you to understand the following with respect to the AP arrangement:

This method of paying premiums **does not** make the policy "paid-up" nor does it reduce the number of premiums that must be paid. Instead, the AP arrangement simply allows you to pay your premiums using policy values as long as those values are sufficient.

Since the current dividend scale is not guaranteed for the future, it is important to remember that any fluctuation in future dividend scales may change this eligibility date. An increase in dividends could result in an earlier date while a decrease in dividends could extend it further into the future.

Certain transactions can impact your eligibility for the AP arrangement: for example, taking a policy loan, failing to pay loan interest, withdrawing from policy values, changing your dividend option, or changing your frequency of payment to other than annual.

**CONFIDENTIAL**

#221FLR

If on July 20, 1997, you still wish to have your premiums paid by
the AP arrangement, please contact your MetLife Representative.
We will then verify whether or not your policy is still eligible for
this arrangement.

If you have questions about the AP arrangement or your insurance
coverage in general, please call your MetLife Representative at
(999) 999-9999 or contact me at the above return address. You may
also call our toll-free customer service number, 1+800+MET-5000
(1+800+638-5000). Our busiest day is Monday, so the best time to
call, if possible, is Tuesday through Friday.

Sincerely,

*Joe Clerk*

Joe Clerk
Cash/Loan/Dividend/Matured Endowment
MetLife Customer Service Center - Tulsa

CONFIDENTIAL

MP401107093 2

**Metropolitan Life Insurance Company**
12902 EAST 51 ST
PO BOX 500
TULSA OK 74102-0500

**MetLife**

February 9, 1995

POLLY C HOLDER
1 MAIN STREET
HOMETOWN NY 12345

Re: Policy # 666 666 666 A       Insured: POLLY C HOLDER

Dear Ms. Holder,

Thank you for your inquiry about our Accelerated Payment (AP) arrangement for paying policy premiums. We have determined that your policy will become eligible for this payment arrangement on August 1, 1998. This eligibility assumes that you will not make any withdrawals from the policy and that you will pay all premiums due until the eligibility date.

Once you are eligible, this payment arrangement will allow your annual premium to be paid by withdrawing the premium amount from your policy's Paid-Up Additions Rider balance. This will eliminate the need for you to pay your premiums by cash, check or money order.

It is important for you to understand the following with respect to the AP arrangement:

This method of paying premiums **does not** make the policy "paid-up" nor does it reduce the number of premiums that must be paid. Instead, the AP arrangement simply allows you to pay your premiums using policy values as long as those values are sufficient.

Certain transactions can impact your eligibility for the AP arrangement: for example, taking a policy loan, failing to pay loan interest, withdrawing from policy values, changing your dividend option, or changing your frequency of payment to other than annual.

If on August 1, 1998, you still wish to have your premiums paid by the AP arrangement, please contact your MetLife Representative. We will then verify whether or not your policy is still eligible for this arrangement.

**CONFIDENTIAL**

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at (999) 999-9999 or contact me at the above return address. You may also call our toll-free customer service number, 1+800+MET-5000 (1+800+638-5000). Our busiest day is Monday, so the best time to call, if possible, is Tuesday through Friday.

Sincerely,

*Joe Clerk*

Joe Clerk
Cash/Loan/Dividend/Matured Endowment
MetLife Customer Service Center — Tulsa

MP40110170934

**CONFIDENTIAL**

CONFIDENTIAL: NEITHER THIS DOCUMENT NOR THE INFORMATION CONTAINED HEREON IS TO BE COPIED OR USED FOR ANY PURPOSE OTHER THAN METROPOLITAN BUSINESS.

CWS NOTICE OF CASH QUOTES, MATURITIES, AUTOMATIC PREMIUM LOANS, PENDING CAS PAYMENTS, AND ACCEL PAY INQUIRIES SUBMITTED FROM OTHER OFFICES.    02/09/9

| POLICY NO/SUFF/ACTION | HO | PAYEE NAME / ADDRESS / POLICYOWNER | CASH VALUE |
|---|---|---|---|
| 111 111 111 A<br>ACCEL PAY ELIGIBILITY INQUIRY - POLICY IS ELIGIBLE | CEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY 12345<br>POLLY C HOLDER | 100.00 |
| 222 222 222 A<br>ACCEL PAY ELIGIBILITY INQUIRY - POLICY IS ELIGIBLE | CEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY 12345<br>POLLY C HOLDER | 200.00 |
| 333 333 333 A<br>ACCEL PAY ELIGIBILITY INQUIRY - POLICY IS ELIGIBLE | CEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY 12345<br>POLLY C HOLDER | 300.00 |
| 444 444 444 A<br>ACCEL PAY ELIGIBILITY INQUIRY - POLICY IS NOT ELIGIBLE UNTIL 06/10/96 | CEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY 12345<br>POLLY C HOLDER | 400.00 |
| 555 555 555 A<br>CCEL PAY ELIGIBILITY NQUIRY - POLICY IS NOT GIBLE UNTIL 07/20/97 | CEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY 12345<br>POLLY C HOLDER | 500.00 |
| 666 666 666 A<br>ACCEL PAY ELIGIBILITY INQUIRY - POLICY IS NOT ELIGIBLE UNTIL 08/01/98 | CEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY 12345<br>POLLY C HOLDER | 600.00 |
| 888 888 001 A<br>CASH QUOTE | NEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY 12345<br>POLLY C HOLDER | 800.00 |
| 888 888 002 A<br>PENDING CASH SURRENDER | NEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY 12345<br>POLLY C HOLDER | 800.00 |
| 888 888 003 A<br>INITIAL MATURITY | NEHO | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY 12345<br>POLLY C HOLDER | 800.00 |
| 888 888 004 A<br>CASH QUOTE AND REQUEST FORM SENT | TELE | POLLY C HOLDER<br>1 MAIN STREET<br>HOMETOWN NY 12345<br>POLLY C HOLDER | 800.00 |

THIS REPORT HAS BEEN PREPARED FOR INFORCE DISTRICT XXX, AGENCY 999

FIDENTIAL

**❖ MetLife®**

4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

**Questions?**
Contact your MetLife
Representative:
☎ **817-776-2520**
Sales Office / Agency:
**D41/023**

MP401070936

FOR QUESTIONS OR
SERVICE, PLEASE CALL
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re <u>193 456 789 PR</u>                    JANE POLOWNER
Policy Number                              Name of Insured

Dear Policyowner

We are pleased to inform you that future annual premiums for this policy will be paid by the Accelerated Payment (AP) arrangement.

Under this payment arrangement, the annual premium will be paid by withdrawing the premium amount from your policy's dividend balance. This will eliminate the need for you to pay your premiums by cash, check or money order.

However, you will continue to receive a billing notice approximately four weeks before the anniversary date of your policy. At that time, you will have the option of either paying the premium yourself or having it paid by the AP arrangement. If not paid by you, the premium will be paid by the AP arrangement 21 days after the due date.

It is important for you to understand the following with respect to the AP arrangement:

> This method of paying premiums **does not** make the policy "paid-up" nor does it reduce the number of premiums that must be paid. Instead, the AP arrangement simply allows you to pay your premiums using policy values as long as those values are sufficient.

> Since the current dividend scale is not guaranteed for the future, it is important to remember that any fluctuation in future dividend scales may change this arrangement. A future decrease in dividends could require you to make additional out-of-pocket premium payments.

> Certain transactions can impact, or even terminate, your AP arrangement. For example, if you take a policy loan, fail to pay loan interest, withdraw from policy values, change your dividend option, or change your frequency of payment to other than annual, you may need to resume out-of-pocket premium payments.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Jeannie Eidschun*

CASH/LOAN/DIVIDEND/MATURITIES
METLIFE CUSTOMER SERVICE CENTER - TULSA
JAN 09, 1995

AP-A

ONFIDENTIAL

Thank you
for
insuring
with
MetLife.

**MetLife**
4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions?
Contact your MetLife
Representative:
☎ 817-776-2520
Sales Office / Agency:
D41/023

M240110709937

FOR QUESTIONS OR
SERVICE, PLEASE C
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re 203 456 789 PR            JANE POLOWNER
_____            _____
Policy Number                  Name of Insured

Dear Policyowner

We are pleased to inform you that future annual premiums for this policy will be paid by the Accelerated Payment (AP) arrangement.

Under this payment arrangement, the annual premium will be paid by withdrawing the premium amount from your policy's dividend and Paid-Up Additions Rider balances. This will eliminate the need for you to pay your premiums by cash, check or money order.

However, you will continue to receive a billing notice approximately four weeks before the anniversary date of your policy. At that time, you will have the option of either paying the premium yourself or having it paid by the AP arrangement. If not paid by you, the premium will be paid by the AP arrangement 21 days after the due date.

It is important for you to understand the following with respect to the AP arrangement:

CONFIDENTIAL

> This method of paying premiums **does not** make the policy "paid-up" nor does it reduce the number of premiums that must be paid. Instead, the AP arrangement simply allows you to pay your premiums using policy values as long as those values are sufficient.

> Since the current dividend scale is not guaranteed for the future, it is important to remember that any fluctuation in future dividend scales may change this arrangement. A future decrease in dividends could require you to make additional out-of-pocket premium payments.

> Certain transactions can impact, or even terminate, your AP arrangement. For example, if you take a policy loan, fail to pay loan interest, withdraw from policy values, change your dividend option, or change your frequency of payment to other than annual, you may need to resume out-of-pocket premium payments.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Thank you
for
ring
Atte.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION                    AP-B
METLIFE CUSTOMER SERVICE CENTER - WARWICK

**MetLife**

4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions ?

Contact your MetLife
Representative:

☎ 817-776-2520

Sales Office / Agency:
D41/023

FOR QUESTIONS OR
SERVICE, PLEASE CALL
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re 213 456 789 PR        JANE POLOWNER
   Policy Number                    Name of Insured

Dear Policyowner

We are pleased to inform you that future annual premiums for this policy will be paid by the Accelerated Payment (AP) arrangement.

Under this payment arrangement, the annual premium will be paid by withdrawing the premium amount from your policy's Paid-Up Additions Rider balance. This will eliminate the need for you to pay your premiums by cash, check or money order.

However, you will continue to receive a billing notice approximately four weeks before the anniversary date of your policy. At that time, you will have the option of either paying the premium yourself or having it paid by the AP arrangement. If not paid by you, the premium will be paid by the AP arrangement 21 days after the due date.

It is important for you to understand the following with respect to the AP arrangement:

This method of paying premiums **does not** make the policy "paid-up" nor does it reduce the number of premiums that must be paid. Instead, the AP arrangement simply allows you to pay your premiums using policy values as long as those values are sufficient.

Certain transactions can impact, or even terminate, your AP arrangement. For example, if you take a policy loan, fail to pay loan interest, withdraw from policy values, change your dividend option, or change your frequency of payment to other than annual, you may need to resume out-of-pocket premium payments.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Jeannie Eidschun*

CASH/LOAN/DIVIDEND/MATURITIES
METLIFE CUSTOMER SERVICE CENTER - TULSA
JAN 09, 1995

**CONFIDENTIAL**

AP-C

**MetLife**
4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions?
Contact your MetLife
Representative:
☎ **817-776-2520**
Sales Office / Agency:
**D41/023**

MP4011070939

FOR QUESTIONS OR
SERVICE, PLEASE CA
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re <u>133 456 789 PR</u>          <u>JANE POLOWNER</u>
     Policy Number                      Name of Insured

Dear Policyowner

We are writing to let you know that, as a result of your recent policy change, the premiums for this policy will no longer be paid by the Accelerated Payment (AP) arrangement.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making out-of-pocket premium payments again.

You will be billed for your next premium due **MAR 31, 1995**.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Jeannie Eidschun*

CASH/LOAN/DIVIDEND/MATURITIES
METLIFE CUSTOMER SERVICE CENTER - TULSA
JAN 09, 1995

**CONFIDENTIAL**

thank you
or
enquirer
f

**AP-3A**

**MetLife**

4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions ?
Contact your MetLife Representative:
☎ 817-776-2520
Sales Office / Agency:
D41/023

MP401070940

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

FOR QUESTIONS OR
SERVICE, PLEASE CAL
1-800-MET-5000.
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

Re 143 456 789 PR          JANE POLOWNER
   Policy Number               Name of Insured

Dear Policyowner

We are writing to let you know that, as a result of your recent request, the premiums for this policy will no longer be paid by the Accelerated Payment (AP) arrangement.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making out-of-pocket premium payments again.

You will be billed for your next premium due MAR 31, 1995 .

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK
JAN 09, 1995

**CONFIDENTIAL**

Thank you
for
insuring
with

AP-3B

**MetLife**
4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions?
Contact your MetLife
Representative:
☎ **817-776-2520**
Sales Office / Agency:
**D41/023**

FOR QUESTIONS OR
SERVICE, PLEASE CA
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re <u>153 456 789 PR</u>       <u>JANE POLOWNER</u>
Policy Number                     Name of Insured

Dear Policyowner

We are writing to let you know that, as a result of your recent change to the Premium Reduction
dividend option, the premiums for this policy will no longer be paid by the Accelerated Payment
(AP) arrangement. In order for this payment arrangement to remain in effect, the dividend option
must be either Additional Paid-Up Insurance or Dividends to Accumulate at Interest.

Therefore, in order to keep your policy in full benefit, it may be necessary for you to begin making
out-of-pocket premium payments again.

You will be billed for your next premium due MAR 31, 1995 .

If you have questions about the AP arrangement or your insurance coverage in general, please call
your MetLife Representative at the telephone number listed above.

Sincerely

*Jeannie Eidschun*

CASH/LOAN/DIVIDEND/MATURITIES
METLIFE CUSTOMER SERVICE CENTER - TULSA
JAN 09, 1995

**CONFIDENTIAL**

Thank you
for
insuring

AP-3C

**MetLife**

4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions?
Contact your MetLife
Representative:
☎ 817-776-2520
Sales Office / Agency:
D41/023

FOR QUESTIONS OR
SERVICE, PLEASE CALL
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re **163 456 789 PR**
Policy Number

**JANE POLOWNER**
Name of Insured

Dear Policyowner

We are writing to let you know that, as a result of your recent change to the Cash dividend option, the premiums for this policy will no longer be paid by the Accelerated Payment (AP) arrangement. In order for this payment arrangement to remain in effect, the dividend option must be either Additional Paid-Up Insurance or Dividends to Accumulate at Interest.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making out-of-pocket premium payments again.

You will be billed for your next premium due MAR 31, 1995 .

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK
JAN 09, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-3D

**❄️MetLife**

4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions?

Contact your MetLife
Representative:
☎ 817-776-2520
Sales Office / Agency:
D41/023

MP401107094Э

FOR QUESTIONS OR
SERVICE, PLEASE CA
1-800-MET-5000
(1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re <u>173 456 789 PR</u>          JANE POLOWNER
    Policy Number                 Name of Insured

Dear Policyowner

We are writing to let you know that, as a result of your recent change in the frequency of your premium payments, the premiums for this policy will no longer be paid by the Accelerated Payment (AP) arrangement. In order for this payment arrangement to remain in effect, premiums must be paid annually.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making out-of-pocket premium payments again.

You will be billed for your next premium due MAR 31, 1995.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Jeannie Eidschun*

CASH/LOAN/DIVIDEND/MATURITIES
METLIFE CUSTOMER SERVICE CENTER - TULSA
JAN 09, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-3E

**MetLife**

4800 LAKEWOOD DRIVE SUITE #1
WACO TX 76710

Questions ?
Contact your MetLife
Representative:
☎ 817-776-2520
Sales Office / Agency:
D41/023

MP401107094A

FOR QUESTIONS OR
SERVICE, PLEASE CALL
    1-800-MET-5000
    (1-800-638-5000)
OR THE TELEPHONE
NUMBER ABOVE.

JOHN Q POLOWNER
1 MAIN STREET
HOMETOWN NY

Re  183 456 789 PR                JANE POLOWNER
    _____              _____
       Policy Number                   Name of Insured

Dear Policyowner

We are writing to let you know that, as a result of your recent change in the frequency of your premium payments, the premiums for this policy will no longer be paid by the Accelerated Payment (AP) arrangement. In order for this payment arrangement to remain in effect, premiums must be paid annually.

Therefore, in order to keep your policy in full benefit, it is necessary for you to begin making out-of-pocket premium payments again.

Your next premium is due MAR 31, 1995.

If you have questions about the AP arrangement or your insurance coverage in general, please call your MetLife Representative at the telephone number listed above.

Sincerely

*Tim Thomas*

POLICY DISBURSEMENTS & ADMINISTRATION
METLIFE CUSTOMER SERVICE CENTER - WARWICK
JAN 09, 1995

Thank you
for
insuring
with
MetLife.

**CONFIDENTIAL**

AP-3P

CONFIDENTIAL:   NEITHER THIS DOCUMENT·NOR THE INFORMATION CONTAINED HEREON IS TO
BE COPIED OR USED FOR ANY PURPOSE OTHER THAN METROPOLITAN BUSINESS.

**E11.80   REPORTS SENT LETTERS ON ACCELERATED PAYMENT ARRANGEMENT POLICIES TO
POLICYOWNERS LISTED BELOW**

| POLICY NUMBER/SUFF | POLICYOWNER | VERSION/DESCRIPTION | DATE SENT |
|---|---|---|---|
| 213 456 789  PR | JOHN Q POLOWNER | C  WELCOME AP PUAR | 01/09/95 |
| 203 456 789  PR | JOHN Q POLOWNER | B  WLCME AP DV/PUAR | 01/09/95 |
| 193 456 789  PR | JOHN Q POLOWNER | A  WELCOME AP DIV | 01/09/95 |
| 183 456 789  PR | JOHN Q POLOWNER | 3F MODE CHG-SP ACT | 01/09/95 |
| 173 456 789  PR | JOHN Q POLOWNER | 3E MODE CHG-SEMI | 01/09/95 |
| 163 456 789  PR | JOHN Q POLOWNER | 3D OPT CHG CASH | 01/09/95 |
| 153 456 789  PR | JOHN Q POLOWNER | 3C OPT CHG-PRM RED | 01/09/95 |
| 143 456 789  PR | JOHN Q POLOWNER | 3B CANC-REQ BY PH | 01/09/95 |
| 133 456 789  PR | JOHN Q POLOWNER | 3A POLICY CHANGE | 01/09/95 |

DISTRICT:          AGENT:

REPORT DATE: 01/09/95

401107D945

**CONFIDENTIAL**

## MetLife® Tulsa — Customer Services & Communications



### OUTSTANDING SERVICE
*Through Quality Service Skills*

We're Building Our Future On It

**To**    All Training, Resource & Second Tier CSRs

**Re**    "AP" (Accelerated Payment) Cases
      UL Policies With Inadequate Target Premiums

There has been a lot of dialogue about the impact of the changing dividend scale on "AP" cases. As you know, we get lots of complaints because policies are not eligible on the originally anticipated date.

The one issue we have not addressed is the fact that there are 83,000 policies that WERE eligible and placed on "AP," but because dividend scales changed AFTER they were on AP, they would now not be eligible. At some point in the future, premiums may again be required. It is estimated that 25% (20,750 policies) fall into this category.

One area that has not been discussed to any extent is that we have a very similar situation with UL policies. "Target" premiums were established on the basis of anticipated earnings and interest rates. However, now because of the changing economy, these earnings will not be realize. Consequently - AT SOME POINT IN THE FUTURE - the COI will exceed the amount available in the Accumulation Fund if only the "Target Premium" is being paid.

The attached material is some of what has come up because of the Accelerated Payment Natural Work Team. I didn't it was appropriate for everyone, but I at least wanted you to be aware that these issues are finally receiving attention at the Senior Management level.

April 28, 1994

**CONFIDENTIAL**

ATTACHMENT
4

To:        Frank Lynch
           Senior Vice-President                          **CONFIDENTIAL**
           PI Customer Services
           NYHO, Area - 5H

From:      Thomas M. La Badia
           Vice-President
           PI Customer Services
           Bridgewater, Area - 2E

Re:        *Request From Mr. Tweedie Concerning UL Customers*
           *With Target Premiums Inadequate To Carry Policies*

I have had several quick meetings on this subject and the related Traditional Business issues (e.g. Vanishing Premium/APP, Impact of Reduced Dividend Scales on Purchase Assumptions, etc.).

The most proper and comprehensive method of providing our customers with the impact of changes to dividend scales, interest rates and cost of insurance charges would require several major long term initiatives included in which are the following:

1.  Capture at Issue all information related to how a case was sold including purchase assumptions related to expected cash flow in and out of the contract. Retain and react to these assumptions whenever disturbed by changes in our inforce pricing (e.g. Dividend Scale Change, UL Interest Rate, Cost of Insurance Rate, etc.). Relate these changes to the policyholder life cycle goals such as College Funding, Pension Maximization, etc.

2.  Communicating changes to the policyholder along with possible alternative actions would require the restoration of a main frame inforce illustration system which could be generated by the Administrative Systems loading of necessary data to reflect changes and alternatives. This is presently only available via a Sales Representative entering necessary data and "what if" alternatives into a PC based inforce illustration system.

Both of the above initiatives are being addressed by people involved in major compliance activity, however, preliminary estimates indicate that a very lengthy and expensive effort will be required.

1

As an alternative, I have asked my units to quickly devise a short term strategy based upon data and information presently available.  We expect to have several proposals very shortly.

Among the alternatives being addressed are:

   1.  A redesigned bill having 3 alternatives which minimize the risk of unexpected premium being required for those already on APP.

   2.  More complete and direct notification to UL policyholders who may not be aware that their policies may not be supported by the planned, target premium and/or present cash flow into the accumulation fund.

   3.  Etc.

When the proposals are completed, we will forward them to you as well as to the various units, task forces and committees that are addressing the longer term strategy.

*Thomas L. La Badia*

Thomas M. La Badia

March 30, 1994

cc: Tweedie, Miller, Kelly, Doby, Stadler, Kopolovics, Delaney, Loquasto, Ruggieri, Barnewold

**CONFIDENTIAL**

Mr. Greg Doby
Vice-President


Re    Accelerated Payment Plan -- Alternatives


Greg, Bill Barnewold called and provided me with his estimate of
the cost and timeframe for implementing the APP alternatives
outlined in the attached memorandum.   In his estimation, the
changes could be made in   two-three months for a cost of
approximately $45,000.   However, If these changes are implemented
as part of the Fall 1994 portfolio changes, the cost would be about
$10,000 less.   Please let me know how we should proceed.



Willie Taylor
Wilhelmenia J. Taylor
Product Manager
Life Product Planning
Bridgewater, NJ, Ext. 1250


April 14, 1994


Attachment


cc:  Barnewold, DiPiazza, LaBadia, McLoughlin, Rigby



CONFIDENTIAL

MP401070950

Mr. Greg Doby
Vice-President


Re    Accelerated Payment Plan -- Payment Options



This memo supplements our recent meeting with Tom LaBadia,
Mike DiPiazza, Bill Barnewold and Pat McLoughlin.  The goal of
this meeting was to develop a quick strategy for improving our
communications with policyholders already on APP.

As you know, the current situation is as follows:

Situation #1:

When a policyholder initially requests APP, a "full
eligibility test" is performed.  This test determines if the
annual premium can be paid for the remaining "life of the
policy."  If the policy fails this test, the policyholder
is told that the policy cannot go on APP and the the full
annual premium must be paid out-of-pocket until such time as
the policy does become eligible.  This is true even when
there is a substantial dividend balance to pay the annual
premium for a number of years, e.g. 15 years.

Situation #2:

When a policy passes the initial eligibility test, premiums
are paid each year through the APP arrangement provided the
policy passes a "sufficiency test."  We refer to this test
as a "sufficiency test" because it simply verify that the
dividend/PUAR balance is "sufficient" to pay the annual
premium due that year.  It does not check to see if this can
be done for the remaining life of the policy.  When a policy
fails this sufficiency test, it is taken off the APP
arrangement and the policyholder is sent a regular bill for
payment of the premium.

Our goal is to reduce negative feelings on the part of our
customers regarding this payment arrangement by offering them
other payment alternatives.  The specific group we intended to
initially target are the policyholders described in situation #2.
However, I believe we should take the same approach for the
policyholders described in situation #1.

**CONFIDENTIAL**

-2-

I have attached a copy of Mike Rigby's January 11, 1994
memorandum wherein Company records indicate nearly 83,000
policies are currently on APP as of year-end 1993.  Of those, 25%
do not have sufficient dividends/dividend balances to remain on
APP for the "life of the contract."  It is also important to note
that these figures do not include policies with a Paid-Up
Additions Rider (4,551).  However, Mike conducted a sampling of
25 such policies and 21 of the PUAR policies or 84%, failed the
eligibility test.

As discussed at the meeting, for each policy already on APP, a
"full" eligibility test would be conducted as part of the
anniversary processing.  We agreed on the following approach for
polices that fail the eligibility test.

Offer the policyholder the following options:

#1.  MetLife pays the full annual premium from dividends
     and/or PUAR for as many years as the balance(s) is
     sufficient.  Include the calendar year in which the
     dividend/PUAR balance(s) will not be sufficient to pay
     the full premium.  It is important to note that this
     date may change based on dividend scale decreases or
     increases.

     We should, also let them know that thereafter, we can
     or will use the annual dividend credited each year
     toward the payment of the premium.

From what I have seen of policies that fail the eligibility test,
the projected annual dividend for the "APP failure year," is
substantial and is often only a year or two prior to the year in
which the annual dividend would exceed the premium, i.e.,
crossover year.  For example:

            Annual Premium                 $7315
            Annual Div."APP Failure Yr."   $7055  (18th Year)
            Crossover Year Dividend        $7520  (19th Year)

#2.  policyholder pays a partial premium -- the difference
     between the annual dividend and the annual premium.

     Although this payment option mirrors the Premium
     Reduction Dividend option on the surface, the existing
     dividend option (AI or DWI) would not be changed.

#3.  policyholder pays the full annual premium out of pocket

CONFIDENTIAL

M2401107095Z

-3-

An additional option could be offered to clients whose policies fail the eligibility test, but includes the Paid-Up Additions Rider (PUAR):

> #4.  policyholder makes a lump sum payment to the PUAR that would allow the policy to go on APP effective with that anniversary

The anniversary eligibility test will be based on the dividend scale then in effect.  Therefore, any increase or decrease in our dividend scale may:

> •change the policy year provided in payment option #1.

> •cause a policyholder who re-established eligibility when they originally elected payment option 4 (lump sum PUAR payment) to again become ineligible because of the dividend scale reduction.

Options #1, #2 and #3 do not attempt to re-establish eligibility but instead offer alternatives to eligibility.  Each year the policyholder will be offered all three options and provided with the most current information in order to make an informed decision.

When presenting these payment options to policyholders, we should also tell them the effect each option will have on their dividend/PUAR values.  Based on the amount of data that would be included on the APP Anniversary Statement, I believe we should change the size of the existing form to an 8 1/2" X 11" form with an additional perforated return stub.  See sample attached.

The anniversary statement should include wording along the following lines :

> "The premiums for this policy are being paid through our Accelerated Payment Plan.  Under this payment plan, the annual premium is paid by withdrawing the premium amount from the [policy's dividend balance], as long as the balance is sufficient.

CONFIDENTIAL

> Based on our current dividend scale, we have determined that the full annual premium can be paid until mo/day/year.  As a result, we offer you the following payment options:

> Option #1                    )
> Option #2                    )  Specific wording for each
> Option #3                    )  option will be developed
> Option #4 (PUAR cases only)  )

[ ] varies based on the APP Type selected by policyholder.

MP401107095 3

-4-

The following is a list of the four APP types available:

AP Type 1                 Withdraw PUAR values only to pay annual
                          premiums

AP Types 2 & 3            Withdraw dividends and PUAR
                          values to pay annual premium

                          Type 2 = withdraw PUAR first,
                          followed by dividends

                          Type 3 = withdraw dividends first,
                          followed by PUAR

AP Type 4                 Withdraw only dividends to pay premiums
(AI or DWI)

If you have any questions, please give me a call on Ext. 1250 in
Bridgewater.


Wilhelmenia J. Taylor
Product Manager
Life Product Planning
Bridgewater, NJ

April 4, 1994

cc:  B. Bernevold, M. DiPiazza, T. LaBadia
     P. McLoughlin, M. Rigby

CONFIDENTIAL

## FUTURE STATUS OF POLICIES ON THE ACCELERATED PAYMENT PLAN

A policy level projection of policies on the accelerated payment plan (APP) as of 11/93 was completed based on year end 1993 information. This analysis involved 82,778 policies and showed that 25% of the policies currently on APP have insufficient dividends and dividend balances to remain on APP. Attached is a breakdown by year of the dates of failure of these policies.

In my analysis of policies on APP I have excluded 4,551 policies with a paid up additions rider (PUAR). I will continue to work on these as time permits. A random sample of 25 policies with PUAR were tested using the online CWS APP quote system and 21 policies failed to sustain APP.

The following assumptions should be noted:

1) The 1994 dividend scale will continue unaltered.

2) Policies with both AI and DWI balances will use both dividend balances to remain on APP.

3) Policy holders will not withdraw any dividend balances other than for the APP arrangement.

4) No policyholder deaths,disabilities or cash surrenders.

In addition, some of the policies on APP as of 11/93 had become non-premium paying by 12/31/93.  Some had their cash-value paid while 180 policies were on extended term implying they had reached there anniversary after 11/93 and had insufficient dividends and dividend balances to pay their 1993 premium.

*M K R*

Michael K. Rigby
Actuarial Associate

1/11/94

CONFIDENTIAL

## NUMBER OF POLICIES BY YEAR
### FALLING OFF APP STATUS
(Excludes policies with PUAR)

| YEAR | POLICIES |
|------|----------|
| 1994 | 517 |
| 1995 | 878 |
| 1996 | 1,595 |
| 1997 | 2,153 |
| 1998 | 2,484 |
| 1999 | 2,575 |
| 2000 | 2,390 |
| 2001 | 2,064 |
| 2002 | 1,282 |
| 2003 | 962 |
| 2004 | 807 |
| 2005 | 735 |
| 2006 | 627 |
| 2007 | 477 |
| 2008 | 359 |
| 2009 | 279 |
| 2010 | 270 |
| 2011 | 160 |
| 2012 | 111 |
| 2013 | 60 |
| 2014 | 68 |
| 2015 | 23 |
| 2016 | 28 |
| 2017 | 16 |
| 2018 | 5 |
| **TOTAL** | 20,925 |

CONFIDENTIAL

APR 21 '94  8:04  FROM METLIFE          TO 82529047          PAGE.012

MetLife

METROPOLITAN LIFE INSURANCE CO
41 PERIMETER CTR E SU 620
ATLANTA GA 30346

404-399-9260
3H6/671

**Payment Reminder for The Enricher.**
**MetLife's Paid-Up Additions Rider**

March 28, 1994

JOHN POLICYHOLDER
123 ANY STREET
APT A
ANYWHERE USA

123456789 PR

March 28, 1993

ISSUED NO PMTS

JOHN POLICYHOLDER

$250,000.

WHOLE LIFE WITH THE ENRICHER

When you purchased the life insurance policy indicated above, you also chose to add The Enricher – our Paid-Up Additions Rider – to your policy. With this valuable rider, you can accumulate additional cash value, earn attractive dividends and increase your insurance protection.

Our records indicate that we have not yet received a payment for The Enricher.

According to the terms of this rider, in order to retain the right to purchase additional insurance, a payment must be made before the first anniversary date of the policy. If you do not make a payment by the anniversary date listed above, your right to make future payments will end. However, you will continue to receive basic protection under the terms of your life insurance policy.

If you wish to make a payment to The Enricher, please indicate the amount on the bottom portion of this notice and return it with your payment in the enclosed envelope.

If you have any questions, please call your MetLife Representative at the telephone number listed above.

At MetLife, we value your business and look forward to providing you with quality service – now and in the years ahead.

MetLife

**Enricher® Payment**

3H6/671

METROPOLITAN LIFE INSURANCE CO
P O BOX 435
WARWICK RI 02887-0435

123456789 PR

JOHN POLICYHOLDER

JOHN POLICYHOLDER
123 ANY STREET
APT A
ANYWHERE USA

CONFIDENTIAL

To:   Frank Lynch
      Senior Vice President
      PI Customer Services
      NYHO
      Area - 5H

Re:   *Referral of Accelerated Payment Plan as "Paid Up"*

In reference to your note and Jim Rayl's 12\23 memorandum (copies attached). I have been working with Pam Duffy and Mike Harwood on this issue and the related "Reappearing Premiums" that are occurring because of lower dividend scales, higher cost of insurance charges, and lower UL interest rates.

Pam Duffy responded to Jim Rayl last month on his proposal to retest all policies on APP and notify all those who no longer pass the eligibility test. In lieu of that, marketing is creating an education program with material to be sent to the field and policyholders on APP explaining how it works and why it is important to periodically recheck eligibility through their field office.

sincerely,

*Tom La Badia*

Thomas M. La Badia
Vice President                          **CONFIDENTIAL**
P.I. Customer Services
Bridgewater
Area - 2E

January 12, 1993

cc:   Pam Duffy, Barbara Gardner, Jim Rayl

MP401107 0957



**GET MET. IT PAYS.**

© 1958 United Feature Syndicate, Inc.

Memorandum from . . . FRANCIS P. LYNCH

To: Tom La Badia

With whom in marketing
are you working?
Frank.
1/14.

MP401107095B

CONFIDENTIAL

**CONFIDENTIAL**

Thomas La Badia
Vice-President
P. I. Customer Services
Bridgewater  Area 2-E

RE:  Reappearing UL Premiums – Accelerated Payment Cases

We have reviewed Jim Rayl's November 7, 1992 memorandum and your memorandum dated November 11, 1992.

We agree with all the points made in Jim's memorandum.

Ongoing eligibility testing for policies currently operating on Accelerated Payment has become a necessity because of current economic conditions.  Even if we undergo an economic recovery which will allow us to increase our dividend scales in future years, the lowering of the 1992 and 1993 dividend scales could impact policies currently operating on AP, after the recovery has taken place.

Our customers will be more accepting of the problem if they are notified while lower returns on investments are a reality.  If we wait until after economic recovery to tell them that a policy is no longer eligible for AP because of something that happened in the past, we could create more ill-will.  We do not want to unnecessarily alarm our customers.  However, we feel we owe it to our customers to notify them as soon as we become aware of a problem.

We strongly agree that some type of letter or brochure that fully explains AP should be sent to a customer as soon as his/her policy is placed on AP.  Too many policyholders interpret AP as making their policy "fully paid up".  So, when they are told their policy is no longer eligible for AP due to lowered dividend scales or dividend withdrawals, they almost immediately start to complain or accuse the sales representative of lying.

Tom, we do not feel Jim is crying "wolf".  We have had to address many of the situations he describes.  We feel a proactive approach is the best approach.

Kathy Schoos
Director
Customer Services & Communications
MetLife Customer Service Center – Warwick

December 17, 1992

cc:  J. Abela, J. Rayl, B. Glittone, P. Knott

XP401107096O

Pamela J. Duffy
Vice-President

Re:  Reappearing UL Premiums and APP Cases

Tom LaBadia received the attached memo from Jim Rayl of the Tulsa Customer Service
Center regarding APP situations.  The memo provides additional information with
regards to Jim's previous statements that policyholders believe that a policy is "paid-up"
when the APP arrangement is operative and may be unaware that premiums are being
paid by dividends and or PUAR value.

This information may be useful to you in preparing your communications on how APP
really works.

Richard W. Schramm, FLMI
Manager
Personal Insurance Customer Services
Bridgewater Area (3E)   Ext.  2316
December 11, 1992

cc:  (Cover memo only)  B. Gardner (Tulsa), T. LaBadia, J. Rayl (Tulsa)

CONFIDENTIAL

Thomas LaBadia
Vice-President
Policy Administration & Customer Services
P.I. Customer Services
Bridgewater – AREA 2-E

Re   "Reappearing UL Premiums" - Accelerated Payment Cases

Tom, the article which follows appeared in the *National Underwriter* and it dealt with the idea of "reappearing premiums" on UL policies. Of equal or perhaps even greater concern to me are the reappearing premiums we are likely to encounter on existing "AP" cases. I raised this issue with Paul Garavaglia and John Hodel during their recent visit so perhaps it is being addressed. But I had not heard anything and this article prompted me to think about it again.

As I'm sure you're aware, as a result of the change in dividend scale this year we had cases where eligibility quotes were done by our sales offices at year end 1992 which indicated policies were eligible. However, when they came into us in early 1993 after our electronic systems had been modified for the new scale, these cases became ineligible and could not be placed on AP. This change in dividend scale has undoubtedly impacted the eligibility status of many of the policies currently on AP. I'm sure it goes beyond those that were placed on AP last year but would have been declared ineligible this year. As I understand it, once a policy is placed on AP, there is no ongoing "eligibility testing."

In some cases, it may not surface for several years that the dividends have become inadequate to fund the policy premiums. The point I tried to make to John and Paul was that it would be a lot easier to explain this situation to our policyholders now than it might be in the future. In otherwords, the national economy and the dramatic decline in interest (and earnings) rates is very obvious. If we notify these policyholders now that they may well have a problem in the future, they should be able to recognize what is happening in our economy. If, on the other hand, we wait until their policies run out of dividend values, it might be at a time when the economy and interest rates are much higher. And it would be more difficult to explain and harder for the policyholder to accept.

We are currently dealing with many complaints where policies were sold on the basis that they would be eligible for AP in "X" years. "X" years is now here and, because of the dividend scale change, eligibility has been pushed into the future. In spite of the "disclaimer" on the illustration about dividend projections, the policyholders get pretty upset and want to claim "misrepresentation." But, we have found that if you can get them to calm down and "look around" at what has happened, they will usually accept it. This would not be the case if the changes that have taken place in the economy weren't so obvious.

**CONFIDENTIAL**

NOTE: THE CURRENT PROBLEM IS ALSO COMPOUNDED BY THE WAY THESE POLICIES WERE SOLD. IN THE VAST MAJORITY OF CASES WE SEE, "AP" WAS SOLD AND EXPLAINED BY THE REPRESENTATIVE THAT THE POLICY WOULD BECOME "PAID-UP" IN "X" YEARS. WHILE THIS MAY HAVE BEEN THE EASIEST WAY TO EXPLAIN THE CONCEPT TO THE POLICYHOLDER, IT ONLY COMPLICATES OUR EXPLANATION OF CURRENT INELIGIBILITY. WE NEED TO PROVIDE POLICYHOLDERS WITH A BETTER UNDERSTANDING AND EXPLANATION OF "AP" AS WELL AS THE POTENTIAL IMPACT OF ECONOMIC CONDITIONS. WE WOULD BE MUCH BETTER OFF TO EXPLAIN THIS AT THE TIME THE POLICY IS PLACED ON "AP" THAN AT SOME POINT IN THE FUTURE WHEN DIVIDENDS BECOME INADEQUATE TO COVER PREMIUMS.

Tom, my recommendation would be to run new eligibility tests on all cases *currently on AP*. If they fail the eligibility testing or perhaps are even close to failing, we should notify those policyholders NOW that they may run into a problem in the future. I think our explanation will be much more readily accepted now. On the other hand, if any significant number of policyholders are so affected in the future, it could do great damage to our image of financial stability and all the great strides we have made in becoming a customer oriented Company. For cases where eligibility is inadequate or "close," we could recommend that the policyholder pay one *(or more)* additional year's premium.

I would also recommend a couple other steps. One, we may wish to consider "tightening" up our eligibility testing. I have heard that we may be going to have another change in dividend scale. If this occurs, we will have another whole block of policies that could potentially have the same problem.

In addition, I think some type of letter or a little brochure should be prepared and sent to policyholders when they place their policies on AP. It should explain the AP concept in plain english as well as where dividends come from and why they are impacted by the general economy. In doing so, this would help to reinforce the initial disclaimer on dividend projections.

We cannot afford to leave policyholders with the impression that AP is a *"done deal"*, or that their policies are *"paid-up"* and no future premiums will ever be required unless we can be absolutely, positively sure of it *(assuming the policyholder leaves the dividend balance undisturbed)*. This is the impression many of them have because of the way the policies were sold or explained.

Tom, perhaps I'm crying "wolf" a little too soon, but from where I'm sitting and what I see, I think this could be a real problem unless we take some proactive measures to deal with it.

J. L. Rayl
Director
Customer Services & Communications
MetLife Customer Service Center - Tulsa

November 7, 1992

cc   Barbara Gardner

**CONFIDENTIAL**

# Companies Are Tackling 'Reappearing' Premiums

**By Linda Koco**

"It's not a pretty story, but it's a real story, and one we're going to hear about more in the future," said Ben Hannum, a partner of Safe Harbor Financial brokerage in Philadelphia.

He was referring to the arrival of so-called "reappearing" premiums on universal life policies that were written on a vanish- or single-premium basis during the 1980s.

News reports have recently surfaced about companies notifying owners of such policies that they'll have to pay additional premiums—sometimes whopping ones—just to keep their policies in force. The reason most often cited is lower-than-projected investment performance, stemming from the nation's falling interest rate environment, and sometimes complicated by policy loans, skipped premiums, or failure to pay dump-in premiums as intended.

Mr. Hannum tells of one man with a $50,000 single premium UL who was upset to learn that "he will run out of policy by the time he is 67 years old, even if he lowers the face amount to $25,000." To keep the policy in force, the man had to deposit more money.

"Four or five years ago, I don't think agents or companies ever envisioned this would happen," he said.

The extent to which it is happening is a matter of dispute. Company executives contacted by *National Underwriter* indicated that most of their companies' existing UL policies have "no problems." This may be because their companies wrote very little vanish-premium business in the 1980s, or because they used conservative interest assumptions, the executives said.

Some also questioned the implications which UL critics draw from reappearing premium stories. The premiums may have come back due to heavy policy loan activity rather than lower-than-expected investment performance, they said.

Even so, the executives indicated that if today's low interest rate environment continues much longer, there will be more reappearing—and more increasing—UL premiums, and policy lapses may follow as angry and financially-strapped policyholders cancel out. Because of this, a number of companies are taking steps to "preempt" the problem.

Penn Mutual Life, for instance, is piloting a program that will detect existing contracts with declining cash values. "We will send a letter to the client and agent that will say what might happen if there is no change in the future," said Tom Harr, assistant vice president and product manager of the Philadel-

*Cont'd on Page 18*

**CONFIDENTIAL**

CONFIDENTIAL

LIFE & HEALTH/FINANCIAL SERVICES

# Cos. Go Proactive On Reappearing UL Premiums

Cont'd from Page 15.

phic insurer. Included will be recommunications about "what can be done to stop the decline, and maybe even create growth."

This is like the company's lapse notification procedures, he added, "only now, we'll do it sooner."

The pilot is in addition to the company's existing practice of giving rate projections, on both a current and guaranteed basis. In the annual statement now to policyholders and quotes, example with a footnote showing when the policy will lapse on both a guaranteed and current basis.

Another proactive program comes from New England Mutual Life, Boston. The strategy, says Michael Ridge, assistant officer, traditional product management, is to suggest that certain customers "delay the vanish point" for two to three years. This way, the customer will pay an additional premium now and avoid having a larger premium at a point later on. To do this, the company would let agents a list of targeted clients, the agents then work with the cli-

ents on what to do.

New England is also focusing on field force education. "Through seminars and classroom training, we talk about how vanishing works, it breaks down, insurer delays which program works," said Mr. Ridge. This helps field agent communicate in discussing the subject with clients, he said.

Kemper Life Cos., Long Grove, Ill., is sending letters to clients. "We explain that interest rates are down, and we remind customers that the vanish is based on interest rates," said Robert A. Miller, director of marketing services. When the company started the program two years ago, it added, "we did have some lapses but that has flattened out now."

Agents are also instrumental in keeping business on the books, Mr. Miller added, explaining that their personnel objective is to help the agents understand a position to help clients understand, said. Also, he said the company about potential reappearing premiums, provides the agent with good opportunity to work with clients on an opportunity to work with clients on "actively management" of their UL.

Other companies are currently looking into proactive programs for example, Alexander Hamilton Life, Farmington Hills, Mich., is looking at ways to notify policyholders, in a positive way, about the impact of lower interest rates on policy performance, said Joe Reutin, assistant vice president, product planning. It's also considering encouraging agents to undertake annual or semi-annual policy reviews.

Meanwhile, ITT Life, Minneapolis, is considering developing a program that analyzes policies and communicates with clients about options, in terms of potential reappearing premiums.

"It's not only UL policies that are vulnerable, stressed Mr. Ridge. It can happen to any interest sensitive policy written on a vanish basis, including dividend-paying whole life.

Some people view the reappearing premium more as a UL problem than a WL problem, he suggested, because UL was initially more sensitive to falling interest rates, due to its heavy reliance on new money rates—which, in the 1980s, were

very high. (Today, the interest sensitivity of the two are more comparable, he added, because UL are invested in longer-term obligations, as are WLs.)

Another reason for the UL focus: "The premium that comes back on a vanished UL is often larger than the original premium, and it's on a contract that has no underlying cash value," said Mr. Miller.

The policy essentially becomes an annual renewable term plan with high premiums, "added Mr. Reutin.

By contrast, said Mr. Ridge, the most an ordinary life policyholder will be asked to pay is the actual premium, if there are no outstanding policy loans. (But they may need to pay the premium for several years.)

The problem can be compounded, for both UL and WL contracts, "if the interest sensitivity of contracts was not explained to the clients very well in the first place," said Mr. Barr.

"If companies and agents do nothing and wait for the policy lapse notices that the nothing for them," warned Mr. Miller, "the bad faith/lawsuit potential will be much larger." ◊

XPR 010101964