Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 169

1    R. Wycoff - by Mr. Lesko
2    of Exhibit 3?
3        A.    113, right here.
4        Q.    113. Look at the bottom, above your
5    signature. Do you see that paragraph of typed
6    text? There's three paragraphs, actually.
7        A.    This whole paragraph here?
8        Q.    Yes. Look at the first sentence
9    there. Do you see that? It says, "Those who
10   sign below declare, to the best of their
11   knowledge and belief, that the statements in
12   this application are complete and true"?
13       Does that refresh your recollection
14   as to whether or not you certified for
15   Prudential that the information contained in
16   this application is true?
17       A.    I may have told him I did smoke, but
18   I'm not smoking now.
19       Q.    Sorry. That's not the question. I
20   didn't ask you a question about that.
21       A.    I know.
22       MR. BARTHOLOMAEI: He asked you
23   if it refreshed your recollection. That was
24   the question. If it does, say it does. If it
25   doesn't, say it doesn't.

Page 170

1    R. Wycoff - by Mr. Lesko
2        A.    It doesn't.
3        Q.    Okay. Let's go back to your
4    meetings or your meeting -- we don't know now
5    whether it's more than one -- with Mr. Molchan
6    concerning the policy issued by MetLife in
7    1991.
8        Do you believe that anything that
9    Mr. Molchan told you during your meetings,
10   concerning this policy, do you believe anything
11   concerning this -- strike that.
12       Do you believe that Mr. Molchan told
13   you anything about this policy, the 1991
14   policy, that was untrue?
15       A.    He stated the fact that at the end
16   of the period of time that he was showing me on
17   the form, that the policy -- the premiums would
18   cease. You wouldn't have to pay any more
19   premiums at the end of that period of time.
20       MR. LESKO: Let's mark this as
21   the next exhibit.
22       (Wycoff Exhibit No. 7 was
23   marked for identification.)
24       MR. LESKO: And this one after
25   that.

Page 171

1    R. Wycoff - by Mr. Lesko
2        (Wycoff Exhibit No. 8 was
3    marked for identification.)
4        Q.    Mr. Wycoff, I am going to hand you
5    what's been marked for identification purposes
6    as Exhibit 7. It is a document bearing Bates
7    No. RGW 000004, a one-page document, one-page
8    document.
9        Can you tell me, is that the form --
10   strike that. Can you tell me if that's the
11   sample that you referred to earlier that
12   Mr. Molchan showed you during your meeting with
13   him?
14       A.    I don't know. I have no idea.
15       Q.    Is that the form that you mentioned
16   just a moment ago that indicates you would only
17   pay premiums for a certain amount of time?
18       A.    I have no idea.
19       Q.    Okay. How long did Mr. Molchan tell
20   you you would need to pay premiums before you
21   wouldn't have to pay premiums anymore?
22       A.    He circled me the year, I believe.
23       Q.    He circled the year?
24       A.    I thought he circled it or marked it
25   in some how, shape or form. He didn't really

Page 172

1    R. Wycoff - by Mr. Lesko
2    show me the form. He had it before him.
3        I mean, he had the form like I have
4    here. I did not look at the form.
5        Q.    Do you recall -- sorry. Were you
6    done with your answer?
7        A.    I'm done.
8        Q.    Do you recall how long it was that
9    he -- well, let me back up. So I understand
10   you correctly, he didn't show you a form
11   indicating how long you would have to pay
12   premiums; is that right?
13       A.    Excuse me. In my terminology, it
14   was a form.
15       Q.    A piece of paper with information?
16       A.    With figures on it, right. He said,
17   "I will use this as a sample to show you."
18       Q.    Did he show you that sample?
19       A.    He didn't show it to me. He was
20   explaining it to me. I was sitting on one side
21   of the table. He was sitting on the other
22   side.
23       Q.    He told you what that sample said?
24       A.    In regards to the -- what?
25   Termination of it?

43 (Pages 169 to 172)

Powers, Garrison & Hughes

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 173

1    R. Wycoff - by Mr. Lesko
2    Q.   Termination of premiums?
3    A.   Right.
4    Q.   Did he leave that sample with you?
5    A.   I believe he did.
6    Q.   Is that the sample that he left with
7    you, that Exhibit 7?
8    A.   I can't honestly say.  I don't know.
9    I honestly can't say.
10   Q.   Okay.  And you don't recall the
11   number of years he told you you would have to
12   pay; is that right?  Premiums, that is?
13   A.   No.  He verbally stated that.
14   Q.   He told you how much?
15   A.   Right.
16   Q.   But you don't recall how much it was
17   he told you; is that right?
18   A.   Did I say that?
19   Q.   I think you did.  But I want to
20   clarify if that's what you said.  Regardless of
21   what you said, tell me now if it's true or not.
22   A.   The way I understand it, to be 14
23   years.  At the end of 14 years.
24   Q.   Is that what Mr. Molchan told you?
25   A.   That's correct.

Page 174

1    R. Wycoff - by Mr. Lesko
2    Q.   So you do recall?
3    A.   That's correct.
4    Q.   Let me show you what has been marked
5    as Exhibit 8.  That's another document similar
6    to Exhibit 7, at least in layout.  It's got the
7    Bates No. at the bottom RGW 000005.
8        MR. LESKO:  For the record, I
9    just want to note for a future reader that I
10   think there is a Bates range in here at the
11   lower end, you know, one through seven or eight
12   or ten which was produced twice where those
13   Bates ranges were used twice for different
14   documents in the course of discovery in this
15   litigation.  So not to be confused if somebody
16   is looking back at the record.
17   Q.   Exhibit 8 is -- tell me what that
18   is.
19   A.   Exhibit 8?  It's a form.  What I
20   call a form, anyhow.
21   Q.   Have you seen this form before?
22   A.   By Norman Molchan.
23   Q.   Have you seen this form before?
24   A.   I don't recognize it.
25   Q.   Was this given to you by

Page 175

1    R. Wycoff - by Mr. Lesko
2    Mr. Molchan, if you know?
3    A.   If it was in with my policies and
4    the information that I turned in to
5    Metropolitan, it was there then.
6    Q.   Okay.
7        MR. LESKO:  Let's have that
8    marked.
9        (Wycoff Exhibit No. 9 was
10   marked for identification.)
11   Q.   Mr. Wycoff, I just want to hand you
12   what's been marked as Exhibit 9 for
13   identification purposes.
14       For brevity of the record, this is a
15   Complaint in Civil Action and it's got a
16   caption, Robert G. Wycoff, the Metropolitan
17   Life Insurance Company and Kenneth F.
18   Kaczmarek.
19       Sir, have you seen this document
20   before today?
21       MR. BARTHOLOMAEI:  Just leave
22   it on (indicating).
23   A.   (Reviewing document.)  I believe I
24   have, yes.
25   Q.   You have?  Okay.  Have you read the

Page 176

1    R. Wycoff - by Mr. Lesko
2    entire document before today?
3    A.   Are you asking me line for line?
4    Q.   Yes.  Have you read the entire
5    document before today?
6    A.   (Reviewing document.)
7        MR. BARTHOLOMAEI:  Let me see
8    it.
9    Q.   Mr. Wycoff, I don't want you to read
10   the whole thing now because it's far too long
11   and will take too much time.
12   A.   I'm not going to read it.  Just see
13   if anything jumps out at me.
14       MR. BARTHOLOMAEI:  If you don't
15   want him to read it, you can't ask him that
16   question.
17       MR. LESKO:  I want him to
18   answer that question.
19       MR. BARTHOLOMAEI:  Then he's
20   going to have to look through it.
21       MR. LESKO:  I am asking him to
22   answer that question, if he can.  If he can't
23   answer the question without reading the entire
24   thing, then that's his answer.  I want to know
25   if he recalls reading that document before

44 (Pages 173 to 176)

Powers, Garrison & Hughes

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 177

```
 1          R. Wycoff - by Mr. Lesko
 2    today.
 3              MR. BARTHOLOMAEI: Mr. Wycoff,
 4    he doesn't want you to look through it.  Can
 5    you answer the question, without looking
 6    through it, as to whether you've read this
 7    whole document or not?
 8       A.   No.
 9       Q.   You cannot answer the question?
10    What I said is I don't want you to read the
11    entire thing.
12              MR. BARTHOLOMAEI: What parts
13    do you want him to read?
14       Q.   If you need to flip through it to
15    see if you recognize the pages, that's fine.  I
16    don't want you to read the whole thing.  You
17    know what?  I will tell you what.  Read the
18    whole thing.  Then I will ask you a question.
19    If you want to read the whole thing, you can't
20    answer the question without reading the whole
21    thing, go ahead.
22       A.   I got time.  (Reviewing document.)
23       Q.   While you are doing that,
24    Mr. Wycoff, why don't you look at the second to
25    the last page on that exhibit.
```

Page 178

```
 1          R. Wycoff - by Mr. Lesko
 2       A.   Sorry?
 3       Q.   Flip to the second to the last page.
 4              MR. BARTHOLOMAEI: You don't
 5    want him to read it now?
 6              MR. LESKO:  Not yet.
 7              MR. BARTHOLOMAEI: Okay.
 8       A.   Okay.
 9       Q.   Read the first sentence -- well,
10    strike that.  Are you on the page the says that
11    Verification for Pleading with Inconsistent
12    Allegations?
13       A.   Yes.
14       Q.   Read the first sentence of the
15    paragraph underneath that heading, please.
16       A.   "I" --
17              MR. BARTHOLOMAEI: You don't
18    have to read it out loud.  Just read it to
19    yourself.
20       A.   (Reviewing document.)
21       Q.   Let me know when you're done with
22    that first sentence.  Mr. Wycoff, have you
23    finished reading the first sentence of that
24    paragraph?  Mr. Wycoff?
25       A.   Yes, I have.
```

Page 179

```
 1          R. Wycoff - by Mr. Lesko
 2       Q.   What does it say?  Strike that.
 3    Having read that first sentence, can you tell
 4    me now whether you've ever read this document
 5    prior to today?  Mr. Wycoff?
 6       A.   Yes.
 7              MR. BARTHOLOMAEI: Give him a
 8    chance to answer the question, please.
 9              MR. LESKO:  I gave him a full
10    minute to answer the question.
11              MR. BARTHOLOMAEI: If he wants
12    five minutes, he can have five minutes.
13              MR. LESKO:  You are absolutely
14    right.
15              MR. BARTHOLOMAEI: Let him
16    answer then.
17       Q.   Mr. Wycoff, have you read this
18    entire document before today?
19       A.   Yes, I have.
20       Q.   Let's flip to -- this document does
21    not have Bates numbers on it.  I am referring
22    to the page numbers in the document.
23              Let's flip to page 53 of the
24    document.  That's the first page that says,
25    "Factual setting" at the top.  53.
```

Page 180

```
 1          R. Wycoff - by Mr. Lesko
 2       A.   Factual setting.
 3       Q.   Right.  Now -- okay.  Now,
 4    Mr. Wycoff, I apologize if I asked this
 5    question before.  I just don't remember when I
 6    thought about it.
 7              Did Mr. Molchan say anything to you,
 8    prior to issuance of the 1991 policy, which you
 9    believe was untrue?
10       A.   Didn't I answer that already?
11              MR. BARTHOLOMAEI: Yes, you
12    did.  You did answer.  We are going to stick
13    with his prior answer.
14       Q.   What was your prior answer?
15              MR. BARTHOLOMAEI: Well, his
16    prior answer is on the record.  That's what
17    we're going to go with.
18              MR. LESKO:  Are you directing
19    him not to answer again?
20              MR. BARTHOLOMAEI: Yes.
21              MR. LESKO:  Okay.
22       Q.   Mr. Wycoff, is it your contention
23    that Mr. Molchan told you that the monthly
24    premium, under the 1991 policy, would have to
25    be paid for 14 years and no subsequent payments
```

45 (Pages 177 to 180)

Powers, Garrison & Hughes

Page 181

1    R. Wycoff - by Mr. Lesko
2  thereafter? Is that your contention?
3    A.  Yes, sir.
4    Q.  And did he say anything else that
5  you believe to be untrue?
6    A.  Did he say anything else?
7       MR. BARTHOLOMAEI: Objection to
8  form.
9       MR. LESKO: What's the basis?
10      MR. BARTHOLOMAEI: Are you
11 talking about ever? Or are you talking about
12 in connection with the sale of this policy and
13 are you referring to anything else besides his
14 prior answer that he gave earlier in the
15 deposition? That's the basis for my objection.
16   Q.  Mr. Wycoff, did Mr. Molchan say
17 anything else to you in connection with the
18 sale of this policy, the '91 policy, which you
19 believed to be untrue, other than the statement
20 that you would have to pay monthly premiums for
21 only 14 years?
22   A.  I can't say anything that he told me
23 leading up to the finish of his explaining to
24 me that this would be diminished in 14 years.
25 I can't say if any of the previous jargon or

Page 182

1    R. Wycoff - by Mr. Lesko
2  talk that he was telling me was true. Or was
3  false, I should say.
4    Q.  I understand. Can you recall
5  anything specific that he told you that you
6  believed to be untrue, other than the statement
7  that it would be paid for in 14 years?
8    A.  No.
9    Q.  Was that a no?
10   A.  I can't recall, no.
11   Q.  You can't recall anything. When you
12 received the 1991 policy, did you read it?
13   A.  No, I don't think I did. I don't
14 think I read any policy.
15   Q.  Correct me if I'm wrong. You
16 testified earlier that you did receive the
17 policy, the '91 policy; is that right?
18   A.  Um-hum.
19   Q.  If you recall, did Mr. Molchan
20 review the policy with you when you received
21 it?
22   A.  Are you asking did he go over the
23 policy with me?
24   Q.  Yes.
25   A.  No.

Page 183

1    R. Wycoff - by Mr. Lesko
2    Q.  Let me rephrase the question. I
3  think I perceive your problem in answering.
4  Did anybody from MetLife or a MetLife sales
5  representative review the 1991 policy with you
6  when you received it?
7    A.  In its entirety?
8    Q.  Any part of it.
9    A.  I say no.
10   Q.  No? Okay.
11   A.  I say no.
12   Q.  You said you didn't read the policy,
13 either; right? Just to clarify, did you read
14 any part of the policy, such as the first page,
15 the second page, or did you just not read any
16 of it?
17   A.  No. It was handed to me in a
18 sleeve. You know, I took the sleeve and put it
19 in that box with the rest of the stuff.
20   Q.  You didn't even look at the front
21 page?
22   A.  No.
23   Q.  Let's turn -- let's look at the
24 policy, Exhibit 5?
25   A.  I may have glanced at the page to

Page 184

1    R. Wycoff - by Mr. Lesko
2  comprehend what I saw, you know, just looking
3  at it. Like I see that, but I have no idea
4  what that says on there (indicating).
5    Q.  Okay. Look at Exhibit 5. That's
6  the 1991 policy. The front page, you see where
7  it says, "Whole life policy," down towards the
8  bottom?
9    A.  Yes, sir.
10   Q.  You see -- first of all, is the fact
11 that -- is the fact that this is a whole life
12 policy contrary to Mr. Molchan's statement that
13 the policy premiums only need to be paid for 14
14 years?
15      MR. BARTHOLOMAEI: Objection to
16 form.
17   A.  I would say yes.
18   Q.  It's contrary?
19   A.  Yeah.
20   Q.  When you glanced at the front cover
21 of the policy, did you see that provision a
22 couple lines underneath, whole life policy? It
23 says, "Ten-day right to examine policy"?
24   A.  No.
25   Q.  Do you remember ever seeing that?

46 (Pages 181 to 184)

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 185

```
 1        R. Wycoff - by Mr. Lesko
 2     A.   No.
 3     Q.   Did you know that you had -- did you
 4  otherwise know that you had a right to review
 5  the policy for ten days and return it for any
 6  reason for a full refund of premium?
 7     A.   No.
 8     Q.   Flip to the third physical page,
 9  which has Bates No. 19 on it. We looked at
10  this before where it says Life Insurance,
11  Premium Amount, Years Payable, $73.20, Years
12  Payable, 36.
13        Do you see that?
14     A.   Yes, I do.
15     Q.   Is that contrary to Mr. Molchan's
16  statement to you that you would need only pay
17  premiums for 14 years?
18        MR. BARTHOLOMAEI: Is what
19  contrary? I don't understand.
20     Q.   Do you understand the question,
21  Mr. Wycoff?
22     A.   The years payable are, yes.
23     Q.   So that's inconsistent with what
24  Mr. Molchan told you; is that right?
25     A.   Yes.
```

Page 186

```
 1        R. Wycoff - by Mr. Lesko
 2     Q.   Did you think that Mr. Molchan had
 3  the authority to change the terms of this
 4  policy regarding the amount of premium payments
 5  that were going to have to be paid?
 6     A.   I didn't realize or know that the
 7  terms were going to be changed.
 8     Q.   So did you have any --
 9     A.   Listening to him. This is what it
10  had. This is what the policy was.
11     Q.   You didn't have any understanding
12  that he had the authority to change whatever
13  was written here, did you?
14        MR. BARTHOLOMAEI: Objection to
15  form.
16     A.   He was the agent.
17     Q.   What does that mean?
18     A.   I don't understand what you mean.
19     Q.   Did you think that he had the
20  authority to change the terms of the contract
21  that MetLife -- well, strike that.
22        Did you think that he had the
23  authority to change the terms of the policy
24  that MetLife issued to you?
25     A.   I never thought about it.
```

Page 187

```
 1        R. Wycoff - by Mr. Lesko
 2     Q.   That's fine. Let's take a look at
 3  page 21. It's page 5 of the policy, Bates
 4  21. Toward the bottom of the page there is a
 5  heading in the center of the page that says,
 6  "Payments during insured's lifetime." It says
 7  Dividends in the left margin.
 8        Do you see that?
 9     A.   Yes.
10     Q.   And it says that "every year we
11  determine amounts to be paid to our
12  policyholders as dividends."
13        Do you see that?
14     A.   Yes.
15     Q.   And then skipping a sentence or two,
16  next paragraph says, "You may choose to use
17  dividends in any one of these ways."
18        Do you see that?
19     A.   Yes.
20     Q.   You see No. 3 where it says,
21  "Premium payment to be applied toward the
22  payment of premiums"?
23     A.   Yes.
24     Q.   Do you know whether or not -- well,
25  let me back up for a second. Mr. Molchan told
```

Page 188

```
 1        R. Wycoff - by Mr. Lesko
 2  you that you wouldn't have to pay premiums
 3  beyond 14 years; right?
 4     A.   True.
 5     Q.   Does that mean that you wouldn't --
 6  well, strike that. It follows then that
 7  according to Mr. Molchan's representation at
 8  the time, you wouldn't have to pay premiums
 9  beyond the year 2005; right?
10        MR. BARTHOLOMAEI: Objection to
11  form.
12     A.   I never did the math on years. I
13  don't know.
14     Q.   Do you have any knowledge as to
15  whether the premium -- sorry -- the dividends
16  paid under this policy in the year 2005 will be
17  enough to pay the premium on the policy?
18     A.   No, sir.
19     Q.   Okay. Do you recall whether or not
20  Mr. Molchan told you that the way in which you
21  would be relieved of paying premiums, after the
22  14th year, would be that the policy would pay
23  for itself through policy values such as
24  dividends?
25        MR. BARTHOLOMAEI: Objection to
```

47 (Pages 185 to 188)

Page 189

1    R. Wycoff - by Mr. Lesko
2    form.
3        Q.    Do you recall whether or not he said
4    that?
5        A.    I don't remember that.
6        Q.    Do you recall -- do you know for
7    certain that he did not say that?
8        A.    I don't remember.
9        Q.    Do you recall whether or not
10   Mr. Molchan explained to you that you might
11   have to pay premiums for a little more or a
12   little less than 14 years, depending on the way
13   the policy performed?
14       A.    No.
15       Q.    You don't remember that?
16       A.    No.
17       Q.    Are you certain that he did not tell
18   you that?
19       A.    Yes.
20       Q.    You're certain that he did not?
21       A.    Yes.
22       Q.    Turn back to the Complaint. Well,
23   no. Strike that.
24            MR. LESKO:  Let me mark this as
25   the next exhibit.

Page 190

1    R. Wycoff - by Mr. Lesko
2            (Wycoff Exhibit No. 10 was
3    marked for identification.)
4        Q.    Mr. Wycoff, we're showing you what's
5    been marked for identification as Exhibit 10.
6    That's a letter dated July 31, 1991 to you from
7    M. Edmiston, E-D-M-I-S-T-O-N, at MetLife; is
8    that right?
9        A.    (Reviewing document.)
10       Q.    Mr. Wycoff, do you remember
11   receiving this letter?
12       A.    (Reviewing document.)  I remember
13   receiving something. But whether it was this
14   letter or not, I don't know. But it does say
15   evidently this was from the urine sample I gave
16   the nurse.
17       Q.    And the letter indicates that as a
18   result of the medical examination, nicotine was
19   found in your urine, comparable to levels found
20   in tobacco users; is that right?
21       A.    Um-hum. Right.
22       Q.    Sorry? Were you going to say
23   something else?
24       A.    No.
25       Q.    Then the enclosure with the letter,

Page 191

1    R. Wycoff - by Mr. Lesko
2    which is a document entitled, "Your information
3    rights," it says -- there's three bullets,
4    bullet paragraphs.
5            Underneath -- in the third bullet it
6    says, "If you believe any information in our
7    files is wrong or incomplete, you may ask that
8    we correct or amend it."
9            Do you see that? Third bullet
10   point, first sentence.
11       A.    Oh. The third one down.
12       Q.    I'm sorry.
13       A.    (Reviewing document.) Um-hum.
14       Q.    Do you see that?
15       A.    Yes.
16       Q.    Did you ever contact MetLife to
17   contest the information regarding the nicotine
18   found in your urine comparable to levels found
19   in tobacco users?
20       A.    No, I did not.
21       Q.    Do you know why nicotine was found
22   in your urine comparable to levels found in
23   tobacco users?
24            MR. BARTHOLOMAEI:  Objection to
25   form.

Page 192

1    R. Wycoff - by Mr. Lesko
2        A.    Why it was found in there?
3        Q.    Yes.
4            MR. BARTHOLOMAEI:  I mean, he's
5    not a doctor. I don't know what you're asking
6    him.
7        Q.    Do you think it was because you were
8    a tobacco user at the time?
9            MR. BARTHOLOMAEI:  I don't want
10   you to guess. He is going to ask you "do you
11   think" questions. I don't want you to guess.
12       Q.    Mr. Wycoff?
13       A.    Doesn't have dates on here, when
14   this -- I am assuming that -- I shouldn't
15   assume -- it has to be from the nurse that took
16   the urine sample when she was at the house.
17       Q.    Do you have any explanation --
18   sorry. I interrupted you. Go ahead.
19       A.    So there must have been nicotine in
20   my urine.
21       Q.    Do you have any explanation as to
22   why there was nicotine in your urine?
23            MR. BARTHOLOMAEI:  Objection to
24   form. This is all -- you know, his answers,
25   your questions, it's all speculative, it's all

48 (Pages 189 to 192)

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 193

1    R. Wycoff - by Mr. Lesko
2  hypothetical. He's saying it must have been
3  this, it must have been that. I don't want him
4  to answer like that. I want him to answer
5  questions based on his knowledge.
6        He doesn't know how the tests -- he
7  doesn't know if it was a false result. He
8  doesn't know anything.
9        MR. LESKO: I understand the
10  basis of your objection. I am going to
11  rephrase the question.
12      Q.   Mr. Wycoff, do you know why nicotine
13  was found in your urine? Do you know?
14      A.   Probably from --
15        MR. BARTHOLOMAEI: Not
16  probably, Mr. Wycoff. Don't guess. He is
17  asking you a specific question.
18      Q.   Tell me whether you think you know
19  and then tell me what the basis of your
20  knowledge is. Mr. Bartholomaei is right. I
21  don't want you to guess.
22        If you have an explanation, you
23  think you know why, you have a basis for it, I
24  want to know that.
25        MR. BARTHOLOMAEI: Mr. Wycoff,

Page 194

1    R. Wycoff - by Mr. Lesko
2  there is no need for you to read this document
3  to answer that question. I am going to give
4  you an instruction at this time and tell you
5  that Mr. Lesko is asking you a very
6  straightforward question. He's asking you do
7  you know why there was tobacco found in your
8  urine. If you don't know why, tell him you
9  don't know why.
10        If you do know why, tell him you do
11  know why. There's nothing that you need to
12  read or look at to be able to answer the
13  question. Just answer the question honestly
14  and tell him whether you know or you don't know
15  why there was tobacco in your urine.
16      A.   If it relates to that urine sample
17  that I gave that nurse in my home, there has to
18  be that I -- that there was nicotine in my
19  urine. Just like it said. I am not denying
20  the fact that it wasn't there.
21      Q.   Okay. I understand that. I
22  appreciate your answer. But what I am asking
23  and focus on the question: Do you know? Do
24  you know why nicotine was found in your urine?
25  Why was it there, if you know? If you don't

Page 195

1    R. Wycoff - by Mr. Lesko
2  know why, the answer is, "I don't know."
3      Q.   What percentage of nicotine was
4  found? I don't know.
5      Q.   Let me ask it this way, Mr. Wycoff:
6  Was nicotine found in your urine because you
7  were using products containing nicotine at the
8  time?
9      A.   I would say yeah.
10      Q.   Okay.
11      A.   Yeah.
12      Q.   Flip to -- go to the next exhibit
13  which is going to be this.
14        (Wycoff Exhibit No. 11 was
15  marked for identification.)
16      Q.   Mr. Wycoff, have you ever purchased
17  products on time before, making time payments
18  to pay for them?
19      A.   Over the years, the past years, yes.
20      Q.   Give me an example, if you would.
21  You know, an appliance?
22      A.   Television.
23      Q.   Television?
24      A.   Yes.
25      Q.   Now, when you purchased your

Page 196

1    R. Wycoff - by Mr. Lesko
2  television on time -- I guess I am using a
3  slang statement. So we're clear, when I say
4  that, I mean purchased the television and you
5  made payments over the course of time to pay it
6  off. Have you ever done that?
7      A.   Um-hum. Yes.
8      Q.   You did that with your television?
9      A.   Um-hum.
10      Q.   When was that? Do you recall? Just
11  broadly, when was it? This year? Last year?
12  Ten years ago?
13      A.   About 12 years ago.
14      Q.   Do you recall whether or not you
15  ultimately paid more for that television
16  because you purchased it on installment
17  payments than you would have if you paid the
18  entire amount right up front?
19      A.   I really can't recall that, no.
20      Q.   Would you agree with me that
21  typically, when you buy products, using an
22  installment plan, you wind up paying more for
23  the product than you would if you paid for the
24  entire thing right up front?
25        MR. BARTHOLOMAEI: Objection.

49 (Pages 193 to 196)

Page 197

1     R. Wycoff - by Mr. Lesko
2   Form.
3       A.   Tell you the truth, I never gave it
4   much thought.
5       Q.   Okay. When you bought that
6   television on time, using time installment
7   payments, did you pay interest or finance
8   charges?
9       A.   I think there's always interest on
10  payments, monthly payments.
11      Q.   Okay. Let me show you what's been
12  marked as Exhibit -- wait a minute. Let me
13  back up for a moment. I will show what's been
14  marked as Exhibit 11. This is a document with
15  a Bates No. RGW 000001. That is a letter dated
16  August 7, 1981 addressed to you from MetLife;
17  is that right?
18      A.   That's correct.
19      Q.   The letter in the first line says,
20  "Welcome to the Check-O-Matic arrangement."
21  Right?
22      A.   Right.
23      Q.   Do you know what the Check-O-Matic
24  arrangement is?
25      A.   No, I don't.

Page 198

1     R. Wycoff - by Mr. Lesko
2       Q.   The premiums on your 1991 policy, do
3   you pay those monthly?
4       A.   Yes.
5       Q.   And are they paid by way of check
6   from your checking account or are they
7   automatically withdrawn from your checking
8   account? If it's some other way, tell me that,
9   too, please.
10      A.   That's paid by check. That's paid
11  by check.
12      Q.   It's paid by check. All right. If
13  you would, refer to Exhibit No. 3, which is the
14  policy. I think it's No. 3. Yeah.
15          MR. BARTHOLOMAEI: Prudential
16  policy?
17          MR. LESKO: Yes. The 1991 --
18  I'm sorry. It's not 3. It is the 1991 MetLife
19  policy. Exhibit 5.
20          MR. BARTHOLOMAEI: Exhibit 5.
21          MR. LESKO: Thank you.
22      Q.   All right. The third page of that
23  document, No. 19, page 19?
24      A.   Okay.
25      Q.   You see where it says Premium

Page 199

1     R. Wycoff - by Mr. Lesko
2   Schedule in the center of the page at the top?
3       A.   Um-hum.
4       Q.   And then the last line of that
5   heading says, "One month after that date," and
6   in parentheses, it says Check-O-Matic?
7       A.   Yes.
8       Q.   Do you see that?
9       A.   Yes.
10      Q.   Does that refresh your recollection
11  as to how the premiums on this policy are paid?
12          MR. BARTHOLOMAEI: Objection to
13  form. He's testified throughout this
14  deposition that he did not read this policy.
15  He may have glanced at the first page. There
16  is no way that that could refresh his
17  recollection.
18          He's never seen it before. You
19  haven't identified or laid a foundation that
20  he's seen it before. The question is
21  inappropriate.
22          MR. LESKO: That's not true.
23  He has seen it before. He testified he seen it
24  before.
25          MR. BARTHOLOMAEI: I disagree.

Page 200

1     R. Wycoff - by Mr. Lesko
2          MR. LESKO: He produced it.
3   How could he not have seen it before? Come on.
4       A.   (Reviewing document.) What was your
5   question?
6       Q.   The question was do you still think
7   that you pay your monthly premium under this
8   1991 policy by way of check, or is it by way of
9   automatic withdrawal from your checking
10  account? If that document doesn't help, that's
11  fine. We will move on to another document.
12      A.   Here's where I'm having a doubt
13  about this. My wife pays the bills.
14      Q.   Okay. That's fair enough.
15      A.   I am trying to think. I know there
16  are some things we have taken from our checking
17  account. I think hospitalization is one of
18  them. If this is being taken from our checking
19  account, I'm not aware of it. I am not up to
20  snuff on it. I thought we were paying by
21  check. If we are, we are. I don't know.
22      Q.   All right.
23          (Discussion off record.)
24          (Short break.)
25  BY MR. LESKO:

50 (Pages 197 to 200)

Page 201

1    R. Wycoff - by Mr. Lesko
2    Q.   Mr. Wycoff, you have had a chance to
3    look over Exhibit 11; right?
4    A.   Exhibit 11?
5    Q.   Yes.  That letter.
6    A.   Oh.  I'm sorry.  I was looking at
7    the number there.
8    Q.   Having read that letter, do you now
9    have an understanding as to what the Check-O-
10   Matic arrangement is?
11   A.   Deducted from your checking account?
12   Q.   The premium is deducted from your
13   checking account monthly; is that right?
14   A.   That's what I gather here.
15   Q.   Okay.  Do you recall electing the
16   Check-O-Matic premium arrangement or premium
17   payment arrangement?
18   A.   No, I don't.
19   Q.   Do you have any objection -- well,
20   strike that.  Do you think it's -- well, strike
21   that also.
22        Is it your contention that payment
23   of premiums to MetLife through the
24   Check-O-Matic arrangement is inappropriate?
25        MR. BARTHOLOMAEI:  Objection to

Page 202

1    R. Wycoff - by Mr. Lesko
2    form.
3    Q.   Let me rephrase it.  Do you have any
4    claim against MetLife of which you are aware --
5    well, strike that.
6        Do you have any claim against
7    MetLife based on this Check-O-Matic
8    arrangement?
9        MR. BARTHOLOMAEI:  Objection.
10   I am directing him not to answer the question,
11   and his Complaint speaks for itself, as well.
12   You know, as well as I do, that there is a
13   claim for that in the Complaint.
14        MR. LESKO:  I will rephrase the
15   question.
16        MR. BARTHOLOMAEI:  He is not
17   going to answer.
18        MR. LESKO:  I'll rephrase.
19        MR. BARTHOLOMAEI:  Do not
20   interrupt me.
21        MR. LESKO:  Don't testify for
22   your client.  Do not provide speaking
23   objections.  I won't interrupt you.
24        MR. BARTHOLOMAEI:  The next
25   time that happens, we will leave the

Page 203

1    R. Wycoff - by Mr. Lesko
2    deposition.
3    BY MR. LESKO:
4    Q.   Mr. Wycoff, do you believe that
5    MetLife did anything wrong -- well, strike
6    that.  Have you been injured by the fact that
7    you paid premiums to MetLife through the
8    Check-O-Matic arrangement?
9        MR. BARTHOLOMAEI:  Again,
10   Mr. Wycoff's Complaint speaks for itself.  I
11   direct you to the Complaint, the answer to that
12   question.
13        MR. LESKO:  All right.
14   Mr. Bartholomaei, it is not my intention to be
15   pejorative or to lock horns with you, but the
16   Complaint is nearly 50 pages long.  I take that
17   back.  The Complaint is 76 pages long.
18        Then there's countless pages of
19   exhibits.  Your colleague, Ms. Ernsberger, said
20   the other day and acknowledged that the
21   Complaint contains irrelevant information.
22        What I am trying to do is understand
23   exactly what is the basis for Mr. Wycoff's
24   claims in this case.  This Complaint obviously
25   contains global allegations much of which are

Page 204

1    R. Wycoff - by Mr. Lesko
2    not relevant to this case and many of which
3    have been stricken for that reason.
4        Again, you know, I think this is a
5    legitimate inquiry, and I'm glad to begin
6    the question, but, you know, it is my position
7    it's not an appropriate question to direct him
8    not to answer.  And my only problem with your
9    objection is that you were answering for the
10   witness.  At least it's my position.  I
11   understand you have another position.  It was
12   not my intention to interrupt you, to be
13   unprofessional.  I just don't want to -- I am
14   trying to protect it.  Can I rephrase the
15   question?  Or will you direct him not to
16   answer?
17        MR. BARTHOLOMAEI:  You may
18   rephrase the question.  I'll just note for the
19   record that I think it's inappropriate to bring
20   up events which occurred in a deposition
21   outside this case that have absolutely nothing
22   to do with this case.  Keeping that in mind,
23   you can rephrase your question.
24        MR. LESKO:  Okay.
25   Q.   Mr. Wycoff, do you believe that you

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 205

1    R. Wycoff - by Mr. Lesko
2  have been injured by virtue of your
3  participation in the Check-O-Matic arrangement?
4            MR. BARTHOLOMAEI: I will
5  object on the basis of lack of foundation. My
6  reason for that is that Mr. Wycoff testified
7  earlier that he didn't know that he was in the
8  Check-O-Matic arrangement, that he did not
9  elect the Check-O-Matic arrangement.
10           Your question implies that he should
11  know about that. I believe he's testified as
12  to that.
13           MR. LESKO: All right. I
14  appreciate the objection and explanation.
15      Q.   But, Mr. Wycoff, please answer that
16  question.
17      A.   Would you mind asking it again?
18      Q.   Sure. I would be glad to. Do you
19  believe that you have been injured -- when I
20  say injured, I mean this financially or you
21  have suffered detriment -- as a result of your
22  participation in MetLife's Check-O-Matic
23  arrangement whereby premiums are paid monthly
24  through automatic withdrawal from your checking
25  account?

Page 206

1    R. Wycoff - by Mr. Lesko
2      A.   May I ask this? Whether you are
3  referring to Check-O-Matic or comparing it to?
4      Q.   No. You can't ask that question.
5  You need to answer my question.
6            MR. BARTHOLOMAEI: I think what
7  he is saying is that he's trying to comply with
8  your instruction that you gave him at the
9  beginning of the deposition. He is not clear
10  as to your question. He is asking you to
11  rephrase it.
12      Q.   Do you need a clarification,
13  Mr. Wycoff?
14      A.   I do.
15      Q.   All right. When I refer to the
16  Check-O-Matic arrangement, I'm referring to the
17  arrangement that's discussed in that letter,
18  Exhibit 11, which you read over the break and
19  indicated after the break that you understand
20  what the arrangement is now.
21           Okay? It's that Check-O-Matic
22  arrangement that I'm talking about.
23           With that in mind, my question is do
24  you believe that you've suffered detriment as a
25  result of your participation in the

Page 207

1    R. Wycoff - by Mr. Lesko
2  Check-O-Matic arrangement?
3            MR. BARTHOLOMAEI: I'm going to
4  allow him to answer the question to the extent
5  it does not call for him to make a legal
6  conclusion.
7      A.   It's hard to say.
8      Q.   It's hard to say?
9            MR. BARTHOLOMAEI: I will also
10  add that Plaintiffs will be providing you with
11  an expert report which details our damages in
12  this case.
13           MR. LESKO: Mr. Bartholomaei, I
14  am sorry. I am sorry to have to interrupt
15  you. There's a pending question. You have
16  objected to the form. I understand the basis
17  for your objection.
18           You are continuing to add to the
19  witness' understanding as to why you don't want
20  him to answer the question and how to answer
21  the question. I would like him to answer it
22  just from his own -- from the four corners of
23  his mind.
24           MR. BARTHOLOMAEI: He gave you
25  his answer. He said it is hard to say.

Page 208

1    R. Wycoff - by Mr. Lesko
2            MR. LESKO: It may be hard to
3  say. No matter how hard it is to say, I want
4  him to tell me whether or not he believes he's
5  been injured. That is a yes-or-no question.
6      Q.   That is a yes-or-no question.
7            MR. BARTHOLOMAEI: Well --
8      Q.   If you can't answer it, tell me you
9  can't answer it.
10           MR. BARTHOLOMAEI: He's given
11  you his best answer.
12      Q.   Can you answer that question?
13      A.   I can't answer that at this time.
14      Q.   When will you be able to answer it?
15  Strike that.
16           MR. BARTHOLOMAEI: I object to
17  the form of that question.
18      Q.   Will you able to answer that
19  question at a future time?
20           MR. BARTHOLOMAEI: I object to
21  the form of that question, as well.
22      Q.   Go ahead and answer it.
23           MR. BARTHOLOMAEI: You know
24  what? Don't answer that question.
25      Q.   What do you mean by you can't answer

52 (Pages 205 to 208)

Powers, Garrison & Hughes

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 209

1    R. Wycoff - by Mr. Lesko
2  at this time?
3        MR. BARTHOLOMAEI:  I think it
4  means exactly what he said.  I don't think
5  there's any ambiguity as to that answer.
6        Q.   Why can't you answer at this time?
7        A.   I would have to check into this
8  Check-O-Matic a little bit further.  I
9  understand what it says here.  I want to check
10  into it myself.
11        Q.   Okay.  I am going to ask this
12  question.
13        A.   I wasn't aware.  Go ahead.
14        Q.   You weren't aware before today that
15  you were on the Check-O-Matic plan?
16        A.   I completely -- completely forgot.
17        Q.   All right.  I am going to ask this
18  question.  I know the answer.  It is a
19  foundation question.
20        A.   I don't remember, really.  Go ahead.
21        Q.   What -- how have you been damaged by
22  your participation in the Check-O-Matic
23  arrangement, if you know?
24        MR. BARTHOLOMAEI:  I object.
25        A.   Physically?  Detrimentally?

Page 210

1    R. Wycoff - by Mr. Lesko
2        Q.   Physically, financially, mentally,
3  any way.  You tell me how you have been
4  damaged.
5        MR. BARTHOLOMAEI:  Again, I
6  will allow him to answer the question, for the
7  second time now, to the extent it doesn't call
8  for a legal conclusion.
9        I will state again on the record we
10  will be providing you with a damage report.  It
11  is not influencing his testimony.  I'm telling
12  you what is going to happen.  You can still ask
13  him if he has an understanding --
14        MR. LESKO:  That's all
15  irrelevant.  I want to know now how he's been
16  damaged.
17        MR. BARTHOLOMAEI:  I told you.
18        A.   Until I go home to do the math, no.
19  I can't answer that now.
20        Q.   That's fine.
21        A.   I can't answer you now.
22        Q.   Let's do the math right now.  What
23  are you going to look at to determine whether
24  or not you have been damaged?
25        A.   Well, first off -- how do you

Page 211

1    R. Wycoff - by Mr. Lesko
2  understand that because of the higher monthly
3  payment -- what was that?  $73.20?
4        Q.   Um-hum.
5        A.   Paying that because it was urine
6  found in my -- or nicotine found in my urine;
7  is that correct?
8        Q.   I'm sorry?
9        A.   Is that correct?
10        Q.   Is what correct?  That nicotine was
11  found in your urine?
12        A.   And that I'm paying the higher
13  premium?
14        Q.   Are you paying a higher premium
15  because you are on the Check-O-Matic
16  arrangement?
17        A.   No.  I am just saying is that
18  because they found nicotine in my urine?  Is
19  that the reason why I'm paying the higher
20  premium?
21        Q.   I can't --
22        A.   If there was not nicotine found in
23  my urine, would I be paying a lower premium?
24        Q.   Well, what do you think?
25        A.   What percentage, that's what I

Page 212

1    R. Wycoff - by Mr. Lesko
2  asked, what percentage of nicotine is allowed?
3        Q.   Okay.
4        A.   Can't be nil.  What percentage of
5  nicotine is allowed?
6        Q.   Do you think that you're paying a
7  higher premium because nicotine was found in
8  your urine, consistent with that of a tobacco
9  user?
10        A.   Nicotine was found in my urine.
11  That's what they're saying; right?
12        Q.   They said in the letter that
13  nicotine was found in your urine.
14        A.   That's what they are saying, right.
15        Q.   Consistent with a tobacco user.
16        A.   That evidently is the reason I'm
17  paying the higher premium.
18        Q.   Do you know that for a fact?
19        A.   That is --
20        Q.   In any case, that's your
21  understanding as to why you're paying a higher
22  premium?
23        A.   Right.
24        Q.   What premium do you think you would
25  have been paying if they had not found nicotine

Powers, Garrison & Hughes

Page 213

1       R. Wycoff - by Mr. Lesko
2   in your urine?
3           MR. BARTHOLOMAEI:  Objection to
4   form.
5       Q.   Let me rephrase it.
6       A.   I don't know.
7       Q.   That's fine.
8       A.   It had to be lower, though.
9       Q.   That's fine.  Did you tell anybody
10  that you did not want the policy because there
11  was a higher premium?
12      A.   No.
13      Q.   Did you return the policy to MetLife
14  and ask them to cancel and refund the premium?
15      A.   No.
16      Q.   You knew that they had found
17  nicotine in your urine; right?
18      A.   Yes.
19      Q.   And you accepted the policy anyway;
20  right?
21      A.   By paying that, right.  I wanted the
22  policy.  If it had to be paying the higher
23  figure, as long as it was urine, at that time,
24  but there was a lower figure there, too.
25      Q.   Mr. Wycoff, what does the increased

Page 214

1       R. Wycoff - by Mr. Lesko
2   premium, due to nicotine in your urine, have to
3   do with the Check-O-Matic arrangement?  Does
4   that have anything to do with it, to your
5   knowledge?
6       A.   Probably the amount.  That's all.
7       Q.   I'm sorry?
8       A.   The amount.
9       Q.   So it is a higher premium because
10  you had nicotine in your urine; is that right?
11      A.   Right.  That's the way I understand
12  it.
13      Q.   Would the premium have been the same
14  if you paid by a monthly check, as it would be
15  if you paid by Check-O-Matic, to your
16  knowledge?
17      A.   I don't know about bank charges or
18  what have you, no.
19      Q.   You don't know.  Okay.
20      A.   My wife would know more than I
21  would.
22      Q.   So back to the question:  What would
23  you -- what information would you look at to
24  determine whether or not you have been damaged
25  by virtue of your participation in the

Page 215

1       R. Wycoff - by Mr. Lesko
2   Check-O-Matic arrangement, if you know?
3       A.   Check with the bank, I guess, first
4   off.
5       Q.   What information would you get from
6   the bank?
7       A.   In regards to rates to this, by
8   charging this.  Like I said, my wife does all
9   this.
10      Q.   So I understand you correctly, what
11  you are telling me is that perhaps the bank is
12  charging you higher bank charges because of the
13  automatic withdrawal?
14      A.   It's possible, yes.
15      Q.   And that would be a basis for
16  damage?
17      A.   That's what I'm paying, yes.
18      Q.   Can you think of any other basis for
19  damage?
20      A.   I can't say at this time.  I can't.
21  I really haven't given it serious thought.
22      Q.   Have you thought about it before
23  today at all?
24      A.   You want specific time --
25      Q.   No.  It's yes or no.  Either you did

Page 216

1       R. Wycoff - by Mr. Lesko
2   or you didn't.  Have you ever thought about
3   whether or not you have been damaged by being a
4   part of the Check-O-Matic premium arrangement
5   before today?
6           MR. BARTHOLOMAEI:  Objection to
7   form.
8       A.   Emotional damage.  You are asking me
9   about Check-O-Matic.  I am having a hard time
10  now putting my thoughts into words.
11      Q.   Do you want to take a break,
12  Mr. Wycoff?  Let's take a quick break.  Okay?
13  Clear your head and we will come back and
14  finish up.
15      A.   Fine with me.
16      Q.   Okay.
17      A.   Fine with me.
18          (Short break.)
19  BY MR. LESKO:
20      Q.   Mr. Wycoff, we just took a pretty
21  brief bathroom break.  Do you feel okay to
22  continue on with the deposition today or would
23  you prefer to continue another day?
24      A.   I'm fine.
25      Q.   Are you ready to go?

54 (Pages 213 to 216)

Page 217

1         R. Wycoff - by Mr. Lesko
2         A.   I'm fine.
3         Q.   Do you think that you can still
4    testify, understand questions lucidly and
5    testify to your knowledge --
6              MR. BARTHOLOMAEI: He said he's
7    fine.
8         A.   I'm fine, sir. I really am. I'm
9    fine.
10        Q.   Have you felt that, so far, any of
11   your answers to questions may have been
12   inaccurate based upon inability to understand
13   the questions or fatigue or anything else?
14        A.   I'm fine.
15        Q.   Okay. Great. Thanks.
16             MR. LESKO: Can you read back
17   the last question and answer. I think there is
18   a pending answer. Read back the last question
19   for me, please.
20             (Reporter read from record as
21   requested.)
22        Q.   Mr. Wycoff, have you thought about
23   whether or not you have been injured by virtue
24   of your participation in the Check-O-Matic
25   arrangement at any time before today?

Page 218

1         R. Wycoff - by Mr. Lesko
2         A.   I thought about it, yes.
3         Q.   When was that? If you recall?
4         A.   Numerous times I thought about it.
5         Q.   Okay. You thought about it numerous
6    times. Did you ever think about how you have
7    been injured by participating in the
8    Check-O-Matic arrangement?
9         A.   No, I haven't. I haven't got into a
10   discussion with my attorneys about that. I
11   have not.
12        Q.   Have you determined, for yourself,
13   understanding that you can't recall it right
14   now, but do you recall coming to a conclusion
15   as to how you had been injured by the
16   participation in Check-O-Matic?
17        A.   No.
18             MR. LESKO: Let's mark this as
19   the next exhibit.
20             (Wycoff Exhibit No. 12 was
21   marked for identification.)
22        Q.   Mr. Wycoff, you have been handed
23   what's been marked for identification as
24   Exhibit 12. That is a document with Bates
25   numbers 0000001 through 000016. That is -- and

Page 219

1         R. Wycoff - by Mr. Lesko
2    that is a policy issued by Metropolitan Life
3    Insurance Company to you as the insured in
4    1994; is that right?
5         A.   Yes.
6         Q.   Do you recognize this Exhibit 12 as
7    a copy of the entire policy issued to you by
8    Metropolitan Life Insurance Company in 1994?
9              MR. BARTHOLOMAEI: Let me see
10   it before you answer it, okay?
11             MR. LESKO: I have an extra
12   copy.
13             MR. BARTHOLOMAEI: Can you
14   restate the question? Did you ask him if that
15   is copy of the entire policy?
16             MR. LESKO: Yes, I did.
17             MR. BARTHOLOMAEI: I object to
18   the form of the question. I will note for the
19   record that the copy that you have handed him,
20   I am not sure it -- if it is an entire copy or
21   not.
22             MR. LESKO: Okay. I am asking
23   Mr. Wycoff.
24        Q.   Do you recognize that as a copy of
25   the entire policy issued to you by MetLife in

Page 220

1         R. Wycoff - by Mr. Lesko
2    1994?
3              MR. BARTHOLOMAEI: I will also
4    note for the record that what you just handed
5    me is not the same as you have handed him. I
6    haven't had the benefit of looking at what he
7    is looking at.
8              MR. LESKO: I apologize for
9    that. How is it different?
10             MR. BARTHOLOMAEI: This one has
11   Bates numbers from the Plaintiff. Yours has
12   MetLife Bates numbers on it. That's how
13   they're different.
14             MR. LESKO: That's fair enough.
15   I apologize.
16        Q.   Put that aside, Mr. Wycoff. Put
17   No. 12 aside.
18             MR. LESKO: Mr. Bartholomaei,
19   could I have that document, please. I would
20   like the document I handed to Mr. Bartholomaei
21   to be marked as Exhibit 13. Thank you for
22   pointing that out to me.
23             (Wycoff Exhibit No. 13 was
24   marked for identification.)
25        Q.   What I am handing you and what is

Page 221

1        R. Wycoff - by Mr. Lesko
2   marked as Exhibit 13 is a copy, as I
3   represented before, with the Bates numbers I
4   represented before.
5        MR. LESKO: I apologize,
6   Mr. Bartholomaei. I didn't mean to give you a
7   nonconforming copy.
8        A.   (Reviewing document.) Yes, it is.
9        Q.   Have you ever seen this document
10  before today?
11       A.   I saw the document when I signed it.
12       Q.   Have you ever seen the front page of
13  this document before today, to be more
14  specific?
15       A.   Is this the front page?
16       Q.   No, sir. The front page is the
17  first page with the Bates No. 1. It has the
18  exhibit tab on it. What I am asking you, I
19  think you were referring to just the policy,
20  just the application which is attached to the
21  policy when I asked you the question a moment
22  ago.
23       Just for clarification, I would like
24  you to look at the entire exhibit. That entire
25  exhibit, that's the policy issued in '94.

Page 222

1        R. Wycoff - by Mr. Lesko
2        Am I right?
3        A.   Are you talking about this right
4   here (indicating)?
5        Q.   No, sir. I am talking about the
6   entire thing. Every single page that's stapled
7   as part of that have: Page No. 1 through Page
8   No. 16.
9        A.   It's attached to this. I guess this
10  is the whole policy. I mean, it's here.
11       Q.   All right. Have you ever seen this
12  document before?
13       A.   Have I seen it? I must have seen
14  this.
15       Q.   Why do you say that?
16       A.   Because I signed it.
17       Q.   You signed -- show me exactly where
18  you signed it, please.
19       A.   Here (indicating).
20       Q.   That's page No. 15, bottom lower
21  right-hand corner; is that right?
22       A.   Right.
23       Q.   Isn't that an application for
24  insurance?
25       A.   Yes, it is.

Page 223

1        R. Wycoff - by Mr. Lesko
2        Q.   When you signed this page, this
3   application, was it already attached to the
4   rest of this document?
5        A.   I can't remember that.
6        Q.   So we know you signed at least --
7   you signed that page?
8        A.   Right.
9        Q.   Okay. Other than the time when you
10  signed this page, this page No. 15, have you
11  seen -- well, strike that.
12       Assume for purposes of the question
13  that when you signed page 15, the application,
14  it was not attached to the policy. Okay? With
15  that understanding, tell me, if you can recall,
16  whether you've ever seen this document, Exhibit
17  No. 13?
18       MR. BARTHOLOMAEI: Objection to
19  form.
20       A.   I honestly can't say.
21       Q.   Okay. Did you meet with an agent --
22       A.   I received a policy.
23       MR. BARTHOLOMAEI: Hold on.
24  Let him finish his question.
25       A.   Go ahead. Sorry. I didn't mean to

Page 224

1        R. Wycoff - by Mr. Lesko
2   interrupt you.
3        Q.   Go ahead. You wanted to clarify
4   your last answer?
5        A.   Go ahead. I will shut up.
6        Q.   My question is: What were you going
7   to say? Were you going to clarify your last
8   answer for me?
9        A.   As I stated before, policies, both
10  policies, were handed to me in a sleeve.
11       Q.   I see.
12       A.   That's what I keep telling
13  everybody. They gave them to me in a sleeve
14  like this (indicating).
15       Q.   Folded up in thirds?
16       A.   And they give it to me like that
17  (demonstrating.)
18       Q.   Did they give you both policies at
19  the same time?
20       A.   What do you mean both policies at
21  the same time?
22       Q.   You said they gave you both policies
23  in a sleeve. You don't mean to say they gave
24  them both to you at the same time?
25       A.   No, no, no, no, no, no.

56 (Pages 221 to 224)

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

---

Page 225

1    R. Wycoff - by Mr. Lesko
2    Q.   Back up for a second.  You said they
3  gave them -- gave you the policy in a sleeve.
4    A.   Right.
5    Q.   Who handed you this policy in a
6  sleeve?
7    A.   This 4,500 one?
8    Q.   Yes, sir.
9    A.   Kaczmarek.  Am I pronouncing his
10  name properly?
11    Q.   We will assume it's right for now.
12  I'm not sure, quite frankly.  Is it -- so
13  Mr. Kaczmarek?
14    A.   Kaczmarek.
15    Q.   Kaczmarek?
16    A.   "Kaczmarek," "Kaczmarek," yeah.
17  Kaczmarek handed me this.
18    Q.   Mr. Kaczmarek handed you this
19  policy?
20    A.   That's correct.
21    Q.   In person?
22    A.   Right.
23    Q.   And Mr. Kaczmarek is the sales
24  representative through whom you purchased this
25  policy; is that right?

---

Page 226

1    R. Wycoff - by Mr. Lesko
2    A.   That's right.
3    Q.   And did you meet with Mr. Kaczmarek
4  prior to the time that he handed you this
5  policy?
6    A.   I believe I did, yeah.
7    Q.   Did you contact Mr. Kaczmarek in
8  order to get this policy, or did Mr. Kaczmarek?
9    A.   Or did he contact me?
10    Q.   Was that your answer, or are you
11  just finishing my question for me?
12    A.   Same question; different policy.
13    Q.   Right.  Which was it?
14    A.   I contacted him because I wanted to
15  keep the insurance that I was losing.  I was
16  losing insurance with my -- through U.S. Steel.
17  So this was the last -- what?  Drop, I guess
18  you could call it, in my big insurance policy
19  that I had with U.S. Steel.
20    Q.   Okay.
21    A.   So this is the last drop so I wanted
22  to keep that, the insurance, where it was.  I
23  didn't want it to drop any further.  So it was
24  a $4,500 policy -- I mean amount, so that's
25  what I wanted.

---

Page 227

1    R. Wycoff - by Mr. Lesko
2    MR. LESKO:  Mark that.
3    (Wycoff Exhibit No. 14 was
4  marked for identification.)
5    A.   I wouldn't have to concern myself
6  with any more drops in my main insurance
7  policy.
8    Q.   Okay.
9    A.   That I had through U.S. Steel.
10    Q.   Mr. Wycoff, I am handing you what we
11  have marked as Exhibit 14 for identification.
12  It appears to me, correct me if I'm wrong, it
13  to be a photocopy of a slip or a card and at the
14  top it says, "United States Steel and Carnegie
15  Pension Fund."  Is that right?
16    A.   That's correct.
17    Q.   And in the typewritten portion on
18  the left-hand side of that document it says,
19  "Your group life insurance is reduced from
20  33,000 to 28,500, effective July 1, 1994."  Is
21  that right?
22    A.   That's correct.
23    Q.   The group life insurance, that's
24  group life insurance that you had or coverage
25  you had by virtue of your employment with U.S.

---

Page 228

1    R. Wycoff - by Mr. Lesko
2  Steel; is that right?
3    A.   Correct.
4    Q.   After you retired from U.S. Steel,
5  -- back up for a second.  Do you recall
6  whether that was basic life insurance or
7  supplemental life insurance or some other term?
8    A.   I really can't say.
9    Q.   That's fine.  After you retired from
10  U.S. Steel, they continued to provide you with
11  life insurance as a retiree; is that right?
12    A.   That's correct.
13    Q.   And at various intervals, the death
14  benefit, the amount of insurance, reduced; is
15  that correct?
16    A.   That's correct.
17    Q.   And this is one occasion where it
18  reduced from 33,000 to 28,500; is that right?
19    A.   That's right.
20    Q.   Now, the next line says, "You may
21  apply for an individual policy not to exceed
22  $4,500 within 31 days of reduction."
23    Do you have any understanding as to
24  why the individual policy for which you could
25  apply could not exceed $4500?

---

Powers, Garrison & Hughes

Page 229

1        R. Wycoff - by Mr. Lesko
2        A.   I have no idea.
3        Q.   Is that the amount of the reduction
4    from your U.S. Steel coverage?  In other words,
5    from 33,000 to 28,500?
6        A.   Yes, sir.
7        Q.   Does that indicate to you that
8    that's why you were limited to $4500 in
9    coverage?
10        A.   Yes, sir.
11        Q.   It says, "For further information,
12    contact any office of The Metropolitan Life
13    Insurance Company."
14            Right?
15        A.   That's correct.
16        Q.   So is it upon receipt of this -- let
17    me back up.  Do you recall receiving this
18    notice?
19        A.   Yes, I do.
20        Q.   And was it upon receipt of this
21    notice that you chose to contact MetLife to get
22    additional insurance?
23        A.   Yes.
24        Q.   That's when you contacted
25    Mr. Kaczmarek?

Page 230

1        R. Wycoff - by Mr. Lesko
2        A.   Contacted the office, I guess.
3            MR. LESKO:  Off the record.
4            (Brief interruption.)
5        Q.   When you contacted Mr. Kaczmarek --
6    well, did you speak to Mr. Kaczmarek on the
7    phone before he came to meet you?
8            MR. BARTHOLOMAEI:  Objection to
9    form.
10        A.   Did I speak to him?
11        Q.   Clarification:  Did you speak with
12    Mr. Kaczmarek on the phone before you met with
13    him?
14        A.   In regards to this policy?
15        Q.   Yes.  If you recall?
16        A.   I believe he called to find out when
17    we would be home, you know, so he could come
18    out.
19        Q.   Did you tell him that the reason --
20    well, did you give him -- strike that.  Did you
21    tell him that the reason you wanted to talk to
22    him was because you wanted to purchase this
23    individual policy not to exceed $4500?
24        A.   I can't say for sure whether I told
25    him why it was.

Page 231

1        R. Wycoff - by Mr. Lesko
2        Q.   Okay.  Now, do you remember -- there
3    came a time when you and Mr. Kaczmarek met
4    concerning this 1994 policy; is that right?
5        A.   Yeah.
6        Q.   Or your application for this 1994
7    policy; is that right?
8        A.   Yeah.
9        Q.   I think you said before you believe
10    that there were at least two meetings; is that
11    right?  One when he delivered the policy and
12    one when you filled out the application?
13        A.   Correct.
14        Q.   Do you recall whether --
15        A.   The other way around.
16        Q.   I understand, the application would
17    come first and deliver the policy later, yes.
18    Do you recall whether there were any other
19    meetings with Mr. Kaczmarek regarding this
20    policy?  Not telephone conversations; meetings?
21        A.   No.
22        Q.   Do you recall if anybody else, aside
23    from yourself and Mr. Kaczmarek, were present
24    during any of your meetings?
25            MR. BARTHOLOMAEI:  Objection to

Page 232

1        R. Wycoff - by Mr. Lesko
2    form.  You mean other than what he's testified
3    to already?
4            MR. LESKO:  Sorry.
5        Q.   Yes.  During any of your meetings
6    relating to this policy?
7            MR. LESKO:  Thank you.
8        A.   Just Mr. Kaczmarek.
9        Q.   Do you recall everything that was
10    said by you and Mr. Kaczmarek during those
11    meetings?
12        A.   No.  No, I can't.
13        Q.   Did Mr. Kaczmarek show you any
14    documents during those meetings?  By those
15    meetings, I'm referring to yourself and
16    Mr. Kaczmarek, regarding the 1994 policy.
17        A.   Any documents?
18        Q.   Any documents, papers, forms?  I
19    think you used the term "forms" before.  And
20    other than this application for insurance?
21        A.   No.  No.  No.
22        Q.   Just to clarify, you don't recall
23    whether he did, or you recall that he didn't?
24        A.   I can't remember that he did.  I
25    mean he --

58 (Pages 229 to 232)

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 233

1    R. Wycoff - by Mr. Lesko
2    Q.   Okay.  Do you believe that anything
3    Mr. Kaczmarek told you, during your meetings,
4    regarding the 1994 policy, was untrue?
5    A.   Other than the fact that the policy,
6    the $4500 policy, was similar to the $10,000
7    policy.
8    Q.   Okay.  Just -- go ahead.
9    A.   And it had a diminishing premium at
10   the end of ten years.
11   Q.   So I understand, Mr. Kaczmarek told
12   you that after ten years, you would not have to
13   pay premiums on the policy anymore; is that
14   right?
15   A.   Right.  He may not have used those
16   exact words, but I mean he -- how should I say?
17   I can't tell you the exact words he said.  I
18   know he used insurance talk so...
19   Q.   But you were led to believe that
20   after ten years you didn't have to pay premiums
21   on the '94 policy anymore?
22   A.   Yes, sir.
23   Q.   You say you can't remember his exact
24   words?
25   A.   Right.

Page 234

1    R. Wycoff - by Mr. Lesko
2    Q.   Did he tell you anything else during
3    those meetings regarding this 1994 policy that
4    you believe was untrue?
5    MR. LESKO:  Mark that for me.
6    (Wycoff Exhibit No. 15 was
7    marked for identification.)
8    A.   I can't remember what we all talked
9    about.
10   Q.   Can you recall anything, sitting
11   here today, that he said that you think was
12   untrue?
13   A.   I really don't know what he meant
14   exactly when he said this policy is similar to
15   the $10,000 policy.  I didn't quite understand.
16   I didn't understand that.  Other than the fact
17   that it was probably ascertaining to the fact
18   that it was issued by the same company and that
19   the policies were similar in one way, shape or
20   form.
21   Q.   Okay.  Is there anything else you
22   recall that was untrue?
23   A.   No.  Just what I stated.
24   Q.   Okay.  When would the ten years of
25   premium payments come to an end under this

Page 235

1    R. Wycoff - by Mr. Lesko
2    policy -- do you have any understanding of
3    that -- according to what Mr. Kaczmarek told
4    you?
5    A.   When would they end?
6    Q.   Yes.  When you said he told you that
7    after ten years, you wouldn't have to pay any
8    more premiums, when is ten years?  When does
9    ten years run?
10   A.   I don't recall that being discussed
11   or mentioned.  You know, the exact date.
12   Q.   The year?  Did you ever think to
13   yourself or conclude for yourself when or what
14   year he would stop paying premiums?
15   A.   I thought that they would let you
16   know.
17   Q.   Okay.
18   A.   I thought the insurance company
19   would let you know.
20   Q.   If he said you can stop paying
21   premiums in ten years, and this was 1994, then
22   wouldn't that mean to stop paying premiums in
23   2004?
24   A.   That would be my way of thinking,
25   yeah.

Page 236

1    R. Wycoff - by Mr. Lesko
2    Q.   We haven't reached 2004 yet; is that
3    right?
4    A.   That's true.
5    Q.   You don't know whether or not you
6    can stop paying premiums in 2004, do you?
7    MR. BARTHOLOMAEI:  Objection to
8    form.
9    A.   No.
10   Q.   Okay.
11   A.   I haven't heard anything from the
12   insurance company.
13   Q.   All right.  It's your contention
14   that you did not know that the policy required
15   you to pay premiums for more than ten years; is
16   that right?
17   A.   That's true.
18   Q.   Let's take a look at the policy
19   itself, Exhibit 13.  On the front page, do you
20   see where it says, "Whole life policy"?
21   A.   Yes.
22   Q.   Is that inconsistent -- is your
23   understanding of what whole life policy means,
24   is that inconsistent with what Mr. Kaczmarek
25   told you about needing to pay premiums for only

59 (Pages 233 to 236)

Powers, Garrison & Hughes

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

---

Page 237

1      R. Wycoff - by Mr. Lesko
2  ten years?
3      A.  It would seem, yes.
4      Q.  And you see underneath the heading
5  Whole Life, third and fourth paragraph,
6  "Ten-Day right to examine the policy"?  This
7  is the same language that's contained in the
8  1991 policy?
9      A.  Yes.
10     Q.  Did you know that you had ten days
11 to examine this policy and return it for a full
12 refund of premium for any reason?
13     A.  No, I did not.
14     Q.  Flip to the third page, please.
15 Again, this is still what we looked at on the
16 '91 policy, Mr. Wycoff.  The column where it
17 says Premium Amount and Years Payable and then
18 over to the left there is a row that says Life
19 Insurance.  Do you see that?
20     A.  Um-hum.
21     Q.  It says life insurance, premium
22 amount is $34.23; is that right?
23     A.  That's correct.
24     Q.  Years payable, it says 32; is that
25 right?

---

Page 238

1      R. Wycoff - by Mr. Lesko
2      A.  That's correct.
3      Q.  Does that mean that the years that
4  the premium was payable is 32 years?
5      A.  That's correct.
6      Q.  And that's inconsistent with what
7  Mr. Kaczmarek told you about how much in
8  premiums you would have to pay; is that right?
9      A.  Yes.
10     Q.  Is today the first time you looked
11 at that provision on the third page of the
12 policy?
13     A.  Today?
14     Q.  Yeah.
15     A.  No.  Not today.
16     Q.  When is the first time you looked at
17 that?
18     A.  I believe when -- when was that?
19 When did I see this for the first time?
20     Q.  Was it before or after you
21 instituted this litigation?  Strike that.
22         Was it before or after the Complaint
23 in this litigation was filed?
24     A.  I guess it would be before.
25     Q.  Was it before or after you first

---

Page 239

1      R. Wycoff - by Mr. Lesko
2  contacted your attorneys regarding this case?
3      A.  It would have had to have been
4  during a discussion.
5      Q.  With your lawyers?
6      A.  Right.
7      Q.  When was your first contact with the
8  firm of Behrend & Ernsberger or any of the
9  attorneys in that firm?
10     A.  First contact?  I was really
11 watching television.  I don't know what year it
12 was or what day it was.  All I remember is I
13 was watching television and Mr. Behrend was on
14 there talking about Metropolitan Life.
15         He said -- he was going on about
16 policyholders should -- I can't remember what
17 all was said, what he did say, but it has to do
18 with if you have any doubts about your
19 insurance, you know, you should have it looked
20 at.
21     Q.  Was it a TV commercial?
22     A.  I believe so.  Well, not a
23 commercial.  I mean, he wasn't -- wasn't
24 pushing a product.  But he was on TV.  He was
25 making a statement.  He had X amount of time on

---

Page 240

1      R. Wycoff - by Mr. Lesko
2  it.  I don't know what the hell they call it.
3  But he was on TV making a statement on TV.
4      Q.  Was he being interviewed?
5      A.  No.
6      Q.  Was it a regular-scheduled
7  television program that he was on?
8      A.  No.  He wasn't being interviewed by
9  anybody.
10     Q.  Was it a news program?
11     A.  You mean like on the 11 o'clock news
12 or something like that?
13     Q.  Yes.
14     A.  No, I don't believe so.  No.
15     Q.  So it was?
16     A.  It was --
17     Q.  A paid advertisement?
18     A.  Paid advertisement, yes.  I guess
19 that's what you call it.
20     Q.  After you saw that advertisement
21 with Mr. Behrend, did you pull out your
22 policies and read them?
23     A.  I told him, I said, "I am going to
24 do it as he suggested."  I said, "I am going to
25 take these policies down and have them looked

---

60 (Pages 237 to 240)

Page 241

1    R. Wycoff - by Mr. Lesko
2  at." That's exactly what I did.
3        Q.   But you didn't read the policies
4  before you had them looked at?
5        A.   (Nods negatively.)
6        Q.   Okay.
7        A.   Nope.
8        Q.   So you first came to the conclusion
9  that you had claims against MetLife after
10  speaking with your attorneys; is that right?
11             MR. BARTHOLOMAEI: Objection to
12  the form. Don't answer that.
13             MR. LESKO: What's the basis
14  for that?
15             MR. BARTHOLOMAEI: Attorney/
16  client privilege.
17             MR. LESKO: I am not asking him
18  for the content of communications. I am asking
19  for his state of mind and when he arrived at
20  that state of mind.
21             MR. BARTHOLOMAEI: The way he
22  arrived at the state of mind may disclose
23  attorney/client privilege information.
24             MR. LESKO: Okay.
25        Q.   I will ask it this way: Did you

Page 242

1    R. Wycoff - by Mr. Lesko
2  believe or -- strike that. Did you know, in
3  your mind, that you had actionable claims
4  against MetLife prior to your first contact
5  with your attorneys?
6             MR. BARTHOLOMAEI: Objection to
7  form. That calls for a legal conclusion.
8             MR. LESKO: I am asking for his
9  state of mind.
10             MR. BARTHOLOMAEI: Actionable
11  claims? That is a little bit different.
12             MR. LESKO: I will rephrase the
13  question.
14        Q.   Did you believe, in your mind, that
15  you had a claim against MetLife for which you
16  could recover prior to your first meeting with
17  your attorneys?
18        A.   It was going through my mind. I
19  might have had a suspicion at that time.
20        Q.   Let me hand you what's been marked
21  as Exhibit 15 for identification. That is a
22  two-page document. The exhibit is two pages.
23  I won't purport to say whether or not it is a
24  document. I will ask you that question. The
25  Bates numbers are RGW 000047 and 48.

Page 243

1    R. Wycoff - by Mr. Lesko
2        Have you ever seen this document
3  before, sir?
4        A.   (Reviewing document.) I don't
5  recall seeing it, no.
6        Q.   Do you know whether this document
7  came out of your records?
8        A.   It must have.
9        Q.   Do you know whether Mr. Kaczmarek
10  gave you this document?
11        A.   If he did, he mailed it. That's all
12  I can say. I don't recall him coming back out
13  to the house to give me something like this.
14        Q.   Okay.
15        A.   I have no recollection.
16        Q.   My question is do you know
17  whether -- I will ask another question. Do you
18  know whether he gave you this document during
19  his first meeting with you, or at the meeting
20  when he delivered the policy?
21        A.   No, I don't.
22        Q.   Okay.
23        A.   No, I don't. Nope.
24        Q.   Okay.
25             MR. LESKO: Just for the

Page 244

1    R. Wycoff - by Mr. Lesko
2  record, for ease of reference, this document
3  does not have a title on it. The second page
4  of the document, at least, what I have attached
5  to the document, says, "MetLife statement of
6  policy, cost and benefit information."
7        It has Mr. Kaczmarek's name on it
8  and his address and phone number.
9        That's just for the record.
10        Q.   By the way, does looking at the
11  second page of the document provide you with
12  any -- does it help you to remember whether or
13  not Mr. Kaczmarek gave it to you?
14        A.   No.
15             MR. LESKO: Mark that as
16  Exhibit 16.
17             (Wycoff Exhibit No. 16 was
18  marked for identification.)
19        Q.   Let me show you what's been marked
20  as Exhibit 16 for identification. That is a
21  document with a Bates No. RGW 000046. It
22  consists -- it appears to me, anyway, and this
23  is for the record, it appears to consist of
24  several different documents, couple of business
25  cards and some other smaller documents that I

61 (Pages 241 to 244)

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 245

1    R. Wycoff - by Mr. Lesko
2  am not aware of. I am going to ask you about
3  it.
4        Have you ever seen this document
5  before? When I say that document, I mean
6  Exhibit 16.
7    A.    That seems to be my printing.
8    Q.    In the middle of the page there?
9    A.    Yes.
10    Q.    The printing that says -- it gives a
11  Policy Number, a phone number and then it says,
12  "Michael F. Bashur, B-A-S-H-U-R, CLU, branch
13  manager"?
14    A.    Yes.
15    Q.    And a toll-free number?
16    A.    Yes.
17    Q.    I take it you, otherwise, don't
18  recognize what this document is?
19    A.    (Nods negatively.)
20    Q.    In the lower right-hand corner, what
21  I indicated appears to be a business card and
22  the name on the business card is Edward P.
23  Lewis. Do you know who Edward P. Lewis is?
24    A.    No, I don't.
25    Q.    Do you recall ever meeting with

Page 246

1    R. Wycoff - by Mr. Lesko
2  Mr. Lewis?
3    A.    No, sir.
4    Q.    Okay. We can put that aside.
5  Mr. Wycoff, the insurance policy issued in
6  1994, in the amount of $4500, did that replace
7  the insurance that you had with U.S. Steel, the
8  life insurance?
9    A.    It replaced a part of the insurance
10  that was reduced.
11    Q.    Who reduced -- strike that. Who
12  reduced your U.S. Steel life insurance?
13    A.    I have no idea.
14    Q.    Do you know why it reduced?
15    A.    No, I don't. I know it was because
16  we were on pension. And -- I don't know. I
17  can't even speculate why. Nobody ever told me
18  why.
19    Q.    Do you know --
20    A.    I imagine that would have had to
21  come from Metropolitan, not U.S. Steel.
22    Q.    Why do you say that?
23    A.    Because U.S. Steel is interested in
24  manufacturing steel, not interested in
25  insurance policies.

Page 247

1    R. Wycoff - by Mr. Lesko
2    Q.    U.S. Steel was your employer; is
3  that right?
4    A.    Yes, sir.
5    Q.    U.S. Steel provided you with the
6  employee benefits which included the life
7  insurance; is that correct?
8    A.    That's correct.
9        MR. LESKO:  Can you mark this
10  as the next exhibit, please.
11        (Wycoff Exhibit No. 17 was
12  marked for identification.)
13    Q.    You can leave it right there. Do me
14  a favor and look at Exhibit 14 for me. That's
15  the slip that was sent to you by U.S. Steel;
16  right?
17    A.    Um-hum.
18    Q.    It says your group life insurance is
19  reduced from 33,000 to 28,500; is that right?
20    A.    Right.
21    Q.    That came from U.S. Steel; is that
22  right? That notice?
23    A.    Yes.
24    Q.    And now I would like you to take a
25  look at what's been marked as Exhibit 17.

Page 248

1    R. Wycoff - by Mr. Lesko
2    A.    Exhibit 17. That's this one.
3        MR. LESKO:  For the record,
4  that has Bates numbers on it. They are
5  MetLife's Bates numbers and the number MP
6  2461000158 through 245.
7    Q.    Mr. Wycoff, flip to the second
8  page -- well, flip to the page that has Bates
9  No. 165 on it, please.
10        What does it say on that page?
11    A.    It says, "USX."
12    Q.    "Group insurance program"?
13    A.    "Group insurance program."
14    Q.    Sorry. Go ahead.
15    A.    "For eligible nonunion employees."
16    Q.    I take it from what you said before
17  about strikes that you were a member of the
18  union; right?
19    A.    At that time, yes.
20    Q.    So after you retired -- well, did
21  there ever --
22    A.    When I retired, I was nonunion.
23    Q.    All right. Good enough. Let's flip
24  to the page that has Bates No. 189, please.
25        Mr. Wycoff, how old were you when

Powers, Garrison & Hughes

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 249

1    R. Wycoff - by Mr. Lesko
2  you retired?
3    A.   57.
4    Q.   Okay.
5    A.   Retired from U.S. Steel.
6    Q.   I understand.  Had you worked for
7  U.S. Steel for 30 years or more?
8    A.   Yes, sir.
9    Q.   I'm sorry.  I think that I neglected
10  to ask this question.  Have you ever seen this
11  document before?
12    MR. BARTHOLOMAEI:  This whole
13  hundred-page document?
14    MR. LESKO:  Yes, this whole
15  hundred-page document.
16    MR. BARTHOLOMAEI:  Okay, Mr.
17  Wycoff, go ahead and take a look through the
18  document.
19    A.   (Reviewing document.)
20    Q.   Let me interrupt you for a second.
21  Let me ask you this question:  Have you ever
22  received a document containing information
23  regarding your benefits at U.S. Steel?
24    A.   I don't recall.  I really don't.  I
25  don't recall.

Page 250

1    R. Wycoff - by Mr. Lesko
2    Q.   You don't recall if you do or not --
3  if you did or not.  I take it then you don't
4  recall whether you've seen this document?
5    A.   That's true.
6    Q.   Let's look at page number 189.  Open
7  back up to that, please.
8    A.   Okay.
9    Q.   You see at the bottom of the page
10  there is a paragraph No. 1.12?
11    A.   Yes.
12    Q.   It says, "If you retire at or after
13  age 62, 15 or more years continuous service, or
14  at age 65, regardless of service."
15    Do you see where it says that?
16    A.   Yes.
17    Q.   You weren't -- you were less than 62
18  years old when you retired, you said; right?
19    A.   Less than 62, yes.
20    Q.   That paragraph doesn't apply?
21    MR. BARTHOLOMAEI:  Objection to
22  form.
23    Q.   Look at paragraph 1.13.  It says,
24  "If you retire on other than a 30-year, 60/15
25  or deferred vested pension under the company

Page 251

1    R. Wycoff - by Mr. Lesko
2  pension plan prior to age 62."
3    Do you see where it says that?
4    A.   Yes.
5    Q.   Do you know what a 60/15 vested
6  pension is?
7    MR. BARTHOLOMAEI:  Objection to
8  form.  Lack of foundation.
9    Q.   Do you know what a 60/15 vested
10  pension is?
11    A.   No, I don't.
12    Q.   Do you know what a 30-year vested
13  pension is?
14    A.   No.  You would have to explain that
15  to me.
16    Q.   Do you know what a deferred vested
17  pension is?
18    A.   No, I do not.
19    Q.   Do you receive a pension from the
20  company?
21    A.   Yes, sir.
22    Q.   What kind of pension is it?
23    A.   What kind of pension?
24    Q.   What's it called?
25    A.   United States Steel Corporation

Page 252

1    R. Wycoff - by Mr. Lesko
2  Pension Fund.
3    Q.   You don't know if it is a 30-year
4  vested pension?
5    A.   No, sir.
6    Q.   You don't know whether it's a 60/15
7  vested pension fund?
8    A.   No.
9    Q.   Do you know whether it is a deferred
10  vested pension fund?
11    A.   No, sir.
12    Q.   After that first clause that I just
13  read you, see where it says, "Optional life
14  insurance terminates at the end of month in
15  which you retire"?  Then it says, "And basic
16  life insurance in force immediately prior to
17  termination is continued until the end of the
18  month in which you attain age 62"?
19    A.   I see that now.
20    Q.   "Basic life insurance is reduced on
21  the first of the month thereafter on the same
22  basis as provided in paragraph 1.8, which is
23  the paragraph that precedes this paragraph; is
24  that right?
25    MR. BARTHOLOMAEI:  Right, what?

63 (Pages 249 to 252)

Powers, Garrison & Hughes

Page 253

1    R. Wycoff - by Mr. Lesko
2    Q.    Is that what it says?
3          MR. BARTHOLOMAEI: Everybody
4    can read it. Its written in English on the
5    paper. What is the question?
6          MR. LESKO: Mr. Bartholomaei --
7          MR. BARTHOLOMAEI: Mr. Lesko,
8    you haven't established a foundation for this
9    document. You're asking him questions about a
10   document he's never seen before.
11         MR. LESKO: Your objection is
12   noted.
13         MR. BARTHOLOMAEI: I am making
14   it right now again. He's never seen it before.
15   He has no knowledge of it. He can't answer
16   your questions. You can read out loud to him
17   all you want from this document. He doesn't
18   know anything about it. That's my objection.
19         MR. LESKO: Thank you.
20   Q.    Did I read it correctly?
21   A.    I may have missed a word here or
22   there. I don't know.
23   Q.    Flip the page, please. There is a
24   heading on page -- called B3. It's Bates No.
25   190. Where it says, "Conversion privilege."

Page 254

1    R. Wycoff - by Mr. Lesko
2    Do you see that?
3    A.    Okay.
4    Q.    Then paragraph 1.18 says, "Whenever
5    your life insurance, either basic or optional,
6    is reduced or terminated, you have the right to
7    convert to an individual policy as explained in
8    paragraph 119 through 121.
9    Do you see that?
10   A.    Okay.
11   Q.    Now, granted, Mr. Wycoff, we've read
12   only a small portion of this rather extensive
13   document which is called the USX Group
14   Insurance Program for Noneligible Employees of
15   USX Corporation and Subsidiary Companies.
16   Granted, we only read a small
17   portion of it.
18   Based on what we read, does it
19   appear to set forth the terms and conditions
20   of, among other things, life insurance
21   benefits, after retirement?
22         MR. BARTHOLOMAEI: Objection to
23   form. Mr. Wycoff, if you have any idea what
24   he's talking about, you can go ahead and answer
25   the question.

Page 255

1    R. Wycoff - by Mr. Lesko
2    A.    I understand what this says here.
3    You have the right to convert to an individual
4    policy.
5    Q.    So there is a document out there,
6    that is Exhibit No. 17, which dictates the
7    terms of your life insurance after retirement;
8    is that right?
9          MR. BARTHOLOMAEI: Objection to
10   form.
11   A.    I don't understand what you are
12   trying to say here.
13   Q.    Well --
14   A.    I mean, you are trying to say
15   something that you probably already know. I
16   mean, I haven't -- I don't recall receiving
17   this or reading the policy, this -- it's not a
18   policy. Whatever the hell it is.
19   Q.    I understand that. We have
20   established that. Mr. Wycoff, the great
21   majority of questions I asked today, I already
22   knew the answer to. We're doing this in the
23   course of these proceedings to get a transcript
24   so that the litigation can move on. I am
25   Understand, as I said before, I am

Page 256

1    R. Wycoff - by Mr. Lesko
2    not trying to trick you. I am trying to
3    establish a basis for knowledge that there is a
4    document out there which governs your life
5    insurance benefits as a retiree --
6    A.    This?
7    Q.    Yes. Your life insurance benefits
8    as a retiree from USX.
9    A.    It exists, sure. It exists. I
10   acknowledge that.
11   Q.    With that understanding, do you
12   still assume that MetLife reduced your life
13   insurance benefits from USX, or was that in
14   accordance with the document, the plan
15   document?
16         MR. BARTHOLOMAEI: Objection to
17   form. Mr. Wycoff, again, I don't want you to
18   speculate to these answers.
19   A.    I really don't.
20   Q.    I am not asking you to speculate,
21   Mr. Wycoff.
22   A.    I am saying as far as I can
23   understand, I am looking at this for the first
24   time.
25   Q.    Let me clarify. I don't want you to

64 (Pages 253 to 256)

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 257

1          R. Wycoff - by Mr. Lesko
2    speculate, as I have said repeatedly today.
3    What I want you to tell me, if you can, if you
4    don't know, you don't know, again, as I
5    instructed, with the understanding now that
6    there is a document out there which governs
7    your benefits as a retiree from USX, do you
8    still think it was MetLife that reduced your
9    basic life insurance from USX from 33,000 to
10   28,500?
11          MR. BARTHOLOMAEI:  Objection to
12   form.
13     A.   I can't say.  I really can't say.
14     Q.   Did you elect to reduce your
15   benefits from 35,000 to 28 -- sorry.  Did you
16   elect to reduce your life insurance from USX
17   down from 33,000 to 28,500?
18     A.   Why would I do that?
19     Q.   The answer is yes or no.  Did you
20   elect it?
21     A.   No.
22     Q.   Did Mr. Kaczmarek suggest that you
23   do that?  Let me rephrase the question.  Did
24   Mr. Kaczmarek suggest to you that your life
25   insurance benefits should be reduced from

Page 258

1          R. Wycoff - by Mr. Lesko
2    33,000 to $28,500?  That is, the life insurance
3    benefits from USX?
4      A.   Should be?
5      Q.   Did he suggest that to you?
6      A.   I really can't say.  I really can't
7    say.
8      Q.   Do you specifically recall him
9    telling you to reduce your benefits from --
10   your USX life insurance from 33,000 to 28,500?
11   Do you recall that?
12     A.   Phrase that again.  Just what you
13   said.  Phrase that again.
14     Q.   To your recollection, did
15   Mr. Kaczmarek tell you that you should reduce
16   your benefits, your life insurance benefits
17   offered under the USX retiree program, from
18   33,000 to 28,500?
19     A.   No.
20     Q.   Did anybody at MetLife suggest that
21   you do that?
22     A.   I would say no.
23     Q.   To your understanding, would your
24   life insurance benefits with USX have reduced
25   from 33,000 to 28,500, even if you did not

Page 259

1          R. Wycoff - by Mr. Lesko
2    purchase the 1994 policy?
3      A.   Would they have reduced?
4      Q.   Yes.
5      A.   Yes.
6      Q.   Okay.
7          MR. LESKO:  Let's mark this as
8    the next exhibit.
9          (Wycoff Exhibit No. 18 was
10   marked for identification.)
11     Q.   Let me show you what has been
12   marked, for identification purposes, as Exhibit
13   18.
14          MR. LESKO:  For the record it
15   has a Bates number at the top of MP 2461000353.
16     Q.   Have you ever seen that document
17   before?
18     A.   I guess I have.  I signed it.
19     Q.   That's your signature?
20     A.   Yes.
21     Q.   Where is your signature?  Upper
22   left-hand corner?
23     A.   Where it says Client's Signature.
24     Q.   Do you also see your signature in --
25   near the bottom of the page in the middle?

Page 260

1          R. Wycoff - by Mr. Lesko
2      A.   Yes, I do.
3      Q.   Can you see -- strike that.  At the
4    top of the page it says, "This will acknowledge
5    that I have received a copy of the Life
6    Insurance Buyer's Guide from Metropolitan Life
7    Insurance Company."
8          Do you see that?
9      A.   Yes, I see it.
10     Q.   Do you still have the Life Insurance
11   Buyer's Guide?
12          MR. BARTHOLOMAEI:  Objection to
13   form.
14     Q.   Have you received the Life Insurance
15   Buyer's Guide from MetLife?
16     A.   I guess.  I don't know.
17     Q.   Do you have any reason to believe
18   that you have not received the Life Insurance
19   Buyer's Guide from MetLife?
20     A.   Never gave it a thought, no.
21     Q.   Do you presently have a copy of the
22   Life Insurance Buyer's Guide from MetLife?
23     A.   No.
24     Q.   Closer to the bottom of the page,
25   about two-thirds of the way down, it says,

65 (Pages 257 to 260)

Powers, Garrison & Hughes

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 261

1      R. Wycoff - by Mr. Lesko
2  "Number of years policy has been in force."
3      A.   Okay.
4      Q.   Strike that.
5      A.   I see that.
6      Q.   You can put that aside.
7              MR. LESKO:  Next exhibit is 19.
8          (Wycoff Exhibit No. 19 was
9  marked for identification.).
10     A.   Excuse me a minute.
11         (Short break.)
12 BY MR. LESKO:
13     Q.   Let's finish up here.  Mr. Wycoff,
14 let me hand you what's been marked Exhibit 19
15 for identification, and just for the record,
16 that's got Bates No. MP 2461000354.
17         At the top of the page there is a
18 title of sorts that says, "Disclosure
19 statement - State of Pennsylvania."
20         Do you see that?  The bold type in
21 the center?
22     A.   Yes.
23     Q.   At the bottom of the page, do you
24 see your signature on that document?
25     A.   Yes, sir.

Page 262

1      R. Wycoff - by Mr. Lesko
2      Q.   Now, do you recall seeing this
3  document before?
4      A.   No, I don't.
5      Q.   Do you recall -- well, do you know
6  whether or not you received it?
7      A.   No, I don't.
8      Q.   Let me direct your attention to the
9  middle of the page where it says, toward the
10 left-hand side in bold letters, it says, "Basic
11 coverage on insured."
12         Do you see that?
13     A.   Yes.
14     Q.   It says, "If either coverage or
15 premium is non-level, show initial amount and
16 specimen amounts thereafter."
17         Do you see that?
18     A.   Yes.
19     Q.   Over to the right of that little
20 blurb that I just read, there are four
21 columns.  One says Amount of Insurance.
22         Do you see that column?
23     A.   Yes.
24     Q.   Underneath, amount of insurance is
25 $4500; is that right?

Page 263

1      R. Wycoff - by Mr. Lesko
2      A.   Yes.
3      Q.   It says, "Duration of coverage.
4  W.L."
5          Do you see that?
6      A.   Is that what that is?  Yes, I see
7  that.
8      Q.   Next column, it says Annual Premium.
9  Do you see that?
10     A.   Yes.
11     Q.   Next column it says Full Years
12 Payable.  Do you see that?
13     A.   Yes.
14     Q.   Underneath full years payable, it
15 says 30; is that right?
16     A.   Yes.
17     Q.   Is that inconsistent with what
18 Mr. Kaczmarek told you regarding the number of
19 years premiums would be payable for your $4500
20 policy?
21             MR. BARTHOLOMAEI:  Objection.
22 Lack of foundation.
23     Q.   You can answer the question.
24     A.   That Mr. Kaczmarek said the policy
25 wasn't this long?  Is that what you are saying?

Page 264

1      R. Wycoff - by Mr. Lesko
2      Q.   You testified earlier that
3  Mr. Kaczmarek told you that after paying
4  premiums for ten years, you wouldn't have to
5  pay premiums anymore; is that right?
6      A.   Right.
7      Q.   This states full years payable and
8  indicates 30; is that right?
9      A.   I see that.
10     Q.   Do you understand that to be
11 inconsistent with what Mr. Kaczmarek told you?
12     A.   Yes.
13     Q.   Regarding how long premiums would be
14 paid?
15     A.   Yes.
16             MR. BARTHOLOMAEI:  Objection to
17 form.
18     Q.   Your answer was yes?
19     A.   Yes.
20     Q.   Okay.  In the upper right-hand
21 corner of that document, you see the sales
22 representative's name?
23     A.   Um-hum.
24     Q.   What does it say?
25     A.   Yes, I do.  Joseph Kaczmarek.  Sure

66 (Pages 261 to 264)

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 265

1    R. Wycoff - by Mr. Lesko
2    looks like it.
3        Q.    You see where it says underneath
4    your name, Name of Proposed Insured, Robert G.
5    Wycoff, and it says Descriptive Title of
6    Policy?
7        A.    Yes.
8        Q.    It says W.L.; right?
9        A.    If that's what it, yes.
10       Q.    Do you understand that to be an
11   abbreviation for whole life?
12       A.    Now that you say that's what it is.
13       Q.    Okay.  Is that your understanding of
14   what it is?
15       A.    That's what you're telling me --
16       Q.    I am not asking you to tell me.  How
17   do you read that?  What would you say W.L. is?
18       A.    I wouldn't know.  If you hadn't told
19   me, I wouldn't know what that was.
20       Q.    Read that line.  It says descriptive
21   title of policy.  It says W.L.  What do you
22   think that means?
23           MR. BARTHOLOMAEI:  Objection to
24   form.  Don't answer that.
25           MR. LESKO:  Don't answer it

Page 266

1    R. Wycoff - by Mr. Lesko
2    based on what?
3           MR. BARTHOLOMAEI:  He already
4    asked you that.  You answered that twice.  This
5    is the third time.  You have his answer.
6        Q.    So your answer is the same as it was
7    before?
8        A.    Yes.
9        Q.    You see, just underneath that line
10   there's one of those four columns, it says
11   amount of insurance, $4500.
12          Do you see that?
13       A.    Yes.
14       Q.    So this document tells us that it
15   relates to a whole life policy and the name of
16   the proposed insured is Robert G. Wycoff.
17   That's yourself.  The amount of insurance is
18   $4500.  Years payable is 30 years; is that
19   right?
20           MR. BARTHOLOMAEI:  Objection to
21   form.  Lack of foundation.  He's never seen
22   this document before.  You are making a
23   statement about what it is.  I don't know how
24   he can answer that question.
25       Q.    I am asking him to read it and tell

Page 267

1    R. Wycoff - by Mr. Lesko
2    me what his understanding of what the document
3    says.  That's what I'm asking him.
4           MR. LESKO:  I don't need a
5    foundation --
6           MR. BARTHOLOMAEI:  This says
7    blank.  Are you asking him to read the words on
8    the paper?
9           MR. LESKO:  I am asking him to
10   look at this document and tell me whether it
11   refers to a whole life policy issued to him in
12   the amount of $4500.
13           MR. BARTHOLOMAEI:  Can you do
14   that?
15       A.    No.
16           MR. BARTHOLOMAEI:  Okay.
17       Q.    Why not?
18           MR. BARTHOLOMAEI:  Don't answer
19   that question.  The answer is no.
20       Q.    Why can't you do that?
21           MR. BARTHOLOMAEI:  Don't answer
22   that.  That is a ridiculous question.
23           MR. LESKO:  No, it's not a
24   ridiculous question.
25       Q.    What don't you understand about this

Page 268

1    R. Wycoff - by Mr. Lesko
2    document?
3           MR. BARTHOLOMAEI:  He's never
4    seen it before.
5           MR. LESKO:  He's seen it now.
6           MR. BARTHOLOMAEI:  He's never
7    seen it before today.  He just answered that.
8    He can't tell by looking at it what you are
9    asking him.  That's the answer.  He tried.  He
10   can't.  That's the answer.
11           MR. LESKO:  That's because you
12   told him he can't.
13           MR. BARTHOLOMAEI:  No.  I just
14   asked him.  He said no.  You asked him.  He
15   said no.
16           MR. LESKO:  Okay.
17       Q.    Mr. Wycoff, to your recollection,
18   have you taken any values, cash value or
19   dividends from any policy to pay for the 1994
20   policy issued by MetLife?
21       A.    Have I cashed in anything?
22       Q.    Yes.  Let me break it down for you:
23   Have you ever taken a policy loan from any
24   policy of insurance in order to pay any premium
25   on the 1994 policy?

67 (Pages 265 to 268)

Powers, Garrison & Hughes

Page 269

1    R. Wycoff - by Mr. Lesko
2    A.   No.
3    Q.   Have you ever withdrawn dividends
4    from any policy of insurance in order to pay
5    premiums on the 1994 policy?
6    A.   No.
7    Q.   Have you ever taken the cash value
8    of any policy in order to pay dividends on the
9    1994 policy?
10    A.   No, sir.
11    Q.   Have you ever used any other policy
12    values from any other policy to pay dividends
13    on the 1994 policy?
14    A.   No, sir.
15    Q.   Did the 1994 policy replace any
16    insurance that you owned at the time of
17    issuance?
18         MR. BARTHOLOMAEI:  Objection to
19    form.
20    A.   Can I make a statement?
21    Q.   I would like you to answer the
22    question first.  Then you can make whatever
23    statement you want.  Unless it is a --
24    A.   I want to make a statement because I
25    didn't understand your question.  Ask it again.

Page 270

1    R. Wycoff - by Mr. Lesko
2    Q.   I was going to say unless it was --
3    A.   Words, the way words are expressed
4    sometimes, have different meanings.  I want to
5    make sure I understand.
6    Q.   Fair enough.  Did you take cash
7    value from any policy of insurance in order to
8    pay for the premiums due on the policy of life
9    insurance issued by MetLife in 1994?
10    A.   No, sir.
11    Q.   Okay.  At the time you contacted
12    Mr. Kaczmarek regarding the purchase of the
13    1994 policy, had you already made up your mind
14    that you were going to buy the $4500 policy
15    referenced in the notice that U.S. Steel sent
16    to you?
17    A.   Pretty much so, yeah.
18    Q.   Would you have purchased that policy
19    even if Mr. Kaczmarek did not tell you that you
20    would not have to pay premiums beyond ten
21    years?
22         MR. BARTHOLOMAEI:  Objection to
23    form.
24    A.   Say that again.
25    Q.   Would you have purchased the 1994

Page 271

1    R. Wycoff - by Mr. Lesko
2    policy even if Mr. Kaczmarek did not tell you
3    that you were required to pay premiums only for
4    ten years?
5    A.   Tell you the truth, I wanted more,
6    but I couldn't.
7    Q.   You wanted more life insurance?
8    A.   Yeah.  I couldn't.
9    Q.   Did you tell Mr. Kaczmarek you
10    wanted more life insurance?
11    A.   I didn't say, "Well, I want more
12    life insurance," no.  I stated the fact that I
13    would like to have had more insurance.  $4500,
14    that was the limit.
15    Q.   Would you have purchased the $4500
16    policy even if you knew you had to pay premiums
17    beyond ten years?
18         MR. BARTHOLOMAEI:  I object to
19    the form of the question again.
20    A.   I will have to go over your question
21    in my mind.
22    Q.   Do you want me to restate it?
23    A.   Would you, please.  I am getting
24    sort of hazy right now, but go ahead.
25    Q.   Let me state it this way:  Let me

Page 272

1    R. Wycoff - by Mr. Lesko
2    restate it.  Would you have purchased the 1994
3    policy even if you knew at the time that you
4    would have to pay premiums for more than 30
5    years?
6         MR. BARTHOLOMAEI:  Same
7    objection.
8    Q.   Sorry.  For more than ten years.  I
9    will restate it again:  Would you have
10    purchased the 1994 policy even if you knew at
11    the time you purchased it that you would have
12    to pay premiums for more than ten years?
13    A.   Probably not.
14    Q.   You would not have?
15    A.   Probably not.
16    Q.   So...
17    A.   I would have, you know, being that I
18    had Metropolitan Life with the company, that
19    was my first -- how should I say?  Opportunity
20    to contact Metropolitan Life.  You know,
21    because I had Metropolitan Life with U.S. Steel
22    or U.S. Steel had Metropolitan Life, however
23    you want to put it.
24         That was a logical place for me to
25    go, was to go with the company that the large

68 (Pages 269 to 272)

Page 273

1    R. Wycoff - by Mr. Lesko
2  insurance policy, that was being reduced, but,
3  otherwise, no, I could have went to Prudential,
4  I could have went to Monumental, John Hancock
5  or something like that. I may have had to pay
6  a higher premium, probably, but at least I
7  would have been getting more insurance,
8  depending on what the premium was. These
9  things, you have to --
10    Q.   Do you know whether or not you were
11  required to answer medical questions for the
12  1994 policy? It was guarantee issued, wasn't
13  it?
14    A.   I can't say for sure. I really
15  don't know. I can't remember that.
16    Q.   Do you have an understanding, based
17  on your experience with life insurance, as to
18  whether or not you would have had to answer
19  medical questions and undergo medical
20  underwriting with other companies if you wanted
21  more insurance?
22    MR. BARTHOLOMAEI: Objection to
23  form.
24    A.   Wouldn't have been aware of that,
25  no.

Page 274

1    R. Wycoff - by Mr. Lesko
2    Q.   You would not have been aware of
3  that?
4    A.   No.
5    Q.   Okay. Let's assume that you were
6  unable to get life insurance from any other
7  company or from MetLife in an amount in excess
8  of $4500 because of your medical background.
9    Under those circumstances, would you
10  have purchased the $4500 policy, even if you
11  knew you had paid premiums in excess of ten
12  years?
13    MR. BARTHOLOMAEI: Objection to
14  form. Calls for a hypothetical. We're not
15  here to answer hypothetical questions.
16    A.   I can't answer that.
17    Q.   That's fine. I understand. So am I
18  to understand you correctly that the only
19  reason you purchased the $4500 policy was
20  because you thought that you wouldn't have to
21  pay premiums beyond ten years? Is that your
22  contention?
23    A.   When that was stated, made known to
24  me, yes.
25    Q.   Sorry?

Page 275

1    R. Wycoff - by Mr. Lesko
2    MR. LESKO: Can you read back
3  the answer.
4    (Answer read back.)
5    Q.   Sorry, Mr. Wycoff. Your answer is
6  unclear to me. My question is: Did you base
7  your entire decision to purchase the 1994
8  policy upon the representation that you paid
9  premiums for only ten years? Is that the only
10  reason you bought that policy?
11    MR. BARTHOLOMAEI: Are you
12  asking him other than what he's testified to
13  already, additional things?
14    Q.   Can you answer that question,
15  please.
16    A.   No, I can't answer that. I can't
17  answer that.
18    Q.   Why is it that you can't answer it?
19  Is it unclear?
20    A.   One of the reasons I bought the
21  policy was it was replacing what I was losing.
22  That was really my main reason for going for
23  the $4500: replace what I was losing.
24    Q.   So --
25    A.   That was the main reason why I

Page 276

1    R. Wycoff - by Mr. Lesko
2  decided on the $4500 policy.
3    Q.   Okay.
4    A.   So knowing that once it was stated
5  to me that this policy was at the end of ten
6  years, that made the cheese all the more
7  binding, as far as I was concerned.
8    Q.   So, in your mind, you were going to
9  buy the policy regardless of how long you had
10  to pay premiums, but it was a nice feature you
11  only had to pay premiums for ten years?
12    MR. BARTHOLOMAEI: Objection to
13  form.
14    Q.   Is that an accurate statement
15  describing what you just told me?
16    MR. BARTHOLOMAEI: Objection to
17  form. That completely misstates all of the
18  testimony that he's given.
19    MR. LESKO: I am asking him to
20  answer the question.
21    A.   I can't say. I can't say.
22    Q.   That's fine. I think we got your
23  testimony.
24    MR. BARTHOLOMAEI: Mr. Lesko,
25  how much longer are you going to go in this

69 (Pages 273 to 276)

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 277

1    R. Wycoff - by Mr. Lesko
2    deposition?
3        MR. LESKO:  Until I am
4    finished.
5        MR. BARTHOLOMAEI:  Do you have
6    an estimate of time?
7        MR. LESKO:  I do not.
8        MR. BARTHOLOMAEI:  Mr. Wycoff
9    informed me during the last break that he has a
10   headache.  He said on the record, in response
11   to a question you asked a couple of questions
12   ago, he is getting kind of hazy, is what he
13   said.
14        MR. LESKO:  I don't recall
15   that.
16        MR. BARTHOLOMAEI:  We can have
17   it read back.  Do not interrupt me, Mr. Lesko.
18        MR. LESKO:  I appreciate
19   your --
20        MR. BARTHOLOMAEI:  Do not
21   interrupt me.  I am bringing something to your
22   attention about my witness.
23        MR. LESKO:  I said I appreciate
24   you bringing it to my attention.
25        MR. BARTHOLOMAEI:  I am not

Page 278

1    R. Wycoff - by Mr. Lesko
2    done.
3        MR. LESKO:  Continue, by all
4    means.
5        MR. BARTHOLOMAEI:  If you do
6    not have an estimate of time, we're going to
7    have to continue the deposition to another
8    time.  I was going to suggest that if you were
9    going to be done within a half an hour -- I
10   mean, we've gone almost seven hours in a
11   discovery deposition which involves a sale of
12   two single policies.
13        You know, one would think that you
14   would have been able to cover all of your
15   material in that amount of time.  I understand
16   that you may have additional questions.  I am
17   just asking at this time if you have an
18   estimate as to how much longer you have so that
19   we can make an informed decision as to whether
20   we want to continue it because of Mr. Wycoff's
21   health, or if we can finish it now.
22        MR. LESKO:  Mr. Bartholomaei,
23   you made some valid points there.  But you
24   laced it with a couple of more ad hominem
25   attacks on my ability to complete the

Page 279

1    R. Wycoff - by Mr. Lesko
2    deposition.  I think the transcript or tape
3    will bear out the reason this took so long, is
4    Mr. Wycoff's very deliberate delays and thought
5    process in responding to the questions.  Some
6    might think it was a little excessive.  As well
7    as your insistence on a one-hour lunch.
8        Having said that, I would like to
9    continue for about another 20 minutes and see
10   if I can finish by the end of business today.
11   I would make that contingent upon these
12   questions to Mr. Wycoff.
13   Q.    Sorry I missed your statement before
14   about you getting hazy, if you said it.  I
15   missed it.
16   A.    That's all right.
17   Q.    If I heard that, I would have
18   immediately stopped the deposition and asked
19   these questions I am about to ask.  Are you
20   able to continue with the deposition for a few
21   more minutes in an effort to finish today?
22   A.    Sure.
23   Q.    If we do that, Mr. Wycoff --
24   A.    I'm all right.
25   Q.    If we do that, Mr. Wycoff, are you

Page 280

1    R. Wycoff - by Mr. Lesko
2    quite confident that you are lucid enough to
3    understand my questions and provide full and
4    accurate answers?
5    A.    If I can answer the question.
6    Q.    I understand that.  What I am trying
7    to get at, you mentioned you have a headache
8    and you feel a little hazy.  Is that going to
9    prevent you from responding accurately to the
10   rest of the question for the next 20 minutes or
11   so?
12   A.    No way.
13   Q.    Then I will try my level best to get
14   it done in the next 20 minutes.
15   A.    Women have headaches every day.
16   Q.    Mr. Wycoff, we are nearing the end.
17   You will be glad to know.  Please get the copy
18   of the Complaint in front of you.  It is
19   Exhibit No. 9.  I am going to refer to that for
20   the next couple of minutes, please.
21   A.    Yep.
22   Q.    Page 2 of the policy -- sorry, page
23   2 of the Complaint.  There's a paragraph No. 9.
24   You have to flip again, sir.
25   A.    Okay.

70 (Pages 277 to 280)

Page 281

1    R. Wycoff - by Mr. Lesko
2    Q.    You see paragraph No. 9 there.
3    That's underneath the heading Churning Schemes.
4    Do you see that?
5    A.    Yes.
6    Q.    Paragraph No. 9 says, "This
7    deceptive sales practice," the churning scheme,
8    "involves all persons who purchased life
9    insurance and annuity policies from MetLife
10   that was financed by the depletion of
11   nonforfeiture values from existing life
12   insurance or annuity policies upon one or more
13   of the following churning schemes."
14       Do you see where I read that?
15   A.    Yes, sir. I followed you.
16   Q.    It says the depletion of
17   nonforfeiture values from existing life
18   insurance.
19       Do you know whether or not you have
20   depleted nonforfeiture values of any existing
21   life insurance to pay for either the '91 or '94
22   policies?
23       MR. BARTHOLOMAEI: Objection to
24   form. First of all, I think you read it
25   incorrectly. More importantly, I don't think

Page 282

1    R. Wycoff - by Mr. Lesko
2    you've asked him if he knows what a
3    nonforfeiture value is. I am not sure that he
4    can answer the question. If he can, then he
5    can. That's my objection.
6    A.    Are you asking did I take money from
7    some other policy? Is that what you are
8    asking?
9    Q.    Well, no. I asked you that before.
10   You answered that question. I think you said
11   no.
12       Let me ask you this: Do you know
13   what a nonforfeiture value is?
14   A.    No, I don't.
15   Q.    Neither do I.
16       MR. BARTHOLOMAEI: Objection.
17   Form.
18   Q.    Yet you included this churning
19   scheme allegation which goes on for -- from
20   page 2 to page 5 in your Complaint. You don't
21   know what a nonforfeiture value is?
22       MR. BARTHOLOMAEI: Objection.
23   Don't answer that question.
24   Q.    Mr. Wycoff, is it your intention to
25   pursue claims based upon alleged churning

Page 283

1    R. Wycoff - by Mr. Lesko
2    schemes against MetLife?
3        MR. BARTHOLOMAEI: Objection.
4    Don't answer that question. For the record,
5    counsel's cellphone is going off again for the
6    second time during the deposition.
7        MR. LESKO: I object to that
8    characterization.
9        MR. BARTHOLOMAEI: It's not
10   true?
11       MR. LESKO: What's the
12   relevance?
13       MR. BARTHOLOMAEI: I am saying
14   your cellphone has interrupted the deposition
15   for the second time.
16       MR. LESKO: It didn't interrupt
17   the deposition. You interrupted the deposition
18   by making a reference to it. I shut it off
19   after a single ring.
20   Q.    Mr. Wycoff, do you intend to pursue
21   claims based upon alleged churning schemes
22   against MetLife?
23       MR. BARTHOLOMAEI: Objection.
24   Direct him not to answer.
25       MR. LESKO: What is the basis

Page 284

1    R. Wycoff - by Mr. Lesko
2    for that?
3        MR. BARTHOLOMAEI: I am going
4    to direct him not to answer any similar
5    question about things contained in the
6    Complaint.
7        MR. LESKO: Why?
8        MR. BARTHOLOMAEI: Calls for
9    legal conclusion. This is something that was
10   written by his attorneys, and things that we
11   have talked about that have brought about this
12   Complaint he is not going to answer. I am not
13   going to debate it with you.
14       MR. LESKO: I will say this for
15   the record. He testified earlier that he read
16   this Complaint and, in fact, he verified all of
17   the allegations in the Complaint.
18       MR. BARTHOLOMAEI: There you
19   go.
20       MR. LESKO: So now I am not
21   asking for attorney/client privilege
22   information or communication. I am asking
23   whether it's his intention to pursue claims
24   that he doesn't know anything about.
25       MR. BARTHOLOMAEI: That is a

71 (Pages 281 to 284)

Page 285

1      R. Wycoff - by Mr. Lesko
2  legal theory. I object to your
3  characterization. He doesn't know anything
4  about it. I am directing him not to answer.
5          MR. LESKO: He doesn't know
6  what nonforfeiture value is.
7          MR. BARTHOLOMAEI: Neither do
8  you, apparently.
9          MR. LESKO: Do you know?
10         MR. BARTHOLOMAEI: Yes.
11         MR. LESKO: I would love to
12  hear that definition.
13     Q.   On page 7 of the Complaint, there is
14  a series of allegations starting on page 7 of
15  the Complaint. There is a label Metropolitan's
16  DAC Tax Scheme.
17         Do you see that, Roman numeral
18  three?
19     A.   Yes.
20     Q.   First sentence says, "Through its
21  DAC tax scheme, Metropolitan passed along two
22  universal life policyholders with policies
23  issued in or before 1992 on its DAC tax
24  expenditures by improperly raising the cost of
25  term insurance charges for those policies."

Page 286

1      R. Wycoff - by Mr. Lesko
2      Do you see that?
3  A.   I see what you are reading.
4  Q.   Both the 1991 policy and the 1994
5  policies that we reviewed earlier, they're both
6  whole life policies; is that right?
7  A.   Originally, that's what I
8  understood, yes.
9  Q.   Are they -- do you own any universal
10  life insurance policy issued by MetLife?
11         MR. BARTHOLOMAEI: He is just
12  asking you a question, if you own any universal
13  life insurance policies.
14     A.   No.
15     Q.   Okay. Are these allegations
16  concerning universal life insurance policies --
17  strike that. Do you intend to pursue these
18  allegations regarding DAC tax scheme and
19  universal life insurance policies against
20  MetLife in this litigation?
21         MR. BARTHOLOMAEI: Same
22  objection. I direct him not to answer again.
23     Q.   Mr. Wycoff, is it possible, to your
24  understanding, for MetLife to pass along DAC
25  tax to you if you don't own a universal life

Page 287

1      R. Wycoff - by Mr. Lesko
2  insurance policy?
3          MR. BARTHOLOMAEI: Objection to
4  form.
5     A.   I don't know. I don't know.
6     Q.   Mr. Wycoff, do you own any deferred
7  annuity issued by MetLife?
8     A.   No.
9     Q.   Take a look at page 8 of the
10  Complaint. Starting at paragraph 31. Heading
11  No. 7. Heading Roman numeral four, "Selling
12  deferred annuities upon false and misleading
13  sales presentations and/or documents into a
14  qualified plan."
15         Do you see that?
16     A.   Um-hum.
17     Q.   Are those allegations concerning
18  deferred annuities relevant to your claims
19  against MetLife?
20         MR. BARTHOLOMAEI: Objection to
21  form. Do not answer that question.
22     Q.   Paragraph 33, page 8, under heading
23  five, "Selling policies as investment plans,
24  savings plan, retirement plan, or college
25  funding plan."

Page 288

1      R. Wycoff - by Mr. Lesko
2      Do you see that?
3  A.   Um-hum, yes, I do.
4  Q.   The first paragraph says, "Through
5  its investment plan scheme, Metropolitan
6  misrepresented, inter alia, that the products
7  being offered to potential customers were
8  comparable to investments for savings accounts,
9  pension maximization or retirement plans,
10  college tuition funding plans, mutual funds or
11  other types of investments or savings
12  vehicles."
13         Then there is a semi-colon and the
14  sentence continues.
15         Did Mr. Kaczmarek or Mr. Molchan
16  make any such -- any representations to you
17  referenced in that sentence?
18         MR. BARTHOLOMAEI: Objection to
19  form.
20     A.   I can't remember.
21     Q.   Well, did either of those two
22  gentlemen tell you that your policies are
23  comparable to investment or savings accounts?
24     A.   I can't remember that, either.
25     Q.   Do you recall whether either of

72 (Pages 285 to 288)

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 289

1     R. Wycoff - by Mr. Lesko
2   those two gentleman represented to you that
3   your policies, issued by MetLife, were
4   comparable to pension maximization or
5   retirement plans?
6     A.   I can't remember.
7     Q.   Did they represent that your
8   policies were comparable to college tuition
9   funding plans?
10     A.   I can't remember that, either.
11     Q.   Did they represent to you that the
12   policies were comparable to mutual funds?
13     A.   I can't remember that.
14     Q.   Did they represent that the policies
15   were comparable to other types of investment or
16   savings vehicles?
17     A.   I can't remember that, either.
18     Q.   Mr. Wycoff, is your objective in
19   maintaining this litigation against MetLife and
20   Mr. Kaczmarek to recover money damages?
21         MR. BARTHOLOMAEI:  Objection to
22   form.
23     Q.   Let me rephrase it.  Is your
24   objective in maintaining this litigation to
25   recover a sum of money from MetLife and/or

Page 290

1     R. Wycoff - by Mr. Lesko
2   Mr. Kaczmarek?
3     A.   I think they owe me something for
4   misleading me.  I certainly do.
5     Q.   How much do they owe you?  A dollar?
6   Hundred dollars?  Million dollars?  Some other
7   figure?
8     A.   I haven't decided on that yet.
9     Q.   Have you thought about it?
10     A.   From time to time.
11     Q.   Have you determined how much you
12   lost as a result of their alleged
13   misrepresentations?
14     A.   No, I haven't.
15     Q.   How would you determine that amount?
16         MR. BARTHOLOMAEI:  Objection to
17   form.
18     A.   I would need some advice on that.
19     Q.   Okay.
20     A.   I am not learned enough for that.
21     Q.   You're not what?
22     A.   Learned enough.
23     Q.   Learned.  All right.  Mr. Wycoff, I
24   appreciate your patience and the time that you
25   spent with me today in answering my questions.

Page 291

1     R. Wycoff - by Mr. Lesko
2   And I enjoyed meeting you.  I'm sorry it was
3   under these circumstances.  Best of luck with
4   your new great grandchild.
5     A.   Thank you very much.  I appreciate
6   that.
7         MR. LESKO:  Okay.
8         MR. BARTHOLOMAEI:  We'll read
9   and sign.
10         (Signature not waived.)
11         (Whereupon, the above-entitled
12   matter concluded at 4:55 p.m.)
13         -----

Page 292

COMMONWEALTH OF PENNSYLVANIA   )  E R R A T A
COUNTY OF ALLEGHENY            )  S H E E T

ROBERT G. WYCOFF
vs.
METROPOLITAN LIFE INSURANCE COMPANY, et al.

      I, ROBERT G. WYCOFF, have read the
foregoing pages of my deposition given on
September 17, 2003, and wish to make the
following, if any, amendments, additions,
deletions or corrections:

Pg. No. Line No.   Change and reason for
                   change:

In all other respects the transcript is true
and correct.

_____
            ROBERT G. WYCOFF

Subscribed and sworn to before me this
_____ day of _____, 2003.

_____
   Notary Public          (KA)

73 (Pages 289 to 292)

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 293

1
2    COMMONWEALTH OF PENNSYLVANIA)
     COUNTY OF ALLEGHENY          )
3
4         I, Kurt M. Ament, a notary public in
     and for the Commonwealth of Pennsylvania, do
5    hereby certify that the witness, ROBERT G.
     WYCOFF, was by me first duly sworn to testify
6    the truth, the whole truth, and nothing but the
     truth; that the foregoing deposition was taken
7    at the time and place stated herein; and that
     the said deposition was recorded
8    stenographically by me and then reduced to
     typewriting under my direction, and constitutes
9    a true record of the testimony given by said
     witness, all to the best of my skill and
10   ability.
11        I further certify that the
     inspection, reading and signing of said
12   deposition were not waived by counsel for the
     respective parties and by the witness and if
13   after 30 days the transcript has not been
     signed by said witness that the witness
14   received notification and has failed to respond
     and the deposition may then be used as though
15   signed.
16        I further certify that I am not a
     relative, or employee of either counsel, and
17   that I am in no way interested, directly or
     indirectly, in this action.
18
          IN WITNESS WHEREOF, I have hereunto
19   set my hand and affixed my seal of office this
     26th day of September, 2003.
20
21
22        -----------------------------
23
24
25

Powers, Garrison & Hughes

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 294

**A**

**abbreviate** 97:4
**abbreviated** 96:23
97:7,11,14
**abbreviation** 265:11
**ability** 6:8 7:6 11:12
55:24 161:8 278:25
293:10
**able** 7:14 26:16 27:25
28:2 43:7 58:9
113:20 158:11
194:12 208:14,18
278:14 279:20
**abnormalities** 152:14
**about** 10:5 11:7 15:15
16:21 18:4,6,10
20:16,22 23:14 30:8
32:19 34:17,23
36:11 41:13,24
43:15 49:18 50:4
54:2,15 58:3 60:4,5
60:7,18,24 64:18
67:6,15 71:12 76:21
82:9 83:9 86:21
90:18,23 93:3 94:10
94:11 100:21
101:12 106:17
108:6,7,9 110:3
113:11 116:14
119:3,7 131:2,19
137:3,18,22 138:8
138:12 140:8
141:10 142:12,16
144:9,16 146:14,14
146:16 156:23
162:4 166:22
169:20 170:13
180:6 181:11,11
186:25 196:13
200:13 205:11
206:22 214:17
215:22 216:2,9
217:22 218:2,4,5,6
218:10 222:3,5
234:9 236:25 238:7
239:14,15,18 245:2
248:17 253:9,18
254:24 260:25
266:23 267:25
277:22 279:9,14,19
284:5,11,11,24
285:4 290:9
**above** 114:5 169:4
**above-entitled** 291:11
**absolutely** 179:13
204:21
**abstract** 106:17

**abuse** 160:2,25
**abusing** 156:11
**abusive** 158:16
**accept** 159:12
**accepted** 213:19
**accordance** 256:14
**according** 97:3 110:8
134:22 188:7 235:3
**account** 46:5,14
47:15 69:14 161:3
198:6,8 200:10,17
200:19 201:11,13
205:25
**accounting** 20:16,17
21:7,12,20 22:6,17
22:25 31:13
**accounts** 46:4,8,12,17
46:22,24 288:8,23
**accurate** 7:5 8:8,23
116:7 276:14 280:4
**accurately** 7:21 280:9
**acknowledge** 80:11
256:10 260:4
**acknowledged** 203:20
**acted** 161:4,6
**action** 175:15 293:17
**actionable** 242:3,10
**active** 14:10 16:5
21:5 38:10
**activities** 39:25
**activity** 114:25
**actual** 26:4 138:9
**actually** 10:20 14:16
14:19 51:16 71:8
126:5 169:6
**ad** 278:24
**add** 85:23 207:10,18
**additional** 72:12 73:2
75:2 91:19 229:22
275:13 278:16
**additions** 72:5,8
292:8
**address** 244:8
**addressed** 58:21,25
59:4 197:16
**administration** 41:9
**adult** 140:18 141:8
**advanced** 119:24
**advantage** 160:24
**advertised** 48:7
**advertisement** 240:17
240:18,20
**advice** 290:18
**adviser** 50:9
**affect** 159:18
**affected** 119:13
**affirmative** 114:4

**affirmatively** 9:4
30:24 109:19 163:4
**affixed** 293:19
**afford** 103:11
**after** 15:23 16:5,21
16:22 21:5 22:3
32:23 38:10 39:13
39:18 87:11,22
124:3 132:2 135:7
142:4 163:20
170:24 188:21
199:5 206:19 228:4
228:9 233:12,20
235:7 238:20,22,25
240:20 241:9
248:20 250:12
252:12 254:21
255:7 264:3 283:19
293:13
**afternoon** 29:14
32:12 148:17
158:15
**again** 5:11 26:19
34:19 77:8,19 81:4
81:22 84:7 88:12
92:22 93:5 98:5
102:8 105:22
111:16,16 116:21
129:2,3 132:24
139:12 143:16
148:12 149:5
154:18 155:19,21
156:15 158:14
160:24 161:24
180:19 203:9 204:4
205:17 210:5,9
237:15 253:14
256:17 257:4
258:12,13 269:25
270:24 271:19
272:9 280:24 283:5
286:22
**against** 101:14 202:4
202:6 241:9 242:4
242:15 283:2,22
286:19 287:19
289:19
**age** 119:24 152:13
250:13,14 251:2
252:18
**agency** 1:16 37:4 38:2
142:5
**agent** 56:12,15 64:23
64:24 65:6,14,16
66:25 67:5,13,23
68:4 70:2 76:23
77:14 78:9 87:9

106:13 125:12
127:9 153:20,22
167:17 186:16
223:21
**agents** 168:5
**agent's** 66:16,20
81:14
**ago** 5:10 12:21 23:14
49:18 72:15 118:20
118:23 171:16
196:12,13 221:22
277:12
**agree** 146:15,22
196:20
**agreed** 135:12
**ahead** 7:12 14:6 24:2
83:17 86:19 145:14
152:10 156:14
157:15 166:25
177:21 192:18
208:22 209:13,20
223:25 224:3,5
233:8 248:14
249:17 254:24
271:24
**Ahh** 62:3
**air** 9:12 14:9,21,23
15:7,16,23,25 16:6
31:12 38:11 140:24
**Airplane** 15:20
**al** 292:5
**alia** 288:6
**allegation** 282:19
**allegations** 9:19
178:12 203:25
284:17 285:14
286:15,18 287:17
**alleged** 282:25 283:21
290:12
**Allegheny** 17:16
292:2 293:2
**allow** 28:3 207:4
210:6
**allowed** 112:12
166:12 212:2,5
**allusions** 86:6
**almost** 278:10
**along** 8:17 13:10
285:21 286:24
**already** 13:9,11 14:19
96:2 98:22 113:4
128:23 155:10,14
155:22 180:10
223:3 232:3 255:15
255:21 266:3
270:13 275:13
**always** 91:24 140:17

197:9
**ambiguity** 209:5
**amend** 191:8
**amendments** 292:8
**Ament** 2:6 293:4
**among** 51:12 254:20
**amount** 8:17 28:8
35:14,19 47:18
64:13 88:25 89:11
119:13 123:4 124:7
124:13 135:7
171:17 185:11
186:4 196:18 214:6
214:8 226:24
228:14 229:3
237:17,22 239:25
246:6 262:15,21,24
266:11,17 267:12
274:7 278:15
290:15
**amounts** 64:12
187:11 262:16
**analysis** 24:15,20
25:21,21 27:10,10
27:16 29:18
**analyze** 98:3
**and/or** 287:13 289:25
**annual** 51:6 53:9,22
84:13 90:18,22 91:8
91:13,17 92:5,16,16
92:18,19,24 93:2,7
93:11,13,22 94:3,9
95:9 263:8
**annually** 69:4 75:19
76:8 93:9 94:4
**annuities** 287:12,18
**annuity** 281:9,12
287:7
**annum** 75:22
**another** 8:8 16:22
22:12 24:11 27:7
39:10 66:10 72:3
94:16 108:17
130:21 158:24
160:24 174:5
200:11 204:11
216:23 243:17
278:7 279:9
**answer** 6:24 7:5,11
7:12 8:11,12 9:16
10:7,15 11:9 55:20
59:11 62:10,14,18
62:21 73:22,23
74:14,18 76:13
83:17 85:2 86:9,10
93:17,20,23 95:10
95:24 96:2,3,3,8,

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 295

97:25,25 98:2
103:12 105:20
106:19 107:3
108:18 113:3
116:24 117:9,23
118:6 130:18
142:14,19 146:11
146:14 147:15,17
147:22 148:13,19
148:24 151:10,11
152:11 154:23
155:9,12,14,21
156:6,10,12 157:5
157:15,20 158:5
159:23 162:19
163:5 166:9,25
167:3,7,13 168:3
172:6 176:18,22,23
176:24 177:5,9,20
179:8,10,16 180:10
180:12,13,14,16,19
181:14 193:4,4
194:3,12,13,22
195:2 202:10,17
203:11 204:8,16
205:15 206:5 207:4
207:20,20,21,25
208:8,9,11,12,13,14
208:18,22,24,25
209:5,6,18 210:6,19
210:21 217:17,18
219:10 224:4,8
226:10 241:12
253:15 254:24
255:22 257:19
263:23 264:18
265:24,25 266:5,6
266:24 267:18,19
267:21 268:9,10
269:21 273:11,18
274:15,16 275:3,4,5
275:14,16,17,18
276:20 280:5 282:4
282:23 283:4,24
284:4,12 285:4
286:22 287:21
**answered** 7:21 13:9
13:11 113:4 153:21
155:14,22 156:2
266:4 268:7 282:10
**answering** 183:3
204:9 290:25
**answers** 6:9,19 8:8,22
8:23 13:10 114:5
192:24 217:11
256:18 280:4
**anticipates** 148:16

**anticipating** 130:9
**anybody** 11:22,23
13:13,17 45:14,18
50:11 97:10 183:4
213:9 231:22 240:9
258:20
**anyhow** 174:20
**anymore** 171:21
233:13,21 264:5
**anyone** 9:18
**anything** 12:10 15:10
16:7 20:3 25:24
51:19 52:13 56:7
57:2,22 63:2 92:2,4
101:12 134:20
135:19 170:8,10,13
176:13 180:7 181:4
181:6,13,17,22
182:5,11 193:8
203:5 214:4 217:13
233:2 234:2,10,21
236:11 253:18
268:21 284:24
285:3
**anyway** 213:19
244:22
**apartment** 43:18,23
44:7
**apologies** 111:9
**apologize** 13:9 165:4
180:4 220:8,15
221:5
**apparently** 82:21
285:8
**appear** 254:19
**appears** 66:2 68:11
89:23 227:12
244:22,23 245:21
**appliance** 195:21
**applicant** 152:3
**application** 66:15
68:2,3,10 73:11
74:11,20,20 76:2
87:20 106:12 113:7
113:17 115:6 116:6
119:13 127:16
128:5 136:15,21,24
138:19,24 139:3,15
149:6,15,17,21
150:3,8,13,18,21
151:7,18,23,25
153:2,7,11,13,23
154:7 158:5 162:13
162:19 163:6
164:22 165:5,10
168:8,13,18,19,25
169:12,16 221:20

222:23 223:3,13
231:6,12,16 232:20
**applications** 166:12
166:20 167:18
**applied** 71:22 74:3,7
74:10,25 187:21
**applies** 10:13
**apply** 63:25 72:4,5
147:25 228:21,25
250:20
**applying** 87:14 88:10
113:9 127:13
**apportionable** 71:21
**appreciate** 125:9
194:22 205:14
277:18,23 290:24
291:5
**apprentice** 16:9,10
17:25 18:15,20 20:9
31:18 32:5 33:11
35:17 36:2
**apprentices** 35:6,12
**appropriate** 147:8
204:7
**approximately** 12:25
18:21 32:18
**April** 70:9 87:19
**area** 53:20
**areas** 39:20
**argumentative** 160:8
**Armstrong** 2:9
**Army** 14:23 15:7,23
15:25 16:6 31:12
38:11
**around** 39:4 49:19
231:15
**arrangement** 197:20
197:24 201:10,16
201:17,24 202:8
203:8 205:3,8,9,23
206:16,17,20,22
207:2 209:23
211:16 214:3 215:2
216:4 217:25 218:8
**arrived** 241:19,22
**ascertaining** 234:17
**aside** 69:24 78:5
79:20 129:16
220:16,17 231:22
246:4 261:6
**asked** 23:15 45:3 77:8
96:17 101:23 102:8
112:6 118:22,25
119:8 121:23
135:19 139:12
153:20 155:22,25
155:25 156:3,7

158:20 161:11
167:25 169:22
180:4 212:2 221:21
255:21 266:4
268:14,14 277:11
279:18 282:2,9
**asking** 6:7 51:10,20
56:22 58:2 73:25
80:7 82:24 83:14,15
83:21 84:21,21 85:6
85:7,10,18 97:24
106:17,21,25
108:12 110:20
114:23 115:24
117:2,11 121:2
128:16 137:4,12
147:11,12 156:23
156:24 157:9,10
158:13 159:4
160:17 165:23
166:2 176:3,21
182:22 192:5
193:17 194:5,6,22
205:17 206:10
216:8 219:22
221:18 241:17,18
242:8 253:9 256:20
265:16 266:25
267:3,7,9 268:9
275:12 276:19
278:17 282:6,8
284:21,22 286:12
**asks** 114:3,24
**assertion** 147:7
**associate** 127:10
133:18
**associated** 42:14
**assume** 7:20 13:19
38:19 46:3 167:23
192:15 223:12
225:11 256:12
274:5
**assumes** 166:24
167:12
**assuming** 192:14
**assure** 103:4
**atmosphere** 140:22
**attached** 80:12
162:13 221:20
222:9 223:3,14
244:4
**attacks** 278:25
**attain** 252:18
**attained** 45:15
**attaining** 33:23
**attend** 16:6 40:19,23
41:3,13,24 43:10

**attended** 43:12
**attention** 262:8
277:22,24
**attorney** 7:7 9:18
10:5,10,11 142:11
142:15,16,22
241:15
**attorneys** 13:14 50:16
51:17 94:15 160:13
218:10 239:2,9
241:10 242:5,17
284:10
**attorney/client** 10:8
143:2 145:6,10,15
159:25 241:23
284:21
**audio** 142:2 161:22
**August** 197:16
**authority** 186:3,12,20
186:23
**AUTHORIZATION**
1:16
**auto** 41:15 45:9,10
**automatic** 69:13
200:9 205:24
215:13
**automatically** 49:9
198:7
**avenue** 103:3
**awards** 10:22
**aware** 104:24 113:6
143:9 200:19 202:4
209:13,14 245:2
273:24 274:2
**away** 101:16 107:22
**a.m** 2:11

**B**

**B** 3:11 4:2
**back** 8:14 11:19
18:24 20:18 24:6,7
26:19,20 32:9 34:19
39:5 54:8 59:15
66:14 67:3 70:11
71:4 75:4 80:15
84:3,4 102:21 104:8
111:3,15,16,18,23
112:2,7,13 114:13
116:21 121:19
125:11,12,18,18,19
141:21 143:15
145:2 146:5 151:15
161:24 162:9,12
170:3 172:9 174:16
187:25 189:22
197:13 203:17
214:22 216:13

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 296

217:16,18 225:2
228:5 229:17
243:12 250:7 275:2
275:4 277:17
**background** 5:22
274:8
**bad** 138:21
**bank** 22:2 46:4 54:22
214:17 215:3,6,11
215:12
**Barbara** 12:15
**Barry** 40:10 41:13,15
45:9
**Bartholomaei** 2:16
10:14,17 11:5 46:19
46:25 51:18 53:25
57:24 58:8 60:2,9
60:21 62:3,9,13,17
62:23,24 63:6,9
70:22 73:21,25 75:5
78:15,22 80:22 82:8
82:12,17 83:13 84:2
84:5,20 85:17 86:2
93:2,15,19,25 94:7
94:13,19,24 95:4,8
95:16,21,25 96:7
97:23 105:15,18,25
106:7,11,16,22
107:18 108:2,5,10
108:16 110:23
111:2,6,10,14,19,20
111:25 112:5,9,12
112:16 113:3
114:19 117:7,12,16
117:21 118:2,8,21
119:4 120:25 121:6
125:2 128:7,16,23
130:7 141:14,23
142:13,18,22 143:5
143:8,10,18,22
144:3,6,8,15,19,23
145:4,11,13,17,23
146:3,7,12,20,23
147:2,14,20,24
148:10,12,15,18,21
148:23 149:24
150:22 151:3,9,14
154:25 155:5,10,13
155:19 156:3,14,18
156:22 157:4,8,12
157:19 158:7 159:9
159:11,14 160:4
161:2 163:11
165:11,22 166:2,15
166:18,23 167:2,6
167:10,16,21,25
169:22 175:21

176:7,14,19 177:3
177:12 178:4,7,17
179:7,11,15 180:11
180:15,20 181:7,10
184:15 185:18
186:14 188:10,25
191:24 192:4,9,23
193:15,20,25
196:25 198:15,20
199:12,25 201:25
202:9,16,19,24
203:9,14 204:17
205:4 206:6 207:3,9
207:13,24 208:7,10
208:16,20,23 209:3
209:24 210:5,17
213:3 216:6 217:6
219:9,13,17 220:3
220:10,18,20 221:6
223:18,23 230:8
231:25 236:7
241:11,15,21 242:6
242:10 249:12,16
250:21 251:7
252:25 253:3,6,7,13
254:22 255:9
256:16 257:11
260:12 263:21
264:16 265:23
266:3,20 267:6,13
267:16,18,21 268:3
268:6,13 269:18
270:22 271:18
272:6 273:22
274:13 275:11
276:12,16,24 277:5
277:8,16,20,25
278:5,22 281:23
282:16,22 283:3,9
283:13,23 284:3,8
284:18,25 285:7,10
286:11,21 287:3,20
288:18 289:21
290:16 291:8
**Bartholomaei's**
112:15
**base** 275:6
**based** 59:11 74:10,17
74:19 79:14 112:15
193:5 202:7 217:12
254:18 266:2
273:16 282:25
283:21
**Bashur** 245:12
**basic** 20:12 28:10
78:25 228:6 252:15
252:20 254:5 257:9

262:10
**basis** 62:22 69:10
78:20 94:9 109:25
117:2 142:20 156:9
167:8 181:9,15
193:10,19,23
203:23 205:5
207:16 215:15,18
241:13 252:22
256:3 283:25
**Bates** 66:4,8,12 70:13
71:9 80:15,23 98:23
122:21 125:6,22
129:11 149:4 171:6
174:7,10,13 179:21
185:9 187:3 197:15
218:24 220:11,12
221:3,17 242:5
244:21 248:4,5,8,24
253:24 259:15
261:16
**bathroom** 9:13
216:21
**bear** 118:25 161:3
279:3
**bearing** 122:21 171:6
**became** 20:20 22:2
**become** 17:3
**becomes** 147:9
**before** 2:6 5:10,19
6:22 10:18 11:6
14:16 18:16 21:3
34:15,16 43:24
49:20 62:7,12,16
66:22,25 71:2 72:13
75:10 77:2,11 78:13
80:10 82:3,7 86:24
86:25 94:20 97:14
100:11 101:12
104:5 120:7,8,17,20
126:25 129:9,18,23
132:2,9,10,11,20
133:4 139:12
141:13,23,24 142:9
149:18 164:8,9
171:20 172:2
174:21,23 175:20
176:2,5,25 179:18
180:5 185:10
195:17 199:18,20
199:23,24 200:3
209:14 215:22
216:5 217:25
219:10 221:3,4,10
221:13 222:12
224:9 230:7,12
231:9 232:19

238:20,22,24,25
241:4 243:3 245:5
248:16 249:11
253:10,14 255:25
259:17 262:3 266:7
266:22 268:4,7
279:13 282:9
285:23 292:23
**beg** 31:6 114:16
125:25
**began** 141:25
**beginning** 206:9
**begins** 10:3 143:2
**behalf** 1:8 80:25
160:11 162:3
**Behrend** 2:15 239:8
239:13 240:21
**being** 7:14 19:16
39:13 82:4 102:14
121:18 148:17
200:18 216:3
235:10 240:4,8
272:17 273:2 288:7
**belief** 169:11
**believe** 16:11 21:17
34:9 49:7 53:20
65:7,8,8 69:11
77:13 83:12 86:8
91:16 97:22 98:10
98:13,15 104:6
126:19 133:8 170:8
170:10,12 171:22
173:5 175:23 180:9
181:5 191:6 203:4
204:25 205:11,19
206:24 226:6
230:16 231:9 233:2
233:19 234:4
238:18 239:22
240:14 242:2,14
260:17
**believed** 181:19 182:6
**believes** 208:4
**Bell** 41:18
**below** 169:10
**beneficiary** 107:22
**benefit** 27:9 73:7
101:16 103:14,15
103:20 104:15,23
105:2,9 107:23
109:4 220:6 228:14
244:6
**benefits** 59:24,25
60:16,20 61:3,12,16
71:21 83:24 84:7
103:14 247:6
249:23 254:21

256:5,7,13 257:7,15
257:25 258:3,9,16
258:16,24
**besides** 181:13
**best** 6:8 7:5 11:12
12:19 55:24 73:23
85:2,2,19 117:23
169:10 208:11
280:13 291:3 293:9
**bet** 52:8
**Bethlehem** 32:10,14
32:24
**between** 6:4 8:24 10:9
32:4 37:15 51:7
**beyond** 188:3,9
270:20 271:17
274:21
**big** 45:11 161:10
226:18
**bill** 69:17
**billing** 53:24
**bills** 69:21 200:13
**binder** 59:24,25 60:4
60:5,5,6,8,12,13
**binding** 276:7
**bit** 5:23 19:2 40:22
164:7 209:8 242:11
**black** 6:14
**blank** 267:7
**Block** 50:6,7
**blurb** 262:20
**bold** 261:20 262:10
**bonds** 47:6,8,11 50:5
**booklet** 61:11
**bookstore** 38:24
**bored** 39:13
**both** 46:7 104:15
127:2,4,5,6,7 224:9
224:18,20,22,24
286:4,5
**bottom** 84:10 99:18
99:19,20 125:23
127:23 164:18
169:4 174:7 184:8
187:4 222:20 250:9
259:25 260:24
261:23
**bought** 48:18 164:4
164:11 197:5
275:10,20
**box** 52:3,5,8,9,11,14
52:23,24 53:3,8,17
54:14 56:15,21
154:15,18 162:16
163:2 165:20,25
166:5 183:19
**boxes** 165:19 166:3

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 297

167:19
boy 40:22
boys 40:7,8 139:24
Braddock 13:24
branch 245:12
break 9:10,14,17
  86:17 109:23
  142:10,11,16
  147:19 148:5,10,15
  148:21 200:24
  206:18,19 216:11
  216:12,18,21
  261:11 268:22
  277:9
breakdowns 25:14
breaks 9:17
brevity 175:14
brief 216:21 230:4
briefly 5:21
bring 10:25 11:14,16
  12:17 204:19
bringing 277:21,24
broadly 196:11
brochures 137:22
broker 48:21 64:23
  70:2 78:9 102:6
  125:13
brought 284:11
BTC 20:19
budgeting 25:24
budgets 19:25
build 104:23
bullet 191:4,5,9
bullets 191:3
burden 103:6
burned 48:2
business 20:19,25
  21:15 23:2 31:14
  41:9 89:21,25 90:7
  244:24 245:21,22
  279:10
businesses 45:6
buy 48:6 74:25 102:4
  196:21 270:14
  276:9
Buyer's 260:6,11,15
  260:19,22
B-A-S-H-U-R 245:12
B3 253:24

___ C ___

C 5:2 75:18
calculated 159:17
calculator 110:5,8,16
calibrations 25:4
call 9:13 21:10 22:13
  23:6 24:10 27:19

42:7 43:3,21 56:5
  103:20 106:13
  143:11,13,13
  174:20 207:5 210:7
  226:18 240:2,19
called 2:3 14:2 15:21
  20:18 26:20 61:15
  70:17 101:10,21,23
  104:22 130:6
  230:16 251:24
  253:24 254:13
calls 242:7 274:14
  284:8
came 26:22 27:17
  39:5 53:13 67:5
  91:10 230:7 231:3
  241:8 243:7 247:21
camera 159:2
campus 17:17
cancel 213:14
canceled 53:19 69:18
caption 175:16
car 34:13,19
card 44:16,16 45:3
  227:13 245:21,22
cards 89:21,25 90:7
  244:25
care 44:5 57:6
career 38:10
Carnegie 227:14
carpet 44:4
carried 162:4
case 5:16 10:5 103:5
  103:7 106:18
  107:19 108:6,12
  130:17 142:12,17
  142:25 143:4,24
  144:2,4 145:7,14
  146:10 147:4,19
  148:2 203:24 204:2
  204:21,22 207:12
  212:20 239:2
cash 73:4 103:15,21
  103:24 104:16,23
  268:18 269:7 270:6
cashed 49:16 268:21
cassette 123:25
Cauley 37:3,23,25
cease 170:18
ceased 16:5
cellphone 151:2
  283:5,14
center 1:12 187:5
  199:2 261:21
centered 123:25
central 101:21
Centre 2:10

cents 109:16,16,17
certain 27:5,18,22,23
  27:24 28:5 47:19
  58:13,16,19,23 59:3
  59:7,17 92:15,23
  93:12,17,20,22,23
  114:9 171:17 189:7
  189:17,20
certainly 61:2 150:9
  153:9,14 159:16
  290:4
certificate 23:22
  71:21 75:15 105:12
certificates 24:9,11
certified 168:17
  169:14
certify 293:5,11,16
CERTIFYING 1:16
cetera 114:10
challenge 159:12,15
  159:17,17 161:21
chance 179:8 201:2
change 186:3,12,20
  186:23 292:9,10
changed 186:7
character 161:19
characterization
  283:8 285:3
characterizations
  160:23 161:18
charge 36:10,13,15
  36:16,20
charges 197:8 214:17
  215:12 285:25
charging 215:8,12
check 43:6 69:13,16
  69:18 80:4 113:21
  167:19 198:5,10,11
  198:12 200:8,21
  209:7,9 214:14
  215:3
checked 71:23 163:2
  165:21,25 166:4
checking 46:5,7,9,10
  69:14 198:6,7 200:9
  200:16,18 201:11
  201:13 205:24
checks 43:22,25 44:4
  53:20 152:4
Check-O 201:9
Check-O-Matic
  197:20,23 199:6
  201:16,24 202:7
  203:8 205:3,8,9,22
  206:3,16,21 207:2
  209:8,15,22 211:15
  214:3,15 215:2

216:4,9 217:24
  218:8,16
cheese 276:6
chew 140:10,14 164:2
  164:4,6
Chewed 163:7
chewing 141:2 163:21
children 40:3,5,19
  45:5 115:10
choose 187:16
chose 229:21
churning 281:3,7,13
  282:18,25 283:21
cigar 140:14 141:4,4
  154:10,15 162:23
  163:8,16 164:5
cigarette 139:23
  140:6,7
cigarettes 154:10,11
cigars 140:8,9,12
  163:9,14,21 164:2,4
  164:11
circled 171:22,23,24
circumstances 274:9
  291:3
Civics 22:15
Civil 1:4 2:5 145:9
  175:15
claim 101:14,16
  202:4,6,13 242:15
claiming 82:19,23
claims 203:24 241:9
  242:3,11 282:25
  283:21 284:23
  287:18
clarification 7:16,19
  67:10 125:10
  206:12 221:23
  230:11
clarify 82:18 108:13
  111:18 173:20
  183:13 224:3,7
  232:22 256:25
class 21:9,25 22:24
classes 14:6 18:2 19:7
  19:8,13 20:7 23:17
  31:9
clause 252:12
clean 39:17
cleaned 39:21,23
clear 6:25 7:15 8:19
  112:2 137:13 146:7
  196:3 206:9 216:13
clearly 111:6,10
client 142:23 145:12
  145:20,22 147:11
  159:23 160:11

161:9,13 202:22
  241:16
client's 148:8 259:23
clinic 42:13,15 43:3
close 35:21
Closer 260:24
CLU 245:12
cluttering 56:20
coated 39:20
colleague 203:19
college 16:7 17:16
  20:19,20,25 21:15
  21:16,16 23:3 31:14
  40:20 41:14,25
  43:10 287:24
  288:10 289:8
Colorado 15:14
Columbus 63:11,14
  63:23 64:3,15,16
  65:15,23 66:21 67:4
  67:16 71:5,6 73:13
  74:4,25 76:6,15,17
  76:19 79:8,11
  102:23 131:4
column 35:19 70:16
  124:6 237:16
  262:22 263:8,11
columns 96:21 124:6
  262:21 266:10
come 27:21 28:24
  42:12 54:7 117:15
  121:13,13 129:25
  161:24 164:5 200:3
  216:13 230:17
  231:17 234:25
  246:21
comes 28:4,7 119:3
coming 29:16 218:14
  243:12
commencement 14:18
commercial 239:21
  239:23
COMMON 1:2
Commonwealth 2:8
  292:2 293:2,4
communication 17:18
  17:19,20 284:22
communications 10:9
  143:3 241:18
Community 17:16
companies 50:18,23
  57:10 107:6,12
  115:22 152:13,17
  166:13,21 254:15
  273:20
company 1:8 5:15
  19:11,24 30:14

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 298

33:15,25 36:24
37:24 44:19 45:19
48:2,15 64:22 73:19
79:22 105:6,8,21
106:5,24 107:13,25
115:13 116:16
117:10 118:13
121:21 122:4 139:5
151:21 153:17
164:24 165:6
175:17 219:3,8
229:13 234:18
235:18 236:12
250:25 251:20
260:7 272:18,25
274:7 292:5
company's 122:11
comparable 190:19
191:18,22 288:8,23
289:4,8,12,15
comparing 206:3
compiled 7:25 8:20
Complaint 175:15
189:22 202:11,13
203:10,11,16,17,21
203:24 238:22
280:18,23 282:20
284:6,12,16,17
285:13,15 287:10
complete 28:2,10
79:8 115:5 117:14
139:5 161:5 169:12
278:25
completed 24:14
87:20 128:6 167:17
completely 20:22
23:14 160:6,22
166:19 167:11
209:16,16 276:17
completing 136:24
complex 43:17,19
44:9
comply 206:7
components 140:24
comport 139:7
comprehend 184:2
comprised 122:9,10
computer 41:10,11
42:23 44:24
concern 227:5
concerned 276:7
concerning 50:21
148:21 170:6,10,11
231:4 286:16
287:17
conclude 235:13
concluded 10:4

291:12
conclusion 207:6
210:8 218:14 241:8
242:7 284:9
concurred 135:16
condition 115:9
152:14
conditions 114:10
254:19
conduct 160:21
161:19
conducted 146:17
158:18
conducting 112:10,11
conference 6:3
confident 280:2
confused 94:2 95:9
174:15
Congratulations 32:2
162:6
connection 19:22
20:7 81:2 181:12,17
consider 7:4
consideration 149:22
consist 244:23
consisted 24:20
consistent 212:8,15
consists 65:22 244:22
constitutes 293:3
consultant 44:22,23
44:24
consulted 50:8
contact 88:14 129:25
130:11 191:16
226:7,9 229:12,21
239:7,10 242:4
272:20
contacted 88:9,9,17
88:19 130:4,10
132:13,14 226:14
229:24 230:2,5
239:2 270:11
contained 79:25
82:15,25 97:17
151:18 152:25
153:12 168:19
169:15 237:7 284:5
containing 166:14,21
195:7 249:22
contains 65:25
113:17 168:13
203:21,25
content 9:23 241:18
contention 180:22
181:2 201:22
236:13 274:22
contents 9:19

contest 191:17
context 8:2 60:6
120:16 122:3,7
contingent 279:11
continually 161:7
continue 27:7 97:2,20
142:7 147:17
216:22 23 278:3,7
278:20 279:9,20
continued 228:10
252:17
continues 158:22
159:6 288:14
continuing 207:18
continuous 250:13
continuously 32:6
contract 87:19
186:20
contrary 161:5
184:12,18 185:15
185:19
contributions 72:4
control 75:15 160:16
conversation 88:22
120:23
conversations 9:23
88:5 146:9 147:18
148:3 231:20
Conversely 56:17
Conversion 253:25
convert 254:7 255:3
cooperate 19:20
coordinate 27:8 36:5
coordinator 43:21
copies 89:21
copy 24:8 71:14 82:7
219:7,12,15,19,20
219:24 221:2,7
260:5,21 280:17
corner 70:14 81:20
222:21 245:20
259:22 264:21
corners 39:22 207:22
Corporation 251:25
254:15
Corps 14:9,22,23
15:8,16,23,25 16:6
31:13 38:11
correct 24:18 26:6
31:19 37:20 59:13
61:20 73:8,9 80:22
82:11 89:3,13 96:19
100:15 107:10
110:2 114:12
126:20 130:18
139:7 140:5 152:23
173:25 174:3

182:15 191:8
197:18 211:7,9,10
225:20 227:12,16
227:22 228:3,12,15
228:16 229:15
231:13 237:23
238:2,5 247:7,8
292:21
corrections 292:8
correctly 6:19 103:13
133:7 172:10
215:10 253:20
274:18
cost 27:9,15 120:19
120:20,24 121:8
244:6 285:24
council 67:6
counsel 1:9 2:13 5:14
293:12,16
counsel's 283:5
count 12:8 54:8
countless 203:18
County 1:2 17:16
292:2 293:2
couple 7:3 48:8 65:20
124:6 184:22
244:24 277:11
278:24 280:20
course 13:10 18:22
22:11,12,19,21 23:2
24:14,16,20 25:13
27:11 29:19 38:25
39:19 50:14 59:14
59:22 60:17 120:22
158:10 174:14
196:5 255:23
courses 17:6,9,10
19:21,23 20:6,8,10
20:14,16,22 16 23:8
26:2 30:2 31:9
court 1:2 5:25 6:5,9
9:7 62:25 112:6
141:25 142:5
161:25
courtesy 145:3,21,21
145:24 161:15
cover 89:15 184:20
278:14
coverage 61:6 64:13
64:14 227:24 229:4
229:9 262:11,14
263:3
covered 19:12
credited 75:19 76:8
critical 29:6
cup 21:9
current 97:3

curriculum 22:20
customer 116:12,19
118:12
customers 288:7

D

D 3:2 5:2 66:7
DAC 285:16,21,23
286:18,24
damage 210:10
215:16,19 216:8
damaged 209:21
210:4,16,24 214:24
216:3
damages 207:11
289:20
damn 45:3 48:17
date 8:16 70:10 75:16
87:19 99:3,4,7
108:22 109:2 123:6
124:2,3 127:20
128:2,20 154:4,9
162:15,22 199:5
235:11
dated 90:13 190:6
197:15
dates 192:13
Dave 44:15
David 40:10
day 23:17 38:24,25
39:19 54:19 57:9
86:13 111:9 119:9
128:17 137:9 148:8
159:19 203:20
216:23 239:12
280:15 292:24
293:19
daylight 29:13
days 185:5 228:22
237:10 293:13
Daytime 23:18
Dayton 41:4
deadman's 32:15
deal 19:14
death 73:7 101:16
103:5,7,14,20
104:15,23 105:2,3,8
105:11 107:23
109:4 120:14
228:13
debate 284:13
decades 101:3,5
December 15:3,4
deceptive 281:7
decide 131:24 132:5
139:6 152:21
decided 31:13 40:22

40:23 89:4 102:3
276:2 290:8
**deciding** 54:25 151:8
151:19
**decision** 153:2 275:7
278:19
**decisions** 29:9 36:21
**declare** 169:10
**declared** 75:20 76:9
76:11
**deducted** 201:11,12
**Defendant** 5:14
**Defendants** 1:8,9 2:3
2:17
**deferred** 250:25
251:16 252:9 287:6
287:12,18
**definition** 121:12
138:15 285:12
**degree** 21:20 41:7
**delays** 279:4
**deletions** 292:8
**deliberate** 279:4
**deliver** 77:17 231:10
**delivered** 87:3,7
231:11 243:20
**Democracy** 22:8,14
22:17
**demonstrating**
224:17
**denying** 194:19
**depending** 189:12
273:8
**depleted** 281:20
**depletion** 281:10,16
**deposit** 71:24 73:15
73:24 74:12 75:19
76:3,8
**deposited** 73:4,12,18
**deposition** 1:6 2:2
3:13,14,15,16,17,18
3:19,20,21,22,23,24
3:25 4:4,5,6,7,8,9
5:18,22 9:11,21
11:8,23 12:5,11
13:11,16 54:4 62:20
94:14 95:17,19
112:10 142:3,4
143:2 146:18 147:6
147:13 156:4,8
158:10,21,24,25
160:16,19 161:7,22
181:15 199:14
203:2 204:20 206:9
216:22 277:2 278:7
278:11 279:2,18,20
283:6,14,17,17

292:7 293:6,7,12,14
**depositions** 147:21,25
158:17
**described** 61:11
104:9
**describing** 276:15
**Description** 61:15
**descriptive** 265:5,20
**designed** 160:23
**designs** 44:25
**details** 114:4 207:11
**determination** 28:22
131:13
**determine** 10:12
25:15 26:21 47:16
55:8 56:13 57:11,17
58:4 83:15 85:7
89:17 116:6 136:13
150:24 187:11
210:23 214:24
290:15
**determined** 27:23
35:18 57:20 218:12
290:11
**determining** 26:25
**detriment** 205:21
206:24
**Detrimentally** 209:25
**diatribe** 162:3
**dictates** 255:6
**die** 117:6 118:14
**died** 101:5
**difference** 84:24
**different** 35:17 53:22
84:8 94:8 103:14
104:8 115:21 156:8
168:3 174:13 220:9
220:13 226:12
242:11 244:24
270:4
**difficult** 71:14,15
**digest** 7:4
**diminished** 181:24
**diminishing** 233:9
**diploma** 16:16,17
17:2,5 18:17
**direct** 99:18 142:18
146:11 148:23
168:5,6,7 203:11
204:7,15 262:8
283:24 284:4
286:22
**directed** 168:2
**directing** 62:20 96:3
155:20 156:12
167:3,6 180:18

202:10 285:4
**direction** 62:23
143:17,19,21 156:9
159:22 293:8
**directly** 72:17,23
293:17
**directs** 7:11
**Disabilities** 152:8
**disability** 60:19
**disagree** 199:25
**discard** 55:2
**discarded** 55:11
**disclose** 10:7 148:2
241:22
**Disclosure** 261:18
**discovery** 158:17
174:14 278:11
**discuss** 9:18 10:11
11:22 12:13 13:8,16
142:3 145:5,13,18
145:20 148:9,14
161:12
**discussed** 139:4
206:17 235:10
**discussion** 31:11
86:16 141:16
144:19,22,25
145:16 200:23
218:10 239:4
**disposition** 76:5
**district** 142:25 143:6
143:7,23 144:2,5,10
144:14
**dividend** 49:5,6,9
54:7 75:16,17 92:11
122:6,9
**dividends** 70:18,21
70:24 71:3,20 72:16
73:3,4,12,18 74:3,6
74:10,24 75:10 76:5
76:24 77:4 83:11,17
83:21 84:8,13,14,16
84:17,23 85:9 91:18
91:23,24,24 92:6
96:25 97:2 102:16
121:11,12,12 122:3
187:7,12,17 188:15
188:24 268:19
269:3,8,12
**DIVISION** 1:4
**doctor** 192:5
**doctors** 42:3,6,14
114:10
**doctor's** 42:25 43:4
**doctrine** 160:2
**document** 61:11 66:2
74:13 76:7 79:2

81:7,12 82:2 92:21
97:6 98:3 99:17
114:18 122:21,23
129:9,12,14 136:4
138:3,18 139:4,12
141:13 149:13
156:23 165:22
171:6,7,8 174:5
175:19,23 176:2,5,6
176:25 177:7,22
178:20 179:4,18,20
179:22,24 190:9,12
191:2,13 194:2
197:14 198:23
200:4,10,11 218:24
220:19,20 221:8,9
221:11,13 222:12
223:4,16 227:18
242:22,24 243:2,4,6
243:10,18 244:2,4,5
244:11,21 245:4,5
245:18 249:11,13
249:15,18,19,22
250:4 253:9,10,17
254:13 255:5 256:4
256:14,15 257:6
259:16 261:24
262:3 264:21
266:14,22 267:2,10
268:2
**documents** 13:4
50:17,20,25 51:16
51:25 58:6 61:19
66:7,12 68:18,20
78:8 79:4,5 80:11
80:24 83:2 92:7
134:15,17,20
138:10,12,15
164:14 174:14
232:14,17,18
244:24,25 287:13
**doing** 29:16 110:18
158:9 164:3 177:23
255:22
**dollar** 290:5
**dollars** 64:17 290:6,6
**done** 25:16 26:10
28:20 43:23,25
86:11 140:17 141:7
150:13,16 155:7
172:6,7 178:21
196:6 278:2,9
280:14
**Donna** 40:11 41:24
42:2,19
**door** 39:8
**doubled** 14:14

**doubt** 56:4 164:12
200:12
**doubts** 239:18
**down** 6:5,10,11,15,17
9:8 22:3,4 25:13
26:12 29:7 39:3
41:18,20 42:4,5,15
43:17 50:4 67:7
71:12 103:5 184:7
191:11 240:25
257:17 260:25
268:22
**drawer** 52:4
**driving** 34:13,20
**drop** 226:17,21,23
**drops** 227:6
**due** 18:22 19:2 75:16
124:2 214:2 270:8
**duly** 5:5 293:5
**dungeon** 39:4
**Duquesne** 37:9
**Duration** 263:3
**during** 9:11,17 13:4
18:22 23:17 27:10
33:7,22 38:10,25
39:19 50:14 54:19
59:14,22 133:3,23
134:10,17 136:5,8
136:11 137:14,22
138:10 139:13
142:11,16 146:10
147:19 148:4,10,15
148:17,21 158:13
170:9 171:12 187:6
231:24 232:5,10,14
233:3 234:2 239:4
243:18 277:9 283:6
**duty** 14:10 16:5 21:6

### E

**E** 3:2,7,11 4:2 5:2,2
126:14 292:2,2,2
**each** 6:13,13,18 75:16
137:18
**earlier** 100:25 112:22
131:2,20 139:4
152:5 156:4 161:11
171:11 181:14
182:16 205:7 264:2
284:15 286:5
**early** 156:8
**ease** 125:20 244:2
**economics** 26:7
**Edmiston** 190:7
**education** 16:7 17:6
18:2
**Edward** 245:22,23

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 300

| | | | | |
|---|---|---|---|---|
| **effect** 145:6,7 | 179:18 196:18,24 | 160:7 165:17 | 261:10 | 192:17,21 193:22 |
| **effective** 227:20 | 219:7,15,20,25 | 166:10 168:6,14 | **executive** 37:9 | 205:14 |
| **efficient** 28:23 | 221:24,24 222:6 | 179:4 181:11 | **exhibit** 3:13,14,15,16 | **expressed** 270:3 |
| **effort** 279:21 | 275:7 | 184:25 191:16 | 3:17,18,19,20,21,22 | **extensive** 254:12 |
| **eight** 29:13 36:14 | **entirety** 183:7 | 195:16 196:6 216:2 | 3:23,24,25 4:4,5,6,7 | **extent** 39:25 207:4 |
| 174:11 | **entitled** 191:2 | 218:6 221:9,12 | 4:8,9 24:3,4,10 | 210:7 |
| **either** 19:2 38:16 43:9 | **envelopes** 12:9 | 222:11 223:16 | 65:12,19,19,19,21 | **extra** 54:8 89:7,8,18 |
| 48:13 119:22 | **epidermic** 15:13 | 235:12 243:2 245:4 | 66:5,6,10,12,14,19 | 219:11 |
| 160:12 168:5 | **equipment** 26:18 | 245:25 246:17 | 68:19 69:25 70:11 | **extraneous** 80:11 |
| 183:13 215:25 | **Ernsberger** 2:15 | 248:21 249:10,21 | 78:6 79:7,24 80:2 | **E-D-M-I-S-T-O-N** |
| 254:5 262:14 | 12:15 13:3 203:19 | 259:16 268:23 | 80:10 82:15 83:3 | 190:7 |
| 281:21 288:21,24 | 239:8 | 269:3,7,11 | 86:22 89:20 90:12 | |
| 288:25 289:10,17 | **especially** 8:14 | **every** 29:12,14 35:11 | 91:20 97:17 98:20 | **F** |
| 293:16 | **Esq** 1:11 2:16,18 | 44:3 47:20 53:2 | 98:21,24 102:14 | **F** 1:8 175:17 245:12 |
| **elect** 75:16 96:23 97:7 | **essentially** 24:13 | 57:9 58:14,19,24 | 113:14 122:15,16 | **face** 88:25 123:4 |
| 97:11 205:9 257:14 | 161:9 | 59:4 91:2,3,5 98:8,9 | 122:20 125:19 | **fact** 6:2 96:12,13 |
| 257:16,20 | **establish** 8:4 27:25 | 124:3 138:3 187:10 | 127:19 128:14 | 100:13,14 167:17 |
| **electing** 201:15 | 51:14 55:16 56:10 | 222:6 280:15 | 129:8,22 132:24 | 170:15 184:10,11 |
| **election** 76:3 | 79:13 148:7 256:3 | **everybody** 14:4 | 137:19 141:21 | 194:20 203:6 |
| **eligible** 84:13,17 | **established** 253:8 | 224:13 253:3 | 146:4 149:2,3 | 212:18 233:5 |
| 122:8 152:19 | 255:20 | **everything** 6:5,10,11 | 164:13 169:2 | 234:16,17 271:12 |
| 248:15 | **estate** 38:13 45:16 | 6:15 8:14 42:23 | 170:21,22 171:2,6 | 284:16 |
| **Emotional** 216:8 | **estimate** 13:2 18:7 | 51:10 53:5 55:9,23 | 173:7 174:5,6,17,19 | **facts** 8:4 166:24 |
| **employee** 37:23,25 | 27:18 28:4 34:10 | 56:9,14 130:16 | 175:9,12 177:15 | 167:12,15,19,24 |
| 38:3 61:16 247:6 | 277:6 278:6,18 | 134:9 153:19 232:9 | 183:24 184:5 | **Factual** 179:25 180:2 |
| 293:16 | **estimating** 8:16,18,19 | **evidence** 166:24 | 189:25 190:2,5 | **failed** 293:14 |
| **employees** 17:11 | 8:24 | 167:13 | 195:12,14 197:12 | **fair** 7:22,23 47:2 |
| 19:17 45:12,13 | **estimators** 27:17 | **evidently** 127:8 | 197:14 198:13,19 | 146:18 159:5 |
| 248:15 254:14 | **et** 114:10 292:5 | 153:20 190:15 | 198:20 201:3,4 | 200:14 220:14 |
| **employer** 247:2 | **evaluate** 116:5 | 212:16 | 206:18 218:19,20 | 270:6 |
| **employment** 33:4,22 | **even** 21:3 23:13 28:25 | **exact** 44:11 233:16,17 | 218:24 219:6 | **fairly** 116:17 |
| 59:15,22 60:17 | 43:7 47:18 54:8 | 233:23 235:11 | 220:21,23 221:2,18 | **fall** 24:15 |
| 227:25 | 55:19,22 67:20 | **exactly** 25:11 41:21 | 221:24,25 223:16 | **false** 153:16 166:9,11 |
| **Emptied** 56:9 | 81:18 148:7 163:22 | 203:23 209:4 | 227:3,11 234:6 | 166:14,21 168:13 |
| **enclosure** 190:25 | 168:22 183:20 | 222:17 234:14 | 236:19 242:21,22 | 182:3 193:7 287:12 |
| **end** 14:5 21:21 135:7 | 246:17 258:25 | 241:2 | 244:16,17,20 245:6 | **familiar** 143:4 |
| 170:15,19 173:23 | 270:19 271:2,16 | **examination** 2:4 5:7 | 247:10,11,14,25 | **familiarity** 59:12 |
| 174:11 233:10 | 272:3,10 274:10 | 190:18 | 248:2 255:6 259:8,9 | **families** 43:18 |
| 234:25 235:5 | **evening** 18:6 | **examine** 184:23 237:6 | 259:12 261:7,8,14 | **family** 32:8 39:14 |
| 252:14,17 276:5 | **event** 105:3 | 237:11 | 280:19 | 40:14 43:24 45:14 |
| 279:10 280:16 | **events** 204:20 | **examined** 5:6 | **exhibits** 65:11 203:19 | 45:18,21,23,24 89:9 |
| **engine** 15:20 | **eventually** 20:20 22:2 | **example** 10:10 38:13 | **existing** 281:11,17,20 | 103:7,10 115:10 |
| **engineer** 35:5 | **ever** 5:18 11:20 20:13 | 57:8 89:15 113:15 | **exists** 256:9,9 | 131:6,14,21,25 |
| **engineering** 17:13 | 38:9,21 45:8,14 | 114:15 167:16 | **expect** 8:13 107:8 | 134:4 |
| **English** 1:12 2:18 | 47:8,23 49:4,6 50:8 | 195:20 | **expenditures** 285:24 | **far** 26:9 31:12 109:8 |
| 5:14 253:4 | 52:19 56:14 58:20 | **exasperated** 159:21 | **Expense** 120:16 | 176:10 217:10 |
| **enjoyed** 291:2 | 59:23 61:10,14 62:7 | **exceed** 228:21,25 | **expenses** 89:15 | 256:22 276:7 |
| **enlisted** 15:4 | 62:16 63:18,20 | 230:23 | **experience** 273:17 | **fashion** 52:22 |
| **enough** 7:23 27:24 | 70:25 72:11 77:11 | **exception** 10:6 | **expert** 207:11 | **faster** 95:22 |
| 47:2 59:14 115:16 | 79:10,12,15,21 82:2 | **excess** 107:24 109:8 | **expire** 135:8 | **fatigue** 217:13 |
| 115:18,25 188:17 | 82:6 86:24 87:10 | 274:7,11 | **explain** 5:21 134:23 | **favor** 125:18 141:20 |
| 200:14 220:14 | 90:3 97:10,13 102:9 | **excessive** 279:6 | 251:14 | 143:14 247:14 |
| 248:23 270:6 280:2 | 104:4 110:9 118:9 | **exchange** 107:15 | **explained** 134:23 | **feature** 134:24 135:4 |
| 290:20,22 | 120:6,15,19 122:2 | **Excluding** 33:12 | 189:10 254:7 | 135:14 276:10 |
| **entered** 25:18 | 129:18,22 139:20 | **Excuse** 94:18,22 95:2 | **explaining** 172:20 | **feel** 99:15 216:21 |
| **entire** 107:23 176:2,4 | 140:12 141:2,10 | 95:6 109:21 112:5 | 181:23 | 280:8 |
| 176:23 177:11 | 149:17 156:24 | 157:2 172:13 | **explanation** 147:3 | **fellows** 21:24 |

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 301

felt 217:10
fever 15:14
few 36:3 279:20
figure 213:23,24
  290:7
figured 132:7
figures 69:6 96:22
  172:16
file 52:4
filed 1:8 238:23
files 90:8 191:7
fill 106:12 136:15
filled 231:12
filling 136:20
finance 19:21,23
  197:7
financed 281:10
financial 25:22 50:9,9
  50:12 57:9 103:4
financially 205:20
  210:2
find 43:7 57:14 66:16
  113:20 115:9,16
  158:15 230:16
finds 143:14
fine 8:24 121:23,25
  130:20 145:12
  177:15 187:2
  200:11 210:20
  213:7,9 216:15,17
  216:24 217:2,7,8,9
  217:14 228:9
  274:17 276:22
finish 6:24 152:10
  181:23 216:14
  223:24 261:13
  278:21 279:10,21
finished 159:8,10
  178:23 277:4
finishing 226:11
firm 5:13 11:25 37:19
  38:3 146:15 148:3
  158:23 239:8,9
first 5:5 9:16 10:21
  25:16 27:3 28:22
  39:16 55:6 75:13,14
  90:12,17 91:20 93:5
  93:6 99:7,19 107:24
  124:10 129:17,20
  129:25 130:3
  136:11 159:12
  169:8 178:9,14,22
  178:23 179:3,24
  183:14 184:10
  191:10 197:19
  199:15 210:25
  215:3 221:17

231:17 238:10,16
  238:19,25 239:7,10
  241:8 242:4,16
  243:19 252:12,21
  256:23 269:22
  272:19 281:24
  285:20 288:4 293:5
fit 35:9 138:14
five 40:6,14 94:8
  118:20,23 162:4
  179:12,12 287:23
fixed 15:19
flip 70:12 71:8 75:4
  80:9 113:15 114:13
  125:11,11,18
  177:14 178:3
  179:20,23 185:8
  195:12 237:14
  248:7,8,23 253:23
  280:24
flipped 126:3
Floor 2:9
focus 194:23
Folded 224:15
follow 28:11
followed 281:15
following 14:19
  281:13 292:8
follows 5:6 188:6
force 68:16 252:16
  261:2
foregoing 292:7
  293:6
foreman 35:2 36:7,9
  36:10
foremen 48:8
forget 13:10 42:9
forgot 20:22 23:14
  31:3 63:16 209:16
forgotten 62:16
form 35:16 46:20
  57:25 60:3,22 62:4
  70:23 78:16 84:3
  93:16 106:2,8 108:3
  117:8 128:8 135:3,3
  135:6 137:2,2,5
  149:25 150:23
  151:4 155:2,6
  157:20 163:12
  165:12 166:16,24
  170:17 171:9,15,25
  172:2,3,4,10,14
  174:19,20,21,23
  181:8 184:16
  186:15 188:11
  189:2 191:25
  192:24 197:2

199:13 202:2
  207:16 208:17,21
  213:4 216:7 219:18
  223:19 230:9 232:2
  234:20 236:8
  241:12 242:7
  250:22 251:8
  254:23 255:10
  256:17 257:12
  260:13 264:17
  265:24 266:21
  269:19 270:23
  271:19 273:23
  274:14 276:13,17
  281:24 282:17
  287:4,21 288:19
  289:22 290:17
formal 5:25 8:6
forms 56:6 135:21
  138:7 232:18,19
formulate 74:17
Fort 41:18
forth 254:19
found 190:19,19
  191:18,18,21,22
  192:2 193:13 194:7
  194:24 195:4,6
  211:6,6,11,18,22
  212:7,10,13,25
  213:16
foundation 78:23
  79:13 83:9 199:19
  205:5 209:19 251:8
  253:8 263:22
  266:21 267:5
four 1:12 10:19 11:14
  18:21,22 34:22
  42:18 94:8 124:6
  207:22 262:20
  266:10 287:11
fourth 237:5
four-year 21:16
frankly 156:11
  161:15 225:12
free 99:15 105:10,14
  107:7
French 40:12
friends 45:19,21,23
  45:24
from 1:16 10:10 12:6
  13:19,23 16:20,25
  21:5,13 22:22 23:6
  27:5 31:11,12,21,24
  33:13 37:18 41:16
  47:17 48:8 50:6
  51:25 56:7,14 57:9
  57:18 58:24 59:4

60:17 66:23 69:14
  73:4 75:20 76:9,11
  79:21,25 80:16,20
  81:6,23 82:9,16
  83:5 85:10 87:23
  90:13,23 91:8,14
  92:4,5 94:9 95:11
  96:5 99:2 102:10
  106:4,5 108:15
  110:11 111:4
  121:13,13,14 134:3
  136:9 141:6,7,17
  151:23 162:4 164:5
  183:4 190:6,15
  192:15 193:14
  197:16 198:6,7
  200:9,16,18 201:11
  201:12 205:24
  207:22,22 215:5
  217:20 220:11
  227:19 228:4,9,18
  229:4,5 231:23
  236:11 246:21
  247:19,21 248:16
  249:5 251:19
  253:17 256:8,13
  257:7,9,9,15,16,17
  257:25 258:3,9,10
  258:17,25 260:6,15
  260:19,22 268:19
  268:23 269:4,12
  270:7 274:6,7 280:9
  281:9,11,17 282:6
  282:19 289:25
  290:10
front 68:19 77:10
  145:20 161:8
  183:20 184:6,20
  196:18,24 221:12
  221:15,16 236:19
  280:18
full 179:9 185:6
  237:11 263:11,14
  264:7 280:3
fully 6:20
full-time 23:11
fund 227:15 252:2,7
  252:10
funding 287:25
  288:10 289:9
funds 20:3 46:17
  288:10 289:12
funeral 89:15
funniest 118:9
further 16:6 17:5
  143:16 209:8
  226:23 229:11

293:11,16
future 79:5 174:9
  208:19

G
G 1:4,7 2:2 3:5 5:2,4
  123:3 175:16 265:4
  266:16 292:4,6,22
  293:5
garage 45:9,10,11
garbage 56:20 57:13
  57:16
Gateway 1:12 2:10
gather 201:14
gathering 51:16
gave 35:2 39:16 55:20
  55:23 117:13,22
  137:7,10,14 179:9
  181:14 190:15
  194:17 197:3 206:8
  207:24 224:13,22
  224:23 225:3,3
  243:10,18 244:13
  260:20
general 8:21 54:15
  58:2 104:13
Generally 118:16
gentleman 21:25 39:6
  289:2
gentlemen 288:22
geometry 20:11
George 40:10
gets 62:18
getting 19:16 39:12
  51:23 117:17 118:3
  118:5 271:23 273:7
  277:12 279:14
girls 40:7,8
gist 72:24
give 7:2,3,9 10:18,25
  24:7 39:11 55:3
  73:22 98:2 99:22
  135:20 147:2
  151:22 164:6 179:7
  194:3 195:20 221:6
  224:16,18 230:20
  243:13
given 29:11 56:12
  96:2 154:23 174:25
  208:10 215:21
  276:18 292:7 293:9
gives 34:13 71:22
  75:18 245:10
giving 51:20 159:5
glad 7:16 204:5
  205:18 280:17
glanced 183:25

Robert G. Wycoff
September 17, 2003

Robert G. Wycoff v.
Metropolitan Life Insurance Company

Page 302

184:20 199:15
**global** 203:25
**gnaw** 164:7
**go** 5:22 7:11 15:11,12
  16:20,21,22 17:25
  20:24 21:8 24:2
  26:14 27:3,4,7
  35:12 38:25 42:19
  43:19 62:19,20
  72:23 80:7 83:14,17
  86:19 95:22 116:21
  130:15 132:5
  145:14 149:3
  152:10 156:14
  157:15 160:15,18
  164:13 166:25
  170:3 177:21
  180:17 182:22
  192:18 195:12
  208:22 209:13,20
  210:18 216:25
  223:25 224:3,5
  233:8 248:14
  249:17 254:24
  271:20,24 272:25
  272:25 276:25
  284:19
**God** 20:22 39:2,18
  130:5 134:13
**goes** 5:24 17:3 20:18
  20:18 28:22 43:25
  44:18 71:3 73:2,5
  82:20 94:14 282:19
**going** 6:10,14 10:19
  11:13 14:12 21:12
  21:22 23:11,15
  34:19 35:12,13
  38:23 39:7 45:2,2
  46:3 51:24 54:7
  57:24 80:15 84:5
  86:8 112:7,14
  114:22 125:2
  130:18 139:11
  141:25 143:12,15
  145:12,19 146:21
  150:19 157:24
  158:8 161:25
  162:10 171:4
  176:12,20 180:12
  180:17 186:5,7
  190:22 192:10
  193:10 194:3
  195:13 202:17
  207:3 209:11,17
  210:12,23 224:6,7
  239:15 240:23,24
  242:18 245:2 270:2

270:14 275:22
  276:8,25 278:6,8,9
  280:8,19 283:5
  284:3,12,13
**gone** 14:20 72:17
  278:10
**good** 10:16 21:10
  31:4,7,9,9 40:14
  43:9 44:13 48:9
  59:14 115:16,17,25
  116:7,18 119:20
  132:7 134:24
  135:13,14 248:23
**gotten** 118:20
**governs** 256:4 257:6
**graduate** 13:22 14:5
  . 18:15 41:5
**graduated** 13:19 14:4
  14:16 22:4
**grandchild** 291:4
**granted** 254:11,16
**graphy** 42:9
**great** 11:3 32:2 52:25
  217:15 255:20
  291:4
**group** 42:3 67:3
  227:19,23,24
  247:18 248:12,13
  254:13
**grown** 39:14 40:16
**guarantee** 273:12
**guard** 37:6,10,21
**guess** 8:22 21:9,11
  27:18 39:12,19 42:6
  43:20,21 54:3 67:25
  73:20,21 74:8 76:16
  81:17 101:22
  103:16,17,20
  112:16,21 115:11
  115:15 116:13
  121:4 130:7,8 148:6
  152:8 166:11
  192:10,11 193:16
  193:21 196:2 215:3
  222:9 226:17 230:2
  238:24 240:18
  259:18 260:16
**guessing** 8:24 168:23
**Guide** 260:6,11,15,19
  260:22
**guideline** 28:11 35:21
**guidelines** 28:16
**gunnery** 15:13

---
**H**
---
H 3:11 4:2 50:6,7
  292:2

**habit** 140:20
**half** 12:21 278:9
**halfway** 71:12
**Hall** 142:24 145:7
**hallway** 145:5
**Hancock** 273:4
**hand** 65:18 84:11
  87:7 171:4 175:11
  242:20 261:14
  293:19
**handed** 183:17
  218:22 219:19
  220:4,5,20 224:10
  225:5,17,18 226:4
**handful** 14:8 49:25
**handing** 122:18
  220:25 227:10
**handle** 69:21
**handled** 73:14
**handlers** 36:19
**hands** 21:10 122:11
**handwriting** 77:22,24
**happen** 159:7 210:12
**happened** 85:3
  . 157:14
**happens** 202:25
**hard** 164:9 207:7,8
  . 207:25 208:2,3
  216:9
**hated** 32:16
**having** 5:5 19:5,24
  73:10 75:25 76:2
  124:19 179:3
  200:12 201:8 216:9
  279:8
**hazy** 271:24 277:12
  279:14 280:8
**head** 9:6 31:2 216:13
**headache** 277:10
  280:7
**headaches** 280:15
**heading** 123:24
  178:15 187:5 199:5
  237:4 253:24 281:3
  287:10,11,22
**headings** 124:7
**headphones** 42:5
**health** 60:19 113:18
  113:25 114:9 115:9
  115:17,18,25
  116:14,18,21,22
  117:6 118:11
  119:12,19,21
  278:21
**healthy** 40:14
**hear** 107:19 108:12
  120:23 162:7

285:12
**heard** 48:8 72:11,12
  97:13 104:4 118:9
  120:6,15,19 122:2
  236:11 279:17
**hearing** 120:10
**heart** 63:21
**heirloom** 96:15
**held** 14:19 158:9
**hell** 81:8 120:22
  163:21 168:21
  240:2 255:18
**help** 13:11 42:2 44:18
  85:11 95:17,19
  126:24 130:21
  132:12,16 200:10
  244:12
**helpers** 36:18
**helps** 81:3 84:22
**her** 39:12,15,16,21,24
  44:11 59:9
**hereunto** 293:18
**hesitated** 40:21 48:11
**high** 13:19,22,24
  22:15
**higher** 26:22 28:25
  . 119:20,24 211:2,12
  211:14,19 212:7,17
  212:21 213:11,22
  214:9 215:12 273:6
**him** 7:9 58:6 62:20
  65:7 66:22,23 68:14
  78:24 85:12,13 95:9
  96:3 98:2 101:11,12
  106:17,24,25,25
  107:19 108:5,12,16
  111:23 112:13
  128:17,19,21 129:2
  129:18 130:3,4,16
  135:13 143:16
  146:8,9,11 147:17
  148:23 155:20
  156:4,12,15,15
  157:9,10 165:23
  167:3,7 168:2,2,4
  168:15,22 169:17
  171:13 172:2
  176:15,15,17,21
  177:13 178:5 179:7
  179:9,15 180:19
  186:9 192:6 193:3,4
  194:8,10,14 202:10
  204:7,15 206:8
  207:4,5,20,21 208:4
  210:6,13 219:14,19
  220:5 223:24
  226:14 230:10,13

230:19,20,21,22,25
  240:23 241:17
  243:12 253:9,16
  258:8 266:25 267:3
  267:7,9,11 268:9,12
  268:14,14 275:12
  276:19 282:2
  283:24 284:4 285:4
  286:22
**himself** 114:20
**hindering** 95:19
**hired** 16:8
**history** 152:12,13
**Hmm** 132:15
**hold** 33:24 34:17,25
  47:14 86:6 141:14
  223:23
**home** 26:14 38:22
  49:16,22 52:2,3
  61:19 76:16 134:2
  194:17 210:18
  230:17
**homemaker** 38:20
  39:13
**hominem** 278:24
**honestly** 130:19
  173:8,9 194:13
  223:20
**hooked** 21:13
**hope** 44:15
**horizontal** 25:3
**horns** 203:15
**hospitalization** 60:23
  200:17
**hour** 278:9
**hours** 18:5 29:13
  35:14,19,22,22,22
  35:25 36:3,14
  278:10
**house** 40:17 137:9,14
  192:16 243:13
**household** 69:21
**Housewife** 38:20
**housing** 43:16
**huh-uh** 9:7
**humblest** 111:9
**Hundred** 290:6
**hundred-page** 249:13
  249:15
**hypothetical** 108:7
  193:2 274:14,15
**hypotheticals** 106:18

---
**I**
---
**idea** 99:22 130:5
  132:7 134:8 171:14
  171:18 184:3 229:2