IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT G. WYCKOFF, | : CIVIL ACTION NO. 00-2248 |
| Plaintiff, | : |
| v. | : CHIEF JUDGE AMBROSE |
| METROPOLITAN LIFE INSURANCE COMPANY and KENNETH F. KACZMAREK, | : |
| Defendants. | : |

**DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY AND KENNETH F. KACZMAREK'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE UNRELATED TESTIMONY AND EXHIBITS OF JAMES RAYL**

**PRELIMINARY STATEMENT**

Defendants Metropolitan Life Insurance Company ("MetLife") and Kenneth Kaczmarek, by and through their attorneys, McCarter & English, LLP, hereby submit the following Brief in Support of Motion in Limine to Exclude from Evidence Unrelated Testimony and Exhibits of James Rayl, which are attached to the Motion as Exhibits. Plaintiff has identified a deposition of Rayl (the "Rayl transcript") from an unrelated litigation.[1] However, Rayl was a disgruntled employee with an axe to grind who unsuccessfully tried to sue MetLife. His testimony and exhibits, listed as Plaintiff's exhibit nos. 114 and 115, are irrelevant to this matter and will only serve to inflame the jury. Moreover, Plaintiff failed to designate any portion of Rayl's testimony dated April 13, 1998 (Exhibit 115) and, thus, has waived his right to introduce that testimony at trial.

---

[1] Plaintiff designated specific portions of Rayl's February 25, 1998 deposition testimony to be read at trial. Defendants are filing simultaneously with this Brief their line by line objections to plaintiff's designations.

-2-

Plaintiff's claims arise from the sale of a $10,000 whole life policy in 1991 (the "1991 policy") and the sale of a $4,500 whole life policy in 1994 (the "1994 policy"). Specifically, plaintiff claims that, in 1991, former MetLife sales representative Norman Molchan (deceased) misrepresented that plaintiff could purchase a $10,000 Whole Life policy by paying out-of-pocket premiums for only fourteen years.[2] Additionally, plaintiff asserts that an illustration was used indicating that, in year 2011, the 1991 Policy would have a cash value of $7,746.00 and a death benefit of $12,112.00. Plaintiff further alleges that former MetLife sales representative Kenneth Kaczmarek misrepresented that plaintiff would have to pay monthly premiums on the 1994 Policy for only ten years, with no subsequent payments thereafter. Plaintiff further alleges that Mr. Kaczmarek did not did not disclose that the 1994 Policy was, in fact, a whole life policy with payments payable for plaintiff's death.[3] The main issue in this case is whether Mr. Molchan and Mr. Kaczmarek made any misrepresentations with respect to the sale of the 1991 and 1994 policies and whether plaintiff was reasonably justified in relying upon those alleged statements.

Rayl's testimony in Rayl v. Metropolitan Life Insurance Co., Inc., CV 97-505, relates to his perceived career problems at MetLife. Rayl's testimony is wholly unrelated to this lawsuit, irrelevant, highly prejudicial, and inadmissible pursuant to Federal Rules of Evidence 401, 402, and 403.

---

[2] Initially, the 1991 Policy was sold with a monthly premium of $59.40 based on plaintiff's classification as a non-smoker. However, a medical exam revealed nicotine in plaintiff's urine and he was reclassified as a smoker. Thus, the 1991 Policy was issued with a higher monthly premium of $73.20. Plaintiff avers that he did not contest the higher premium. Nevertheless, he contends that, "by paying the additional amount of premium," he still would only have to pay out-of-pocket premiums for fourteen years.

[3] For a more detailed discussion of the relevant allegations regarding the policies at issue, this Court is respectfully referred to Defendants' Pretrial Statement.

Rayl's deposition exhibits contain memoranda drafted by Rayl that reflect his opinions on AP sales prior to 1990 and policies that were to become eligible for AP in 1990-1995. Plaintiff's AP allegations are in connection with sale of two whole life policies in 1991 and 1994, respectively. The 1991 sale is prior to most of Rayl's written opinions. While Rayl authored several documents in 1994, those documents mainly relate to issues that arose with policyholders who purchased policies in the early to mid 1980s and whose policies were initially eligible for AP in the early 1990s. As these exhibits do not apply to the transactions and describe events that are not related to the 1991 and 1994 sales, the evidence is irrelevant under Federal Rule of Evidence 401[4] and therefore inadmissible at trial under Federal Rule 402. [5] Even if admissible, the Rayl testimony and exhibits should be excluded under Federal Rule of Evidence 403 as highly prejudicial.[6]

The Rayl testimony and exhibits are also inadmissible alleged "bad acts" under Rule 404(b). The Rayl exhibits additionally contain inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule under Federal Rules of Evidence 803 or 804, including Federal Rule of Evidence 803(6) Records of Regularly Conducted Activity.

---

[4] Federal Rule of Evidence 401 defines "relevant evidence" as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[5] Rule 402 provides that relevant evidence is generally admissible, and irrelevant evidence is inadmissible.

[6] Pursuant to Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Any probative value that the Rayl testimony or the AP-related exhibits could possibly provide is negligible when compared to the unduly prejudicial impact it would have upon the jury. See Taylor v. Monette, et al., 564 F.Supp. 1, 2 (E.D.Pa.1982)(excluding from trial evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm.")

**ARGUMENT**

I.  **RAYL'S APRIL 13, 1998 TESTIMONY SHOULD BE STRICKEN DUE TO PLAINTIFF'S FAILURE TO DESIGNATE ANY PORTION OF THAT TESTIMONY FOR USE AT TRIAL.**

While plaintiff listed Rayl's April 13, 1998 deposition transcript in <u>Rayl v. Metropolitan Life Ins. Co.</u> as Exhibit 115, plaintiff failed to designate any portion of this testimony to be read at trial. Accordingly, plaintiff has waived his right to read in any portion of Rayl's April 13, 1998 testimony at trial. Nor can he rely on any exhibits attached to this deposition.

II. **THE USE OF RAYL'S UNRELATED TESTIMONY IS IRRELEVANT TO THE LITIGATION, IS HIGHLY PREJUDICIAL, AND THEREFORE INADMISSIBLE PURSUANT TO FEDERAL RULES 401, 402, AND 403.**

The use of the Rayl testimony from his unrelated lawsuit against MetLife is irrelevant to this litigation and therefore contrary to the Federal Rules of Evidence 401 and 402, and 403. The only portion of Rayl's testimony that addresses any specific sales practices merely relates to Rayl's concerns that his communications to MetLife about AP and "vanishing premiums" had a negative effect on his career. <u>See</u> Ex. A, Rayl testimony at 253:1-262:17. However, Rayl's concerns regarding alleged discrimination in connection with his employment at MetLife are completely irrelevant and only will serve to inflame the jury. Rayl does not have firsthand knowledge of the transaction at issue in this case. He was not present or in any way involved in the 1991 or 1994 sale. Nor does he have firsthand knowledge regarding any of the policy sales that formed the basis for his unsubstantiated opinions regarding sales practices.

III. **THE DOCUMENTS ACCOMPANYING THE TESTIMONY ARE LIKEWISE IRRELEVANT, UNFAIRLY PREJUDICIAL TO DEFENDANTS, AND INADMISSABLE**

The documents themselves, attached as exhibits to Rayl's testimony, have no relation to the transactions at issue, are not relevant to MetLife's or the sales representatives' conduct during or leading up to the transactions at issue, and should be stricken in their entirety.

Furthermore, most of them involve policies sold in the 1980s that should have been eligible for AP in the early 1990s, according to Rayl's accounts. For the same reasons as discussed above, these documents are irrelevant and highly prejudicial as they apply to sales made long before the transactions at issue in this case.

     A.    **EXHIBIT 38 TO RAYL'S DEPOSITION DOES NOT RELATE TO PLAINTIFF'S AP ALLEGATIONS AND IS HIGHLY IRRELEVANT TO THE LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSABLE**

Exhibit 38 consists of a six page memorandum from Rayl that focuses almost exclusively on replacement (not an issue in this case) and a letter from Rayl to Barbara Gardner dated September 15, 1990, that discusses issues with teleservicing. Ex. B, Rayl Dep. Ex. 38. AP is addressed only minimally in the memorandum (three paragraphs in the entire memorandum), and only in conjunction with replacement issues, and is not addressed at all in the letter. The memorandum was Rayl's interpretation of the findings of the Pennsylvania Market Conduct Exam. Id. Defendants reference and incorporate herein all arguments set forth in their Motion in Limine to Exclude the PA Market Conduct Exam. Consequently, exhibit 38 to Rayl's deposition should be excluded as irrelevant, prejudicial, and likely to confuse the jury under Federal Rules of Evidence 401-403.

     B.    **EXHIBITS 42, 43, AND 46 TO RAYL'S DEPOSITION DO NOT RELATE TO PLAINTIFF'S AP ALLEGATIONS AND ARE HIGHLY IRRELEVANT TO THE LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSABLE**

Exhibit Nos. 42, 43, and 46 to Rayl's deposition are compilations of over 100 pages of various AP-related documents with Rayl's impressions of how the AP Plan was conveyed to policyholders in sales that took place substantially prior to 1991, the earliest sale at issue. See Ex. C, Rayl Dep. Ex. 42, 43, and 46. Rayl discussed sales that occurred around the mid-1980s, and thus potentially eligible for AP in 1990-1995, and as such, his documents are irrelevant to

plaintiff's 1991 and 1994 sale for the reasons set forth in Defendants' Motion in Limine to Exclude Plaintiff's Exhibit Nos. 16, 34, 35, 36, 37, 46, 52, 55, 58 and 112, documents authored by and relating to James Rayl.

Exhibits 44, 45, and 46 are also irrelevant because they relate to informing existing AP customers and those who would have been eligible for AP in 1990-1993, that their AP status was delayed or would not last. See Ex. C, Rayl Dep. Ex. 42. Rayl's opinions about informing policyholders already on AP or about to be on AP in the early 1990s is completely irrelevant to plaintiff's 1991 and 1994 sale. As such, admission of the irrelevant Rayl documents listed in Rayl's exhibit 114 would be highly prejudicial and likely to confuse the jury under Federal Rules of Evidence 401-403.

### IV.  THE RAYL TESTIMONY AND DEPOSITION EXHIBITS ARE INADMISSABLE AS "BAD ACTS" EVIDENCE UNDER FEDERAL RULE 404(b).

Plaintiff will most likely attempt to use the Rayl exhibits to show unrelated alleged "wrongs" or "bad acts" of MetLife to show that MetLife behaved in the same manner in this case. This evidence would be inadmissible under Federal Rule of Evidence 404(b). See also LaTaille v. Ponte, 754 F.2d 33, 35 (1st Cir. 1985) (prior bad acts not admissible to prove that defendant acted in similar fashion in the case at hand); Coursen v. A.H. Robins Co., 764 F.2d 1329, 1334-35 (9th Cir. 1985) (trial court properly excluded alleged prior misconduct which plaintiffs sought to introduce to establish evidence of a "pattern of neglect" or fraud because "[t]he overwhelming thrust of this evidence was to have the jury believe that because defendant lied [before]...it lied [with respect to plaintiffs] as well").

In order for "bad acts" evidence to be admissible to establish a common plan exception to the rule, Plaintiff must show that the acts "are part of a single series of events.'" J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994) (quoting

Government of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992). Evidence concerning other bad acts that are not connected to the transaction at issue is inadmissible. See id.

If Plaintiff argues that Federal Rule of Evidence 404(b) permits this type of evidence to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," it is without merit. To show that improper bad acts evidence is admissible to show intent, this Court has held that "'the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.'" Becker v. ARCO Chemical Co., 207 F.3d 176, 191 (3d Cir. 2000) (quoting United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999))(emphasis added).

## V. THE RAYL DEPOSITION EXHIBITS CONSTITUTE INADMISSABLE HEARSAY AND HEARSAY WITHIN HEARSAY

The documents that Rayl authored on AP are classic hearsay. In order for Rayl's documents to be admitted into evidence, Plaintiff must satisfy his burden of showing that they fit within an exception to the hearsay rule. Plaintiff has failed to meet that burden. The documents authored by Rayl do not fall within the "business records" exception to the general hearsay rule under federal Rule 803(6). Even if they did, the sources of the information indicate a "lack of trustworthiness." Rayl's documents are rife with personal opinions.

The documents also contain hearsay within hearsay as Rayl is re-telling his version of various complaints, for which he has no first-hand knowledge. Because the Rayl documents fail to satisfy the requirement of trustworthiness, and, constitute inadmissible hearsay, these documents should be excluded from evidence.

## CONCLUSION

     For the foregoing reasons, defendants respectfully request that this Honorable Court enter an Order barring the introduction or use of James Rayl's testimony and exhibits to James Rayl's testimony listed in Plaintiff's exhibit nos. 114 and 115.

                                       Respectfully Submitted,

                                       s/ B. John Pendleton, Jr._____
                                       B. John Pendleton, Jr.
                                       McCARTER & ENGLISH, LLP
                                       Four Gateway Center
                                       100 Mulberry Street
                                       Newark, NJ 07102
                                       (973) 622-4444

                                       Attorneys for Defendants
                                       Metropolitan Life Insurance Company and
                                       Kenneth F. Kaczmarek

Dated: October 3, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of October, 2006, a true and correct copy of the foregoing **DEFENDANTS' BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE UNRELATED TESTIMONY AND EXHIBITS OF JAMES RAYL** was served upon the following via electronic delivery:

Kenneth R. Behrend, Esquire
BEHREND & ERNSBERGER, P.C.
Union National Bank Building, 3rd Floor
306 Fourth Avenue
Pittsburgh, Pennsylvania  15222
*(Attorneys for Plaintiff)*

s/ B. John Pendleton, Jr.

ME1\5878925.1