## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT G. WYCKOFF,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY AND KENNETH F. KACZMAREK,<br><br>　　　　　Defendants. | : CIVIL ACTION NO. 00-2248<br>:<br>:<br>:<br>:<br>: CHIEF JUDGE DONETTA W. AMBROSE<br>:<br>:<br>:<br>:<br>: |

**DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY'S AND KENNETH F. KACZMAREK'S BRIEF IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PRIOR "BAD ACTS" OF KENNETH F. KACZMAREK**

**PRELIMINARY STATEMENT**

Defendants Metropolitan Life Insurance Company ("MetLife") and Kenneth F. Kaczmarek (collectively "defendants") bring this Motion in Limine to Exclude Evidence of Prior "Bad Acts" of Kenneth F. Kaczmarek.

On plaintiff's Proposed Exhibit List, he has identified Exhibits 15, 16, and 17 as evidence to be introduced at trial. All three exhibits should be excluded as evidence of prior "bad acts" because they are irrelevant to plaintiff's claims. Moreover, plaintiff's only purpose in using such evidence is to vilify Mr. Kaczmarek, one that this Court should not condone.

Exhibit 15 is an "Account Rep Inquiry" of complaints by region and district. See Exhibit A. Although the name listed on the one-page document is that of Mr. Kaczmarek's, certain of those complaints were not made against defendant Kenneth F. Kaczmarek. Mr. Kenneth F. Kaczmarek's son, named Kenneth F. Kaczmarek, Jr., also worked at the same Monroeville

branch office during overlapping time periods.[1]  Upon review of the actual complaints, not all of the complaints listed on Exhibit 15 were made against the defendant sales representative in this case.  Moreover, Exhibit 15 was produced for another case in which Kenneth F. Kaczmarek, the defendant in this case, was <u>not</u> a named defendant.[2]

Exhibit 16 is a compilation of documents that plaintiff has labeled as complaints against Mr. Kaczmarek.  <u>See</u> Exhibit B.  Again, plaintiff cannot demonstrate that many of the documents pertain to the defendant in this case, and not his son.  For example, approximately eighteen pages of Exhibit 16 are related to a complaint filed by a policyholder in which he <u>specifically</u> names "Ken Kazmare [sic] Jr." in his complaint.  Thus, these documents clearly should be excluded.  Another approximately twenty-six pages of Exhibit 16 deal with a policyholder's complaint about replacement.  Again, there was no replacement in this case and, thus, these documents should be excluded.

Exhibit 16 also contains another set of documents, approximately twenty-six pages, relating to a complaint in which both Mr. Kaczmarek and his manager stated that Mr. Kaczmarek was not involved in the sale.  Moreover, his manager stated in a letter to MetLife's Consumer Relations that an ex-branch manager <u>pretended</u> to be Kenneth F. Kaczmarek, Jr.,'s father.  Mr. Kaczmarek's son was apparently one of the sales representatives in that sale.  Another set of documents consisting of approximately sixteen pages relate to another case in which Mr. Kaczmarek was not a defendant, but in which his son was a defendant.  Of the documents that are identifiable as relating to Mr. Kaczmarek, and not his son, those documents pertain mostly to claims of replacement.  Plaintiff here did not replace any policies.  He partially converted a

---

[1] Kenneth F. Kaczmarek, Jr., worked in the Monroeville branch office from June 12, 1989, to March 1, 1991.

[2] His son, Kenneth F. Kaczmarek, Jr., was a defendant in the case in which Exhibit 16 was produced.

group term policy to an individual policy. Accordingly, any evidence showing alleged "bad acts" of Mr. Kaczmarek concerning replacement of policies is irrelevant and should be excluded in this case.

Exhibit 17 is an audit dated August 13, 1993, of the Monroeville, Pennsylvania, branch office. See Exhibit C. The audit, comprised of sixty-two pages, is entirely irrelevant to the 1994 Policy that Mr. Kaczmarek sold to plaintiff. First, the main customer service issue covered by the audit pertained to another sales representative involving a unique situation. The sales representative admitted to being embarrassed about the confusion he caused in explaining how to change payment methods to the customer. As a result, he used his own funds to pay part or all of the premium payment (approximately $53.50).

The majority of instances when Mr. Kaczmarek's name appear in the audit are purely administrative (*e.g.*, license information). Mr. Kaczmarek was not named in any complaint referenced in the audit. In fact, he was listed as having satisfactorily met the requirements of completing a certain form (Form 342) by office personnel for proper receipt and accounting of company funds. Although the audit indicated that Mr. Kaczmarek did not deliver three new policies to policyholders within 10 days of receipt of the policies, this portion of the audit is irrelevant as plaintiff here did not complain of receiving his policies late. Additionally, even though Mr. Kaczmarek is listed as having match rates above 15%, plaintiff does not make any complaints about the conversion of his group term policy to an individual policy. In short, there is no "replacement" here or use of funds from one policy to purchase another policy and plaintiff does not make such allegations. Thus any unrelated evidence, such as "replacement" or late delivery of policies, should be excluded.

In sum, the majority of documents plaintiff hopes to introduce as evidence do not relate to plaintiff, plaintiff's policies, or any of plaintiff's claims.  Instead, the evidence is intended to allege "bad acts" or wrongs committed by Mr. Kaczmarek in an attempt to portray him in a bad light.  This evidence serves no purpose other than to launch a smear campaign and, thus, should not be admissible.

As none of the aforementioned evidence mentions or relates to the allegations regarding the transactions at issue, the evidence is irrelevant under Federal Rule of Evidence 401[3] and therefore inadmissible at trial under Rule 402.[4]  The Court should not allow the introduction of evidence regarding other "bad acts" or wrongs because they are (i) irrelevant, (ii) prejudicial,[5] and (iii) otherwise inadmissible.

## BACKGROUND

Plaintiff makes "vanishing premium" claims with respect to two whole life policies purchased in 1991 and 1994.  Specifically, plaintiff claims that, in 1991, former MetLife sales representative Norman Molchan (deceased) misrepresented that plaintiff could purchase a $10,000 Whole Life policy by paying out-of-pocket premiums for only fourteen years.  On June 27, 1991, MetLife issued Policy No. 915 409 338 M ("1991 Policy") to plaintiff as owner and insured.[6]

---

[3] Federal Rule of Evidence 401 defines "relevant evidence" as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[4] Rule 402 provides that relevant evidence is generally admissible, and irrelevant evidence is inadmissible.

[5] Rule 403 provides that relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

[6] Initially, the 1991 Policy was sold with a monthly premium of $59.40 based on plaintiff's classification as a non-smoker.  However, a medical exam revealed nicotine in plaintiff's urine and he was reclassified as a smoker.  Thus, the 1991 Policy was issued with a higher monthly premium of $73.20.  Plaintiff avers that he did not contest the higher premium.  Nevertheless, he contends that, "by paying the additional amount of premium," he still would only have to pay out-of-pocket premiums for fourteen years.

In his Complaint, plaintiff avers that he contacted MetLife in 1994 because he was interested in exercising his conversion rights under an employer-provided group life insurance plan. On August 2, 1994, MetLife issued $4,500 Whole Life Policy No. 945 600 948 M ("1994 Policy") to plaintiff as owner and insured. The 1994 Policy was converted partially from plaintiff's group term Policy No. G-16200G after he retired from U.S. Steel. The monthly premium for the 1994 Policy was $34.23 payable for thirty-two years. In the Complaint, plaintiff alleges that former MetLife sales representative Kenneth F. Kaczmarek misrepresented that plaintiff would have to pay monthly premiums on the 1994 Policy for only ten years. Plaintiff further alleges that Mr. Kaczmarek did not did not disclose that the 1994 Policy was, in fact, a whole life policy with payments payable for plaintiff's death. However, Plaintiff also concedes in the Complaint that the group term policy "could only be converted to a whole life policy." Furthermore, plaintiff admittedly signed a Receipt stating that he had received a "Life Insurance Buyer's Guide" from MetLife and a State of Pennsylvania Disclosure Statement indicating that he understood he had purchased a $4,500 whole life policy with annual premiums of $410.76 payable for thirty years.

## ARGUMENT

**I.     EVIDENCE OF OTHER ALLEGED "BAD ACTS" UNRELATED TO THE SALES IS IRRELEVANT TO THE LITIGATION AND INADMISSIBLE.**

Plaintiff's counsel has identified a number of documents as trial exhibits that do not relate whatsoever to plaintiff or the sales of the policies at issue. These exhibits instead relate to alleged bad acts committed by Mr. Kaczmarek and/or other MetLife employees who are not involved in this case.

Similarly, plaintiff's proposed Exhibits 15, 16, and 17 primarily relate to alleged replacements by Mr. Kaczmarek . See Exhibits A-C. For example, Mr. Kaczmarek's "FIP

Ratio" has no bearing on any element of plaintiff's claims, as FIP tracked only internal replacements.  See Exhibit D;  see also Solarchick v. Metropolitan Life Ins. Co., Civil Action No. 01-444, Memo. and Order of Court at 2 (W.D. Pa. May 11, 2006) (ruling that testimony which focuses solely on internal replacement is irrelevant to claims involving external replacement).  Further, the main complaint cited by the audit in Exhibit 17 has absolutely no commonality with plaintiff's allegations.  See Exhibit C.  In short, none of the alleged "bad acts" evidence proposed by plaintiff deals with an individual policy that was converted from a group policy (such as in this case) or relate to claims where a policyholder claims that he was unaware the product he purchased was a whole life policy (such as in this case).

In sum, the introduction of this highly prejudicial evidence unrelated to the transactions at issue goes well beyond the scope of the transactions at issue, or even the general scope of plaintiff's allegations.  Evidence unrelated to the transactions at issue, such as complaints filed by other individuals, is irrelevant to determining whether Mr. Kaczmarek made misrepresentations to plaintiff regarding the 1994 policy.  It clearly has no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," and thus is inadmissible.  See Fed. R. Evid. 401.  Plaintiff's purpose in introducing this evidence is to engage in a smear campaign that would unfairly prejudice MetLife and Mr. Kaczmarek.  As such, this evidence should be excluded.  Additionally, plaintiff should not be permitted to elicit testimony regarding the alleged "bad acts" referenced in the aforementioned exhibits during trial.

### III. ANY PROBATIVE VALUE THAT THE UNRELATED EVIDENCE MAY HAVE IS OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUES, OR MISLEADING THE JURY.

Pursuant to Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Any probative value that the evidence could possibly possess is negligible when compared to the unduly prejudicial impact it would have upon the jury. See Taylor v. Monette, 564 F.Supp. 1, 2 (E.D.Pa.1982) (excluding from trial evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm.")

Here, plaintiff's purpose in using evidence of other alleged "bad acts," such as the "FIP" information and unrelated complaints, will be to inflame the jurors and prejudice them against MetLife and Mr. Kaczmarek. The evidence will inappropriately invite the fact-finder to disregard his duty to decide this case on its facts. See Coursen v. A.H. Robins Co., 764 F.2d 1329, 1335 (9th Cir. 1985) (court should exclude evidence that is offered only to show defendant in a bad light); Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 188 (3d Cir. 1990) ("Evidence that a party committed wrongs other than those at issue in a case often creates a danger of 'unfair prejudice' because such evidence may influence a jury to return a verdict based on a desire to punish for the other wrongs."), cert. denied, 501 U.S. 1217 (1991) (emphasis added).

Plaintiff will attempt to use the evidence of unrelated alleged "wrongs" or "bad acts" of Mr. Kaczmarek to show that he behaved in the same manner in this case. This evidence would be inadmissible under Federal Rule of Evidence 404(b). Under that Rule, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show

action in conformity therewith," except under limited circumstances not applicable here. See Fed. R. Evid. 404(b) (evidence of other wrongs may be admissible to show existence of a "plan"). In order for "bad acts" evidence to be admissible to establish a common plan, plaintiff must show that the acts "are part of a single series of events.'" J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994) (quoting Government of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992)). Evidence concerning other bad acts that are not connected to the transactions at issue is inadmissible. See id.

In J & R Ice Cream, the plaintiff claimed that a franchisor had made misrepresentations concerning its expertise in site selection and the amount of maintenance charges applicable to the site selected for the plaintiff's franchise. The plaintiff introduced evidence that the franchisor made misrepresentations to other prospective franchisees concerning the amount of revenue a typical franchise could produce. The Third Circuit held that the introduction of that evidence was improper under Federal Rule of Evidence 404(b) because "the jury could have used the highly prejudicial, indeed almost inflammatory evidence to conclude that [the defendant] used misrepresentations in multiple aspects of its sales efforts." Id. at 1269.

Similarly, to show that improper bad acts evidence is admissible to show intent, "'the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.'" Becker, 207 F.3d at 191 (3d Cir. 2000) (quoting United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999) (emphasis added)). In Becker, the plaintiff initiated an action against his former employer under the Age Discrimination in Employment Act and the Pennsylvania Human Relations Act, contending that his former employer discriminated against him on the basis of his age by terminating his employment. Id. at 179. The plaintiff sought to introduce evidence of his

former employer's "manner" in which it had terminated another employee.  <u>Id</u>.  The Third Circuit ruled that such evidence is only admissible if the proponent can articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.  Applying this test, the Court held that the evidence in question failed the test because the evidence of the employer's manner of terminating another of its employees was not relevant to the issue of whether it discriminated against the plaintiff <u>absent</u> the inference that the employer had a propensity to act in a certain way, and that it acted in conformity with this prior conduct when it terminated the plaintiff.

Likewise, evidence that Mr. Kaczmarek engaged in some "scheme" having nothing to do with the types of transactions or allegations at issue in this case would be impermissible character evidence under Federal Rule of Evidence 404(b) and is therefore inadmissible at trial. The Rule states that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court enter an Order barring the introduction or use of testimony or evidence of alleged "bad acts" of Kenneth F. Kaczmarek.

                                                 Respectfully Submitted,

                                                 <u>s/ B. John Pendleton, Jr.</u>
                                                 B. John Pendleton, Jr.
                                                 McCARTER & ENGLISH, LLP
                                                 Four Gateway Center
                                                 100 Mulberry Street
                                                 Newark, NJ 07102
                                                 (973) 622-4444
                                                 *Attorneys for Defendants*
                                                 *Metropolitan Life Insurance Company*
                                                 *and Kenneth F. Kaczmarek*

Dated:  October 3, 2006

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via the electronic filing service, on this 3rd day of October, 2006, on the following counsel of record:

>Kenneth R. Behrend, Esq.
>Behrend and Ernsberger, P.C.
>Union National Bank Building
>306 Fourth Avenue, Suite 300
>Pittsburgh, PA  15222

>__s/ B. John Pendleton, Jr. _____

ME1\5700930.1