

Not Reported in A.2d                                                              Page 1
Not Reported in A.2d, 2002 WL 31409949 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

**C**
Only the Westlaw citation is currently available.

Shelbie OPPENHEIMER, and Palma Mitchell Plaintiffs,
v.
YORK INTERNATIONAL, Corporation Defendant.
**No. 4348 MARCHTERM 2002.**

Oct. 25, 2002.

Buyers brought class action against manufacturer of heating, ventilating, and air conditioning (HVAC) units and hot surface igniters. Manufacturer brought motion to dismiss. The Court of Common Pleas, Sheppard, J., held that: (1) complaint for breach of express warranty indicated what specific warranty was made and indicated awareness of and reliance on warranty; (2) complaint for breach of implied warranty of fitness for a particular purpose failed to state the particular purpose and failed to allege manufacturer's knowledge of that particular purpose; (3) economic loss doctrine did not bar Unfair Trade Practices and Consumer Protection Law claims in the nature of fraud and intentional tort; (4) buyers sufficiently pled Unfair Trade Practices and Consumer Protection Law claims; (5) buyers were not entitled to jury trial on Unfair Trade Practices and Consumer Protection Law claims; and (6) buyers adequately asserted intent element in fraud and fraudulent misrepresentation claims.

Objections sustained in part, otherwise overruled.

West Headnotes

**[1] Sales 343 ⚷434**

343 Sales
    343VIII Remedies of Buyer
        343VIII(D) Actions and Counterclaims for Breach of Warranty
            343k433 Pleading
                343k434 k. Allegations of Breach as Cause of Action. Most Cited Cases
Buyers' complaint against air conditioning unit manufacturer for breach of express warranty adequately indicated what specific express warranty was made and indicated awareness of, and reliance on, the warranty; complaint related statements manufacturer made on its website describing its products as, among other things, enabling users "to significantly reduce operating costs," and complaint alleged that user manuals stated that the units will "ensure many years of satisfactory service.' 13 Pa.C.S. § 2-313.

**[2] Sales 343 ⚷434**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                  Page 2
Not Reported in A.2d, 2002 WL 31409949 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

343 Sales
   343VIII Remedies of Buyer
      343VIII(D) Actions and Counterclaims for Breach of Warranty
         343k433 Pleading
            343k434 k. Allegations of Breach as Cause of Action. Most Cited Cases
Buyers' complaint against manufacturer of heating, ventilation, and air conditioning (HVAC) units for breach of implied warranty of fitness for a particular purpose failed to state the particular purpose and failed to allege manufacturer's knowledge of that particular purpose contemplated by buyer; only reference in complaint to any use of the HVACs at issue was ordinary use of "in heating," and response memorandum only set forth qualifying characteristics such as efficiency, reliability, and economy, rather than any particular purpose.

**[3] Antitrust and Trade Regulation 29T &#9756;138**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(A) In General
         29Tk133 Nature and Elements
            29Tk138 k. Reliance;  Causation;  Injury, Loss, or Damage. Most Cited Cases
        (Formerly 92Hk40  Consumer Protection)
Economic loss doctrine did not bar buyers' Unfair Trade Practices and Consumer Protection Law claims against manufacturer of heating, ventilation, and air conditioning (HVAC) units in the nature of fraud and intentional tort; claims did not allege negligence, but rather that manufacturer engaged in unconscionable commercial practices, deception, fraud, and false promises, knowingly misrepresenting material facts as to the character of the HVACs.  73 P.S. §  201-2(4).

**[4] Antitrust and Trade Regulation 29T &#9756;358**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(E) Enforcement and Remedies
         29TIII(E)5 Actions
            29Tk356 Pleading
               29Tk358 k. Particular Cases. Most Cited Cases
        (Formerly 92Hk38  Consumer Protection)
Buyers sufficiently pled Unfair Trade Practices and Consumer Protection Law claims against manufacturer of heating, ventilation, and air conditioning (HVAC) units; buyers pled misrepresentations of material facts on manufacturer's website and in the user manuals, namely the efficiency of the units and assurance that the units would deliver years of quality service, when, in fact, buyers had to incur repair costs repeatedly, and buyers alleged that manufacturer knew the units were defective.  73 P.S. § §  201-2(4), 201-2(3).

**[5] Jury 230 &#9756;14(1)**

230 Jury

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                          Page 3
Not Reported in A.2d, 2002 WL 31409949 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

   230II Right to Trial by Jury
      230k14 Particular Actions and Proceedings
         230k14(1) k. In General. Most Cited Cases
Buyers of manufacturer's allegedly defective heating, ventilation, and air conditioning (HVAC) units were not entitled to jury trial on complaint against manufacturer for violations of Unfair Trade Practices and Consumer Protection Law. 73 P.S. § 201-1 et seq.

**[6] Products Liability 313A ☞53**

313A Products Liability
   313AI Scope in General
      313AI(B) Particular Products, Application to
         313Ak53 k. Heating and Cooling Appliances. Most Cited Cases

**Products Liability 313A ☞73**

313A Products Liability
   313AII Actions
      313Ak72 Pleading
         313Ak73 k. Complaint, Declaration, or Petition in General. Most Cited Cases
Buyers of manufacturer's allegedly defective heating, ventilation, and air conditioning (HVAC) units adequately asserted in fraud and fraudulent misrepresentation claims that manufacturer intended buyers to rely upon its alleged misrepresentations; it was reasonable to infer that manufacturer intended buyers to rely on statements it made on its website and in its user manuals which formed basis of fraud complaint.

*ORDER*

SHEPPARD, J.
**\*1** AND NOW, this 25th day of October 2002, upon consideration of defendant York International's Preliminary Objections to the Class Action Complaint, the plaintiffs' response in opposition, the respective memoranda, all matters of record and in accord with the contemporaneous Opinion, it is ORDERED that:
(1) Defendant's Objection seeking the dismissal of Count IV is Sustained;
(2) Defendant's Objection seeking to strike the jury demand is Sustained;
(3) Defendant's remaining Objections are Overruled;
(4) Defendant is ORDERED to file an Answer to the remaining averments within twenty-two (22) days of the date of this Order.

*OPINION*

Before the court are the Preliminary Objections ("Objections") of defendant, York International, Corp. ("defendant") to the class action Complaint (the "Complaint") of plaintiffs, Shelbie

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                    Page 4
Not Reported in A.2d, 2002 WL 31409949 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

Oppenheimer and Palma Mitchell ("plaintiffs"). The Complaint contains twelve Counts, however, plaintiffs have agreed to the dismissal of Counts VII, VIII, IX, and XI. *See* Plaintiffs' Response to Defendant's Preliminary Objections, ¶ ¶ 21, 23, 28, 34.

For the reasons discussed, the court will issue a contemporaneous Order sustaining the Objections to Count IV, but overruling the remaining Objections.

Further, the Motion to Strike the jury demand will be granted.

## BACKGROUND

Named plaintiffs, Oppenheimer and Mitchell (collectively, "plaintiffs"), seek to represent a class of people who, since 1993, purchased allegedly defective heating, ventilating, and air conditioning units ("HVACs"), and hot surface igniters, manufactured and/or sold by defendant, York International Corporation, ("York").

Defendant, York, is a corporation with its principal place of business in York, Pennsylvania. Complaint, ¶ ¶ 8-9. It manufactures and distributes HVACs and hot surface igniters throughout the United States. *Id.* Plaintiffs are individual customers who paid approximately $1800 each for their units during the putative class period. *Id.,* ¶ 16. Plaintiff Oppenheimer claims that she has incurred about $1,200 to repair the unit since its purchase, and plaintiff Mitchell about $450. *Id.,* ¶ ¶ 19-23. Plaintiffs contend the pertinent products were defective, and that York was aware of the defects as early as 1994 but neither cured nor issued a recall of the defective products. *Id.,* ¶ ¶ 2, 25-26, 28.

The Complaint alleges that defendant markets itself on its web-site as a leader, "continuing to build industry leadership by advancing products that enable users to significantly reduce operating costs." *Id.,* ¶ 18. The Complaint further alleges that the HVACs' Users Information Manual, presumably made available to customers who purchase a York HVAC, states that "[t]his compact, energy-efficient furnace has been positioned, designed, manufactured of high-quality materials and has passed many rigorous inspections and tests to ensure many years of satisfactory service." *Id.,* ¶ 17.

**\*2** Defendant has filed Objections to the following Counts: (1) Count I, a claim of breach of express warranty; (2) Count IV, a claim of breach of implied warranty of fitness; (3) Count VI, claims of violations of Pennsylvania's UTP/CPL; (4) Count X, a claim of fraud and fraudulent representation; and, (5) Count XII, a claim of fraud. Defendant argues that these Counts should be dismissed for insufficient pleading. Defendant also argues that Counts VI, X, and XII are further barred by the economic loss doctrine. Finally, defendant objects that Count VI should be either dismissed or severed because plaintiffs improperly joined legal and equitable claims.

## LEGAL STANDARDS

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                          Page 5
Not Reported in A.2d, 2002 WL 31409949 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

## 1. *Demurrer*

Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure ("Pa. R.C.P.") allows for a demurrer based on legal insufficiency of a pleading. For the purposes of reviewing preliminary objections in the form of a demurrer, all well-pleaded material, factual averments and all inferences fairly deductible therefrom are presumed to be true. *Tucker v. Philadelphia Daily News,* 757 A.2d 938, 941-42 (Pa.Super.2000) (citations omitted). When presented with preliminary objections in the nature of a demurrer, a court should sustain the objections where "it is clear and free from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish [its] right to relief." *Bourke v. Kazaras,* 746 A.2d 642, 643 (Pa.Super.2000). Furthermore,

[I]t is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer. Put simply, the question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible.

*Bailey v. Storlazzi,* 729 A.2d 1206, 1211 (Pa.Super.1999) (citations omitted).

## 2. *Economic Loss Doctrine*

The economic loss doctrine precludes recovery for economic losses in a tort action where the plaintiff has suffered no physical damage or damage to property. *Spivack v. Berks Ridge Corp.,* 402 Pa.Super. 73, 78, 586 A.2d 402, 405 (1991). "In the traditional 'property damage' cases, the defective product damages other property." *East River Steamship Corp., et al., v. Transamerica Delaval, Inc.,* 476 U.S. 858, 867, 106 S.Ct. 2295, 2300, 90 L.Ed.2d 865 (1986). The economic loss doctrine is aimed at "maintaining the separate sphere of the law of contract and tort." *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.,* 387 Pa.Super. 537, 550, 564 A.2d 919, 925 (1989). The doctrine is applicable whether the dispute is between two commercial enterprises or brought by individuals. *Jones v. General Motors Corp.,* 428 Pa.Super. 544, 546, 631 A.2d 665, 666 (1993).

Notwithstanding the availability to plaintiffs of recovery under warranty and contract law, this Court has not extended the economic loss doctrine to cover intentional torts.[FN1] In *First Republic Bank v. Brand,* our court held that the plaintiff's failure to allege physical damage does not bar its intentional torts claim. *First Republic Bank v. Brand,* 50 Pa. D. & C. 4th 329 (2000) (Herron, J.). The court found the following reasoning of the Western District of Wisconsin convincing:

> FN1. The United States Supreme Court case announcing the economic loss doctrine and its rationale dealt with claims in negligence and strict liability. *East River Steamship Corp., v. Transamerica Delaval, Inc.,* 476 U.S. 858, 861, 106 S.Ct. 2295, 2297 (1986). Similarly, in Pennsylvania, the doctrine was articulated in the context of negligence claims and product liability claims. *See e.g., Lennon v. Wyeth-Ayerst Laboratories, Inc.,* 2001 WL 755 944, \*2 (Pa.Super.); *Jones v. General Motors Corporation,* 428 Pa.Super.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 2002 WL 31409949 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

544, 546, 631 A.2d 665, 665 (1993); *New York State Electric & Gas Corp. v. Westinghouse Electric Corp.,* 387 Pa.Super. 537, 544-545, 564 A.2d 919, 922-923 (1989); *REM Coal Co., Inc. v. Clark Equipment Co.,* 386 Pa.Super. 401, 402, 563 A.2d 128, 128 (1989).

In *New York State Electric & Gas Corp. v. Westinghouse Electric Corp.,* the Superior Court of Pennsylvania declined to rule on whether "the bar to recovery of economic losses would apply in a tort product liability action based on fraud." *New York State Electric & Gas Corp.,* at 551, 926.

**\*3** Although it makes sense to allow parties to allocate the risk of mistakes or accidents that lead to economic losses, it does not make sense to extend the doctrine to intentional acts taken by one party to subvert the purposes of a contract.... Public policy is better served by leaving the possibility of an intentional tort suit hanging over the head of a party considering outright fraud. *Stoughton Trailers, Inc. v. Henkel Corp.,* 965 F.Supp. 1227 (W.D.Wis.1997). This court subsequently reiterated its holding in cases involving fraud claims. *See Teledyne Tech. Inc. v. Freedom Forge Corp.,* 2002 WL 748898 (Pa.Com.Pl.) (Sheppard, J.); *Amico v. Radius Communications,* 2001 WL 1807924 (Pa.Com.Pl.) (Herron, J.).

*DISCUSSION*

(1) *Count I-BREACH OF EXPRESS WARRANTY.*

[1] In Count I, plaintiffs claim that defendant "expressly warranted" its products to be "free of defects" at the time of delivery, that defendant extended "written" limited warranties, and that defendant breached the purported warranties. *Id.,* ¶ ¶  36, 39. Defendant argues, however, that Count I should be dismissed because plaintiffs have failed to plead specifically the essential elements of a breach of express warranty claim. Objections, ¶  4. According to defendant, plaintiffs failed to indicate what specific express warranty was made by York and, even if such warranty were specified, plaintiffs failed to allege awareness of, and reliance on, such warranty. *Id.,* ¶ 5. Defendant further points out the lack of attached writings on which the express warranty claim is presumably based. *Id.,* ¶ 6.

An express warranty is a promise made by the seller to the buyer which relates to the goods. *Nationwide Insurance Co., v. General Motors Corp./Chevrolet Motor Division,* 533 Pa. 423, 433, 625 A.2d 1172, 1177 (1993). Under the UCC, a seller's statement describing the goods creates an express warranty that the goods will conform to that description "unless good reason is shown to the contrary." 13 Pa.C.S. § 2-313. A successful claim for breach of express warranty must plead such statements, reliance on behalf of the consumer, which presumes an awareness of the warranty, and, finally, damages. *See Price v. Chevrolet Motor Div. of Gen. Motors Corp.,* 765 A.2d 800 (Pa.Super.2000).

The Complaint dutifully relates statements made by defendant York on its website describing its products as, among other things, enabling users "to significantly reduce operating costs."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                              Page 7
Not Reported in A.2d, 2002 WL 31409949 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

Complaint, ¶ 18. Furthermore, the Complaint alleges that the HVACs' user manuals state that the units will "ensure many years of satisfactory service." *Id.,* ¶ 17. Whether such statements create an express warranty is an issue for the fact finder. *See Babcock Poultry Farm. Inc. v. Shook,* 204 Pa.Super. 141, 203 A.2d 399, 401 (1964). The Complaint also pleads, albeit in a perfunctory manner, reliance and causation. *Id.,* ¶¶ 32-33, 38, 203 A.2d 399. In fact, allegations that plaintiffs were aware of the statements and relied on them, are reasonable inferences the court may make from the facts alleged as to the statements defendant made on its website and in the user manuals. *See Tucker v. Philadelphia Daily News,* 757 A.2d 938, 941-42 (Pa.Super.2000). Finally, the Complaint pleads breach and damages. Complaint, ¶¶ 2-3, 20-23, 37. The court finds that plaintiffs adequately pled a breach of express warranty.

**\*4** Defendants also object to plaintiffs' failure to attach a written warranty, arguing that it is essential to plaintiffs' pleading. Memorandum of Law in Support of Objections, p. 15. However, plaintiffs do not base their claim for breach of express warranty solely on a writing. Therefore, the writing is not an indispensable attachment under Pa. R..P. 1019(i).[FN2] Pa. R.C.P. 1019. Additionally, plaintiffs, who sufficiently stated the substance of the writing claim that the documents are in defendant's possession. *See* Pa. R.C.P. 1019(i). The Objection to Count I of the Complaint is Overruled.

> FN2. Furthermore, this Court has held that statements on the Internet are considered "writings." *See Tesauro v. Quigley,* 2001 WL 1807782, *3-4 (Pa.Com.Pl.)(Herron, J.).

(2) *Count IV-BREACH OF IMPLIED WARRANTY OF FITNESS.*

[2] Defendant's Objection to the claim of an implied warranty of fitness for a particular purpose is persuasive. Our Supreme Court has held that an implied warranty of fitness for a particular purpose is breached when a seller: (1) on whose skill and judgment a buyer relies, and (2) who has reason to know, at the time of contracting, (3) of a particular purpose for which the goods are required, (4) fails to provide goods that perform to the specific use contemplated by the buyer. *Gall v. Allegheny County Health Department,* 521 Pa. 68, 555 A.2d 786 (1989). Specifically, "[a] 'particular purpose' differs from an ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to his business." UCC § 2-315 (1984).

The Complaint is lacking in allegations of two elements of a breach of implied warranty of fitness: (a) a particular purpose, and (b) the seller's knowledge of that particular purpose contemplated by buyer. *Gall.* In fact, the only reference in the Complaint to any use of the HVACs at issue is "in heating," which is the ordinary use of an HVAC. Complaint, ¶ 56. In their response memorandum to the Objections, plaintiffs argue that the HVACs' particular purpose is "to save the customer money" and that the HVACs were meant to be "efficient and reliable." Memorandum of Law in Support of Plaintiffs' Response to Defendant's Preliminary Objections, p. 9. Efficiency, reliability, economy, are all merely qualifying characteristics of the HVAC, as it is put to its ordinary purpose, rather than particular purposes. In *Solarz v. Daimler Chrysler Corp.,* this court ruled that safety is not a particular purpose in the use of a minivan. *Solarz,* No.2033-112087, (Pa.Comm.Pl. March 13, 2002) (Herron, J.). Rather, it describes how the

Not Reported in A.2d                                                                                          Page 8
Not Reported in A.2d, 2002 WL 31409949 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

minivan performs its general purpose of offering a means of transportation. *Id.* Similarly, efficiency is not an alternative, specific use of the HVACs representing a "particular purpose." In fact, as plaintiffs allege, defendant advertises widely the efficiency of its HVACs in their ordinary use. Complaint, ¶ ¶ 17-18. It would be groundless speculation rather than reasonable inference for this court to ascribe a "particular purpose" to the HVACs in this Complaint. Accordingly, the Objection to Count IV is Sustained.

### (3) *Count VI-VIOLATIONS OF UTP/CPL.*

**\*5** Plaintiffs claim violations of numerous subsections of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTP/CPL"). Complaint, ¶ 71; 73 P.S. § 201-1 et seq. Defendant generally objects that the economic loss doctrine bars all of plaintiffs' UTP/CPL claims. Objections, p. 5. Additionally, defendant objects that to the extent that the UTP/CPL claims are based on fraud, plaintiffs are required to plead all the elements of fraud, which plaintiffs fail to do. Objections, p. 9. Alternatively, say defendant, to the extent the UTP/CPL claims are based on deceptive practices, plaintiffs' claims are insufficiently pled because plaintiffs did not specify any misrepresentation or act of deception, nor plead reliance or causation relative to the specific act. Objections, pp. 9-10. Defendant further argues that facts specific to support claims under each subsection should have been pled but were not. Objections, p. 10-11. Finally, defendant objects to the misjoinder of equity and law claims in Count VI and the request for a jury trial. For the following reasons, the court Overrules the demurrer Objection to Count VI but Sustains the Objection to jury demand.

### *A-The Economic Loss Doctrine and the UTP/CPL*

Defendant relies heavily on a recent Third Circuit case, *Werwinski v. Ford Motor Co.,* in which the court ruled that the economic loss doctrine bars UTP/CPL claims, predicting that the Supreme Court of Pennsylvania would so rule on the issue. *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 679-680 (3d Cir.2002)(where consumers sued the Ford Company for alleged defects in their vehicles which caused purely economic losses further alleging that the company was aware of the defects but declined to do any repair and concealed the information). Not only is that decision favorable to defendant's position, it is a rare case for pitting the economic loss doctrine against statutory claims, which, according to the *Werwinski* court, mirror common law tort claims. *Id.* Unfortunately, there is a dearth of Pennsylvania appellate decisions addressing the issue of intentional torts, let alone UTP/CPL claims, under the economic loss doctrine. This court has, however, announced a number of decisions which, cumulatively, lead to a holding contrary to that of the Third Circuit on the role of the economic loss doctrine with respect to UTP/CPL claims.[FN3] Recently, this court ruled that the economic loss doctrine does not bar UTP/CPL claims. *See* Zwiercan v. General Motors Corp., 2002 WL 31053838, \*7 (Pa.Com.Pl.) (Cohen, J.).

> FN3. Although decisions of federal courts construing Pennsylvania law have persuasive authority, Pennsylvania state courts are not bound by those decisions. *Hutchinson v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                  Page 9
Not Reported in A.2d, 2002 WL 31409949 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

*Luddy,* 763 A.2d 826, 837 n. 8 (Pa.Super.2000).

At issue are the UTP/CPL claims under subsection § 201-2(4). 73 P.S. § 201-2(4). That section defines practices which constitute "unfair methods of competition and unfair or deceptive acts or practices." *Id.* Such acts are unlawful. 73 P.S. § 201-3. The UTP/CPL's "underlying foundation is fraud prevention." *Weinberg v. Sun Co.,* 565 Pa. 612, 618, 777 A.2d 442, 446 (2001) (citation omitted). "The general purpose of the UTP/CPL is to protect the public from fraud and unfair or deceptive business practices." *Burke v. Ying,* 446 Pa.Super. 16, 666 A.2d 288, 291 (Pa.Super.1995).

**\*6** Plaintiffs' UTP/CPL claims allege not negligence but intent to deceive. Indeed, plaintiffs claim that defendant engaged in unconscionable commercial practices, deception, fraud, and false promises, knowingly misrepresenting material facts as to the character of the HVACs and/or hot surface igniters. Complaint, ¶ ¶ 70-73. This court has consistently ruled that the economic loss doctrine does not bar intentional torts. *See Teledyne Tech. Inc. v. Freedom Forge Corp.,* 2002 WL 748898 (Pa.Com.Pl.) (Sheppard, J.); *Amico v. Radius Communications,* 2001 WL 1807924 (Pa.Com.Pl.) (Herron, J.); *First Republic Bank v. Brand,* 50 Pa. D. & C. 4th 329 (2000) (Herron, J.). The *Werwinski* court found, "the same policy justifications for applying the doctrine to appellants' common law intentional fraud claims support the doctrine's application to appellants' UTP/CPL claims." *Werwinski,* at 681. This court does not believe that intentional misrepresentations and outright dishonesty, if they can indeed be proven, are properly redressed in a breach of contract or warranty action. *But see Werwinski,* at 678-80.

[3] This court suggests further that UTP/CPL claims have justification independent of our exception to the economic loss doctrine for common law intentional torts. It seems fair to suggest that at the time the Pennsylvania legislature enacted the statute "to be liberally construed to prevent unfair or deceptive purposes," it was fully cognizant of the existence of common law contract remedies. *Commonwealth v. Monumental Properties Inc.,* 459 Pa. 450, 458-60, 329 A.2d 812, 816-17 (1974). It defeats the statute's purposes, particularly its provisions for private consumer actions, to apply the economic loss doctrine to bar the claims it created. As stated by this court, "to apply the economic loss doctrine to all claims under the UTP/CPL has the potential to eviscerate the UTP/CPL itself." *Zwiercan v. General Motors Corp.,* 2002 WL 31053838, *7 (Pa.Com.Pl.)*(Cohen, J.). Accordingly, this court finds that the economic loss doctrine does not bar plaintiffs' UTP/CPL claims in the nature of fraud and intentional tort.

*B The Insufficiency of Plaintiffs' Pleadings*

[4] Defendant argues that, to the extent that plaintiffs' UTP/CPL claims are based on fraud, the pleadings are legally insufficient because the elements of fraud have not been pled, and thus Count VI should be dismissed. Defendant particularly objects that plaintiffs have failed to allege any misrepresentations and have also failed to plead reliance and causation. [FN4] Objections, p. 9-10; Reply in Support of Objections, p. 8-9. This Court disagrees.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 10
Not Reported in A.2d, 2002 WL 31409949 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

> FN4. While defendant accurately listed five elements of common law fraud, defendant has not pled insufficiency as to allegations of the scienter element, particularly whether and how defendant knew of the defect at the time it made the misrepresentations, and have not briefed it. Consequently, the court is obliged to conclude that defendant conceded it was adequately pled and waived this objection. *See Foster v. Peat Marwick,* 138 Pa.Cmwlth. 147, 155, 587 A.2d 382, 386 (1991). See also Section (4) below, which addresses Counts X and XII alleging fraud and fraudulent misrepresentations.

As noted, the plaintiffs have pled misrepresentations of material facts on York's website and in the user manuals, namely the efficiency of a York product and assurance that a York product would deliver years of quality service, when, in fact, plaintiffs had to incur repair costs repeatedly. The misrepresentations alleged are of specific wrongful acts and, thus, constitute the necessary predicate to a UTP/CPL claim. Plaintiffs also allege that defendant concealed the material fact, of which it had knowledge, that the units it continued to manufacture and sell were defective. Misrepresentations of material facts are deceptive acts under the UTP/CPL. 73 P.S. § 201-2(4), 201-3. Complaint, ¶ ¶ 25-26, 28, 102.

**\*7** Defendant properly cites *Weiler v. Smithkline Beecham Corporation* to support its argument that both reliance and causation must also be pled. *Weiler v. Smithkline Beecham Corporation,* 53 Pa. D & C 4^th 449 (Pa.Com.Pl.2001) (Herron, J.). In *Weiler,* this court found that allegations that plaintiffs purchased defendant's products based on the defendant's representations were sufficient allegations of reliance, and allegations that plaintiffs suffered damages as a direct and proximate result of defendant's actions were sufficient allegations of causation. *Id.,* at \*3-4. Plaintiffs have made similar assertions here. See Complaint, ¶ ¶ 32-33, 38.

Defendant cites to the Superior Court of Pennsylvania case, *Lennon v. Wyeth-Ayerst Lab., Inc.,* for the proposition that allegations that plaintiffs would not have bought defendant's product had the true facts been known, are insufficient. Defendant's Reply in Support of Objections, p. 10; 2001 WL 755944, \*3. Defendant, however, does not acknowledge the complete reasoning of the *Lennon* court. *Id.* In *Lennon,* plaintiffs, who purchased an allegedly ineffective vaccine which caused dangerous side effects, had not clearly stated that part of their lump-sum payments for medical insurance went towards the vaccine and/or that their payments would have been less had they *not* gotten the vaccine. *Id.* Thus, causation was not adequately pled. Furthermore, in *Lennon,* plaintiffs failed to allege ascertainable damages, and this failure was, ultimately, the basis for the court's decision. *Id.* ("Since Appellants fall [sic] to assert ascertainable damages, this issue is meritless.") *Id.*

Thus, this court disagrees with defendant's contention that misrepresentation, reliance, causation and damages were not adequately pled. Defendant also objects that, to the extent the allegations are based on deceptive practices, plaintiffs did not specify any act of unfairness or deception, nor did they allege reliance. Objections, pp. 9-10. Because the Complaint is sufficient with respect to allegations of fraud, it is also adequate with respect to the assertions of deceptive and unfair practices. In sum, this court finds the allegations for a UTP/CPL claim sufficient.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                    Page 11
Not Reported in A.2d, 2002 WL 31409949 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

*C The Inadequacy of Support for Each Sub-Section of the UTP/CPL*

Defendant objects that plaintiffs did not plead sufficient facts to support violations of specific subsections of the UTP/CPL. Objections, p. 18. Defendants claim that, for the subsections 201-2(4)(ii) and (iii), plaintiffs failed to plead essential facts to support "a likelihood of confusion or misunderstanding." *Id.;* 73 P.S. § 201-2(4)(ii) & (iii). The court disagrees. As already stated, the plaintiffs sufficiently pled misrepresentations of material facts. It is inappropriate for the court at this stage to hold that a misrepresentation is not confusing. That is an issue of fact. Furthermore, while, as defendant argues, *Weinberg v. Sun* does state that the UTP/CPL does not "do away with the traditional elements of reliance and causation," it nonetheless merely requires allegations of reliance. *Weinberg v. Sun,* 565 Pa. 612, 618, 777 A.2d 442, 446 (2001). This court finds that plaintiffs have sufficiently pled reliance and causation in general, and such allegations are relevant to those specific subsections.

**\*8** Next, defendant objects to: (a) claims of violations of subsections (v) and (ix), contending that plaintiffs failed to plead that defendant represented characteristics which its products did not have, and (b) claims of violations of subsections (vii) and (xxi), again on the basis that plaintiffs failed to specifically identify misrepresentations. For the reasons discussed, the violations of these subsections were adequately pled.

*D The Misjoinder of Equity and Law and Motion to Strike Jury Demand*

[5] Plaintiffs seek equitable relief as well as civil damages in their UTP/CPL claims. Plaintiffs also request a jury trial. This court has held that the UTP/CPL does not include a right to a jury trial. *Commonwealth v. BASF Corp.,* 2001 WL 1807788, \*10 (Pa.Com.Pl.) (Herron, J). Furthermore, a jury cannot hear nor award requests for injunctive relief. The court, thus, Sustains the motion to strike the jury demand.

(4) *Counts X and XII*

[6] Plaintiffs assert a claim for fraudulent misrepresentation in Count X, and a claim for fraud in Count XII. Plaintiffs set forth the same allegations for both Counts. *See* Complaint, § § 99-108, 114-119. Defendant objects to both Counts advancing the same arguments. Since both claims embody the same elements, the court will consider them together.

The elements of a cause of action for fraud or misrepresentation are:
(1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damages to the recipient as the proximate result. The deliberate nondisclosure of a material fact is the same as culpable misrepresentation.

*McClellan v. Health Maint. Org. of Pennsylvania,* 413 Pa.Super. 128, 142-143, 604 A.2d 1053, 1060 (1992) (citations omitted).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 2002 WL 31409949 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**


As discussed, this court finds that plaintiffs have adequately pled misrepresentations, reliance, and damages. Defendant objects arguing that plaintiffs have not adequately pled that defendant intended plaintiffs to rely upon its alleged misrepresentations. Objections, p. 25. The court disagrees, in that it is reasonable to infer that the Company intended for customers to rely on the statements it made on its website and in its user manuals. The law, however, requires that the element of intent be specifically pleaded. Intent is the state of mind of the defendant as to the falsity of the misrepresentation at the time it uttered such misrepresentation.

The second element requiring a "fraudulent utterance" has been found to refer to the intent or scienter required for an utterance to be considered fraudulent. "This intent has been characterized as knowing or reckless, and applies when the maker of the utterance knows or believes that the matter is not as he or she represents it to be, does not have the confidence in the accuracy of the representation that is stated or implied, or knows that there is not the basis for the representation that is stated or implied.

**\*9** *Bridle v. West Allegheny Hospital,* 406 Pa.Super. 572, 574-75, 594 A.2d 766, 768 (1991). *See also* *Mele Construction Co., Inc. v. Crown American Corp.,* 421 Pa.Super. 569, 580, 618 A.2d 956, 960 (1993)* (stating that the second element of fraud, intent, is met when, at the time it was made, the misrepresentation was uttered with the knowledge or belief that it was false). Defendant fails to object to the lack of allegations of knowledge about the falsity of the misrepresentations or of knowledge of a defect that defendants intentionally concealed. The court, thus, must consider that fraud was adequately pled and Overrules the Objections to Counts X and XII.


*CONCLUSION*


For the reasons discussed, the court sustains the Objection to the breach of implied warranty Count and strikes the demand for jury trial. The remaining Objections are overruled. A contemporaneous Order based on this Opinion will be issued.


Pa.Com.Pl.,2002.
Oppenheimer v. York Intern.
Not Reported in A.2d, 2002 WL 31409949 (Pa.Com.Pl.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.