Westlaw.

Not Reported in A.2d                                                                                    Page 1
Not Reported in A.2d, 2000 WL 33711041 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

**H**

Only the Westlaw citation is currently available.

Carol GREINER, Plaintiff
v.
ERIE INSURANCE EXCHANGE, et al. Defendants
**No. 3053 FEB.TERM 2000, CONTROL 47-00080947.**

Nov. 13, 2000.

MEMORANDUM OPINION

HERRON, J.

**\*1** Defendants Erie Insurance Exchange and Erie Insurance Company (collectively, "Erie") have filed preliminary objections ("Objections") to Plaintiff Brenda L. Foultz's complaint ("Complaint"). For the reasons set forth in this Opinion, the Objections to the Plaintiff's demand for a jury trial on three of the Counts are sustained, and the remaining Objections are overruled.

BACKGROUND

On August 29, 1999, the Plaintiff was involved in an automobile accident. At that time, the Plaintiff's vehicle was insured under an Erie policy ("Policy"), which states that Erie:
[W]ill pay the Actual Cash Value for loss to stolen or damaged property, but no more than:
1. What it would cost to repair or replace the property with other of like kind and quality; or
2. The Stated Amount that may be shown in the Declarations.
Actual Cash Value reflects fair market value, age and condition of the property at the time of the loss.

Policy at ¶ 8.

Erie inspected the Plaintiff's vehicle and prepared an estimate of repair costs based on the use of at least five parts that were not original equipment manufacturer ("OEM") parts. Ultimately, the repairs were made using the non-OEM parts, which the Complaint alleges may be cheaper than and inferior in quality to OEM parts. The use of non-OEM parts allegedly is an undisclosed Erie policy that diminishes the value of the vehicle while failing to restore the insured vehicle to its pre-loss condition and fair market value.

The Plaintiff brought a class action suit against Erie based on breach of the Policy and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law FN1 ("UTPCPL"). The Plaintiffs also have alleged bad faith on Erie's part and have demanded a declaration of rights and permanent injunction ordering Erie to abide by the terms of its contracts.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 2
Not Reported in A.2d, 2000 WL 33711041 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**


      FN1. 73 Pa.C.S. § § 201-1-201-9.3.

After the Complaint was filed, Erie filed a petition for a declaratory order ("Declaratory Order Petition") seeking a determination by the Insurance Commissioner that it has not violated the Motor Vehicle Physical Damage Appraiser Act [FN2] ("MVPDAA") and related regulations. The proceedings were stayed on September 18, although the stay was lifted on October 17. [FN3]


      FN2. 63 Pa.C.S. § § 851-863.

      FN3. According to the order lifting the stay, all interested persons must file a petition to intervene by November 17, 2000, with answers being filed by December 8, 2000.

Erie has filed the Objections based on the following:

1. The action should be dismissed or stayed under the primary jurisdiction doctrine;

2. The Complaint fails to state a claim upon which relief can be granted; and

3. The Plaintiff is not entitled to a jury trial on its claims for UTPCPL violations, bad faith and declaratory/injunctive relief.

While the first two Objections are without merit, the third finds support in Pennsylvania law. As a result, the jury trial Objections are sustained and the remaining Objections are overruled.


## DISCUSSION

### I. Primary Jurisdiction


Erie first argues that the primary jurisdiction doctrine requires that this matter be transferred to the Pennsylvania Insurance Department [FN4] and either dismissed or stayed. In sum, no statute or regulation grants the PID jurisdiction over the claims set forth in the Complaint. Specifically, the PID does not have the power to decide if an insurance company has complied with its contractual obligations, violated the UTPCPL or acted in bad faith. As a result, the Objection on this ground is overruled.


      FN4. For the sake of brevity, the Pennsylvania Insurance Department will be referred to by its initials, "PID."

**\*2** Pennsylvania courts have recognized the doctrine of primary jurisdiction, under which a court will refrain from exercising subject matter jurisdiction until an agency established to handle a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

particular class of claims has ruled on the matter. *In re Ins. Stacking Litig.*, 754 A.2d 702, 706 (Pa.Super.Ct.2000) (citation omitted). The doctrine may apply even "where the administrative agency cannot provide a means of complete redress to the complaining party." *Ostrov v. I.F.T., Inc.*, 402 Pa.Super. 87, 95, 586 A.2d 409, 413 (1991).

A court should defer to an administrative agency's primary jurisdiction:
[W]here the subject matter is within an agency's jurisdiction and where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar .... Also weighing in the consideration should be the need for uniformity and consistency in agency policy and the legislative intent.

*Id.*, 402 Pa.Super. at 95-96, 586 A.2d at 413-14 (citation omitted). Consequently, a decision to invoke the doctrine of primary jurisdiction and to transfer a case to an administrative agency requires that the agency in question have jurisdiction over the matter in dispute.[FN5] If it does, the court should evaluate the complexity of the matter, the need for policy consistency and the intent of the legislature.

> FN5. The primary jurisdiction doctrine should not be confused with the doctrine of exhaustion of administrative remedies, which "requires a party to exhaust all adequate and available administrative remedies before the right of judicial review arises." *Empire Sanitary Landfill, Inc. v. Commonwealth, Dep't of Envtl. Resources,* 546 Pa. 315, 329, 684 A.2d 1047, 1053 (1996).

It must be noted that the Pennsylvania Supreme Court has cautioned against blindly deferring to the judgment of an administrative agency when considering whether to apply the primary jurisdiction doctrine:
Courts should not be too hasty in referring a matter to an agency, or to develop a "dependence" on the agencies whenever a controversy remotely involves some issue falling arguably within the domain of the agency's "expertise." "Expertise" is no talisman dissolving a court's jurisdiction. Accommodation of the judicial and administrative functions does not mean abdication of judicial responsibility. The figure of the so-called "expert" looms ominously over our society-too much so to permit the roles of the court and jury to be readily relinquished absent a true fostering of the purposes of the doctrine of primary jurisdiction.

*Elkin v. Bell Tel. Co.*, 491 Pa. 123, 134, 420 A.2d 371, 377 (1980). *See also Ostrov*, 402 Pa.Super. at 96, 586 A.2d at 414 ("[w]here ... the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility").[FN6] Following this caveat, courts in many cases, including several cited by Erie,[FN7] have been reticent to apply the doctrine and instead retain jurisdiction.

> FN6. It is important to distinguish between transferring a matter to an agency and thus deferring to its jurisdiction, on the one hand, and deferring to the ultimate decision of that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                         Page 4
Not Reported in A.2d, 2000 WL 33711041 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

agency. *See Ins. Stacking Litig.,* 754 A.2d at 506 ("[t]he question of whether the trial court acted properly in referring a question to [an agency] is distinct from the issue of the appropriate level of scrutiny to be applied to the [agency's] decision"). It is the former action that is proposed by Erie here. However, a number of the cases Erie cites address the degree of scrutiny afforded an agency's decision. *See Winslow-Quattlebaum v. Maryland Ins. Co.,* 561 Pa. 629, 634, 752 A.2d 878, 881 (2000) (reviewing deference afforded Pennsylvania administrative agency decisions); *Popowsky v. Pennsylvania Pub. Util. Comm'n,* 550 Pa. 449, 462, 706 A.2d 1197, 1203 (1997) (discussing deference afforded decisions of the Pennsylvania Utility Commission); *Graduate Health Sys., Inc. v. Pennsylvania Ins. Dep't,* 674 A.2d 367, 370 (Pa.Commw.Ct.1996) (discussing deference afforded decisions of the Pennsylvania Insurance Commissioner).

FN7. Among the cases cited by Erie in which courts refused to invoke the primary jurisdiction doctrine are *United States v. Philadelphia National Bank,* 374 U.S. 321, 353 (1963) ("the doctrine of primary jurisdiction is not applicable here"), and *Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 737 (3rd Cir.1983) ("primary jurisdiction do [es] not apply as such to these controversies").

Erie claims that "[t]he Pennsylvania legislature has expressly delegated the regulation of insurance to the Pennsylvania Insurance Department." Erie's Memorandum at 7-8. To support this general assertion, Erie points to a number of statutes and regulations that it claims confer jurisdiction in this matter on the PID.

### A. 40 Pa.C.S. § 477b

**\*3** Under 40 Pa.C.S. § 477b ("Section 477b"), an insurance company doing business in Pennsylvania may not issue an insurance policy "until the forms of the same have been submitted to and formally approved by the Insurance Commissioner, and copies filed in the Insurance Department." However, the Plaintiff's claims do not relate to the approval of insurance policies. As a result, the Complaint does not involve Section 477b, and that statute does not give the PID jurisdiction over the instant matter.

### B. Motor Vehicle Insurance Rate Review Procedures Act

The Motor Vehicle Insurance Rate Review Procedures Act FN8 ("MVIRRPA") governs rate filings required of companies providing motor vehicle insurance. 75 Pa.C.S. § 2002. Here, none of the allegations in the Complaint address rate filings, and, again, the statutes cited by Erie do not relate to the matter at hand. Hence, the MVIRRPA does not grant the PID jurisdiction over the Plaintiff's claims.

FN8. 75 Pa.C.S. § § 2001-2009.

### C. Motor Vehicle Physical Damage Appraiser Act and Related Regulations

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                   Page 5
Not Reported in A.2d, 2000 WL 33711041 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

Erie next turns the Court's attention to the MVPDAA. In addition to addressing appraisers of damaged vehicles generally, the MVPDAA allows the Pennsylvania Insurance Commissioner to adopt specific regulations related to vehicle damage appraisals. 63 Pa.C.S. § 860. Using these powers, the PID has promulgated a series of regulations relating to motor vehicle damage appraisals.

Under 31 Pa.Code § 62.3 ("Section 62.3"), a damage appraisal [FN9] is required to include the following:

> **FN9.** 31 Pa.Code § 62.1 defines "appraisal" as "[a] written monetary estimate of physical damage sustained to a motor vehicle when the making of the estimate is assigned in order to allow the return of the vehicle to its predamaged condition."

If the appraisal includes aftermarket crash parts,[FN10] a statement that the appraisal has been prepared based on the use of aftermarket crash parts, and that if the use of an aftermarket crash part voids the existing warranty on the part being replaced or any other part, the aftermarket crash part shall have a warranty equal to or better than the remainder of the existing warranty [; and]

> **FN10.** The definition of "aftermarket crash parts," as set forth in 31 Pa.Code § 62.1 is "[a] nonoriginal equipment manufacturer (non-OEM) replacement part, either new or used, for any of the nonmechanical parts that generally constitute the exterior of the motor vehicle, including inner and outer panels."

Identification of all aftermarket crash parts and a definition of aftermarket crash parts ... if these parts are used.

According to Erie, Section 62.3 shows that the PID has regulated "the specification of [non-OEM parts] in insurance company appraisals." Erie's Memorandum at 10-11. Thus, it asserts, any dispute as to Erie's use of non-OEM parts falls within the jurisdiction of the PID.[FN11]

> **FN11.** It is worth noting that the MVPDAA regulations addressing aftermarket crash parts were not promulgated until October 23, 1999, after the events alleged in the Complaint took place.

While Section 62.3 may support Erie's claim that the PID sanctions at least limited use of non-OEM parts, the provisions Erie cites are not relevant to the matter at hand. The Complaint does not challenge the identification of or reference to non-OEM parts in an appraisal, as covered by the regulation. Rather, the Complaint addresses the specific language of the Policy and alleges breach of contract. In addition, requests for declaratory relief, claims for bad faith and alleged violations of consumer protection laws are not the subject of Section 62.3. Consequently, the MVPDAA and its regulations do not give the PID jurisdiction over this matter.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 2000 WL 33711041 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

**\*4** Even the Declaratory Order Petition Erie has submitted the PID does not alter this conclusion. The Declaratory Order Petition seeks only a determination that it is not in violation of the MVPDAA and related regulations. However, the question of whether Erie has violated the act is independent of whether Erie breached the Policy. Consequently, the Complaint does not allege violation of the MVPDAA or its regulations, and the PID proceedings and decisions have no impact on the instant matter.

D. 31 Pa.Code § 146.8(f)

31 Pa.Code § 146.8(f) ("Section 146.8(f)") was issued pursuant to the Unfair Insurance Practices Act ("UIPA") and is the only insurance statute or regulation mentioned in the Complaint. Complaint at ¶¶ 8, 29. This regulation states that an insurer electing to repair a first-party's claim "shall cause the damaged automobile to be restored to its condition prior to the loss at no additional cost to the claimant other than as stated in the policy ...."

The Plaintiff does not base her claim on Section 146.8(f) directly. Rather, she asserts that the regulation "is an implied part of Erie's insurance policy contract." Complaint at ¶ 29. Using this logic, the Complaint includes Erie's alleged violation of Section 146.8(f) as part of her breach of contract cause of action.

The Plaintiff's logic here is flawed. While Pennsylvania's substantive laws are deemed incorporated into an insurance contract, the regulations issued pursuant to the UIPA are not. *Santos v. Insurance Placement Facility of Pa., 426 Pa.Super. 226, 626 A.2d 1177 (1993)*. Consequently, Section 146.8(f) has no bearing on this case, either as an implied part of the Policy or as a vehicle for granting the PID jurisdiction over the matter.

E. Case Law

In the majority of the cases cited by Erie to illustrate the primary jurisdiction doctrine, the court refuses to invoke the doctrine. However, Erie has attempted to buttress its argument by citing two cases in which Pennsylvania courts have invoked the primary jurisdiction doctrine and deferred to state agencies.

1. *Insurance Stacking Litigation*

The case Erie primarily relies on is *In re Insurance Stacking Litigation, 754 A.2d 702 (Pa.Super.Ct.2000)*. In that case, the plaintiffs discovered that their insurance premiums included a charge for stacking even though they each owned only one vehicle. The plaintiffs alleged that this violated the Motor Vehicle Financial Responsibility Law [FN12] ("MVFRL") and brought suit against their insurers.[FN13] The insurers responded by filing preliminary objections asserting that the matter was within the primary jurisdiction of the Insurance Commissioner and thus should be adjudicated by her.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                               Page 7
Not Reported in A.2d, 2000 WL 33711041 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

> FN12. 75 Pa.C.S. § § 1701-1799.7.

> FN13. The plaintiffs also asserted causes of action for negligence, breach of fiduciary duty, bad faith, fraud, punitive damages, unjust enrichment and violations of the UTPCPL.

The Superior Court held that the trial court's deferral to the Insurance Commissioner was appropriate. It noted that "pure legal questions concerning the interpretation of the MVFRL are peculiarly within the jurisdiction and expertise of the courts." 754 A.2d at 706 (citation omitted). However, the court continued, "questions of unfair insurance practices and automobile rates [should be referred] to the Insurance Commissioner." 754 A.2d at 707.

**\*5** While the Superior Court's general statement in *Insurance Stacking Litigation* may appear to govern this case, a closer inspection reveals that it does not. First, the specific statutes and regulations on which the court based its statement have no connection to this case. The *Insurance Stacking Litigation* court relied on the Unfair Insurance Practices Act [FN14] and the MVIRRPA, which, as discussed *supra,* governs the approval of insurance rates. Consequently, the terms "unfair insurance practices" and "automobile rates" must be interpreted in line with their statutory meanings and not according to their everyday connotations. Because the Complaint does not address "unfair insurance practices" or "automobile rates," as used in the relevant statutes, the questions that *Insurance Stacking Litigation* assigns to the Insurance Commissioner are not involved here.

> FN14. 40 Pa.C.S. § § 1171.1-1171.15. Specifically, 40 Pa.C.S. 1171.7 charges the Insurance Commissioner with enforcing the Unfair Insurance Practices Act,

Even if one uses the common definition of "unfair insurance practices," this case does not fall within that definition. Aside from Section 146.8(f), discussed *supra,* the Complaint does not assert violations of any insurance laws or regulations. Rather, the allegations focus on violations of the UTPCPL, bad faith and breach of contract. None of these necessarily implicates insurance law. In *Insurance Stacking Litigation,* in contrast, the plaintiffs brought claims based on violations of the MVFRL. Thus, *Insurance Stacking Litigation* is not persuasive.

### 2. *Elkins*

The second case Erie relies on is *Elkin v. Bell Telephone Co. of Pennsylvania,* 491 Pa. 123, 420 A.2d 371 (1980). In *Elkin,* the plaintiff brought an action alleging that the defendant failed to furnish reasonable telephone services. The defendant asserted that the Public Utility Law expressly granted the Public Utility Commission ("PUC") the power to determine if the service of any public utility was unreasonable. [FN15] As a result, the defendant argued, the primary jurisdiction doctrine required the court to refer the matter to the PUC. The Pennsylvania Supreme Court agreed with the defendant and held that the trial court's referral of the matter to the PUC was proper.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                      Page 8
Not Reported in A.2d, 2000 WL 33711041 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

> FN15. The relevant statute, as cited by the court, states that, upon finding " 'that the service or facilities of any public utility are unreasonable, unsafe, inadequate, insufficient, or unreasonably discriminatory,' the PUC 'shall determine and prescribe, by regulation or order, the reasonable, safe, adequate, sufficient, service or facilities to be observed, furnished, enforced or employed.' " 491 Pa. at 129, 420 A.2d at 374.

*Elkin* is less similar to the instant case than *Insurance Stacking Litigation,* as it involves a statute that clearly assigned the question at issue to an administrative agency's jurisdiction. Here, there is no statute that grants the Insurance Commissioner the right to review whether an insurer has breached a policy it has issued. Consequently, *Elkins* does not mandate recognition of PID jurisdiction in the instant case.

Nothing Erie has pointed to grants the PID jurisdiction over this matter. Thus, the Court cannot defer to the PID, and the Objections based on the primary jurisdiction doctrine are overruled.

II. Demurrer

Erie next contends that the Complaint fails to state a cause of action because the Policy does not forbid the use of used or non-OEM replacement parts to repair the Plaintiff's vehicle. In fact, Erie claims, Pennsylvania specifically allows the use of non-OEM parts, and such use violates neither the Policy nor the law. This position is flawed.

**\*6** As a preliminary matter, it is important to note that interpretation of an insurance policy is a matter of law to be decided by the court. *Curbee, Ltd. v. Rhubart,* 406 Pa.Super. 505, 509, 594 A.2d 733, 735 (1992). In the event that a court finds a policy provision ambiguous, "the policy provision must be construed in favor of the insured and against the insurer as the drafter of the instrument." *Riccio v. American Republic Ins. Co.,* 550 Pa. 254, 264, 705 A.2d 422, 426 (1997).

While it does not specifically mention OEM parts, the Policy requires Erie to pay "actual cash value," which is defined as reflecting the "fair market value, age and condition of the property at the time of the loss." Policy at 8. However, the same provision states that Erie will pay "no more than what it would cost to repair or replace the property with other of like kind and quality." As a result, Erie maintains, the Policy does not obligate it to pay for new OEM parts.

Despite the factual assertions Erie makes in its Memorandum, the Complaint alleges facts sufficient to conclude that Erie's actions are in violations of the Policy:
15. The use of non-OEM parts in the repair of a vehicle:
a. diminishes the value of the vehicle;
b. jeopardizes the effectiveness of the manufacturer's vehicle warranty;
c. impairs the insured vehicle's structural integrity thereby impacting passenger safety;
d. detrimentally affects the vehicle's performance;
e. reduces the insured vehicle's resale value; and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                  Page 9
Not Reported in A.2d, 2000 WL 33711041 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

f. does not restore the insured vehicle to its pre-loss condition.

16. Non-OEM parts are inferior in quality to factory-authorized parts made by or for the original equipment manufacturer. Non-OEM parts have, among other defects:

a. substandard fit and appearance;

b. substandard finish;

c. substandard structural integrity and mechanical operation;

d. substandard corrosion resistance; and

e. substandard dent resistance.

17. Non-OEM parts are not and cannot be of the same fair market value and condition as the parts originally installed in a vehicle, and thus do not restore a vehicle to its pre-loss condition and fair market value.

Erie may prevail on this point at trial. However, the allegation that non-OEM parts cannot be of the same fair market value or condition as the original parts are sufficient to survive Erie's demurrer.[FN16]

> FN16. Erie makes the additional claim that the practice of using non-OEM parts is permitted by the MVPDAA regulations. However, as the Plaintiff points out, the regulations addressing the use of non-OEM, regardless of whether they permit or prohibit such use, were not promulgated until after the events alleged in the Complaint had transpired.

Erie's use of *Berry v. State Farm Mutual Automobile Insurance Company,* 9 S.W.3d 884 (Tex.Ct.App.2000), does not change this outlook. In *Berry,* the plaintiffs brought an action for violations of the Texas Insurance Code based on the use of non-OEM parts in repairing damaged vehicles. The Texas Court of Appeals held that insurers are not always required to pay for new OEM parts and that the Texas standard insurance policy provision requiring the use of "like kind and quality" parts for repairs was valid.

*Berry* can be distinguished from this case in a number of ways. Most importantly, the holding in *Berry* is based solely on Texas Insurance Code violations and is extremely narrow. Indeed, the court specifically did not address the issues of breach of contract, bad faith, UTPCPL violations and the comparative value of non-OEM parts:

**\*7** At the outset, we emphasize the limited scope of our decision. *We do not decide* here whether the non-OEM parts on which appellants' insurers based their estimates satisfy *the insurers' contractual obligation* to provide for replacement parts of like kind and quality .... Nor do we express any opinion as to whether the evidence would support a finding of misrepresentation or fraud under the Deceptive Trade Practices Act or the Unfair Settlement Claims Practices Act.

9 S.W.3d at 889 (emphasis added). In addition, the *Berry* opinion does not detail the insurance policy in question or the allegations set forth in the complaint. This makes it impossible to determine the factual similarity between the two cases.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 2000 WL 33711041 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

Because *Berry* is not controlling and the Plaintiff alleges a difference between the value of non-OEM parts and fair market value, Erie's demurer is overruled.


### III. Jury Trial

Last, Erie claims that the Plaintiff is not entitled to a jury trial for its UTPCPL, bad faith and declaratory and injunctive relief claims. Erie is correct in this regard, and the Plaintiff's demand for a jury trial for those three Counts is stricken.

The seminal Pennsylvania case on the right to demand a jury trial is *Wertz v. Chapman Twp., 559 Pa. 630, 741 A.2d 1272 (1999).* In *Wertz,* the Pennsylvania Supreme Court directed courts to determine if the statute on which the cause of action is based allows a demand for trial by jury. If the relevant statute does not do so, a court must consider whether a jury trial is required by the Pennsylvania Constitution [FN17] as follows:

> FN17. Article 1, Section 6 of the Pennsylvania Constitution states:
> Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case. Furthermore, in criminal cases the Commonwealth shall have the same right to trial by jury as does the accused.

In the absence of a statutory basis for a trial by jury, the next inquiry for a reviewing court is whether there existed the particular cause of action at the time of the adoption of the constitution,[FN18] and if so, whether there existed a concomitant right to jury trial. Only then does the court consider the third inquiry of whether there is a common law basis for the proceeding.

> FN18. The relevant provision of the Pennsylvania Constitution was adopted in 1790.

*559 Pa. at 639, 741 A.2d at 1277.* Thus, an examination of a right to demand a jury trial for a particular cause of action requires a court to determine (1) whether there is a statutory basis for a jury trial demand, and if not (2) whether there is a constitutional requirement for a jury trial, as determined by the three-prong *Wertz* test.


### A. UTPCPL Violations

The UTPCPL does not include a right to demand a trial by jury. Nevertheless, the Plaintiff argues that the UTPCPL does no more than codify common law fraud, for which the Pennsylvania constitution allows a plaintiff to demand a jury trial. This is not entirely correct. It is true that a common law action that allowed a jury trial prior to 1790 and that was codified after the ratification of the Pennsylvania Constitution may serve as a basis for a right to a trial by jury. *See Commonwealth v. One 1984 Z-28 Camero Coupe, 530 Pa. 523, 610 A.2d 36 (1992)* (allowing jury trials for violations of the Controlled Substances Forfeiture Act because forfeiture

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                    Page 11
Not Reported in A.2d, 2000 WL 33711041 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

cases had a common law basis that afforded the right to trial by jury); *William Goldman Theaters, Inc. v. Dana,* 405 Pa. 83, 93-94, 173 A .2d 59, 64-65 (1961) (permitting jury trials for violations of the Motion Pictures Control Act of 1959). However, courts have been "unable to characterize all the various claims under the UTPCPL as fraud or deceit." *DiLucido v. Terminix Int'l, Inc.,* 450 Pa.Super. 393, 400, 676 A.2d 1237, 1240 (1996). Indeed, a plaintiff need not prove the elements of fraud to establish violations of UTPCPL Sections 201-2(4)(ii) and (xvi), two provisions invoked by the Plaintiff here. *Id., 450 Pa.Super. at 401, 676 A.2d at 1241.*

**\*8** Because the UTPCPL does not simply codify common law fraud and was not enacted until 1968, there is no UTPCPL-based action that existed at the time the Pennsylvania constitution was adopted. As a result, the Plaintiff has no right to demand a jury trial for her UTPCPL claims.

### B. Bad Faith

Since the Plaintiff filed her demand for a jury trial, the Pennsylvania Superior Court has handed down a decision holding that a party pursuing a bad faith claim may not demand a trial by jury. *Mishoe v. Erie Ins. Co.,* ____ A.2d ___ (Pa.Super.Ct.2000).[FN19] As a result, the Plaintiff's demand for a jury trial for her bad faith claim is improper and the Objection thereto is sustained.

FN19. *Mishoe* is available on Westlaw at 2000 WL 1640965.

### C. Declaratory and Injunctive Relief

Erie points out in the Objections that a jury may not award either injunctive or declaratory relief. This assertion is correct. While a court has the discretion of empaneling a jury when deciding equitable matters, there is no requirement that it do so and the jury's decision is not binding on the court. *See* Pa. R. Civ. P. 1513 ("[t]he court on its own motion or upon petition of the parties may submit to trial by jury any or all issues of fact .... The verdict of the jury ... shall not be binding upon the court"); *Sullivan v. Bucks County,* 92 Pa. Commw. 213, 236, 499 A.2d 678, 691 (1985) (a trial court may exercise its discretion and refuse a jury trial in an equitable action). Indeed, declaratory judgments specifically are to be determined by a judge, not a jury. *See* Pa. R. Civ. P. 1602, Explanatory Comment-1979 ("it would be inappropriate for the form and nature of the declaratory relief to be the province of the jury"). As a result, the Plaintiff is not entitled to a jury trial on her claims for a declaratory judgment and injunctive relief.

### CONCLUSION

While the PID has broad authority in regulating insurance, no statute or regulation gives the PID jurisdiction over any claim in the instant case. Therefore, a transfer to the PID is not appropriate. The Complaint alleges a cause of action, and the demurrer is overruled. However, the Plaintiff is not entitled to a jury trial for her UTPCPL, bad faith and equitable relief claims, and the Objections to the Plaintiff's demand for a jury trial on those claims are sustained.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                      Page 12
Not Reported in A.2d, 2000 WL 33711041 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**


ORDER

AND NOW, this 13th day of November, 2000, upon consideration of the Preliminary Objections of Defendants Erie Insurance Exchange and Erie Insurance Company to Plaintiff Brenda L. Foultz's Complaint and the Plaintiff's response thereto and in accordance with the Memorandum Opinion being filed contemporaneously with this Order, it is hereby ORDERED and DECREED as follows:

1. The Preliminary Objections to the Plaintiff's demand for a jury trial for Count II-Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Count III-Bad Faith and Count IV-Declaratory Judgment are SUSTAINED, and the Plaintiff's demand for a jury trial as to those Counts is STRICKEN;

**\*9** 2. The remaining Preliminary Objections are OVERRULED; and

3. The Defendants are directed to file an answer within twenty days of this Order.

Pa.Com.Pl.,2000.
Greiner v. Erie Ins. Exchange
Not Reported in A.2d, 2000 WL 33711041 (Pa.Com.Pl.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.