IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT G. WYCKOFF,                )
                                  )
              Plaintiff,           )
                                  )
        v.                         )    Civil Action No. 00-2248
                                  )    JUDGE AMBROSE
METROPOLITAN LIFE INSURANCE        )    MAGISTRATE JUDGE BENSON
COMPANY, and KENNETH F.            )
KACZMAREK,                         )
                                  )
              Defendants.          )

**OPINION AND ORDER**

This is a state court action initially filed in the Court of Common Pleas of Allegheny County, Pennsylvania, on October 13, 2000. MetLife removed the matter to this court on November 13, 2000, on the basis of federal question jurisdiction. Plaintiff sues upon two insurance policies, one purchased in 1991, and the second purchased in 1994. Defendants removed the case on the basis that plaintiff's claims relating to the 1994 policy are preempted by the Employee Retirement Security Act ("ERISA"), 29 U.S.C. §1001, et seq.

Defendants have filed a Motion to Strike Certain Allegations Pursuant to F.R.Civ.P. 12(f) and to Dismiss Certain Claims Pursuant to F.R.Civ.P. 12(b)(6) (Docket #5), and a brief in support thereof (Docket #6). Defendants seek to strike allegations concerning alleged nationwide sales practices employed by MetLife. The allegations at issue concern sales practices which are not the same as those allegedly employed in this case to induce the sale of the two insurance policies purchased by plaintiffs. MetLife also seeks to dismiss plaintiffs: (1) claims related to the 1994 policy as being preempted by ERISA; (2) "demutualization" claims (Docket

#1, Exhibit A, ¶¶ 202-207, 245, 265, 271d, 272 and 276); (3) breach of fiduciary duty claim (Id., Count VII); (4) breach of the implied duty of good faith and fair dealing claim (Id., Count V); (5) the "Unapproved Policy Language" claims; and (6) statutory "Bad Faith" claims (Id., Count VI).  Plaintiff has responded to the motion (Docket #11) and has filed a brief and exhibits in support of that response (Docket #s 12 and 13).  Defendants have filed a reply, and the motion to strike and/or dismiss is ripe.

Prior to ruling on the motion to strike and/or to dismiss, however, the court must first address plaintiff's motion to remand (Docket #9).  Plaintiff filed a brief in support of the motion, and defendants have responded (Docket #15).  The motion to remand is also ripe.

1.   **Motion to Remand (Docket #9).**

Plaintiff purchased the 1994 insurance policy at issue in this case after he exercised his right to convert an existing group policy.[1]  The group policy was provided by plaintiff's employer, U.S. Steel Corporation, as part of an employee benefit program. Plaintiff would not have had the right to purchase the policy at issue absent the right to conversion arising under the U.S. Steel Plan.  The question posed is whether plaintiff's purchase of a

---

1.   Defendants make clear that the preemption argument is being made with respect to the 1994 policy only.  Plaintiff's claims concerning the 1991 policy may, in defendants' view, properly be addressed as part of this court's supplemental jurisdiction under 28 U.S.C. §1441(c).

"conversion policy" brings the claims made on that policy within the ambit of ERISA, thus providing this court with jurisdiction over plaintiff's claims.

The analysis to be applied in this case was set forth succinctly in Allstate Insurance Co. v. The 65 Security Plan, 879 F.2d 90, 92-93 (3d Cir. 1989):

> In deciding whether the action was properly removed from state court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1331 ("federal question" jurisdiction), we must start our analysis with the "well-pleaded" complaint rule. Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie Railroad Co., 858 F.2d 936, 939 (3d Cir. 1988). It has long been established that, for purposes of removal jurisdiction, "the well-pleaded complaint rule requires [that] the federal question be presented on the face of the plaintiff's properly pleaded complaint. See Gully v. First National Bank, 299 U.S. 109, 112-13 [, 57 S.Ct. 96, 97-98, 81 L.Ed. 70]." Id; see Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Thus, the plaintiff is the master of its own claim and can choose to keep its suit in state court if its well-pleaded complaint does not affirmatively rely on federal law. It also follows that a case may not be removed to federal court on the basis of a federal defense, including one that the state law relied upon by the plaintiff has been preempted by federal law and that relief can be had, if at all, only under that federal law. As the Supreme Court has recently observed:
>
>> [a] case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.
>
> Caterpillar, Inc. v. Williams, 482 U.S. 386, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987)(emphasis in original).
>
> However, one "independent corollary" to the well-pleaded complaint rule is the "complete preemption doctrine." Under the complete preemption

- 3 -

>doctrine, "Congress may so completely pre-empt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character." <u>Metropolitan</u>, 107 S.Ct. At 1546. Thus, we are presented with two issues: first, whether [plaintiff's] state court complaint relies upon a federal law ground as a ground for recovery and second, if it does not, whether it makes a claim that is "completely preempted."

See also, <u>In re Comcast Telecommunications Litigation</u>, 949 F.Supp. 1193 (E.D.Pa. 1996). The burden of establishing federal jurisdiction rests with the party seeking removal. <u>Id</u>. Removal jurisdiction is strictly construed and any doubts are to be resolved in favor of remand. <u>Id</u>.

The complaint in this case does not rely upon federal law for relief. MetLife recognizes this, and asserts that plaintiff's claims are completely preempted by ERISA, thus making removal proper.

In determining whether the "complete preemption" corollary to the well-pleaded complaint rule applies in this case, the court must keep in mind that this corollary applies: (1) "when the enforcement provisions of a federal statute create a federal cause of action vindicating the same interest that the plaintiff's cause of action seeks to vindicate," and (2) "when there is affirmative evidence of a congressional intent to permit removal despite the plaintiff's exclusive reliance on state law." <u>Allstate</u>, <u>supra</u>, 879 F.2d at 93.

The relevant facts are not in dispute. Plaintiff exercised conversion rights available to him as a retired employee of United States Steel Corporation (Docket #1, Exhibit A at ¶¶ 215-

- 4 -

16; Docket #10 at 2). It is further alleged that "employees of U.S. Steel had the option of purchasing a private policy at the employee's own expense to offset [a] decrease in coverage of the Group Policy," which is what plaintiff did in 1994 (Id.). He alleges that he was promised he would have to pay premiums on this policy for ten (10) years only, at which time the policy would become self-funding (Id., ¶217). It is alleged that the selling agent, defendant Kaczmarek, failed to disclose that this was a Whole Life Policy with premiums due for thirty-two (32) years, and, thus, that Kaczmarek "never offered a full and complete disclosure of the policy at the point of sale." (Id., ¶218).

Plaintiff alleges that he is not seeking to vindicate any right which he possessed under the U.S. Steel employee benefit plan. Rather, he asserts that MetLife has violated state law concerning the "private" insurance policy issued him in 1994 as a supplement to the group policy funded by U.S. Steel.

This is not the first court to be confronted with the distinction between "conversion rights" under an employee benefit plan and the rights which arise under "conversion policies" purchased by employees or retirees. The Court of Appeals for the Third Circuit has not specifically addressed this issue, and there is a split among the other circuits. Compare, Demars v. CIGNA Corp., 173 F.3d 443 (1st Cir. 1999)(no preemption since right to convert is governed by ERISA, but suit on the conversion policy itself not sufficiently related to ERISA plan to warrant preemption); Painter v. Golden Rule Insurance Co., 121 F.3d 436, 439-440 (8th Cir.

- 5 -

1997)(conversion policy arises from ERISA plan and is, therefore, component thereof).

First, it should be noted that all courts seem to agree that, where a state law complaint seeks to enforce the right to convert, then ERISA preemption applies since the right to convert arises under the ERISA plan in question. Demars, supra, 173 F.3d at 447-449 (collecting cases). Here, however, plaintiff clearly seeks to enforce the provisions of the conversion contract itself, or to have the transaction voided for fraud. Plaintiff does not seek to enforce the actual right to convert.

The cases which find preemption where a suit is filed on a conversion policy rely on a "but-for" analysis. For example, in Greany v. Western Farm Bureau Life Insurance Co., 973 F.2d 812, 817 (9th Cir. 1992), the court reasoned as follows:

> Because the Greanys would not be eligible for a conversion policy without first belonging to the class of beneficiaries covered by the ERISA group plan, we conclude that the individual conversion benefits are part of the ERISA plan and are thus governed by ERISA. Had the Greanys not received health benefits pursuant to the ERISA group plan, they would not have been eligible to receive conversion benefits, and would have no cause of action arising from the conversion policy.

Here, the same argument may be made. But for his employment with U.S. Steel, and his participation in U.S. Steel's ERISA plan, plaintiff would not have obtained the conversion policy in question.

In Nechero v. Provident Life & Accident Insurance Co., 795 F.Supp. 374 (D.N.M. 1992), the plaintiff converted his health insurance upon the termination of his employment. The company paid a fee to effectuate the conversion, which was accomplished without

- 6 -

plaintiff or his wife being subjected to providing proof of insurability. Plaintiff then paid monthly premiums. After the conversion policy went into effect, plaintiff's wife incurred extensive medical bills, and a dispute arose concerning the insurer's responsibility for those bills. The court in Nechero found that the employer's involvement in initiating the conversion policy, which requires the creation of an ERISA plan and the administration thereof, constituted sufficient activity by the employer to bring the conversion policy with the ambit of ERISA. Further, the court found significant the fact that, solely as a result of Mr. Nechero's employment, he and his wife "were able to obtain continued health insurance coverage without being subjected to a medical exam or an exclusion for pre-existing medical conditions." Id., 795 F.Supp. at 380.

A situation similar to this was addressed in Gabner v. Metropolitan Life Insurance Co., 938 F.Supp. 1295 (E.D.Tex. 1996), where the issue was "misrepresentation of the purchase price of a conversion life insurance policy . . .." Id., at 1303. The plaintiff in Gabner had a life insurance policy while employed by Amoco which was issued pursuant to an ERISA plan. After terminating his employment with Amoco, plaintiff exercised his right under the ERISA plan to "convert" his group life insurance policy into an individual policy. Mr. Gabner alleged that he was fraudulently induced to purchase the individual policy by representations that it would be completely paid in ten years. Id., at 1299. The court in Gabner concluded that plaintiff's state law claims for fraud,

fraudulent inducement and the breach of the duty of good faith and fair dealing were preempted by ERISA. The court reasoned that the policy was issued pursuant to rights obtained under an ERISA plan, and, because ERISA provides a remedy for misrepresentations by a fiduciary. The court determined that MetLife, in issuing a policy arising from an ERISA Plan, was acting as a fiduciary, and that claims against a fiduciary for deception are actionable under §502(a)(3) of ERISA. Hence, the state law claims were subject to complete preemption.

A similar analysis in this case yields the same result. Plaintiff has alleged state common law claims for, inter alia, fraud and misrepresentation. Plaintiff alleges that he was induced to purchase policies with misleading and false information concerning those policies. As in Gabner, the same actions on the part of MetLife which form the basis for the fraud and misrepresentation claims would be actionable as deception by a fiduciary under §502(a)(3) of ERISA. Hence, removal of the claims made by plaintiff, who obtained the 1994 insurance policy through rights arising under an employee welfare plan was proper. The motion to remand will be denied.

2.  **Motion to Strike.**

A motion to strike under Rule 12(f) asks a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "While courts possess considerable discretion in

weighing Rule 12(f) motions, such motions are not favored and will be generally be denied unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party." Miller v. Group Voyagers, Inc., 912 F.Supp. 164, 168 (E.D.Pa.1996) (citing North Penn Transfer v. Victaulic Co. of Am., 859F.Supp. 154, 158 (E.D.Pa.1994); Great W. Life Assurance Co. v. Levithan, 834 F.Supp. 858, 864 (E.D.Pa.1993)); see also Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 at 647 (2d ed. 1995). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir.), rev'd on other grounds 510 U.S. 517, 114 S.Ct. 1023 (1993).

Defendants assert that the "global" allegations contained in paragraphs 5 through 207 of the complaint bear no relation to the facts of the transactions at issue here, and that those allegations should be stricken. Plaintiff responds that the numerous "global" allegations are relevant because "they show Defendant Metropolitan's routine habit and practice of encouraging and permitting its agents to commit unfair sales practices nationwide as to individual life insurance policies and goes to the credibility of Plaintiff's allegations as to the particular facts of the sales of his individual policies . . .." (Docket #12 at 8). The allegations which do not directly involve the claims made by plaintiff in this case will, in plaintiff's view, illustrate MetLife's intent to defraud (Id.).

Defendants respond that habit and practice allegations such as those made by plaintiffs would cause prejudice in the nature of prolonging this litigation and increasing discovery costs, and, further, that such matters would not be admissible at trial. Permitting such broad-ranging allegations would, in defendants' view, enable plaintiffs to "access [] confidential business information that does not relate to plaintiffs' claims . . .." (Docket #14 at 5).

The complaint in this case is undeniably verbose. This alone, however, does not make the allegations concerning nationwide practices employed by MetLife either impertinent or scandalous. The standard to be applied is not whether the court would have included the allegations had it drafted the complaint, or even whether the allegations are necessary to the complaint, but whether the allegations "bear[] no possible relation to the matter at issue." Miller, supra. It must be conceded that the court views with skepticism plaintiff's argument concerning the relevancy of most of the global allegations. However, the court is not prepared to rule that those matters are, necessarily, beyond the scope of relevance for purposes of discovery, or for purposes of admissibility at trial.[2] Therefore, the motion to strike will be denied.

3. **Motion to dismiss.**

---

2. This having been said, the issue of the proper scope of discovery, and of the admissibility of matters at trial, may more properly be joined during discovery and in the context of motions in limine, or rulings at trial.

A motion to dismiss pursuant to Rule 12(b)(6) cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The issue is not whether the plaintiff will prevail at the end, but whether he should be entitled to offer evidence to support his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The complaint must be read in the light most favorable to the plaintiff and all well-pled material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976).

A.   **Claims Relating to the 1994 Policy, ERISA Preemption.**

Defendants move to dismiss all claims raised with respect to the 1994 policy on the basis that such claims are preempted by ERISA. Indeed, the court has already concluded that the state law claims made by plaintiff concerning the 1994 conversion policy are preempted by ERISA. Hence, the claims raised by plaintiff, which are premised upon an alleged failure to disclose relevant information, are improper in their present form as being preempted by ERISA:

> What is not clear is whether a completely preempted claim should be dismissed with leave to amend to state explicitly an ERISA claim or whether it should simply be converted into an ERISA claim. See Gould v. Great-West Life & Annuity Ins. Co., 959 F.Supp. 214, 219 (D.N.J.1997). Decisions in this district have done both. For example, in Cecchanecchio v. Continental Casualty Co., Civ. A. No. 00-4925, 2001 WL 43783 (E.D.Pa. Jan.19, 2001), the court dismissed

>plaintiff's completely preempted claims, but granted leave to file an amended complaint bringing claims for relief under ERISA. On the other hand, in <u>Delong v. Teacher's Insurance and Annuity Association</u>, Civ. A. No. 99-1384, 2000 WL 426193 (E.D.Pa. Mar.29, 2000), the court simply converted plaintiff's completely preempted claims into federal claims under ERISA. Several circuit courts have endorsed the latter approach. See <u>Bartholet v. Reishauer A.G. (Zurich)</u>, 953 F.2d 1073, 1078 (7th Cir.1992); <u>Carland v. Metropolitan Life Ins. Co.</u>, 935 F.2d 1114 (10th Cir.1991).

<u>Murphy v. MetLife</u>, 152 F.Supp.2d 755, 758 (E.D.Pa. 2001). The court in <u>Murphy</u> went on to conclude that it would be appropriate to simply interpret plaintiff's claim as being one raised under ERISA. I believe the same result should apply here. Plaintiff alleges facts which, if proven, would establish a claim under Section 502(a)(3) of ERISA which offers equitable relief for plan participants whose benefits are affected by misrepresentations. See, <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 122 S.Ct. 708, 718, footnote 5 (2002) ("we concluded that § 502(a)(3) authorizes lawsuits by beneficiaries for individualized equitable relief for breach of fiduciary obligations"); <u>citing</u> <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 512 (1996). Thus, there is no need for plaintiff to amend the complaint, and the court will interpret plaintiff's claim regarding the 1994 policy as one arising under ERISA.

B.   "Demutualization" claims.

Metropolitan Life Insurance Company was a "mutual" company under New York law until April 4, 2000, when the New York Insurance Department approved MetLife's plan of demutualization. "The

- 12 -

organization of MetLife from a mutual insurer to a stock company form, as set forth in the Plan, is in the best interest of MetLife and its policyholders, in compliance with [New York Insurance Law]." (Docket #7, Exhibit D at ¶¶ 200). In MetLife's view, any claim that the demutualization was improper or was somehow accomplished with a bad motive is, in essence, a collateral attack on the decision of the New York Insurance Department approving the demutualization plan. Under New York law, judicial review of any decision made by the New York Insurance Department is through Article 78 of the New York Civil Practice Law and Rules. Sohn v. Calderone, 78 N.Y.2d 755, 767 (1991).

Plaintiff responds that he is not "attempting to make any claim [concerning] the correctness of how the Demutualization took place, nor is Plaintiff making a claim attempting to overturn the findings of the New York State Insurance Department." (Docket #12 at 12). Plaintiff describes his claim as follows:

> In other words, Plaintiff is asserting that Metropolitan did not take into account, when determining the policy value and other information on the policy, before the formula was applied to determine the amount of Demutualization benefits, that the policy value and other information had been depleted and/or devalued by the wrongful conduct of Metropolitan Life through the various fraudulent schemes set forth in the complaint.
>
>      *  *  *
>
> We are in court on this case to obtain a determination of the correct initial valuation of the policy, not diminished by Metropolitan Life's injurious defects, deceptive sales practices and deceptive policy administration practices of Metropolitan Life Insurance Company, its sales and administrative agents and employees. We are in Court to obtain an award of damages, employing the

> New York approved formula, using the correct policy valuation instead of the bogus policy valuations used by Metropolitan Life.

(Docket #12 at 13, 15). MetLife, then, accurately described plaintiffs' position in its initial brief. "Thus, it does not appear that plaintiff is asserting claims as to the propriety of the demutualization itself, but rather is claiming that he would have received different benefits as a result of the demutualization." (Docket #6 at 15).

Even though plaintiff disavows any attempt to have this court review the actions of the New York Insurance Department, his claim clearly challenges a matter which was placed before, and specifically addressed by, the New York Insurance Department. The Opinion of the Insurance Department precisely addresses the propriety of the valuation method used by MetLife. The Department discussed the method of computation at some length in its opinion, (Docket #7, Exhibit D at ¶¶ 119-131), which involved giving a set number of shares to each eligible policy holder in return for the voting rights being surrendered, plus additional shares based upon an actuarial determination of the "estimated past and expected future contribution to the surplus of MetLife of all of the Participating Policies such Policyholder owns." (Id., at ¶ 124). The Department specifically held that this method of valuation was "fair and equitable to policyholders from a financial point of view." (Id., at ¶131).

The issue of the propriety of the calculation of benefits received under the demutualization is, accordingly, a matter which

- 14 -

is entrusted under New York state law to the Insurance Department. The issue was exhaustively dealt with by the New York Insurance Department, and may not be attacked here since the sole avenue of appeal lies in state court. Plaintiff may not obtain review in this court by the circuitous route of asserting that MetLife, but not the Insurance Department, erred during the demutualization process. The motion to dismiss will be granted with respect to plaintiff's demutualization claim.

### C. Fiduciary Duty Claims (Count VII).

Plaintiff makes clear that he is not "claiming a fiduciary duty at the time of the sale of the polic[y]." (Docket #12 at 16). Rather, the only basis for the breach of fiduciary duty claim is the assertion that MetLife violated a fiduciary duty by "failure to calculate the correct policy value at the time of Demutualization." (Id.). The court has already determined that plaintiff is barred from challenging the demutualization process, or the propriety of the valuation procedure approved thereunder. Hence, this claim must be dismissed as well.

### D. Good Faith and Fair Dealing (Count V).

Defendants moves to dismiss Count V of the complaint on the basis that a breach of the implied duty of good faith and fair dealing may only arise in the context of a breach of contract action, because the implied duty is "an interpretive tool to determine the parties' justifiable expectations in the context of a

breach of contract action . . . ." <u>Northview Motors, Inc. v. Chrysler Motors Corp.</u>, 227 F.3d 78, 91 (3d Cir. 2000). Here, plaintiff does not allege that any provision in the insurance contract was breached. Rather, he is attempting to raise a tort claim premised upon what is merely an interpretive tool used in the context of a claim for breach of contract. Pennsylvania does not recognize an independent tort claim for breach of the implied duty of good faith and fair dealing, and this claim will be dismissed as well.

E.   **"Unapproved Policy Language" Claim.**

Defendants next move to dismiss plaintiff's claim relating to the alleged use by MetLife of policy forms which had not been approved under 40 P.S. §477b[3]. No private cause of action exists

---

3.   That statute provides in relevant part:

> It shall be unlawful for any insurance company, association, or exchange, including domestic mutual fire insurance companies, doing business in this Commonwealth, to issue, sell, or dispose of any policy, contract, or certificate, covering life, health, accident, personal liability, fire, marine, title, and all forms of casualty insurance, or contracts pertaining to pure endowments or annuities, or any other contracts of insurance, or use applications, riders, or endorsements, in connection therewith, until the forms of the same have been submitted to and formally approved by the Insurance Commissioner . . .,

> \*   \*   \*

> Any person, corporation, insurance company, exchange, order, or society that shall, either as principal or agent, issue, or cause to be issued, any policy or contract of insurance within the Commonwealth, contrary to this section, shall be
> (continued...)

- 16 -

under §477b. See, Magner v. Assoc. Ins. Cos., Inc., 1995 WL 29045 (E.D.Pa. 1995)("Pennsylvania does not recognize a private cause of action for violation of 40 P.S. §477b.").

Plaintiff responds that "[t]he polic[y] sold to plaintiff [was] on policy forms not approved by the Pennsylvania Insurance Department, (form 7-87). Accordingly, Metropolitan Life had no authority to sell the policies in the [Commonwealth] of Pennsylvania." (Docket #12 at 34). Plaintiff is plainly attempting to recover for the violation of a statute which does not provide for a private right of recovery. The motion to dismiss will be granted

### F. Bad Faith Claim (Count VI).

Plaintiff alleges that the fraudulent sales practices which induced the sale of the policies violated the Pennsylvania Bad

---

3.(...continued)
> guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars ($500.00).
>
> Upon satisfactory evidence of the violation of this section by any such person, corporation, insurance company, exchange, order, or society, the Insurance Commissioner may, in his discretion, pursue any one or more of the following courses of action: (1) Suspend or revoke the license of such offending person, corporation, insurance company, exchange, order or society; (2) refuse, for a period of not to exceed one year thereafter, to issue a new license to such person, corporation, insurance company, exchange, order, or society; (3) impose a fine of not more than one thousand dollars ($1,000.00) for each and every act in violation of this act.

40 P.S. §477b.

Faith statute, 42 Pa.C.S. §8371 (Docket #1, Exhibit A, ¶264).[4] Plaintiff, though, cannot state a claim under §8371 by alleging bad faith conduct in the context of the sale of an insurance policy. Courts within Pennsylvania have interpreted §8371 to apply only in the context of a bad faith **denial of benefits** under an existing policy. See, General Accident Ins. Co. v. Federal Kemper Ins. Co., 682 A.2d 819 (Pa.Super. 1996)(purpose of § 8371 is to provide remedy to an insured when the insurer denied benefits in bad faith); Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680 (Pa.Super. 1994). Plaintiff cites to Pennsylvania cases which contain dicta to the effect that §8371 does not expressly limit its application to bad faith in the denial of claims made under an existing policy. Plaintiff can point to no case, however, where courts have actually expanded §8371's reach to include such claims. Thus, this claim will also be dismissed.

An appropriate order follows.

AND NOW, this 18th day of March, 2003,

IT IS HEREBY ORDERED that plaintiff's motion to remand (Docket #8) is DENIED.

IT IS FURTHER ORDERED that defendants' Motion to Strike Certain Allegations Pursuant to F.R.Civ.P. 12(f) (Docket #5) is DENIED.

---

4.  Plaintiff also alleges that the statute was violated by MetLife's actions during demutualization (Docket #1, Exhibit A at 265). This claim is, for reasons set forth above, barred.

IT IS FURTHER ORDERED that defendants' Motion to Dismiss Certain Claims Pursuant to F.R.Civ.P. 12(b)(6)(Docket #5) is GRANTED. Counts V, VI and VII of the complaint are dismissed, as are plaintiffs' claims relating to demutualization and "Unapproved Policy Language."

IT IS FURTHER ORDERED that plaintiff's claims concerning his 1994 insurance policy are converted into an ERISA claim for failure to disclose information.

*[signature]*
DONETTA W. AMBROSE
UNITED STATES DISTRICT JUDGE

cc: Kenneth R. Behrend, Esquire
Behrend & Ernsberger
306 Fourth Avenue, Suite 300
Pittsburgh, PA 15222

William M. Wycoff, Esquire
Thorp, Reed & Armstrong, LLP
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219

B. John Pendleton, Jr., Esquire
McCarter & English
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101

- 19 -