IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT G. WYCKOFF, | CIVIL ACTION NO. 00-2248 |
| Plaintiff, | |
| | |
| v. | CHIEF JUDGE DONETTA W. AMBROSE |
| | |
| METROPOLITAN LIFE INSURANCE COMPANY AND KENNETH F. KACZMAREK, | |
| Defendants. | |

**BRIEF IN SUPPORT OF DEFENDANTS METROPOLITAN
LIFE INSURANCE COMPANY'S AND KENNETH F.
KACZMAREK'S MOTION IN LIMINE TO PRECLUDE EVIDENCE
REGARDING THE RECOVERY OF PURPORTED EXPECTATION DAMAGES**

**PRELIMINARY STATEMENT**

Plaintiff is not entitled to "benefit of the bargain," or "expectation" damages, in this matter. Pennsylvania law is clear that expectation damages are not available in actions grounded in fraud. The expert report of Robert Boyd Carter, CLU, ChFC, which purports to assess plaintiff's alleged damages, contemplates expectation damages. With respect to plaintiff's 1994 Policy, which is governed by ERISA, the Supreme Court has made clear that claims for money damages are not permissible under Section 502(a)(3)(B) because they are "the classic form of legal relief" and are therefore not within the scope of "appropriate equitable relief" allowed under that section. See Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 204 (3d Cir. 2004) (citing Mertens v. Hewitt Assoc., 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). Plaintiff should be precluded from introducing any evidence of expectation damages and from recovering expectation damages. Plaintiff's damages should be properly limited to his actual, out of pocket loss.

## BACKGROUND

Plaintiff makes "vanishing premium" claims with respect to two whole life policies purchased in 1991 and 1994.  Specifically, plaintiff claims that, in 1991, former MetLife sales representative Norman Molchan (deceased) misrepresented that plaintiff could purchase a $10,000 Whole Life policy by paying out-of-pocket premiums for only fourteen years.  Additionally, plaintiff asserts that an illustration was used indicating that, in year 2011, the 1991 Policy would have a cash value of $7,746.00 and a death benefit of $12,112.00.  On June 27, 1991, MetLife issued Policy No. 915 409 338 M ("1991 Policy") to plaintiff as owner and insured.  Initially, the 1991 Policy was sold with a monthly premium of $59.40 based on plaintiff's classification as a non-smoker.  However, a medical exam revealed nicotine in plaintiff's urine and he was reclassified as a smoker.  Thus, the 1991 Policy was issued with a higher monthly premium of $73.20.  Plaintiff avers that he did not contest the higher premium.  Nevertheless, he contends that, "by paying the additional amount of premium," he still would only have to pay out-of-pocket premiums for fourteen years.

Plaintiff admits that he contacted MetLife in 1994 because he was interested in exercising his conversion rights under an employer-provided group life insurance plan.  On August 2, 1994, MetLife issued $4,500 Whole Life Policy No. 945 600 948 M ("1994 Policy") to plaintiff as owner and insured.  The 1994 Policy was converted partially from plaintiff's group term Policy No. G-16200G after he retired from U.S. Steel.  The monthly premium for the 1994 Policy was $34.23 payable for thirty-two years.  In the Complaint, plaintiff alleges that former MetLife sales representative Kenneth Kaczmarek misrepresented that plaintiff would have to pay monthly premiums on the 1994 Policy for only ten years, with no subsequent payments thereafter.  Plaintiff further alleges that Mr. Kaczmarek did not did not disclose that the 1994

Policy was, in fact, a whole life policy with payments payable for plaintiff's death.  However, Plaintiff also concedes in the Complaint that the group term policy "could only be converted to a whole life policy."  Furthermore, plaintiff signed a Receipt stating that he had received a "Life Insurance Buyer's Guide" from MetLife and a State of Pennsylvania Disclosure Statement indicating that he understood he had purchased a $4,500 whole life policy with annual premiums of $410.76 payable for thirty years.

In his report, plaintiff's expert Robert Boyd Carter concludes that plaintiff was sold a product he did not understand and that the sale of the product was accomplished in a misleading manner.  Mr. Carter also concludes that plaintiff is entitled to a total award of $28,361.52, which Mr. Carter labels as the "benefit of the bargain."  See Ex. A, Opinion prepared by Robert Boyd Carter, 19.  This calculation operates from the assumption that plaintiff's policies would be eligible for the accelerated payment program in the fourteenth and tenth year of the 1991 and 1994 policies, respectively.  Further, it anticipates that plaintiff will continue to pay premiums for twenty-two more years than expected for each policy.  The calculations have no relation to the amount of premiums actually paid towards plaintiff's policies.

## ARGUMENT

## I.    THIS COURT RULED IN SOLARCHICK THAT A PLAINTIFF MAY NOT RECOVER "EXPECTATION" OR "BENEFIT OF THE BARGAIN" DAMAGES.

This Court previously ruled that a plaintiff is a not entitled to receive expectation damages, such as those awarded in contract, under either the UTPCPL or common law fraud. Solarchick v. Metropolitan Life Ins. Co., --- F.Supp.2d ----, 2006 WL 1312530 at *2 (W.D. Pa. 2006).  This ruling is correct and comports with Pennsylvania law.  See Neuman v. Corn Exch. Nat'l Bank & Trust Co., 51 A.2d 759, 766 (Pa. 1947) ("in an action for deceit or fraud in Pennsylvania, the plaintiff can recover only his 'actual loss' and not 'the value of his bargain'").

## II.    IN AN ACTION BASED ON FRAUD, A PARTY'S ACTUAL LOSS IS LIMITED TO HIS OUT-OF-POCKET EXPENSES.

A party's "actual loss" constitutes out-of-pocket expenses incurred as a result of the alleged fraud.  Savitz v. Weinstein, 149 A.2d 110, 113 (Pa. 1959);  see also Agliori v. Metropolitan Life Ins. Co., 879 A.2d 315 (Pa. Super. 2005) (although the trial court determined that there was no ascertainable loss because the insured's estate received exactly what he thought he was purchasing, the Superior Court reversed and remanded with instructions to determine damages consistent with out of pocket loss due to the fact that plaintiff's estate would have received a greater death benefit had he never entered into the transaction);  Kaufman v. Mellon Nat'l Bank and Trust Co., 366 F.2d 326, 331 (3d Cir. 1966)  ("In an action based upon fraud the purchaser is entitled to recover his actual loss measured by the difference between the price he paid and the value of that which he received, determined as of the time of the transaction") (internal citations omitted);  see also First Lehigh Bank v. North River Ins. Co., 1989 WL 146654 (E.D. Pa. Dec. 4, 1989) ("damages collectible in a fraud action are limited to what losses were immediately and proximately caused by the fraud") (internal citations omitted).

Although this Court correctly ruled in Solarchick that plaintiffs are not entitled to "expectation" or "benefit of the bargain" damages, a more expansive formula was applied in the determination of actual loss than the out-of-pocket formulation set forth in Savitz and subsequent cases.  This Court ruled that the jury may consider the actual and allegedly promised face values of the subject policies as well as additional unexpected outlays that a plaintiff is obligated to pay. Solarchick, 2006 WL 1312530 at *4.  This formulation focuses on the expectations of the plaintiff -- that is, the plaintiff allegedly expected a certain alleged policy value and a certain number of alleged premiums -- and constitutes a benefit of the bargain analysis in everything but name.  For example, this Court provided a hypothetical in which an investor was fraudulently

told that a $10.00 investment would provide a return of one million dollars when, in fact, such a return would require an investment of $100.00.  The Court concluded that the investor could be seen to have an actual loss of $90.00 -- the difference between the promised investment and the investment actually required.  Id. at 4.  Importantly, this Court noted that this formulation of damages represents the "value of [the hypothetical investor's] bargain."  Id. (emphasis added).  Nowhere in the hypothetical did the investor actually lose $90.00.  Thus, it is inconceivable how $90.00 represents his "actual loss."

If the Savitz formulation were applied in the above hypothetical, the investor would be awarded $10.00, his out-of-pocket loss.  Similarly, if the formulation articulated by the Third Circuit in Kaufman were applied, the same outcome would result.  The investor in the hypothetical received nothing of value, and paid $10.00.  His actual loss, the difference between the price paid and the value received, is therefore $10.00.  See Kaufman, 366 F.2d at 331.

The Court of Common Pleas of Allegheny County consistently has limited its awards of damages to actual damages based on plaintiff's "out-of-pocket" losses in similar sales practices cases based on alleged violations of the UTPCPL.  For example, in Lasko v. Metropolitan Life Insurance Co., this Court found that actual damages resulting from defendants' unfair trade practices consisted of the monthly payments made by plaintiff into her whole life policy, plus interest, up until the time that plaintiff knew that what she had purchased was a life insurance policy, less any cash value within the policy as of that date.  See Lasko v. Metropolitan Life Ins. Co., G.D. No. 95-015438, Decision and Order at 7 (C.C.P. Allegh. Cty. Aug. 2, 2004) (Wettick, J.).  Similarly, in Eck v. Metropolitan Life Ins. Co., Judge Wettick found the plaintiff's actual damages to be equal to the thirty-six monthly premiums she made into her life insurance policy, plus interest, less the cash surrender value she would have received as of the time that she had sufficient information to be on notice of the alleged fraud.  See Eck v. Metropolitan Life Ins. Co.,

G.D. No. 95-017150, Decision and Award at 2 (C.C.P. Allegh. Cty. Sept. 13, 2005) (Wettick, J.).
These damage awards are consistent with the Third Circuit's ruling in <u>Kaufman</u> that actual loss
is equal to the difference between the price paid by plaintiff and the value received. 366 F.2d at
331.

## III.    THE <u>LESOON</u> DECISION IS NOT APPLICABLE HERE.

As in <u>Solarchick</u>, the Superior Court's statement regarding expectation damages set forth
in the recent decision in <u>Lesoon v. Metropolitan Life Ins. Co.</u>, 2006 WL 771568 (Pa. Super.
2006) is not binding in this case. At no point in its decision does the Superior Court rule that
expectation damages are the appropriate measure of damages for all, or even most, claims arising
under the UTPCPL. In fact, the Superior Court focused on several fact-specific issues in <u>Lesoon</u>
and determined that expectation damages were appropriate there. Specifically, the Court focused
on the findings of forgery, undisclosed replacement of insurance policies, and purported
obstructionism on the part of MetLife in making its determination. <u>See</u> <u>Lesoon</u>, 2006 WL 71568
at *10-11. None of the aforementioned allegations were even alleged by plaintiff in this matter.

Further, the Superior Court noted that, in <u>Lesoon</u>, the plaintiffs could not afford the
policy actually issued by MetLife, as evidenced by the fact that the Check-O-Matic payment
withdrawals (procured through a forged Check-O-Matic Authorization Form) caused the <u>Lesoon</u>
plaintiffs to bounce checks.[1] In fact, the <u>Lesoon</u> plaintiffs "altered their lifestyle" in order to
raise funds for the policy at issue. <u>Id</u>. at *10. Plaintiff in this matter did not change his lifestyle
to make premium payments, nor did he provide an indication that he could not afford them.

Perhaps most important, the <u>Lesoon</u> plaintiffs had suffered no actual, out-of-pocket
losses. Recognizing the fraud-prevention purpose of the UTPCPL, the Superior Court found it
was inappropriate to limit plaintiffs to nominal losses in light of what it found to be particularly

---

[1] Mr. Carter provides no evidence to support the allegation in his Report that plaintiff could not afford his policies.

egregious violations of the UTPCPL.  Id. at *6-7.  In the matters currently before this Court, plaintiff does not, and cannot, make similar allegations.

Lesoon does not overturn the line of Superior Court cases that have consistently held that an award of a party's actual, out-of-pocket loss is an appropriate measure of damages under the UTPCPL.  See Agliori v. Metropolitan Life Ins. Co., No. 1579 WDA 2004, 2005 Pa. Super. 253 (July 8, 2005);  Skurnowicz v. Lucci, 798 A.2d 788, 795 (Pa. Super. 2002) (in a UTPCPL action where seller misrepresented that property had no flood problem, the plaintiff was awarded actual damages, or the difference between the amount paid and the value of property flooded);  Young v. Dart, 428 Pa. Super. 43, 53-54 (1993) (in a UTPCPL action regarding the purchase of a defective automobile, the Superior Court upheld the trial court's award based primarily on plaintiff's out-of-pocket payment, minus the value plaintiff received from the use of the automobile).  Accordingly, it is clear that the Superior Court did not intend its ruling in Lesoon to set forth a universal rule that all courts are to award expectation damages upon a finding of liability in all UTPCPL cases.  Rather, the Superior Court ruled that expectation damages should be awarded with respect to the Lesoon plaintiffs' UTPCPL claim, which included factors that the Court found to be particularly egregious.[2]  See Lesoon, 2006 WL 71568  at *10-11.  None of those factors exist in this matter, thereby making Lesoon inapplicable.

Further, in Lesoon, the Superior Court specifically states that "the duty of assessing damages is for the trier of fact, and we will not usurp that function."  2006 WL 71568  at *11. After the release of the Lesoon decision, courts have issued a number of opinions ruling that the plaintiffs' damages pursuant to a UTPCPL claim were limited to their actual losses, which were calculated by considering the premiums paid, with interest and subtracting the remaining cash

---

[2] MetLife is seeking redress of the Lesoon decision on appeal.

value of the policy.  See e.g. Ex. B, Bryant v. Metropolitan Life Ins. Co., G.D. No. 99-19511,

Decision and Award at 2 (court reached its decision despite specifically noting that the plaintiff

expected to receive a $10,000 policy on his life and expected to pay premiums for fourteen

years);  Ex. C Bauer v. Metropolitan Life Ins. Co., G.D. No. 95-15814, Decision and Award, at 3

(court "determined that the appropriate measure of damages under the circumstances in this case

is the actual loss suffered by the Plaintiff" and held that the plaintiff's premium payments

represented "Plaintiff's total loss due to Defendants' fraudulent misrepresentation and violation

of the UTPCPL");  Ex. D Eck v. Metropolitan Life Ins. Co., G.D. No. 95-17150, Op. and Order

of Court at 14 (C.C.P. Allegh. Cty. Feb. 9, 2006) (Judge Wettick, after the initial release of the

unpublished Lesoon decision, ruled that although plaintiffs were not necessarily limited to

recovery of actual, out-of-pocket loss in every case arising under the UTPCPL, neither were

"expectation" or "benefit of the bargain" damages appropriate in every case).

    In that ruling, Judge Wettick rejected the plaintiff's post-trial motion for an award of

expectation damages and upheld his award of actual, out-of-pocket damages.  See Ex. E

Braeudigam v. Metropolitan Life Ins. Co., G.D. No. 95-16429, Decision and Award at 4 (C.C.P.

Allegh. Cty. Feb. 16, 2006) (in a decision issued after the initial release of the unpublished

Lesoon decision, the Court held "[b]ased on the evidence presented at trial, this Court has

determined that the appropriate measure of damages under the circumstances is the actual loss

suffered by the Plaintiff.") (emphasis added).  Thus, it is clear that an award of actual damages in

UTPCPL cases, based on a plaintiff's out-of-pocket loss, remains appropriate depending on the

circumstances presented.

    Moreover, the facts of Lesoon are readily distinguishable from the instant case.  In this

case, plaintiff admits that he signed the applications for life insurance, but alleges that premium

payments would only be required for a specific number of years.  In Lesoon, the plaintiffs

alleged that, because of a forgery, funds were wrongfully withdrawn from their checking account.  See id.  Here, plaintiff does not dispute the veracity of his signature on any transactional documents, nor did plaintiff alter his lifestyle or provide indication that he could not afford the premiums for the policies he had purchased.  Thus, given that the facts of Lesoon are clearly distinguishable, Lesoon being the extreme exception, plaintiff cannot successfully argue that the Lesoon decision supports the imposition of expectation damages.

In addition to lacking any legal foundation, plaintiff's expert report is factually unsupported.  The report does not contain sufficient evidence of damages or actual loss that plaintiff incurred with respect to the transaction at issue.  For example, Mr. Carter uses a fourteen year and ten year accelerated premium eligibility for plaintiff's policies, respectively, and speculates as to how many years plaintiff can expect to continue to pay premiums on each policy.

Courts dismiss claims where a plaintiff alleges only speculative or future harm and fails to prove actual current losses.  The calculation of damages must rest on a reasonable factual basis and not conjecture, and the fact-finder may not render a verdict based on "speculation or guesswork."  Delahanty v. First Pa. Bank. N.A., 464 A.2d 1243, 1257 (Pa. Super. 1983);  see also Carroll v. Philadelphia Housing Auth., 650 A.2d 1097, 1100 (Pa. Cmwlth. 1994).  A plaintiff needs to provide the fact-finder with a reasonable amount of information so as to enable the fact-finder to estimate damages fairly without engaging in speculation.  See Detterline v. D'Ambrosio Dodge, Inc., 763 A.2d 935 (Pa. Super. 2000).  A fact-finder may not render a verdict based on "sheer conjecture or guesswork," but it may use a "measure of speculation."  See Omicron Sys., Inc. v. Weiner, 860 A.2d 554, 565 (Pa. Super. 2004).  However, this means only that the fact-finder may make a reasonable estimate of damages based on relevant data, for

example, by assessing testimony and accepting or rejecting the estimates of the damages given by witnesses.  Id. at 564-565.

Plaintiff is not entitled to recover damages equivalent to his purported expectations, or his "benefit of the bargain."  To the extent plaintiff has been damaged at all with respect to his policies, plaintiff's damages are limited to actual, out-of-pocket losses.  Plaintiff's expectations regarding the 1991 and 1994 policies cannot be contemplated by this Court as this action arises out of alleged fraud.  Plaintiff's expert report considers a measure of expectation damages to which plaintiff is not entitled.

## IV.   UNDER ERISA, PLAINTIFF IS NOT ENTITLED TO EXPECTATION OR MONETARY DAMAGES WITH RESPECT TO HIS 1994 POLICY.

Under ERISA, a civil action may be brought by plaintiff for the following relief only:  (1) requests for information;  (2) to recover benefits due to him under the terms of the plan;  (3) to enforce his rights under the terms of the plan;  or (4) to clarify the right to future benefits under the terms of the plan.  See 29 U.S.C. § 1132(a).

In Mertens v. Hewitt Associates, the Supreme Court made clear that claims for money damages are not permissible under Section 502(a)(3)(B) because they are "the classic form of legal relief" and are therefore not within the scope of "appropriate equitable relief" allowed under that section.  See Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 204 (3d Cir. 2004) (citing Mertens, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993));  see also DiFelice v. Aetna U.S. Healthcare, 346 F.3d 442, 458 (3d Cir. 2003).

The Supreme Court in Great-West Life & Annuity Ins. Co. v. Knudson reaffirmed Mertens and stated:

> As we explained in Mertens, [e]quitable relief must mean
> something less than all relief.  508 U.S., at 258, n. 8, 113 S.Ct.
> 2063.  Thus, in Mertens we rejected a reading of the statute that
> would extend the relief obtainable under § 502(a)(3) to whatever

> relief a court of equity is empowered to provide in the particular
> case at issue (which could include legal remedies that would
> otherwise be beyond the scope of the equity court's authority).
> Such a reading, we said, would limit the relief not at all and render
> the modifier [equitable] superfluous. Id., at 257-258, 113 S.Ct.
> 2063. Instead, we held that the term equitable relief in §
> 502(a)(3) must refer to those categories of relief that were typically
> available in equity . . . . Id., at 256, 113 S.Ct. 2063.

534 U.S. 204, 209-210, 122 S.Ct. 708 (2002) (internal quotations omitted). Plaintiff expressly

seeks expectation (money) damages. See Michaels v. Breedlove, 2004 WL 2809996, *1 (3d Cir.

2004) (citation omitted) ("Almost invariably . . . suits seeking (whether by judgment, injunction,

or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for

'money damages,' as that phrase has traditionally been applied, since they seek no more than

compensation for loss resulting from the defendant's breach of legal duty."). Under the Supreme

Court's holdings in Mertens and Great West, plaintiff cannot recover expectation and/or

compensatory damages for his claim relating to the 1994 policy.

## CONCLUSION

For the foregoing reasons, MetLife and Kenneth F. Kaczmarek respectfully request that

this Honorable Court determine that any evidence regarding expectation damages is excluded

and that plaintiff may not recover expectation damages at the time of trial.

Respectfully Submitted,

s/ B. John Pendleton, Jr.
B. John Pendleton, Jr.
McCARTER & ENGLISH, LLP
PA I.D. No. 41162
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Attorneys for Defendant
Metropolitan Life Insurance Company
Dated: October 2, 2006                           and Kenneth F. Kaczmarek

-11-

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via the electronic filing service, on this 3rd day of October 2006, on the following counsel of record:

> Kenneth R. Behrend, Esq.
> Behrend and Ernsberger, P.C.
> Union National Bank Building
> 306 Fourth Avenue, Suite 300
> Pittsburgh, PA  15222

s/ B. John Pendleton, Jr. _____