IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT G. WYCKOFF, | : CIVIL ACTION NO. 00-2248 |
| Plaintiff, | : |
| v. | : |
| METROPOLITAN LIFE INSURANCE COMPANY and KENNETH F. KACZMAREK, | : CHIEF JUDGE AMBROSE |
| Defendants. | : |

**DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY AND KENNETH F. KACZMAREK'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE PLAINTIFF'S EXHIBIT NOS. 21, 39, 40, 41, 42, 46, 52, 55, 58, 112 AND 113 DOCUMENTS AUTHORED BY AND RELATING TO JAMES RAYL**

**PRELIMINARY STATEMENT**

Defendant Metropolitan Life Insurance Company ("MetLife"), by and through its attorneys, McCarter & English, LLP, hereby submit the following Brief in Support of Motion in Limine to Exclude from Evidence Plaintiff's Exhibit nos. 21, 39, 40, 41, 42, 46, 52, 55, 58, 112 and 113, documents authored by and relating to James Rayl, copies of which are attached to the Motion as Exhibits.

Plaintiff has identified numerous documents authored by and relating to former MetLife employee James Rayl (the "Rayl Documents"). However, these documents are dated subsequent to November 1992, over a year after plaintiff purchased the one policy at issue. In addition, these documents have no relation to the transactions at issue in this matter, thus irrelevant under

Federal Rule of Evidence 401[1] and inadmissible at trial under Federal Rule 402.[2]  Even if admissible, the Rayl documents should be excluded under Federal Rule of Evidence 403 as highly prejudicial and likely to confuse the jury.[3]

Rayl had no knowledge of or experience regarding complaints from Pennsylvania. Rayl's documents allegedly contained his experiences while he was working in the Tulsa, Oklahoma, Teleservices Call Center from 1986 to 1996.  See Ex. A, Portion of Rayl Transcript at 46:9-11, 47:6-13, 51:17-25.  The Tulsa Call Center did not handle customer service for Pennsylvania.  Id. at 46:9-47:5, 47:6-13, 51:17-25.  As such, none of these exhibits relate to transactions that occurred in Pennsylvania.  Moreover, the Rayl documents listed in plaintiff's exhibits in large part relate to whole life policies sold substantially prior to 1991, the date of the first transaction at issue here, and the effect of dividend scale reductions in 1992-1994 on policies that were already on AP in the early 1990s.  In addition, exhibit no. 112, a personal insurance development review for Rayl during 1991, and exhibit 113, a memorandum regarding teleservices, have nothing to do with the transactions at issue.

The Rayl documents are also inadmissible as "bad acts" under Rule 404(b). Additionally, they contain inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule under Federal Rules of Evidence 803 or 804, including Federal Rule of Evidence 803(6) Records of Regularly Conducted Activity.

---

[1] Federal Rule of Evidence 401 defines "relevant evidence" as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2] Rule 402 provides that relevant evidence is generally admissible, and irrelevant evidence is inadmissible.

[3] Pursuant to Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Any probative value that the Rayl documents could possibly provide is negligible when compared to the unduly prejudicial impact it would have upon the jury.  See Taylor v. Monette, et al., 564 F.Supp. 1, 2 (E.D.Pa.1982)(excluding from trial evidence of the amounts of plaintiffs' medical expenses holding that "whatever marginal probative value such evidence would have on the issue of pain and suffering is greatly outweighed by its tendency for harm.")

Plaintiff's claims arise from the sale of a $10,000 whole life policy in 1991 (the "1991 policy") and the sale of a $4,500 whole life policy in 1994 (the "1994 policy"). Specifically, plaintiff claims that, in 1991, former MetLife sales representative Norman Molchan (deceased) misrepresented that plaintiff could purchase a $10,000 Whole Life policy by paying out-of-pocket premiums for only fourteen years.[4] Additionally, plaintiff asserts that an illustration was used indicating that, in year 2011, the 1991 Policy would have a cash value of $7,746.00 and a death benefit of $12,112.00. Plaintiff further alleges that former MetLife sales representative Kenneth Kaczmarek misrepresented that plaintiff would have to pay monthly premiums on the 1994 Policy for only ten years, with no subsequent payments thereafter. Plaintiff further alleges that Mr. Kaczmarek did not did not disclose that the 1994 Policy was, in fact, a whole life policy with payments payable for plaintiff's death.[5] The main issues in this case are whether Mr. Molchan and Mr. Kaczmarek made any misrepresentations with respect to the sale of the 1991 and 1994 policies and whether plaintiff was reasonably justified in relying upon those alleged statements.

## ARGUMENT

I.  **THE RAYL DOCUMENTS REFERENCED IN PLAINTIFF'S EXHIBIT NOS. 21, 39, 40, 52, 55, AND 58 ARE IRRELEVANT TO PLAINTIFF'S SPECIFIC AP ALLEGATIONS, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSABLE PURSUANT TO FEDERAL RULES 401, 402, AND 403.**

Plaintiff has identified as trial exhibits a number of documents authored by former MetLife employee James Rayl (the "Rayl Documents") that serve no purpose other than to

---

[4] Initially, the 1991 Policy was sold with a monthly premium of $59.40 based on plaintiff's classification as a non-smoker. However, a medical exam revealed nicotine in plaintiff's urine and he was reclassified as a smoker. Thus, the 1991 Policy was issued with a higher monthly premium of $73.20. Plaintiff avers that he did not contest the higher premium. Nevertheless, he contends that, "by paying the additional amount of premium," he still would only have to pay out-of-pocket premiums for fourteen years.

inflame the jury.  See Ex. B, Pls. Ex. Nos. 21, 39, 40, 52, 55, and 58.[6]  These documents have no relation to that transaction at issue, are not relevant to the defendants' conduct during or leading up to the transactions at issue, and therefore should be stricken in their entirety.

These Rayl documents concern sales that had to have occurred around the mid-1980s for these policies to have been eligible for AP in 1990-1993.  As such, they are irrelevant to plaintiff's 1991 or 1994 sale, which were not allegedly eligible for the AP plan until 2005 and 2004, respectively.  In a 1995 memorandum, Rayl states, "**We are going to great lengths to make certain our new AP customers understood the arrangement.**  Why shouldn't we do the same with [customers currently on the AP Arrangement.]" [emphasis added]  Id. at Pls. Ex. No. 55.  In light of Rayl's own statement, it would be extraordinarily prejudicial and confusing to the jury to allow the above-listed Rayl documents into evidence.  Plaintiff's policies were not eligible for nor on the AP program at this time.[7]  Similarly, Rayl's November 7, 1992 letter to Thomas Labadia focuses on issues with policies purchased in the early to mid 1980s that in 1992, were tested as AP eligible around 1992, but were no longer AP eligible by 1993, as a result of the changing economy.  In contrast, the policies at issue here were purchased in 1991 and 1994.  Permitting this letter to be admitted into evidence would undoubtedly confuse the issues.

---

[5] For a more detailed discussion of the relevant allegations regarding the policies at issue, this Court is respectfully referred to Defendants' Pretrial Statement.

[6] **Pls. Exs. 21 and 39** (listed twice) -  dated November 7, 1992, from Rayl to T. LaBadia (Policy Administration & Customer Service), "reappearing UL Premiums – Accelerated Payment Cases" and policies expected to be on AP in 1992 are going to be eligible later.
  **Pls. Ex. 40** - dated December 7, 1992, from Rayl to T LaBadia (Policy Administration & Customer Service), complaints surfacing re: alleged prior sales using "paid-up" in connection with current (1992) delayed AP dates.
  **Pls. Ex. 52** - dated September 29, 1994, from Rayl to F. Lynch, (Senior Vice-President, P.I. Customer Service) "AP collapse dates," and policies expected to be on AP in 1992 are going to be eligible later.
  **Pls. Ex. 55** - dated January 3, 1995, from Rayl to B. Barnewold (Sr. Business Systems Consultant, Bridgewater, NJ) "We are going to great lengths to make certain our new AP customers understood the arrangement."
  **Pls. Ex. 58** - dated January 11, 1995, from D. West to B. Gardner (MetLife Customer Service Center - Tulsa), policyholders currently going on AP should have more information and attaching a memorandum from Jim Rayl.

[7] MetLife reserves any rights to use Pl. Ex. No.55  in rebuttal to plaintiff if Rayl documents are allowed into evidence.

Accordingly, admission of the irrelevant Rayl documents listed in Plaintiff's exhibit nos. 21, 39, 40, 52, 55, and 58 would be highly prejudicial and likely to confuse the jury under Federal Rules of Evidence 401, 402, and 403.

II.   **RAYL'S TULSA CALL CENTER DID NOT RECEIVE CALLS FROM PENNSYLVANIA AND RAYL'S DOCUMENTS ARE HIGHLY IRRELEVANT TO THE LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSABLE PURSUANT TO FEDERAL RULES 401, 402, AND 403.**

The Rayl documents listed in Plaintiff's exhibit nos. 39, 40, 52, 55, and 58, are irrelevant as Rayl had no knowledge or experience regarding complaints or other customer service issues from Pennsylvania. Rayl's documents allegedly contained his experiences while he was working in a customer service call center in Tulsa, Oklahoma, from 1986 to 1996. See Ex. A, Rayl Transcript at 46:9-11, 47:6-13. The Tulsa Call Center did not handle customer service for Pennsylvania. Id. at 46:9-47:5, 51:17-25. The Rayl documents listed in plaintiff's exhibits were all authored between 1992 and 1995, when Rayl worked in the Tulsa Call Center, and they do not reference calls from Pennsylvania. See Ex. B, Pls. Ex. Nos. 39, 40, 52, 55, and 58; see also footnote 6.

III.   **EXHIBIT NOS. 41 AND 42 RELATE TO SALES OUTSIDE OF PENNSYLVANIA AND ARE HIGHLY IRRELEVANT TO THE LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSABLE PURSUANT TO FEDERAL RULES 401, 402, AND 403.**

Plaintiff's exhibit no. 41, dated December 23, 1992, from Rayl to D. Martin in the MidAmerica Territory, specifically relates to a policyholder complaint from the Highland Heights, Ohio branch office. Plaintiff's exhibit no. 42 also was authored by Rayl to K. Schoos of the Warwick, Rhode Island Call Center in connection with the same Ohio complaint. Ohio and Pennsylvania were not in the same sales territory at the time of the complaint or at the time of Rayl's letter. In addition, the exhibits contain Rayl's speculations regarding the use of the words "paid-up" by MetLife sales representatives. In Exhibit 41, Rayl expressed particular concern

about a letter from a branch manager in Ohio, who was involved with this Ohio complaint, in which the manager wrote that plaintiff's policy would be "paid-up" in six years. Plaintiff here, by contrast, never received any document from the sales representatives or any other MetLife employee in which his policies were referred to as "paid-up" in a certain number of years. Nor did plaintiff ever testify that either sales representative used the term "paid-up" while referring to his policies.

Exhibits 41 and 42 are also irrelevant as Rayl had no knowledge or experience regarding complaints or other customer service issues from Pennsylvania. Exhibit Nos. 41 and 42 were authored in 1992, when Rayl worked in the Tulsa Call Center, and they do not reference calls from Pennsylvania. See Ex. C, Pls. Ex. Nos. 36, 37; see also Ex. A, Rayl Transcript at 46:9-11, 47:6-13. The Tulsa Call Center did not handle customer service for Pennsylvania. Id. at 46:9-47:5, 51:17-25. As such, admission of the irrelevant documents listed in Plaintiff's exhibit nos. 41 and 42 would be highly prejudicial and likely to confuse the jury under Federal Rules of Evidence 401-403.

**IV.   PLAINTIFF'S EXHIBIT NOS. 46, 112 AND 113 DO NOT RELATE TO SALES PRACTICES AND ARE HIGHLY IRRELEVANT TO THE LITIGATION, UNFAIRLY PREJUDICIAL TO METLIFE, AND INADMISSABLE PURSUANT TO FEDERAL RULES 401, 402, AND 403.**

Plaintiff's exhibit no. 46 is a January 19, 1994, six-page memorandum from Rayl to Robert Crimmins, then the Executive Vice-President of Personal Insurance. See Ex. D, Pls. Ex. No. 46. The memorandum was drafted in connection with Rayl's perceived problems with his career, the development of customer services and the MetLife call centers. Id. It is filled with Rayl's prejudicial and biased opinions, such as "God help us, the customers and the Company," "I fully expect to be out of here," "I hope this does not come across as just being my frustration or that I am just griping and complaining." Id. Plaintiff's Exhibit No. 112 is a personal insurance

development review for Rayl for 1991.  <u>See</u> Ex. E, Pls. Ex. No. 112.  The document relates to staffing and morale in Rayl's Tulsa call center, as well as call center staff turnover.  <u>Id</u>.  Plaintiff's Exhibit No. 113 is a booklet dated 1992 entitled "Accomplishment & Programs Customer Service & Communications" for MetLife's Tulsa Customer Service Center.  <u>See</u> Ex. F, Pls. Ex. No. 113.  This document relates to the accomplishments of the Tulsa Customer Service Center in 1991 and 1992.  These documents have no relation to the transactions at issue.

Plaintiff's exhibit no. 46 contains only two sentences referencing AP in its total of six pages.  <u>See</u> Ex. D, Pls. Ex. No. 46 at 2.  Rayl stated, "Based on complaints received in the past three years, I tried to convince people we were (and are) sitting on a time bomb with the way Accelerated Payment was presented and sold to our customers.  We are now moving, albeit very slowly, to address this issue, but again nobody wanted to listen until it was serious." [emphasis omitted]  <u>Id</u>.  Further, exhibit no. 46 does not fall within the "business records" exception to the general hearsay rule under federal Rule 803(6).  Even if it did, the sources of the information indicate a "lack of trustworthiness."  Exhibit 46 is rife with personal opinions.  If plaintiff introduced Rayl as a witness, he would not be allowed to testify as to his opinions, such as they are expressed in his documents, because he is not an expert.

Plaintiff's exhibit no. 112 does not reference AP in any way.  Instead, it focuses on staffing issues and operating costs.  <u>Id</u>.  It too has no relation to the transaction at issue in this matter.  Plaintiff's exhibit no. 113 contains only four lines (of a thirteen page document) regarding AP and those four lines discuss AP in the context of teleservicing.  Consequently, exhibit nos. 46, 112 and 113 should be excluded as irrelevant, prejudicial, and likely to confuse the jury under Federal Rules of Evidence 401, 402, and 403.

V.  **THE RAYL DOCUMENTS LISTED IN PLAINTIFF'S EXHIBITS ARE INADMISSABLE AS "BAD ACTS" EVIDENCE UNDER FEDERAL RULE 404(b).**

Plaintiff will most likely attempt to use the Rayl documents to show unrelated alleged "wrongs" or "bad acts" by MetLife to show that MetLife behaved in the same manner in this case. This evidence would be inadmissible under Federal Rule of Evidence 404(b). See also LaTaille v. Ponte, 754 F.2d 33, 35 (1st Cir. 1985) (prior bad acts not admissible to prove that defendant acted in similar fashion in the case at hand); Coursen v. A.H. Robins Co., 764 F.2d 1329, 1334-35 (9th Cir. 1985) (trial court properly excluded alleged prior misconduct which plaintiffs sought to introduce to establish evidence of a "pattern of neglect" or fraud because "[t]he overwhelming thrust of this evidence was to have the jury believe that because defendant lied [before]...it lied [with respect to plaintiffs] as well").

In order for "bad acts" evidence to be admissible to establish a common plan exception to the rule, Plaintiff must show that the acts "are part of a single series of events.'" J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994) (quoting Government of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992). Evidence concerning other bad acts that are not connected to the transaction at issue is inadmissible. See id.

Any assertion by plaintiff that Federal Rule of Evidence 404(b) permits this type of evidence to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," is utterly without merit. To show that improper bad acts evidence is admissible to show intent, this Court has held that "'the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.'" Becker v. ARCO Chemical

-8-

Co., 207 F.3d 176, 191 (3d Cir. 2000) (quoting United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999))(emphasis added).  Plaintiff cannot meet that burden.

## VI.     THE RAYL DOCUMENTS LISTED IN PLAINTIFF'S EXHIBITS CONSTITUTE INADMISSABLE HEARSAY AND HEARSAY WITHIN HEARSAY

The  documents that Rayl authored on AP are classic hearsay.  In order for Rayl's testimony and documents to be admitted into evidence, plaintiff must satisfy his burden of showing that they fit within an exception to the hearsay rule.  Plaintiff fails to meet that burden.  The documents authored by Rayl do not fall within the "business records" exception to the general hearsay rule under Federal Rule of Evidence 803(6).  Even if they did, the sources of the information indicate a "lack of trustworthiness."  Rayl's documents are rife with personal opinions and were clearly not written in the regular course of his employment duties.  If plaintiff introduced Rayl as a witness, he would not be allowed to testify to his opinions, such as they are expressed in his documents, because he is not an expert.

The documents also contain hearsay within hearsay as Rayl is re-telling his version of various complaints, for which he has no first-hand knowledge.  Because the Rayl documents fail to satisfy the requirement of trustworthiness and they constitute inadmissible hearsay, these documents should be excluded from evidence.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Honorable Court enter an Order barring the introduction or use of Plaintiff's exhibit nos. 21, 39, 40, 41, 42, 46, 52, 55, 58, 112 and 113, documents authored by and relating to James Rayl.

             Respectfully Submitted,

             s/   B. John Pendleton, Jr. _____
             B. John Pendleton, Jr.
             McCARTER & ENGLISH, LLP

                                      Four Gateway Center
                                      100 Mulberry Street
                                      Newark, NJ 07102
                                      (973) 622-4444

                                      Attorneys for Defendants
                                      Metropolitan Life Insurance Company and
                                      Kenneth F. Kaczmarek

Dated: October 3, 2006

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 3rd day of October 2006, a true and correct copy of the foregoing DEFENDANTS BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE PLAINTIFF'S EXHIBIT NOS. 21, 39, 40, 41, 42, 46, 52, 55, 58, 112 and 113 was served upon the following via electronic delivery:

Kenneth R. Behrend, Esquire  
BEHREND & ERNSBERGER, P.C.  
Union National Bank Building, 3rd Floor  
306 Fourth Avenue  
Pittsburgh, Pennsylvania  15222

s/  B. John Pendleton, Jr. _____

ME1\5878929.1