# Robert Wyckoff v. Metropolitan Life Insurance Company, Civil Action No. 00-2248

## Objections to Plaintiff's Deposition Designations for James Rayl in Rayl v. Metropolitan Life Ins. Co.

Although Defendants Metropolitan Life Insurance Company ("MetLife") and Kenneth F. Kaczmarek do not waive their right to renew the objection to its admissibility at trial, defendants hereby designate the following excerpts from the deposition as objectionable.[1]  Defendants' attach hereto as Exhibit A the designated portions of Rayl's February 25, 1998 deposition along with deposition exhibits referenced therein.

Plaintiff only designated portions of Jim Rayl's February 25, 1998 deposition in Rayl v. Metropolitan Life Ins. Co.  While plaintiff listed Rayl's April 13, 1998 deposition transcript in Rayl v. Metropolitan Life Ins. Co. as Exhibit 115, plaintiff failed to designate any portions of this testimony to be read at trial.  Accordingly, plaintiff has waived his right to read in any portion of Rayl's April 13, 1998 testimony at trial.

| Page of Transcript | Reason for Objection |
|---|---|
| 6:14-8:25 | Irrelevant.  This testimony relates to the rules Rayl should follow in the deposition, his deposition history, and his medication, all of which have no probative value for any issue in this case. |
| 9:24-10:3 | Irrelevant.  This testimony relates to Rayl's deposition preparation, which has no probative value for any issue in this case. |
| 20:7-21:9 | Irrelevant.  This testimony relates to Rayl's responsibility as manager of cash control and accounting for the processing of premium payments function, which has no probative value for any issue in this case. |
| 31:1-32:25 | Irrelevant.  This testimony relates to how Rayl became the manager of human resources in 1983, which has no probative value for any issue in this case. |
| 42:1-44:25 | Irrelevant.  This testimony relates to meetings concerning Telemarketing/Teleservices and one meeting in particular about the direction and goals of Teleservicing, which has no probative value to any issue in this case. |
| 52:9-23 | Irrelevant.  This testimony relates to the expansion of teleservices, which has no probative value to any issue in this case. |
| 59:25-60:8 | Irrelevant.  This testimony relates to Rayl's management style. |

---

[1] Defendants are filing simultaneously with these objections to plaintiff's Jim Rayl deposition designations a Motion in Limine to Exclude Jim Rayl's Trial and Deposition Testimony and supporting brief, both of which defendants hereby incorporate by reference as if set forth fully herein.

| | |
|---|---|
| | Rayl's management style is not an issue in this case. |
| 77:18-79:18 | Irrelevant. This testimony relates to Rayl's responsibility for the cash/loan/dividend area, which has no probative value to any issue in this case. There is no evidence that plaintiff ever called MetLife's cash/loan/dividend area. |
| 102:2 -105:4 | Irrelevant. This testimony relates Rayl's problems with another MetLife employee Barbara Gardner. Rayl's issues with Gardner have no probative value to any issue in this case. |
| 105:5-106:2; 107:13-108:24; 169:9-22, | Irrelevant. This testimony relates to the quality of MetLife's teleservicing and Rayl's disagreement with the resources that MetLife provided to teleservices. Plaintiff's claims all stem from the sale of his 1991 and 1994 policies. He does not allege that he was unhappy with the level of customer service that he was provided. Probative value, if any, is outweighed by the prejudice. |
| 173:25-174:3; Exhibit 22 | This testimony merely identifies Exhibit 22 as an "assortment of letters and documents [Rayl] wrote to advance customer service and call center issues." There is no substantive discussion of Exhibit 22. This testimony has no probative value for that reason alone. Plaintiff's only purpose in designating these lines is to introduce irrelevant and prejudicial documents into evidence through the "back door." These documents relating to teleservices and Rayl's personal issues with teleservicing have no relevancy to the issues in this case. Indeed, not one of the documents contained in Exhibit 22 reference any issue with AP at all. They have no relevancy to MetLife's or the sales representatives' conduct during or leading up to the transactions at issue. Plaintiff does not allege that he was unhappy with the level of customer service that he was provided. Probative value, if any, is outweighed by the prejudice. In addition, the documents in Exhibit 22 are also inadmissible to the extent they concern alleged "bad acts" and contain inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule. Probative value, if any, is outweighed by the prejudice |
| 253:24:254:18 | Probative value, if any, is outweighed by the prejudice. Irrelevant. Testimony references "churning," which is not an issue on this case. In addition to "accelerated payments," the testimony addresses the effect Mr. Rayl's verbalized beliefs were having on his reputation within the company, which has no relation to the facts at issue. |
| 254:19-255:20, 257:17-25, 258:7-13, | Irrelevant. This testimony relates to Rayl and the deposing attorney marking documents as exhibits 37-43. There is no substantive discussion of any of the exhibits. Accordingly, this testimony has no probative value. To the extent that plaintiff attempts to "back door" these exhibits into evidence at trial, |

| | |
|---|---|
| | these documents are inadmissible for the same reasons Plaintiff's Exhibits nos. 21, 39, 40, 41, 42, 46, 52, 55, 58, 112 and 113 (documents authored by and relating to James Rayl) are inadmissible.[2]  Defendants' specific objections to the exhibits are set forth below. |
| Exs. 37 and 39 | Irrelevant.  Exhibits 37 and 39 contain letters and other documents relating to universal life or single premium life policies, policies which are not at issue here.  The only document within Exhibit 39 that does not on its face relate to universal or single premium life policies is a handwritten note from Pamela Duffy referencing a letter that Rayl wrote.  Documents relating to these policies have no bearing on the issues in this case.  It is not clear from the note what that letter was in reference to, nor does the note address any issue with respect to policies allegedly sold on the AP plan.  These documents have no relevancy to MetLife's or the sales representatives' conduct during or leading up to the transactions at issue.  Probative value, if any, is outweighed by the prejudice.  These documents are also inadmissible to the extent they concern alleged "bad acts" and contain inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule.  In addition, there is no substantive discussion of this exhibit during the deposition. |
| Ex. 38 | Irrelevant.  Exhibit 38 consists of a six page memorandum from Rayl that focuses almost exclusively on replacement (not an issue in this case) and a letter from Rayl to Barbara Gardner dated September 15, 1990, that discusses issues with teleservicing.  AP is addressed only minimally in the memorandum (three paragraphs in the entire memorandum), and only in conjunction with replacement issues, and is not addressed at all in the letter.  Neither of these documents have any bearing on any issue in this case.  These documents have no relevancy to MetLife's or the sales representatives' conduct during or leading up to the transactions at issue.  Probative value, if any, is outweighed by the prejudice.  These documents are also inadmissible to the extent they concern alleged "bad acts" and contain inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule.  In addition, there is no substantive discussion of this exhibit during the deposition. |
| Ex. 40 | Irrelevant.  Exhibit 40 consists of letters and memorandum authored by Rayl regarding issues with teleservicing, in |

---

[2] Defendants incorporate by reference their Motion to Exclude from Evidence Plaintiff's Exhibit nos. 21, 39, 40, 41, 42, 46, 52, 55, 58, 112 and 113 and supporting brief, as if set forth fully herein.

|          |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                    |
| -------- | -------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|          | particular Rayl's expressed desire for various electronic programs, such as online processing of owner/beneficiary changes.  There is only minimal mention of AP in any of these and this is in connection with customer service issues (such as Rayl's desire for "online 'AP' Eligibility Quotes and Testing" mentioned in a memorandum dated January 16, 1992).  These documents have no relevancy to MetLife's or the sales representatives' conduct during or leading up to the transactions at issue.  Probative value, if any, is outweighed by the prejudice.  These documents are also inadmissible to the extent they concern alleged "bad acts" and contain inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule.  In addition, there is no substantive discussion of this exhibit during the deposition. |
| Ex. 41   | Irrelevant.  Exhibit 41 consists mainly of memorandum and letters from Rayl regarding security issues (such as providing a PIN number for callers), the transfer of policyholder records, MetLife's advertising campaign in 1994, and other issues with customer service.  The only document that references issues with AP is a letter dated October 28, 1994 from J. Rayl.  This letter has no relevancy to MetLife's or the sales representatives' conduct during or leading up to the transaction at issue.  Probative value, if any, is outweighed by the prejudice.  These documents are also inadmissible to the extent they concern alleged "bad acts" and contain inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule.  In addition, there is no substantive discussion of this exhibit during the deposition. |
| Ex. 42   | Irrelevant.  Several documents contained in Exhibit 42 involve issues with universal life policies.  Plaintiff does not make any allegations regarding the sale of universal life insurance policies.  Probative value, if any, is outweighed by the prejudice.  These documents are also inadmissible to the extent they concern alleged "bad acts" and contain inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule.  In addition, there is no substantive discussion of this exhibit during the deposition. |
| Ex. 43   | No substantive discussion of this exhibit.  In addition, the email dated August 25, 1997 is irrelevant.  This email was written long after the transactions at issue and has no relevancy to MetLife's or the sales representatives' conduct during or leading up to the transactions at issue.  In addition, this email is inadmissible to the extent it references alleged "bad acts" and is inadmissible hearsay that does not fall within any exception to the general hearsay rule.  Probative value, if any, is outweighed by the prejudice.  Irrelevant. |

| 259:2-16 | Probative value, if any, is outweighed by the prejudice. Irrelevant. This testimony addresses the effect Mr. Rayl's verbalized beliefs were having on his reputation within the company, which has no relation to the facts at issue. |
|---|---|
| 261:5-262:14; Exhibit 46 | Irrelevant. This testimony relates to Rayl's concerns with MetLife's November 1995 field release regarding AP and references Exhibit 46, a letter from Rayl dated November 4, 1995, addressing the same. The release and letter are dated 1995, after the transactions at issue. Rayl's letter has no relevancy to MetLife's or the sales representatives' conduct during or leading up to the transaction at issue. In addition, the letter refers to policyholders who were purportedly told that their policies would be "paid-up" in "X" years. There is no evidence here that either sales representatives used the expression "'paid-up' in 'x' years when they sold the policies at issue. Probative value, if any, is outweighed by the prejudice. In addition, Exhibit 46 is also inadmissible to the extent it concerns alleged "bad acts" and contains inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule. |
| 268:25-269:20 | Irrelevant. This testimony relates to Rayl's belief that his involvement with "public policy issues" was a factor in certain personnel decisions that were the subject of his lawsuit against MetLife. Rayl's broad and generalized speculations as to why these personnel decisions were made has no bearing on any issue in this case. This testimony has no relevancy to MetLife's or the sales representatives' conduct during or leading up to the transaction at issue. Probative value, if any, is outweighed by the prejudice. |

In the event this Court overrules defendants' objections and allows the above testimony of James Rayl to be read into evidence, defendants respectfully request that it be permitted to read the following excerpts of Mr. Rayl's February 25, 1998 deposition testimony into evidence as rebuttal:

- 28:4 to 29:14
- 45:4-11
- 42:2 to 50:16
- 69:23 to 70:25
- 75:16 to 76:15
- 127:2 to 130:1
- 136:25 to 138:8
- 149:3 to 150:6

- 157:25 to 160:2

Respectfully Submitted,


s/ B. John Pendleton, Jr._____
B. John Pendleton, Jr.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Attorneys for Defendants
Metropolitan Life Insurance Company and
Kenneth F. Kaczmarek

Dated:  October 3, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of October, 2006, a true and correct

copy of the foregoing **DEFENDANTS' OBJECTIONS TO PLAINTIFF'S DEPOSITION**

**DESIGNATIONS OF JAMES RAYL IN <u>RAYL V. METROPOLITAN LIFE INS. CO.</u>** was

served upon the following via the electronic filing system:

Kenneth R. Behrend, Esquire
BEHREND & ERNSBERGER, P.C.
Union National Bank Building, 3rd Floor
306 Fourth Avenue
Pittsburgh, Pennsylvania  15222

s/ B. John Pendleton, Jr._____