# Robert G. Wyckoff v. Metropolitan Life Insurance Company and Kenneth F. Kaczmarek, Civil Action No. 00-2248

## Objections to Plaintiff's Deposition Designations for Wilhelmenia Taylor in Ihnat v. Pover

Although Metropolitan Life Insurance Company ("MetLife") does not waive its right to renew this objection to its admissibility at trial, MetLife hereby designates the following excerpts from the deposition as objectionable.[1]

| Page of Transcript | Reason for Objection |
|---|---|
| | **Transcript dated September 26, 2002** |
| 4:11-16 | Misleading. Testimony suggests that Taylor was a corporate designee in this case, which she was not. She was a corporate designee in the case of Ihnat v. Pover. |
| 15:3-21, 16:11-22 | Irrelevant. Testimony concerns the use of the phrase "vanishing premiums." No evidence in this case that the sales representatives used the phrase "vanishing premium" or the word "vanish" during the sale of plaintiff's policies. Probative value, if any, is outweighed by the prejudice. |
| 20:12-23 | Irrelevant. Testimony relates to the existence of a "tracking system" to keep track of policies sold using an Accelerated Payment illustration. This testimony has no relevancy to MetLife's or the sales representatives' conduct during or leading up to the transaction at issue. Probative value, if any, is outweighed by the prejudice. |
| 26:16-27:4 | Irrelevant. Testimony relates to MetLife's efforts to notify customers about the declining dividend scale. Plaintiff makes no allegations with respect to MetLife's failure to notify her of any dividend scale changes. |
| 31:19-32:2 | Incomplete. The testimony ends by stating that MetLife wanted to be "prepared for the questions." Designation, if permitted at all, should also include 32:3-7, which defines the way Taylor used the word "questions." |
| | **Transcript dates October 2, 2002** |
| 5:5-15 | Irrelevant. This testimony only established that Taylor was not involved with training sales representatives with respect to the Accelerated Payment Plan. The fact that Taylor was not involved in this training has no probative value. |
| 12:3-13:12, | Irrelevant. This testimony established that Taylor had no |

---

[1] MetLife and Kenneth F. Kaczmarek are filing simultaneously with their objections to plaintiff's Wilhelmenia Taylor deposition designations a Motion in Limine to Exclude Wilhelmenia Taylor's Trial and Deposition Testimony and supporting brief, both of which defendants hereby incorporate by reference as if set forth fully herein.

| | |
|---|---|
| 36:14-37:8 | knowledge about any investigation that MetLife did to determine how many customers believed their policies were "paid-up." fact that Taylor had no knowledge of any such investigation has no probative value. Likely to confuse the jury. Probative value, if any, is outweighed by the prejudice. |
| 27:19-29:6 | Irrelevant. Testimony relates to the existence of a "tracking system" to keep track of policies sold using an Accelerated Payment illustration. This testimony has no relevancy to MetLife's or the sales representatives' conduct during or leading up to the transaction at issue. Probative value, if any, is outweighed by the prejudice. |
| 35:13-41:25 | This testimony relates to a letter dated December 7, 1992, from Jim Rayl (Customer Services & Communications) to T. LaBadia (Policy Administration & Customer Service) regarding complaints surfacing re: alleged prior sales using "paid-up" in connection with current (1992) delayed AP dates. This letter is listed as Plaintiff's Exhibit 40 and the inadmissibility of the letter is addressed more fully in MetLife's Motion in Limine to Exclude MetLife its Motion to Exclude from Evidence Plaintiff's Exhibit nos. 21, 39, 40, 41, 42, 46, 52, 55, 58, 112 and 113 (documents authored by and relating to Jim Rayl) and supporting brief, which MetLife hereby incorporates by reference as if set forth fully herein. Taylor had no first hand knowledge of this letter and saw the letter only in connection with her deposition preparation. Taylor testified that the only thing she knew of Rayl was that he worked in the Tulsa head office. Irrelevant. The letter was written after the sale of the policy at issue and has no relevancy to MetLife's or the sales representative's conduct during or leading up to the transaction at issue. The probative value of this testimony, if any, is outweighed by the prejudice. |
| 40:10-41:25 | Irrelevant. Testimony relates to whether sales representatives were questioned as to whether they were using the term "paid-up" during the time frame of 1992 through 1993. This evidence in no way offers any information regarding the sales practices of Mr. Molchan and Mr. Kaczmarek. The probative value, if any, is outweighed by the prejudice. |
| 42:2-44:19 | Irrelevant. Testimony relates to whether sales representatives were required to contact their customers who were sold policies using the AP concept after the sale. Plaintiff makes no allegations regarding the sales representatives' duty to contact her. The probative value, if any, is outweighed by the prejudice. |
| 46:4-50:4, 50:24-51:3 | Likely to confuse the jury. Taylor was confused about what she was being asked and the testimony regarding illustrations went beyond her knowledge as corporate designee. Probative value, if any, outweighed by the prejudice. |

| | |
|---|---|
| 55:20-56:1 | No probative value. This testimony merely identifies and marks as an exhibit a letter dated December 17, 1992, from Kathy Schoos (Customer Services & Communications) to Tom LaBadia (Policy Administration & Customer Service), that relates to documents involving Jim Rayl. Plaintiff failed to designate any portion of the testimony that addresses this letter substantively. Probative value, if any, is outweighed by the prejudice. Exhibit 2 of Taylor's deposition is also inadmissible for the same reasons set forth in MetLife's Motion to Exclude from Evidence Plaintiff's Exhibit nos. 21, 39, 40, 41, 42, 46, 52, 55, 58, 112 and 113 (documents authored by and relating to Jim Rayl) and supporting brief, which is incorporated by reference as if set forth fully herein. Irrelevant. The letter was written after the sale of the first policy at issue and has no relevancy to MetLife's or the sales representatives' conduct during or leading up to the transaction at issue. The probative value of this testimony, if any, is outweighed by the prejudice. These documents are also inadmissible to the extent they concern alleged "bad acts" and contain inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule. |
| 59:3-60:15 | Irrelevant. This testimony relates to a cover letter from Richard Schram (Personal Insurance Customer Service) to Pamela Duffy (a Vice President) dated December 11, 1994 that attaches a November 7, 1992 Memorandum from Jim Rayl. Taylor testified that she was not familiar with Rayl's November 7, 1992 Memorandum. Thus, this testimony has no probative value. Even if it did, the minimal probative value is outweighed by the prejudice. The December 11, 1994 letter and November 7, 1992 Memorandum have no relevancy to MetLife's or the sales representatives' conduct during or leading up to the transactions at issue. The November 7, 1992 Memorandum is listed as Plaintiff's Exhibit 21 and the inadmissibility of the Memorandum is addressed more fully in MetLife's Motion in Limine to Exclude MetLife its Motion to Exclude from Evidence Plaintiff's Exhibit nos. 21, 39, 40, 41, 42, 46, 52, 55, 58, 112 and 113 (documents authored by and relating to Jim Rayl) and supporting brief, which MetLife hereby incorporates by reference as if set forth fully herein. The November 7, 1992 Memorandum has no relevancy to MetLife's or the sales representative's conduct during or leading up to the transaction at issue. The probative value, if any, is outweighed by the prejudice. These documents are also inadmissible to the extent they concern alleged "bad acts" and contain inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule. |

| | |
|---|---|
| 67:5-18 | Irrelevant.  This testimony only establishes that Taylor had no knowledge of any study or investigation MetLife conducted to determine how many representatives used the term "paid-up" in their interactions with policyholders.  No probative value.  Even if it did, the minimal probative value is outweighed by the prejudice.  The testimony has no relevancy to MetLife's or the sales representative's conduct during or leading up to the transaction at issue |
| 79:7-80:24 | Irrelevant.  This testimony relates to illustrations containing the phrase "vanishing premium."  The illustration at issue in this case did not contain the phrase "vanishing premium."  The probative value, if any, is outweighed by the prejudice. |
| 83:5-87:22 | Irrelevant.  This testimony relates Exhibit 10 of Taylor's deposition, a cover letter from Taylor to G. Doby (a vice-president) attaching Taylor's April 4, 1994 Memorandum to G. Doby and Michael Rigby's (actuarial associate) January 11, 1994 Memorandum.  The exhibits are hearsay within hearsay.  The probative value, if any, is outweighed by the prejudice.  Michael Rigby's Memorandum relates to policies that were currently on AP in 1993 that might not be eligible to remain on AP in 1994. This has no relevance to any issue in this case as plaintiff's policies were not on AP in 1993, nor were they illustrated to AP in 1993. |
| 87:23-91:5, 92:7-13, 93:16-95:14, 103:18-106:23 | Irrelevant.  This testimony discusses policies currently on AP in 1993 that might not be eligible to remain on AP in 1994.  This has no relevance to any issue in this case as plaintiff's policies were not on AP in 1993, nor were they illustrated to AP in 1993. |
| 107:11-110:9 | Irrelevant.  This testimony relates to a letter dated November 4, 1995, from Jim Rayl (Customer Services & Communications) to Frank Lynch (Policy Administration & Customer Service), regarding Collapse Date Notifications.  Taylor's testimony about this letter solely relates to customers whose policies were currently on AP from 1993 through 1995.  This has no relevance to any issue in this case as plaintiff's policies were not on AP during this time, nor were they illustrated to AP during this time.  Probative value, if any, is outweighed by the prejudice.  To the extent plaintiff designated this testimony to admit Rayl's November 4, 1995 letter, the letter is inadmissible for the same reasons set forth in MetLife's Motion to Exclude from Evidence Plaintiff's Exhibit nos. 21, 39, 40, 41, 42, 46, 52, 55, 58, 112 and 113 (documents authored by and relating to Jim Rayl) and supporting brief, which is incorporated by reference as if set forth fully herein.  Irrelevant.  The letter was written after the sales of the policies at issue and has no relevancy to MetLife's or the sales representatives' conduct during or leading up to the |

4

| | |
|---|---|
| | transaction at issue. The probative value, if any, is outweighed by the prejudice. These documents are also inadmissible to the extent they concern alleged "bad acts" and contain inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule. |
| 112:6-11 | Irrelevant  This testimony marks and identifies a letter dated January 3, 1995, from Jim Rayl (Customer Services & Communications) to Bill Barnewold (Sr. Business Systems Consultant) regarding Field Announcement for AP Anniversary Statements. The testimony mainly relates to what actions MetLife took to determine if sales representatives were distributing certain brochures about AP. This has no relevancy to MetLife's or the sales representatives' conduct during or leading up to the transactions at issue. Probative value, if any, is outweighed by the prejudice. The January 3, 1995 letter is also inadmissible for the same reasons set forth in MetLife's Motion to Exclude from Evidence Plaintiff's Exhibit nos 21, 39, 40, 41, 42, 46, 52, 55, 58, 112 and 113 (documents authored by and relating to Jim Rayl) and supporting brief, which is incorporated by reference as if set forth fully herein. Irrelevant. This letter solely relates to customers whose policies were currently on AP in 1995. This has no relevance to any issue in this case as plaintiff's policies were not on AP during this time, nor were they illustrated to AP during this time. The probative value of this testimony, if any, is outweighed by the prejudice. These documents are also inadmissible to the extent they concern alleged "bad acts" and contain inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule. |
| 118:5-122:5 | Irrelevant. This testimony relates to a letter dated January 11, 1995, from D. West (Manager – Cash/Loan/Dividend/ Maturities) to B. Gardner (MetLife Customer Service Center - Tulsa), that attached a memorandum from Jim Rayl. The testimony about this letter is limited to a discussion of customers whose policies were currently on AP in 1995 and who were going to receive anniversary or billing statements indicating that the polices might no longer be AP eligible. This has no relevance to any issue in this case as plaintiff's policies were not on AP during this time, nor were they illustrated to AP during this time. The probative value of this testimony, if any, is outweighed by the prejudice. Taylor had no first hand knowledge of this letter and saw the letter for the first time on the day of her deposition. Irrelevant. The letter was written after the sale of the policies at issue and has no relevancy to MetLife's or the sales representatives' conduct during or leading up to the transactions at issue. The probative value, if any, is |

5

| | |
|---|---|
| | outweighed by the prejudice. This letter also inadmissible to the extent it concerns alleged "bad acts" and contains inadmissible hearsay and hearsay within hearsay that do not fall within any exception to the general hearsay rule. |
| 129:14-130:6 | Irrelevant. This testimony relates to the use of the phrase "vanishing premium." Plaintiff did not testify that the sales representatives ever used the phrase "vanishing premium" or the word "vanish" during the sale of his policies. The probative value, if any, is outweighed by the prejudice. |
| 130:7-131:10 | Irrelevant. This testimony relates to policies that were currently on AP in 1995. Plaintiff's policies were not on AP in 1995, nor were they illustrated to be eligible in 1995. Probative value, if any, is outweighed by the prejudice. In addition, if permitted, the designation is incomplete. The designation should also include 131:11-12. Plaintiff designated the portion of Taylor's testimony in which Taylor testified she could not testify to any study with respect to how many policies that were currently on AP would "collapse," but stated that Bill Barnewold probably would have knowledge. Plaintiff failed to designate this portion. This is misleading and will likely confuse the jury. |
| 139:6 | Misleading and likely to confuse the jury. Taylor testified that she did not know how to answer the question posed. Plaintiff failed to designate the line of the transcript where plaintiff's counsel clarifies that she did answer the question, 139:7. Irrelevant. No probative value. |
| 145:3-13 | Outside the scope of Taylor's corporate designation. This testimony relates to information provided to the Board of Directors regarding the 1992 dividend scale's effect on AP. As Taylor's counsel clarified at 146:7-10, Taylor was not on the Board of Directors or part of the actuarial department. |

In the event this Court overrules MetLife's objections and allows the above testimony of Wilhelmenia Taylor to be read into evidence, MetLife respectfully requests that it be permitted to read the following excerpts of Ms. Taylor's September 26, 2002 deposition into evidence as rebuttal:

- 4:8 to 5:20
- 6:17 to 7:6
- 9:7 to 10:24
- 11:24 to 12:8
- 19:3-5
- 19:8-12
- 20:4-11

6

- 21:15 to 22:3
- 23:16-22

                                                Respectfully Submitted,

                                                <u>s/ B. John Pendleton, Jr.</u>
                                                B. John Pendleton, Jr.
                                                McCARTER & ENGLISH, LLP
                                                Four Gateway Center
                                                100 Mulberry Street
                                                Newark, NJ 07102
                                                (973) 622-4444

                                                Attorneys for Defendants
                                                Metropolitan Life Insurance Company and
                                                Kenneth F. Kaczmarek

Dated:  October 3, 2006

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 3rd day of October, 2006, a true and correct copy of the foregoing **METROPOLITAN LIFE INSURANCE COMPANY'S AND KENNETH F. KACZMAREK'S OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATIONS FOR WILHELMENIA TAYLOR IN <u>IHNAT V. POVER</u>** was served upon the following via the electronic filing system:

Kenneth R. Behrend, Esquire
BEHREND & ERNSBERGER, P.C.
Union National Bank Building, 3rd Floor
306 Fourth Avenue
Pittsburgh, Pennsylvania 15222

s/ B. John Pendleton, Jr.