IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT G. WYCKOFF | ) | Civil Action No. 00-2248 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Chief Judge Donetta W. Ambrose |
| | ) | |
| METROPOLITAN LIFE INSURANCE COMPANY and KENNETH F. KACZMAREK, | ) ) | |
| | ) | |
| Defendants | ) | |

___

**PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S MOTION IN LIMINE TO EXCLUDE BEVERLY LOY TAYLOR'S TESTIMONY AND RELATED EVIDENCE**
___

**PRELIMINARY STATEMENT**

Plaintiff has identified Beverly Loy Taylor as a fact witness in the instant case. Ms. Taylor will testify to her involvement in the creation of two reports listed as Plaintiffs Exhibit 110 and 111.

This Court has previously considered the admissibility of Ms. Taylor's testimony and the Reports identified as Plaintiff's Exhibits 110 and 11 and determined that her testimony was both relevant and admissible in cases where alleging sale practices similar to those sales practices alleged by Plaintiffs in the instant case. Indeed, Ms. Taylor has testified as to her involvement in the creation of her reports and her understanding of MetLife's failures to adequately address the use of deceptive business practices by its agents in **Tran v. MetLife**, Civil Action No. 01-444.[1]

**ARGUMENT**

___

[1] Additionally, this Court determined that both Ms. Taylor's testimony and the documents at issue were relevant and admissible in **Solarchick v. Metropolitan Life**, Civil Action No. 01-444.

I.   **MS. TAYLOR'S TESTIMONY IS RELEVANT TO THE INSTANT CASE**

Plaintiff intends to introduce the Testimony and Reports of Ms. Taylor as evidence of a failure by Defendant MetLife to properly train its agents to ethically serve its customers.

"Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 402." Garvey v. Dickinson College, 763 F. Supp. 799, 801 (M.D.Pa. 1991).

Ms. Taylor's testimony and her reports provide evidence of MetLife's corporate knowledge as to the extent of the use of unethical business practices, as such, the evidence is relevant under F.R.E. Rules 404(b) and 406 to the issues in this case, particularly Plaintiffs' claim for liability, since MetLife's motive, intent, opportunity, preparation, plan knowledge, or absence of mistake are all at issue.

Federal Rule of Evidence Rules 404(b) and 406 have been interpreted to permit the admission of business practices evidence. The United States District Court for the Western District of Pa in Com. of Pa. v. Porter, 480 F.Supp. 686, (W.D. Pa. 1979) found:

> This suit was filed October 5, 1977. The defendant Baranyai has throughout the trial objected to evidence of any events back of the one or two year period preceding the bringing of suit claiming that such evidence should not be permitted under the statute of limitations. **It should be sufficient answer that such evidence is admissible under Rule 404(b) to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization.**

Com. of Pa. v. Porter, 480 F.Supp. 686 at 688 (W.D. of Pa. 1979). This reasoning was upheld by the United States Court of Appeals for the Third Circuit, finding:

> . . . **Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge**

> **or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization." This ruling was correct.**

Com. of Pa. v, Porter, 659 F.2d 306 at 320 (3rd Cir.1981) (Citations omitted)(emphasis added); see also, Rosenburg v. Lincoln Am. Life Ins. Co., 883 F.2d 1328, 1336 (7th Cir. 1989) (evidence admissible to establish a routine practice that defendant's agents regularly gave or were trained to "give oral assurances that insurance coverage was effective immediately despite written conditions to the contrary"); United States v. Quezada, 754 F.2d 1190, 1195 (5th Cir. 1985)(proper for INS agent to describe "the normal procedure followed in executing a warrant of deportation" by his agency to establish conformity with those procedures in instant case); Holley v. Seminole Cty. Sch. Dist., 755 F.2d 1492, 1505 (11th Cir. 1985) (evidence that school board had not punished others who engaged in similar conduct should have been admitted); Wells Fargo Business Credit v. Ben Kozloff, Inc., 695 F.2d 940, 944 (5th Cir. 1983) (placing letters in mail "may be proved by circumstantial evidence, including customary mailing practices used in the sender's business"), cert. denied, 464 U.S. 818; Williams v. Anderson, 562 F.2d 1081, 1086 & n. 7 (8th Cir. 1977)(evidence of prior racially discriminatory practices admissible to support inference that discrimination continued); Amoco Prod. Co. v. United States, 619 F.2d 1383, 1389-1390 (10th Cir. 1980) (proper under FRE 406 to receive evidence of the routine practice of the Federal Farm Mortgage Company "to reserve a one-half mineral interest in all property transferred during the relevant period" to prove that such a provision was contained in the deed in question); see also John H. Strong, McCormick on Evidence § 195 (4th ed. 1992); 1A John A. Wigmore, Evidence § 95 (Tillers rev. 1983).

Reliance on FRE 406 is necessary only where a litigant seeks to prove conduct on a specific occasion by evidence of routine practice. Where a litigant seeks to prove a pattern or practice that has independent relevance, such evidence is admissible under FRE 401. See Pennsylvania v. Porter,

659 F.2d 306, 320 (3d Cir. 1981) (in litigation seeking equitable relief, evidence of pattern of constitutional violations by police is admissible; court erroneously cites FRE 406), cert. denied, 458 U.S. 1121. United States v. Santa, 180 F.3d 20, 29 (2d Cir. 1999) (practice of police department supported court finding that it returned to village court a request to vacate warrant).

Although there are no "precise standards" for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: "adequacy of sampling and uniformity of response." Fed.R.Evid. 406, advisory committee's notes; McWhorter v. Birmingham, 906 F.2d 674, 679 (11th Cir. 1990). Therefore, the evidence should be admitted in this case as it was admitted previously in the Tran and Kintner cases.

## II.   APPLICATION OF RULE 404(B)(2) PERMITS THE ADMISSION OF PLAINTIFF'S RELEVANT EVIDENCE.

F.R.E. Rule 404(b)(2) also permits the introduction of evidence of prior acts on the part of a party where those acts may demonstrate "**proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,** . . .". [Emphasis added].

Particularly instructive is the case of Rosenburg v. Lincoln American Life Ins. Co., 883 F.2d 1328 (7th Cir. 1989), where the defendant life insurance company sales agents were routinely as a business practice misrepresenting that Lincoln was providing guaranteed coverage. Evidence of other examples of the same sales practices was permitted. "A Lincoln Administrative Assistant, testified that the company was aware that agents had represented that Lincoln was providing guaranteed coverage to dependents in other cities and had compiled a list of cities where such "misrepresentations" had occurred." Id. at 1331. Lincoln objected to this testimony of statements made to others outside of the individual sale and Mr. Rosenburg's presence regarding Lincoln's program in Granite City and other cities in Indiana claiming that these statements were irrelevant,

prejudicial and inadmissible under Fed.R.Evid. 404(b) as evidence of other wrongs or bad acts.

The District Court and the Seventh Circuit both rejected the insurer's arguments and concluded the evidence was relevant and admissible under F.R.E. 406. The Seventh Circuit in permitting the evidence of other sales and bad acts held:

> **There was sufficient evidence of such a routine practice by Lincoln agents such that the testimony in question was properly admissible under Fed.R.Evid. 406 to establish that Lincoln acted in conformity with its routine business practice in this instance.**[fn5] See G.M. Brod & Co. v. U.S. Home Corp., 759 F.2d 1526, 1533 (11th Cir. 1985).

Rosenburg, at 1336.

In another case where another life insurance company was sued for fraudulent business practices and pattern and practice evidence was permitted under F.R.E. Rule 406, in Brennan v. The Paul Revere Life Insurance Company, Case No. 00 C 0725 (N.D. Ill. 2002), in denying the insurer's motion in limine to preclude evidence of other similar acts and business practices the District Court held, "Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line." See Exhibit 1 a copy of the Brennan opinion. In Brennan, the Plaintiff offered evidence that the insurance company had a business practice to target high amount claims and Defendants sought through fourteen motions in limine to restrict Plaintiff's evidence.

Similarly, to the instant motion filed by MetLife seeking to limit any evidence outside of the first hand knowledge of the individual sale, the insurer in Brennan filed the same motion. "Their third motion in limine seeks to exclude the testimony of Dr. William Fiest, a former Provident medical director, concerning that company's policies. Defendants argue that Brennan's claims concern defendants' handling of his particular insurance claim, and not how they may have handled

other claims made by other people at other times." Id. The District Court rejected this motion, holding:

> **Some of the evidence offered by Brennan tends to show the existence of a regularly-followed policy or practice that is sufficiently routine and "automatic" to permit its admission under Rule 406 as construed in Simplex and Rosenburg.** Specifically, plaintiff has direct evidence consisting of the testimony of Dr. William Fiest, a former Vice President and Medical Director of Paul Revere, that that company had a policy of targeting for termination certain types of high-level disability insurance claims (including those of the type made by Brennan) and then marshaling evidence to support the termination, rather than dealing with the claims fairly. Though, as defendants point out, Fiest left Paul Revere before the time period when Brennan's benefits were terminated, **plaintiff has sufficient evidence of the continuation of this policy or practice into the relevant time period, including the period after Paul Revere was acquired by Provident, to provide an adequate foundation for a reasonable inference that it did in fact continue. Plaintiff likewise as sufficient circumstantial evidence to permit a reasonable inference that the policy was followed in his particular case. Though defendants dispute this evidence and the inferences to be drawn from it, those are matters for the jury; Brennan has laid an adequate foundation for admission of this evidence.** Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line.

Id. (emphasis added). Likewise, in the instant case, plaintiffs seek to introduce relevant evidence to establish liability of the injury caused by MetLife's business practices.

Just because the evidence of the custom, habit and business practice demonstrates that negligent and/or fraudulent conduct took place as a regular business practice does not mean that it is prejudicial to the Defendants, nor does this prevent the admission of the evidence to prove the elements of negligence and fraud as well as aids in establishing the credibility of the parties. **See Rohm and Haas Co. v. Continental Cas. Co.**, 781 A.2d 1172 at 1179 fn6 (Pa. 2001) (circumstantial evidence of a pattern of conduct was permissible to establish proof of intent. "While a single isolated incident of some event followed by a second event may render tenuous an inference that the first event caused the second, a series of such incidents accompanied by other circumstantial

evidence may result in a much more compelling conclusion."); **General Equipment Manufacturers v. Westfield Insurance Co.**, 635 A.2d 173, 185 (Pa. Super. 1993)("evidence of similar acts or transactions is admissible when relevant to prove an issue in the case. Accordingly, evidence of a course of conduct or dealing followed by a person may be admitted to prove that he acted in accordance with it on a given occasion, provided such a course of conduct or dealing is shown to have been continuous and systematic.").

Similarly with MetLife, plaintiffs must prove that MetLife knew about not only the activity of its employee sales agents for some time, but also the regular business practices used by its employee sales agents and should have been more responsive to the situation. Plaintiffs also have to prove that MetLife knew or should have known of the necessity and opportunity for exercising such control. To meet this required showing, plaintiffs must establish that the Defendants had some form of notice. Thus, it is important for plaintiffs to demonstrate that other incidents of the use of the same sales practices has occurred involving other sales agents who may have been similarly situated within MetLife and MetLife took no effective action to stop such conduct, or indeed, approved of the conduct.

The business practices and knowledge of MetLife itself are at issue, since MetLife is also a defendant, along with the manner in which it supervised its employees. The inability to present any evidence of the business practices and knowledge of MetLife itself would prejudice and harm Plaintiff's proof of their claims as to liability against MetLife regarding its business practices and how they directly relate to the sale of the polices to Mr. Wyckoff.

This principal of permitting evidence of the business practices in fraud cases is based upon the concept that evidence of similar business practices evidence is admissible to prove a course of conduct, if the evidence falls into one of five exceptions to the general rule that this evidence is

inadmissible because it generally is prejudicial. The five exceptions are: "(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial — in other words, where there is such a logical connection between the [frauds] that proof of one will naturally tend to show that the accused is the person who committed the other." See Commonwealth v. Peterson, 307 A.2d 264 (Pa.1973); see also Commonwealth v. Marsh, 566 A.2d 296 (Pa. Super. 1989); citing Commonwealth v. Clayton, 532 A.2d 385, 392 n.8 (Pa. 1987).

All five of these exceptions exist in the evidence that plaintiffs seeks to offer at trial. The Pennsylvania Supreme Court in Commonwealth v. Peterson, further held that where evidence relates **to any one of these five issues** it is admissible: **"When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value."** Id. at 307 A.2d 264 at 269-270 (Emphasis added).

Moreover, there is a procedure for resolving any possibility of confusion or misunderstanding of the jury as to purpose of the admission of the evidence. Any possible misunderstanding can be clarified through instructions by the trial court. If evidence is admissible for one purpose, but not for another, the trial judge should instruct the jury on the restricted purpose for which the evidence has been admitted. F.R.E. 105 requires the judge to give such and instruction if a party requests it. A party should request that instructions be given to insure that the jury make the proper use of the evidence and that it is not used for an improper purpose. This exact issue was also discussed and explained in Commonwealth v. Peterson, and the Pennsylvania Supreme Court held that any possible confusion of the purpose for the admission of the prior bad acts or any possible prejudice that might be caused thereby could be explained and clarified through cautionary charges by the trial court:

> The trial judge informed the jury at the outset that they were in effect trying two separate cases at one time and for this reason would have to pay especially close attention to the evidence so as to be able to properly segment it. **At the close of trial an extensive cautionary instruction was given which again directed the jury to confine the relevant evidence to each offense. This instruction was precise and unassailable.**

Commonwealth v. Peterson, 307 A.2d 264 at 271.

Moreover, in a fraudulent misrepresentation, the standards of evidence are relaxed for plaintiffs to prove their claims. As Henry on Pennsylvania Evidence stated:

> **The rule which excludes evidence of other acts to prove a particular act is greatly relaxed in cases of fraud.** Thus allegations of misrepresentations as to financial condition and of conveyance of property to defraud creditors may be supported by showing similar misrepresentations to others and transfers of other property as a series of acts constituting a general scheme to defraud. And **where a conspiracy to cheat and defraud in a particular instance is charged, evidence of a scheme to cheat and defraud the public generally may be given.** If notes are alleged to have been fraudulently raised in amount, evidence of raising or of other notes by the same person is admissible where it tends to show a general scheme to obtain money on raised notes.

See Pennsylvania Evidence by Henry, Volume 1, Chapter 1 §36 Similar Facts, Conditions or Conduct - Fraud, p.73 (Emphasis Added); See also Wigmore on Evidence, Third Edition, Vol. II, § 367; Lisenba v. The People of the State of California, 314 U.S. 219, 62 S. Ct. 280, 86 L. Ed. 179 (1941); Snayberger v. Fahl, 195 Pa. 336, 342 (1900)("Where fraud is alleged, great latitude of proof is allowed and every fact or circumstance from which a legal inference of fraud may be drawn is admissible."); Gee v. CBS, Inc., 471 F. Supp. 600, 617-634 (E.D. Pa., 1979).

Evidence of prior acts to establish and prove a system or method of fraud is admissible also to demonstrate that a party's conduct was consistent with a general course of conduct on their part, a general design, or purpose:

> **Where a series of acts indicates a general design, purpose or course of conduct on the part of the person who committed them, they become competent evidence on the question of whether or not a similar particular act was done by the same**

**person.** Even though an act is so remote in point of time from that charged that the statute of limitations would bar a prosecution for it, it would still be admissible if one of a series of acts tending to show guilt of the party charged. ...

<u>Pennsylvania Evidence by Henry</u>, Chapter 1, §36 Similar Facts, Conditions or Conduct - Course of Conduct, p.67. (emphasis added).

### II.     THE PROBATIVE VALUE OF MS. TAYLOR'S TESTIMONY OUTWEIGHS ANY RISK OF UNFAIR PREJUDICE.

MetLife next seeks to exclude Ms Taylor's testimony and reports as prejudicial under Federal Rule of Evidence 403.  The Advisory notes to the Federal Rules of Evidence define prejudice as ". . . an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  <u>See</u> Advisory Committee Note to Rule 403; <u>See also</u> <u>U.S. v. Rutland</u>, 372 F.3d 543 (3rd Cir. 2004);   <u>See</u> also <u>Commonwealth v. Palmer</u>, 700 A.2d 988, 992-993 (Pa. Super. 1997)(Emphasis added)( "As **this court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendants is charged.**")

Despite, Defendants' contention, there is little to suggest that the introduction of relevant evidence of ethical failures on the part of Defendant MetLife will cause the fact finder to ignore the facts surrounding the present case and make a decision based upon his prior actions.  Instead, the proffered evidence will only support Plaintiff's contention that MetLife was aware of ethical problems with its sales force during the time period which the policies at issue were sold.

The Third Circuit has addressed the value of allegedly prejudicial evidence of a comprehensive scheme and determined that its probative value generally outweighs the risk of prejudice where a jury, such as the one in the present case, can "compartmentalize" the information.

In <u>U.S. v. Driggs</u>, 823 F.2d 52 (3rd Cir. 1987) the Third Circuit Court of Appeals stated:

> We find nothing unfairly prejudicial about showing that the charged conduct was part of a comprehensive scheme. If the government is not permitted to show that Traitz gave cash gifts to other judges, it becomes much more difficult for it to prove that he was paying Driggs because of his status as a judge — an essential element of a Hobbs Act violation.
>
> As for the risk of confusing the jurors, we believe that this is the type of case where a jury could be expected to compartmentalize the evidence and consider it for its proper purposes. See United States v. Dansker, 537 F.2d 40,62 (3rd Cir.), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d
> 748 (1976).

<u>**Id.**</u>

Moreover, such arguments go more to more to the weight accorded by the jury to this evidence rather than whether the jury should be precluded from considering it. Any potential prejudice can be cured by redacting irrelevant or unduly prejudice portions of the report and curative instructions can limit the effect and jury's use of this evidence

### III. MS TAYLOR'S TESTIMONY IS NOT BARRED AS EVIDENCE OF A SUBSEQUENT REMEDIAL MEASURE

Defendants contention that Ms. Taylor's testimony should be precluded as evidence of a subsequent remedial measure is without merit. Federal Rule of Evidence 407 serves only to exclude evidence of measures taken after a harm or injury occurs which, if taken prior to the injury, would have made the harm or injury less likely to occur. <u>See</u> Federal Rule of Evidence 407. Ms. Taylor's testimony as to the findings in her reports simply does not fit this definition. To the contrary, Ms. Taylor's reports detail ethical issues with MetLife, the existence of these ethical issues have bearing on Plaintiffs' allegations that corporate-wide deceptive practices were used by MetLife in the sale of policies to consumers like Mr. Wyckoff, and that the use of these practices directly resulted in the sale of the policies to the Mr. Wyckoff. In other words, her testimony goes not to any "subsequent

measures" taken by MetLife to correct the use of deceptive sales techniques, but rather to the corporations knowledge that the deceptive techniques were being used.

Likewise, the reports prepared by Ms. Taylor simply do not constitute subsequent remedial measures on the part of MetLife. To the contrary, it is well settled that reports of investigations, even those taken after the specific incident which led to Plaintiff's claim are not precluded under Rule 407. **See Prentiss & Carlisle v. Koehring-Waterous**, 972 F.2d 6, 10 (1st Cir. 1992) (FRE 407 does not bar evidence of a party's post-accident analysis of its products, even though "the analysis may often result in remedial measures being taken"); **Benitez-Allende v. Alcan Aluminio do Brazil, Inc. S.A.**, 857 F.2d 26, 33 (1st Cir. 1988) (FRE 407 does not bar internal investigatory reports, even if they lead to later remedial measures), cert. denied, 489 U.S. 1018. Indeed, as the Tenth Circuit properly held:

> It would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports. It might be possible in rare situations to characterize such reports as "measures" which, if conducted previously, would reduce the likelihood of the occurrence. Yet it is usually sounder to recognize that such tests are conducted for the purpose of investigating the occurrence to discover what might have gone wrong or right. Remedial measures are those actions taken to remedy any flaws or failures indicated by the test. . . .
>
> We believe that the policy considerations that underlie Rule 407, such as encouraging remedial measures, are not as vigorously implicated where investigative tests and reports are concerned. To the extent that such policy concerns are implicated, they are outweighed by what the Westmoreland court referred to as the danger of depriving "injured claimants of one of the best and most accurate sources of evidence and information." 601 F. Supp. at 68.

**Rocky, Helicopters v. Bell Helicopters**, 805 F.2d 907, 918 (10th Cir. 1986)

As Ms. Taylor's report does not fall within the limited scope of what should be considered a subsequent remedial measure under Federal Rule of Evidence 407, it should not be precluded under Rule 407.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion in Limine to Exclude Beverly Loy Taylor's Testimony and Related Evidence be denied.

Respectfully submitted,

_____
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Emsberger, P.C.
306 Fourth Ave.  - Suite 300
Pittsburgh, PA 15222
(412) 391-2515   (phone)

## CERTIFICATE OF SERVICE

     I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the foregoing Brief in Support of Plaintiffs' Response to Defendants' Motion in Limine to Exclude Evidence Regarding the Connecticut Market Conduct Examinations of Metropolitan Life Insurance Company was served upon the below listed counsel and parties by U.S. First Class mail, postage pre-paid on the 5th of May, 2006.

B. John Pendleton, Jr., Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973)622-4444

 

                                            Kenneth R. Behrend
                                            PA I.D. # 37961
                                            Behrend and Emsberger, P.C.
                                            Union Bank Building  - Suite 300
                                            306 Fourth Ave.
                                            Pittsburgh, PA 15222
                                            (412) 391-2515   (phone)
                                            (412) 391-2762    (Fax)