IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT G. WYCKOFF ) | Civil Action No. 00-2248 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Chief Judge Donetta W. Ambrose |
| ) | |
| METROPOLITAN LIFE INSURANCE ) | |
| COMPANY and KENNETH F. KACZMAREK, ) | |
| ) | |
| Defendants ) | |

---

**BRIEF IN RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE CONNECTICUT MARKET CONDUCT EXAMINATION OF METROPOLITAN LIFE INSURANCE COMPANY**

---

**PRELIMINARY STATEMENT**

Defendant MetLife objects to the introduction of the State of Connecticut Insurance Department Report of Investigation in the Matter of Metropolitan Life Insurance dated October 14, 1998 (hereinafter "Connecticut Report") and documents related thereto on the basis that the Connecticut Report and the related documents are irrelevant to the current case, hearsay and prejudicial to the Defendants. This Court has previously considered the exact legal arguments presented in Defendants' Motion in Solarchick v. MetLife, Civil Division No. 01-444. In Solarchick, this Court held that those portions of the Market Conduct Examinations which discussed the sales practices used on the Solarchicks in that case, were relevant and admissible. Plaintiff contends that as the same law is applicable in the instant case, Defendants' Motion should be denied for those reasons considered by this Court in Solarchick. See May 10, 2006, Order attached hereto as Exhibit 1. Indeed, Defendants' Brief in Support of this Motion in Limine raises identical

arguments to that filed in Solarchick

In the instant case, Plaintiff has alleged misrepresentations as to the period of time Plaintiffs would be required to make premium payments on the policies that he purchased. The findings of the Connecticut Report as to these issues are evidence of course of dealings by MetLife with its customers and are admissible as tending to prove deceptive and fraudulent business practices.

MetLife seeks to preclude introduction of the Connecticut Report on the grounds that the Connecticut Report constitutes a "one-sided investigation" which lacks the inherent trustworthiness of an official record and that the relevance of the document is immaterial given the "overwhelming prejudicial impact" introduction of the document would have on MetLife.

Plaintiff seeks to introduce the findings of fact and conclusions to show a course of conduct as evidence tending to demonstrate a state of mind and tacit knowledge and approval of certain practices by MetLife, as opposed to testimony regarding how the actual prohibited practices occurred. Each of the deceptive sales practices cases involved an employee of MetLife and utilized the very practices outlined in the Connecticut Report in the sales to Mr. Wyckoff. The agents therefore are bound by the decision of their employer, MetLife, to accept the administrative findings of the Insurance Department and its failure to appeal. The agents are in privity and stand in the shoes of MetLife. Thus, the employees of MetLife are bound by the findings made in the Connecticut Report. See Transamerica Occidental Life Ins. v. Aviation, 292 F.3d 384 at 393 (3rd Cir. 2002).

Finally, under the official records exception to the hearsay rule, Federal Rule of Evidence 803(8)(B) the Connecticut Report is admissible as a record of "matters observed pursuant to a duty imposed by law. . . ", and can be relied upon by an expert, as a source of information that would be regularly relied upon by an expert in the field. See Shapiro v. State Board of Accountancy, 856 A.2d

864 (Pa. Cmwlth. 2004) (Contents of administrative adjudication trustworthy where they were developed through a process during which "Petitioners were afforded an opportunity to be heard and to challenge." Refusal of opportunity does not imperil trustworthiness.); See also Thorne v. Department of Transportation, 727 A.2d 1205 (Pa. Cmwlth. 1999)

Accordingly, as the findings of the Connecticut Report possess the requisite trustworthiness required for admissibility they should be admissible as evidence tending to prove Defendants' habits, customs and business practices in the sale of life insurance policies pursuant to a misrepresentation as to the period for which premiums are due and for the purpose of establishing intent and approval of the use of these practices in the sale of policies to the Plaintiff.

## ARGUMENT

**I.  THE CONNECTICUT MARKET CONDUCT EXAMINATION IS ADMISSIBLE**

    **1.  Government records created in official function can be cited and relied upon by experts in the field.**

The Connecticut Report is admissible, under the official records exception, Federal Rule of Evidence 803(8)(c) and can be relied upon by an expert, as a source of information that would be regularly relied upon by an expert in the field. Indeed, the Federal Rules of Evidence recognize that records kept by government entities are generally excepted from the hearsay rule and therefore are admissible. The Third Circuit has stated that where "[t]he Report was based on a factual investigation conducted by a public agency, and was admitted under an exception to the hearsay rule for public records and reports. Fed.R.Evid. 803(8)(C). Rule 803(8)(C) permits evidence of "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.". See Goodman v.

Pennsylvania Turnpike Comm., 293 F.3d 655 (3rd Cir. 2002).

The Insurance Commission investigation, documents, and findings in question, as discussed in detail above, are relevant to Defendant's habit or business practice of deceptively selling life insurance policies. They were prepared pursuant to the Commission's official duty as the state regulatory body charged with enforcing the regulations of Connecticut, were created as the result of an investigation into the sales practices of Defendants and do not demonstrate any circumstances which would indicate that they lack trustworthiness the documents are admissible as to the facts found within and the fact that such an investigation took place.

In Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988), the United States Supreme Court has further held that:

> Statements in the form of opinions or conclusions are not by that fact excluded from the scope of Rule 803(8)(C). The Rule's language does not call for the distinction between "fact" and "opinion" drawn by Smith, supra, and other proponents of a narrow interpretation of the Rule's "factual findings" phrase, since "finding of fact" is commonly defined to include conclusions by way of reasonable inference from the evidence, and since in specifying the kinds of reports that are admissible the Rule does not create a distinction between "fact" and "opinion." Nor is any such distinction required by the intent of the Rule's framers, as expressed in the Advisory Committee's Notes on the Rule. This conclusion is strengthened by the analytical difficulty of drawing such a distinction. Rather than requiring that some inevitably arbitrary line be drawn between the various shades of fact/opinion that invariably will be present in investigatory reports, the Rule instructs courts — as its plain language states — to admit "reports . . . setting forth . . . factual findings." Appropriate limitations and safeguards lie in the fact that the Rule's requirement that reports contain factual findings bars the admission of statements not based on factual investigation, and in the Rule's trustworthiness requirement. Thus, as long as a conclusion satisfies the latter requirements, it should be admissible along with other portions of the Report

Id. at

Next MetLife contends that the Connecticut Report is inadmissible hearsay and unduly

prejudicial. This argument also is erroneous. The Advisory notes to the Federal Rules of Evidence define prejudice as ". . . an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." See Advisory Committee Note to Rule 403; See also U.S. v. Rutland, 372 F.3d 543 (3rd Cir. 2004); See also Commonwealth v. Palmer, 700 A.2d 988, 992-993 (Pa. Super. 1997)(Emphasis added)( "As **this court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendants is charged.**")

Despite, Defendants' contention, there is little to suggest that the introduction of relevant evidence which clearly tends to show that Defendants engaged in a regular practice of misrepresenting the terms of insurance policies substantially similar to those sold to the Plaintiff will cause the fact finder to ignore the facts surrounding the present case and make a decision based upon his prior actions. Instead, the proffered evidence will only support Plaintiff's contention that the policy was sold in the manner alleged pursuant to Defendants' regular habit or practice of manipulating insurance sales to benefit the agent and MetLife through the misrepresentation of the polices being sold.

The Third Circuit has addressed the value of allegedly prejudicial evidence of a comprehensive scheme and determined that its probative value generally outweighs the risk of prejudice where a jury, such as the one in the present case, can "compartmentalize" the information.

In U.S. v. Driggs, 823 F.2d 52 (3rd Cir. 1987) the Third Circuit Court of Appeals stated:

> We find nothing unfairly prejudicial about showing that the charged conduct was part of a comprehensive scheme. If the government is not permitted to show that Traitz gave cash gifts to other judges, it becomes much more difficult for it to prove

> that he was paying Driggs because of his status as a judge — an essential element of a Hobbs Act violation.
>
> As for the risk of confusing the jurors, we believe that this is the type of case where a jury could be expected to compartmentalize the evidence and consider it for its proper purposes. See United States v. Dansker, 537 F.2d 40, 62 (3rd Cir.), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1976).

Id.

Moreover, such arguments go more to more to the weight accorded by the jury to this evidence rather than whether the jury should be precluded from considering it. Any potential prejudice can be cured by redacting irrelevant or unduly prejudice portions of the report and curative instructions can limit the effect and jury's use of this evidence.

    **2.    Evidence of MetLife's business practices to show its tacit knowledge and approval is admissible.**

The Insurance Commissions' regulatory actions against MetLife are relevant and admissible to demonstrate that MetLife engaged in a systematic scheme to defraud existing and potential customers of MetLife, including Mr. Wyckoff. This evidence tends to prove intent and tacit knowledge and approval of the improper business practices. The Connecticut Report made findings as to MetLife's management's failure to control the deceptive sales and/or awareness of the use of the deceptive sales practices.

As evidence tending to show intent and approval of the sales practices by MetLife, Plaintiffs should not be precluded from introducing evidence of the Insurance Commissions' regulatory actions against MetLife where these actions demonstrate that MetLife engaged in a regular practice of misrepresenting the nature of insurance products sold.

    **3.    Other Acts Evidence is Admissible.**

Plaintiff intends to introduce the Connecticut Report as evidence of the knowledge of MetLife, the training by MetLife of its sales agents and the use of the business practice by MetLife of replacement and selling polices with "vanishing premiums"through the MetLife "Accelerated Payment Plan." The Plaintiffs were provided an "Accelerated Payment Plan" illustration to induce the sale pursuant to the "vanishing premium" deceptive business practice.

Instantly, Met Life engaged in a national scheme of fraud and deception through the use of misleading sales illustrations containing "vanishing premiums." As was set forth in the prior section, the evidence of similar business practices of the sale of policies through the use of "vanishing premiums" by MetLife is relevant and admissible for proof in this case. A federal appellate case, Com. of Pa. v, Porter, 659 F.2d 306 (3rd Cir.1981), held, as to the admission of evidence of a business practice under Rule 406 and Rule 404(b):

> . . . Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization." This ruling was correct.

Com. of Pa. v, Porter, 659 F.2d at 320, (Citations omitted).

The Third Circuit in Com. of Pa. v. Porter, Id. at 320, also found this ruling was correct based upon the decision of the United States Supreme Court in Hazelwood School District v. United States, 433 U.S. 299, 309-10 n.15, 97 S.Ct. 2736, 2742, n.15, 53 L.Ed.2d 768 (1977); Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 267, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977); and Williams v. Anderson, 562 F.2d 1081, 1086 n.7 (8th Cir. 1977).

Federal Rule of Evidence 404(b) also permits the introduction of evidence of prior acts on the part of a party where those acts may demonstrate "**proof of motive, opportunity, intent,**

**preparation, plan, knowledge, identity, or absence of mistake or accident,** . . .". Id. (Emphasis added).

As demonstrated below, Connecticut Report is relevant to the Plaintiffs' claims that MetLife was engaged in a corporate scheme to defraud its policyholders and potential policyholders through the use of deceptive sales practices and should be admitted by this Court.

**II.    THE CONNECTICUT REPORT ADDRESSES RELEVANT SALES PRACTICES**.

The Connecticut Report, which covers the period from 1980 through 1998, specifically addresses the sale of insurance policies through misrepresentations as to the amount of time a policyholder would be required to make out-of-pocket premium payments, i.e. "Vanishing Premium Sales." This type of sale is the basis for the instant case. Indeed, the Connecticut Report specifically notes that in addition to Whole Life Policies like those sold to the Plaintiff.

With regard to MetLife's use of vanishing premium sales tactics the Connecticut department of Insurance found:

> Misrepresentations of vanishing premium policies are difficult to prove. It is often a case of the policyholder' sword against the company's. Nevertheless, the cases are too numerous and too consistent to disregard the claims of policyholders. It is also difficult to disregard policy illustrations prepared by the company which show prominently in the first column of the first page that no cash outlay is needed after a few years. The policyholders must turn to the footnotes on page 3 of the illustration to find the reminder that dividends are not guaranteed. Coupled with this disclaimer in other sales literature, however, is the statement that "MetLife has a long and distinguished history of making dividend payments to policyholders, going all the way back to the early 1900's." This kind of puffing is, of course, a time worn sales practice .. but with a little embellishment by an agent .. it can easily mislead consumers.
>
> We find that there is sufficient evidence to charge MetLife with violating Conn. Gen. Stat. Section 38a-8 1 6(l)(a) and (b) regrading its sales of vanishing premium policies in Connecticut. We also find that the "call-out" program instituted as part of the Enhanced Ethics and Compliance Program should reduce consumer complaints in the

future.

See Defendants' Exhibit A, pp.40-41

The Connecticut Report then found that "[t]here is ample evidence that MetLife agents engaged in churning in Connecticut and that MetLife's management knew or should have known that it was occurring." See Defendants' Exhibit A, p. 40.

The specific findings of the Connecticut Department of Insurance and the Connecticut Attorney General regarding MetLife's use of churning and misrepresentations as to the period of time which a policyholder would be required to pay out-of-pocket premiums, as well as the finding as to MetLife's compliance in its agents' actions are relevant to the instant case and should be properly admitted by this Court.

## CONCLUSION

The findings in the Connecticut Report demonstrate violations related to the deceptive representation that a life insurance policy could be funded through a limited number of out-of-pocket premium payments. The Connecticut Report does not show any sign of bias or any indication that they lack the trustworthiness generally associated with a report prepared by a government agency in the course of fulfilling its legislatively mandated responsibilities. The Connecticut Report contains findings of fact based upon the findings of the investigators, facts again which were not appealed by MetLife. As such the Connecticut Report clearly falls into the public records exception to the hearsay rule. Additionally, the Connecticut Report provides evidence of a habit or practice by MetLife involving the use of deceptive marketing practices in the sale of its insurance policies, evidence of this type is both relevant and admissible under Pennsylvania Law. Finally, the disputed evidence is admissible for the purposes of proving that the Defendants conduct was so outrageous

as to permit the recovery of punitive damages on the part of the Plaintiff. The recovery of punitive damages requires that Plaintiff demonstrate the nature of defendant's egregious conduct so as ro permit the fact finder to punish the defendant's conduct and deter others from similar conduct.

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion In Limine Regarding the Exclusion of Evidence Regarding the Connecticut Market Conduct Examination of Metropolitan Life Insurance Company and Related Documents be denied.

                                          Respectfully submitted,

                                          /s/Kenneth R. Behrend
                                          Kenneth R. Behrend
                                          PA I.D. # 37961
                                          Behrend and Emsberger, P.C.
                                          306 Fourth Ave. - Suite 300
                                          Pittsburgh, PA 15222
                                          (412) 391-2515   (phone)

**CERTIFICATE OF SERVICE**

I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the foregoing Brief in Response to Defendants' Motion in Limine to Exclude Evidence Regarding the Connecticut Market Conduct Examinations of Metropolitan Life Insurance Company was served upon the below listed counsel and parties via electronic filing on the 13th day of October, 2006.

B. John Pendleton, Jr., Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973)622-4444

          /s/Kenneth R. Behrend
          Kenneth R. Behrend
          PA I.D. # 37961
          Behrend and Ernsberger, P.C.
          Union Bank Building  - Suite 300
          306 Fourth Ave.
          Pittsburgh, PA 15222
          (412) 391-2515   (phone)
          (412) 391-2762   (Fax)