# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT G. WYCKOFF | ) | Civil Action No. 00-2248 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Chief Judge Donetta W. Ambrose |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY and KENNETH F. KACZMAREK, | ) | |
| | ) | |
| Defendants | ) | |

---

## PLAINTIFF'S BRIEF IN RESPONSE TO METROPOLITAN LIFE INSURANCE COMPANY'S MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE PLAINTIFFS' EXHIBIT NOS. 23, 24 AND 25, APPROVAL PROCESS OF ACCELERATED PREMIUM PLAN-RELATED DOCUMENTS

---

### PRELIMINARY STATEMENT

In this Motion in Limine, Defendants argue that evidence of letters and memorandum written that disclose MetLife's thought process in the design, creation and implementation of the use of the Accelerated Payment Plan are irrelevant and prejudicial because too much time has elapsed between the creation of APP in the early 1980's and the APP sales to Mr. Wyckoff in 1991 and 1994 and the sales materials developed over time.  MetLife ignores the fact that the problems discussed in the creation of APP are the same problems that manifested themselves in the sales to the policyholders including the plaintiffs.  In other words, the exact problems identified by MetLife personnel in the creation process for APP, MetLife failed to cure and were manifested in APP sales throughout the 1980's and 1990's including the sales to plaintiff.  This Court has previously denied an identical motion in the case of <u>Solarchick v. MetLife</u>, Civ. Action No. 01-444.  <u>See</u> May 11, 2006 Order.

Exhibit 23 contains a letter dated January 29,1980 from an employee in MetLife's Personal

Insurance Consulting Services to an actuarial employee in MetLife's Personal Insurance Contract Bureau. The letter identifies a problem with the proposed illustration format in that it creates the impression that no more premium is due. The proposed illustration format is attached to the letter and contains a page that sets forth the columns of numbers demonstrating the payments and future projected values. The proposed format in 1980 for the demonstration of the payments and projections of future values is virtually identical to the illustrations used in the sales to plaintiff. The one difference in the "cash outlay" column is that instead of using the word "NONE," the number "0" is used. This difference is not material in that it leaves the identical impression that no payments are required by the policyholder after defined number of years.

In the letter a change to the illustration format is strongly suggested to add one more column that demonstrates that premiums are paid every year of the policy term, so MetLife "would still be conveying the idea that there is a premium amount to be paid which will be withdrawn from the cash value of additional insurance of from the dividends with interest as the case may be. This may necessitate an additional page of the illustration, however, **as the illustration stands now, there is no indication that a premium is still due each year.**" See Bates No. MP4011149717, pgh.3.

This strongly suggested recommendation was never adopted and as result thereof policyholders were mislead into believing that there were no more out-of-pocket premium payments required to be made by the policyholder after the defined number of years. This problem identified in 1980[9] is the exact problem that occurred to the plaintiffs in the use of the 1990 and 1995 illustrations, that is the policies were paid-up in a defined number of years that no additional out-of-pocket premium payments were required. This document is relevant to demonstrate MetLife's awareness of the potential for the "vanishing" premium illustrations to mislead customers existed

in 1980 before the illustrations were used to market policies.

Exhibit 24 the June 9, 1980 memorandum demonstrates that the "Short Term Payment Plan" name was changed to the "Accelerated Payment Plan." See Bates No. MP4011149691. This document clarifies for the jury that Exhibit 16 relates to the APP illustration used in the sale to plaintiffs and to the other evidence related to APP to be provided to the jury during the trial.

The plaintiffs allege that MetLife had a business practice of selling whole life policies based upon misrepresentations as to the number of years that the policyholder would be required to make out-of-pocket premium payments on their life insurance policies. See Complaint. The evidence will demonstrate that MetLife, through its sales agents, used this deceptive business practice routinely, widely and repeatedly, and further MetLife condoned this business conduct either directly through awards and bonuses, or tacitly by not taking appropriate measures to stop such practices once senior management had knowledge they were occurring.

Moreover, this very same business conduct occurred in the sale of the policy at issue in this case and plaintiffs were harmed thereby. This evidence will tend to prove the allegations of plaintiffs are true and supports the credibility of the plaintiffs and the lack of credibility of the defendants.

Plaintiff's Exhibit 25 demonstrates that, as early as 1980, MetLife recognized that the failure to advise potential policyholders that the APP program was not automatic might lead to confusion on the part of the policyholders. The illustrations presented to Mr. Wyckoff lacked any disclosure that he would be required to request acceptance into the APP program or that his enrollment into the program was not automatic at the end of the fourteenth year for the 1991 Policy or the tenth year for the 1994 Policy. MetLife's knowledge that the failure to include such a disclosure was misleading is relevant.

Furthermore, plaintiffs seek to introduce this evidence for the purpose of establishing the context of MetLife's knowledge, intent and corporate culture which permitted this business practice of selling life insurance policies by misrepresenting the actual cost of the policies. The pattern and practice evidence demonstrates that MetLife is liable for the sale to the plaintiffs through misrepresentations as to the performance and cost of the three universal life policies and the whole Life life insurance policy.

The documents sought to be introduced by the plaintiffs are relevant to the plaintiffs' claims and should be admitted by this Court as similar documents were admitted in the <u>Tran</u> case.

## ARGUMENT

## I.     THE PROPOSED EVIDENCE IS RELEVANT TO THIS CASE.

MetLife's argument is premised on a contorted concept of the relevance of evidence in a fraud case. This objection is without merit, since the evidence is relevant to the Plaintiff's claims that MetLife had a business pattern and practice to sell policies with "vanishing premiums" that was also used on the plaintiffs. This Court previously rejected these exact same legal arguments in <u>Tran v MetLife</u> and <u>Solarchick v. MetLife</u>.

"Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 402." <u>Garvey v. Dickinson College</u>, 763 F. Supp. 799, 801 (M.D.Pa. 1991).

The evidence demonstrates MetLife's knowledge of problems with the APP illustrations have a tendency to mislead policyholders yet chose to use the APP illustrations anyway and plaintiffs were among the policyholders who were not told that the premiums would not "vanish" as represented to

induce the sale.

The documents also tend to prove plaintiffs claims for punitive damages by demonstrating MetLife's knowledge of a fundamental problem with the APP illustrations that could mislead policyholders into believing that the premiums would "vanish" despite the fact that premiums never "vanish."

### I.     THE PROPOSED EVIDENCE IS RELEVANT TO THIS CASE.

### A.     Relevancy of Evidence under Rule 401 and  406.

MetLife has  objected to the admissibility of the evidence on the basis that the executive who wrote the letters lacks any knowledge of the actual transaction which took place in this case.  This objection is without merit, since the evidence is relevant to the Plaintiff's claims that MetLife had a business pattern and practice to sell policies with "vanishing premiums" that was also used on the plaintiffs.

Federal Rule of Evidence Rules 404(b) and 406 have been interpreted to permit the admission of business practices evidence.  The United States District Court for the Western District of Pa in <u>Com. of  Pa. v. Porter</u>, 480 F.Supp. 686, (W.D. Pa. 1979) found:

> This suit was filed October 5, 1977.  The defendant Baranyai has throughout the trial objected to evidence of any events back of the one or two year period preceding the bringing of suit claiming that such evidence should not be permitted under the statute of limitations.  **It should be sufficient answer that such evidence is admissible under Rule 404(b) to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design.  It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization.**

<u>Com. of Pa. v. Porter</u>, 480 F.Supp. 686 at 688 (W.D. of Pa. 1979).  This reasoning was upheld by the United States Court of Appeals for the Third Circuit, finding:

> . . . **Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization." This ruling was correct.**

Com. of Pa. v. Porter, 659 F.2d 306 at 320 (3rd Cir.1981) (Citations omitted)(emphasis added); see also, Rosenburg v. Lincoln Am. Life Ins. Co., 883 F.2d 1328, 1336 (7th Cir. 1989) (evidence admissible to establish a routine practice that defendant's agents regularly gave or were trained to "give oral assurances that insurance coverage was effective immediately despite written conditions to the contrary"); United States v. Quezada, 754 F.2d 1190, 1195 (5th Cir. 1985)(proper for INS agent to describe "the normal procedure followed in executing a warrant of deportation" by his agency to establish conformity with those procedures in instant case); Holley v. Seminole Cty. Sch. Dist., 755 F.2d 1492, 1505 (11th Cir. 1985) (evidence that school board had not punished others who engaged in similar conduct should have been admitted); Wells Fargo Business Credit v. Ben Kozloff, Inc., 695 F.2d 940, 944 (5th Cir. 1983) (placing letters in mail "may be proved by circumstantial evidence, including customary mailing practices used in the sender's business"), cert. denied, 464 U.S. 818; Williams v. Anderson, 562 F.2d 1081, 1086 & n. 7 (8th Cir. 1977)(evidence of prior racially discriminatory practices admissible to support inference that discrimination continued); Amoco Prod. Co. v. United States, 619 F.2d 1383, 1389-1390 (10th Cir. 1980) (proper under FRE 406 to receive evidence of the routine practice of the Federal Farm Mortgage Company "to reserve a one-half mineral interest in all property transferred during the relevant period" to prove that such a provision was contained in the deed in question); see also John H. Strong, McCormick on Evidence § 195 (4th ed. 1992); 1A John A. Wigmore, Evidence § 95 (Tillers rev. 1983).

Reliance on FRE 406 is necessary only where a litigant seeks to prove conduct on a specific

occasion by evidence of routine practice. Where a litigant seeks to prove a pattern or practice that has independent relevance, such evidence is admissible under FRE 401. See Pennsylvania v. Porter, 659 F.2d 306, 320 (3d Cir. 1981) (in litigation seeking equitable relief, evidence of pattern of constitutional violations by police is admissible; court erroneously cites FRE 406), cert. denied, 458 U.S. 1121. United States v. Santa, 180 F.3d 20, 29 (2d Cir. 1999) (practice of police department supported court finding that it returned to village court a request to vacate warrant).

Although there are no "precise standards" for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: "adequacy of sampling and uniformity of response." Fed.R.Evid. 406, advisory committee's notes; McWhorter v. Birmingham, 906 F.2d 674, 679 (11th Cir. 1990). Therefore, the evidence should be admitted in this case as it was admitted previously in the Tran case.

## II.    APPLICATION OF RULE 404(B)(2) PERMITS THE ADMISSION OF PLAINTIFF'S RELEVANT EVIDENCE.

F.R.E. Rule 404(b)(2) also permits the introduction of evidence of prior acts on the part of a party where those acts may demonstrate "**proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, . . .**". [Emphasis added].

Particularly instructive is the case of Rosenburg v. Lincoln American Life Ins. Co., 883 F.2d 1328 (7th Cir. 1989), where the defendant life insurance company sales agents were routinely as a business practice misrepresenting that Lincoln was providing guaranteed coverage. Evidence of other examples of the same sales practices was permitted. "A Lincoln Administrative Assistant, testified that the company was aware that agents had represented that Lincoln was providing guaranteed coverage to dependents in other cities and had compiled a list of cities where such

"misrepresentations" had occurred." Id. at 1331. Lincoln objected to this testimony of statements made to others outside of the individual sale and Mr. Rosenburg's presence regarding Lincoln's program in Granite City and other cities in Indiana claiming that these statements were irrelevant, prejudicial and inadmissible under Fed.R.Evid. 404(b) as evidence of other wrongs or bad acts.

The District Court and the Seventh Circuit both rejected the insurer's arguments and concluded the evidence was relevant and admissible under F.R.E. 406. The Seventh Circuit in permitting the evidence of other sales and bad acts held:

> **There was sufficient evidence of such a routine practice by Lincoln agents such that the testimony in question was properly admissible under Fed.R.Evid. 406 to establish that Lincoln acted in conformity with its routine business practice in this instance.**[fn5] See G.M. Brod & Co. v. U.S. Home Corp., 759 F.2d 1526, 1533 (11th Cir. 1985).

Rosenburg, at 1336.

In another case where another life insurance company was sued for fraudulent business practices and pattern and practice evidence was permitted under F.R.E. Rule 406, in Brennan v. The Paul Revere Life Insurance Company, Case No. 00 C 0725 (N.D. Ill. 2002), in denying the insurer's motion in limine to preclude evidence of other similar acts and business practices the District Court held, "Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line." See Exhibit 1 a copy of the Brennan opinion. In Brennan, the Plaintiff offered evidence that the insurance company had a business practice to target high amount claims and Defendants sought through fourteen motions in limine to restrict Plaintiff's evidence.

Similarly, to the instant motion filed by MetLife seeking to limit any evidence outside of the

first hand knowledge of the individual sale, the insurer in <u>Brennan</u> filed the same motion. "Their

third motion in limine seeks to exclude the testimony of Dr. William Fiest, a former Provident

medical director, concerning that company's policies. Defendants argue that Brennan's claims

concern defendants' handling of his particular insurance claim, and not how they may have handled

other claims made by other people at other times." <u>Id.</u> The District Court rejected this motion,

holding:

> **Some of the evidence offered by Brennan tends to show the existence of a
> regularly-followed policy or practice that is sufficiently routine and
> "automatic" to permit its admission under Rule 406 as construed in <u>Simplex</u>
> and <u>Rosenburg.</u>** Specifically, plaintiff has direct evidence consisting of the
> testimony of Dr. William Fiest, a former Vice President and Medical Director of Paul
> Revere, that that company had a policy of targeting for termination certain types of
> high-level disability insurance claims (including those of the type made by Brennan)
> and then marshaling evidence to support the termination, rather than dealing with the
> claims fairly. Though, as defendants point out, Fiest left Paul Revere before the time
> period when Brennan's benefits were terminated, **plaintiff has sufficient evidence
> of the continuation of this policy or practice into the relevant time period,
> including the period after Paul Revere was acquired by Provident, to provide
> an adequate foundation for a reasonable inference that it did in fact continue.
> Plaintiff likewise as sufficient circumstantial evidence to permit a reasonable
> inference that the policy was followed in his particular case. Though defendants
> dispute this evidence and the inferences to be drawn from it, those are matters
> for the jury; Brennan has laid an adequate foundation for admission of this
> evidence.** Though there may, in some cases, be a fine line between "routine practice"
> evidence admissible under Rule 406 and "other act" evidence generally rendered
> inadmissible under Rule 404(b), Brennan's policy evidence does not come close to
> that line.

<u>Id.</u> (emphasis added). Likewise, in the instant case, plaintiffs seek to introduce relevant evidence

to establish liability of the injury caused by MetLife's business practices.

Just because the evidence of the custom, habit and business practice demonstrates that

negligent and/or fraudulent conduct took place as a regular business practice does not mean that it

is prejudicial to the Defendants, nor does this prevent the admission of the evidence to prove the

-9-

elements of negligence and fraud as well as aids in establishing the credibility of the parties. **See Rohm and Haas Co. v. Continental Cas. Co.**, 781 A.2d 1172 at 1179 fn6 (Pa. 2001) (circumstantial evidence of a pattern of conduct was permissible to establish proof of intent. "While a single isolated incident of some event followed by a second event may render tenuous an inference that the first event caused the second, a series of such incidents accompanied by other circumstantial evidence may result in a much more compelling conclusion."); **General Equipment Manufacturers v. Westfield Insurance Co.**, 635 A.2d 173, 185 (Pa. Super. 1993)("evidence of similar acts or transactions is admissible when relevant to prove an issue in the case. Accordingly, evidence of a course of conduct or dealing followed by a person may be admitted to prove that he acted in accordance with it on a given occasion, provided such a course of conduct or dealing is shown to have been continuous and systematic.").

Similarly with MetLife, plaintiffs must prove that MetLife knew about not only the activity of its employee sales agents for some time, but also the regular business practices used by its employee sales agents and should have been more responsive to the situation. Plaintiffs also have to prove that MetLife knew or should have known of the necessity and opportunity for exercising such control. To meet this required showing, plaintiffs must establish that the Defendants had some form of notice. Thus, it is important for plaintiffs to demonstrate that other incidents of the use of the same sales practices has occurred involving other sales agents who may have been similarly situated within MetLife and MetLife took no effective action to stop such conduct, or indeed, approved of the conduct.

The business practices and knowledge of MetLife itself are at issue, since MetLife is also a defendant, along with the manner in which it supervised its employees. The inability to present any

evidence of the business practices and knowledge of MetLife itself would prejudice and harm plaintiffs' proof of their claims as to liability against MetLife regarding its business practices and how they directly relate to the sale of the polices to plaintiffs.

This principal of permitting evidence of the business practices in fraud cases is based upon the concept that evidence of similar business practices evidence is admissible to prove a course of conduct, if the evidence falls into one of five exceptions to the general rule that this evidence is inadmissible because it generally is prejudicial. The five exceptions are: "(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial — in other words, where there is such a logical connection between the [frauds] that proof of one will naturally tend to show that the accused is the person who committed the other." See Commonwealth v. Peterson, 307 A.2d 264 (Pa.1973); see also Commonwealth v. Marsh, 566 A.2d 296 (Pa. Super. 1989); citing Commonwealth v. Clayton, 532 A.2d 385, 392 n.8 (Pa. 1987).

All five of these exceptions exist in the evidence that plaintiffs seeks to offer at trial. The Pennsylvania Supreme Court in Commonwealth v. Peterson, further held that where evidence relates **to any one of these five issues** it is admissible: **"When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value."** Id. at 307 A.2d 264 at 269-270 (Emphasis added).

Moreover, there is a procedure for resolving any possibility of confusion or misunderstanding of the jury as to purpose of the admission of the evidence. Any possible misunderstanding can be clarified through instructions by the trial court. If evidence is admissible for one purpose, but not for

-11-

another, the trial judge should instruct the jury on the restricted purpose for which the evidence has

been admitted.  F.R.E. 105 requires the judge to give such and instruction if a party requests it.  A

party should request that instructions be given to insure that the jury make the proper use of the

evidence and that it is not used for an improper purpose.  This exact issue was also discussed and

explained in Commonwealth v. Peterson, and the Pennsylvania Supreme Court held that any possible

confusion of the purpose for the admission of the prior bad acts or any possible prejudice that might

be caused thereby could be explained and clarified through cautionary charges by the trial court:

> The trial judge informed the jury at the outset that they were in effect trying two
> separate cases at one time and for this reason would have to pay especially close
> attention to the evidence so as to be able to properly segment it. **At the close of trial
> an extensive cautionary instruction was given which again directed the jury to
> confine the relevant evidence to each offense. This instruction was precise and
> unassailable.**

Commonwealth v. Peterson, 307 A.2d 264 at 271.

Moreover, in a fraudulent misrepresentation, the standards of evidence are relaxed for

plaintiffs to prove their claims.  As Henry on Pennsylvania Evidence stated:

> **The rule which excludes evidence of other acts to prove a particular act is
> greatly relaxed in cases of fraud.**  Thus allegations of misrepresentations as to
> financial condition and of conveyance of property to defraud creditors may be
> supported by showing similar misrepresentations to others and transfers of other
> property as a series of acts constituting a general scheme to defraud.  And **where a
> conspiracy to cheat and defraud in a particular instance is charged, evidence of
> a scheme to cheat and defraud the public generally may be given.**  If notes are
> alleged to have been fraudulently raised in amount, evidence of raising or of other
> notes by the same person is admissible where it tends to show a general scheme to
> obtain money on raised notes.

See Pennsylvania Evidence by Henry, Volume 1, Chapter 1 §36 Similar Facts, Conditions or

Conduct - Fraud, p.73 (Emphasis Added); See also Wigmore on Evidence, Third Edition, Vol. II,

§ 367; Lisenba v. The People of the State of California, 314 U.S. 219, 62 S. Ct. 280, 86 L. Ed. 179

(1941); <u>Snayberger v. Fahl</u>, 195 Pa. 336, 342 (1900)("Where fraud is alleged, great latitude of proof is allowed and every fact or circumstance from which a legal inference of fraud may be drawn is admissible."); <u>Gee v. CBS, Inc.</u>, 471 F. Supp. 600, 617-634 (E.D. Pa., 1979).

Evidence of prior acts to establish and prove a system or method of fraud is admissible also to demonstrate that a party's conduct was consistent with a general course of conduct on their part, a general design, or purpose:

> **Where a series of acts indicates a general design, purpose or course of conduct on the part of the person who committed them, they become competent evidence on the question of whether or not a similar particular act was done by the same person.** Even though an act is so remote in point of time from that charged that the statute of limitations would bar a prosecution for it, it would still be admissible if one of a series of acts tending to show guilt of the party charged. ...

<u>Pennsylvania Evidence by Henry</u>, Chapter 1, §36 Similar Facts, Conditions or Conduct - Course of Conduct, p.67. (emphasis added).

There is no merit to Defendants argument that the admission of this testimony and the documents in his possession would violate Rule 403.

To the contrary, evidence is not prejudicial for purposes of Rule 403 merely because it is 'detrimental to a party's case." <u>See</u> <u>Whistler Sportswear, Inc. v. Rullo</u>, 433 A.2d 40,47 (Pa. Super 1981). The Superior Court has further stated that the exclusion of relevant evidence as prejudicial is only necessary where the evidence would:

> inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendants is charged.

<u>Commonwealth v. Palmer</u>, 700 A.2d 988, 992-993 (Pa. Super. 1997).

The testimony, and the documents supporting the testimony of MetLife's knowledge of the use of the sales methods regarding the sale of policies through the use of the "vanishing premium scheme" are also directly relevant to the issue of whether Defendants' conduct was egregious.

## **CONCLUSION**

For all the foregoing reasons, Defendants Motion in Limine should be denied

Respectfully Submitted,


/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Emsberger, P.C.
306 Fourth Ave.  - Suite 300
Pittsburgh, PA 15222
(412) 391-2515   (phone)
(412) 391-2762 (fax)

## CERTIFICATE OF SERVICE

I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the

within Plaintiffs' Memorandum of Law in Response to Defendants' Motion In Limine  was served

upon the below listed counsel and parties by U.S. First Class mail, postage pre-paid on the 13th day

of October, 2006.

B. John Pendleton, Jr., Esquire
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101-0652


/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Emsberger, P.C.
Union Bank Building  - Suite 300
306 Fourth Ave.
Pittsburgh, PA 15222
(412) 391-2515   (phone)
(412) 391-2762    (Fax)