## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT G. WYCKOFF | ) | Civil Action No. 00-2248 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Chief Judge Donetta W. Ambrose |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY and KENNETH F. KACZMAREK, | ) | |
| | ) | |
| Defendants | ) | |

---

## PLAINTIFFS' BRIEF IN RESPONSE TO METROPOLITAN LIFE INSURANCE COMPANY'S MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE EXHIBIT NO. 63 CALL CENTER SURVEYS

---

### PRELIMINARY STATEMENT

In this Motion in Limine, Defendants argue that evidence of MetLife's Customer Service Call Centers regarding a customer feed-back survey on the Accelerated Payment Plan conducted in September of 1995 as part of MetLife's AP Natural Work Team's investigation into the problems with selling policies with "vanishing" premiums. See Ex. 63. The survey is part of MetLife's regular business records and was done with the oversight of James Rayl in the Tulsa, Oklahoma Customer Service Center.

This evidence is directly on point to establish that policyholders were sold policies as "paid-up" policies by MetLife sales agents and tends to support the credibility of plaintiff. Additionally, this evidence also tends to demonstrate MetLife's corporate culture that permitted deceptive sales under the APP program such as the deceptive sales tactic in the sale of the whole life policies to

-1-

plaintiff.

The sales methods used in the instant case are identical to the sales methods that are identified in the Customer Surveys.  See Ex. 80, e.g. ("3.  On those calls where the customer is asking about their AP eligibility, what is the general reaction of customers when you explain the AP eligibility date, and the fact that the date is only a projection, not a guarantee?   Anger, disappointment, fear that they will never be eligible for APP.  They feel that they were lied too. [sic]."), Bates No. MP4011159915; ("'MOST' customers say they were not made aware that the AP date was a projection, at the time of issue.  A lot of people are shocked when they find out AP is not guaranteed."), Bates No. MP4011159917.  Indeed, the evidence demonstrates that the same deceptive sales practices were used by Metropolitan Life sales agents on a national basis.  Therefore, the fact that Pennsylvania is not specifically referenced is irrelevant.

The plaintiff alleges that MetLife had a business practice of selling policies based upon misrepresentations as to the number of years that the policyholder would be required to make out-of-pocket premium payments on their life insurance policies.  See Complaint.  The evidence will demonstrate that MetLife, through its sales agents, used this deceptive business practice routinely, widely and repeatedly, and further MetLife condoned this business conduct either directly through awards and bonuses, or tacitly by not taking appropriate measures to stop such practices once senior management had knowledge they were occurring.

Moreover, this very same business conduct occurred in the sale of the policy at issue in this case and plaintiffs were harmed thereby.  This evidence will tend to prove the allegations of plaintiffs are true and supports the credibility of the plaintiff and the lack of credibility of the defendants.

Furthermore, plaintiff seeks to introduce this evidence for the purpose of establishing the

context of MetLife's knowledge, intent and corporate culture which permitted this business practice of selling life insurance policies by misrepresenting the actual cost of the policies. The pattern and practice evidence demonstrates that MetLife is liable for the sale to the plaintiffs through misrepresentations as to the performance and cost of the policies.

Finally, MetLife is incorrect in its reading of Rule of Evidence 410, 402 and 403. The documents are clearly relevant and admissible business records and are admissible.

## ARGUMENT

I.    **THE PROPOSED EVIDENCE IS RELEVANT TO THIS CASE**.

A.    **Relevancy of Evidence under Rule 401 and 406.**

"Evidence is 'relevant' if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Fed.R.Evid. 402."  Garvey v. Dickinson College, 763 F. Supp. 799, 801 (M.D.Pa. 1991).

The survey was taken in September of 1995 in response to MetLife's awareness that there was a problem in how whole life policies had been sold in the mid to late 1980's, which was when the sales were made to plaintiff.  The problems with the earlier "vanishing" premium sales are identical to the "vanishing" premium sales problem with the sales to plaintiffs.  All of the policyholders were told the policies would be "paid-up" in "x" years.  The number of represented years of payments varies depending upon how the APP presentation was made and when it was made.  The fact that some of the policyholders premiums had vanished and reappeared is immaterial since all that occurred is that they learned of the deception at a later stage of the APP program, but the deception was in how the policy was sold under the APP program is identical in all sales.

All of the policyholders had the exact same problem, that is that the cost of the policy was more than was represented to induce the sale, when and how the problem manifests itself to the policyholder does not preclude the admissibility of evidence that demonstrates that policyholders were deceptively sold in the identical manner as sold to plaintiff and are required to make additional premium payments, just as is the plaintiff. All of the policyholders are faced with the identical problem that when the dividend and interest rates were reduced by MetLife they were compelled to pay additional money beyond that represented to induce the sale. Also, in every sale, the same problem existed, that is, MetLife had no reasonable basis for using either the interest or dividend rates that were used in the illustrations since the rates of returns could not be projected with any accuracy beyond one year.

The survey conducted as part of the Natural Work Team of which Wilhelmenia Taylor was a member and in a position to provide evidence of MetLife's corporate knowledge as to the extent of the use of the business practices, as such, the evidence is relevant under F.R.E. Rules 404(b) and 406 to the issues in this case, particularly Plaintiff's claim for liability, since MetLife's motive, intent, opportunity, preparation, plan knowledge, or absence of mistake are all at issue.

_____Federal Rule of Evidence Rules 404(b) and 406 have been interpreted to permit the admission of business practices evidence. The United States District Court for the Western District of Pa in <u>Com. of Pa. v. Porter</u>, 480 F.Supp. 686, (W.D. Pa. 1979) found:

> This suit was filed October 5, 1977. The defendant Baranyai has throughout the trial objected to evidence of any events back of the one or two year period preceding the bringing of suit claiming that such evidence should not be permitted under the statute of limitations. **It should be sufficient answer that such evidence is admissible under Rule 404(b) to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or**

**organization.**

Com. of Pa. v. Porter, 480 F.Supp. 686 at 688 (W.D. of Pa. 1979).  This reasoning was upheld by

the United States Court of Appeals for the Third Circuit, finding:

> **. . . Evidence of the prior actions was admitted, as the trial court noted, under
> Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge
> or absence of mistake or accident and to show plan or design.  It is also
> admissible under Rule 406 to show a pattern or routine practice of a defendant
> or organization."  This ruling was correct.**

Com. of Pa. v. Porter, 659 F.2d 306 at 320 (3rd Cir.1981) (Citations omitted)(emphasis added); see

also, Rosenburg v. Lincoln Am. Life Ins. Co., 883 F.2d 1328, 1336 (7th Cir. 1989) (evidence

admissible to establish a routine practice that defendant's agents regularly gave or were trained to

"give oral assurances that insurance coverage was effective immediately despite written conditions

to the contrary"); United States v. Quezada, 754 F.2d 1190, 1195 (5th Cir. 1985)(proper for INS

agent to describe "the normal procedure followed in executing a warrant of deportation" by his

agency to establish conformity with those procedures in instant case); Holley v. Seminole Cty. Sch.

Dist., 755 F.2d 1492, 1505 (11th Cir. 1985) (evidence that school board had not punished others who

engaged in similar conduct should have been admitted); Wells Fargo Business Credit v. Ben Kozloff,

Inc., 695 F.2d 940, 944 (5th Cir. 1983) (placing letters in mail "may be proved by circumstantial

evidence, including customary mailing practices used in the sender's business"), cert. denied, 464

U.S. 818; Williams v. Anderson, 562 F.2d 1081, 1086 & n. 7 (8th Cir. 1977)(evidence of prior

racially discriminatory practices admissible to support inference that discrimination continued);

Amoco Prod. Co. v. United States, 619 F.2d 1383, 1389-1390 (10th Cir. 1980) (proper under FRE

406 to receive evidence of the routine practice of the Federal Farm Mortgage Company "to reserve

a one-half mineral interest in all property transferred during the relevant period" to prove that such

a provision was contained in the deed in question); see also John H. Strong, McCormick on Evidence § 195 (4th ed. 1992); 1A John A. Wigmore, Evidence § 95 (Tillers rev. 1983).

Reliance on FRE 406 is necessary only where a litigant seeks to prove conduct on a specific occasion by evidence of routine practice. Where a litigant seeks to prove a pattern or practice that has independent relevance, such evidence is admissible under FRE 401. See Pennsylvania v. Porter, 659 F.2d 306, 320 (3d Cir. 1981) (in litigation seeking equitable relief, evidence of pattern of constitutional violations by police is admissible; court erroneously cites FRE 406), cert. denied, 458 U.S. 1121. United States v. Santa, 180 F.3d 20, 29 (2d Cir. 1999) (practice of police department supported court finding that it returned to village court a request to vacate warrant).

Although there are no "precise standards" for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: "adequacy of sampling and uniformity of response." Fed.R.Evid. 406, advisory committee's notes; McWhorter v. Birmingham, 906 F.2d 674, 679 (11th Cir. 1990).

## II.    APPLICATION OF RULE 404(B)(2) PERMITS THE ADMISSION OF PLAINTIFF'S RELEVANT EVIDENCE.

F.R.E. Rule 404(b)(2) also permits the introduction of evidence of prior acts on the part of a party where those acts may demonstrate "**proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident**, . . .". [Emphasis added].

Particularly instructive is the case of Rosenburg v. Lincoln American Life Ins. Co., 883 F.2d 1328 (7th Cir. 1989), where the defendant life insurance company sales agents were routinely as a business practice misrepresenting that Lincoln was providing guaranteed coverage. Evidence of other examples of the same sales practices was permitted. "A Lincoln Administrative Assistant,

-6-

testified that the company was aware that agents had represented that Lincoln was providing guaranteed coverage to dependents in other cities and had compiled a list of cities where such "misrepresentations" had occurred." Id. at 1331. Lincoln objected to this testimony of statements made to others outside of the individual sale and Mr. Rosenburg's presence regarding Lincoln's program in Granite City and other cities in Indiana claiming that these statements were irrelevant, prejudicial and inadmissible under Fed.R.Evid. 404(b) as evidence of other wrongs or bad acts.

The District Court and the Seventh Circuit both rejected the insurer's arguments and concluded the evidence was relevant and admissible under F.R.E. 406. The Seventh Circuit in permitting the evidence of other sales and bad acts held:

> **There was sufficient evidence of such a routine practice by Lincoln agents such that the testimony in question was properly admissible under Fed.R.Evid. 406 to establish that Lincoln acted in conformity with its routine business practice in this instance.**[fn5] See G.M. Brod & Co. v. U.S. Home Corp., 759 F.2d 1526, 1533 (11th Cir. 1985).

Rosenburg, at 1336.

In another case where another life insurance company was sued for fraudulent business practices and pattern and practice evidence was permitted under F.R.E. Rule 406, in Brennan v. The Paul Revere Life Insurance Company, Case No. 00 C 0725 (N.D. Ill. 2002), in denying the insurer's motion in limine to preclude evidence of other similar acts and business practices the District Court held, "Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line." See Exhibit 1 a copy of the Brennan opinion. In Brennan, the Plaintiff offered evidence that the insurance company had a business practice to target high amount claims and Defendants sought through fourteen motions in

limine to restrict Plaintiff's evidence.

Similarly, to the instant motion filed by MetLife seeking to limit any evidence outside of the first hand knowledge of the individual sale, the insurer in <u>Brennan</u> filed the same motion. "Their third motion in limine seeks to exclude the testimony of Dr. William Fiest, a former Provident medical director, concerning that company's policies.  Defendants argue that Brennan's claims concern defendants' handling of his particular insurance claim, and not how they may have handled other claims made by other people at other times." <u>Id.</u>  The District Court rejected this motion, holding:

> **Some of the evidence offered by Brennan tends to show the existence of a regularly-followed policy or practice that is sufficiently routine and "automatic" to permit its admission under Rule 406 as construed in <u>Simplex</u> and <u>Rosenburg</u>.**  Specifically, plaintiff has direct evidence consisting of the testimony of Dr. William Fiest, a former Vice President and Medical Director of Paul Revere, that that company had a policy of targeting for termination certain types of high-level disability insurance claims (including those of the type made by Brennan) and then marshaling evidence to support the termination, rather than dealing with the claims fairly.  Though, as defendants point out, Fiest left Paul Revere before the time period when Brennan's benefits were terminated, **plaintiff has sufficient evidence of the continuation of this policy or practice into the relevant time period, including the period after Paul Revere was acquired by Provident, to provide an adequate foundation for a reasonable inference that it did in fact continue. Plaintiff likewise as sufficient circumstantial evidence to permit a reasonable inference that the policy was followed in his particular case.  Though defendants dispute this evidence and the inferences to be drawn from it, those are matters for the jury; Brennan has laid an adequate foundation for admission of this evidence.**  Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line.

<u>Id.</u> (emphasis added).  Likewise, in the instant case, plaintiffs seek to introduce relevant evidence to establish liability of the injury caused by MetLife's business practices.

Just because the evidence of the custom, habit and business practice demonstrates that

negligent and/or fraudulent conduct took place as a regular business practice does not mean that it is prejudicial to the Defendants, nor does this prevent the admission of the evidence to prove the elements of negligence and fraud as well as aids in establishing the credibility of the parties. **See Rohm and Haas Co. v. Continental Cas. Co.**, 781 A.2d 1172 at 1179 fn6 (Pa. 2001) (circumstantial evidence of a pattern of conduct was permissible to establish proof of intent. "While a single isolated incident of some event followed by a second event may render tenuous an inference that the first event caused the second, a series of such incidents accompanied by other circumstantial evidence may result in a much more compelling conclusion."); **General Equipment Manufacturers v. Westfield Insurance Co.**, 635 A.2d 173, 185 (Pa. Super. 1993)("evidence of similar acts or transactions is admissible when relevant to prove an issue in the case. Accordingly, evidence of a course of conduct or dealing followed by a person may be admitted to prove that he acted in accordance with it on a given occasion, provided such a course of conduct or dealing is shown to have been continuous and systematic.").

Similarly with MetLife, plaintiffs must prove that MetLife knew about not only the activity of its employee sales agents for some time, but also the regular business practices used by its employee sales agents and should have been more responsive to the situation. Plaintiffs also have to prove that MetLife knew or should have known of the necessity and opportunity for exercising such control. To meet this required showing, plaintiffs must establish that the Defendants had some form of notice. Thus, it is important for plaintiffs to demonstrate that other incidents of the use of the same sales practices has occurred involving other sales agents who may have been similarly situated within MetLife and MetLife took no effective action to stop such conduct, or indeed, approved of the conduct.

The business practices and knowledge of MetLife itself are at issue, since MetLife is also a defendant, along with the manner in which it supervised its employees. The inability to present any evidence of the business practices and knowledge of MetLife itself would prejudice and harm plaintiffs' proof of their claims as to liability against MetLife regarding its business practices and how they directly relate to the sale of the polices to plaintiffs.

This principal of permitting evidence of the business practices in fraud cases is based upon the concept that evidence of similar business practices evidence is admissible to prove a course of conduct, if the evidence falls into one of five exceptions to the general rule that this evidence is inadmissible because it generally is prejudicial. The five exceptions are: "(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial — in other words, where there is such a logical connection between the [frauds] that proof of one will naturally tend to show that the accused is the person who committed the other." See Commonwealth v. Peterson, 307 A.2d 264 (Pa. 1973); see also Commonwealth v. Marsh, 566 A.2d 296 (Pa. Super. 1989); citing Commonwealth v. Clayton, 532 A.2d 385, 392 n.8 (Pa. 1987).

All five of these exceptions exist in the evidence that plaintiffs seeks to offer at trial. The Pennsylvania Supreme Court in Commonwealth v. Peterson, further held that where evidence relates **to any one of these five issues** it is admissible: **"When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value."** Id. at 307 A.2d 264 at 269-270 (Emphasis added).

Moreover, there is a procedure for resolving any possibility of confusion or misunderstanding

of the jury as to purpose of the admission of the evidence.  Any possible misunderstanding can be

clarified through instructions by the trial court. If evidence is admissible for one purpose, but not for

another, the trial judge should instruct the jury on the restricted purpose for which the evidence has

been admitted.  F.R.E. 105 requires the judge to give such and instruction if a party requests it.  A

party should request that instructions be given to insure that the jury make the proper use of the

evidence and that it is not used for an improper purpose.  This exact issue was also discussed and

explained in Commonwealth v. Peterson, and the Pennsylvania Supreme Court held that any possible

confusion of the purpose for the admission of the prior bad acts or any possible prejudice that might

be caused thereby could be explained and clarified through cautionary charges by the trial court:

> The trial judge informed the jury at the outset that they were in effect trying two separate cases at one time and for this reason would have to pay especially close attention to the evidence so as to be able to properly segment it. **At the close of trial an extensive cautionary instruction was given which again directed the jury to confine the relevant evidence to each offense. This instruction was precise and unassailable.**

Commonwealth v. Peterson, 307 A.2d 264 at 271.

Moreover, in a fraudulent misrepresentation, the standards of evidence are relaxed for

plaintiffs to prove their claims.  As Henry on Pennsylvania Evidence stated:

> **The rule which excludes evidence of other acts to prove a particular act is greatly relaxed in cases of fraud.**  Thus allegations of misrepresentations as to financial condition and of conveyance of property to defraud creditors may be supported by showing similar misrepresentations to others and transfers of other property as a series of acts constituting a general scheme to defraud.  And **where a conspiracy to cheat and defraud in a particular instance is charged, evidence of a scheme to cheat and defraud the public generally may be given.**  If notes are alleged to have been fraudulently raised in amount, evidence of raising or of other notes by the same person is admissible where it tends to show a general scheme to obtain money on raised notes.

See Pennsylvania Evidence by Henry, Volume 1, Chapter 1 §36 Similar Facts, Conditions or

Conduct - Fraud, p.73 (Emphasis Added); See also Wigmore on Evidence, Third Edition, Vol. II, § 367; Lisenba v. The People of the State of California, 314 U.S. 219, 62 S. Ct. 280, 86 L. Ed. 179 (1941); Snayberger v. Fahl, 195 Pa. 336, 342 (1900)("Where fraud is alleged, great latitude of proof is allowed and every fact or circumstance from which a legal inference of fraud may be drawn is admissible."); Gee v. CBS, Inc., 471 F. Supp. 600, 617-634 (E.D. Pa., 1979).

Evidence of prior acts to establish and prove a system or method of fraud is admissible also to demonstrate that a party's conduct was consistent with a general course of conduct on their part, a general design, or purpose:

> **Where a series of acts indicates a general design, purpose or course of conduct on the part of the person who committed them, they become competent evidence on the question of whether or not a similar particular act was done by the same person.** Even though an act is so remote in point of time from that charged that the statute of limitations would bar a prosecution for it, it would still be admissible if one of a series of acts tending to show guilt of the party charged. ...

Pennsylvania Evidence by Henry, Chapter 1, §36 Similar Facts, Conditions or Conduct - Course of Conduct, p.67. (emphasis added).

There is no merit to Defendants argument that the admission of this testimony and the documents in his possession would violate Pa.R.E. 403. To the contrary, evidence is not prejudicial for purposes of Rule 403 merely because it is 'detrimental to a party's case." See Whistler Sportswear, Inc. v. Rullo, 433 A.2d 40, 47 (Pa. Super 1981). The Superior Court has further stated that the exclusion of relevant evidence as prejudicial is only necessary where the evidence would:

> inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendants is charged.

-12-

Commonwealth v. Palmer, 700 A.2d 988, 992-993 (Pa. Super. 1997).

The testimony, and the documents supporting the testimony of MetLife's knowledge of the use of the sales methods regarding the sale of policies through the use of the "vanishing premium scheme" are also directly relevant to the issue of whether Defendants' conduct was egregious.  As the United States Supreme Court has determined:

> **Certainly, evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law.** See [TXO] id., at 462, n. 28. Our holdings that **a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance.** See Gryger v. Burke, 334 U.S. 728, 732 (1948).

BMW v. Gore, 517 U.S. 559 at 576-77 (Emphasis added).

In TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 462, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), the United States Supreme Court addressed the relevancy and admissibility of similar improper out-of-state business conduct. If out-of-state business conduct is relevant to the harm suffered by the plaintiff, so is in-state improper business conduct. Thus, this out-of-state and in-state unlawful conduct properly may be considered by a jury in the context of imposing punitive damages.  The U.S. Supreme Court held in TXO that the defendant's unlawful out-of-sate conduct was admissible for consideration by the fact finder, stating:

> **TXO also contends that the admission of evidence of its alleged wrongdoing in other parts of the country**, as well as the evidence of its impressive net worth, led the jury to base its award on impermissible passion and prejudice.  Brief for Petitioner 22-23. **Under well-settled law, however, factors such as these are typically considered in assessing punitive damages.**  Indeed, the Alabama factors **we approved in Haslip included both**. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21-22 (1991) ("**(b) . . . the existence and frequency of similar past conduct**; . . . (d) the 'financial position' of the defendant").

-13-

TXO, 509 U.S. at 462, fn28. (Emphasis added). The decision in <u>Haslip</u> is referenced with approval in the Pennsylvania Suggested Standard Civil Jury Instructions. <u>See</u> Chapter XIV Punitive Damages, p.9. ("Although <u>Haslip</u> dealt with an Alabama punitive damage award, the opinion provides guidance in assessing punitive damage awards under Pennsylvania law").

Furthermore, the holding in <u>TXO</u> was not altered by the decision in <u>State Farm v. Campbell</u>, 538 U.S.408,123 S.Ct. 1513, 1522 (2003)("**...[O]ut-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious**, but that conduct must have a nexus to the specific harm suffered to the plaintiff.")(Emphasis added).

## III.    THE CUSTOMER SURVEYS ARE BUSINESS RECORDS AND ARE ADMISSIBLE.

Defendants cite to no caselaw in support of the premise that the business records of MetLife are inadmissible hearsay. They only reference generically to Federal Rule of Evidence 803(6). As the documents objected to by the Defendants are not privileged and are admissible under the Business Records Exception to the hearsay rule, the fact that the documents were made at or near the time of the events it purports to relate; generated as a regular practice of the business; and trustworthy as to the source of information or the method or circumstances of preparation, the business records of MetLife are clearly admissible.

The justification for the business records exception rests on the assumption that business records are reliable because they are created on a day-to-day basis and "[t]he very regularity and continuity of the records are calculated to train the recordkeeper in habits of precision." McCormick on Evidence § 286 5th ed.). The business records exception to the hearsay rule applies only if the person who makes the statement "is himself acting in the regular course of business." <u>Florida Canal</u>

Industries, Inc. v. Rambo, 537 F.2d 200, 202 (5th Cir. 1976).

In U.S. v. Pelullo, 964 F.2d 193 (3d Cir. 1992), the United States Court of Appeals for the

Third Circuit addressing Rule 803(6) explained when business records are admissible:

> The business records exception permits admission of documents containing hearsay provided foundation testimony is made by `the custodian or other qualified witness,' that: (1) the declarant in the records had personal knowledge to make accurate statements; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made the record in the regular course of the business activity; and (4) such records were regularly kept by the business.

Id. at 200.

The documents meet all four requirements: (1) Wilhelmenia Taylor as part of the Natural

Work Team, through sworn testimony authenticates that surveys were taken, the results of which

were referenced in the report she co-authored on the APP natural Work Team she describes that she

personally assisted in writing the report based upon knowledge and information gained as part of the

APP Natural Work Team; 2) she co-authored the report when the problems regarding the sales

agents selling policies as "paid-up" was taking place; (3) she co-authored the report in the regular

course of business to bring the information regarding the numerous complaints received in the

Customer Service Center regarding the use of deceptive sales tactics of "paid-up" policies to the

attention of her superiors; and (4) records regarding complaints in the manner in which sales agents

are selling policies are kept in the regular course of business - they are required to be kept by every

Insurance Department in the country.

Additionally, these documents should be admissible under either Rule 801(d)(2)(A)

(statement by a party offered against that party) or Rule 803(6) (business records exception). The

APP Natural Work Team report was communicated to the highest levels of the company and also

-15-

comprises a statement of MetLife offered against MetLife.

Therefore, the documents are admissible as business records. However, MetLife objects that they are not trustworthy documents. They provide no support for this accusation. Indeed, it is MetLife employees reporting on complaints from policyholders regarding the sale of policies as "paid-up" policies, which was confirmed by MetLife's own internal investigation as well as investigations of various insurance departments, e.g. Pennsylvania, Connecticut and Florida.

The basic requirements (regular business with regularly kept record; source with personal knowledge; record made in a timely fashion; foundation testimony) are enough in the run of cases to justify the conclusion that the record is trustworthy. The phrasing of the exception points toward this conclusion: It applies unless problems of trustworthiness appear. The objecting party bears the burden of raising the trustworthiness issue and showing the record is untrustworthy. Shelton v. Consumer Products Safety Commission, 277 F.3d 998, 1109 (8th Cir. 2001) (in enforcement suit against maker and importer, admitting private laboratory report to show that fireworks were banned hazardous substances; **party objecting to evidence fitting exception bears burden of raising trustworthiness issues and showing that record is untrustworthy**)(emphasis added). MetLife cites to no specific material reasons or any caselaw in support thereof as to why the materials are untrustworthy. Indeed, MetLife ignores the fact that the observations made in the surveys are supported by several Insurance Commissioners, who also found that MetLife was deceptively selling policies as paid-up policies, e.g. Pennsylvania, Connecticut and Florida. Thus, MetLife has failed to meet its burden.

In Hertz v. Luzenac America, Inc., 370 F.3d 1014 (10th Cir. 2004), the Tenth Circuit set forth the necessary indicia of trustworthiness for a document to be admitted as a business record, holding:

-16-

"We have identified several factors that relate to trustworthiness: (1) the business significance of the document outside the litigation context, (2) the level of experience of the preparer in creating such documents, and (3) the neutrality of the preparer." Id. at 1020; see also 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 450, at 534-36 (2d ed. 1994) (listing as factors showing trustworthiness "extent to which the matter recorded is important to the business outside the context of litigation," experience of preparer, and absence of motive on behalf of preparer).

Again, instantly all of the elements exist as to the evidence; (1) there is business significance of the documents outside of the litigation since it is presumed that MetLife Senior Management would want to know that the sales force is using deceptive and illegal sales techniques; (2) Wilhelmenia Taylor worked a MetLife for over twenty years in various capacities prior to being assigned to the APP Natural Work Team; and (3) Ms. Taylor was an employee of MetLife and was not writing the document in preparation for litigation, she was writing the letters based upon his personal knowledge obtained in that capacity.

Although satisfying the basic requirements brings the exception into play, many more decisions cite trustworthiness as a reason to admit records than untrustworthiness as a reason to exclude. Many factors support a finding of trustworthiness: Foremost among them is the extent to which the matter recorded is important to the business outside the context of litigation. United States v. Frazier, 53 F.3d 1105, 1110 (10th Cir. 1995) (audit report having use in areas other than suit and prepared by neutral party); Coates v. Johnson & Johnson, 756 F.2d 524, 549-550 (7th Cir. 1985) (disciplinary memoranda kept for routine business purpose). A point that is especially persuasive if the report was acted on in some serious, costly, or elaborate way that tends to verify the point it is offered to prove. Matador Drilling Co. v. Post, 662 F.2d 1190, 1198-1199 (5th Cir. 1981) (oil

-17-

drilling rig reports, relied on for payroll); <u>United States v. Ullrich</u>, 580 F.2d 765, 771-772 (5th Cir. 1978) (inventory schedule used to keep track of collateral in floor-plan financing).

The fact that a record was prepared with no eye toward litigation counts.  <u>See</u> <u>Selig v. United States</u>, 740 F.2d 572, 578 (7th Cir. 1984); <u>Tupman Thurlow Co. v. S.S. Cap Castillo</u>, 490 F.2d 302, 310 (2d Cir. 1974).  Also tending to show trustworthiness is the fact that a record was prepared by trained or experienced people.  <u>American Intl. Pictures, Inc. v. Price Enters., Inc.</u>, 636 F.2d 933, 935 (4th Cir. 1980) (reports by checkers surveying attendance at movie theaters; officers detailed procedures for selecting, training, and supervising checkers), cert. denied, 451 U.S. 1010; <u>United States v. Stonehouse</u>, 452 F.2d 455, 459 (7th Cir. 1971)(cable diagrams; likelihood of misunderstanding or misdescription was remote).

Independent corroborative evidence helps too. Extensive corroboration supports an inference that the record as a whole is trustworthy, and specific corroboration of the point the record is offered to prove also alleviates trustworthiness concerns. <u>See</u> <u>United States v. Cincotta</u>, 689 F.2d 238, 243 (1st Cir. 1982) (admitting driver notebook; delivery tickets signed by commercial customers corroborated notebook), cert. denied, 459 U.S. 991; <u>United States v. Wigerman</u>, 549 F.2d 1192, 1193-1194 (8th Cir. 1977) (admitting records of motel registrations, car rentals, airline shipments; witnesses corroborated documents).  Instantly, MetLife fails to acknowledge that MetLife created a Natural Work Team in 1995 to address the sales problems in using the APP sales methods as a result of numerous complaints received.  Also, the findings of the APP Natural Work Team are supported by the Insurance Commissioners of Pennsylvania, Connecticut and Florida, and others.

Accordingly, the documents demonstrate the necessary trustworthiness and should be admitted into evidence

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants Motion in Limine should be denied

Respectfully Submitted,


/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Emsberger, P.C.
306 Fourth Ave.  - Suite 300
Pittsburgh, PA 15222
(412) 391-2515   (phone)
(412) 391-2762 (fax)

## CERTIFICATE OF SERVICE

I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the

within Plaintiffs' Memorandum of Law in Response to Defendants' Motion In Limine  was served

upon the below listed counsel via the electronic filing system  on the 13th  day of October, 2006.

B. John Pendleton, Jr., Esquire
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101-0652


/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Emsberger, P.C.
Union Bank Building  - Suite 300
306 Fourth Ave.
Pittsburgh, PA 15222
(412) 391-2515   (phone)
(412) 391-2762    (Fax)