IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT G. WYCKOFF | ) Civil Action No. 00-2248 |
| Plaintiffs, | ) |
| v. | ) Chief Judge Donetta W. Ambrose |
| METROPOLITAN LIFE INSURANCE COMPANY and KENNETH F. KACZMAREK, | ) |
| Defendants | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S MOTION IN LIMINE TO EXCLUDE EXHIBITS 99 AND 100**

**PRELIMINARY STATEMENT**

Plaintiffs have identified as Exhibits 99 and 100, two videotapes produced by MetLife in discovery. Both video tapes are part of a video news magazine created by MetLife and shown to its nationwide sales force. Exhibit 99 is a videotape from 1985, that contains a relevant portion which provides evidence that demonstrates the net worth of the company and the focus of the company to increase sales in 1985. Plaintiff intends to use this information to establish that MetLife as a large insurance company with significant assets in support of a punitive damages award. See Defendants' Exhibit A.

Similarly, Exhibit 100 is a videotape from 1988, that contains a relevant portion which provides evidence that demonstrates the net worth of the company and the focus of the company to increase sales in 1988. Plaintiff intends to use this information to establish that MetLife as a large insurance company with significant assets in support of a punitive damages award. See Defendants'

Exhibit B.

Plaintiffs intend to introduce evidence concerning MetLife's financial condition, net worth and wealth. Plaintiff's did not request MetLife's production of its financial condition, net worth and wealth since Plaintiffs already had obtained this same information in related litigation and did not therefore need to request the same information again.

This evidence is relevant to claims that Defendants committed common law fraud and violations of the Pennsylvania UTPCPL. It makes more probable than not that a pattern of business practices demonstrates that vast sums earned served as motive and is evidence of intent. Moreover, this evidence of financial condition, net worth and wealth is a relevant factor for the jury to consider in awarding punitive damages.

I.  **METLIFE'S SIZE, FINANCIAL WORTH AND CORPORATE CULTURE ARE RELEVANT TO THIS LITIGATION.**

Plaintiff intends to utilize only the relevant portion of each videotape relating to MetLife's financial net worth, size and demonstrating the corporate culture of Metropolitan Life. Plaintiff seeks punitive damages for deliberate and deceptive conduct by MetLife that induced plaintiff to purchase the insurance policies. The purchases caused plaintiff financial detriment and benefitted defendants financially. The deceptive sales were made pursuant to a corporate marketing scheme that involved selling life insurance policies pursuant to deceptive and unfair business practices.

"Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 402." Garvey v. Dickinson College, 763 F. Supp. 799, 801 (M.D.Pa. 1991).

MetLife argues evidence of its financial condition, net worth and wealth is not relevant to allegations by Plaintiff. It contends this evidence does not make any fact alleged more likely than not so that the evidence should be excluded under F.R.E. 402. "Evidence which is not relevant is not admissible." This argument is wrong. To the contrary, recent federal and state decisions filed after <u>State Farm v .Campbell</u> and interpreting <u>State Farm</u> have found such evidence of net worth relevant and admissible as a factor to be considered in the award of punitive damages. In <u>TVT Records & TVT Music, Inc. v. Islan</u>, 02 Civ 6644 (S.D.N.Y. 2003), the defendants argued the net worth was prejudicial and should not be admitted based upon the holding in <u>State Farm</u>.

The United States District Court for the Southern District of New York interpreting <u>State Farm v. Campbell</u>, rejected defendant's argument and held that wealth and net worth evidence were permitted as one of the factors to be considered for the award of punishment damages and opined

> IDJ and Cohen argue that evidence of Defendant's net worth is prejudicial and not relevant to the three factors discussed in <u>State Farm</u> that guide a court's review of a punitive damages award and that therefore, such evidence should be precluded from a jury's consideration. The Supreme Court's decision in <u>State Farm</u> cannot be reasonably understood to preclude evidence of a defendant's net worth. Indeed, the Supreme Court itself explained in <u>State Farm</u> that "[w]ealth provides an open-ended basis for inflating awards when the defendant is wealthy. . . that does not make its use unlawful or inappropriate; it simply means that this factor cannot make up for the failure of other factors, such as "reprehensibility," to constrain significantly an award that purports to punish a defendant's conduct." <u>State Farm</u>, 2003 WL 1791206, at *12 (quoting <u>BMW of North Am., Inc. v. Gore</u>, 517 U.S. 559, 591 (1996).
> . . . .
>
> Furthermore, this District Court has construed New York law as permitting evidence of net worth to be considered as an element of punitive damages even when the defendant is a corporation. <u>See</u> <u>e.g.</u>, <u>Softel, Inc</u>. 891 F.Supp. at 945.

Thus, the jury properly can consider such evidence as a component and factor in imposing punitive damages. In <u>Hayward v. Home Despot, U.S.A., Inc</u>., 168 F. Supp.2d. 436 (E.D. Pa. 2001),

the District Court stated:

> We impose punitive damages for torts committed "willfully, maliciously, or so carelessly as to indicate wanton disregard of the rights of the party injured. <u>G.J.D. v. G.J.D. v. Johnson</u>, 552 Pa. 169, 172, 713 A.2d 1127 (1998).
>
> . . . .
>
> In Pennsylvania, the "function of punitive damages is to deter and punish egregious behavior." <u>G.J.D.</u> , 552 Pa at 172, citing <u>Martin v. John-Manville Corp</u>., 508 Pa. 154, 169, 494 A.2d 1088, 1096 (1985). It is well-established that the amount required to deter and punish a defendant varies according to the net worth of the defendant. <u>Mathies v. Mazet</u>, 30 A. 434 (Pa. 1894). ("[T]here is a great difference in a penalty as between a rich man and a poor man. What would be absolutely ruinous to a poor man worth probably a few hundreds or thousands of dollars, would not amount to anything by way of a penalty to a man worth hundreds or of thousands of dollars."). The jury must weigh the defendant's wealth with "the character of the act" and the nature and extent of the harm when calculating an appropriate punitive damages award. <u>Kirkbride v. Lisbon Contractors, Inc</u>., 521 Pa. 97, 102, 555 A.2d 800 (1989), invoking Section 908 of the Restatement of Torts.

Accordingly, Defendant's contention that evidence of financial condition, net worth and wealth must be precluded from being introduced at trial is misplaced. To the contrary, such evidence has a bearing on Defendant's intent and pattern of conduct.

**II.     EVIDENCE OF A COMPANY'S NET WORTH IS PROBATIVE AND RELEVANT TO AID THE JURY IN DETERMINING THE AMOUNT OF PUNITIVE DAMAGES TO BE ASSESSED.**

MetLife's argument fails since a jury is permitted to consider the net worth of the corporation as one of the factors in determining the amount of punitive damages. <u>See</u> <u>Kirkbride v. Lisbon Contractors, Inc</u>., 555 A.2d 800 at 803 (Pa. 1989)(To determine whether punitive damages are appropriate the following factors may be considered: (1) the character of the act; (2) the nature and extent of the harm caused; and (3) **the wealth of the defendant**. (citing Restatement (Second) of Torts § 908(2))(Emphasis added); <u>see also</u> <u>TXO</u>, 509 U.S. at 462, fn28; <u>BMW v. Gore</u>, 517 U.S. at

576-77; and State Farm v. Campbell, 538 U.S. 408, 123 S.Ct. at 1522.

Similarly when reviewing the size of a punitive damage award, the court must look to the totality of the circumstances surrounding the award of punishment damages in the instant case, the amount, the egregiousness of the conduct, the financial worth of the corporation, and the amount of the prior fines or punitive damage awards in the context of considering all of the factors. See TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 462, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993).

In interpreting whether its recent decision in State Farm Mut. Automobile Ins. v. Campbell, 538 U.S. 408 (2003) in which the court announced and applied guideposts with respect to whether punitive damages were unconstitutional and violated Due Process, the United States Supreme Court also later indicated punitive damages were not precluded but that reference to Defendant's wealth a factor to be considered within the context of Due Process, in TXO Production Corp v. Alliance Resources Corp., 509 U.S. 443 - 444 (1993) stating:

> (a) With respect to the question whether a particular punitive award is so "grossly excessive" as to violate the Due Process Clause, Waters-Pierce Oil Co. v. Texas (No. 1), 212 U.S. 86, 111, this Court need not, and indeed cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. It can be said, however, that a general concern of reasonableness properly enters into the constitutional calculus. See Haslip, 499 U.S., at 18. Although the parties' desire to formulate a "test" is understandable, neither respondents' proposed rational-basis standard nor TXO's proposed heightened-scrutiny standard is satisfactory. Pp. 453-458.
>
> Page 444:
>
> We agree with TXO that the emphasis on the wealth of the wrongdoer increased the risk that the award may have been influenced by prejudice against large corporations, a risk that is of special concern when the defendant is a nonresident. We also do not understand the reference in the instruction to "additional compensation." We note, however, that, in Haslip, we referred to the "financial position" of the defendant as

one factor that could be taken into account in assessing punitive damages, see n. 28, supra. We also note that TXO did not squarely argue in the West Virginia Supreme Court of Appeals that these aspects of the jury instruction violated the Due Process Clause, see Brief for Appellant in No. 20281 (W.Va.Sup.Ct.), pp. 44-48,[fn30] possibly because many States permit the jury to take account of the defendant's wealth.[fn31] Because TXO's constitutional attack on the jury instructions was not properly presented to the highest court of the State, Bankers Life & Casualty Co. v. Crenshaw, 486 U.S. 71, 77-80 (1988), we do not pass on it.

Thus, the guideposts are a rationale to determine if the damages awarded violate the Due Process Clause. No decision has held that the wealth of the defendant is to be precluded from being introduced into evidence on this basis.

Further, in Hollock v. Erie Insurance Exchange, 842 A.2d 409 (Pa. Super. 2003), the Superior Court of Pennsylvania interpreted the decision in State Farm v. Campbell with reference to Pennsylvania law and stated:

> While we perceive of no abuse of discretion in the trial court's ruling based upon its specific findings, we must nevertheless undertake further review of the award to determine whether it comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. While a decision to punish a tortfeasor by exacting punitive damages is an exercise of State power, it must nevertheless comply with constitutional due process concerns. Pioneer Commercial Funding Corp. v. American Financial Mortg. Corp., 797 A.2d at 292. "Because punitive damages pose an acute danger of arbitrary deprivation of property, due process requires judicial review of the size of punitive damage awards." Id.
>
> ¶ 34 In State Farm v. Campbell, 123 S.Ct. 1513, the United States Supreme Court reviewed a $145 million punitive damages award. Finding that the award was excessive and disproportionate to the wrong committed, the Court ruled it constituted an unconstitutional deprivation of the insurer's property. The Court noted that, although states possess discretion over the imposition of punitive damages, there are procedural and substantive constitutional limitations on these awards. Id. at 1519.
>
> The Court cautioned that the due process clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments. Id. at 1520. While finding that punitive damages are aimed at deterrence and retribution, id. at 1519, the United States Supreme Court advised reviewing courts to consider three guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the

disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Id. at 1520, (citing BMW of North America, Inc. v. Gore, 517 U.S. 559, 560-61 (1996)).

Thus, these guideposts provide a rationale to determine if the damages awarded viloat the Due Process Clause. No decision has held that the wealth of the defendant is to be precluded from being introduced into evidence on this basis.

Additionally, MetLife is a recidivist, and the evidence that this activity of deceptive sales practices was deliberate and done on a national basis permits the introduction of evidence of MetLife's net worth as an element to take into consideration to assist the jury in its deliberation. Thus, "**if punitive damages are to continue to serve the broader functions of deterrence and retribution, the defendant's wealth must be a consideration in calculating any award.**" BMW of North America, Inc. v. Gore, 517 U.S. 599 (1996). As such, evidence of MetLife's net worth is properly admissible.

MetLife also argues that the evidence of net worth is prejudicial. The Advisory notes to the Federal Rules of Evidence define prejudice as ". . . an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." See Advisory Committee Note to Rule 403; See also U.S. v. Rutland, 372 F.3d 543 (3d Cir. 2004); See also Commonwealth v. Palmer, 700 A.2d 988, 992-993 (Pa. Super. 1997)(Emphasis added)( "As **this court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendants is charged.**").

Just because the evidence is prejudicial to the Defendants, does not prevent the admission

of the evidence to prove the elements of negligence and fraud as well as aid in establishing the credibility of the parties. Evidence is not prejudicial for purposes of Rule 403 merely because it is "detrimental to a party's case." The United States Court of Appeals for the Third Circuit in U.S. v. Driggs, 823 F.2d 52 (3rd Cir. 1987), addressed the probative value of allegedly prejudicial evidence of a comprehensive scheme and determined that its probative value generally outweighs the risk of prejudice where a jury, such as the one in the present case, can "compartmentalize" the information. The Third Circuit Court of Appeals stated:

> We find nothing unfairly prejudicial about showing that the charged conduct was part of a comprehensive scheme. If the government is not permitted to show that Traitz gave cash gifts to other judges, it becomes much more difficult for it to prove that he was paying Driggs because of his status as a judge — an essential element of a Hobbs Act violation.
>
> As for the risk of confusing the jurors, we believe that this is the type of case where a jury could be expected to compartmentalize the evidence and consider it for its proper purposes. See United States v. Dansker, 537 F.2d 40,62 (3rd Cir.), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d
> 748 (1976).

Id,; see also Whistler Sportswear, Inc. v. Rullo, 433 A.2d 40,47 (Pa. Super 1981)(interpreting Pennsylvania's Rule 403 that is based on Federal Rule 403). In the instant case, for the evidence to be unduly prejudicial, MetLife must demonstrate not only that the evidence was prejudicial, (since all evidence that demonstrates fraud is prejudicial), it must demonstrate that "the challenged evidence is so *unfairly* prejudicial that its inflammatory nature makes its probative value *de minimus*. See Com. v. Peer, 684 A.2d 1077 at 1083 (Pa. Super. 1996) (emphasis in the original). As the Pennsylvania Supreme Court stated in Com. v. Wharton, 607 A.2d 710, 720 (Pa. 1992), a trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form a part of the history and natural development of the events and offenses with

which the defendant is charged."

The U.S. Supreme Court held in TXO that the defendant's unlawful out-of-sate conduct was admissible for consideration by the fact finder, stating:

> TXO also contends that the admission of evidence of its alleged wrongdoing in other parts of the country, as well as the evidence of its impressive net worth, led the jury to base its award on impermissible passion and prejudice. Brief for Petitioner 22-23. **Under well-settled law, however, factors such as these are typically considered in assessing punitive damages.** Indeed, the Alabama factors **we approved in Haslip included both**. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21-22 (1991) ("(b) . . . the existence and frequency of similar past conduct; . . . **(d) the 'financial position' of the defendant").**

TXO, 509 U.S. at 462, fn28. (Emphasis added). The decision in Haslip, cited in TXO, is referenced with approval in the Pennsylvania Suggested Standard Civil Jury Instructions. See Chapter XIV Punitive Damages, p.9. ("Although Haslip dealt with an Alabama punitive damage award, the opinion provides guidance in assessing punitive damage awards under Pennsylvania law").

In sum, evidence of MetLife's financial worth is not unduly prejudicial and is instead, relevant, material and is admissible.

## CONCLUSION

For the foregoing reasons, Plaintiffs' proposed evidence should be admitted by this Court as relevant to the imposition of punitive damages against Defendant MetLife.

Respectfully submitted,

/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Emsberger, P.C.
306 Fourth Ave. - Suite 300
Pittsburgh, PA 15222
(412)391-2515   (phone)
(412)391-2762   (Fax)

## CERTIFICATE OF SERVICE

I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the foregoing Brief Response to Defendants' Motion in Limine was served upon the below listed counsel via the electronic filing system on the 13th day of October, 2006.

B. John Pendleton, Jr., Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973)622-4444

/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Emsberger, P.C.
Union Bank Building - Suite 300
306 Fourth Ave.
Pittsburgh, PA 15222
(412) 391-2515   (phone)
(412) 391-2762   (Fax)