IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT G. WYCKOFF | ) | Civil Action No. 00-2248 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Chief Judge Donetta W. Ambrose |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY and KENNETH F. KACZMAREK, | ) | |
| | ) | |
| Defendants | ) | |

---

**PLAINTIFF'S BRIEF IN RESPONSE TO METROPOLITAN LIFE INSURANCE COMPANY'S MOTION IN LIMINE TO EXCLUDE EXHIBITS 107 AND 108**

---

**PRELIMINARY STATEMENT**

In this Motion in Limine, Defendants argue that evidence of internal audits done of MetLife sales practices submitted in July 19, 1996, Exhibit 107, and December 4, 1998, Exhibit 108 are evidence of subsequent remedial measures, other "bad acts" committed by MetLife and are hearsay. These same documents were the subject of a Motion in Limine by Defendant MetLife in **Solarchick v. MetLife**, Civ Div No. 01-444, wherein this Court determined that the July 19, 1996 was admissible as it "speaks of 'serious concerns . . .with regard to the fulfillment of IB E & C's mission to ensure that business practices employed by the Career Agency Sales force are ethical, fair and in full compliance with all applicable laws and regulations." See May 12, 2006 Opinion and Order of Court in **Solarchick**. It is Plaintiff's position that both documents are relevant and admissible. Indeed, they are both business records of MetLife and are subject to the business records exception of the hearsay rule.  See F.R.E. 803(6).

Exhibits 107 and 108 are necessary for plaintiff's ability to offer evidence in rebuttal of MetLife's defense that because an enhanced compliance program was instituted in 1994 the sales practices problems were eliminated and no liability should be found as well as no punishment damages should be awarded. However, the Audits demonstrate the exact opposite occurred.

Exhibit 107 demonstrates that the enhanced compliance program was not working. For example, stated in the Conclusions section of the Audit Report is the following finding:

> Serious concerns were raised with regard to the fulfillment of IB E&C's [Individual Business - Ethics and Compliance] mission to ensure that business practices employed by the career Agency sales force are ethical, fair and in full compliance with all applicable laws and regulations. With specific regard to new business policy transactions, actions taken by IB E&C do not adequately safeguard the financial welfare of policy owners. For example, recommended corrective action plans are not always adhered to when an ATR [Additional Transaction Review] raises questions regarding the original policy transaction. IB E&C does not ensure compliance with all regulatory disclosure law or evaluate the potential repercussions of unapproved sales materials.

See Exhibit 107, p.2, Bates No. MP925000017437.

In the instant case, Robert Wyckoff was sold policies that negatively affected his financial welfare through the use of unethical sales tactics that were not in full compliance with all applicable laws and regulations. Exhibit 107 demonstrates that this was an ongoing problem of MetLife that continued after the sales to Plaintiff in 1991 and 1994.

Exhibit 108 is an Audit of Policy Illustrations - Compliance submitted December 4, 1998 and demonstrates that there are "significant concerns" over the misuse of sales illustrations. For example, in the OPINION/CONCLUSION section of the Audit is the following finding:

> There are significant concerns with the controls over the following areas of the sales illustration process:
>
> \*   the Company does not ensure that all account representatives are

        using the most current version of sales illustration software;

* signed illustrations are not reviewed to ensure that illustrations used are current or that the preparation date of the signature page is consistent with the other pages;

* follow-up to ensure the receipt of outstanding illustrations is not effective;

* changes made to illustration software, and the authorization of those changes, were not always documented.

See Exhibit 108, p.2, Bates No. MP9250000156671.

Again, MetLife offers as a defense that the use of the NAIC model by MetLife assists in eliminating any misuse of sales illustrations. However, the Audit demonstrates otherwise.

Indeed, MetLife's expert's consistently opine that the institution of the enhanced compliance program in 1994 is the one of the reasons why no punitive damages should be awarded in these cases.[1] Evidence of how the old compliance program and how the enhanced compliance programs functioned is relevant and admissible to proof of plaintiffs claims for liability and punitive damages.

## ARGUMENT

Exhibits 107 and 108 cannot realistically be considered evidence of subsequent remedial action by MetLife, and is therefore not excludable under Rule 407. To the contrary, at best, the Audits were performed in the regular course of business of MetLife. Additionally, MetLife intends to introduce evidence that an Enhance Compliance program was instituted in February of 1994 that increased MetLife's ability to monitor its sales force. MetLife does not admit that the prior

---

[1] Whether punitive damages should be awarded is not a proper area of opinion by MetLife's expert since it invades the province of the jury's decision making process as to one of the ultimate issues in the case; was defendants' conduct outrageous and should defendants be punished based on their conduct.

compliance program was a failure, rather they argue that the prior program was good and the enhanced program is better. In reviewing the admissibility of post-event tests of reports, such as the Audits of MetLife, the Tenth Circuit in **Rocky, Helicopters v. Bell Helicopters**, 805 F.2d 907, 918 (10th Cir. 1986), held that they were admissible since excluding the reports creates "the danger of depriving 'injured claimants of one of the best and most accurate sources of evidence and information.'" The Tenth Circuit Curt held:

> It would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports. It might be possible in rare situations to characterize such reports as "measures" which, if conducted previously, would reduce the likelihood of the occurrence. Yet it is usually sounder to recognize that such tests are conducted for the purpose of investigating the occurrence to discover what might have gone wrong or right. Remedial measures are those actions taken to remedy any flaws or failures indicated by the test. . . .
>
> We believe that the policy considerations that underlie Rule 407, such as encouraging remedial measures, are not as vigorously implicated where investigative tests and reports are concerned. To the extent that such policy concerns are implicated, they are outweighed by what the Westmoreland court referred to as the danger of depriving "injured claimants of one of the best and most accurate sources of evidence and information." 601 F. Supp. at 68.

**Id**., 805 at 918.

Additionally, since Mr. Wyckoff's policies were sold policies in both 1991 and in 1994, evidence of how the old compliance program used in 1991 and how the enhanced compliance program used after February 1994 functioned is relevant and admissible to proof of plaintiffs claims for liability and punitive damages. **see Wigmore on Evidence Chapter 13, Other Offenses or Similar Acts, as Evidence of Knowledge, Design, or Intent, § 302. Theory of Evidencing Intent**. p, 245, ftnt1 ("Where other acts are offered as evidentiary of intent under the rule heretofore mentioned, it matters not whether they are subsequent or prior in time. Regina v. May, 1 Cox Cr. 236

(1845); Shreve v. United States, 103 F.2d 796 (9 Cir., 1939).").

Evidence demonstrating MetLife's knowledge of the use and continued of the sales methods regarding the sale of policies through the use of the "vanishing" premium scheme is directly relevant to the issue of whether Defendants' conduct was egregious. As the United States Supreme Court has determined:

> **Certainly, evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law.** See [TXO] id., at 462, n. 28. Our holdings that **a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance.** See Gryger v. Burke, 334 U.S. 728, 732 (1948).

BMW v. Gore, 517 U.S. 559 at 576-77 (emphasis added).

In TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 462, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), the United States Supreme Court addressed the relevancy and admissibility of similar improper out-of-state business conduct. If out-of-state business conduct is relevant to the harm suffered by the plaintiff, so is in-state improper business conduct. Thus, this out-of-state and in-state unlawful conduct properly may be considered by a jury in the context of imposing punitive damages. The U.S. Supreme Court held in TXO that the defendant's unlawful out-of-sate conduct was admissible for consideration by the fact finder, stating:

> **TXO also contends that the admission of evidence of its alleged wrongdoing in other parts of the country**, as well as the evidence of its impressive net worth, led the jury to base its award on impermissible passion and prejudice. Brief for Petitioner 22-23. **Under well-settled law, however, factors such as these are typically considered in assessing punitive damages.** Indeed, the Alabama factors **we approved in Haslip included both**. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21-22 (1991) ("**(b) . . . the existence and frequency of similar past conduct**; . . . (d) the 'financial position' of the defendant").

TXO, 509 U.S. at 462, fn28. (emphasis added). The decision in Haslip is referenced with approval in the Pennsylvania Suggested Standard Civil Jury Instructions. See Chapter XIV Punitive Damages, p.9. ("Although Haslip dealt with an Alabama punitive damage award, the opinion provides guidance in assessing punitive damage awards under Pennsylvania law").

Furthermore, the holding in TXO was not altered by the decision in State Farm v. Campbell, 538 U.S.408,123 S.Ct. 1513, 1522 (2003)("**...[O]ut-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious**, but that conduct must have a nexus to the specific harm suffered to the plaintiff.")(emphasis added).

MetLife's interpretation of F.R.E. Rule 407 strains the underlying purposes of Rule 407. Such a broad interpretation of the Rule should be rejected by this Court.

## II.  THE PROPOSED EVIDENCE IS RELEVANT TO THIS CASE.

### A.  Relevancy of Evidence under Rule 401 and 406.

As previously discussed, the documents are relevant to establish MetLife's knowledge and intent, as well as whether defendants conduct was outrageous for consideration of an award of punitive damages.

"Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 402." Garvey v. Dickinson College, 763 F. Supp. 799, 801 (M.D.Pa. 1991).

In the instant case, Plaintiff must prove knowledge and intent of the defendants. See Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999)(intent is an element of a claim for fraudulent

misrepresentation). Where knowledge and intent must be proven, pattern and practice evidence is admissible. See Com. of Pa. v. Porter, 659 F.2d 306 at 320 (3d Cir.1981), finding under the Federal Rule of Evidence Rules 404(b) and 406 that the admission of business practices evidence is permitted, holding :

> . . . **Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization." This ruling was correct.**

Also, "[a] fraudulent intention at the time of a transaction can be inferred from the totality of the circumstances surrounding the transaction, **including subsequent conduct on the part of the defendant**." Stauffer v. Stauffer, 351 A.2d 236, 244 (Pa. 1976)(emphasis added).

Reliance on FRE 406 is necessary only where a litigant seeks to prove conduct on a specific occasion by evidence of routine practice. Where a litigant seeks to prove a pattern or practice that has independent relevance, such evidence is admissible under FRE 401. See Pennsylvania v. Porter, 659 F.2d 306, 320 (3d Cir. 1981) (in litigation seeking equitable relief, evidence of pattern of constitutional violations by police is admissible; court erroneously cites FRE 406), cert. denied, 458 U.S. 1121. United States v. Santa, 180 F.3d 20, 29 (2d Cir. 1999) (practice of police department supported court finding that it returned to village court a request to vacate warrant).

Although there are no "precise standards" for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: "adequacy of sampling and uniformity of response." Fed.R.Evid. 406, advisory committee's notes; McWhorter v. Birmingham, 906 F.2d 674, 679 (11th Cir. 1990). Therefore, the evidence should be admitted in this case as it was admitted previously in the Tran and Solarchick cases.

### B. The Audit Reports are Probative to Proof of Plaintiff' Claims.

The Third Circuit has addressed the value of allegedly prejudicial evidence of a comprehensive scheme and determined that its probative value generally outweighs the risk of prejudice where a jury, such as the one in the present case, can "compartmentalize" the information. In U.S. v. Driggs, 823 F.2d 52 (3d Cir. 1987) the Third Circuit Court of Appeals stated:

> We find nothing unfairly prejudicial about showing that the charged conduct was part of a comprehensive scheme. If the government is not permitted to show that Traitz gave cash gifts to other judges, it becomes much more difficult for it to prove that he was paying Driggs because of his status as a judge — an essential element of a Hobbs Act violation.
>
> As for the risk of confusing the jurors, we believe that this is the type of case where a jury could be expected to compartmentalize the evidence and consider it for its proper purposes. See United States v. Dansker, 537 F.2d 40,62 (3rd Cir.), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1976).

Id.

There is no merit to Defendants argument that the admission of this testimony and the documents in his possession would violate Pa.R.E. 403. To the contrary, evidence is not prejudicial for purposes of Rule 403 merely because it is 'detrimental to a party's case." See Whistler Sportswear, Inc. v. Rullo, 433 A.2d 40,47 (Pa. Super 1981). The Superior Court has further stated that the exclusion of relevant evidence as prejudicial is only necessary where the evidence would:

> inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendants is charged.

Commonwealth v. Palmer, 700 A.2d 988, 992-993 (Pa. Super. 1997).

Plaintiff must prove that MetLife knew about not only the activity of its employee sales agents for some time, but also the regular business practices used by its employee sales agents and

should have been more responsive to the situation. Plaintiff also have to prove that MetLife knew or should have known of the necessity and opportunity for exercising such control. To meet this required showing, Plaintiff must establish that the Defendants had some form of notice. Thus, it is important for Plaintiff to demonstrate that other incidents of the use of the same sales practices has occurred involving other sales agents who may have been similarly situated within MetLife and MetLife took no effective action to stop such conduct, or indeed, approved of the conduct.

The business practices and knowledge of MetLife itself are at issue, since MetLife is also a defendant, along with the manner in which it supervised its employees. The inability to present any evidence of the business practices and knowledge of MetLife itself would prejudice and harm Plaintiff' proof of their claims as to liability against MetLife regarding its business practices and how they directly relate to the sale of the polices to Plaintiff.

This principal of permitting evidence of the business practices in fraud cases is based upon the concept that evidence of similar business practices evidence is admissible to prove a course of conduct, if the evidence falls into one of five exceptions to the general rule that this evidence is inadmissible because it generally is prejudicial. The five exceptions are: "(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial — in other words, where there is such a logical connection between the [frauds] that proof of one will naturally tend to show that the accused is the person who committed the other." See Commonwealth v. Peterson, 307 A.2d 264 (Pa.1973); see also Commonwealth v. Marsh, 566 A.2d 296 (Pa. Super. 1989); citing Commonwealth v. Clayton, 532 A.2d 385, 392 n.8 (Pa. 1987).

All five of these exceptions exist in the evidence that Plaintiff seeks to offer at trial. The Pennsylvania Supreme Court in Commonwealth v. Peterson, further held that where evidence relates **to any one of these five issues** it is admissible: **"When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value."** Id. at 307 A.2d 264 at 269-270 (Emphasis added).

Further, there is a procedure for resolving any possibility of confusion or misunderstanding of the jury as to purpose of the admission of the evidence. Any possible misunderstanding can be clarified through instructions by the trial court. If evidence is admissible for one purpose, but not for another, the trial judge should instruct the jury on the restricted purpose for which the evidence has been admitted. F.R.E. 105 requires the judge to give such and instruction if a party requests it. A party should request that instructions be given to insure that the jury make the proper use of the evidence and that it is not used for an improper purpose. This exact issue was also discussed and explained in Commonwealth v. Peterson, and the Pennsylvania Supreme Court held that any possible confusion of the purpose for the admission of the prior bad acts or any possible prejudice that might be caused thereby could be explained and clarified through cautionary charges by the trial court:

> The trial judge informed the jury at the outset that they were in effect trying two separate cases at one time and for this reason would have to pay especially close attention to the evidence so as to be able to properly segment it. **At the close of trial an extensive cautionary instruction was given which again directed the jury to confine the relevant evidence to each offense. This instruction was precise and unassailable.**

Commonwealth v. Peterson, 307 A.2d 264 at 271.

Moreover, the evidence is relevant to establish defendants' outrageous conduct. See BMW v. Gore, 517 U.S. 559 at 576-77 and discussion thereon, supra.

IV.   **THE DOCUMENTS ARE BUSINESS RECORDS AND ARE ADMISSIBLE**.

Defendants cite to no caselaw in support of the premise that the business records of MetLife are inadmissible hearsay. They only reference generically to Federal Rule of Evidence 801 and 803(6). As the Audits objected to by the Defendants are not privileged and are admissible under the Business Records Exception to the hearsay rule, the fact that the Audits were made at or near the time of the events to which it purports to relate; generated as a regular practice of the business; and trustworthy as to the source of information or the method or circumstances of preparation, these business records of MetLife are clearly admissible.

The justification for the business records exception rests on the assumption that business records are reliable because they are created on a day-to-day basis and "[t]he very regularity and continuity of the records are calculated to train the recordkeeper in habits of precision." McCormick on Evidence § 286 5th ed.). The business records exception to the hearsay rule applies only if the person who makes the statement "is himself acting in the regular course of business." Florida Canal Industries, Inc. v. Rambo, 537 F.2d 200, 202 (5th Cir. 1976).

In U.S. v. Pelullo, 964 F.2d 193 (3d Cir. 1992), the United States Court of Appeals for the Third Circuit addressing Rule 803(6) explained when business records are admissible:

> The business records exception permits admission of documents containing hearsay provided foundation testimony is made by `the custodian or other qualified witness,' that: (1) the declarant in the records had personal knowledge to make accurate statements; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made the record in the regular course of the business activity; and (4) such records were regularly kept by the business.

Id. at 200.

The documents meet all four requirements: (1) the internal Audits were created by MetLife

and produced in discovery, the internal Audits were made by the auditors based upon their personal knowledge; 2) the auditors authored the internal Audits as part of their regular job upon completion of their investigation; (3) the internal Audits were made in the regular course of business; and (4) MetLife regularly keeps records of internal Audits in the regular course of business - they are required to be kept by every Insurance Department in the country.

Additionally, the internal Audits should be admissible under either Rule 801(d)(2)(A) (statement by a party offered against that party) or Rule 803(6) (business records exception). The internal Audits are made by employees of MetLife concerning events that took place in the company and recorded by management for its use and also comprises a statement of MetLife offered against MetLife. Therefore, the internal Audits are admissible as a business record.

The basic requirements (regular business with regularly kept record; source with personal knowledge; record made in a timely fashion; foundation testimony) are enough in the run of cases to justify the conclusion that the record is trustworthy. The phrasing of the exception points toward this conclusion: It applies unless problems of trustworthiness appear. The objecting party bears the burden of raising the trustworthiness issue and showing the record is untrustworthy. Shelton v. Consumer Products Safety Commission, 277 F.3d 998, 1109 (8th Cir. 2001) (in enforcement suit against maker and importer, admitting private laboratory report to show that fireworks were banned hazardous substances; **party objecting to evidence fitting exception bears burden of raising trustworthiness issues and showing that record is untrustworthy**)(emphasis added).

In Hertz v. Luzenac America, Inc., 370 F.3d 1014 (10th Cir. 2004), the Tenth Circuit set forth the necessary indicia of trustworthiness for a document to be admitted as a business record, holding: "We have identified several factors that relate to trustworthiness: (1) the business significance of the

document outside the litigation context, (2) the level of experience of the preparer in creating such documents, and (3) the neutrality of the preparer." Id. at 1020; see also 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 450, at 534-36 (2d ed. 1994) (listing as factors showing trustworthiness "extent to which the matter recorded is important to the business outside the context of litigation," experience of preparer, and absence of motive on behalf of preparer).

Again, instantly all of the elements exist as to the evidence; (1) there is business significance of the internal Audits outside of the litigation since it is presumed that MetLife Senior Management would want to know about problems with sales methods; (2) the Auditors were hired and trained by MetLife to perform the internal audits and therefore qualified to do so; and (3) the Auditors were working as employees of MetLife and not in preparation for litigation.

Although satisfying the basic requirements brings the exception into play, many more decisions cite trustworthiness as a reason to admit records than untrustworthiness as a reason to exclude. Many factors support a finding of trustworthiness: Foremost among them is the extent to which the matter recorded is important to the business outside the context of litigation. United States v. Frazier, 53 F.3d 1105, 1110 (10th Cir. 1995) (**audit report having use in areas other than suit and prepared by neutral party**); Coates v. Johnson & Johnson, 756 F.2d 524, 549-550 (7th Cir. 1985) (disciplinary memoranda kept for routine business purpose). A point that is especially persuasive if the report was acted on in some serious, costly, or elaborate way that tends to verify the point it is offered to prove. Matador Drilling Co. v. Post, 662 F.2d 1190, 1198-1199 (5th Cir. 1981) (oil drilling rig reports, relied on for payroll); United States v. Ullrich, 580 F.2d 765, 771-772 (5th Cir. 1978) (inventory schedule used to keep track of collateral in floor-plan financing).

The fact that a record was prepared with no eye toward litigation counts. See Selig v. United

States, 740 F.2d 572, 578 (7th Cir. 1984); Tupman Thurlow Co. v. S.S. Cap Castillo, 490 F.2d 302, 310 (2d Cir. 1974).  Also tending to show trustworthiness is the fact that a record was prepared by trained or experienced people. American Intl. Pictures, Inc. v. Price Enters., Inc., 636 F.2d 933, 935 (4th Cir. 1980) (reports by checkers surveying attendance at movie theaters; officers detailed procedures for selecting, training, and supervising checkers), cert. denied, 451 U.S. 1010; United States v. Stonehouse, 452 F.2d 455, 459 (7th Cir. 1971)(cable diagrams; likelihood of misunderstanding or misdescription was remote).

Independent corroborative evidence helps too. Extensive corroboration supports an inference that the record as a whole is trustworthy, and specific corroboration of the point the record is offered to prove also alleviates trustworthiness concerns. See United States v. Cincotta, 689 F.2d 238, 243 (1st Cir. 1982) (admitting driver notebook; delivery tickets signed by commercial customers corroborated notebook), cert. denied, 459 U.S. 991; United States v. Wigerman, 549 F.2d 1192, 1193-1194 (8th Cir. 1977) (admitting records of motel registrations, car rentals, airline shipments; witnesses corroborated documents).

F.R.E. Rule 404(b)(2) also permits the introduction of evidence of prior acts on the part of a party where those acts may demonstrate "**proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,** . . .". [Emphasis added].

Particularly instructive is the case of Rosenburg v. Lincoln American Life Ins. Co., 883 F.2d 1328 (7th Cir. 1989), where the defendant life insurance company sales agents were routinely as a business practice misrepresenting that Lincoln was providing guaranteed coverage.  Evidence of other examples of the same sales practices was permitted. "A Lincoln Administrative Assistant, testified that the company was aware that agents had represented that Lincoln was providing

guaranteed coverage to dependents in other cities and had compiled a list of cities where such "misrepresentations" had occurred." Id. at 1331. Lincoln objected to this testimony of statements made to others outside of the individual sale and Mr. Rosenburg's presence regarding Lincoln's program in Granite City and other cities in Indiana claiming that these statements were irrelevant, prejudicial and inadmissible under Fed.R.Evid. 404(b) as evidence of other wrongs or bad acts.

The District Court and the Seventh Circuit both rejected the insurer's arguments and concluded the evidence was relevant and admissible under F.R.E. 406. The Seventh Circuit in permitting the evidence of other sales and bad acts held:

> **There was sufficient evidence of such a routine practice by Lincoln agents such that the testimony in question was properly admissible under Fed.R.Evid. 406 to establish that Lincoln acted in conformity with its routine business practice in this instance.**[fn5] See G.M. Brod & Co. v. U.S. Home Corp., 759 F.2d 1526, 1533 (11th Cir. 1985).

Rosenburg, at 1336.

In another case where another life insurance company was sued for fraudulent business practices and pattern and practice evidence was permitted under F.R.E. Rule 406, in Brennan v. The Paul Revere Life Insurance Company, Case No. 00 C 0725 (N.D. Ill. 2002), in denying the insurer's motion in limine to preclude evidence of other similar acts and business practices the District Court held, "Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line." See Exhibit 1 a copy of the Brennan opinion. In Brennan, the Plaintiff offered evidence that the insurance company had a business practice to target high amount claims and Defendants sought through fourteen motions in limine to restrict Plaintiff's evidence.

Similarly, to the instant motion filed by MetLife seeking to limit any evidence outside of the first hand knowledge of the individual sale, the insurer in Brennan filed the same motion. "Their third motion in limine seeks to exclude the testimony of Dr. William Fiest, a former Provident medical director, concerning that company's policies. Defendants argue that Brennan's claims concern defendants' handling of his particular insurance claim, and not how they may have handled other claims made by other people at other times." Id. The District Court rejected this motion, holding:

> **Some of the evidence offered by Brennan tends to show the existence of a regularly-followed policy or practice that is sufficiently routine and "automatic" to permit its admission under Rule 406 as construed in Simplex and Rosenburg.** Specifically, plaintiff has direct evidence consisting of the testimony of Dr. William Fiest, a former Vice President and Medical Director of Paul Revere, that that company had a policy of targeting for termination certain types of high-level disability insurance claims (including those of the type made by Brennan) and then marshaling evidence to support the termination, rather than dealing with the claims fairly. Though, as defendants point out, Fiest left Paul Revere before the time period when Brennan's benefits were terminated, **plaintiff has sufficient evidence of the continuation of this policy or practice into the relevant time period, including the period after Paul Revere was acquired by Provident, to provide an adequate foundation for a reasonable inference that it did in fact continue. Plaintiff likewise as sufficient circumstantial evidence to permit a reasonable inference that the policy was followed in his particular case. Though defendants dispute this evidence and the inferences to be drawn from it, those are matters for the jury; Brennan has laid an adequate foundation for admission of this evidence.** Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line.

Id. (emphasis added). Likewise, in the instant case, Plaintiff seek to introduce relevant evidence to establish liability of the injury caused by MetLife's business practices.

Just because the evidence of the custom, habit and business practice demonstrates that negligent and/or fraudulent conduct took place as a regular business practice does not mean that it

is prejudicial to the Defendants, nor does this prevent the admission of the evidence to prove the elements of negligence and fraud as well as aids in establishing the credibility of the parties. **See Rohm and Haas Co. v. Continental Cas. Co.**, 781 A.2d 1172 at 1179 fn6 (Pa. 2001) (circumstantial evidence of a pattern of conduct was permissible to establish proof of intent. "While a single isolated incident of some event followed by a second event may render tenuous an inference that the first event caused the second, a series of such incidents accompanied by other circumstantial evidence may result in a much more compelling conclusion."); **General Equipment Manufacturers v. Westfield Insurance Co.**, 635 A.2d 173, 185 (Pa. Super. 1993)("evidence of similar acts or transactions is admissible when relevant to prove an issue in the case. Accordingly, evidence of a course of conduct or dealing followed by a person may be admitted to prove that he acted in accordance with it on a given occasion, provided such a course of conduct or dealing is shown to have been continuous and systematic.").

Similarly with MetLife, Plaintiff must prove that MetLife knew about not only the activity of its employee sales agents for some time, but also the regular business practices used by its employee sales agents and should have been more responsive to the situation. Plaintiff also have to prove that MetLife knew or should have known of the necessity and opportunity for exercising such control. To meet this required showing, Plaintiff must establish that the Defendants had some form of notice. Thus, it is important for Plaintiff to demonstrate that other incidents of the use of the same sales practices has occurred involving other sales agents who may have been similarly situated within MetLife and MetLife took no effective action to stop such conduct, or indeed, approved of the conduct.

The business practices and knowledge of MetLife itself are at issue, since MetLife is also a

defendant, along with the manner in which it supervised its employees. The inability to present any evidence of the business practices and knowledge of MetLife itself would prejudice and harm Plaintiff' proof of their claims as to liability against MetLife regarding its business practices and how they directly relate to the sale of the polices to Plaintiff.

Accordingly, the 1996 and 1998 Audits demonstrate the necessary trustworthiness and should be admitted into evidence

## CONCLUSION

For all the foregoing reasons, Defendants Motion in Limine should be denied

Respectfully Submitted,


/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Ernsberger, P.C.
306 Fourth Ave. - Suite 300
Pittsburgh, PA 15222
(412) 391-2515  (phone)
(412) 391-2762 (fax)

## CERTIFICATE OF SERVICE

I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the within Plaintiff' Memorandum of Law in Response to Defendants' Motion In Limine was served upon the below listed counsel and parties by U.S. First Class mail, postage pre-paid on the 16th day of October, 2006.

B. John Pendleton, Jr., Esquire
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101-0652

                                                   /s/Kenneth R. Behrend
                                                   Kenneth R. Behrend
                                                   PA I.D. # 37961
                                                   Behrend and Emsberger, P.C.
                                                   Union Bank Building  - Suite 300
                                                   306 Fourth Ave.
                                                   Pittsburgh, PA 15222
                                                   (412) 391-2515   (phone)
                                                   (412) 391-2762   (Fax)