IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT G. WYCKOFF, | ) | Civil Action No. 00-2248 |
| | ) | |
| Plaintiff, | ) | Chief Judge Donetta W. Ambrose |
| | ) | |
| v. | ) | |
| | ) | |
| METROPOLITAN LIFE INSURANCE COMPANY and KENNETH F. KACZMAREK | ) ) | |
| | ) | |
| Defendants | ) | |

---

**PLAINTIFF'S REPLY TO DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S AND KENNETH F. KACZMAREK'S MOTION IN LIMINE TO EXCLUDE IRRELEVANT EXHIBITS 22, 66-77, 79-91, 93**

---

**PRELIMINARY STATEMENT**

Plaintiff must prove MetLife's motive and intent, as well as knowledge and awareness that the dividend rates projected in the sales illustrations were going to fail and that MetLife knew this fact years prior to the sales in the instant case.

Plaintiff seeks to introduce these business records of MetLife as evidence in support of establishing the context of MetLife's knowledge, intent and corporate culture which permitted this business practice of selling life insurance policies by misrepresenting the actual cost of the policies. The evidence demonstrates that MetLife is liable for the misrepresentations as to the performance and cost of the Whole Life life insurance policies sold in 1991 and 1994 and that MetLife knew of this problem with APP sales and declining dividends years before the sales in this case.

The testimony of the former and current MetLife executives, as well as the documents sought to be introduced by the plaintiffs, are relevant to the plaintiffs' claims and should be admitted by this

Court as they were admitted in the <u>Tran</u> case.

## ARGUMENT

**I.  THE DIVIDEND EXHIBITS ARE RELEVANT TO THE LITIGATION AS THEY GO TO THE HEART OF THE MISREPRESENTATIONS RELATED TO THE USE OF METLIFE'S APP.**

This case involves the sale of two whole life policies, one in 1991 and one in 1994 to Plaintiff, pursuant to Metropolitan Life's Accelerated Payment Plan, more commonly known within the insurance industry as "vanishing" premium sales. Plaintiff asserts that documents discussing MetLife's awareness of problems with supporting the payment of dividend scales used in APP sales illustrations is relevant and material evidence in support of Plaintiff's claims. See <u>Wigmore on Evidence</u> Chapter 13, Other Offenses or Similar Acts, as Evidence of Knowledge, Design, or Intent, § 302. Theory of Evidencing Intent. p, 245, ftnt1 ("Where other acts are offered as evidentiary of intent under the rule heretofore mentioned, it matters not whether they are subsequent **or prior in time**. <u>Regina v. May</u>, 1 Cox Cr. 236 (1845); <u>Shreve v. United States</u>, 103 F.2d 796 (9 Cir., 1939).")(emphasis added).

Evidence demonstrating MetLife's knowledge of the use and continued of the sales methods illustrating dividend scales that would not be paid and therefore cause the cost of the policy to increase substantially over the amount represented at the time of sale through the use of the "vanishing" premium scheme is directly relevant to the issue of whether Defendants' conduct was outrageous.

The fact that MetLife was bound by Pennsylvania Insurance Regulations to illustrate <u>only</u> its current dividend rate does not mean that they were not required to represent that the cost of the policy would be greater than set forth in the sales illustration. MetLife argues next that insurance

regulations require that only currently declared dividend rates may be used in sales illustrations. MetLife's argument misses the point, that is, no insurer is permitted to misrepresent the manner in which the policy values will perform, more especially when the insurer knows before the time of sale that the projected values will not increase as represented and fail to disclose this information. MetLife's argument is without merit since, under Pennsylvania law, a cause of action for fraud can be predicated on future promises, if the defendant knew, at the time the promise was made that it would not be carried out. Specifically, in College Watercolor Group v. Wm. H. Newbauer, 360 A.2d 200 (Pa. 1976), the Pennsylvania Supreme Court held:

> Statements of intention, however, which do not, when made, represent one's true state of mind are misrepresentations known to be such and are fraudulent... This knowing misrepresentation of one's intention or state of mind is a misrepresentation of an existing fact.

Id. at 206. See Commonwealth v. Meyer, 82 A.2d 298 (Pa. Super. 1951).

Further, proof of the relation of the parties and the inference of fraud may arise from the attendant circumstances. "**A fraudulent intention at the time of a transaction can be inferred from the totality of the circumstances surrounding the transaction, including subsequent conduct on the part of the defendant**." Stauffer v. Stauffer, 351 A.2d 236, 244 (Pa. 1976) (emphasis added). Also, it is well-established that where a projection is made without a reasonable basis, that statement is fraudulent if made knowingly or recklessly. B.O. v. C.O., 590 A.2d 313 (Pa. Super. 1991); see also Moser v. DeSetta, 589 A.2d 679, 682 (Pa.1991)("By way of its recognized cause of action in fraud, the Commonwealth of Pennsylvania imposes a duty on anyone who sells products. That duty requires the seller to avoid any material misrepresentation that could induce purchasers to buy its product.").

It is well-established in Pennsylvania that where the means of obtaining the information (or verifying the truth of the representations) is not equal, the representations of the person believed to possess the superior information may be relied upon. See Sisken v. Cohen, 70 A.2d 293, 295 (Pa. 1950). Thus, there is a presumption where a financial company such as MetLife that is in a superior position of knowledge and expertise makes representations based on financial projections of the future financial performance of its insurance policies, that there is a real probability the projections of future performance will actually work. See Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir. 1985)(applying Pennsylvania law)(There is a duty by a party in a position of superior knowledge and information to assure that there was a reasonable basis for the assumptions used in a projection of future financial growth in value, prior to using the projection to induce a purchase. A disclaimer that the projection was made on a reasonable basis is insufficient since an opinion or projection, like any other representation, will be untrue if it has no valid basis).

Accordingly, when the insurer, who is in a position of superior knowledge, knows that the financial projection of future values is about to change to the disadvantage of the consumer and increase the out-of-pocket cost of the policy, that it must reveal this information so the consumer is able to make an informed decision. MetLife either intentionally or recklessly failed to disclose this material information and the asserted defense of compliance with Pennsylvania insurance regulations is meaningless since the regulations are designed to preclude misrepresentations and not shield them.

Specifically, the Pennsylvania Unfair Insurance Practices Act requires full and proper disclosure of the material terms of a policy at the time of sale, including the actual cost of the policy. Anything to the contrary is prohibited and is declared an unfair or deceptive sales practice:

(a) "**Unfair methods of competition**" and "**unfair or deceptive acts or practices**"

> **in the business of insurance** means:
>
> > (1) **Making**, publishing, **issuing or circulating any estimate, illustration**, circular, statement, **sales presentation**, omission comparison **which**:
> >
> > > (i) **Misrepresents the benefits, advantages, conditions or terms of any insurance policy**.
> >
> > (12) **Making false or fraudulent statements or representations on or relative to an application for an insurance policy,** for the purpose of obtaining a fee, commission, money or other benefit from any insurers, agent, broker or individual.

See 40 P.S. §1171.5 (emphasis added).

The evidence, case law and statutes, establishes that MetLife and its sales agent had a duty to the Plaintiff under Pennsylvania law to 1) disclose all material issues regarding the product they were selling to the Plaintiff prior to sale, under 40 P.S. §1171.5, 40 P.S. § 277 and 40 P.S. § 472 as well as 2) a duty not to misrepresent any material terms pursuant to 40 P.S. § 277 and 40 P.S. § 472 and 3) that the Plaintiff was misled and harmed by their breach of the decisional and statutorily defined duty of full and proper disclosure.[1]

In sum, the dividend exhibits are relevant and material to proof of plaintiff's claims for misrepresentation and demonstrate MetLife's indifference to consumers as well as outrageous conduct that MetLife was artificially keeping the dividend rates high in order to corner the market, and that when the dividend rates could no longer be sustained, recklessly allowed sales to continue

---

[1] Plaintiff notes that the only document MetLife specifically references as an example of the objected to documents is a one page document that references the use of FIP to monitor using policy values because of the high interest rates that existed in the 1980s. Upon review of the other documents, it appears that this one page document, Exhibit O, is not in proper context within the facts of the APP sales in this case. However, the other documents, to which MetLife objects, but fails to specifically quote or reference, do deal with and address the dividend issue and are relevant, material and admissible in support of Plaintiff's claims.

to take place based upon illustrated dividend rates that MetLife knew would not be sustained.

### III. THE EXHIBITS ARE NOT PRECLUDED BY FEDERAL RULE OF EVIDENCE 403.

There is no merit to defendants' argument that the admission of the exhibits would violate Pa.R.E. 403. The Advisory notes to the Federal Rules of Evidence define prejudice as ". . . an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." See Advisory Committee Note to Rule 403; See also U.S. v. Rutland, 372 F.3d 543 (3rd Cir. 2004); See also Commonwealth v. Palmer, 700 A.2d 988, 992-993 (Pa. Super. 1997)(Emphasis added)( **"As this court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendants is charged."**)

Despite, defendants' contention, there is little to suggest that the introduction of relevant evidence which clearly tends to show that defendants engaged in a regular practice of misrepresenting the terms of insurance policies substantially similar to those sold to the plaintiff will cause the fact finder to ignore the facts surrounding the present case and make a decision based upon his prior actions. Instead, the proffered evidence will only support plaintiff's contention that the policy was sold in the manner alleged pursuant to defendants' regular habit or practice and that MetLife was aware prior to the sale in question that consumers, like the Plaintiff, could easily be misled by the use of the term "none" on the APP illustrations and yet continued to use the term in their Illustrations.

The United States Court of Appeals for the Third Circuit has addressed the value of allegedly prejudicial evidence of a comprehensive scheme and determined that its probative value generally outweighs the risk of prejudice where a jury, such as the one in the present case, can

"compartmentalize" the information. In U.S. v. Driggs, 823 F.2d 52 (3rd Cir. 1987) the Third Circuit Court of Appeals stated:

> We find nothing unfairly prejudicial about showing that the charged conduct was part of a comprehensive scheme. If the government is not permitted to show that Traitz gave cash gifts to other judges, it becomes much more difficult for it to prove that he was paying Driggs because of his status as a judge — an essential element of a Hobbs Act violation.
>
> As for the risk of confusing the jurors, we believe that this is the type of case where a jury could be expected to compartmentalize the evidence and consider it for its proper purposes. See United States v. Dansker, 537 F.2d 40,62 (3d Cir.), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L. Ed.2d 748 (1976).

Id.

Moreover, such arguments go more to the weight accorded by the jury to this evidence rather than whether the jury should be precluded from considering it. Any potential prejudice can be cured by redacting irrelevant or unduly prejudice portions of the report and curative instructions can limit the effect and jury's use of this evidence.

Finally, the disputed evidence is admissible for the purposes of proving that the defendant agents conduct was so outrageous as to permit the recovery of punitive damages on the part of the plaintiff. The recovery of punitive damages requires that plaintiff demonstrate the nature of defendant's egregious conduct so as ro permit the fact finder to punish the defendant's conduct and deter others from similar conduct. Kirkbride v. Lisbon Contractors Inc., 555 A.2d 800 (Pa. 1989)(punitive damages awarded in Pennsylvania to punish egregious conduct and deter others from engaging in similar conduct).

The United States Supreme Court has determined that:

> **Certainly, evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law.** See [TXO] id., at 462, n. 28. Our holdings that

> **a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance.** <u>See</u> <u>Gryger v. Burke</u>, 334 U.S. 728, 732 (1948).

<u>BMW v. Gore</u>, 517 U.S. 559 at 576-77 (Emphasis added).

The Exhibits are directly relevant to the issue of whether defendants' conduct was outrageous and are not so prejudicial to the defendants so as to outweigh its relevancy on this issue.

Moreover, the exhibits are not precluded by Rule 404(b).   All of the exhibits are relevant to Plaintiff's claims to establish that MetLiff knew that the dividend rates used in the sales illustrations could not and would not be supported and therefore sold policies through misrepresentation by under-representing the true cost of the policies and did so for financial gain at the expense of the truth and to the financial harm to policyholders.  "Evidence is 'relevant' if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 402." <u>Garvey v. Dickinson College</u>, 763 F. Supp. 799, 801 (M.D.Pa. 1991).

The documents provide evidence of MetLife's corporate knowledge as to the extent of the use of the business practices, as such, the evidence is relevant under F.R.E. Rules 404(b) and 406 to the issues in this case, particularly Plaintiffs' claim for liability, since MetLife's motive, intent, opportunity, preparation, plan knowledge, or absence of mistake are all at issue.

Federal Rule of Evidence Rules 404(b) and 406 have been interpreted to permit the admission of business practices evidence.  The United States District Court for the Western District of Pa in <u>Com. of Pa. v. Porter</u>, 480 F.Supp. 686, (W.D. Pa. 1979) found:

> This suit was filed October 5, 1977.  The defendant Baranyai has throughout the trial objected to evidence of any events back of the one or two year period preceding the bringing of suit claiming that such evidence should not be permitted under the statute

> of limitations. **It should be sufficient answer that such evidence is admissible under Rule 404(b) to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization.**

<u>Com. of Pa. v. Porter</u>, 480 F.Supp. 686 at 688 (W.D. of Pa. 1979). This reasoning was upheld by the United States Court of Appeals for the Third Circuit, finding:

> . . . **Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization." This ruling was correct.**

<u>Com. of Pa. v, Porter</u>, 659 F.2d 306 at 320 (3d Cir.1981) (Citations omitted)(emphasis added); <u>see also</u>, <u>Rosenburg v. Lincoln Am. Life Ins. Co.</u>, 883 F.2d 1328, 1336 (7th Cir. 1989) (evidence admissible to establish a routine practice that defendant's agents regularly gave or were trained to "give oral assurances that insurance coverage was effective immediately despite written conditions to the contrary"); <u>United States v. Quezada</u>, 754 F.2d 1190, 1195 (5th Cir. 1985)(proper for INS agent to describe "the normal procedure followed in executing a warrant of deportation" by his agency to establish conformity with those procedures in instant case); <u>Holley v. Seminole Cty. Sch. Dist.</u>, 755 F.2d 1492, 1505 (11th Cir. 1985) (evidence that school board had not punished others who engaged in similar conduct should have been admitted); <u>Wells Fargo Business Credit v. Ben Kozloff, Inc.</u>, 695 F.2d 940, 944 (5th Cir. 1983) (placing letters in mail "may be proved by circumstantial evidence, including customary mailing practices used in the sender's business"), cert. denied, 464 U.S. 818; <u>Williams v. Anderson</u>, 562 F.2d 1081, 1086 & n. 7 (8th Cir. 1977)(evidence of prior racially discriminatory practices admissible to support inference that discrimination continued); <u>Amoco Prod. Co. v. United States</u>, 619 F.2d 1383, 1389-1390 (10th Cir. 1980) (proper under FRE

406 to receive evidence of the routine practice of the Federal Farm Mortgage Company "to reserve a one-half mineral interest in all property transferred during the relevant period" to prove that such a provision was contained in the deed in question); see also John H. Strong, McCormick on Evidence § 195 (4th ed. 1992); 1A John A. Wigmore, Evidence § 95 (Tillers rev. 1983).

Reliance on FRE 406 is necessary only where a litigant seeks to prove conduct on a specific occasion by evidence of routine practice. Where a litigant seeks to prove a pattern or practice that has independent relevance, such evidence is admissible under FRE 401. See Pennsylvania v. Porter, 659 F.2d 306, 320 (3d Cir. 1981) (in litigation seeking equitable relief, evidence of pattern of constitutional violations by police is admissible; court erroneously cites FRE 406), cert. denied, 458 U.S. 1121. United States v. Santa, 180 F.3d 20, 29 (2d Cir. 1999) (practice of police department supported court finding that it returned to village court a request to vacate warrant).

Although there are no "precise standards" for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: "adequacy of sampling and uniformity of response." Fed.R.Evid. 406, advisory committee's notes; McWhorter v. Birmingham, 906 F.2d 674, 679 (11th Cir. 1990). Therefore, the evidence should be admitted in this case as it was admitted previously in the Tran case.

F.R.E. Rule 404(b)(2) also permits the introduction of evidence of prior acts on the part of a party where those acts may demonstrate "**proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,** . . .". [Emphasis added].

Particularly instructive is the case of Rosenburg v. Lincoln American Life Ins. Co., 883 F.2d 1328 (7th Cir. 1989), where the defendant life insurance company sales agents were routinely as a business practice misrepresenting that Lincoln was providing guaranteed coverage. Evidence of

other examples of the same sales practices was permitted. "A Lincoln Administrative Assistant, testified that the company was aware that agents had represented that Lincoln was providing guaranteed coverage to dependents in other cities and had compiled a list of cities where such "misrepresentations" had occurred." Id. at 1331. Lincoln objected to this testimony of statements made to others outside of the individual sale and Mr. Rosenburg's presence regarding Lincoln's program in Granite City and other cities in Indiana claiming that these statements were irrelevant, prejudicial and inadmissible under Fed.R.Evid. 404(b) as evidence of other wrongs or bad acts.

The District Court and the Seventh Circuit both rejected the insurer's arguments and concluded the evidence was relevant and admissible under F.R.E. 406. The Seventh Circuit in permitting the evidence of other sales and bad acts held:

> **There was sufficient evidence of such a routine practice by Lincoln agents such that the testimony in question was properly admissible under Fed.R.Evid. 406 to establish that Lincoln acted in conformity with its routine business practice in this instance.**[fn5] See G.M. Brod & Co. v. U.S. Home Corp., 759 F.2d 1526, 1533 (11th Cir. 1985).

Rosenburg, at 1336.

In another case where another life insurance company was sued for fraudulent business practices and pattern and practice evidence was permitted under F.R.E. Rule 406, in Brennan v. The Paul Revere Life Insurance Company, Case No. 00 C 0725 (N.D. Ill. 2002), in denying the insurer's motion in limine to preclude evidence of other similar acts and business practices the District Court held, "Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line." See Exhibit 1 a copy of the Brennan opinion. In Brennan, the Plaintiff offered evidence that the insurance company had a

business practice to target high amount claims and Defendants sought through fourteen motions in limine to restrict Plaintiff's evidence.

Similarly, to the instant motion filed by MetLife seeking to limit any evidence outside of the first hand knowledge of the individual sale, the insurer in Brennan filed the same motion. "Their third motion in limine seeks to exclude the testimony of Dr. William Fiest, a former Provident medical director, concerning that company's policies. Defendants argue that Brennan's claims concern defendants' handling of his particular insurance claim, and not how they may have handled other claims made by other people at other times." Id. The District Court rejected this motion, holding:

> **Some of the evidence offered by Brennan tends to show the existence of a regularly-followed policy or practice that is sufficiently routine and "automatic" to permit its admission under Rule 406 as construed in Simplex and Rosenburg.** Specifically, plaintiff has direct evidence consisting of the testimony of Dr. William Fiest, a former Vice President and Medical Director of Paul Revere, that that company had a policy of targeting for termination certain types of high-level disability insurance claims (including those of the type made by Brennan) and then marshaling evidence to support the termination, rather than dealing with the claims fairly. Though, as defendants point out, Fiest left Paul Revere before the time period when Brennan's benefits were terminated, **plaintiff has sufficient evidence of the continuation of this policy or practice into the relevant time period, including the period after Paul Revere was acquired by Provident, to provide an adequate foundation for a reasonable inference that it did in fact continue. Plaintiff likewise as sufficient circumstantial evidence to permit a reasonable inference that the policy was followed in his particular case. Though defendants dispute this evidence and the inferences to be drawn from it, those are matters for the jury; Brennan has laid an adequate foundation for admission of this evidence.** Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line.

Id. (emphasis added). Likewise, in the instant case, plaintiffs seek to introduce relevant evidence to establish liability of the injury caused by MetLife's business practices.

Just because the evidence of the custom, habit and business practice demonstrates that negligent and/or fraudulent conduct took place as a regular business practice does not mean that it is prejudicial to the Defendants, nor does this prevent the admission of the evidence to prove the elements of negligence and fraud as well as aids in establishing the credibility of the parties. See Rohm and Haas Co. v. Continental Cas. Co., 781 A.2d 1172 at 1179 fn6 (Pa. 2001) (circumstantial evidence of a pattern of conduct was permissible to establish proof of intent. "While a single isolated incident of some event followed by a second event may render tenuous an inference that the first event caused the second, a series of such incidents accompanied by other circumstantial evidence may result in a much more compelling conclusion."); General Equipment Manufacturers v. Westfield Insurance Co., 635 A.2d 173, 185 (Pa. Super. 1993)("evidence of similar acts or transactions is admissible when relevant to prove an issue in the case. Accordingly, evidence of a course of conduct or dealing followed by a person may be admitted to prove that he acted in accordance with it on a given occasion, provided such a course of conduct or dealing is shown to have been continuous and systematic.").

Similarly with the MetLife cases, plaintiffs must prove that MetLife knew not only about the regular business practices used by its employee sales agents, but that MetLife should have been more responsive to the situation. Plaintiff has to prove also that MetLife knew or should have known of the necessity and opportunity for exercising such control. To meet this required showing, plaintiff must establish that the Defendants had some form of notice. Thus, it is important for plaintiff to demonstrate that MetLie knew the dividend rates illustrated to make sales would never be sustained and MetLife took no effective action to stop such conduct, or indeed, approved of the conduct.

The business practices and knowledge of MetLife itself are at issue, since MetLife is also a

defendant, along with the manner in which it supervised its employees. The inability to present any evidence of the business practices and knowledge of MetLife itself would prejudice and harm plaintiffs' proof of their claims as to liability against MetLife regarding its business practices and how they directly relate to the sale of the polices to plaintiffs.

This principal of permitting evidence of the business practices in fraud cases is based upon the concept that evidence of similar business practices evidence is admissible to prove a course of conduct, if the evidence falls into one of five exceptions to the general rule that this evidence is inadmissible because it generally is prejudicial. The five exceptions are: "(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial — in other words, where there is such a logical connection between the [frauds] that proof of one will naturally tend to show that the accused is the person who committed the other." See Commonwealth v. Peterson, 307 A.2d 264 (Pa.1973); see also Commonwealth v. Marsh, 566 A.2d 296 (Pa. Super. 1989); citing Commonwealth v. Clayton, 532 A.2d 385, 392 n.8 (Pa. 1987); Commonwealth v. Dargan, 897 A.2d 496 (Pa. Super. 2006), where the Pennsylvania Superior Court held that:

> **evidence of prior bad acts**, although generally proscribed, **is admissible "in special circumstances where the evidence is relevant for some other legitimate purpose,"** such as "to establish: 1) motive; 2) intent; 3) absence of mistake or accident; 4) a common scheme or plan**; and 5) identity. **The evidence may also be used to impeach the credibility of a testifying defendant** . . . **and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development."**

Id. at 501 (citations omitted)(emphasis added).

All five of these exceptions exist in the evidence that plaintiffs seeks to offer at trial. The

Pennsylvania Supreme Court in <u>Commonwealth v. Peterson</u>, further held that where evidence relates to any one of these five issues it is admissible: **"When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value."** <u>Id.</u> at 307 A.2d 264 at 269-270 (Emphasis added).

Moreover, there is a procedure for resolving any possibility of confusion or misunderstanding of the jury as to purpose of the admission of the evidence. Any possible misunderstanding can be clarified through instructions by the trial court. If evidence is admissible for one purpose, but not for another, the trial judge should instruct the jury on the restricted purpose for which the evidence has been admitted. F.R.E. 105 requires the judge to give such and instruction if a party requests it. A party should request that instructions be given to insure that the jury make the proper use of the evidence and that it is not used for an improper purpose. This exact issue was also discussed and explained in <u>Commonwealth v. Peterson</u>, and the Pennsylvania Supreme Court held that any possible confusion of the purpose for the admission of the prior bad acts or any possible prejudice that might be caused thereby could be explained and clarified through cautionary charges by the trial court:

> The trial judge informed the jury at the outset that they were in effect trying two separate cases at one time and for this reason would have to pay especially close attention to the evidence so as to be able to properly segment it. **At the close of trial an extensive cautionary instruction was given which again directed the jury to confine the relevant evidence to each offense. This instruction was precise and unassailable.**

<u>Commonwealth v. Peterson</u>, 307 A.2d 264 at 271.

Furthermore, in a fraudulent misrepresentation, the standards of evidence are relaxed for plaintiffs to prove their claims. As <u>Henry on Pennsylvania Evidence</u> stated:

> **The rule which excludes evidence of other acts to prove a particular act is greatly relaxed in cases of fraud.** Thus allegations of misrepresentations as to

financial condition and of conveyance of property to defraud creditors may be supported by showing similar misrepresentations to others and transfers of other property as a series of acts constituting a general scheme to defraud. And **where a conspiracy to cheat and defraud in a particular instance is charged, evidence of a scheme to cheat and defraud the public generally may be given.** If notes are alleged to have been fraudulently raised in amount, evidence of raising or of other notes by the same person is admissible where it tends to show a general scheme to obtain money on raised notes.

See Pennsylvania Evidence by Henry, Volume 1, Chapter 1 §36 Similar Facts, Conditions or Conduct - Fraud, p.73 (Emphasis Added); See also Wigmore on Evidence, Third Edition, Vol. II, § 367; Lisenba v. The People of the State of California, 314 U.S. 219, 62 S. Ct. 280, 86 L. Ed. 179 (1941); Snayberger v. Fahl, 195 Pa. 336, 342 (1900)("Where fraud is alleged, great latitude of proof is allowed and every fact or circumstance from which a legal inference of fraud may be drawn is admissible."); Gee v. CBS, Inc., 471 F. Supp. 600, 617-634 (E.D. Pa., 1979).

Evidence of prior acts to establish and prove a system or method of fraud is admissible also to demonstrate that a party's conduct was consistent with a general course of conduct on their part, a general design, or purpose:

> **Where a series of acts indicates a general design, purpose or course of conduct on the part of the person who committed them, they become competent evidence on the question of whether or not a similar particular act was done by the same person.** Even though an act is so remote in point of time from that charged that the statute of limitations would bar a prosecution for it, it would still be admissible if one of a series of acts tending to show guilt of the party charged. ...

Pennsylvania Evidence by Henry, Chapter 1, §36 Similar Facts, Conditions or Conduct - Course of Conduct, p.67. (emphasis added).

Since the documents are relevant to MetLife's knowledge of the problems and potential abuses involving APP sales by their agents, the documents relate to that knowledge and should be permitted.

IV.     **THE DIVIDEND RECORDS ARE BUSINESS RECORDS OF METLIFE.**

Defendants cite to no caselaw in support of the premise that the business records of MetLife are inadmissible hearsay. They only reference generically to Federal Rule of Evidence 801(c) and 803. Since the documents objected to by the Defendants are not privileged and are admissible under the Business Records Exception to the hearsay rule, the fact that the documents were made at or near the time of the events it purports to relate; generated as a regular practice of the business; and trustworthy as to the source of information or the method or circumstances of preparation, the business records of MetLife are clearly admissible.

The justification for the business records exception rests on the assumption that business records are reliable because they are created on a day-to-day basis and "[t]he very regularity and continuity of the records are calculated to train the recordkeeper in habits of precision." McCormick on Evidence § 286 5th ed.). The business records exception to the hearsay rule applies only if the person who makes the statement "is himself acting in the regular course of business." Florida Canal Industries, Inc. v. Rambo, 537 F.2d 200, 202 (5th Cir. 1976).

In U.S. v. Pelullo, 964 F.2d 193 (3d Cir. 1992), the United States Court of Appeals for the Third Circuit addressing Rule 803(6) explained when business records are admissible:

> The business records exception permits admission of documents containing hearsay provided foundation testimony is made by 'the custodian or other qualified witness,' that: (1) the declarant in the records had personal knowledge to make accurate statements; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made the record in the regular course of the business activity; and (4) such records were regularly kept by the business.

Id. at 200.

The documents meet all four requirements: They are business records regarding the use of

dividends for projecting tjhe cost of policies according to the APP sales method kept in the regular course of business - they are required to be kept by every Insurance Department in the country. Many of the documents were used in depositions of the actuaries Mr. Levine and Mr. Levene taken in the federal MDL litigation regarding MetLife's knowledge and awareness that the dividend scales used in the illustrations would not be supported thereby significantly increasing the cost of the policies to the policyholders.

Additionally, these documents should be admissible under either Rule 801(d)(2)(A) (statement by a party offered against that party) or Rule 803(6) (business records exception). The documents are from employees of MetLife concerning events that took place in the company and was communicated to the highest levels of the company and also comprises a statement of MetLife offered against MetLife.

Therefore, the documents are admissible as business records. The Exhibits are directly relevant to the issue of whether defendants' conduct was outrageous and are not so prejudicial to the defendants so as to outweigh its relevancy on this issue.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion in Limine to Exclude Exhibits 22, 66-77, 79-91, 93 should be denied.

> Respectfully Submitted,
> \s\ Kenneth R. Behrend
> Kenneth R. Behrend
> PA I.D. # 37961
> Behrend and Ernsberger, P.C.
> Union Bank Building  - Suite 300
> 306 Fourth Ave.
> Pittsburgh, PA 15222
> (412) 391-2515   (phone)

## CERTIFICATE OF SERVICE

      I Kenneth R. Behrend certify that a true and correct copy of the foregoing document was served via the electronic filing service, on this 17th day of October, 2006, on the following counsel of record:

B. John Pendleton, Jr.
McCarter and English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4056

                             \s\ Kenneth R. Behrend
                             Kenneth R. Behrend
                             PA I.D. # 37961
                             Behrend and Emsberger, P.C.
                             Union Bank Building - Suite 300
                             306 Fourth Ave.
                             Pittsburgh, PA 15222
                             (412) 391-2515   (phone)
                             (412) 391-2762   (Fax)