**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT G. WYCKOFF, | ) | Civil Action No. 00-2248 |
| | ) | |
| Plaintiff, | ) | Chief Judge Donetta W. Ambrose |
| | ) | |
| v. | ) | |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY and KENNETH F. KACZMAREK | ) | |
| | ) | |
| Defendants | ) | |

---

**PLAINTIFF'S REPLY TO DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S AND KENNETH F. KACZMAREK'S MOTION IN LIMINE TO EXCLUDE IRRELEVANT EVIDENCE REGARDING REPLACEMENT, PAID-UP ADDITIONS RIDERS AND UNIVERSAL LIFE POLICIES**

---

**ARGUMENT**

I.    **EXHIBITS 32, 47 AND 104 ARE RELEVANT TO THE LITIGATION AND ADMISSIBLE TO SUPPLY SUPPORT OF PROOF OF LIABILITY AND PUNITIVE DAMAGES.**

This case involves the sale of two whole life policies, one in 1991 and one in 1994 to Plaintiff, pursuant to Metropolitan Life's Accelerated Payment Plan, more commonly known within the insurance industry as "vanishing" premium sales.  Plaintiff asserts that document discussing MetLife's awareness of sales problems with the use of the Accelerated Payment Plan is relevant and material evidence in support of Plaintiff's claims.

Defendants' Exhibit A which is Plaintiff's Exhibit 32 specifically mentions that the company is having problems in the sales of policies using the Accelerated Payment Plan (APP).  Specifically, the memorandum, is dated November 7, 1988, to Becky Greene of Consulting Services for Personal

Insurance in the New York Home Office of MetLife, from John Eusten, Supervisor Client Services North Central Administrative Office of MetLife.  The memorandum concerns the use of MetLife's APP and in the second paragraph sets forth: "I believe there is the potential for misunderstanding on this much as there is on APP alone.  In this instance it could surface rather quickly."  See Defendants' Ex. A, Plaintiff's Ex. 32.

This statement demonstrates that MetLife was aware in 1988, prior to the 1991 and 1994 sales in the instant case, that the use of the APP in sales of policies caused confusion and that any problems with an APP sale took some time to materialize.  This evidence supports plaintiff's claims that MetLife was aware that there were problems in the use of APP to sell policies and that MetLife was also aware that the policyholders did not become aware of the problems, i.e. additional cost, until later, when the number of years of out-of-pocket payments were completed.  In the instant example, there was to only be one payment then the premiums would "vanish" and therefore the problems with the cost of the sale surfaced much quicker than where there were to be payments over a number of years.

Defendants' Exhibit B which is Plaintiff's Exhibit 47 specifically mentions that the company is having problems in the sales of policies using the Accelerated Payment Plan (APP). Specifically, the memorandum, is dated April 11, 1994, to Frank Lynch Senior Vice-President of Customer Services for Personal Insurance in the New York Home Office of MetLife, from Thomas Labadia Vice President of Client Services Bridgewater Area Administrative Office of MetLife.  The memorandum discusses Wilhelmenia Taylor and the natural Work Team on APP in the description of Attachment 2 and specifically addresses MetLife's APP and sets forth in pertinent part:

Summary - APP proposal targeted to those policyholders whose "Vanishing

Premium" would actually reappear without warning due to dividend scale reductions. This is an alternative to the major long term strategy addressing all variations of APP which is presently circulating. The proposal focuses only on those policyholders (approximately 25,000) on which the APP arrangement is no longer supportable under present dividend scales.

This memorandum demonstrates that there is a material problem with the use of APP and that it is a widespread problem, which includes the 1991 and 1994 sales to Plaintiff.

MetLife's Exhibit C, Plaintiffs Exhibit 104 is a memorandum dated November 29, 1993 from Michael Levine, Actuary to Anthony Amodeo, Vice President and Actuary that discusses the problems arising from selling policies by under-representing the actual cost of the policy in order to induce the sale. Specifically, the memorandum sets forth in pertinent part that on page one that:

> The more subtle concern is that, even if this [Universal Life] business remains "stable," the policyholders are still only paying their target premiums as originally illustrated. **We ought to recognize that these premiums are now inadequate to fully fund the policies,** and we should consider whether we have a more affirmative obligation to notify the policyholders.

(emphasis added).

Then on page two it is set forth:

> However, the second concern - - **the possibility that policyholders have been faithfully paying their target premiums and are not fully aware that these premiums are now inadequate - - is much more significant.** This demands some immediate concentrated effort in the financial areas, and is likely to warrant some active marketing efforts as well.

(emphasis added). The next three subparagraphs further explain that the policy cost is far greater than was explained at the time of sale and may be off by as much as a "50% increase."

Next, reference is made to the problem with Single Premium policy sales. In pertinent part:

> The problems/threats in this area have a lot in common with those affecting UL. However, for several reasons, this is an area where there is greater relative exposure to customer dissatisfaction.

Then, the subparagraphs list the financial problems caused by the failure to disclose certain costs including increasing mortality charges and that the accumulation funds may "disappear before the scheduled maturity of the policy."

The same problem occurs with APP sales, that is, the accumulation fund is depleted in order to make premium payments that cover mortality charges and the accumulation funds may "disappear before the scheduled maturity of the policy" which causes the policyholder to have to begin making premium payments out-of-pocket beyond the cost of the policy represented at the time of sale.

The problem with APP sales is that the actual cost of the policy is under-represented in order to induce a sale. This memorandum demonstrates that the identical problem of under-representing the cost of policies was a regular method of selling at MetLife not only whole life policies on APP, but also universal life and Single Premium policies. This evidence tends to prove the corporate culture of MetLife and demonstrates that the problem of selling policies by under-representing the cost of the policy was a widespread problem at MetLife, including the sales to Plaintiff in 1991 and 1994.

All three exhibits are relevant to Plaintiff's claims. "Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 402." Garvey v. Dickinson College, 763 F. Supp. 799, 801 (M.D.Pa. 1991).

Also, the documents provide evidence of MetLife's corporate knowledge as to the extent of the use of the business practices, as such, the evidence is relevant under F.R.E. Rules 404(b) and 406 to the issues in this case, particularly Plaintiffs' claim for liability, since MetLife's motive, intent, opportunity, preparation, plan knowledge, or absence of mistake are all at issue.

Federal Rule of Evidence Rules 404(b) and 406 have been interpreted to permit the admission of business practices evidence. The United States District Court for the Western District of Pa in Com. of Pa. v. Porter, 480 F.Supp. 686, (W.D. Pa. 1979) found:

> This suit was filed October 5, 1977. The defendant Baranyai has throughout the trial objected to evidence of any events back of the one or two year period preceding the bringing of suit claiming that such evidence should not be permitted under the statute of limitations. **It should be sufficient answer that such evidence is admissible under Rule 404(b) to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization.**

Com. of Pa. v. Porter, 480 F.Supp. 686 at 688 (W.D. of Pa. 1979). This reasoning was upheld by the United States Court of Appeals for the Third Circuit, finding:

> . . . **Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization." This ruling was correct.**

Com. of Pa. v, Porter, 659 F.2d 306 at 320 (3d Cir.1981) (Citations omitted)(emphasis added); see also, Rosenburg v. Lincoln Am. Life Ins. Co., 883 F.2d 1328, 1336 (7th Cir. 1989) (evidence admissible to establish a routine practice that defendant's agents regularly gave or were trained to "give oral assurances that insurance coverage was effective immediately despite written conditions to the contrary"); United States v. Quezada, 754 F.2d 1190, 1195 (5th Cir. 1985)(proper for INS agent to describe "the normal procedure followed in executing a warrant of deportation" by his agency to establish conformity with those procedures in instant case); Holley v. Seminole Cty. Sch. Dist., 755 F.2d 1492, 1505 (11th Cir. 1985) (evidence that school board had not punished others who engaged in similar conduct should have been admitted); Wells Fargo Business Credit v. Ben Kozloff,

Inc., 695 F.2d 940, 944 (5th Cir. 1983) (placing letters in mail "may be proved by circumstantial evidence, including customary mailing practices used in the sender's business"), cert. denied, 464 U.S. 818; Williams v. Anderson, 562 F.2d 1081, 1086 & n. 7 (8th Cir. 1977)(evidence of prior racially discriminatory practices admissible to support inference that discrimination continued); Amoco Prod. Co. v. United States, 619 F.2d 1383, 1389-1390 (10th Cir. 1980) (proper under FRE 406 to receive evidence of the routine practice of the Federal Farm Mortgage Company "to reserve a one-half mineral interest in all property transferred during the relevant period" to prove that such a provision was contained in the deed in question); see also John H. Strong, McCormick on Evidence § 195 (4th ed. 1992); 1A John A. Wigmore, Evidence § 95 (Tillers rev. 1983).

Reliance on FRE 406 is necessary only where a litigant seeks to prove conduct on a specific occasion by evidence of routine practice. Where a litigant seeks to prove a pattern or practice that has independent relevance, such evidence is admissible under FRE 401. See Pennsylvania v. Porter, 659 F.2d 306, 320 (3d Cir. 1981) (in litigation seeking equitable relief, evidence of pattern of constitutional violations by police is admissible; court erroneously cites FRE 406), cert. denied, 458 U.S. 1121. United States v. Santa, 180 F.3d 20, 29 (2d Cir. 1999) (practice of police department supported court finding that it returned to village court a request to vacate warrant).

Although there are no "precise standards" for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: "adequacy of sampling and uniformity of response." Fed.R.Evid. 406, advisory committee's notes; McWhorter v. Birmingham, 906 F.2d 674, 679 (11th Cir. 1990). Therefore, the evidence should be admitted in this case as it was admitted previously in the Tran case.

F.R.E. Rule 404(b)(2) also permits the introduction of evidence of prior acts on the part of

a party where those acts may demonstrate "**proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,** . . .". [Emphasis added].

Particularly instructive is the case of Rosenburg v. Lincoln American Life Ins. Co., 883 F.2d 1328 (7th Cir. 1989), where the defendant life insurance company sales agents were routinely as a business practice misrepresenting that Lincoln was providing guaranteed coverage. Evidence of other examples of the same sales practices was permitted. "A Lincoln Administrative Assistant, testified that the company was aware that agents had represented that Lincoln was providing guaranteed coverage to dependents in other cities and had compiled a list of cities where such "misrepresentations" had occurred." Id. at 1331. Lincoln objected to this testimony of statements made to others outside of the individual sale and Mr. Rosenburg's presence regarding Lincoln's program in Granite City and other cities in Indiana claiming that these statements were irrelevant, prejudicial and inadmissible under Fed.R.Evid. 404(b) as evidence of other wrongs or bad acts.

The District Court and the Seventh Circuit both rejected the insurer's arguments and concluded the evidence was relevant and admissible under F.R.E. 406. The Seventh Circuit in permitting the evidence of other sales and bad acts held:

> **There was sufficient evidence of such a routine practice by Lincoln agents such that the testimony in question was properly admissible under Fed.R.Evid. 406 to establish that Lincoln acted in conformity with its routine business practice in this instance.**[fn5] See G.M. Brod & Co. v. U.S. Home Corp., 759 F.2d 1526, 1533 (11th Cir. 1985).

Rosenburg, at 1336.

In another case where another life insurance company was sued for fraudulent business practices and pattern and practice evidence was permitted under F.R.E. Rule 406, in Brennan v. The Paul Revere Life Insurance Company, Case No. 00 C 0725 (N.D. Ill. 2002), in denying the insurer's

-7-

motion in limine to preclude evidence of other similar acts and business practices the District Court held, "Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line." See Exhibit 1 a copy of the Brennan opinion.  In Brennan, the Plaintiff offered evidence that the insurance company had a business practice to target high amount claims and Defendants sought through fourteen motions in limine to restrict Plaintiff's evidence.

Similarly, to the instant motion filed by MetLife seeking to limit any evidence outside of the first hand knowledge of the individual sale, the insurer in Brennan filed the same motion. "Their third motion in limine seeks to exclude the testimony of Dr. William Fiest, a former Provident medical director, concerning that company's policies.  Defendants argue that Brennan's claims concern defendants' handling of his particular insurance claim, and not how they may have handled other claims made by other people at other times." Id.  The District Court rejected this motion, holding:

> **Some of the evidence offered by Brennan tends to show the existence of a regularly-followed policy or practice that is sufficiently routine and "automatic" to permit its admission under Rule 406 as construed in Simplex and Rosenburg.**  Specifically, plaintiff has direct evidence consisting of the testimony of Dr. William Fiest, a former Vice President and Medical Director of Paul Revere, that that company had a policy of targeting for termination certain types of high-level disability insurance claims (including those of the type made by Brennan) and then marshaling evidence to support the termination, rather than dealing with the claims fairly.  Though, as defendants point out, Fiest left Paul Revere before the time period when Brennan's benefits were terminated, **plaintiff has sufficient evidence of the continuation of this policy or practice into the relevant time period, including the period after Paul Revere was acquired by Provident, to provide an adequate foundation for a reasonable inference that it did in fact continue. Plaintiff likewise as sufficient circumstantial evidence to permit a reasonable inference that the policy was followed in his particular case. Though defendants**

**dispute this evidence and the inferences to be drawn from it, those are matters for the jury; Brennan has laid an adequate foundation for admission of this evidence.** Though there may, in some cases, be a fine line between "routine practice" evidence admissible under Rule 406 and "other act" evidence generally rendered inadmissible under Rule 404(b), Brennan's policy evidence does not come close to that line.

Id. (emphasis added). Likewise, in the instant case, plaintiffs seek to introduce relevant evidence to establish liability of the injury caused by MetLife's business practices.

Just because the evidence of the custom, habit and business practice demonstrates that negligent and/or fraudulent conduct took place as a regular business practice does not mean that it is prejudicial to the Defendants, nor does this prevent the admission of the evidence to prove the elements of negligence and fraud as well as aids in establishing the credibility of the parties. See Rohm and Haas Co. v. Continental Cas. Co., 781 A.2d 1172 at 1179 fn6 (Pa. 2001) (circumstantial evidence of a pattern of conduct was permissible to establish proof of intent. "While a single isolated incident of some event followed by a second event may render tenuous an inference that the first event caused the second, a series of such incidents accompanied by other circumstantial evidence may result in a much more compelling conclusion."); General Equipment Manufacturers v. Westfield Insurance Co., 635 A.2d 173, 185 (Pa. Super. 1993)("evidence of similar acts or transactions is admissible when relevant to prove an issue in the case. Accordingly, evidence of a course of conduct or dealing followed by a person may be admitted to prove that he acted in accordance with it on a given occasion, provided such a course of conduct or dealing is shown to have been continuous and systematic.").

Similarly with the MetLife cases, plaintiffs must prove that MetLife knew not only about the regular business practices used by its employee sales agents, but that MetLife should have been more

responsive to the situation.  Plaintiffs have to prove also that MetLife knew or should have known

of the necessity and opportunity for exercising such control.  To meet this required showing,

plaintiffs must establish that the Defendants had some form of notice.  Thus, it is important for

plaintiffs to demonstrate that other incidents of the use of the same sales practices has occurred

involving other sales agents who may have been similarly situated within MetLife and MetLife took

no effective action to stop such conduct, or indeed, approved of the conduct.

The business practices and knowledge of MetLife itself are at issue, since MetLife is also a

defendant, along with the manner in which it supervised its employees.  The inability to present any

evidence of the business practices and knowledge of MetLife itself would prejudice and harm

plaintiffs' proof of their claims as to liability against MetLife regarding its business practices and

how they directly relate to the sale of the polices to plaintiffs.

This principal of permitting evidence of the business practices in fraud cases is based upon

the concept that evidence of similar business practices evidence is admissible to prove a course of

conduct, if the evidence falls into one of five exceptions to the general rule that this evidence is

inadmissible because it generally is prejudicial. The five exceptions are: "(1) motive; (2) intent; (3)

absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two

or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish

the identity of the person charged with the commission of the crime on trial — in other words,

where there is such a logical connection between the [frauds] that proof of one will naturally tend

to show that the accused is the person who committed the other." See Commonwealth v. Peterson,

307 A.2d 264 (Pa.1973); see also Commonwealth v. Marsh, 566 A.2d 296 (Pa. Super. 1989); citing

Commonwealth v. Clayton, 532 A.2d 385, 392 n.8 (Pa. 1987); Commonwealth v. Dargan, 897 A.2d

496 (Pa. Super. 2006), where the Pennsylvania Superior Court held that:

> **evidence of prior bad acts**, although generally proscribed, **is admissible "in special circumstances where the evidence is relevant for some other legitimate purpose,"** such as "to establish: **1) motive**; **2) intent**; **3) absence of mistake or accident**; **4) a common scheme or plan**; and 5) identity. **The evidence may also be used to impeach the credibility of a testifying defendant . . . and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development."**

Id. at 501 (citations omitted)(emphasis added).

All five of these exceptions exist in the evidence that plaintiffs seeks to offer at trial. The Pennsylvania Supreme Court in Commonwealth v. Peterson, further held that where evidence relates **to any one of these five issues** it is admissible: **"When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value."** Id. at 307 A.2d 264 at 269-270 (Emphasis added).

Moreover, there is a procedure for resolving any possibility of confusion or misunderstanding of the jury as to purpose of the admission of the evidence. Any possible misunderstanding can be clarified through instructions by the trial court. If evidence is admissible for one purpose, but not for another, the trial judge should instruct the jury on the restricted purpose for which the evidence has been admitted. F.R.E. 105 requires the judge to give such and instruction if a party requests it. A party should request that instructions be given to insure that the jury make the proper use of the evidence and that it is not used for an improper purpose. This exact issue was also discussed and explained in Commonwealth v. Peterson, and the Pennsylvania Supreme Court held that any possible confusion of the purpose for the admission of the prior bad acts or any possible prejudice that might be caused thereby could be explained and clarified through cautionary charges by the trial court:

> The trial judge informed the jury at the outset that they were in effect trying two

separate cases at one time and for this reason would have to pay especially close attention to the evidence so as to be able to properly segment it. **At the close of trial an extensive cautionary instruction was given which again directed the jury to confine the relevant evidence to each offense. This instruction was precise and unassailable.**

Commonwealth v. Peterson, 307 A.2d 264 at 271.

Moreover, in a fraudulent misrepresentation, the standards of evidence are relaxed for plaintiffs to prove their claims. As Henry on Pennsylvania Evidence stated:

> **The rule which excludes evidence of other acts to prove a particular act is greatly relaxed in cases of fraud.** Thus allegations of misrepresentations as to financial condition and of conveyance of property to defraud creditors may be supported by showing similar misrepresentations to others and transfers of other property as a series of acts constituting a general scheme to defraud. And **where a conspiracy to cheat and defraud in a particular instance is charged, evidence of a scheme to cheat and defraud the public generally may be given.** If notes are alleged to have been fraudulently raised in amount, evidence of raising or of other notes by the same person is admissible where it tends to show a general scheme to obtain money on raised notes.

See Pennsylvania Evidence by Henry, Volume 1, Chapter 1 §36 Similar Facts, Conditions or Conduct - Fraud, p.73 (Emphasis Added); See also Wigmore on Evidence, Third Edition, Vol. II, § 367; Lisenba v. The People of the State of California, 314 U.S. 219, 62 S. Ct. 280, 86 L. Ed. 179 (1941); Snayberger v. Fahl, 195 Pa. 336, 342 (1900)("Where fraud is alleged, great latitude of proof is allowed and every fact or circumstance from which a legal inference of fraud may be drawn is admissible."); Gee v. CBS, Inc., 471 F. Supp. 600, 617-634 (E.D. Pa., 1979).

Evidence of prior acts to establish and prove a system or method of fraud is admissible also to demonstrate that a party's conduct was consistent with a general course of conduct on their part, a general design, or purpose:

> **Where a series of acts indicates a general design, purpose or course of conduct on the part of the person who committed them, they become competent evidence**

**on the question of whether or not a similar particular act was done by the same person.** Even though an act is so remote in point of time from that charged that the statute of limitations would bar a prosecution for it, it would still be admissible if one of a series of acts tending to show guilt of the party charged. ...

Pennsylvania Evidence by Henry, Chapter 1, §36 Similar Facts, Conditions or Conduct - Course of

Conduct, p.67. (emphasis added).

As the documents are relevant to MetLife's knowledge of the problems and potential abuses

involving APP sales by their agents, the documents related to that knowledge should be permitted.

## II.    THE THREE EXHIBITS ARE NOT PRECLUDED BY FEDERAL RULE OF EVIDENCE 403.

There is no merit to defendants' argument that the admission of the exhibits would violate

Pa.R.E. 403. The Advisory notes to the Federal Rules of Evidence define prejudice as ". . . an undue

tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional

one." See Advisory Committee Note to Rule 403; See also U.S. v. Rutland, 372 F.3d 543 (3rd Cir.

2004);   See also Commonwealth v. Palmer, 700 A.2d 988, 992-993 (Pa. Super. 1997)(Emphasis

added)( "As **this court has noted, a trial court is not required to sanitize the trial to eliminate**

**all unpleasant facts from the jury's consideration where those facts form part of the history**

**and natural development of the events and offenses with which [a] defendants is charged.")**

Despite, defendants' contention, there is little to suggest that the introduction of relevant

evidence which clearly tends to show that defendants engaged in a regular practice of

misrepresenting the terms of insurance policies substantially similar to those sold to the plaintiff will

cause the fact finder to ignore the facts surrounding the present case and make a decision based upon

his prior actions. Instead, the proffered evidence will only support plaintiff's contention that the

policy was sold in the manner alleged pursuant to defendants' regular habit or practice and that

MetLife was aware prior to the sale in question that consumers, like the Plaintiff, could easily be misled by the use of the term "none" on the APP illustrations and yet continued to use the term in their Illustrations.

The United States Court of Appeals for the Third Circuit has addressed the value of allegedly prejudicial evidence of a comprehensive scheme and determined that its probative value generally outweighs the risk of prejudice where a jury, such as the one in the present case, can "compartmentalize" the information. In U.S. v. Driggs, 823 F.2d 52 (3rd Cir. 1987) the Third Circuit Court of Appeals stated:

> We find nothing unfairly prejudicial about showing that the charged conduct was part of a comprehensive scheme. If the government is not permitted to show that Traitz gave cash gifts to other judges, it becomes much more difficult for it to prove that he was paying Driggs because of his status as a judge — an essential element of a Hobbs Act violation.
>
> As for the risk of confusing the jurors, we believe that this is the type of case where a jury could be expected to compartmentalize the evidence and consider it for its proper purposes. See United States v. Dansker, 537 F.2d 40, 62 (3d Cir.), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L. Ed.2d 748 (1976).

Id.

Moreover, such arguments go more to the weight accorded by the jury to this evidence rather than whether the jury should be precluded from considering it. Any potential prejudice can be cured by redacting irrelevant or unduly prejudice portions of the report and curative instructions can limit the effect and jury's use of this evidence.

Finally, the disputed evidence is admissible for the purposes of proving that the defendant agents conduct was so outrageous as to permit the recovery of punitive damages on the part of the plaintiff. The recovery of punitive damages requires that plaintiff demonstrate the nature of defendant's egregious conduct so as ro permit the fact finder to punish the defendant's conduct and

deter others from similar conduct.  <u>Kirkbride v. Lisbon Contractors Inc.</u>, 555 A.2d 800 (Pa.

1989)(punitive damages awarded in Pennsylvania to punish egregious conduct and deter others from

engaging in similar conduct).

The United States Supreme Court has determined that:

**Certainly, evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law.** <u>See</u> [TXO] <u>id.</u>, at 462, n. 28. Our holdings that **a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance.** <u>See</u> <u>Gryger v. Burke</u>, 334 U.S. 728, 732 (1948).

<u>BMW v. Gore</u>, 517 U.S. 559 at 576-77 (Emphasis added).

The Exhibits are directly relevant to the issue of whether defendants' conduct was outrageous

and are not so prejudicial to the defendants so as to outweigh its relevancy on this issue.

<strong><u>CONCLUSION</u></strong>

For all the foregoing reasons, Defendants' Motion in Limine to Exclude Irrelevant Evidence

should be denied

> Respectfully Submitted,
>
> <u>\s\ Kenneth R. Behrend</u>
> Kenneth R. Behrend
> PA I.D. # 37961
> Behrend and Emsberger, P.C.
> Union Bank Building  - Suite 300
> 306 Fourth Ave.
> Pittsburgh, PA 15222
> (412) 391-2515   (phone)
> (412) 391-2762    (Fax)

**CERTIFICATE OF SERVICE**

I Kenneth R. Behrend certify that a true and correct copy of the foregoing document was

served via the electronic filing service, on this 17th day of October, 2006, on the following counsel

of record:

B. John Pendleton, Jr.
McCarter and English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4056

          \s\ Kenneth R. Behrend
          Kenneth R. Behrend
          PA I.D. # 37961
          Behrend and Emsberger, P.C.
          Union Bank Building  - Suite 300
          306 Fourth Ave.
          Pittsburgh, PA 15222
          (412) 391-2515   (phone)
          (412) 391-2762    (Fax)