## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT G. WYCKOFF | ) | Civil Action No. 00-2248 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Chief Judge Donetta W. Ambrose |
| | ) | |
| METROPOLITAN LIFE INSURANCE COMPANY and KENNETH F. KACZMAREK, | ) ) | |
| | ) | |
| Defendants | ) | |

---

### PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO BIFURCATE AND EXCLUDE PLAINTIFF'S ERISA CLAIM AND CLAIM FOR PUNITIVE DAMAGES

---

Kenneth R. Behrend
Pa. I.D. No. 37961
Behrend & Ernsberger, P.C.
Firm ID No. 018
Union National Bank Building
306 Fourth Avenue, Suite 300
Pittsburgh, PA 15222
(412) 391-2515

**PRELIMINARY STATEMENT**

This Court has previously considered the exact legal arguments presented in Defendants' Motion in <u>Mohney v. MetLife</u>, Civil Division No. 96-186 and <u>Tran v. MetLife</u>, 01-262 and <u>Solarchick v. MetLife</u>, Civil Division No. 01-444. In both <u>Mohney</u> and <u>Tran</u>, this Court properly determined that the legal arguments set forth herein were without merit and denied the identical Motion in Limine. Plaintiff contends that as the same law is applicable in the instant case, Defendants' Motion should be denied for those reasons considered by this Court in <u>Mohney</u> and <u>Tran</u>

As Defendants did in <u>Solarchick,</u> <u>Mohney</u> and <u>Tran</u>, Defendants in the instant case insert several sweeping characterizations about the present litigation in their Motion that Plaintiff cannot allow to remain unchallenged. First, it should be made clear that MetLife is attempting to bifurcate proof of liability, by requesting this Court to preclude evidence of MetLife's business practice of selling whole life policies as investments. Contrary to MetLife's unsupported assertions, there is no recognized procedure to bifurcate liability. Second, MetLife claims Plaintiff seeks to introduce evidence of national sales practices unrelated to sales practices that occurred to the Plaintiffs in this case. This assertion is not true. Plaintiffs seeks to introduce evidence of MetLife's business practices identical to specific practices used by MetLife and its agents in this case to induce the sale of a life insurance policies to the Plaintiffs in order to prove liability.

Third, Plaintiffs seeks to introduce the business practices evidence for the purpose establishing the liability of MetLife. Plaintiffs must prove that MetLife's intent in the instant case for the proof of the elements of fraud and violations of the Unfair Trade Practices and Consumer Protection Law. Also, this evidence is relevant and admissible to support the credibility of the

parties. Indeed, Plaintiff must prove not only the use of the fraudulent sales methods by MetLife's agent, but also must prove MetLife's knowledge of the same in order to prove liability. The evidence sought to be introduced relates to the actual deceptive practices utilized by MetLife and its agents in the sale of the policies purchased by Mr. Wyckoff.

Some of this identical evidence for proof of the elements of fraud in the liability phase of the case, will also be used again to establish punitive damages. Bifurcation of the case will not serve judicial economy in this case, it will cause additional expense to the litigants to recall witnesses and reintroduce the same evidence. Judicial economy is not served by bifurcation since the same practices, evidence, and legal standards apply equally to both compensatory and punitive damage awards. Jury instructions, therefore, should be used to guide the jury as to the significance and purpose of why the evidence has been admitted for their consideration.

Accordingly, this Court should admit evidence of defendants' business conduct for proof of liability, compensatory and punitive damages and should allow the jury to consider such evidence both for compensatory and punitive damages without bifurcation of these issues.

## ARGUMENT

I. **THE UNLAWFUL HABIT, PRACTICE AND BUSINESS CONDUCT HAS BEEN REPEATEDLY HELD TO PERMIT MULTIPLE PUNITIVE DAMAGE AWARDS.**

Plaintiff seeks punitive damages for deliberate and deceptive conduct by MetLife through its sales agent that induced Mr. Wyckoff to purchase insurance products to his financial detriment and the Defendants' financial benefit. The deceptive sales in both 1991 and 1994 were done pursuant to a corporate marketing scheme of selling life insurance policies under the premise that the out-of-pocket premiums due on a particular policy would "vanish" after a set number of years

and that the policy would then be fully funded by a combination of dividends and interest earned by the policy.

Plaintiff seeks to introduce evidence of MetLife's regular business practice of misrepresenting the number ofr out-of-pocket premiums a policyholder would be required to make to completely fund their life insurance policy for the purpose of establishing the context of MetLife's knowledge, intent and corporate culture which permitted these deceptive sales practices schemes to occur. The scheme evidence demonstrates that both MetLife and its agents are liable for the deceptive sales which were used by Defendants to sell Mr. Wyckoff life insurance policies..

## II.    HABIT, CUSTOM AND BUSINESS PRACTICES OF METLIFE PRACTICED ON MR. WYCKOFF ARE RELEVANT AND ADMISSIBLE EVIDENCE.

Evidence of MetLife's habit, custom and business practices is admissible to prove MetLife's intent, knowledge, and background related to the actual sales practices utilized by MetLife and its agents in the sale of the policy in this case. Com. of Pa. v, Porter, 659 F.2d 306 at 320 (3rd Cir.1981)(. . . Evidence of the prior actions was admitted, as the trial court noted, under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization."); Frey v. Harley Davidson Motor Co., 734 A.2d 1 (Super. Ct. 1999)(Evidence of regular business practice to not inspect previously owned motorcycles was properly admitted); Pa. Rule of Evidence 404(b)(2)(the introduction of evidence of prior acts on the part of a party where those acts may demonstrate ""**proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,** . . .". is proper)[Emphasis added].

This principal of permitting evidence of prior bad acts in fraud cases is based upon the concept that evidence of similar prior bad acts are admissible to prove a course of conduct, if the evidence falls into one of five exceptions to the general rule that this evidence is inadmissible because it generally is prejudicial. The five exceptions are: "(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial — in other words, where there is such a logical connection between the [frauds] that proof of one will naturally tend to show that the accused is the person who committed the other." See Commonwealth v. Peterson, 307 A.2d 264 (Pa.1973); see also Commonwealth v. Marsh, 566 A.2d 296 (Pa. Super. 1989); citing Commonwealth v. Clayton, 532 A.2d 385, 392 n.8 (Pa. 1987).

All five of these exceptions exist in the evidence that the Hazens intend to offer at trial. Thus, the evidence of the business custom and practice would tend to prove that MetLife through its sales agents engaged in a regular business practice of misrepresenting the nature of life insurance policies to potential customers in an effort to induce the purchase of the policies. As such, evidence of these practices are relevant and admissible to demonstrate (1) motive, (2) intent, (3) a common scheme in the deceptive sale of life insurance policies; (4) that the Defendants have not merely committed a mistake when they misrepresented the terms and conditions of the policies to the Plaintiffs, and (5) to establish the identity of the person accused of the fraud on trial, "— in other words, where there is such a logical connection between the fraudulent sales that proof of one will naturally tend to show that the accused is the person who committed the other."

Plaintiff's proof of national business practices should not be bifurcated since this evidence

relates directly to Defendants' intent, knowledge, and purpose behind the marketing practices actually used against the Hazens. Judicial economy is not served by bifurcation since the same practices, evidence, and legal standards apply equally to both compensatory and punitive damage awards. Jury instructions, therefore, should limit any potential for bias and undue prejudice and prevent confusion between purported bad acts and issues related to Defendants' liability.

In <u>Hutchison</u>, the Superior Court in permitting the prior bad acts evidence held that "The evidence concerning prior acts of molestation by Luddy had the potential to be inflammatory. However, it was also important to an assessment of credibility, where Luddy was denying having had sexual relations with Hutchison." <u>Id.</u> at 841.

The business practices and knowledge of the Diocese itself were at issue, since they were also a defendant, along with the manner in which it supervised its employees. The Superior Court held even though the evidence of "pedophilic behavior in the church also had the potential to be inflammatory" it was proper to admit this evidence of prior knowledge of the Diocese to establish whether the Diocese was also liable and not just the employee priest.

> ¶ 64    Further, the evidence concerning pedophilic behavior in the church also had the potential to be inflammatory. However, the evidence was highly probative to the question of . . . liability on the part of the church defendants, as it showed the church organization's knowledge, or lack thereof, with regard to the church parties' failure to control Luddy. **With regard to evidence of pedophilic behavior within the organization, we find instructive an analogous argument raised in a civil matter cited in Appellee's Substituted Brief on Remand. That case is <u>General Equipment Manufacturers v. Westfield Insurance Co.</u>, 635 A.2d 173 (Pa.Super. 1993)**, wherein a subcontractor filed suit against a general contractor for nonpayment, and attempted to introduce evidence of the general contractor's failure to pay other subcontractors. On review of the propriety of the admission of such evidence, we stated as follows:
>
>> While the commission of an act charged cannot be proved by showing the commission of a like act at a different time, an exception to this

>rule exists where knowledge or intent is a material fact to be proved. Under such circumstances, evidence of similar acts or transactions is admissible when relevant to prove an issue in the case. **Accordingly, evidence of a course of conduct or dealing followed by a person may be admitted to prove that he acted in accordance with it on a given occasion, provided such a course of conduct or dealing is shown to have been continuous and systematic.**
>
>General Equipment, 635 A.2d at 185 (Pa.Super. 1993) (citations omitted).
>
>¶ 65   **The course of dealing of the church organization with pedophilic behavior within the church, if any, could tend to establish how the church reacted to Luddy's pedophilic behavior if the church organization knew or should have known about it**. Luddy testified that his fear of losing a parish could have been affected by the church's having a policy of not acting on complaints of pedophilia, and, in this way, could have affected his engaging in sexual acts with minor males. The trial judge appropriately pointed out that the church defendants would have sought to introduce the evidence that they were challenging if its use would have been more beneficial to them. As an example, the trial judge cited an instance where the church defendants would want to use such evidence to show that they could have had no notice, because Luddy was the only priest engaged in pedophilic behavior. Trial Court Opinion, 1/12/94, at 7.
>
>¶ 66     Thus, we agree that such evidence was probative of . . . liability on the part of Appellants. The prejudicial impact of the evidence concerning the knowledge of Appellants concerning pedophilic activity of priests within the Diocese was not so prejudicial as to outweigh its probative value. **We find no abuse of discretion on the part of the trial court in ruling that the probative value of the evidence concerning the pedophilic behavior of priests of the Diocese other than Luddy and that the church defendants' knowledge thereof outweighed its prejudicial effect.**

Hutchison, Id., at 842-843 (emphasis added)

The business practices and knowledge of MetLife itself are on trial, along with the manner in which MetLife supervised its employees. Indeed, what the Defendants are proposing would prejudice Mr. Wyckoff by not permitting the admission of relevant and material evidence. Moreover, in a fraudulent misrepresentation and fraudulent concealment case, the standards of

evidence are relaxed for plaintiffs to prove their claims. As <u>Henry on Pennsylvania Evidence</u> stated:

> **The rule which excludes evidence of other acts to prove a particular act is greatly relaxed in cases of fraud.** . . . **where a conspiracy to cheat and defraud in a particular instance is charged, evidence of a scheme to cheat and defraud the public generally may be given. If notes are alleged to have been fraudulently raised in amount, evidence of raising or of other notes by the same person is admissible where it tends to show a general scheme to obtain money on raised notes.**

<u>See</u> <u>Pennsylvania Evidence by Henry</u>, Volume 1, Chapter 1 §36 Similar Facts, Conditions or Conduct - Fraud, p.73 (Emphasis Added); <u>Snayberger v. Fahl</u>, 195 Pa. 336, 342 (1900)("Where fraud is alleged, great latitude of proof is allowed and every fact or circumstance from which a legal inference of fraud may be drawn is admissible."); <u>Bickell v. Stein</u>, 435 A.2d 610 (Pa. Super. 1981)("[T]he doctrine of fraudulent concealment has been relaxed considerably with regard to the deceptive intent of defendant's acts and their independence of the underlying, operative facts")

Evidence of the Defendants' custom, habits and business practices is not "beyond the scope of the transaction" as MetLife argues. To the contrary, this evidence of the business practices goes to the heart of Plaintiffs' claims and is permitted for all the reasons set forth, <u>infra</u> and is permitted under Fed. Rule of Evidence 406. Thus, the habit, custom and business practices of Defendants practiced on Mr. Wyckoff are relevant and admissible evidence.

**IV.    THE RELEVANT BUSINESS PRACTICES APPLY TO PROOF OF LIABILITY AND COMPENSATORY DAMAGES IN PLAINTIFFS' CASE IN CHIEF AND SHOULD NOT BE BIFURCATED.**

MetLife is attempting to bifurcate liability. MetLife again argues that proof of the relevant habits, customs and business practices should be kept from the jury, this time under the guise of "bifurcation." This argument is erroneous.

No matter how MetLife attempts to recast the argument to request preclusion of evidence of

relevant national deceptive sales practices that occurred in the sales to the Plaintiff, the result is the same. This evidence is relevant and admissible to the proof of Plaintiff's claims. The Plaintiffs' argument remains the same: that is, the habit, custom and business practices are relevant and admissible to prove liability for compensatory and punitive damages.

Additionally, Judicial economy is not served by bifurcation since the same practices, evidence, and standards apply to both compensatory and punitive damages. See Coleman v. Philadelphia Newspapers, 570 A.2d 552, 555 (Pa. Super. 1990)("Before ordering the separate adjudication of issues, the court should carefully consider the issues raised and the evidence to be presented to determine whether the issues, here liability and damages, are interwoven. Stevenson v. General Motors Corp., 513 Pa. At 422-23, 521 A.2d at 419. Bifurcation is discouraged in those cases in which evidence relevant to both issues would be excluded in one portion of the trial and would result in prejudice to the objecting party. Id."). Jury instructions should limit any potential for bias and undue prejudice and prevent confusion between purported bad acts and issues related to Defendants' liability. Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625 (1983)(same standard of proof for compensatory and punitive damages).

**V.    CLAIMS RELATING TO THE 1994 POLICY SHOULD NOT BE BIFURCATED**

As set forth above, Plaintiff contends, and will demonstrate at trial, that the sales to Mr. Wyckoff were part of a regular practice by Defendant MetLife to misrepresent the period of time a policyholder, including Mr. Wyckoff was required to make out-of-pocket premium payments on whole life policies purchased from Defendant MetLife. MetLife's repeated dealings with the Plaintiff are relevant to these accusations. Indeed, as set forth above, evidence of Defendant

MetLife's repeated conduct towards Mr. Wyckoff supports Mr. Wyckoff's credibility as to both the representations made in 1991 and 1994. In essence, MetLife is seeking to preclude the jury from learning of the totality of Mr. Wyckoff's dealings with the company in an effort to cast the 1991 sale as a single isolated event, when the jury properly should be informed of the totality of the circumstances surrounding Mr. Wyckoff's dealings with the company.

In seeking bifurcation of the 1991 and 1994 sales, MetLife argues that allowing the jury to hear evidence of the 1994 sale will "unfairly prejudice the juror's minds against Defendants." This argument fails for the same reasons as MetLife's argument that allowing the evidence of MetLife's corporate practices into evidence in the liability of the phase fails, simply put the evidence of both the corporate habit and practice and the company's repeated conduct toward Mr. Wyckoff is relevant to d demonstrate (1) motive, (2) intent, (3) a common scheme in the deceptive sale of life insurance policies; (4) that the Defendants have not merely committed a mistake when they misrepresented the terms and conditions of the 1991 Policy to the Plaintiffs, and (5) to establish the credibility of Mr. Wyckoff.

The fact that the jury will not be permitted to determine liability in the 1994 sale under ERISA also does not mandate Bifurcation. To the contrary, the Court certainly will explain the jury's role in the instant case, indeed, it is likely that the jury will be more confused as to the actual facts of the case, if they are not permitted to hear of the entirety of the relationship between Defendant MetLife and Plaintiff.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request this Court deny Defendants' Motion in Limine seeking bifurcation of Plaintiff's claims relating to the 1994 Policy and punitive damages claims.

    Respectfully submitted,

    /s/Kenneth R. Behrend
    Kenneth R. Behrend
    Attorney I.D. No.: 37961
    BEHREND AND ERNSBERGER, PC
    306 Fourth Avenue, Suite 300
    Pittsburgh, PA 15222

## CERTIFICATE OF SERVICE

I, Kenneth R. Behrend, hereby certify that a true and correct copy of the foregoing Plaintiffs' Brief in Support of Plaintiff's Response to Defendant's Motion in Limine, was served upon the all counsel of record by U.S. first-class mail, postage pre-paid and/or hand delivery on this 17th day of October, 2006 as follows:

B. John Pendleton, Jr., Esquire
MCCARTER & ENGLISH
Four Gateway Center
100 Mulberry Street
Newark, NJ 07101-0652

/s/Kenneth R. Behrend
Kenneth R. Behrend
Attorney I.D. No.: 37961
Attorneys for Plaintiffs
BEHREND AND ERNSBERGER, PC
306 Fourth Avenue, Suite 300
Pittsburgh, PA 15222
(412) 391-2515
(412) 391-2762 (facsimile)