IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT G. WYCKOFF | ) | Civil Action No. 00-2248 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Chief Judge Donetta W. Ambrose |
| | ) | |
| METROPOLITAN LIFE INSURANCE COMPANY and KENNETH F. KACZMAREK, | ) ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF "BAD ACTS" OF KENNETH F. KACZMAREK**

**ARGUMENT**

**I. THE INTRODUCTION OF EVIDENCE OF THE HABIT, CUSTOM AND BUSINESS PRACTICES OF METLIFE AND ITS EMPLOYEES IS RELEVANT AND PERMISSIBLE IN A CASE WHERE THERE ARE ALLEGATIONS OF FRAUDULENT MISREPRESENTATION**

The consumer complaints objected to by Defendants' as "bad acts" evidence are relevant as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, . . ." of Defendants MetLife and Kaczmarek with regard to the deceptive sales practices committed in the instant case. See Pa. R. E. 404(b)(2); See also Pa. R. E. 406 ("Evidence of the habit of a person or the routine practice of an organization . . . is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."). Plaintiff is required to prove that the alleged deceptive sale in the instant case was done intentionally by Defendants. As such, Plaintiff should not be precluded from introducing evidence of the custom, habit and business practices of the MetLife representatives who took part in the transactions at issue and their supervisors. This includes the prior deceptive sales of life insurance products where these deceptive acts demonstrate that

1

Defendants engaged in a regular practice of misrepresenting the nature of insurance products which he was selling on behalf of MetLife. This rule of evidence can best be summed up as follows:

> **The rule which excludes evidence of other acts to prove a particular act is greatly relaxed in cases of fraud. Thus allegations of misrepresentations** as to financial condition and of conveyance of property to defraud creditors **may be supported by showing similar misrepresentations to others** and transfers of other property **as a series of acts constituting a general scheme to defraud. And where a conspiracy to cheat and defraud in a particular instance is charged, evidence of a scheme to cheat and defraud the public generally may be given.** If notes are alleged to have been fraudulently raised in amount, evidence of raising or of other notes by the same person is admissible where it tends to show a general scheme to obtain money on raised notes.

Pennsylvania Evidence by Henry, Volume 1, Chapter 1 §36 Similar Facts, Conditions or Conduct - Fraud, p. 73 (Emphasis Added); See also Commonwealth v. Bonnem, 95 Pa. Super. 496 (1928)("Evidence of persons other than the prosecutor who were defrauded by Defendants in the same manner is admissible for the purpose of showing a systematic scheme to defraud. . ."); Snayberger v. Fahl, 195 Pa. 336, 342 (1900)("Where fraud is alleged, great latitude of proof is allowed and every fact or circumstance from which a legal inference of fraud may be drawn is admissible.").

In arguing that Kaczmarek's prior bad acts are irrelevant to Plaintiffs' case, Defendants choose to ignore the fact that Plaintiffs' alleged that the Defendants, committed fraud in the sales to the Plaintiffs. Thus, evidence that the Defendants' customs, habits and business practices of similar misrepresentations showing a scheme to defraud are admissible evidence.

Evidence of Defendant Kaczmarek's prior bad acts are also admissible to demonstrate that Defendant Kaczmarek conduct was consistent with a general course of conduct on his part. Pennsylvania Evidence by Henry also addresses the admissibility of evidence showing a general design, purpose or course of conduct by a party.

> **Where a series of acts indicates a general design, purpose or course of conduct on the part of the person who committed them, they become competent evidence on the question of whether or not a similar particular act was done by the same person.** Even though an act is so remote in point of time from that charged that the statute of limitations would bar a prosecution for it, it would still be admissible if one of a series of acts tending to show guilt of the party charged. ...

<u>Pennsylvania Evidence by Henry</u>, Chapter 1, §36 Similar Facts, Conditions or Conduct - Course of Conduct, p.67. (emphasis added).

In Chapter 1, §35 at page 64, citing the 1855 Pennsylvania Supreme Court Case <u>Meighen v. Bank</u>, 25 Pa. 288, 291 (1855), <u>Henry</u> sets forth the proposition that a business custom and practice can be entered into evidence to corroborate the testimony of a witness:

> If a witness testifies positively that certain things were done, evidence of a business custom according to which they would naturally have been done is admissible to corroborate his testimony ...

<u>Pennsylvania Evidence by Henry</u>, In Chapter 1, §35, p.64

> **The custom or practice prevailing in a particular business in the use of methods,** machinery, and appliances **is a most important factor in determining the question of negligence, and such testimony is admissible** when offered by the defendant in an attempt to disprove negligence, as well as **when offered by plaintiff to prove negligence**. Citing <u>Jemison v. Pfeifer</u>, 397 Pa. 81, 152 A.2d 697 (1959).

<u>Pennsylvania Evidence by Henry</u>, Chapter 6 Custom and Usage §201 General Principles ftnt 1 (Emphasis added)

## **STANDARD PENNSYLVANIA PRACTICE 2d.**

Standard Pennsylvania Practice 2d, § 49:18 Habit; Routine Practice also sets forth that at trial evidence is relevant and admissible to establish the conduct of an organization or person was in conformity with the habit or routine practice of the organization and quotes Pennsylvania Rule of Evidence 406, which sets forth:

> **Evidence of the habit of a person or the routine practice of an organization,** whether corroborated or not and regardless of the presence of eyewitnesses, **is relevant to prove that the conduct of the person or organization on a**

3

**particular occasion was in conformity with the habit or routine practice.**
[Emphasis added]

Pennsylvania Rule of Evidence, 406. Habit; Routine Practice, which was adopted in 1998, and is identical to the Federal Rule of Evidence 406. In the Comment to Rule 406 the concept of habit and routine practice is defined as "... conduct that occurs with fixed regularity in repeated specific situations. ...". The Comment cites to Baldridge v. Matthews, 378 Pa. 566, 106 A.2d 809 (1954), ("uniform practice of hotel permitted to establish conduct in conformity with practice").

In Baldridge, the Court permitted evidence of a hotel's regular practice of requiring payment in advance where a guest registered without luggage. The court held that "[t]he probative value of a person's habit or custom, as showing what was done on a particular occasion, is not open to doubt . . ." Id. at 811. See also Beaver Valley Alloy Foundry, Co. v. Therma-Fab, Inc., 814 A.2d 217 (Pa. Super. 2002)(Testimony by a manufacturer's president that the manufacturer's routine business practice was to fax reverse side of quotation containing buyer's remedy provision whenever it sent a quotation by fax was admissible as habit testimony in breach of contract action). In the present case, the disputed evidence will show that the Defendant Agent and MetLife, regularly sold life insurance policies in such a manner as to misrepresent the benefits and function of the policies.

Not only prior bad acts are admissible, but post bad acts are admissible also, if the bad acts continued after the instant bad acts. The treatise on Pennsylvania evidence, Aspen - Handbook of Pennsylvania Evidence, § 4.06[B] Habit and Routine Practice in Business and Organizations, sets forth:

> **Courts are inclined to leniency in admitting evidence of business custom.** There is no confusion with character, and the business nature of the behavior in question is a greater guarantee of regularity than in the case of purely personal, voluntary acts. As a practical matter, large organizations cannot exist

4

unless much of their work is routinized. In Commonwealth v. Porter, 659 F.2d 206 (3d Cir. 1981), cert. denied, 458 U.S. 1121 (1982), the court admitted evidence of a pattern of civil rights violations. **This pattern or routine practice occurred over more than two years prior to the filing of the suit and also subsequent to the litigation. The Court held this evidence relevant to showing a routine practice of the defendant.**

See Aspen - Handbook of Pennsylvania Evidence, Chapter 4 Relevancy and Its Limits § 4.06 Habit and Routine Practice, p. 132 (Emphasis added).

Not only is the evidence of the corporation's bad acts admissible, but also the individual sales agent's bad acts are admissible:

> Organizations act through their members, employees, or agents. **If custom is admissible to prove the conduct of the organization, it must therefore be admissible to prove the conduct of the particular individual who was acting for the organization**. [] [O]ne may prove the custom of an organization through the conduct of its employees in civil cases against the organization, ... .

See Aspen - Handbook of Pennsylvania Evidence, Chapter 4 Relevancy and Its Limits § 4.06 Habit and Routine Practice, p. 132 (Emphasis added).

Pennsylvania in 1998 adopted Rule 406 of the Federal Rules, as Rules of Evidence in Pennsylvania. The case is on point as to the admission of evidence of a business practice. In support of this Rule, the U.S. District Court for the Western District of Pa in Com. of Pa. v. Porter, 480 F.Supp. 686, (W.D. Pa. 1979) found:

> This suit was filed October 5, 1977. The defendant Baranyai has throughout the trial objected to evidence of any events back of the one or two year period preceding the bringing of suit claiming that such evidence should not be permitted under the statute of limitations. **It should be sufficient answer that such evidence is admissible under Rule 404(b) to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization.**

Com. of Pa. v. Porter, 480 F.Supp. 686, 688 (U.S.D.C. W.D. of Pa. 1979)(Emphasis added).

This reasoning was upheld on appeal to the Third Circuit of Appeal.

. . . **Evidence of the prior actions was admitted, as the trial court noted,**

5

> **under Fed. R. Evid. 404(b), "to show motives, intent, preparation, purpose, knowledge or absence of mistake or accident and to show plan or design. It is also admissible under Rule 406 to show a pattern or routine practice of a defendant or organization." This ruling was correct.**

Com. of Pa. v, Porter, 659 F.2d 306 at 320 (3rd Cir.1981)(Citations omitted)(Emphasis added).

The United States Court of Appeals for the Third Circuit in Com. of Pa. v. Porter, Id. at 320, also found this ruling was correct based on Hazelwood School District v. United States, 433 U.S. 299, 309-10 n.15, 97 S.Ct. 2736, 2742, n.15, 53 L.Ed.2d 768 (1977); Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 267, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977); and Williams v. Anderson, 562 F.2d 1081, 1086 n.7 (8th Cir. 1977).

In the case of Frey v. Harley Davidson Motor Co., 734 A.2d 1 (Super. Ct. 1999), in affirming liability, the Superior Court allowed the introduction of evidence by the Plaintiff at trial that it was the regular business practice of the Defendant Harley Davidson to not inspect previously owned motorcycles with the respect to functioning jumper wires. The issue of the admissibility of the business practice of the manner in which a motorcycle was routinely worked on was appealed to the Superior Court by the Defendant Harley Davidson. In finding that the trial court correctly allowed in the evidence of the business practice of Defendant, it was found:

> ... **After reviewing the record, however, we cannot conclude that the trial court abused its discretion in admitting this testimony as evidence of LHD's regular habit or business practice.** See Liles v. Balmer, 389 Pa. Super. 451, 567 A.2d 691, 693 (Pa. Super. 1989), citing Baldridge v. Matthews, 378 Pa. 566, 570, 106 A.2d 809, 811 (1954).

Frey, 734 A.2d at 10 (Emphasis added)

Pennsylvania Rule of Evidence 404(b)(2) also permits the introduction of evidence of prior bad acts on the part of a party where those acts may demonstrate "**proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,** . . .". [Emphasis added] In Commonwealth v. Marsh, 566 A.2d 296 (Pa. Super. 1989),

6

the Pennsylvania Supreme Court, in a criminal case relying on prior Pennsylvania Supreme Court precedent, determined that evidence of a prior bad acts is admissible when:

> ... **it tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged** with the commission of the crime on trial– in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other [Citation omitted] **When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value.**

Id. at 301 (Emphasis added); citing Commonwealth v. Clayton, 532 A.2d 385, 392 n.8 (Pa. 1987).

The Superior Court recently reviewed the admissibility of habit and practice evidence in **Com. v. Dargan**, 897 A.2d 496 (Pa. Super. 2006), finding it is admissible since:

> **evidence of prior bad acts, although generally proscribed, is admissible "in special circumstances where the evidence is relevant for some other legitimate purpose," such as "to establish: 1) motive; 2) intent; 3) absence of mistake or accident; 4) a common scheme or plan; and 5) identity. The evidence may also be used to impeach the credibility of a testifying defendant . . . and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development."**

Id. at 501 (citations omitted)(emphasis added)

The evidence sought to be offered against the Defendants will prove motive, intent, absence of mistake, a common scheme and a logical connection between the fraudulent sale, such that proof of the one will naturally show the Defendants committed the others. Thus, the evidence of prior bad acts demonstrates that the Defendant Agent and MetLife engaged in a regular practice of misrepresenting the nature of life insurance policies to a potential customers in an effort to induce the sales and benefit both MetLife and the Defendant Agent. As such, evidence of these practices are relevant and admissible to demonstrate (1) a common scheme in the deceptive sale of life insurance policies; and (2) that the Defendant Agent had not merely

7

committed a mistake when he misrepresented the terms and conditions of the policies to the Plaintiffs.

In In re: Estate of Ciafonni, 446 A.2d 225 (Pa. 1982), the Supreme Court held that evidence of forty (40) other wills both predating and post dating the will at issue to demonstrate pages of the will had been fraudulently substituted after its execution was admissible. The forth (40) other wills had been drafted and typed by the decedent's scrivener. The Estate sought to establish that elements of style common to these wills were absent from the decedent's will, as well as expert testimony on the significance of the stylistic deviations and other extrinsic evidence related to the challenged will. The trial court denied is admission into evidence. The Supreme Court in reversing the trial court and permitting the admission of the evidence held:

> After a re-examination of the record of the will contest hearings, **we are convinced that the excluded wills were properly offered in support of appellants' claim that pages of the challenged will had been fraudulently substituted.** See Lare Will, 352 Pa. 323, 42 A.2d 801 (1945); Kane Estate, 312 Pa. 531, 168 A. 681 (1933). See generally Baldridge v. Matthews, 378 Pa. 566, 106 A.2d 809 (1954); 1 Wigmore on Evidence § 92 (3d ed. 1940).

Ciafonni, 446 A.2d 225 (Emphasis added)

Defendant next argue that any evidence of the "bad acts" should be excluded because of the likelihood to cause prejudice far outweighs their probative value. This argument is also without merit. Rule 403's mandate that relevant evidence may be excluded where its probative value is outweighed by the danger of unfair prejudice should not be used to permit a Defendant to hide his regular practice of doing fraudulent and deceptive bad acts from the fact finder, where those acts clearly provide evidence of his conduct in the present case. Also, Defendants' argument flies in the face of the Pennsylvania appellate cases set forth above and Rule 406.

Pennsylvania law defines prejudice as an "undue tendency to suggest decision on an improper basis." Evidence is not prejudicial for purposes of Rule 403 merely because it is

'detrimental to a party's case." See Whistler Sportswear, Inc. v. Rullo, 433 A.2d 40, 47 (Pa. Super 1981). The Superior Court has further stated that the exclusion of relevant evidence as prejudicial is only necessary where the evidence would:

> inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. **As this court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendants is charged.**

Commonwealth v. Palmer, 700 A.2d 988, 992-993 (Pa. Super. 1997)(Emphasis added).

Despite, Defendants' contention, there is little to suggest that the introduction of relevant evidence which clearly tends to show that Defendants engaged in a regular business practice of misrepresenting the terms of insurance policies substantially similar to those sold to the Plaintiff will cause the fact finder to ignore the facts surrounding the present case and make a decision based upon his prior actions. Instead, the proffered evidence will only support Plaintiffs' contention and credibility that the policy was sold in the manner alleged.

Finally, the disputed evidence is admissible for the purposes of proving that the Defendants conduct was so egregious as to permit the recovery of punitive damages. The recovery of punitive damages requires that Plaintiff demonstrate the nature of defendant's egregious conduct so as ro permit the fact finder to punish the defendant's conduct and deter others from similar conduct. Kirkbride v. Lisbon Contractors Inc., 555 A.2d 800 (Pa. 1989)(punitive damages awarded in Pennsylvania to punish egregious conduct and deter others from engaging in similar conduct).

Defendant Kaczmarek's prior conduct is directly relevant to the issue of whether Defendants conduct was egregious. As the United States Supreme Court has determined:

> **Certainly, evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure**

9

> **the defendant's disrespect for the law.** See [TXO] id., at 462, n. 28. Our holdings that **a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance.** See Gryger v. Burke, 334 U.S. 728, 732 (1948).

BMW v. Gore, 517 U.S. 559 at 576-77 (Emphasis added).

In TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 462, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), the United States Supreme Court addressed the relevancy and admissibility of similar improper out-of-state business conduct. If out-of-state business conduct is relevant to the harm suffered by the plaintiff, so is in-state improper business conduct. Thus, this out-of-state and in-state unlawful conduct properly may be considered by a jury in the context of imposing punitive damages. The U.S. Supreme Court held in TXO that the defendant's unlawful out-of-sate conduct was admissible for consideration by the fact finder, stating:

> **TXO also contends that the admission of evidence of its alleged wrongdoing in other parts of the country**, as well as the evidence of its impressive net worth, led the jury to base its award on impermissible passion and prejudice. Brief for Petitioner 22-23. **Under well-settled law, however, factors such as these are typically considered in assessing punitive damages.** Indeed, the Alabama factors **we approved in Haslip included both**. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21-22 (1991) ("**(b) . . . the existence and frequency of similar past conduct**; . . . (d) the 'financial position' of the defendant").

TXO, 509 U.S. at 462, fn28. (Emphasis added). The decision in Haslip is referenced with approval in the Pennsylvania Suggested Standard Civil Jury Instructions. See Chapter XIV Punitive Damages, p.9. ("Although Haslip dealt with an Alabama punitive damage award, the opinion provides guidance in assessing punitive damage awards under Pennsylvania law").

The evidence of Defendants' prior bad acts demonstrates that Defendant Kaczmarek, at the behest of MetLife and to the benefit of MetLife and Kaczmarek, repeatedly sold insurance polices to MetLife customers using deceptive sales practices, as such this evidence is relevant and admissible to proof of Defendants' custom, habit and business practices.

## II. EXHIBITS 15, 16 AND 17 ARE RELEVANT AND ADMISSIBLE

### A. Exhibit 15 and 16 are Relevant

The "Account Rep Inquiry" listed as Plaintiff's Exhibit 15 sets forth 13 consumer complaints against MetLife agent Kenneth Kaczmarek. Although MetLife represents that "not all" of the complaints were against the Defendant Agent in this case, Plaintiff should be permitted to question Defendant Kaczmarek regarding complaints against him and determine whether he recalls the circumstances surrounding any of the listed complaints. Defendant MetLife is the only party who can determine, without asking Defendant Kaczmarek which of the complaints refer to him and which refer to his son. As to the fact that some of the complaints listed refer to "replacement" activity, Defendant Kaczmarek's repeated use of deceptive sales practices is an issue in this case, as such all complaints against him are relevant.[1]

With regard to Exhibit 16, Plaintiff should be permitted to question Defendant Kaczmarek as to his involvement in the sales discussed in the complaints.

### B. Exhibit 17 is Relevant

Plaintiff's Exhibit 17, is a MetLife internal audit performed on Defendant Kaczmarek's branch in August of 1993. The audit report details irregularities related to the timely delivery of policies issued from the Monroeville Branch, as well as, the supervision of account representatives. MetLife's failure to properly supervise its agents in the sale of insurance policies is an issue in this case and Exhibit 17 should be permitted to demonstrate corporate knowledge of the failings of the Monroeville Branch in this area.

---

[1] Defendants also object as to the fact that this document was produced in a separate case. As MetLife tacitly acknowledges that some of the complaints listed are against the Defendant agent in this, clearly this document should have been produced in the instant case.

## CONCLUSION

For all the foregoing reasons, Defendants Motion in Limine should be denied

>Respectfully Submitted,
>
>/s/Kenneth R. Behrend
>Kenneth R. Behrend
>PA I.D. # 37961
>Behrend and Emsberger, P.C.
>306 Fourth Ave.  - Suite 300
>Pittsburgh, PA 15222
>(412) 391-2515   (phone)
>(412) 391-2762 (fax)

## CERTIFICATE OF SERVICE

I, Kenneth R. Behrend, do hereby certify that I have served a true and correct copy of the within Plaintiffs' Memorandum of Law in Response to Defendants' Motion In Limine was served upon the below listed counsel and parties by U.S. First Class mail, postage pre-paid on the 17th day of October, 2006.

B. John Pendleton, Jr., Esquire
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101-0652

/s/Kenneth R. Behrend
Kenneth R. Behrend
PA I.D. # 37961
Behrend and Emsberger, P.C.
Union Bank Building  - Suite 300
306 Fourth Ave.
Pittsburgh, PA 15222
(412) 391-2515   (phone)
(412) 391-2762   (Fax)