UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT G. WYCKOFF | ) | CIVIL ACTION NO. 00-2248 |
| | ) | |
| Plaintiff, | ) | DONETTA W. AMBROSE |
| | ) | |
| v. | ) | CHIEF JUDGE |
| | ) | |
| METROPOLITAN LIFE | ) | |
| INSURANCE COMPANY | ) | |
| AND KENNETH F. KACZMAREK | ) | |
| | ) | |
| Defendants. | ) | |

_____

**PLAINTIFF'S DESIGNATION OF DEPOSITION EXCERPTS OF DEPOSITION OF JAMES RAYL**
_____

**AND NOW,** comes the Plaintiff, by and through his attorney, Kenneth R. Behrend and the law firm of Behrend and Ernsberger, P.C., and files the following Designation of Deposition Excerpts of Depositions of James Rayl:

| Page of Transcript | Response to Defendant's Objections |
|---|---|
| 6:14-8:25 | The testimony in question establishes that Mr. Rayl was properly aware of the procedures of the deposition and his condition at the beginning of the deposition. It is relevant to establish the context under which the deposition was taken. |
| 9:24-10:3 | The testimony in question established the extent of Mr. Rayl's preparation for the deposition. It is relevant to establish the context under which the deposition was taken. |
| 20:7-21:9 | The testimony at issue provides background into Mr. Rayl's history with MetLife and establishes his responsibilities while employed with the company. |

| | |
|---|---|
| 31:1-32:25 | The testimony at issue provides background into Mr. Rayl's history with MetLife and established Mr. Rayl's history with the company and his status within the company |
| 42:1-44:25 | The testimony at issue provides background into Mr. Rayl's history with MetLife and his status within the company |
| 52:9-23 | The testimony at issue provides background into Mr. Rayl's history with MetLife and his status within the company |
| 59:25-60:8 | The testimony at issue provides background into Mr. Rayl's history with MetLife and his status within the company |
| 77:18-79:18 | The testimony at issue provides background into Mr. Rayl's history with MetLife and his status within the company |
| 102:2-105:4 | The testimony at issue provides insight into Mr. Rayl's concern for customer's in his efforts to insure customer service. |
| 105:5-106:2;107:13-108:24; 169:9-22 | The testimony details MetLife's level of commitment to its policyholder's best interests and is relevant to Plaintiff's punitive damages claim. |
| 173:25-174:3 | The testimony details MetLife's level of commitment to its policyholder's best interests and is relevant to Plaintiff's punitive damages claim. |
| 253:24-254:18 | The testimony in question is directly relevant to MetLife's corporate problems with APP sales and is relevant to Plaintiff's punitive damages claims. |
| 254:19-255:20, 257:17-25, 258:7-13 | This testimony is offered to the extent it identifies the relevant exhibits ste forth therein |
| Exs. 37 and 39 | Plaintiff does not intend to introduce these documents into evidence |
| Ex. 38 | Exhibit 38 addresses the Pennsylvania Market Conduct Examination Report that was publicly released on March 11, 1994, and specifically mentions there were intentional sales practices problems occurring in Pittsburgh. The memorandum was authored by James Raly on March 4, 1994 and provided to the Customer Service Representatives, Trainers & Resource personnel in anticipation of the flood of calls expected from policyholders with questions regarding whether their policies were deceptively sold. This Court previously determined that relevant portions of the Pennsylvania Market Conduct Examination were admissible in both Kintner and in Tran |
| Ex. 40 | Plaintiff does not intend to introduce these documents into evidence |

| Ex. 41 | Plaintiff does not intend to introduce these documents into evidence |
|---|---|
| Ex. 42 | Exhibit 42 contains a series of documents related tot he APP sale problem. Some examples demonstrating their relevance include, the first of which is authored on December 29, 1996, one year after the 1995 whole life APP sale to plaintiff and references the problems associated with whole life policies. The memorandum was sent to seven different areas of MetLife and to over 60 employees fo be reviewed in anticipation of a meeting on January 15, 1997 regarding an APP Options meeting discussing what to do about the APP problem. Another is a memo dated December 4, 1995 that explains because of the there are 149,482 policies currently on APP, and that MetLife has no idea how many additional policies were sold as APP policies but are not yet on APP and the because of the reduction in the 1996 dividend scale that "it is now expected that 23% of our Ap arrangements will collapse before the policy life expectancy. is reached." Bates No. MP4011070899. |
| Ex. 43 | Exhibit 43 is a memo authored on August 25, 1997 regarding the AP Program. In this memo to Kathy Shoos Director of the Warwick Customer Service Center from Jim Rayl, Director of the Tulsa Customer Service Center, Mr. Rayl expresses his concerns that "I cannot help but wonder if senior MetLife management really has any grasp of exactly what is happening. Based on all the comments and dialogue, it wold appear that their expectation was similar to mine, in that it was believed that a proactive program was being developed to effectively deal with our policyholders on this issue. ... Based on what is presented in New York at the AP meeting, the program is definitely not a comprehensive or fully proactive program to deal with AP. He also was concerned that the program to contact existing AP customers is deficient since "I suspect that the contacts made by the agency force involving their own clientele will be no more than10% to 20% of the affected customer base if even that. Bates No. MP4011070965.<br><br>    Also is a memo sent to the field force dated August 18, 1997 that because of the 1997 dividend scale reduction, nearly one third of the 175,000 customers on APP (50,000) will have to pay additional out-of-pocket premiums. Bates No. MP4011070973. |
| 259:2-16 | The testimony in question is directly relevant to MetLife's corporate problems with APP sales and is relevant to Plaintiff's punitive damages claims. |
| 261:5-262:14, Ex. 46 | The testimony in question is directly relevant to MetLife's corporate problems with APP sales and is relevant to Plaintiff's punitive damages claims. |

| 268:25-269:20 | The testimony in question is directly relevant to MetLife's corporate stance regarding problems with APP sales and is relevant to Plaintiff's punitive damages claims. |
|---|---|

                                              Respectfully submitted,

                                              /s/Kenneth R. Behrend
                                              Kenneth R. Behrend
                                              PA I.D. # 37961
                                              Behrend and Emsberger, P.C.
                                              306 Fourth Ave.  - Suite 300
                                              Pittsburgh, PA 15222
                                              (412) 391-2515   (phone)
                                              (412) 391-2762    (Fax)

## CERTIFICATE OF SERVICE

      I, Kenneth R. Behrend, hereby certify that a true and correct copy of the foregoing was served upon the all counsel of record on this 17th day of October 2006, as follows:

B. John Pendleton, Jr., Esquire
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101-0652

                                                  BEHREND AND ERNSBERGER, P.C.

                                                  /s/Kenneth R. Behrend
                                                  Kenneth R. Behrend
                                                  PA I.D. # 37961
                                                  Behrend and Ernsberger, P.C.
                                                  306 Fourth Ave. - Suite 300
                                                  Pittsburgh, PA 15222
                                                  (412) 391-2515   (Phone)